06/30/2016  03:42  18025869683  LIBRARY  PAGE  01

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

DR. JENNIFER LYNN GLASS, )
DR. LISA MOORE, and )
DR. MIA CARTER, )
    Plaintiffs, )
 )
v. )  No. 1:16-cv-845-LY
 )
KEN PAXTON, in his official )
capacity as Attorney General of Texas, )
GREGORY L. FENVES, in his official )
capacity as President, University of )
Texas at Austin, and )
PAUL L. FOSTER, R. STEVEN HICKS, )
JEFFERY D. HILDEBRAND, ERNEST )
ALISEDA, DAVID J. BECK, ALEX M. )
CRANBERG, WALLACE L. HALL, JR., )
BRENDA PEJOVICH, SARA MARTINEZ )
TUCKER, AND VARUN P. JOSEPH, in their )
official capacities as members of the )
University of Texas Board of Regents, )
    Defendants. )

## DECLARATION OF DR. MIA CARTER

I, Dr. Mia Carter, do declare,

1. My name is Mia Carter. I am a Plaintiff in this lawsuit.

2. I received my B.A. in English and Creative Writing from the University of Massachusetts at Boston in 1984. I received my M.A. and Ph.D. in English and Modern Studies from the University of Milwaukee-Wisconsin in 1992.

3. I am a University Distinguished Teaching Associate Professor and a University of Texas System Regents' Outstanding Teacher in the Department of English. I began teaching at U.T Austin in 1992. I was tenured in 1997.

4. I taught during the first summer session of 2016, which ended on July 7, 2016. I did not give a final examination; the students had only essay assignments.

5. In the Fall Semester of 2016 I will be teaching two upper-division classes; the students will primarily be juniors and seniors. In the Fall, I will be teaching Major Authors: Virginia Woolf, with a class of 35 students and Representations of Childhood and Adolescence in Literature and Film, a writing component class which will have 20 students.

6. In Spring of 2017, I will also be teaching two upper division classes comprised mostly of juniors and senior entitled: British Literature: The Victorian Era through World War II and Modernism and Literature. Each class will have about 35 students.

7. I do not share an office. I have not yet determined my Fall 2016 office hours. They will most likely be on Monday and Wednesday afternoon.

8. I serve on a variety of committees: the English Honors Committee, the Polymathic Scholars Admissions and Advisory Committees, the Archer Fellowship Selection Committee, and the Women's Athletics Hall of Fame Selection Committee. Most of the Departmental meetings are held in Parlin Hall; the other committee meetings are held in a variety of places, ranging from the Stadium to the College of Natural Sciences.

9. I have a technology ban in all of my classes. I strictly prohibit the use of computers, smart and cell phones except for students with a documented medical need and I dismiss from the class and mark absent those students who violate the ban. However, starting this Fall semester, I have been told that I will have to allow guns in my classroom. I do not want guns in my classroom. I want to retain my option as a faculty member at an institution of higher education to exclude guns from my classrooms and, if allowed, I would exercise the option to exclude them.

10. I believe that President Fenves and the University's administration have been trying to work within the constraints of the law in attempt to protect the

campus community and public education. As far as I know, to date, every single private university in Texas has exercised its autonomy and has opted out of Campus Carry. Private universities might not receive direct legislative funding, but they are the beneficiaries of both federal and state support. Faculty at all universities, colleges and community colleges in Texas should be given the same autonomy and respect. I do not understand the disparate treatment.

11. I agree with the statement in President Fenves' transmittal letter that forcing guns onto campus, particularly disallowing individual professors decisions about guns in their own classrooms, inhibits free speech in the academic atmosphere.

12. The Campus's implementation of SB11 is full of ambiguities, uncertainties, and contradictions. For example, faculty and staff who are in single occupation offices can "verbally" ban guns from their offices; faculty and staff in shared office space cannot. This denies our graduate student instructors, who are learning how to teach, how to deal with grading complaints and student conflicts, etc., and advisors fewer protections than their colleagues in single occupancy offices. This is not equal protection under the law as far as I'm concerned.

13. The issue of whether or not we are able to post signs on our office doors is even unclear; we have been told by UT's administration that only verbal prohibitions are "legally effective." I have no idea what that language is supposed to mean; we appear to be losing First Amendment rights of free expression that we have always had. For example, my door has a range of things on it--from advertisements using Modernist language or iconography, to an Amnesty International sticker, to Dilbert cartoons; however, it is not clear, at present, if posting a gun ban on my office door is a violation of the campus's implemented policies and the law itself. I believe that I should have the right to ban concealed and loaded weapons from being carried into the classrooms in which I teach on any given day.

14. Legislators, administrators, and judges are offered protection from weapons in their professional lives. My colleagues and I are involved in work that daily

involves argumentation and critique, rational and impassioned debate, rigorous analysis, and sometimes challenging and uncomfortable processes of intellectual discovery. Each of these is fundamental to effective pedagogy, to the process of learning itself. The possibility of the presence of concealed weapons in a classroom setting impedes my and other professors' ability to create a daring, intellectually active, mutually supportive, and engaged community of thinkers. I have had a successful record of achieving trust-based, open and sharing communities in my courses. It is very important to me that this environment be protected from interference and harm. I consider guns in the classroom especially deleterious to academic and intellectual liberty and the pursuit of knowledge. They restrict and deter open and robust classroom debate.

15. The Provost's instructions in her July 14, 2016 email to faculty is the first time I have seen an official UT-Austin statement specifically preventing individual exercise of the gun-exclusion option. It fails to identify which UT-Austin Presidential policy it comes from. It also includes an instruction that syllabi cannot indicate a disapproval of guns in the classroom.

16. I am concerned that if I violate the UT policy as explained in the Provost July 14th e-mail to faculty and prohibit guns in my classroom I would expose myself to adverse consequences and actions from the administration.

17. I cannot determine why it is legal to exclude guns from several places, both on campus and at-large in places across the state, but not from public university classrooms at the individual professor's option. Public college and university classrooms are at least as worthy of gun exclusion, if not more so, as other places where they are prohibited. What is considered thoughtful, reasonable, and wise for the private schools would be the same at the public institutions.

18. The presence of more guns in U.S. culture has led to more deaths and accidents. Even our well-trained and experienced first responders are making lethally jumpy decisions, partly due to the omnipresence of guns on the streets. Gun accidents occur in our country on a daily basis; a loaded chamber seems a recipe for an accidental discharge.

19. Depression and mental illness, and periods of high anxiety and stress are part of academic culture. I have had students, female students in particular, who have been stalked and threatened by ex-boyfriend or rejected suitors. I have had to use the campus's mental health services to intervene with both students in crisis and under threat. In the early days of my career at U.T., one of my honors student's recently rejected boyfriend requested one last conversation and committed suicide in front of her. She was deeply traumatized, but fortunate not to have been targeted for killing herself. One of my earliest Ph.D. students was the daughter of Christopher Goertz, the Professor of Physics and Astronomy, who was killed by one of his graduate students, with three other faculty members, at Iowa State University in 1991.

20. I began my career as a Professor with the full awareness of the dangers of weapons on campus. I was on campus in 2010 on the tragic day when Colton Tooley killed himself on campus. Adding more guns, and overly confident concealed carriers to a high state of alarm, a campus lockdown, and a building-to-building search is a nightmare scenario that I can imagine. I trust our city and campus' first responders to protect us; I would like their professional expertise to be trusted and respected. I would appreciate the same for my own profession as an educator.

I declare under penalty of perjury under the law of the United States, that the foregoing is true and correct to the best of my knowledge.

Executed on __21__ day of July, 2016

*Mia Carter*

Mia Carter