# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |
|---|---|
| **DR. JENNIFER LYNN GLASS, et al.,** | |
| *Plaintiffs,* | Case No. 1:16-cv-845-LY |
| **v.** | |
| **KEN PAXTON, et al.** | |
| *Defendants.* | |

# RESPONSE TO APPLICATION FOR PRELIMINARY INJUNCTION

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**BRANTLEY STARR**
Deputy First Assistant Attorney General

**PRERAK SHAH**
Senior Counsel to the Attorney General
Texas Bar No. 24075053

**OFFICE OF THE ATTORNEY GENERAL**
P.O. Box 12548 (MC 001)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697
prerak.shah@texasattorneygeneral.gov

**COUNSEL FOR DEFENDANT KEN PAXTON**

# Table of Contents

Page

Table of Authorities ................................................................................................ iii

Introduction ............................................................................................................1

Argument ................................................................................................................2

I.  Plaintiffs Will Not Prevail on the Merits.................................................2

   A.  Plaintiffs Will Not Prevail on Their First Amendment Claim. ................2

      1.  Plaintiffs Have No Right to Academic Freedom to Assert in This Case. ................................................................................3

      2.  There Can Be No Constitutional Violation Here, Because Plaintiffs Can Identify No State Action That Is Violating Their Rights. ........................6

      3.  There Can Be No Violation of Academic Freedom Here, Because the Alleged Violation Is Neither Direct Nor Content-Based. ................................7

      4.  The Plaintiffs' First Amendment Rights Are Not Infringed by Allowing Licensed Adults to Conceal Carry Handguns in a Classroom. ..................................8

      5.  Important Governmental Interests Justify Any Potential Effect on Plaintiffs' Speech. ..........................10

   B.  Plaintiffs Will Not Prevail On Their Equal Protection Claim. ...............11

      1.  It Is Not Irrational For the State to Treat Public And Private Property Differently. ....................................12

      2.  It Is Not Irrational to Prohibit Concealed Carry In Some Areas of a University Campus, But Allow Concealed Carry In Other Areas. ................14

II.  There Is No "Substantial Threat" That Plaintiffs Will Suffer Irreparable Harm. ............................................................................15

III.  The Balance of Harms Counsels Against Issuing a Preliminary Injunction.................16

IV.  The Public Interest Favors Denying the Request for Preliminary Injunction. ..............19

Conclusion ............................................................................................................19

Certificate of Service.............................................................................................21

# Table of Authorities

Page(s)

**Cases**

*Bishop v. Aronov,*
926 F.2d 1066 (11th Cir. 1991) ................................................................. 4

*Borden v. Sch. Dist. of Twp. of E. Brunswick,*
523 F.3d 153 (3d Cir. 2008) ...................................................................... 4

*Boring v. Buncombe Cty. Bd. of Educ.,*
136 F.3d 364 (4th Cir. 1998) ..................................................................... 4

*Bradley v. Pittsburgh Bd. of Educ.,*
910 F.2d 1172 (3d Cir. 1990) .................................................................... 4

*Cohen v. San Bernardino Valley Coll.,*
92 F.3d 968 (9th Cir. 1996) ....................................................................... 5

*Cooksey v. Futrell,*
721 F.3d 226 (4th Cir. 2013) ..................................................................... 8

*D.C. v. Heller,*
554 U.S. 570 (2008) ................................................................................. 18

*De Leon v. Perry,*
975 F.Supp.2d 632 (W.D. Tex. 2014) ..................................................... 16

*Def. Distributed v. U.S. Dep't of State,*
121 F. Supp. 3d 680 (W.D. Tex. 2015) ................................................... 17

*Elrod v. Burns,*
427 U.S. 347 (1976) ................................................................................. 15

*Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury,*
545 F.3d 4 (D.C. Cir. 2008) ................................................................... 4, 5

*Ezell v. City of Chicago,*
651 F.3d 684 (7th Cir. 2011) ................................................................... 17

*F.C.C. v. Beach Commc'ns, Inc.,*
508 U.S. 307 (1993) ................................................................................. 12

*FM Prop. Operating Co. v. City of Austin,*
93 F.3d 167 (5th Cir. 1996) ..................................................................... 13

*Heller v. Doe by Doe,*
509 U.S. 312 (1993) ........................................................................... 12, 19

*Hillis v. Stephen F. Austin State Univ.,*
665 F.2d 547 (5th Cir. 1982) ..................................................................... 5

*Johnson-Kurek v. Abu-Absi,*
423 F.3d 590 (6th Cir. 2005) ..................................................................... 4

*Keyishian v. Board of Regents*,
   385 U.S. 589 (1967) ............................................................................................ 8

*Kirkland v. Northside Indep. Sch. Dist.*,
   890 F.2d 794 (5th Cir. 1989) .............................................................................. 5

*Laird v. Tatum*,
   408 U.S. 1 (1972) ................................................................................................ 8

*Martin v. Parrish*,
   805 F.2d 583 (5th Cir. 1986) .............................................................................. 5

*Maryland v. King*,
   133 S.Ct. 1 (2012) ............................................................................................ 16

*Miles v. Denver Pub. Sch.*,
   944 F.2d 773 (10th Cir. 1991) ............................................................................ 4

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
   760 F.2d 618 (5th Cir. 1985) .............................................................................. 2

*Moody v. Jefferson Par. Sch. Bd.*,
   2 F.3d 604 (5th Cir. 1993) .................................................................................. 5

*Moore v. Madigan*,
   702 F.3d 933 (7th Cir. 2012) ............................................................................ 18

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*,
   434 U.S. 1345 (1977) ........................................................................................ 16

*Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.*,
   579 F.3d 502 (5th Cir. 2009) ............................................................................ 15

*Peruta v. County of San Diego*,
   2016 WL 3194315 (9th Cir. June 9, 2016) ...................................................... 17

*Piarowski v. Ill. Cmty. Coll. Dist. 515*,
   759 F.2d 625 (7th Cir. 1985) .............................................................................. 5

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
   734 F.3d 406 (5th Cir. 2013) ............................................................................ 16

*Reid v. Rolling Fork Pub. Util. Dist.*,
   979 F.2d 1084 (5th Cir. 1992) .......................................................................... 12

*State of Tex. v. Seatrain Int'l, S. A.*,
   518 F.2d 175 (5th Cir. 1975) ............................................................................ 15

*Sweezy v. New Hampshire*,
   354 U.S. 234 (1957) ............................................................................................ 3

*Turner Broad. Sys., Inc. v. F.C.C.*,
   512 U.S. 622 (1994) .......................................................................................... 11

*United States v. Albertini*,
   472 U.S. 675 (1985) .......................................................................................... 11

*United States v. O'Brien*,
  391 U.S. 367 (1968) ............................................................................................ 11
*Univ. of Pa. v. E.E.O.C.*,
  493 U.S. 182 (1990) .............................................................................................. 7
*Urofsky v. Gilmore*,
  216 F.3d 401 (4th Cir. 2000) .............................................................................. 3
*Vance v. Bd. of Supervisors of S. Univ.*,
  124 F.3d 191 (5th Cir. 1997) .............................................................................. 5
*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ............................................................................................ 11


**Statutes**

Colo. Rev. Stat. Ann. § 18-12-214 ......................................................................... 12

Idaho Code § 18-3309 ............................................................................................. 12

Kan. Stat. Ann. § 75-7c20 ....................................................................................... 12

Utah Code Ann. § 53B-3-103 .................................................................................. 12


**Other Authorities**

Senate Research Center, Bill Analysis, Tex. S.B. 11, 84th Leg., R.S., at 1 (June 29,
  2015), available at
      http://www.capitol.state.tx.us/tlodocs/84R/analysis/pdf/SB00011F.pdf .......................... 14

Tex. Att'y Gen. Op. No. KP-0051, at 2 (2015) ..................................................... 14

The Campus Personal Protection Act: Hearings on Tex. S.B. 11 before the Senate
  Comm. on State Affairs, 84th Leg., R.S., at 20:24
  (Feb. 12, 2015), available at
      http://tlcsenate.granicus.com/MediaPlayer.php?view_id=30&clip_id=9093 ..................... 13

University of Texas at Austin, *Campus Carry Policy Working Group: Final Report*, at 3
  (Dec. 2015), available at http://campuscarry.utexas.edu/CCWorkingGroup-
  FinalReport.pdf.................................................................................................. 9, 10

# Introduction

Plaintiffs are seeking to enjoin enforcement of any statute or policy that requires them to allow adults who are licensed by the state to carry handguns to conceal carry in classrooms where Plaintiffs are teaching. But Plaintiffs have failed to satisfy *any* of the requirements for a preliminary injunction. They are not likely to succeed on the merits of their claims, there is no substantial threat that they will suffer irreparable harm if an injunction does not issue, the balance of harms favors Defendants, and the public interest supports denying the requested injunction.

Their failure to establish a likelihood of success is particularly stark. Plaintiffs raise only two claims: (1) allowing licensed adults to conceal carry in classrooms violates Plaintiffs' First Amendment right to academic freedom; and (2) Plaintiffs' Fourteenth Amendment right to equal protection is violated because there is no rational basis to treat public universities differently from private universities or to allow handguns in classrooms while prohibiting them from other areas of campus.

Neither claim is likely to succeed. Their First Amendment claim fails for five reasons: (1) they have no individual constitutional right to academic freedom; (2) their alleged violation of their right to academic freedom is not fairly traceable to state action; (3) the alleged state action is indirect and content-neutral; (4) there is no objectively reasonable effect on Plaintiffs' academic freedom by allowing licensed adults to conceal carry handguns in a classroom; (5) any alleged effect on their right to academic freedom is justified by an important government interest.

Plaintiffs' Equal Protection claim fares no better: it is eminently rational for the State to treat public and private institutions differently (as the State does in countless other areas of the law) and to allow handguns in certain areas of a college campus while prohibiting them in others (because doing so still achieves the goal of generally permitting conceal carry on campuses).

Accordingly, the request for a preliminary injunction must be denied.

# Argument

A preliminary injunction can only issue if the Plaintiff establishes four requirements: "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that irreparable injury will result if the injunction is not granted, (3) that the threatened injury outweighs the threatened harm to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). "A preliminary injunction is an extraordinary remedy. It should only be granted if the movant has clearly carried the burden of persuasion on all four [ ] prerequisites. The decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Id.* at 621-22.

Here, Plaintiffs cannot meet any of the requirements, let alone all four.

## I. Plaintiffs Will Not Prevail on the Merits.

For purposes of their request for a preliminary injunction, Plaintiffs have limited themselves to just two claims: (1) allowing licensed adults the right to conceal carry handguns in classrooms violates Plaintiffs' First Amendment right to academic freedom; and (2) Plaintiffs' Fourteenth Amendment right to equal protection is violated because there is no rational basis to treat public universities differently from private universities, or to allow handguns in classrooms while prohibiting them from other areas of campus. Neither claim is likely succeed.

### A. Plaintiffs Will Not Prevail on Their First Amendment Claim.

Plaintiffs claim that their First Amendment right to academic freedom will be violated if adults who are licensed by the state to carry concealed handguns are allowed to potentially conceal carry in classrooms where Plaintiffs are teaching. There are several flaws with this claim, each of which is independently fatal.

### 1.   Plaintiffs Have No Right to Academic Freedom to Assert in This Case.

The claim that Plaintiffs' right to academic freedom has been violated suffers from a threshold problem: Plaintiffs have no individual right to academic freedom, because the right to academic freedom is held by their institution. To be sure, Plaintiffs have First Amendment rights as to their academic research, their out-of-class public statements, and a plethora of other forms of expression. But this case is not about any of that. Plaintiffs have alleged a violation of their right to academic freedom, with a focus on their classroom curriculum and instruction. On those matters, Plaintiffs do not have an individual First Amendment right to academic freedom—their institution, the University of Texas, does.

In a thorough opinion recounting the history and development of the concept of academic freedom in the law, the *en banc* Fourth Circuit explained: "Our review of the law, however, leads us to conclude that to the extent the Constitution recognizes any right of 'academic freedom' above and beyond the First Amendment rights to which every citizen is entitled, the right inheres in the University, not in individual professors." *Urofsky v. Gilmore*, 216 F.3d 401, 410 (4th Cir. 2000) (en banc); *see also id.* at 412 ("Appellees ask us to recognize a First Amendment right of academic freedom that belongs to the professor as an individual. The Supreme Court, to the extent it has constitutionalized a right of academic freedom at all, appears to have recognized only an institutional right of self-governance in academic affairs."); *id.* ("The right recognized by Justice Frankfurter [in *Sweezy v. New Hampshire*, 354 U.S. 234 (1957)], however, was not the individual right claimed by Appellees, but rather an institutional right belonging to the University of New Hampshire."); *id.* at 414 ("Significantly, the Court has never recognized that professors possess a First Amendment right of academic freedom to determine for themselves the content of their courses and scholarship, despite opportunities to do so."); *Boring v. Buncombe Cty. Bd. of Educ.*,

3

136 F.3d 364, 370 (4th Cir. 1998) (en banc) ("We agree with Plato and Burke and Justice Frank-furter that the school, not the teacher, has the right to fix the curriculum.").

The Third, Sixth, and Eleventh Circuits have come to the same conclusion as the Fourth Cir-cuit. *See, e.g.*, *Borden v. Sch. Dist. of Twp. of E. Brunswick*, 523 F.3d 153, 172 (3d Cir. 2008) ("We have held that a teacher's in-class conduct is not protected speech . . . The rationale for this holding is that the teacher is acting as the educational institution's proxy during his or her in-class conduct, and the educational institution, not the individual teacher, has the final determination in how to teach the students."); *Bradley v. Pittsburgh Bd. of Educ.,* 910 F.2d 1172, 1176 (3d Cir. 1990) ("Alt-hough a teacher's out-of-class conduct, including her advocacy of particular teaching methods, is protected, her in-class conduct is not."); *Johnson-Kurek v. Abu-Absi*, 423 F.3d 590, 593 (6th Cir. 2005) ("'[T]o the extent the Constitution recognizes any right of 'academic freedom' above and beyond the First Amendment rights to which every citizen is entitled, the right inheres in the Uni-versity, not in individual professors.'" (citation omitted)); *Bishop v. Aronov*, 926 F.2d 1066, 1075 (11th Cir. 1991) ("Though we are mindful of the invaluable role academic freedom plays in our public schools, particularly at the post-secondary level, we do not find support to conclude that academic freedom is an independent First Amendment right.").[1]

---

[1]  Judge Silberman on the D.C. Circuit has also expressed support for this position, in a concurring opinion in a case that was ultimately decided on other grounds. *Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury*, 545 F.3d 4, 19–20 (D.C. Cir. 2008) (Silberman, J., concurring) ("I there-fore share the doubts of our Fourth Circuit colleagues as to the notion that 'academic freedom' is a constitutional right at all and that, should it exist, it inheres in individual professors."); *id.* ("[T]he Supreme Court has never once invalidated a state regulation on the grounds that it violated a right to academic freedom."). And the Tenth Circuit has held that there is no individual right to academic freedom, but did so in a case involving a secondary school teacher, not a university professor—though there is nothing in the opinion to indicate that the Tenth Circuit would hold any differently in the case of a university professor. *See Miles v. Denver Pub. Sch.*, 944 F.2d 773, 779 (10th Cir. 1991) ("[T]he caselaw does not support Miles's position that a secondary school teacher has a constitutional right to academic freedom.").

As for the Fifth Circuit, it has yet to squarely answer the question of whether an individual, as opposed to an institution, has a right to academic freedom. Nonetheless, the Fifth Circuit has been skeptical of the right to academic freedom generally. *See, e.g.*, *Hillis v. Stephen F. Austin State Univ.*, 665 F.2d 547, 553 (5th Cir. 1982) ("its perimeters are ill-defined and the case law defining it is inconsistent"). Indeed, we have not found a single case where the Fifth Circuit ruled in favor of a Plaintiff who was claiming that his or her right to academic freedom was being infringed.[2] The Fifth Circuit has also occasionally issued statements that suggest that—if presented with the issue of whether there is an individual right to academic freedom—it would agree with the Third, Fourth, Sixth, and Eleventh circuits. *See, e.g.*, *Kirkland*, 890 F.2d at 800 ("Although, the concept of academic freedom has been recognized in our jurisprudence, the doctrine has never conferred upon teachers the control of public school curricula."(footnote omitted)).[3]

---

[2]   In cases presenting a claim of a violation of academic freedom, the Fifth Circuit has been able to reject the claim on alternative grounds, without having to decide in that case whether the Plaintiff had an individual right to academic freedom. *See, e.g.*, *Vance v. Bd. of Supervisors of S. Univ.*, 124 F.3d 191 (5th Cir. 1997) (per curiam); *Moody v. Jefferson Par. Sch. Bd.*, 2 F.3d 604, 606 (5th Cir. 1993) (per curiam); *Kirkland v. Northside Indep. Sch. Dist.*, 890 F.2d 794, 795 (5th Cir. 1989); *Martin v. Parrish*, 805 F.2d 583, 584 (5th Cir. 1986); *Hillis*, 665 F.2d at 553.

[3]   The other circuits are, at best, ambiguous on the question of whether a professor has an individual right to academic freedom. *Piarowski v. Ill. Cmty. Coll. Dist. 515*, 759 F.2d 625, 629 (7th Cir. 1985) ("[T]hough many decisions describe 'academic freedom' as an aspect of the freedom of speech that is protected against governmental abridgment by the First Amendment … the term is equivocal."). No circuit appears to have explicitly rejected the holdings of the Third, Fourth, Sixth, and Eleventh Circuits. Some have never squarely confronted the question. Others have assumed without deciding that there is an individual right to academic freedom, so that they could reject the claims in the case on other grounds. *See, e.g.*, *Emergency Coal. to Defend Educ. Travel*, 545 F.3d at 12 ("Assuming that the right to academic freedom exists and that it can be asserted by an individual professor," then rejecting the claim on alternative grounds); *Cohen v. San Bernardino Valley Coll.*, 92 F.3d 968, 971 (9th Cir. 1996) (rejecting an academic freedom claim on other grounds, but adding "Neither the Supreme Court nor this Circuit has determined what scope of First Amendment protection is to be given a public college professor's classroom speech.").

In light of the Fifth Circuit's general skepticism over claims of a right to academic freedom—as well as the persuasive authority of the Third, Fourth, Sixth, and Eleventh Circuits—Plaintiffs are unlikely to succeed on their First Amendment claim. There is no individual right to academic freedom—and the Fifth Circuit will not invent such a right for Plaintiffs here.

### 2.  There Can Be No Constitutional Violation Here, Because Plaintiffs Can Identify No State Action That Is Violating Their Rights.

Let's assume that Plaintiffs can assert an individual right to academic freedom under the First Amendment in this case. Plaintiffs still lose.

The First Amendment is only violated by state action, not private conduct. To be sure, the state action need not be exclusive or direct, but the alleged injury must still be fairly traceable to a state action. And no such state action is present here. Plaintiffs are complaining that the presence of concealed carry violates their right to academic freedom. But the State is not responsible for an individual's decision to conceal carry in a classroom or not. That choice belongs to the individual, a level of attenuation that cannot serve to put the State on the hook for a constitutional violation.

Consider Plaintiffs' example of a heckler's veto: the presence of a heckler does not violate the First Amendment, even if the government created an environment where a heckler could heckle (e.g., by admitting potential hecklers into a forum) and the speaker decides to modify his expression as a result of the possibility of a heckler in the crowd. It's only if the government itself restricts the speaker's expression because of a heckler that a First Amendment violation could occur. Thus, in this case, if Defendants decided to restrict Plaintiffs' speech because of the potential presence of handguns in a classroom, then Plaintiffs could trace a potential First Amendment claim against Defendants. But if Plaintiffs decide to modify their own expression because a private individual might have a handgun in the classroom, that alleged injury is not fairly traceable to state action.

The government is no more responsible for the potential presence in a classroom of a heckler than it is responsible for the potential presence in a classroom of a licensed adult who has chosen to carry a concealed handgun.

### 3. There Can Be No Violation of Academic Freedom Here, Because the Alleged Violation Is Neither Direct Nor Content-Based.

Now let's assume that Plaintiffs can assert an individual right to academic freedom under the First Amendment in this case *and* that Plaintiffs' right to academic freedom is being infringed by a state action. Plaintiffs still lose.

The Supreme Court has explained that, regardless of any general First Amendment standards, a violation of the right to academic freedom only exists when there is a *direct* infringement of the right and when the state action is *content-based. See Univ. of Pa. v. E.E.O.C.*, 493 U.S. 182, 197-99 (1990) ("In our view, petitioner's reliance on the so-called academic-freedom cases is somewhat misplaced. In those cases government was attempting to control or direct the *content* of the speech engaged in by the university or those affiliated with it . . . . Also, the cases upon which petitioner places emphasis involved *direct* infringements on the asserted right to 'determine for itself on academic grounds who may teach.'").

Neither of those requirements is present here. There is no direct infringement, because Defendants are not doing anything that directly controls what Plaintiffs wish to teach—at most, Plaintiffs are claiming that Defendants are allowing other individuals the opportunity to potentially affect what Plaintiffs wish to teach. Nor is this alleged infringement content-based, because there is nothing Defendants are doing to specifically control or direct the content of Plaintiffs' speech. *See id*. at 197 ("When, in those cases, the Court spoke of 'academic freedom' and the right to determine on 'academic grounds who may teach' the Court was speaking in reaction to content-based

regulation." (distinguishing *Keyishian v. Board of Regents,* 385 U.S. 589 (1967), which is the source of the "pall of orthodoxy" language relied on by Plaintiffs)).

### 4. The Plaintiffs' First Amendment Rights Are Not Infringed by Allowing Licensed Adults to Conceal Carry Handguns in a Classroom.

Now let's assume that Plaintiffs can assert an individual right to academic freedom under the First Amendment in this case *and* that Plaintiffs' right to academic freedom is being infringed by a state action *and* that Plaintiffs can challenge an indirect and content-neutral infringement of their academic freedom. Plaintiffs still lose.

Plaintiffs claim that their First Amendment rights are infringed as a result of the potential that someone in their classroom may be carrying a concealed handgun. They claim that the potential presence of such an individual will cause them to restrict their speech—presumably based on a belief that their unrestricted speech would lead to violent reprisals from individuals who are carrying concealed handguns in their classroom. But subjective or speculative accounts of a chilling effect are not sufficient. *See Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."). Rather, government action will only be deemed "chilling when it is likely to deter a person of *ordinary firmness* from the exercise of First Amendment rights." *Cooksey v. Futrell*, 721 F.3d 226, 236 (4th Cir. 2013) (emphasis added and citation omitted).

Plaintiffs fail to meet this standard. Indeed, the Plaintiffs never quite connect the dots on their argument. They state, in a conclusory fashion, that "their ability to teach in the classroom, to make it truly a marketplace for the robust exchange of ideas will be impaired when guns are forced into their rooms." Mem. at 9. But at no point do they clearly state *why* this exchange of ideas will be impaired. Instead, their affidavits are full of innuendo about the sensitive issues they teach, mixed

in with unfounded stereotyping of their own students. *See, e.g.*, Glass Aff. ¶ 15 ("Many religiously conservative students have extreme views on these subjects . . . . Most of the openly libertarian students in my undergraduate classes are male and overtly hostile to women's rights. I do not have specific knowledge, but I strongly suspect that they are more likely to own guns given their distaste for government and law enforcement."); *id.* ¶ 16 ("I shudder to think what might have happened had that ['diehard libertarian'] student had a concealed handgun.").

There is only one apparent basis for their fear: Plaintiffs think the adults in their class who have been licensed by the State to carry handguns state-wide are ticking time-bombs who are likely to commit acts of violence if they are allowed to carry a handgun in class where they are exposed to the Professors' ideas. That is ridiculous.

At minimum, Plaintiffs have badly failed to carry their burden to establish that this is an objectively reasonable fear. Their affidavits do not cite any relevant evidence beyond "what they know to be true." Mem. at 10. But this lack of evidence is understandable, because there is no reliable evidence to support their position. To the contrary, the evidence available proves the opposite. As the University of Texas Working Group explained in its final report: "Our examination of states that already have campus carry revealed little evidence of campus violence that can be directly linked to campus carry, and none that involves an intentional shooting." University of Texas at Austin, *Campus Carry Policy Working Group: Final Report*, at 3 (Dec. 2015), available at http://campuscarry.utexas.edu/CCWorkingGroup-FinalReport.pdf. Moreover, states such as Colorado and Utah have long allowed the carrying of concealed weapons in university classrooms, with no evidence of violence or chilled speech resulting from that decision.

The regulation of handguns state-wide also bears this out. Approximately one out of every twenty adults over the age of 21 in Texas are licensed to conceal handguns. *Id.*[4] They can conceal carry in public parks, government buildings, shopping malls, and countless other public locations. There is zero evidence that this has chilled free speech across the state, even on controversial topics.

Plaintiffs may very well personally fear that adults who have been licensed to carry handguns could attack them at any moment if they say anything potentially controversial in class. But that fear is not objectively reasonable. Accordingly, Plaintiffs do not have a First Amendment injury.

### 5. Important Governmental Interests Justify Any Potential Effect on Plaintiffs' Speech.

Finally, let's assume that Plaintiffs can assert an individual right to academic freedom under the First Amendment in this case *and* that Plaintiffs' right to academic freedom is being infringed by a state action *and* that Plaintiffs can challenge an indirect and content-neutral infringement of their academic freedom *and* that there is an effect on Plaintiffs' academic freedom by allowing licensed adults to conceal carry handguns in a classroom. Plaintiffs still lose.

The First Amendment is not violated in every case where someone's right to say whatever they want, wherever they want is curtailed. The government can regulate speech in certain situations. Here, the governmental action is content-neutral and "a content neutral regulation will be sustained if 'it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.'"

---

[4]   The University of Texas estimates, however, that less than 1% of its students will have a license to carry a handgun. *Final Report*, at 12.

*Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 662 (1994) (quoting *United States v. O'Brien*, 391 U.S. 367, 377 (1968)). "To satisfy this standard, a regulation need not be the least speech-restrictive means of advancing the Government's interests." *Id.* "Rather, the requirement of narrow tailoring is satisfied 'so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)).

All of those requirements are met here. Allowing concealed carry in classrooms furthers an important or substantial governmental interest—namely, it furthers public safety, an individual's right to self-defense, and an individual's Second Amendment rights. The government's decision to allow concealed carry in classrooms is unrelated to the suppression of free expression—even Plaintiffs only allege an indirect effect on their free expression. And the impact on free expression is no greater than is necessary to further the important government interest—not allowing students to conceal carry in classrooms would largely prevent students from ever carrying handguns on campus, which would obliterate the important government interest at stake.

Accordingly, allowing licensed adults to conceal carry in classrooms does not violate the First Amendment.

### B.    Plaintiffs Will Not Prevail On Their Equal Protection Claim.

Plaintiffs argue that it is utterly irrational for state law to treat public property differently from private property and that it is utterly irrational to prohibit handguns from certain areas of campus while allowing concealed carry in classrooms. Neither argument has any merit.

As an initial matter, Plaintiffs fail to properly appreciate just how low a bar the rational basis standard sets. Under rational basis, a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the

classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993); *see also Reid v. Rolling Fork Pub. Util. Dist.*, 979 F.2d 1084, 1087 (5th Cir. 1992) ("[T]he decision of a governmental body does not violate the equal protection guarantees if there is any basis for the action that bears a debatably rational relationship to a conceivable legitimate governmental end.").

Importantly, rational basis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Beach Commc'ns, Inc.*, 508 U.S. at 313. "A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns, Inc.*, 508 U.S. at 315.

### 1.   It Is Not Irrational For the State to Treat Public And Private Property Differently.

The classrooms where the professors are teaching are state property. The State has the right to decide how it wants to administer its property, and can distinguish how it chooses to administer its property from what it demands from private property owners. Here, the State has decided that it wishes to allow properly licensed adults to carry concealed handguns on its property, but that it will not require private individuals to do the same. The legitimate governmental interest in permitting citizens to lawfully conceal carry for purposes of self-defense can be tempered by the legitimate governmental interest in respecting private property rights. That is an eminently rational distinction for a state to make, and one that several other states have made as well. *See, e.g.*, Utah Code Ann. § 53B-3-103; Idaho Code § 18-3309; Colo. Rev. Stat. Ann. § 18-12-214; Kan. Stat. Ann. § 75-7c20.

The legislature knew full well what it was doing in drawing this distinction, because the same distinction exists in the broader regulation of handguns state-wide: Public buildings must allow the carry of handguns to a much greater degree than private buildings. To be clear, the actual motivations of the legislature are irrelevant in a rational basis analysis. *See FM Prop. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996) ("[T]he 'true' purpose of the [policy], (i.e., the actual purpose that may have motivated its proponents, assuming this can be known) is irrelevant for rational basis analysis." (citation omitted)). But in this case, the legislative history confirms the rational basis for distinguishing between public and private land. For example, Senator Brian Birdwell, the primary author of the bill, addressed this directly at a committee hearing:

> Sen. Judith Zaffarini:  In your bill, you differentiate between private institutions of higher education and public institutions of higher education.
>
> Sen. Birdwell:  Because of who owns the property.
>
> Sen. Zaffarini:  So you're giving one right to the private institutions that you're not giving to the public institutions.
>
> Sen. Birdwell:  No, I'm protecting the right of the private property owner and their Second Amendment rights and their article [1], section 23 rights to determine that. The public's—no, because it is public property. Therefore, I'm protecting the public's right to express that or exercise that Second Amendment right on public property. That's the differentiation, it's not a carve out for some special exemption. It is a respecting of both the constitutional rights that apply to the private property owner.

The Campus Personal Protection Act: Hearings on Tex. S.B. 11 before the Senate Comm. on State Affairs, 84th Leg., R.S., at 20:24 (Feb. 12, 2015), available at http://tlcsenate.granicus.com/MediaPlayer.php?view_id=30&clip_id=9093.

The Statement of Intent found in the Senate Research Center's Bill Analysis also highlights this reasoning:

> The bill states that public institutions of higher education may not circumvent the intent of the Act by imposing administrative bans and sanctions on CHLs on their campuses.

13

> Private or independent institutions of higher education may, after consulting with students, faculty and staff, establish rules or regulations prohibiting CHLs on their campuses. The structure of this bill tracks with how public and private property are generally treated elsewhere in the state under the concealed carry law.

Senate Research Center, Bill Analysis, Tex. S.B. 11, 84th Leg., R.S., at 1 (June 29, 2015), available at http://www.capitol.state.tx.us/tlodocs/84R/analysis/pdf/SB00011F.pdf.

### 2. It Is Not Irrational to Prohibit Concealed Carry In Some Areas of a University Campus, But Allow Concealed Carry In Other Areas.

Plaintiffs do not find any greater success on their argument that there is no rational basis to exclude handguns from certain places on campus, but not classrooms. The goal of the law is to generally permit license holders from carrying concealed handguns on campus, for the legitimate government interests of public safety and self-defense. Those legitimate goals can still be achieved if concealed carry is prohibited from certain areas of campus, but they cannot be achieved if concealed carry is prohibited in classrooms—because attending class is one of the primary reasons individuals will be on campus.

Accordingly, if the legislative goal is to generally allow licensed individuals to carry concealed handguns on campus, it is rational to allow concealed carry in classrooms while simultaneously prohibiting concealed carry in other areas of campus. *See, e.g.*, Tex. Att'y Gen. Op. No. KP-0051, at 2 (2015) ("[A]ttending or teaching class is the primary reason most individuals are on campus. If an institution prohibited the carrying of concealed handguns in a substantial number of classrooms, a court would likely conclude that the effect would be to 'generally prohibit' license holders from carrying concealed handguns on campus, contrary to the Legislature's express requirements."); *Final Report*, at 6 ("The primary on-campus activity for most of our more than 50,000 students is going to class. Excluding handguns from classrooms would have the effect of generally prohibiting license holders from carrying their handguns and so would violate S.B. 11.").

14

\*   \*   \*

In sum, Plaintiffs are not likely to prevail on the merits of either of the claims for which they seek a preliminary injunction. There are *at least* five independent reasons why Plaintiffs will not prevail on their claim that their right to academic freedom has been violated and there is plainly a rational basis for the distinctions drawn by the laws and policies they are challenging.

## II.   There Is No "Substantial Threat" That Plaintiffs Will Suffer Irreparable Harm.

There is no need to evaluate whether there is a substantial threat of irreparable harm, or any of the other preliminary injunction requirements, because the Plaintiffs plainly fail on the first prong of the preliminary injunction analysis. *See State of Tex. v. Seatrain Int'l, S. A.*, 518 F.2d 175, 180 (5th Cir. 1975) ("Nor is there need to weigh the relative hardships which a preliminary injunction or the lack of one might cause the parties unless the movant can show some likelihood of ultimate success."). If the Court nonetheless wishes to evaluate Plaintiffs' claims of irreparable harm, a distinction must be drawn between their First Amendment claim and their equal protection claim, since the alleged irreparable harm must be traced to a particular claim.

With respect to their First Amendment claim, Plaintiffs have rather inexplicably not cited the seminal case in their favor. But in the interest of candor to the Court, General Paxton will do so for them: in *Elrod v. Burns*, the Supreme Court explained that even the momentary loss of First Amendment freedoms constitutes irreparable injury. 427 U.S. 347, 373 (1976) (plurality opinion); *see also Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009) (applying *Elrod* in preliminary injunction context). General Paxton accordingly does not contest that when an individual suffers a First Amendment injury, that injury is irreparable. The problem for Plaintiffs is that they have no First Amendment right at stake, there is no state action to blame, there is no objectively reasonable chilling effect present, and there is sufficient government interest

outweighing any alleged infringement on free speech. Accordingly, there is no substantial threat that Plaintiffs will suffer a loss of the freedoms protected by the First Amendment and thus there is no substantial threat that they will suffer irreparable harm.

With respect to Plaintiffs' equal protection claim, there is no Supreme Court or Fifth Circuit precedent we could find that establishes that a violation of the Equal Protection Clause necessarily causes irreparable harm. *But see De Leon v. Perry,* 975 F.Supp.2d 632, 663 (W.D. Tex. 2014) ("Federal courts at all levels have recognized that violation of constitutional rights constitutes irreparable harm as a matter of law."), *aff'd sub nom. De Leon v. Abbott,* 791 F.3d 619 (5th Cir. 2015). In any event, similar to Plaintiffs' First Amendment claim, there is no risk of an equal protection violation in this case—and thus no substantial threat that irreparable harm will occur.

### III.  The Balance of Harms Counsels Against Issuing a Preliminary Injunction.

Plaintiffs will not be irreparably harmed if a preliminary injunction is issued, but Defendants will be: "When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 n.60 (5th Cir. 2013) (citing *Maryland v. King,* 133 S.Ct. 1, 3 (2012) (Roberts, C.J., in chambers); *New Motor Vehicle Bd. v. Orrin W. Fox Co.,* 434 U.S. 1345, 1351, (1977) (Rehnquist, C.J., in chambers)). For that reason alone, the balance of harms favors denying Plaintiffs' application for preliminary injunction.

Moreover, the harms that will result if a preliminary injunction issues go beyond those that will be suffered by the State. The citizens of this state—and in particular the students who wish to take the classes offered by Plaintiffs—will be denied both their statutory and constitutional rights. The statutory loss is readily apparent: If an injunction issues, it will effectively prohibit concealed

carry on campus, in violation of the rights granted by Texas law to conceal carry outside of the home. The loss of that statutory right is not compensable and is thus irreparable.

The Second Amendment harm that the public will suffer is similarly irreparable as a matter of law. Because "[t]he Second Amendment protects 'similarly intangible and unquantifiable interests' . . . a deprivation is thus considered irreparable." *Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680, 689 (W.D. Tex. 2015) (citing *Ezell v. City of Chicago,* 651 F.3d 684, 699 (7th Cir. 2011) (granting preliminary injunction in Second Amendment challenge, explaining that "for some kinds of constitutional violations, irreparable harm is presumed")). Here, Texas law is meant to further the Second Amendment rights of the public by licensing them to carry handguns in public for purposes of self-defense—and issuing an injunction of that law serves to enjoin Second Amendment rights as well.

Plaintiffs argue that an injunction does not present any Second Amendment concerns because of a recent Ninth Circuit opinion that held that there is no Second Amendment right to conceal carry in public. Mem. at 1-2 (citing *Peruta v. County of San Diego*, 2016 WL 3194315, at *6 (9th Cir. June 9, 2016) (en banc)). With all due respect to the seven judges in the *Peruta* majority, they are wrong—and a petition is currently pending for an en banc rehearing before the entire Ninth Circuit, for which the court has called for a response (the *Peruta* opinion cited by Plaintiffs was decided before a "limited en banc court" of only eleven judges, not the entire Ninth Circuit).

But, crucially, even the Ninth Circuit decision does not purport to hold that there is no Second Amendment right to self-defense outside of the home. Rather, it limited itself to the narrow question of whether the Plaintiffs had a constitutional right to be granted a permit to carry concealed handguns. The majority did not decide whether some form of public carry, whether concealed or open, must be allowed. *See Peruta*, 2016 WL 3194315, at *5 ("We do not reach the question whether

the Second Amendment protects some ability to carry firearms in public, such as open carry. . . .
The Second Amendment may or may not protect, to some degree, a right of a member of the general public to carry firearms in public.").

But despite the Ninth Circuit majority's pointed avoidance of the question, the Supreme Court has actually answered it. In *Heller*, the Court explained:

> At the time of the founding, as now, to "bear" meant to "carry." See Johnson 161; Webster; T. Sheridan, A Complete Dictionary of the English Language (1796); 2 Oxford English Dictionary 20 (2d ed.1989) (hereinafter Oxford). When used with "arms," however, the term has a meaning that refers to carrying for a particular purpose—confrontation. In *Muscarello v. United States,* 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998), in the course of analyzing the meaning of "carries a firearm" in a federal criminal statute, Justice GINSBURG wrote that "[s]urely a most familiar meaning is, as the Constitution's Second Amendment ... indicate[s]: 'wear, bear, or carry ... upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person.' " *Id.,* at 143, 118 S.Ct. 1911 (dissenting opinion) (quoting Black's Law Dictionary 214 (6th ed.1990)). We think that Justice GINSBURG accurately captured the natural meaning of "bear arms."

*D.C. v. Heller*, 554 U.S. 570, 584 (2008). And as the Seventh Circuit recently noted, "[t]he right to 'bear' as distinct from the right to 'keep' arms is unlikely to refer to the home. To speak of 'bearing' arms within one's home would at all times have been an awkward usage. A right to bear arms thus implies a right to carry a loaded gun outside the home." *Moore v. Madigan*, 702 F.3d 933, 936 (7th Cir. 2012); *see also id.* ("And one doesn't have to be a historian to realize that a right to keep and bear arms for personal self-defense in the eighteenth century could not rationally have been limited to the home.").

In Texas, an individual cannot openly carry a handgun in class, so banning the right to conceal carry in classrooms is equivalent to banning the right to carry in class. And because attending class is the primary reason most individuals on campus, banning the right to carry in class would essentially prohibit individuals from carrying handguns on public campuses at all, which raises serious

Second Amendment concerns. *See, e.g.*, *Heller*, 554 U.S. at 629 ("A statute which, under the pretence of regulating, amounts to a destruction of the right . . . would be clearly unconstitutional." (citation omitted)).

Accordingly, if the injunction is granted, both the State and the citizens of the State will suffer irreparable harm.

## IV.  The Public Interest Favors Denying the Request for Preliminary Injunction.

As noted above, the constitutional and statutory rights of the general public will be infringed if an injunction is granted to these three professors. The public interest does not favor limiting the rights of the public or preventing the enforcement of laws that the elected representatives of the people have enacted.

*   *   *

Plaintiffs have failed to satisfy any of the requirements for a preliminary injunction, let alone all four. They are not likely to succeed on the merits of their claims, there is no substantial threat that they will suffer irreparable harm if an injunction does not issue, the balance of harms favors Defendants, and the public interest supports denying the request for an injunction.

## Conclusion

The Court should deny the motion for preliminary injunction.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

/s/ Prerak Shah
PRERAK SHAH
Senior Counsel to the Attorney General
Texas Bar No. 24075053

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697
prerak.shah@texasattorneygeneral.gov

COUNSEL FOR DEFENDANT KEN PAXTON

## CERTIFICATE OF SERVICE

On August 1, 2016, this Response to the Application for Preliminary Injunction was served on

the following counsel of record for all parties via the Court's CM/ECF filing system:

James George, Jr.
GEORGE, BROTHERS, KINCAID & HORTON LLP
114 West 7th Street, Suite 1100
Austin, Texas 78701

Malcolm Greenstein
GREENSTEIN & KOLKER
1006 E. Cesar Chavez Street
Austin, Texas 78702

Renea Hicks
LAW OFFICE OF MAX RENEA HICKS
101 West 6th Street, #504
Austin, Texas 78701

COUNSEL FOR PLAINTIFFS

Amanda J. Cochran-Mccall
Anne Marie Mackin
OFFICE OF THE ATTORNEY GENERAL
GENERAL LITIGATION DIVISION
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548

COUNSEL FOR UT DEFENDANTS

/s/ Prerak Shah
PRERAK SHAH