UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Dr. Jennifer Lynn Glass, *et al.*,      *Plaintiffs*, | : <br> : <br> : |
| v. | :    No. 1:16cv845-LY |
| | : |
| Ken Paxton, *et al.*,      *Defendants*. | : <br> : |
| _____ | : |

**PLAINTIFFS' REPLY TO RESPONSES TO APPLICATION FOR PRELIMINARY INJUNCTION**

Plaintiffs reply to the UT Defendants' Response to Plaintiffs' Application for Preliminary Injunction (Doc. 28) and the Texas Attorney General's Response to Application for Preliminary Injunction (Doc. 27). Time constraints prevent a reply to all the opposing arguments, but Plaintiffs will be ready to respond on those issues, if need be, at the August 4th hearing.

**I. The relief that the professors seek is pinpointed, not a far-reaching re-working of the Texas Legislature's expansive belief in the efficacy of guns as beneficial to public life.**

Some precision about the relief sought by Plaintiffs helps frame the legal issue now presented to the Court. The proper points of reference are the university classrooms of three professors who want to exclude concealed handguns while they are teaching their classes; it is not the classrooms of the entire UT-Austin faculty, whose individual preferences on guns in their particular classrooms likely vary. And it is not the entirety of the UT-Austin campus, where students, faculty, and staff will have to hopscotch across a confusing patchwork of gun-free and gun-allowed zones.

The total number of students who would be affected—only while in the classrooms on actual class days—is 117, not the approximately 50,000 campus-wide who will be starting classes

August 24th. *See* Glass Decl. ¶ 4 (20 students in Fall class); Moore Decl. ¶ 4 (42 students in Fall classes); Carter Decl. ¶ 5 (55 students in Fall classes).

It is thus inaccurate, and wildly overstated, to suggest, as the Texas AG does, that an injunction "will effectively prohibit concealed carry on campus, in violation of the rights granted by Texas law to conceal carry outside the home." Texas AG Resp. at 16-17. Beyond the closed-in confines of the professors' UT classrooms, huge expanses of public space on and off the UT-Austin campus remain available for those with concealed handguns to roam, comfortable in the knowledge that they've got a gun at the ready if they perceive a need to use it.

The case's specific context also highlights how far off base is the suggestion that an injunction would infringe on a right recognized under the Second Amendment. *See* Texas AG Resp. at 17 (positing that the "Second Amendment harm that the public will suffer" if an injunction were to issue would be irreparable). No case anywhere or any time has ever held that there is a Second Amendment right to carry loaded concealed weapons into a college classroom (or, for that matter, onto a college campus). The Texas AG disapproves of the *en banc* 9th Circuit's holding in *Peruta* that the right to carry a concealed firearm in public, away from the home, is not a protected Second Amendment right. Texas AG Resp. at 17 (pronouncing the *Peruta* majority "wrong"). But none of the three *Peruta* dissents ventures so far as to suggest that members of the public have a constitutional right to concealed carry any place they please. Ignored in the Texas AG's Second Amendment exultation is the very limitation contained in the seminal *Heller* decision itself: nothing in *Heller*'s recognition of an individual Second Amendment right may be seen as casting doubt on "law forbidding firearms in sensitive places such as schools." 554 U.S. at 627. Two years later, the Supreme Court reiterated this limitation on the Second

Amendment's reach. *See McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010).[1] The Fifth Circuit has only recently cited this restriction in the course of explaining that the Second Amendment is subject to many kinds of restrictions and limitations. *See Hollis v. Lynch*, 2016 WL 3568063, at *5 (5th Cir. June 30, 2016); *see also NRA v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185, 193 (5th Cir. 2012) (terming *Heller* restriction a "critical passage").

## II. RETENTION OF AN INDIVIDUAL FACULTY MEMBER OPTION FOR A GUN-FREE CLASSROOM DOES NOT VIOLATE ANY UT POLICY OR ANY STATE LAW (OR THE SECOND AMENDMENT).

In light of the UT Defendants' filing, properly framing the issue (as done in Part I) suggests that either the requested relief would cause no institutional or other cognizable harm to Defendants or that specific relief is unnecessary in light of positions taken in this proceeding. Here is what the UT Defendants say:

> [T]he UT Defendants' policies do not provide for termination of public employment, or any other punitive measures against university professors.

UT Resp. at 10. This is not an isolated statement. It follows UT's representation that "punitive measures—such as termination or adverse employment action—. . . are not at issue here." *Id.* at 9. And it, in turn, is followed by: "Nor does the UT Defendants' policy provide for termination (or any other punitive or adverse action) in connection with any expressive activity." *Id.* at 11.

It follows from these UT positions that, without facing adverse employment-related action, Plaintiffs remain free to exercise their individual option as a faculty member to exclude concealed handguns from their classrooms and to inform would-be students of this choice in their course syllabi. Making the "guns-free-classroom" choice would not be with the university's

---

[1] "We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as . . . 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings.' . . . We repeat those assurances here." (J. Alito's plurality opinion)

blessing; it would just be without its interference.[2] Nor would it have the effect of "generally prohibiting license holders from carrying concealed handguns on campus," as UT's concealed carry policies are so assiduous in avoiding. *See, e.g.*, Joint Exh. 1 at 4 (Policy Statement No. 1).

Affording this choice to professors provides an equilibrium of choice. The Texas AG has emphasized that guns are not being *forced* into the classroom; rather, as he says, "an individual's decision to conceal carry in a classroom" is a "*choice* belong[ing] to the individual." Texas AG Resp. at 6 (emphasis added). If a student chooses to conceal carry on campus, and if a professor chooses to exclude guns from her classroom, then the student is still left with a choice: whether to enroll in the class that does not allow guns. The Texas AG's underlying point about individual choice is that state action is absent from the question of whether guns have to be in a UT professor's classroom. In the same way, accepting an individual professor's choice about guns in the classroom—an acceptance betokened by the UT Defendants' response—likewise separates state actions from the question of guns in the classroom.[3]

Not only would recognition of the right of individual faculty choice with respect to guns in the classroom not flout any UT campus carry policy, it would not violate any state law. Even the Texas AG agrees that the 2015 campus carry legislation did not address the question of guns in the classroom. Tex. Att'y Gen. Op. KP-51 (2015), at 1.

---

[2] This would be akin to heretofore more typical classroom policies such as prohibiting the classroom use of computers and cell phones. *See, e.g.*, Carter Decl. ¶ 9.

[3] This also would be consistent with the Texas AG's insistence that academic freedom is an institutional right, not an individual right. *See* Texas AG Resp. at 3-6. If the right is institutional, then it protects UT-Austin's choice to recognize the retained individual option of excluding guns. The Texas AG has no authority as against any individual UT-Austin faculty member on campus carry issues. At best, his only authority is in response to an individual complaint and is limited to interaction with the higher education institution itself. *See* Tex. Gov't Code § 411.209(d). It is not altogether clear from the statute whether UT-Austin comes within the statutory term "state agency or political subdivision of the state." If it does not, then the Texas AG has no enforcement authority at all in the public policy area of campus carry.

Recognizing the individual option thus violates no campus policy, no state statute, and no constitutional provision. Whatever the applicable rubric, the right Plaintiffs seek to exercise is a legally valid one, not preempted by any other law or directive.

### III. EVEN UT-AUSTIN ITSELF RECOGNIZES THE FIRST AMENDMENT HARMS FROM COMPELLING PROFESSORS TO ALLOW GUNS IN THEIR CLASSROOMS, AND THE HARMS ARE INDIVIDUALIZED.

The response of the UT Defendants may argue against the existence of a First Amendment right in this case, UT Resp. at 9-12, and the response of the Texas AG may rail against the First Amendment right being an individual right, but those at UT-Austin who developed and are implementing the campus carry policies see things differently. UT-Austin's President warned against the presence of handguns in campus buildings, specifically stating that their presence is contrary to UT-Austin's mission and "inquiry, free speech, and debate." Stip. Jt. Exh. 1, 1st page, 1st para.

The Working Group tasked with developing the campus carry policies for UT-Austin unanimously opposed guns in the classroom.[4] UT Exh. B at 26. It even "recognize[d] that allowing concealed handguns in classrooms may *chill* some discussion[.]" *Id*. at 27 (emphasis added). It expressly acknowledged that the UT System's Chancellor opposition to the campus carry legislation was echoed in this sentiment by UT faculty and other commenters:

> [T]he idea that a student might be carrying a gun would *chill the open, animated, and sometimes heated discussions* that typify their classes. Some faculty indicated that they may even feel compelled to desist from addressing certain topics in class.

*Id*. at 26 (emphasis added). In contrast to the Texas AG's position here that such concerns are "ridiculous,"[5] the UT working group did not dismiss these First Amendment concerns about a

---

[4] The Working Group was made up of 19 members, headed by Professor Goode of the UT law school. *Id*. at 30.

[5] Texas AG Resp. at 9.

chilled academic atmosphere as unfounded, theoretical, or inchoate fear. Rather, other concerns are what led them to not adopt a broad, generalized policy against guns in the classroom.

So, at least for those in the academic profession, the First Amendment arguments of Plaintiffs in this case are real concerns. And, contrary to the arguments in Defendants' responses, they are not simply theoretical concerns about what *might* happen. They are concerns arising from what they specifically know *will* happen. Academic debate will be chilled from Day One on August 24th, and the spectrum of classroom intellectual exploration narrowed. Dr. Glass was clear, when speaking of how her academic evaluations will—not may—be inhibited by the presence of guns: "This evaluative activity cannot legitimately take place in a climate of fear or intimidation." Glass Decl. ¶ 18. "Rigorous and robust academic debate and discussion *will not be possible* when an unknown number of students in the rooms possess lethal weaponry." *Id*. ¶ 21. Dr. Moore stated: "For me to properly teach my classes, especially the controversial ones, I must be free from fear from students with guns and so must my students." Moore Decl. ¶ 11. Dr. Carter stated: "I consider guns in the classroom especially deleterious to academic and intellectual liberty and the pursuit of knowledge. They restrict and deter open and robust classroom debate." Carter Decl. ¶ 14.

These are particularized statements by experienced and respected UT-Austin faculty members, not about the fear of guns (which itself is real enough), but about what the presence of guns will do—not may do—to their academic teaching. They are the embodiment of an interest in exercising their own personal rights of academic freedom under the First Amendment, not simply a reflection of what they would hope their institution would do in that regard.

The Texas AG—but notably not the UT Defendants—has argued that the First Amendment right to academic freedom is not an individual right. Texas AG Resp. at 3-6. He discusses rulings from various federal appellate circuits, but fails to address the fact that the two key Supreme Court decisions on the issue—*Keyishian v. Bd. of Regents of Univ. of State of New York*, 385 U.S. 589 (1967), and *Sweezy v. New Hampshire*, 354 U.S. 234 (1957)—recognized the constitutional principle in the individual rights context. In *Sweezy*, the lawsuit was brought, and won, by a professor, not the professor's college, based on the professor's rights in the classroom. *Keyishian* was the same.[6] The Texas AG has failed to show that these Supreme Court decisions are somehow inapplicable here.

## CONCLUSION

The Court should grant the requested preliminary injunction.

---

[6] "Early cases such as *Sweezy* and *Keyishian* recognized constitutional academic freedom as an individual as well as an institutional right." David M. Rabban, *A Functional Analysis of "Individual" and "Institutional" Academic Freedom under the First Amendment*, 53 Law & Contemp. Probs. 227, 280 (1990).

Respectfully submitted,

GEORGE, BROTHERS, KINCAID & HORTON LLP

*/s/R. James George, Jr.*
    R. James George, Jr.
    State Bar No. 07810000
114 West 7th Street, Suite 1100
Austin, Texas 78701
(512) 495-1400
(512) 499-0094 *facsimile*
rjgeorge@gbkh.com


GREENSTEIN & KOLKER

By: __/s/ *Malcolm Greenstein*___
    Malcolm Greenstein
    State Bar No.08403300
1006 E. Cesar Chavez Street
Austin, Texas 78702
malcolm@greensteinandkolker.com
Telephone:   (512) 472-6270
Facsimile:    (512) 472-8263


____/s/ *Renea Hicks*_____
Renea Hicks
Texas Bar No. 09580400
LAW OFFICE OF MAX RENEA HICKS
101 West 6th Street, Suite 504
Austin, Texas 78701
(512) 480-8231
fax (512) 480-9105
rhicks@renea-hicks.com

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of August, 2016, I served a true and correct copy of the foregoing pleading on all counsel of record through the Court's CM/ECF system.

___/s/ *Renea Hicks*_____
Max Renea Hicks