**The University of Texas System**
**Rules and Regulations of the Board of Regents**          **Rule: 10100**

1.     **Title**

       Rule on *Rules and Regulations*

2.     **Rule and Regulation**

       Sec. 1     The Regents' *Rules and Regulations* are the official repository
                  of policies and procedures established for The University of
                  Texas System by the Board of Regents. The Regents' *Rules
                  and Regulations* may be amended by a majority of all of the
                  members of the Board at any regular meeting or at any special
                  meeting called for that purpose.

       Sec. 2     The Regents' *Rules and Regulations* are intended to be written
                  such that they do not add administrative burden to compliance
                  and that they provide the proper degree of autonomy to
                  institutions of the U. T. System.

       Sec. 3     Each Rule will include the following paragraphs:

                         Number 1.      Title
                         Number 2.      Rule and Regulation
                         Number 3.      Definitions
                         Number 4.      Relevant Federal and State Statutes
                         Number 5.      Relevant System Policies, Procedures, and
                                        Forms
                         Number 6.      Who Should Know
                         Number 7.      System Administration Office(s) Responsible
                                        for Rule
                         Number 8.      Dates Approved or Amended
                         Number 9.      Contact Information

                  Rules and regulations will be placed within one of the nine
                  Series of the Regents' *Rules and Regulations*:

                         Series 10000:      Board Governance

                         Series 20000:      Administration

                         Series 30000:      Personnel

                         Series 40000:      Academic Issues

                         Series 50000:      Student Issues

**Exhibit 5**

|          |          |
|----------|----------|
| Series 60000: | Development |
| Series 70000: | Investments |
| Series 80000: | Facilities |
| Series 90000: | Research and Intellectual Property |

Sec. 4   To ensure that the Regents' *Rules and Regulations* provide the proper degree of autonomy to the U. T. System or any of the institutions, the following guidelines should be considered when drafting or amending the rules:

4.1   The rule should help ensure compliance with applicable laws and regulations, promote operational efficiencies, enhance the mission, or reduce institutional risks of the U. T. System or any of the institutions.

4.2   The rule should establish a governing principle that has Systemwide application.

4.3   The rule should communicate an important governing principle rather than specifying operational detail.

4.4   The rule should avoid dictating policy or procedure that could be better determined by an institution.

4.5   The rule should avoid restating a law or regulation.

Sec. 5   Every employee has the right to propose changes in policies and procedures and to present arguments in support thereof.

5.1   Proposals should originate and follow routines as prescribed in the Regents' *Rules and Regulations* or in an institutional *Handbook of Operating Procedures.*

5.2   When a proposal has been approved or amended by the appropriate institutional officials, faculties, and the institution's president, it shall then go to the appropriate Executive Vice Chancellor, the Deputy Chancellor, and the Chancellor for recommendation to the Board if such action is required.

5.3   When a proposal has been approved, amended, or rejected by the appropriate institutional officials, faculties, or the institution's president, any employee or group of employees may present an appeal in opposition to the action of the majority or in opposition to the recommendation of the institutional official or the

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 10100**

institutional president, and this appeal, accompanied by reasons for and against the proposal, shall go through the prescribed administrative channels and shall be presented through the appropriate Executive Vice Chancellor to the Deputy Chancellor and the Chancellor and thence to the Board for final action. The deans and other institutional officials, the institutional president, the appropriate Executive Vice Chancellor, the Chancellor, the Deputy Chancellor, and the Board may invite both sides for personal conferences and discussions.

**3.      Definitions**

None

**4.      Relevant Federal and State Statutes**

None

**5.      Relevant System Policies, Procedures, and Forms**

None

**6.      Who Should Know**

Employees
Students

**7.      System Administration Office(s) Responsible for Rule**

Office of the Board of Regents

**8.      Dates Approved or Amended**

Editorial amendments to Sec. 5.2 and 5.3 made on July 13, 2015
December 10, 2004

**9.      Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 10101**

1.      **Title**

        Board Authority and Duties

2.      **Rule and Regulation**

        Sec. 1      Authority of the Board.  The Legislature, which is given the duty
                    and authority to provide for the maintenance, support, and
                    direction of The University of Texas by Article VII, Section 10 of
                    the Texas Constitution, has delegated the power and authority
                    to govern, operate, support, and maintain The University of
                    Texas System to the Board of Regents. (See *Texas Education
                    Code* Section 65.11 et seq. and Section 51.352.) Texas court
                    cases construing these statutes have held that the Board has
                    wide discretion in exercising its power and authority and that the
                    rules adopted by the Board have the same force as statutes.
                    The System's lands and buildings are State of Texas property
                    subject to the control of the Board as the State's agent.

        Sec. 2      Amendment or Suspension of Rules.  The Regents' *Rules and
                    Regulations* may be added to, amended, waived, or suspended
                    by a majority of all of the members of the Board of Regents
                    present at any regular meeting or at any special meeting called
                    for that purpose.

        Sec. 3      Duties and Responsibilities of Each Regent.

                    3.1      In carrying out the duties and responsibilities referenced in
                             Section 1 above, it is the responsibility of each Regent to
                             be knowledgeable in some detail regarding the
                             operations, management, finances, and effectiveness of
                             the academic, research, and public service programs of
                             the U. T. System, and each member of the Board of
                             Regents has the right and authority to inform
                             himself/herself as to the duties, responsibilities, and
                             obligations of the member. Members of the Board of
                             Regents are to be provided access to such information as
                             will enable them to fulfill their duties and responsibilities as
                             Regents of the U. T. System.

                    3.2      Information requests for data or for the compilation of
                             information by an individual member of the Board will be
                             processed in compliance with Regents' Rule 10801
                             concerning Transparency, Accountability, and Access to
                             Information.

Exhibit 5

3.3   A Regent may not publicly disclose information that is confidential by law, unless disclosure is required by law or made pursuant to a vote of the Board to waive an applicable privilege.

In addition, the use or disclosure of information that has not been made public may implicate the provisions of *Texas Penal Code* Section 39.06 (Misuse of Official Information).

3.4   Members of the Board shall bring concerns about operations, accountability, compliance, or the need for an investigation to the Chancellor, Chairman, Board, or an appropriate Committee of the Board.

3.5   Members of the Board will at all times respect the role of the Chancellor as the chief executive officer of the U. T. System and will at all times respect management and reporting lines for U. T. System and institutional employees.

3.6   Each member of the Board must attend an intensive short orientation course as required by *Texas Education Code* Section 61.0841 developed by the Texas Higher Education Coordinating Board, and training sponsored or coordinated by the Office of the Governor on the first opportunity after taking the oath of office. No member of the Board appointed on or after January 1, 2016, may vote on a budgetary or personnel matter until the intensive short course is completed.

Sec. 4   Communication with Faculty, Staff, and Administration. Members of the Board of Regents are to be provided access to such personnel as in their individual judgments will enable them to fulfill their duties and responsibilities as Regents of the U. T. System.

4.1   The regular channel of communication from members of the Board to the faculty, staff, and administration is through the Chancellor, the Deputy Chancellor, the appropriate Executive Vice Chancellor, and the president of the institution involved, and a copy of any communication sent by a Regent directly to any member of the faculty, staff, or administration should be furnished

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 10101**

to the Chancellor, the Deputy Chancellor, the appropriate Executive Vice Chancellor, and the president of the institution involved; however, individual Board members are not precluded from direct participation and communication with the presidents, faculty, staff, and students of the U. T. System.

4.2    Communications from the Faculty Advisory Council, the Student Advisory Council, and the Employee Advisory Council to the Board are through the Chancellor.

4.3    Official materials for members of the Board of Regents shall be sent to the Office of the Board of Regents for distribution to the Board.

Sec. 5    Public Statements on Controversial Matters.  The Board of Regents acts to determine the official position of the U. T. System or the Board of Regents on matters of an obviously controversial nature.

5.1    Statements on such matters on behalf of the Board or the U. T. System shall be made by the Chairman of the Board or the Chancellor.

5.2    Except as allowed in this Rule, no Regent, officer, or employee shall make or issue any public statement on an obviously controversial subject which might reasonably be construed as a statement of the official position of the U. T. System or the Board of Regents without the advance approval of the Board. Each institution's *Handbook of Operating Procedures* may specify the institutional officers authorized to speak on behalf of the institution.

5.3    It is not the intent of this policy statement to stifle the right of freedom of speech of anyone speaking in a personal capacity where that person makes it clear by an express statement that he or she is not speaking for the U. T. System or the Board of Regents.

5.4    Except in unusual circumstances, Regents are expected to coordinate media contacts with and to provide advance notice to the U. T. System Office of External Relations regarding any media contacts and press statements.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 10101**

Sec. 6      Records and Information Management.  Members of the Board of Regents shall comply with the Systemwide policies regarding records retention and information management, including System Administration policies on encryption, retention, destruction, and release of documents.

6.1      In addition to required training under State law, each member of the Board will be provided training on records and document management, including compliance with U. T. System records and retention policies.

6.2      U. T. System Administration will provide a U. T. System email address and account to each Regent at the beginning of service as a member of the Board of Regents. Members of the Board are expected to use U. T. System email addresses for all communications related to public business or public policy over which the Board of Regents has supervision or control.

**3.      Definitions**

None

**4.      Relevant Federal and State Statutes**

Texas Constitution Article VII, Section 10 – Establishment of University

*Texas Education Code* Section 61.084 – Training for Members of Governing Boards

*Texas Education Code* Section 65.11 – Board of Regents

*Texas Education Code* Section 51.352 – Responsibility of Governing Boards

*Texas Government Code* Section 551.006 – Written Electronic Communications Accessible to Public

*Texas Penal Code* Section 39.06 – Misuse of Official Information

**5.      Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations*, Rule 10403 – Board Meeting Accessibility and Public Participation

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 10101**

Regents' *Rules and Regulations*, Rule 10801 – Policy on Transparency, Accountability, and Access to Information

Regents' *Rules and Regulations*, Rule 30401 – Employee and Faculty Advisory Councils

Regents' *Rules and Regulations*, Rule 50201 – Student Advisory Council

The University of Texas System Administration Policy UTS115 – Records and Information Management Policy

The University of Texas System Administration Policy UTS139 – Texas Public Information Act

The University of Texas System Administration Policy UTS165 – Information Resources Use and Security Policy

6.   **Who Should Know**

Board of Regents
Administration
Faculty
Staff
Students

7.   **System Administration Office(s) Responsible for Rule**

Office of the Board of Regents

8.   **Dates Approved or Amended**

November 5, 2015
Editorial amendments made to Sec. 4.1 on July 13, 2015
May 14, 2015
Editorial amendments made on March 30, 2015
May 20, 2014
February 6, 2014
December 10, 2004

9.   **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 10101**

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 10102**

1.     **Title**

       Chairman and Vice Chairmen

2.     **Rule and Regulation**

       Sec. 1     Composition.  Pursuant to *Texas Education Code* Section 65.11
                  the Board of Regents is composed of nine members appointed
                  by the Governor, with the advice and consent of the Senate, for
                  staggered terms of six years each, the terms of three members
                  expiring on February 1 of odd-numbered years.

       Sec. 2     Election of the Chairman.  The Chairman of the Board of
                  Regents shall be elected by the Board from its number, shall
                  serve at the pleasure of the Board, and shall report to and be
                  responsible to the Board. In case of the death, resignation,
                  disability, removal, or disqualification of the Chairman, the
                  Board shall elect a successor Chairman as soon as practicable.
                  Election of the Chairman shall take place during the February
                  meeting held in odd-numbered years or, if new members of the
                  Board have not been appointed and received the consent of the
                  Senate, at the next available opportunity.

                  2.1     Duties and Responsibilities of the Chairman.  The duties
                          and responsibilities of the Chairman shall include the
                          following:

                          (a) The Chairman shall preside over the meetings of the
                              Board.

                          (b) The Chairman shall be authorized to call special
                              meetings of the Board.

                          (c) The Chairman shall appoint the standing committees
                              of the Board and such special committees as the
                              Board may authorize.

                          (d) The Chairman shall appoint ad hoc committees as
                              necessary to address special issues.

                          (e) The Chairman shall be a nonvoting *ex officio* member
                              of all standing and special committees of the Board.

                          (f)  The Chairman, as the Board's elected leader, serves
                              as the day-to-day administrative leader of the Board.

Exhibit 5

Sec. 3      Vice Chairmen.  Vice Chairmen of the Board of Regents shall be elected by the Board from its number when the Chairman is elected and shall serve at the pleasure of the Board. At the election, the Board shall designate which Vice Chairman shall assume the duties of Chairman in case of the absence, death, resignation, disability, removal, or disqualification of the Chairman. In case of the absence, death, resignation, disability, removal, or disqualification of the Chairman, the designated Vice Chairman shall perform the duties of the Chairman until the Chairman shall resume his or her office or a successor Chairman shall have been elected as herein provided. Upon the death, resignation, disability, or removal of a Vice Chairman, the Board shall elect a successor Vice Chairman as soon as practicable.

3.      **Definitions**

None

4.      **Relevant Federal and State Statutes**

*Texas Education Code* Section 65.11 – Board of Regents

*Texas Education Code* Section 65.12 – Qualifications and Terms

5.      **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 10401 – Meetings of the Board and Standing Committees

Regents' *Rules and Regulations,* Rule 10801 – Policy on Transparency, Accountability, and Access to Information

6.      **Who Should Know**

Board of Regents

7.      **System Administration Office(s) Responsible for Rule**

Office of the Board of Regents

8.      **Dates Approved or Amended**

May 20, 2014

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 10102**

Editorial amendments made February 8, 2011
November 9, 2007
December 10, 2004

**9.      Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**       **Rule: 10201**

1.      **Title**

        General Counsel to the Board of Regents

2.      **Rule and Regulation**

        Sec. 1      General Counsel to the Board of Regents.  The General Counsel to the Board of Regents is the principal officer to the Board in the administration of the responsibilities of the Office of the Board of Regents and the principal staff officer to each member of the Board of Regents in the discharge of his or her responsibilities. In addition to the specific duties and responsibilities set forth in Section 3 below, the General Counsel to the Board shall advise the Board regarding the design and implementation of policies and procedures by which the Board of Regents may more effectively fulfill its responsibilities regarding the governance and management of The University of Texas System and shall provide legal counsel on issues such as open meetings, public information, and standards of conduct.

        Sec. 2      Appointment.  The General Counsel to the Board shall be elected by the affirmative vote of a majority of the Regents in office and shall hold office without fixed term, subject to the pleasure of the Board. The General Counsel to the Board shall report to and be responsible to the Board.

        Sec. 3      The duties and responsibilities of the General Counsel to the Board shall include the following:

               3.1      Supervise.  The General Counsel to the Board shall supervise the Office of the Board of Regents and the U. T. System Audit Office.

               3.2      Meetings.  The General Counsel to the Board shall make preparations, including Regental travel arrangements, for all meetings of the Board and its committees.

               3.3      The Agenda.  Under the direction of the Chairman of the Board or the Chairman of a standing committee, the General Counsel to the Board shall prepare and distribute the Agenda and necessary supporting documentation for all meetings of the Board and its committees.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 10201**

3.4    Open Meetings Act.  Under the direction of the Chairman of the Board or the Chairman of a standing committee, the General Counsel to the Board shall post notices of all meetings and the subject matter thereof as may be required under law.

3.5    Minutes.  The General Counsel to the Board shall oversee preparation of and sign the official Minutes of the Board and its committees.

3.6    Official Documents.  The General Counsel to the Board shall oversee filing in the Office of the Board of Regents all official documents, correspondence, and proceedings of the Board and its committees.

3.7    Seal.  The custody of the official seal of the System shall be with the General Counsel to the Board.

3.8    Rules and Regulations.  The General Counsel to the Board shall be charged with the responsibility of keeping current the Official Copy of the Regents' *Rules and Regulations* and accessible on the web. Administrative officers will be notified of any changes or additions to the rules as soon as possible after the meeting at which they were adopted.

(a) The General Counsel to the Board is authorized to make minor and non-substantive editorial changes to the Regents' *Rules and Regulations* enacted by the Board as necessary to keep the *Rules* current and correct. In the event such editorial changes are necessary, the General Counsel to the Board will ensure that members of the Board, administrative officers, and members of the public have ready access to the current version of the Regents' *Rules and Regulations*.

3.9    Reports.  As directed by the Board of Regents, the General Counsel to the Board shall:

(a) Define and establish routine reporting mechanisms, including determining the Board's information requirements; structuring reporting procedures; gathering and summarizing reports and data for presentation to the Board on a routine basis; and

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 10201**

          (b) Prepare special reports, including requesting and gathering data from the U. T. System and any of the institutions; conducting necessary analyses of data; and summarizing facts and presenting reports for the Board's consideration.

3.10    Other Duties.  In addition, the General Counsel to the Board shall perform such other duties as may be assigned by the Board of Regents or as are usual and customary and which assist the members of the Board in the discharge of their official duties.

Sec. 4    The Deputy General Counsel to the Board, the Executive Director for Board Services, the Associate General Counsel to the Board, and the Assistant General Counsel to the Board shall be appointed by the General Counsel to the Board and shall have such duties and responsibilities as shall be delegated by the General Counsel to the Board.

Sec. 5    The Secretary to the Board shall have such duties and responsibilities as shall be delegated by the General Counsel to the Board including the following:

5.1    Minutes.  The Secretary to the Board shall record and prepare the official Minutes and certified agendas of closed sessions of the Board and its committees. The official copy of the Minutes of the Board and its committees shall be kept in the Office of the Board of Regents, and certified excerpts from these Minutes shall be prepared by the Secretary to the Board as requested.

5.2    Official Documents.  The Secretary to the Board shall keep on file, archive, and preserve all official documents, correspondence, and proceedings of the Board and its committees and task forces.

5.3    Seal.  The Secretary to the Board shall affix such official seal to, and attest, all documents executed in the name of the Board that require attestation.

3.    **Definitions**

    None

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 10201**

4.    **Relevant Federal and State Statutes**

      None

5.    **Relevant System Policies, Procedures, and Forms**

      None

6.    **Who Should Know**

      Administrators

7.    **System Administration Office(s) Responsible for Rule**

      Office of the Board of Regents

8.    **Dates Approved or Amended**

      Editorial amendment to Sec. 4 made May 22, 2014
      Editorial amendment to Sec. 4 made September 10, 2010
      Editorial amendments made September 17, 2009
      November 9, 2007
      December 10, 2004

9.    **Contact Information**

      Questions or comments regarding this Rule should be directed to:

      • bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents** _____ **Rule: 10401**

1. **Title**

   Policies and Procedures for Board and Standing Committee Meetings

2. **Rule and Regulation**

   Sec. 1    Regular Meetings of the Board.  Regular meetings of the Board of Regents shall be held at such times and places as the Chairman of the Board shall designate.

   Sec. 2    Special Meetings of the Board.  Special meetings of the Board of Regents shall be held upon the call of the Chairman, or upon the written request of not less than five members of the Board. Written notification of the time, place, and purpose of a special meeting will be provided by the General Counsel to the Board to each member of the Board at least three days before the time of the meeting.

   Sec. 3    Regular Meetings of Standing Committees.  Regular meetings of standing committees of the Board of Regents shall be held in conjunction with regular meetings of the Board.

   Sec. 4    Special Meetings of Standing Committees.  Special meetings of standing committees shall be held upon the call of the Chairman of the Committee, upon the call of the Chairman of the Board of Regents, or upon the written request of a majority of the membership of the Committee. Written notification of the time, place, and purpose of a special meeting will be provided to each member of the Board at least three days before the time of the meeting, when possible.

   Sec. 5    Importance of Attendance.  Recognizing the broad authority and responsibility vested in the Board of Regents for the governance and operation of The University of Texas System, there is a specific expectation that members of the Board understand and recognize the importance of attendance at Board and committee meetings and will make a sincere commitment to attend as many of these as possible.

   Sec. 6    Rules of Order.  _Robert's Rules of Order_, when not in conflict with the provisions of these _Rules and Regulations_, shall be the rules of parliamentary procedure when the Board or any of its committees is in session.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**            **Rule: 10401**

Sec. 7     Confidentiality of Executive Session. The Board recognizes the importance of the confidentiality of executive session discussions as authorized by the Texas Open Meetings Act. In compliance with State law, the Board has determined that the only recording or notes that document executive session discussions may be a certified agenda or a recording prepared by Board Office staff. Other recordings, notes, or third party communications that document executive session discussions are not authorized.

Sec. 8     Agenda.  Each matter to be considered at a meeting of the Board or a committee of the Board as an Agenda Item shall be accompanied by a summary of the facts pertaining thereto, the need for action thereon, and the recommendations of the Chancellor, Deputy Chancellor, and Executive Vice Chancellor, Vice Chancellor, and/or president of an institution involved, where appropriate. Where contractual awards are involved, the summary shall show the method of competition, if any, the names and offers of all interested parties, and generally sufficient information to show the reasons for and fairness of each transaction.

        8.1     Except in the case of an emergency, all proposals that are to be considered by the Board or a committee of the Board shall be presented to System Administration in sufficient time to allow review prior to transmittal to the General Counsel to the Board of Regents.

        8.2     The Agenda Book for a Board meeting shall be provided to each member of the Board approximately two weeks in advance of the meeting, to the extent possible.

        8.3     Consent Agenda.  A compilation of matters required to be approved by or reported to the Board via a Consent Agenda format shall be prepared as directed and approved by the Chancellor, Deputy Chancellor, Executive Vice Chancellors, and Vice Chancellors, as appropriate.

Sec. 9     Matters Referred to Committees.  To the extent practicable, all subjects and matters requiring Board action shall be referred to the appropriate standing committee for consideration and recommendation before action is taken by the Board. If the matter could be considered by more than one committee, the Chairman of the Board will determine the appropriate referral.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**        **Rule: 10401**

3.      **Definitions**

     None

4.      **Relevant Federal and State Statutes**

     *Texas Government Code,* Chapter 551 – Open Meetings

     Robert's Rules of Order

5.      **Relevant System Policies, Procedures, and Forms**

     None

6.      **Who Should Know**

     Administrators

7.      **System Administration Office(s) Responsible for Rule**

     Office of the Board of Regents

8.      **Dates Approved or Amended**

     Editorial amendments made to Sec. 8 and 8.3 on July 13, 2015
     May 14, 2015
     Editorial amendments made on March 30, 2015
     May 20, 2014
     August 10, 2006
     December 10, 2004

9.      **Contact Information**

     Questions or comments regarding this Rule should be directed to:

         •   bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents               Rule: 10402**

1.      **Title**

        Committees and Other Appointments

2.      **Rule and Regulation**

        Sec. 1      Standing Committees.  The following committees shall be
                    standing committees of the Board of Regents to consider
                    policies for the government of all major areas: (a) Finance and
                    Planning Committee; (b) Academic Affairs Committee;
                    (c) Health Affairs Committee; (d) Facilities Planning
                    and Construction Committee; (e) Audit, Compliance, and
                    Management Review Committee; and (f) Technology Transfer
                    and Research Committee:

                    1.1      Composition and Quorum of Standing Committees.
                             Each standing committee is composed of not less than
                             four members of the Board of Regents appointed by the
                             Chairman. In the unanticipated absence of a quorum, the
                             Chairman or Committee Chairman may appoint another
                             member(s) of the Board to serve in a temporary capacity
                             on the Committee.

                    1.2      Appointment of Committee Chairman.  The Chairman of
                             each standing committee shall be appointed by the
                             Chairman of the Board of Regents shortly after his or her
                             election, by and with the consent of the Board, and shall
                             remain as Chairman of the standing committee (unless a
                             vacancy shall be caused by death, resignation, or refusal
                             of some member of a committee to act) until the
                             succeeding Board Chairman shall reconstitute the
                             committees.

                    1.3      Vacancy by Committee Chairman.  If a vacancy occurs in
                             the chairmanship of any standing committee, the
                             Chairman of the Board of Regents shall appoint another
                             member of the Board to serve as Chairman of the
                             standing committee, by and with the consent of the
                             Board.

                    1.4      Authority of Standing Committees.  The authority of
                             standing committees of the Board of Regents shall be
                             subject to action of the whole Board. The committees'
                             actions must be ratified by the Board before they shall
                             become effective.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 10402**

1.5    Duties of the Finance and Planning Committee.  The
       Finance and Planning Committee shall:

       (a) Continue long-range planning activities, including
           institutionalization of the planning process,
           development of related plan implementation policies
           and procedures for the U. T. System and any of the
           institutions, and providing coordination of related
           legislative issues.

       (b) Review and make recommendations to the Board as
           appropriate on matters related to business affairs
           such as:  operating budget; debt financing
           transactions and issues concerning the Permanent
           University Fund, including administering standards for
           resource allocation; the University Lands Office;
           Systemwide and self-insured insurance programs;
           and special task forces, initiatives, and commissions
           for the U. T. System and any of the institutions.

       (c) Review and recommend to the Board as appropriate
           on issues and activities related to The University of
           Texas Investment Management Company (UTIMCO).

1.6    Duties of the Audit, Compliance, and Management
       Review Committee.  The Audit, Compliance, and
       Management Review Committee shall:

       (a) Recommend an Audit Charter for the Audit,
           Compliance, and Management Review Committee for
           review and approval by the Board and oversee all
           internal and external auditing and compliance
           functions within The University of Texas System.

       (b) Recommend the approval of the hiring of the Chief
           Audit Executive after nomination by the Chancellor.

       (c) Recommend the approval of the annual Systemwide
           risk assessment and annual internal auditing plan.

       (d) Initiate System Administration and institutional audits,
           compliance activities, and operations management
           reviews as deemed necessary to ensure appropriate

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                **Rule: 10402**

risk management and control processes within The University of Texas System.

(e) Provide the Board with relevant information obtained from ongoing reviews of auditing, compliance, and operations activities and reports of internal auditors, external auditors, and the State Auditor's Office.

(f) Meet with external auditors, internal audit directors, and compliance officers as deemed necessary to discuss specific risk management and control issues.

1.7    Duties of the Academic Affairs Committee.  The Academic Affairs Committee shall:

(a) Report to the Board on the instructional, research, and professional service programs and activities of the general academic institutions.

(b) Report to the Board on policies relating to soliciting and securing gifts for the University's general academic institutions.

(c) Consider and report to the Board on matters affecting the libraries of the general academic institutions.

(d) Review proposed substantive changes in the doctoral degree program inventory and the academic administrative structure and recommend to the Board approval or disapproval of such changes.

(e) Report and recommend to the Board approval of matters related to education in the general academic institutions.

(f) Recommend appropriate Board action with respect to any recommendations by the Chancellor related to the appointment, promotion, and dismissal of such institutional officers as may be appropriate in the general academic institutions.

(g) Consider and report to the Board on matters relating to the research, training, and community service activities at the general academic institutions.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 10402**

(h) Make recommendations concerning capital improvement priorities related to the approved missions of the general academic institutions.

(i)  Review proposed changes to academic institution mission statements and make recommendations to the Board for approval.

1.8    The Duties of the Health Affairs Committee.  The Health Affairs Committee shall:

(a) Consider and report to the Board on matters concerned with substantive aspects of policies and programs related to the academic philosophy and objectives of the health institutions; with University relations; and with health academic planning, instruction, and research.

(b) Report and recommend to the Board approval of matters relating to education in the health institutions.

(c) Recommend appropriate Board action with respect to any recommendations by the Chancellor related to the appointment, promotion, and dismissal of such institutional officers as may be appropriate in the health institutions.

(d) Consider and report to the Board on matters relating to the research, training, and community service activities of the health institutions.

(e) Consider and report to the Board on matters affecting the libraries of the health institutions.

(f)  Report to the Board on policies relating to soliciting and securing gifts for the U. T. System's health institutions.

(g) With respect to each hospital, clinic, and patient-care facility owned by The University of Texas System, counsel with the Executive Vice Chancellor for Health Affairs regarding the bylaws and rules and regulations of the medical staff; and make recommendations to the Board concerning mechanisms and controls for the achievement and maintenance of high standards

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 10402**

of professional practices in and at the hospital, clinic, or patient-care facility.

(h) Make recommendations concerning capital improvement priorities related to the approved missions of the health institutions.

(i) Review proposed changes to health institution mission statements and make recommendations to the Board for approval.

1.9    Duties of the Facilities Planning and Construction Committee.  The Facilities Planning and Construction Committee shall:

(a) Consider matters relating to the acquisition and use of the grounds and buildings on campus and campus-related real property of The University of Texas System.

(b) Review proposed construction projects and make decisions on the selection of architects for projects determined by the Board to be of special interest; approve plans and accept bids for construction projects.

(c) Make recommendations to the Board on the award and execution of construction and equipment contracts.

(d) Make recommendations to the Board with respect to the naming of University buildings and other major facilities.

1.10   Duties of the Technology Transfer and Research Committee.  The Technology Transfer and Research Committee shall:

(a) Consider matters relating to technology transfer and research on campuses of the U. T. System, including the enhancement of research funding through philanthropy.

(b) Make recommendations to the Board on matters concerning technology commercialization, including

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 10402**

the protection and commercialization of intellectual property.

Sec. 2    Special Compensation Committee.  In addition to the standing committees, a special committee shall oversee the evaluation and assessment of key executives, as defined in Rule 20203 of these *Rules*, and shall review and report to the Board on compensation issues. The Committee will be composed of the Chairman of the Board, the Chairman of the Finance and Planning Committee, the Chairman of the Academic Affairs Committee, the Chairman of the Health Affairs Committee, and another member or members of the Board as may be appointed by the Chairman.

Sec. 3    Board for Lease of University Lands.  At the first available opportunity following February 1 of each odd-numbered year, two qualified members of the Board of Regents, as specified in *Texas Education Code* Section 66.62, shall be selected by the Board, upon recommendation of the Chairman of the Board of Regents, to serve on the Board for Lease of University Lands. In the event a Board member appointed to the Board for Lease of University Lands is unable to attend a regular meeting of the Board for Lease of University Lands, the Chairman may appoint, as a substitute, a qualified member of the Board of Regents to attend the meeting. The Office of Business Affairs, on behalf of the Board of Regents, will assign employees of The University of Texas System to assist the Board for Lease of University Lands in the performance of its duties and responsibilities and will consult with the Chancellor and the Office of General Counsel as necessary and appropriate. The Executive Vice Chancellor for Business Affairs shall report significant activities of the Board for Lease of University Lands to the Board, as appropriate.

Sec. 4    University Lands Advisory Board.  The University Lands Advisory Board ((ULAB) shall be composed of the following individuals: four appointments by the U. T. System Board of Regents, including at least one external member with industry experience, one representative from The Texas A&M University System, and the Executive Vice Chancellor for Business Affairs of the U. T. System, who shall be *ex officio* and nonvoting.

The ULAB will meet at least four times per year and will advise the Board of Regents on operations and management of the University Lands Office, including the hiring of the Chief

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 10402**

Executive, reviewing and recommending budgets to the Board, and providing strategic direction. University Lands will continue to be managed by U. T. System.

Duties delegated to the ULAB include:

(a) Developing and recommending policy for Board approval;

(b) Provide advice on the approval of routine contracts and contract forms by the Executive Vice Chancellor for Business Affairs;

(c) Promulgating policies and procedures for daily operations;

(d) Provide advice concerning staffing changes, including hiring the University Lands Chief Executive with approval by the Board and routine staffing with approval by the Executive Vice Chancellor for Business Affairs;

(e) Setting compensation levels within parameters set by the Board;

(f) Reviewing performance and making recommendations about compensation for the University Lands Chief Executive consistent with Board policy;

(g) Advising on the strategic direction for University Lands;

(h) Developing and recommending policy to the Board for Lease of University Lands (Board for Lease);

(i) Recommending changes in oil and gas development terms and conditions to the Board for Lease; and

(j) Reviewing and overseeing operations as appropriate.

The Board of Regents will retain its statutory responsibility and authority to:

(a) Approve budgets;

(b) Appoint members of ULAB (ratifying the appointment of The Texas A&M University System representative, who will be appointed by The Texas A&M University System Board of Regents);

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 10402**

    (c) Purchase and sell any property;

    (d) Approve policy recommendations and set policy for University Lands;

    (e) Approve decisions critical to the mission of University Lands, including compensation parameters;

    (f) Modify delegations to ULAB; and

    (g) Approve ULAB recommendations related to the hiring and compensation of the University Lands Chief Executive Officer.

Sec. 5    Health Care Advisory Committee. The Health Care Advisory Committee (HCAC) will be composed of individuals who collectively have expertise in the following areas of health and health care operations: clinical and business operations, finance, reimbursement, law, policy, and quality of care. The membership of the HCAC will include a minimum of three and a maximum of seven members.

    In addition to specific duties listed below, the HCAC will advise the Board of Regents, the Chancellor, the Office of Health Affairs, the Office of Academic Affairs, and the U. T. System health institutions by providing a rapid response mechanism to deal with time-sensitive matters and additional health care expertise to help the Board of Regents discharge their responsibilities more fully.

    HCAC advisory duties will include:

    (a) Recommending strategic direction;

    (b) Reviewing major initiatives, joint ventures, contracts, and affiliations;

    (c) Recommending a balanced scorecard of financial and clinical performance measures to be reviewed quarterly;

    (d) Reviewing operations and making recommendations as appropriate; and

Exhibit 5

(e) Recommending policy for approval by the Board of Regents or the Chancellor.

The Board of Regents will retain all of its statutory responsibilities and authorities to:

(a) Approve institutional budgets;

(b) Appoint members of HCAC;

(c) Purchase and sell any property;

(d) Approve policy recommendations and set policy;

(e) Approve decisions critical to the mission including compensation parameters; and

(f) Modify HCAC responsibilities.

Sec. 6    The University of Texas Investment Management Company. Pursuant to *Texas Education Code* Section 66.08, the U. T. System Board of Regents shall appoint seven members of the Board of Directors of The University of Texas Investment Management Company (UTIMCO), and two members will be appointed by The Texas A&M University System Board of Regents. Appointments made by U. T. System shall include three members of the Board of Regents, three must have a substantial background and expertise in investments, and one must be a qualified individual, as determined by the Board. Such individual may be the Chancellor of the U. T. System. Of the two members appointed by The Texas A&M University System Board of Regents, at least one must have substantial background and expertise in investments.

The selection process for the external members of the UTIMCO Board of Directors appointed by the U. T. System Board of Regents is as follows:

6.1    Soliciting of Nominations.  The Chairman of the U. T. System Board of Regents and the Chairman of UTIMCO send a joint letter to leaders in the public and private sector soliciting nominations. Nominations are to be provided to the Chairman of the U. T. System Board of Regents.

**Exhibit 5**

6.2    Advisory Committee.  The Chairman of the U. T. System Board of Regents appoints a selection advisory committee to review nominations.

6.3    Recommendations.  After review, the selection advisory committee makes recommendations to the Chairman of the U. T. System Board of Regents.

6.4    Background Checks.  At the direction of the Chairman of the U. T. System Board of Regents, the Office of the Board of Regents asks individuals to complete a background questionnaire. The Office of the Board of Regents apprises those individuals of the UTIMCO Code of Ethics and disqualifications from service. Using information from the questionnaires, the Office of the Board of Regents:

(a) confirms the educational degrees and professional certifications.

(b) assures that professional licensures and certifications are in good standing.

(c) reviews business relationships, if any, with members of the Board of Regents or the UTIMCO Board or with U. T. System or UTIMCO; and

(d) initiates review by the U. T. System Director of Police of the Texas conviction database and contacts local law enforcement.

6.5    Interviews.  The Chairman of the U. T. System Board of Regents and the Chairman of UTIMCO conduct personal interviews, as needed, to assure that the nominees possess varied investment backgrounds and risk management expertise.

6.6    Appointment Approval.  The Chairman of the U. T. System Board of Regents submits a recommended appointment for approval by the U. T. System Board of Regents.

Sec. 7    M. D. Anderson Services Corporation.  M. D. Anderson Services Corporation (formerly M. D. Anderson Cancer Center Outreach Corporation) was established in 1989 to enhance revenues of

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**      **Rule: 10402**

The University of Texas M. D. Anderson Cancer Center by establishing joint ventures in selected markets, providing additional referrals to the institution, contracting for delivery of inpatient and outpatient management, utilizing existing U. T. M. D. Anderson Cancer Center reference laboratory services, and fostering additional philanthropy in distant areas. Pursuant to bylaws approved by the Board of Regents, M. D. Anderson Services Corporation shall be managed by a seven-person Board of Directors. One of the Directors shall be a Regent appointed by the Chairman and two of the Directors shall be administrative officers of The University of Texas System, serving by virtue of their position as follows:

- The Executive Vice Chancellor for Health Affairs
- The Executive Vice Chancellor for Business Affairs.

In the absence of an appointment by the Chairman of the Board, the Chairman of the U. T. System Board of Regents' Health Affairs Committee shall serve. The President of U. T. M. D. Anderson Cancer Center appoints the other four directors.

Sec. 8      Athletics Liaison.  The Chairman of the Board may name a member or members of the Board to serve as liaison to the Board on matters concerning intercollegiate athletics. Contacts related to institutional athletics matters made to the Athletics Liaison or Liaisons will be made in consultation with the Chancellor or the Deputy Chancellor and the Executive Vice Chancellor for Academic Affairs.

Sec. 9      U. T. Austin Intercollegiate Athletics Council for Men/Women. Upon the recommendation of the Chairman, the Board of Regents appoints two individuals to serve as Regental representatives to the U. T. Austin Intercollegiate Athletics Council for Men and two individuals to serve as Regental representatives to the U. T. Austin Intercollegiate Athletics Council for Women. The appointments are for four-year staggered terms.

**3.**      **Definitions**

None

**4.**      **Relevant Federal and State Statutes**

*Texas Education Code* Section 66.08 – Investment Management

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                         Rule: 10402**

*Texas Education Code* Section 66.62 – Board for Lease of University Lands

5.     **Relevant System Policies, Procedures, and Forms**

The University of Texas System Administration Policy UTS124, Criminal Background Checks

UTIMCO Bylaws

UTIMCO Code of Ethics

M. D. Anderson Services Corporation Bylaws

U. T. Austin *Handbook of Operating Procedures* re Intercollegiate Athletic Council for Men and Intercollegiate Athletic Council for Women

6.     **Who Should Know**

Administrators

7.     **System Administration Office(s) Responsible for Rule**

Office of the Board of Regents

8.     **Dates Approved or Amended**

August 20, 2015
Editorial amendment made to Sec. 7 on July 13, 2015
November 6, 2014
Editorial amendments to add new Sec. 4 (University Lands Advisory
     Board) made June 16, 2014, and remaining sections renumbered
May 15, 2014
Editorial amendment to Sec. 4 made September 20, 2013
Editorial amendment to add 1.10(b) to the duties of the Technology
     Transfer and Research Committee made March 19, 2013
Editorial amendment to delete reference to Texas Growth Fund (Sec. 5)
     made March 7, 2013
Editorial amendment to Sec. 3 made June 14, 2012
Editorial amendment to Number 5 made April 16, 2012
Editorial amendments to Sec. 4 and 4.5 made September 8, 2011
Editorial amendment to delete Sec. 7 made September 1, 2011
August 25, 2011
February 17, 2011
Editorial amendment to add Sec. 2.5(b) made September 3, 2010

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 10402**

Editorial amendment to add Sec. 9 made November 17, 2009
August 20, 2009
Conforming amendment to Sec. 6 made May 13, 2009, following Board
    action
Editorial amendment to Sec. 1.6 and Sec. 3 made March 17, 2008
Editorial amendment to Sec. 7 made February 12, 2008
Editorial amendment to Sec. 6 made December 31, 2007
December 6, 2007
August 23, 2007
April 16, 2007
July 14, 2006
December 10, 2004

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 10403**

1.     **Title**

       Board Meeting Accessibility and Public Participation

2.     **Rule and Regulation**

       Sec. 1     Compliance with Open Meetings Act.  Meetings of the Board of
                  Regents shall be open to the public, unless otherwise
                  determined by the Board, in accordance with law. Closed
                  executive sessions may be convened as authorized by State
                  law.

       Sec. 2     Accessibility to Board Meetings.  People with disabilities
                  interested in witnessing committee and/or Board meetings and
                  requiring communication or other special accommodations
                  should contact the Office of the Board of Regents.

       Sec. 3     Request to Provide Public Testimony on an Agenda Item.
                  Members of the public are allowed to present written and oral
                  testimony, for a reasonable amount of time as determined by
                  the Chairman of the Board, on any topic listed on the agenda for
                  a Committee or Board meeting that is open to the public.
                  Testimony on topics not listed on the agenda will not be
                  allowed. Members of the public wishing to present testimony
                  shall provide their name and agenda topic they wish to address
                  to the General Counsel to the Board of Regents at least
                  24 hours in advance of the meeting. Insofar as possible, any
                  person who provides oral testimony before the Board shall
                  provide a written statement of the substance of such person's
                  testimony to the General Counsel to the Board in sufficient time
                  for copies to be distributed to the Regents prior to the meeting.
                  The Board shall consider the public testimony presented to the
                  Board on an issue before making a decision on the issue. The
                  Chairman or a majority of the Board may prescribe sanctions
                  against any person exceeding established time limits or
                  speaking on a topic not relevant to the agenda topic.

       Sec. 4     Disruption of Meetings Prohibited.  The disruption of a meeting
                  of the Board of Regents or its committees or any other meeting,
                  procession or gathering sponsored by the Board is prohibited. A
                  person is in violation of this provision if, with intent to prevent or
                  disrupt a lawful meeting of the Board, its committees or any
                  other meeting, procession, or gathering sponsored by the
                  Board, he obstructs or interferes with the meeting, procession,
                  or gathering by physical action or verbal utterance. If possible

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 10403**

the individual chairing the meeting or the General Counsel to the Board, other authorized University official or a law enforcement officer should clearly identify the disruptive conduct or verbal utterance and request that the person responsible for the disruption desist.

Sec. 5    Signs and Banners.  Persons may display a sign at a Board or committee meeting by holding or carrying it by hand or otherwise attaching it to their person. No advance permission is required.

    5.1    Any person holding or carrying a sign shall exercise due care to avoid bumping, hitting, or injuring any other person.

    5.2    Any person holding or carrying a sign shall exercise due care to avoid blocking the view of any other person observing the Board or Committee meeting. This may mean that signs may be displayed only around the perimeter of a room or an audience.

    5.3    No person shall display, hold or carry a sign in violation of *Texas Penal Code* Section 42.05(a).

Sec. 6    Report to Press on Actions of Board.  Reports on actions of the Board on matters of public interest will be given to the press as promptly as possible. These press reports shall be under the direction of the Chairman of the Board of Regents, the Chancellor, or their designated representatives.

Sec. 7    Official Business.  No business other than that placed on the Agenda and posted as required by law shall be officially transacted at a meeting of the Board of Regents or its committees.

**3.    Definitions**

Sign – any method of displaying a visual message to others.

**4.    Relevant Federal and State Statutes**

*Texas Education Code* Section 51.357 – Public Testimony at Certain Meetings of Governing Boards of General Academic Teaching Institutions

*Texas Government Code,* Chapter 551 – Open Meetings

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents               Rule: 10403**

*Texas Penal Code* Section 42.05(a) – Disrupting Meeting or Procession

5.     **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations*, Rule 10101 – Board Authority and Duties

Regents' *Rules and Regulations*, Rule 10801 – Policy on Transparency, Accountability, and Access to Information

6.     **Who Should Know**

Board of Regents
Administration
Faculty
Staff
Students

7.     **System Administration Office(s) Responsible for Rule**

Office of the Board of Regents

8.     **Dates Approved or Amended**

Editorial amendments made on March 30, 2015
Editorial amendment to the title made May 27, 2014
Editorial amendment to Number 4 made May 22, 2014
February 6, 2014
April 12, 2012
August 11, 2005
December 10, 2004

9.     **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 10501**

1.      **Title**

        Delegation to Act on Behalf of the Board

2.      **Rule and Regulation**

        Sec. 1    Background

                  1.1    Identification of Significant Contracts or Documents.
                         Institutional presidents and executive officers at U. T.
                         System Administration are responsible for identifying
                         contracts, agreements, and other documents of such
                         significance to require the prior approval of the Board of
                         Regents. Each such matter so identified shall be
                         presented to the Board by the Chancellor as an agenda
                         or Consent Agenda item at a meeting of the Board.

                  1.2    Assurance of Authority to Act.  The officer or employee
                         executing any document on behalf of the Board of
                         Regents shall be responsible for assuring that he or she
                         has authority to act on behalf of the Board and that such
                         authority is exercised in compliance with applicable
                         conditions and restrictions. Documents executed on
                         behalf of the Board pursuant to authority granted under
                         these *Rules and Regulations* shall not require further
                         certification or attestation.

                  1.3    Delegation Process.  The primary delegate identified in
                         these *Rules and Regulations* or in an official Board action
                         may further delegate his or her delegated authority to a
                         secondary delegate unless otherwise specified. Any such
                         further delegation of authority must be made in writing
                         and the primary delegate shall permanently maintain, or
                         cause to be maintained, evidence of all such delegations.
                         A secondary delegate of the primary delegate may not
                         further delegate such authority.

                  1.4    Delegate's Responsibilities.  The primary delegate
                         identified in these *Rules and Regulations* as authorized
                         to execute and deliver on behalf of the Board of Regents
                         various types of contracts, agreements, and documents
                         shall maintain, or cause to be maintained, necessary and
                         proper records with regard to all contracts, agreements,
                         and documents executed and delivered pursuant to such
                         delegated authority, in accordance with any applicable

---

**Exhibit 5**

records retention schedule or policy adopted by the Board, the U. T. System Administration, or the institution. The primary delegate must also maintain, or cause to be maintained, sufficient accounting systems and procedures to assure that contracts, amendments, and renewals for the purchase of goods and services are presented to the Board for approval if required by these *Rules and Regulations*.

1.5     Actions of the Board as Trustee.  Authority delegated by the Board of Regents in these *Rules and Regulations* includes actions that may be taken by the Board in its capacity as trustee of any trust to the extent such delegation is permitted by law.

1.6     Power to Establish Policies.  No employee of the U. T. System or any of the institutions, as an individual or as a member of any association or agency, has the power to bind the System or any of the institutions unless such power has been officially conferred in advance by the Board of Regents. Any action which attempts to change the policies or otherwise bind the System or any of the institutions, taken by any individual or any association or agency, shall be of no effect whatsoever until the proposed action has been approved by the president of an institution concerned, if any, the appropriate Executive Vice Chancellor, the Deputy Chancellor, and the Chancellor, and ratified by the Board.

Sec. 2     Delegation

2.1     Compliance with Special Instructions.  All authority to execute and deliver contracts, agreements, and other documents is subject to these *Rules and Regulations* and compliance with all applicable laws and special instructions or guidelines issued by the Chancellor, the Deputy Chancellor, an Executive Vice Chancellor, and/or the Vice Chancellor and General Counsel. Special instructions or guidelines by the Chancellor, the Deputy Chancellor, an Executive Vice Chancellor, or the Vice Chancellor and General Counsel may include without limitation instructions concerning reporting requirements; standard clauses or provisions; ratification or prior approval by the Board of Regents or the appropriate

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 10501**

Executive Vice Chancellor; review and approval by the Office of General Counsel; and recordkeeping.

2.2     Contracts Not Requiring Board Approval.  The following contracts or agreements, including purchase orders and vouchers, do not require prior approval by the Board of Regents.

2.2.1     Construction Projects.  Contracts, agreements, and documents relating to construction projects previously approved by the Board of Regents in the Capital Improvement Program and Capital Budget or Minor Projects.

2.2.2     Construction Settlements.  All settlement claims and disputes relating to construction projects to the extent funding for the project has been authorized.

2.2.3     Intellectual Property.  Legal documents, contracts, or grant proposals for sponsored research, including institutional support grants, and licenses or other conveyances of intellectual property owned or controlled by the Board of Regents as outlined in Rule 90101 of these Rules.

2.2.4     Replacements.  Contracts or agreements for the purchase of replacement equipment or licensing of replacement software or services associated with the implementation of the software.

2.2.5     Routine Supplies. Contracts or agreements for the purchase of routinely purchased supplies or equipment.

2.2.6     Approved Budget Items. Purchases of new equipment or licensing of new software or services associated with the implementation of the software, identified specifically in the institutional budget approved by the Board of Regents.

2.2.7     Group Purchases.  Purchases made under a group purchasing program that follow all

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                Rule: 10501**

applicable statutory and regulatory standards for procurement.

2.2.8    Loans.  Loans of institutional funds to certified nonprofit health corporations, which loans have been approved as provided in The University of Texas System Administration Policy UTS166, *Cash Management and Cash Handling Policy* and The University of Texas System Administration Policy UTS167, *Banking Services Policy* concerning deposits and loans.

2.2.9    Certain Employment Agreements.  Agreements with administrators employed by the U. T. System or any of the institutions, so long as such agreements fully comply with the requirements of *Texas Education Code* Section 51.948 including the requirement to make a finding that the agreement is in the best interest of the U. T. System or any of the institutions, except those with total annual compensation of $1 million or greater or with proposed multiyear contracts of $1 million or greater.

2.2.10   Energy Resources.  Contracts or agreements for utility services or energy resources and related services, if any, which contracts or agreements have been approved in advance by the Chancellor or the Chancellor's delegate.

2.2.11   Library Materials and Subscriptions.  Contracts or agreements for the purchase or license of library books and library materials.

2.2.12   Athletic employment agreements.  Contracts, contract revisions, and contract extensions with athletic directors and coaches except those with total annual compensation of $1 million or greater or those with proposed multiyear contracts totaling $1 million or greater.

(a)    Contracts, contract revisions, and contract extensions for individuals with total annual compensation of $1 million or greater or those with proposed multiyear contracts

**Exhibit 5**

totaling $1 million or greater may be negotiated and executed by the President following consultation with the Chancellor or the Deputy Chancellor, the Executive Vice Chancellor for Academic Affairs, the Vice Chancellor and General Counsel, and the Chairman of the Board of Regents and additional consultation, as requested by the Chairman, to determine if special circumstances require an offer or contract change to be made prior to a scheduled meeting of the Board and if the proposed offer or contract change is in the best interest of the institution.

(b)     Such special circumstance contracts shall be submitted to the Board for formal approval via the Consent Agenda at the next appropriate meeting of the Board as required by Rule 20204 of these Rules.

(c)     Alternatively, the President may seek prior approval of the Board to negotiate with a slate of identified individuals within defined contract terms and proceed, if authorized, to hire an athletic director or coach and submit a contract for formal approval by the Board as set out in (b) above.

(d)     It is the expectation of the Board, the Chancellor, the Deputy Chancellor, and the Executive Vice Chancellor for Academic Affairs that each President will assure the Chairman, the Chancellor, and the Executive Vice Chancellor for Academic Affairs are provided advance notice of proposed hirings and potential terms of employment related to such contracts in advance of an offer or publication or public distribution of information to allow for meaningful consultations and/or approvals.

2.2.13   Athletic Games.  Contracts or agreements related to athletic games, including postseason bowl games. If the contract or agreement

**Exhibit 5**

exceeds $1 million in value, the contract or agreement must be approved by the Executive Vice Chancellor for Academic Affairs and be in a form acceptable to the Vice Chancellor and General Counsel.

2.2.14    Property or Casualty Losses.  Contracts or agreements with a cost or monetary value to the U. T. System or any of the institutions in excess of $1 million but not exceeding $10 million associated with or related to a property or casualty loss that is expected to exceed $1 million may be approved, executed, and delivered by the Chancellor. The Chancellor shall consult with the institutional president, if applicable.

2.2.15    Health Operations.  Contracts or agreements for the procurement of routine services or the purchase or lease of routine medical equipment, required for the operation or support of a hospital or medical clinic, if the services or equipment were competitively procured.

2.2.16    Increase in Board Approval Threshold.  An institution's dollar threshold specified in Section 3.1 may be increased to up to $5 million by the Vice Chancellor and General Counsel, after consultation with the General Counsel to the Board of Regents, if it is determined that the institution has the expertise to negotiate, review, and administer such contracts. Unless approved in advance by the Vice Chancellor and General Counsel, any increase will not apply to contracts or agreements designated as Special Procedure Contracts by the Vice Chancellor and General Counsel.

2.2.17    Group Employee or Student Benefits.  Contracts or agreements for uniform group employee or student benefits, including those offered pursuant to Chapter 1601, *Texas Insurance Code.*

2.3    Delegation of Other Matters.

**Exhibit 5**

2.3.1      Institutional Agreements for Dual Credit. The Board of Regents delegates the authority to approve and execute dual credit partnership agreements for the academic institutions to the Executive Vice Chancellor for Academic Affairs.

2.3.2      Construction Settlements. The Board of Regents delegates authority to execute all documents necessary or desirable to settle claims and disputes relating to construction projects to the System Administration or institution official designated in the construction contract to the extent funding for the project has been authorized.

2.3.3      Memorandum of Understanding with University-Affiliated Foundation. The Board of Regents delegates authority to execute a Memorandum of Understanding between U. T. System or a U. T. System institution and an affiliated foundation to the institutional president or the Chancellor after approval by the Deputy Chancellor, the appropriate Executive Vice Chancellor, and the Vice Chancellor and General Counsel (see Rule 60305).

2.4      Signature Authority. The Board of Regents delegates to the Chancellor or the president of an institution authority to execute and deliver on behalf of the Board contracts and agreements of any kind or nature, including without limitation licenses issued to the Board or an institution. In addition to other primary delegates the Board assigns in the Regents' *Rules and Regulations*, the Board assigns the primary delegate for signature authority for the following types of contracts.

2.5      System Administration and Systemwide Contracts. The Board of Regents delegates to the Executive Vice Chancellor for Business Affairs authority to execute and deliver on behalf of the Board contracts or agreements:

(a) affecting only System Administration,

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 10501**

       (b) binding two or more institutions of the U. T. System
          with the concurrence of the institutions bound, or

       (c) having the potential to benefit more than one
          institution of the U. T. System so long as participation
          is initiated voluntarily by the institution.

2.6    Contracts Between or Among System Administration and
Institutions.  The Board of Regents delegates to the
Executive Vice Chancellor for Business Affairs authority
to execute on behalf of the Board contracts or
agreements between or among System Administration
and institutions of the U. T. System for resources or
services. Any such contract or agreement shall provide
for the recovery of the cost of services and resources
furnished.

2.7    Contracts with System Administration or Between or
Among Institutions.  The Board of Regents delegates to
the president of an institution authority to execute on
behalf of the Board contracts or agreements with System
Administration or between or among institutions of the
U. T. System for resources or services. Any such
contract or agreement shall provide for the recovery of
the cost of services and resources furnished.

2.8    Contracts for Legal Services and Filing of Litigation.  The
Board of Regents delegates to the Vice Chancellor and
General Counsel authority to execute and deliver on
behalf of the Board contracts for legal services and such
other services as may be necessary or desirable in
connection with the settlement or litigation of a dispute or
claim after obtaining approvals as may be required by
law. Litigation to be instituted under these contracts on
behalf of the Board, System Administration, or an
institution of U. T. System must have the prior approval of
the Vice Chancellor and General Counsel.

2.9    Settlement of Disputes.  Except as provided in
Section 3.6 below, the Board of Regents delegates to the
Vice Chancellor and General Counsel authority to
execute and deliver on behalf of the Board agreements
settling any claim, dispute, or litigation. The Vice
Chancellor and General Counsel shall consult with the
institutional president and the appropriate Executive Vice

Exhibit 5

Chancellor, Deputy Chancellor, or Chancellor with regard to all settlements greater than $150,000 that will be paid out of institutional funds. Settlements greater than $1,000,000 will require the approval of the Board as outlined in Section 3.6 below. The Vice Chancellor and General Counsel shall consult with the Office of External Relations with respect to settlement of will contests and other matters relating to gifts and bequests administered by that Office.

Sec. 3   Matters Not Delegated. The following contracts or agreements, including purchase orders or vouchers and binding letters of intent or memorandums of understanding, must be submitted to the Board for approval or authorization:

3.1   Contracts Exceeding $1 Million.

3.1.1   All contracts or agreements, with a total cost or monetary value to the U. T. System or any of the institutions of more than $1 million, unless exempted in Section 4 below. The total cost or monetary value of the contract includes all potential contract extensions or renewals whether automatic or by operation of additional documentation. For purposes of this Rule, any contract with unspecified cost or monetary value with a term of greater than four years is presumed to have a total value of greater than $1 million.

3.1.2   Any amendment, extension, or renewal that increases the cost or monetary value of the original contract to more than $1 million must be submitted to the Board for approval or authorization. Any amendment, extension, or renewal with a cost or monetary value that exceeds 25% of the cost or monetary value of the original contract approved by the Board must be submitted to the Board for approval.

3.2   Contracts with Foreign Governments.  Contracts or agreements of any kind or nature, regardless of dollar amount, with a foreign government or agencies thereof, except affiliation agreements and cooperative program agreements, material transfer agreements, sponsored

**Exhibit 5**

research agreements and licenses, or other conveyances of intellectual property owned or controlled by the Board of Regents prepared on an approved standard form or satisfying the requirements set by the Office of the General Counsel, or agreements or contracts necessary to protect the exchange of confidential information or nonbinding letters of intent or memorandums of understanding executed in advance of definitive agreements each as reviewed and approved by the Vice Chancellor and Office of General Counsel.

3.3     Contracts Involving Certain Uses of Institution Names, Trademarks, or Logos.  Except as specifically allowed under existing contracts entered into between the Board of Regents and nonprofit entities supporting a U. T. System institution, agreements regardless of dollar amount that grant the right to a non-U. T. entity to use the institutional name or related trademarks or logos in association with the provision of a material medical-related service or in association with physical improvements located on property not owned or leased by the contracting U. T. System institution.

3.4     Contracts with Certain Officers.  Agreements, regardless of dollar amount, with the Chancellor, a president, a former Chancellor or president, the Deputy Chancellor, an Executive Vice Chancellor, a Vice Chancellor, the General Counsel to the Board, or the Chief Audit Executive are subject to the applicable provisions of *Texas Education Code* Section 51.948.

3.5     Insurance Settlements.

(a) Settlements in excess of $1 million must have the approval of the Board.

(b) Settlement claims from insurance on money and securities or fidelity bonds of up to $1 million shall be approved by the Executive Vice Chancellor for Business Affairs.

(c) If a loss is so extensive that partial payments in excess of $1 million are necessary, the Chancellor is delegated authority to execute all documents related to the partial payment or adjustment. Final settlement

**Exhibit 5**

of claims in excess of $1 million will require approval by the Board.

3.6   Settlement of Disputes.  Settlements of any claim, dispute or litigation for an amount greater than $1 million require approval. The settlement may also be approved by the appropriate standing committee of the Board of Regents. The Vice Chancellor and General Counsel shall consult with the institution's president and appropriate Executive Vice Chancellor or Vice Chancellor with regard to all settlements in excess of $150,000 that will be paid out of institutional funds.

3.7   Power to Authorize Expenditures.  No expenditure out of funds under control of the Board shall be made and no debt or obligation shall be incurred and no promise shall be made in the name of the System or any of the institutions or of the Board of Regents by any member of the respective staffs of the U. T. System or any of the institutions except:

   3.7.1   In accordance with general or special budgetary apportionments authorized in advance by the Board of Regents and entered in its minutes; or

   3.7.2   In accordance with authority specifically vested by the Board of Regents in a committee of the Board; or

   3.7.3   In accordance with authority to act for the Board of Regents when it is not in session, specifically vested by these *Rules and Regulations* or by special action of the Board.

Sec. 4   Exceptions.  This Rule does not apply to any of the following:

4.1   UTIMCO.  Management of assets by UTIMCO, which is governed by contract and the provisions of Rule 70101, 70201, 70202, and 70401 of these *Rules and Regulations*.

4.2   Acceptance of Gifts.  The acceptance, processing, or administration of gifts and bequests, which actions are governed by Rule 60101, 60103, 70101, and 70301 of

**Exhibit 5**

these *Rules and Regulations* and applicable policies of the Board of Regents.

4.3     Statutory.  Any power, duty, or responsibility that the Board has no legal authority to delegate, including any action that the Texas Constitution requires be taken by the Board of Regents.

## 3.     Definitions

Settlement – the amount of the settlement shall mean the amount that might be reasonably expected to be recoverable by the U. T. System or any of the institutions but not received pursuant to the settlement or, in the case of a claim against the U. T. System, the total settlement amount to be paid by the U. T. System.

Group Purchasing Program – for purposes of this Rule, a purchasing program established by (1) a state agency that is authorized by law to procure goods and services for other state agencies, such as the Texas Procurement and Support Services Division of the Texas Comptroller of Public Accounts and the Texas Department of Information Resources, or any successor agencies, respectively; or (2) a group purchasing organization in which the institution participates, such as Novation, Premier, Western States Contracting Alliance, and U.S. Communities Government Purchasing Alliance; or (3) the U. T. System Supply Chain Alliance.

## 4.     Relevant Federal and State Statutes

*Texas Education Code* Section 51.928(b) – Written Contracts or Agreements Between Certain Institutions

*Texas Education Code* Section 51.948 – Restrictions on Contracts with Administrators

*Texas Education Code* Section 65.31(g) – Delegation by the Board

*Texas Government Code* Section 618.001 – Uniform Facsimile Signature of Public Officials Act

*Texas Government Code* Sections 669.001 - 669.004 – Restrictions on Certain Actions Involving Executive Head of State Agency

Exhibit 5

*Texas Insurance Code,* Chapter 1601 – Uniform Insurance Benefits Act for Employees of The University of Texas System and The Texas A&M University System

5.     **Relevant System Policies, Procedures, and Forms**

The University of Texas System Administration Policy UTS166, *Cash Management and Cash Handling Policy*

The University of Texas System Administration Policy UTS167, *Banking Services Policy*

The University of Texas System Administration Policy UTS145, *Processing of Contracts*

Regents' *Rules and Regulations,* Rule 20204 – Determining and Documenting the Reasonableness of Compensation

Regents' *Rules and Regulations,* Rule 60101 – Acceptance and Administration of Gifts

Regents' *Rules and Regulations,* Rule 60103 – Guidelines for Acceptance of Gifts of Real Property

Regents' *Rules and Regulations,* Rule 70101 – Authority to Accept and Manage Assets

Regents' *Rules and Regulations,* Rule 70201 – Investment Policies

Regents' *Rules and Regulations,* Rule 70202 – Interest Rate Swap Policy

Regents' *Rules and Regulations,* Rule 70401 – Oversight Responsibilities for UTIMCO

Litigation Approval Request Form

Special Procedure Contracts

Contract Thresholds Chart (November 13, 2015)

6.     **Who Should Know**

Administrators

7.     **System Administration Office(s) Responsible for Rule**

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**             **Rule: 10501**

Office of the Board of Regents

8.    **Dates Approved or Amended**

Editorial amendment to Section 2.2.12 made January 7, 2016
Editorial amendment to Section 2.2.3 made September 17, 2015
Editorial amendments to Sec. 1.6, 2.1, 2.2.12(a) and (d), 2.3.3, 2.9, and
3.4 made July 13, 2015
November 6, 2014
Editorial amendment to add Sec. 2.3.3 made May 30, 2014
May 15, 2014
Editorial amendment to Section 2.2 made October 16, 2013
Editorial amendment to Section 2.2.17 made May 10, 2012
Editorial amendment to Section 1.1 made April 12, 2012
Editorial amendment to Section 2.9 made April 11, 2012
August 25, 2011
Editorial amendments to rearrange the Rule made April 15, 2011
Editorial amendment to Section 4.12 made December 1, 2010
February 5, 2010
November 12, 2009
August 20, 2009
Editorial amendment to add Subsection 4.17 (Group Employee Benefits)
back into the Rules made August 6, 2009
Editorial amendment to Number 4 made January 5, 2009
November 13, 2008
May 15, 2008
Editorial amendment to Sec. 3.3 made March 17, 2008
Editorial amendment to Number 3 made January 28, 2008
May 10, 2007
February 8, 2007
May 12, 2005
December 10, 2004

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 10601**

1.    **Title**

      Guidelines for the Santa Rita Award

2.    **Rule and Regulation**

      Sec. 1    Standards.  A Systemwide award that may be made annually to
                an individual who has made valuable contributions over an
                extended period to The University of Texas System in its
                developmental efforts. An individual is defined as a person, as
                opposed to a corporation, charitable trust, foundation, and like
                entities. The recipient may be judged on the basis of a broad list
                of criteria, primary among which will be a demonstrated concern
                for the principles of higher education generally, as well as deep
                commitment to the furtherance of the purposes and objectives
                of The University of Texas System specifically.

                1.1    Participation by the recipient in the affairs of the U. T.
                       System shall be of such character and purpose to serve
                       as a high example of selfless and public-spirited service.
                       Of particular interest will be the effect that such individual
                       activity may have engendered similar motivation from
                       other public and private areas toward the U. T. System.

      Sec. 2    General Conditions.  The following general conditions apply to
                the award:

                2.1    The award, to be known as the "Santa Rita Award," will
                       consist of a medallion to be presented no more frequently
                       than annually.

                2.2    The award shall be made on behalf of the Board of
                       Regents of The University of Texas System.

                2.3    An individual may receive the award only once.

                2.4    Posthumous awards may be given.

                2.5    No member of the Board of Regents shall be eligible to
                       receive the Santa Rita Award until the termination of the
                       member's service.

      Sec. 3    Nominations for Awards.  Nominations for the award shall be
                forwarded to the Chairman of the Board of Regents or the
                General Counsel to the Board (Office of the Board of Regents,

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**          **Rule: 10601**

The University of Texas System, 201 West Seventh Street, Suite 820, Austin, Texas  78701-2981). The nominator shall provide such supporting information and documentation as may be requested by the Chairman or the General Counsel to the Board.

Sec. 4    Selection of Awardees.  Awards shall be made, upon recommendation of the Chairman of the Board following consultation with others including the Chancellor and other appropriate U. T. System officials, by a majority vote of members present at a Board of Regents' meeting at which a quorum is present.

3.    **Definitions**

None

4.    **Relevant Federal and State Statutes**

None

5.    **Relevant System Policies, Procedures, and Forms**

None

6.    **Who Should Know**

Administrators

7.    **System Administration Office(s) Responsible for Rule**

Office of the Board of Regents

8.    **Dates Approved or Amended**

December 10, 2004

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 10701**

1.      **Title**

        Policy Against Discrimination

2.      **Rule and Regulation**

        Sec. 1    To the extent provided by applicable law, no person shall be
                  excluded from participation in, denied the benefits of, or be
                  subject to discrimination under, any program or activity
                  sponsored or conducted by The University of Texas System or
                  any of the institutions, on the basis of race, color, national origin,
                  religion, sex, age, veteran status, or disability.

3.      **Definitions**

        None

4.      **Relevant Federal and State Statutes**

        The United States Constitution, First Amendment

        Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 et seq.,
        and its implementing regulation at 34 C.F.R. Part 106, which prohibit
        discrimination on the basis of sex

        Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 (amended
        1992), and its implementing regulation at 34 C.F.R. Part 104, which
        prohibit discrimination on the basis of disability

        The Uniformed Services Employment and Reemployment Rights Act,
        38 U.S.C. §4331 et seq., and its implementing regulation at 20 CFR Part
        1002, which prohibit discrimination based on veteran status

        Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d et seq. and its
        implementing regulation at 34 C.F.R. Part 100, which prohibit
        discrimination on the basis of race, color, or national origin.

        The Age Discrimination Act of 1975, 42 U.S.C. §6101 et seq., and its
        implementing regulation at 34 C.F.R. Part 110, which prohibit
        discrimination on the basis of age

        Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §12132,
        and its implementing regulation at 28 C.F.R. Part 35, which prohibit
        discrimination on the basis of disability

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 10701**

5. **Relevant System Policies, Procedures, and Forms**

   Regents' *Rules and Regulations,* Rule 30107 – Veteran's Employment
   Preferences

   The University of Texas System Administration Policy UTS105, Sexual
   Orientation Nondiscrimination Policy

6. **Who Should Know**

   Administrators
   Faculty
   Staff
   Students

7. **System Administration Office(s) Responsible for Rule**

   Office of the Board of Regents

8. **Dates Approved or Amended**

   Editorially amended Number 4 on July 10, 2008, August 19, 2008, and
   August 25, 2008
   Editorially amended Numbers 4 and 5 on February 15, 2008
   December 10, 2004

9. **Contact Information**

   Questions or comments regarding this Rule should be directed to:

   - bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 10801**

1.      **Title**

        Policy on Transparency, Accountability, and Access to Information

2.      **Rule and Regulation**

        Sec. 1    The Board of Regents and U. T. System Administration are
                  committed to enhancing transparency, accountability, and
                  access and disclosure of information to the public, the media,
                  elected and appointed state and federal officials, and executive
                  policy makers.

        Sec. 2    To assist in achieving these goals, the Board wishes to provide
                  maximum transparency to the public and its representatives to
                  the fullest extent allowed by law while ensuring compliance with
                  best governance practices and appropriate protection of
                  confidential information and personal privacy. The Board
                  acknowledges significant U. T. System leadership and progress
                  in expanding access and transparency, supports these ongoing
                  efforts, and recognizes that the efforts will require continuing
                  and long-term commitment.

        Sec. 3    Compliance with Texas Public Information Act (TPIA).  The
                  Board requires all U. T. System Administration, U. T. System
                  institutional employees, and members of the Board to comply
                  fully with the requirements of the Texas Public Information
                  Act (TPIA) and to respond thoroughly, appropriately, and in
                  accordance with State and federal laws to all lawful requests as
                  detailed in U. T. Systemwide Policy UTS139. Any substantive
                  changes to UTS139 require approval by the Board.

                  The Board expects all employees to work to achieve and
                  maintain an environment of transparency, cooperation, and
                  compliance with applicable law and policy. The Board will
                  support staffing levels and acquisition of resources necessary
                  and reasonable to implement and achieve the intent of this
                  Rule.

        Sec. 4    Enhancement of Access to and Analysis of Data and
                  Information.

                  4.1    Importance of Data Collection, Retention, and Analysis.
                         The U. T. System recognizes and supports the importance
                         of data collection, retention, and analysis for purposes
                         such as reviewing System operations and policies, guiding

**The University of Texas System**
**Rules and Regulations of the Board of Regents**               **Rule: 10801**

decision-making, improving productivity and efficiency, and evaluating performance outcomes.

4.2     Increase in the Amount of Data Available.  The U. T. System recognizes that the amount of significant data being accumulated by the U. T. System and U. T. System institutions is expanding exponentially each year. The System further recognizes that current data collection and management systems in use are not sufficient to effectively manage and utilize all data becoming available.

4.3     Opportunities for Additional Enhancements.  The U. T. System is continually looking for ways to enhance the performance of its institutions, to support access and success for all students, to improve educational outcomes, and to remain a national leader in providing access to data. As such, the U. T. System is committed to continue collecting additional data and finding and utilizing new, better and more expansive systems and software with which to manage and access these data. These improved systems and new software will greatly improve the ability to generate better informed decisions to enhance student success, to increase productivity and efficiency, and to facilitate access to and analysis of the data.

4.4     Framework for Advancing Excellence.  The Framework, established in 2011, implemented a centralized data warehouse for the purposes of evaluating the progress of U. T. System institutions in achieving the goals set forth in the Framework. The data warehouse is a central source of information for the U. T. System Dashboard, which specifically supports the goals of transparency and efficiency as expressed in the Framework.

        (Framework url:
        https://www.utsystem.edu/chancellor/speeches/a-framework-for-advancing-excellence-throughout-the-university-of-texas-system)

4.5     Information Accessible through Data Dashboard.  The U. T. System Dashboard provides a rolling 10 years (where available) of data on the performance of all U. T. System institutions and is available free to the public. The Dashboard provides important data and metrics

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**               **Rule: 10801**

concerning students, faculty, research and technology transfer, health care, and productivity and efficiency.

(Dashboard url: http://data.utsystem.edu/)

Sec. 5    Processing Information Requests.

5.1    Requests by Members of the Public.  To enhance transparency, U. T. System institutions and U. T. System Administration are expected to act in strict compliance with the Texas Public Information Act (TPIA) and applicable State and federal law in providing public access to governmental records.

5.2    Requests by Representatives of the Media.  In addition to the public right of access to information through the TPIA, representatives of the media may utilize U. T. System Administration and institutional offices of external relations as an additional resource for questions.

5.3    Requests by Members of the Texas Legislature.  The TPIA provides members of the Texas Legislature a special right of access to information needed for legislative purposes. U. T. System Administration and institutional offices of governmental affairs serve as additional resources for questions from members of the Legislature.

5.4    Requests by Members of the Board of Regents and Chancellor.

5.4.1    This process is not intended nor will it be implemented to prevent a member of the Board of Regents or the Chancellor from access to information or data necessary for the Board member or the Chancellor to fulfill his or her official duties and responsibilities.

5.4.2    Except for a request processed under Subsection 5.4.4, requests by an individual Regent for information shall be submitted to the Chancellor in writing by the requesting Regent, with a copy to the Board Chairman and General Counsel to the Board. An individual Regent's written request for information shall identify, with specificity, the need

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                Rule: 10801**

for the information requested and shall provide a requested deadline for response if the request is time-sensitive.

5.4.3   Information requests from or on behalf of an individual member of the Board of Regents seeking the compilation of significant quantities of information or data from the U. T. System or from a U. T. System institution will be reviewed by the Chairman of the Board and the Chancellor and, if necessary, discussed with the requesting Regent to determine the appropriate scope of the request and timing of the response to avoid inefficiencies and duplication of effort but shall also ensure that requests are fulfilled in a timely manner consistent with applicable law and policy.

5.4.4   Smaller requests for existing information or data that do not appear to require significant time or effort may be processed through the Office of the Board of Regents and the Chancellor's Office.

5.4.5   Within 5 business days of the receipt of a Regent's information request, the Chancellor's Office will provide the requesting Regent with an estimated date for delivery or production. The Board requires all U. T. System Administration and U. T. System institutional employees to respond thoroughly and appropriately to requests for information from a member of the Board or the Chancellor, without undue delay. In the rare circumstance when the Chairman or the Chancellor has concerns about a Regent's request, the matter will be discussed with the Regent within 5 business days of receipt of the request. If concerns about a request for information or data are unresolved following discussion with the Regent, the matter will be presented to the Board as quickly as possible, but in no event later than the next regular Board meeting following the date of the receipt of the request. For the purpose of a Board vote on this issue, the vote of a majority of the members of the Board in support of the request is sufficient to direct that the request will be filled without delay.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 10801**

      5.4.6    After consultation with the Chairman of the Board, the Chancellor may adopt reasonable procedures with regard to the timing, copying, and process for review of records by a Regent, including prohibiting the copying of any confidential material. In addition, the Chancellor, in consultation with the U. T. System General Counsel, shall determine whether State or federal law restricts compliance with the request. Accordingly, the Chancellor, in consultation with the U. T. System General Counsel, shall determine whether a Regent may review information that is protected by the Family Educational Rights and Privacy Act (20 U.S.C. §1232g; 34 CFR Part 99), by constitutional privacy, or by other State or federal law.

Sec. 6    Access to Requests for Information.

    6.1    The U. T. System Administration is directed to look for opportunities to expand the existing U. T. System websites, established in 2012 to provide public access to requests for information and which include all Texas Public Information Act requests.

        (Open Records website: http://www.utsystem.edu/open-records?src=uts-homepage)

    6.2    It is the intent of the Board that documents responsive to those requests be made available electronically to the extent legal and feasible, with the Chancellor to set timelines for implementation, in consultation with the Chairman.

**3.**    **Definitions**

None

**4.**    **Relevant Federal and State Statutes**

*Texas Government Code* Chapter 552 – Public Information

Family Educational Rights and Privacy Act – 20 U.S.C. § 1232g

34 Code of Federal Regulations Part 99 – Family Educational Rights and Privacy

**5.**    **Relevant System Policies, Procedures, and Forms**

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 10801**

Regents' *Rules and Regulations*, Rule 10101 – Board Authority and
Duties

Regents' *Rules and Regulations*, Rule 10403 – Conduct of Meetings of
the Board

The University of Texas System Administration Policy UTS139 – Texas
Public Information Act

Chancellor Cigarroa's Memo to Executive Officers dated
September 22, 2014, regarding compliance with Rule 10801

6.    **Who Should Know**

Board of Regents
Administrators
Employees

7.    **System Administration Office(s) Responsible for Rule**

Office of the Board of Regents

8.    **Dates Approved or Amended**

Editorial amendments to Sec. 4.4 and 4.5 made September 28, 2015
May 14, 2015
Editorial amendment to Number 5 made October 14, 2014
Editorial amendment to Sec. 5.4.5 made August 4, 2014
May 20, 2014
February 6, 2014

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 10901**

1.     **Title**

       Statement of U. T. System Values and Expectations

2.     **Rule and Regulation**

       Sec. 1    Purpose.

                 This Rule outlines the general values to be adopted and
                 embraced by all U. T. System officers and employees to ensure
                 that The University of Texas System maintains its reputation as
                 a System that strongly values integrity and requires all
                 operations to be conducted with accountability, transparency,
                 and respect.

                 The Rule is not a comprehensive guide to all matters of conduct
                 or ethics. Officers and employees are expected to use common
                 sense and best judgment in all situations.

       Sec. 2    Compliance with Laws and Policy.

                 In addition to the expectations outlined below, U. T. System
                 officers and employees are expected to comply with all
                 applicable federal, State, and local laws as well as applicable
                 rules and policies.

       Sec. 3    Minimum Expectations.

                 3.1    Trust and Credibility.  The success of The University of
                        Texas System is dependent on maintaining the trust and
                        confidence earned from students, patients, faculty, staff,
                        elected leaders, and members of the public. Trust and
                        confidence are gained by adhering to commitments,
                        displaying honesty and integrity, and reaching goals
                        solely through diligence and honorable conduct.

                 3.2    Respect for the Individual.  The University of Texas
                        System and the Board of Regents are committed to
                        creating an environment where all U. T. System officers
                        and employees are treated with dignity and respect.

                 3.3    Culture of Open and Honest Communication.  Managers
                        have a responsibility to create an open and supportive
                        environment where employees understand the
                        importance and value of raising and responding to

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 10901**

concerns about potentially questionable or unethical behavior.

3.4     Setting the Tone.  U. T. System leadership including the Chancellor and the Presidents and the members of the Board of Regents has the added responsibility for demonstrating, through actions and leadership, the importance of the expectations described in this Rule. The Chancellor and the Presidents must be responsible for promptly and appropriately reviewing questions or concerns about ethical behavior raised by employees or others and for taking appropriate and timely steps to address any problems identified.

3.     **Definitions**

None

4.     **Relevant Federal and State Statutes**

None

5.     **Relevant System Policies, Procedures, and Forms**

U. T. System Administration Standards of Conduct Guide

Regents' *Rules and Regulations,* Rule 30103 – Standards of Conduct

Regents' *Rules and Regulations,* Rule 30104 – Conflict of Interest, Conflict of Commitment, and Outside Activities

Regents' *Rules and Regulations*, Rule 10801 – Policy on Transparency, Accountability, and Access to Information

6.     **Who Should Know**

Administrators
Employees

7.     **System Administration Office(s) Responsible for Rule**

Office of the Chancellor

8.     **Dates Approved or Amended**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**               **Rule: 10901**

May 14, 2015

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**        **Rule: 20101**

1.      **Title**

       Chancellor

2.      **Rule and Regulation**

       Sec. 1     Role.  The Chancellor is the chief executive officer of The University of Texas System. The Chancellor reports to and is responsible to the Board of Regents. The Chancellor heads the System Administration, which is used by the Board to exercise its powers and authorities in the governance of the U. T. System. The Chancellor has direct line responsibility for all aspects of the U. T. System's operations.

       Sec. 2     Appointment.  The Chancellor shall be elected by the affirmative vote of a majority of the Regents in office and shall hold office without fixed term, subject to the pleasure of the Board.

       Sec. 3     Search.  The search process shall be conducted in a manner best determined to identify candidates with diverse professional backgrounds and experiences.

       Sec. 4     Primary Duties and Responsibilities.  The Chancellor, by delegation from the Board of Regents, is authorized to exercise the powers and authorities of the Board in the governance of the U. T. System. The Chancellor will normally act through the officers of the U. T. System regarding the matters delegated to them by the Regents' *Rules and Regulations*. The Chancellor, however, shall not be precluded from any direct participation and communication with System Administration officers or staff, institutional officers or staff, faculty members, and groups. The major duties of the Chancellor include:

            4.1     Counseling, Implementing, and Representing. Counseling the Board with respect to the policies, purposes, and goals of the System; acting as executive agent of the Board in implementing Board policies, purposes, and goals and a system of internal controls; representing the U. T. System in all other respects as deemed appropriate to carry out such policies, purposes, and goals, and interpreting and articulating the U. T. System's academic, administrative, and developmental policies, programs, needs, and concerns to the general public and to other constituencies at the community, state, regional, and national levels.

**Exhibit 5**

4.2     Strategic Planning.  Preparing a strategic plan for the U. T. System for recommendation to the Board of Regents in consultation with the institutional presidents. The proposed plan should include periodic adjustments to the mission statement; assessments of the internal and external environment; and recommendations for U. T. System goals, priorities, and benchmarks of progress in academic programs, service, capital expenditures, and the allocation of financial resources.

4.3     Directing.  Directing the management and administration of System Administration and all institutions of the U. T. System.

4.4     Organizing.  Reviewing periodically the organization of the System Administration and the institutions of the U. T. System and reporting to the appropriate standing committees of the Board of Regents and to the Board recommendations for changes in organization, assignments, and procedures.

4.5     Preparing and Approving Recommendations.  Preparing and approving appropriate recommendations to the Board of Regents and standing committees of the Board along with the appropriate Executive Vice Chancellor, Vice Chancellor, or president of an institution.

4.6     Budgeting.  Preparing and approving annual operating budgets for the System Administration and the institutions of the U. T. System and submitting recommendations to the Board of Regents.

4.7     Preparing Legislative Submissions.  Preparing and approving biennial legislative submissions to the Legislative Budget Board and to the Governor for the System Administration and the institutions of the U. T. System for the consideration of the Board of Regents in accordance with Rule 20501 of the Regents' *Rules and Regulations*.

4.8     Fund Development.  Serving as the chief executive officer for fund development and as the agent of the Board of Regents for the discharge of development responsibilities. Defining for the Board, at periodic

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                **Rule: 20101**

intervals, descriptions of current and future needs, as determined by the presidents and System Administration, taking into account recommendations from institutions development boards.

4.9     Appointment of Officers.  Appointing the Deputy Chancellor, the Executive Vice Chancellors, and Vice Chancellors and taking administrative action and terminating employment regarding these positions. In making such appointments, the Chancellor shall adhere to the Board's policy on the compensation of key executives as outlined in Rule 20203 of these *Rules and Regulations*. The Chancellor may also approve the payment of reasonable supplemental salary for an individual assuming additional duties including those of an interim appointment.

4.10    Nominating Chief Audit Executive.  Nominating candidates for the position of Chief Audit Executive for appointment by the Board of Regents, as outlined in Rule 20401 of these *Rules and Regulations*.

4.11    Appointing Compliance Officer.  Appointing the Systemwide Compliance Officer, as outlined in Rule 20401 of these *Rules and Regulations*.

4.12    Oversight of UTIMCO.  Serving, if appointed by the Board of Regents, on the Board of Directors of The University of Texas Investment Management Company (UTIMCO). Generally overseeing the operations of UTIMCO and coordinating interaction between the U. T. System and UTIMCO. Ensuring that UTIMCO implements the core investment functions delegated by the Board of Regents in conformance with the Regents' *Rules and Regulations*, the Investment Management Services Agreement, and the Investment Policy Statements adopted by the Board. Directing UTIMCO in areas other than core investment functions such as relations with the media, intergovernmental relations, and public disclosure issues. Recommending to the Board of Regents, in its fiduciary role, an effective oversight system for the proper management of UTIMCO, including, but not limited to clear procedures for the selection of UTIMCO directors; process for budget

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 20101**

review; and periodic review of the Investment
Management Services Agreement.

3.    **Definitions**

None

4.    **Relevant Federal and State Statutes**

*Texas Education Code* Section 51.353, Responsibility of System
Administration

*Texas Education Code* Section 65.16, System Central Administration
Office; Executive Officer

*Texas Education Code* Section 66.08 – Investment Management

*Texas Government Code* Chapter 669, Restrictions on Certain Actions
Involving Executive Head of State Agency

5.    **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 20401 – Audit and Compliance

Regents' *Rules and Regulations,* Rule 20501 – Accounting, Operating
Budgets, and Legislative Appropriation Requests

6.    **Who Should Know**

Administrators

7.    **System Administration Office(s) Responsible for Rule**

Office of the Board of Regents

8.    **Dates Approved or Amended**

February 11, 2016
Editorial amendment to Section 3.9 made July 13, 2015
Editorial amendments to Section 3.12 and Number 4 made March 13, 2015
Editorial amendments to Section 3.11 and Number 4 made April 4, 2014
Editorial amendment to Section 3.10 made March 17, 2008
August 10, 2006
December 10, 2004

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 20101**

9.     **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                                   **Rule: 20102**

1.      **Title**

        Appointment of Institutional Administrative Officers

2.      **Rule and Regulation**

        Sec. 1      Approval Required by Executive Vice Chancellor.  The U. T.
                    System Board of Regents delegates to the Chancellor, the
                    Deputy Chancellor, and the Executive Vice Chancellor having
                    responsibility for the institution and they, in turn, delegate to the
                    president of each institution the responsibility for the
                    appointment and dismissal of all other administrative officers of
                    each institution, including vice presidents, and deans. However,
                    prior approval of the appropriate Executive Vice Chancellor shall
                    be necessary for each such permanent or acting appointment
                    and for each such dismissal whether from a permanent or acting
                    appointment. All such other administrative officers serve without
                    fixed terms and subject to the pleasure of the president of the
                    institution and the approval of the appropriate Executive Vice
                    Chancellor.

        Sec. 2      Approval Not Required by Executive Vice Chancellor.  The
                    Board of Regents delegates to the Chancellor, the Deputy
                    Chancellor, and the Executive Vice Chancellor having
                    responsibility for the institution and they, in turn, delegate to the
                    president of each institution the responsibility for the permanent
                    or acting appointment of department chairmen, department
                    heads, and their equivalents. Such department chairmen,
                    department heads and their equivalents serve without fixed
                    terms and subject to the pleasure of the president of the
                    institution.

        Sec. 3      Consultation.  The Board of Regents endorses the principle of
                    reasonable consultation in the selection of administrative
                    officers of the institutions and the primary operating units and
                    expects the president, as he or she deems appropriate, to
                    consult in the selection process with the representatives of the
                    faculty, staff, and student body. However, the president of the
                    institution is responsible for executing the duties of the office
                    and consequently shall not be bound by nominations to
                    administrative positions by campus selection committees, and
                    the *Handbook of Operating Procedures* of each institution shall
                    so state.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 20102**

3.    **Definitions**

      None

4.    **Relevant Federal and State Statutes**

      None

5.    **Relevant System Policies, Procedures, and Forms**

      None

6.    **Who Should Know**

      Executive Vice Chancellors
      Faculty
      Presidents
      Students

7.    **System Administration Office(s) Responsible for Rule**

      Office of the Board of Regents

8.    **Dates Approved or Amended**

      Editorial amendments to Sections 1 and 2 made July 13, 2015
      Editorial amendment to title made July 23, 2014
      December 10, 2004

9.    **Contact Information**

      Questions or comments regarding this Rule should be directed to:

      • bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 20201**

1.      **Title**

        Presidents

2.      **Rule and Regulation**

        Sec. 1    Presidential Selection.  The Board of Regents selects the
                  president of each institution.

                  1.1    Presidential Search Advisory Committee.  When there is
                         to be a vacancy in the office of a president, an Advisory
                         Committee shall be established to recommend
                         candidates to the Board. No person who elects to be a
                         candidate for the vacancy may serve on the Advisory
                         Committee. The Chancellor, the Deputy Chancellor, the
                         Executive Vice Chancellor for Health Affairs, or the
                         Executive Vice Chancellor for Academic Affairs shall
                         serve as Chairman of the Advisory Committee unless the
                         Chairman of the Board makes another appointment.
                         Committee membership is as follows:

                         (a) At least one Regent to be appointed by the Chairman
                             of the Board.

                         (b) Two presidents from the U. T. System to be appointed
                             by the Chairman of the Board.

                         (c) The Executive Vice Chancellor for Academic or
                             Health Affairs.

                         (d) Three faculty members from the institution involved.
                             At least two of the members shall have the rank of
                             associate professor or higher. The method of
                             selection for faculty members shall be determined by
                             the faculty governance of the campus.

                         (e) One Dean to be selected by the Deans' Council of the
                             institution involved for academic institutions. At health
                             institutions, the member will be the Dean of the
                             Medical School or in the absence of that position the
                             member will be a senior representative of the
                             teaching program of the institution selected by the
                             Chairman of the Board.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 20201**

(f)   One student, in good academic standing, from the institution involved. The method of selection shall be determined by the student governance of the campus or, if there is no student governance, by the Chairman of the Board. If the institution does not have students, this category of representation shall be omitted.

(g)   The President of the alumni association of the campus involved. If the institution does not have an active alumni organization, an alumnus of the institution may be selected by the Chairman of the Board.

(h)   One nonfaculty employee of the institution involved. The method of selection shall be determined by the staff or employee council of the institution involved. If there is no staff or employee council, selection will be by the Chairman of the Board.

(i)   At least two representatives of the institution's external constituency who have demonstrated a deep interest in and support of the institution, its programs, and its role in community activities to be appointed by the Chairman of the Board.

1.2   Diversity of Members.  Campus constituent groups with responsibility for selection of Advisory Committee representatives are expected to consider diversity, particularly as it relates to minority and female representation. Unless there are unusual delays in faculty, staff, or student representative selection that postpone initiation of the committee process, the Chairman of the Board will make his or her appointments to the Advisory Committee after campus selections to maximize the prospect that the total committee composition reflects diversity. The Chairman's appointments to the Advisory Committee will be made following due consideration of input from members of the Board, the institutional leadership, and community leaders.

1.3   Selection Criteria.  Selection criteria for the president shall relate to the needs of the individual institution.

1.4   Responsibilities of the Committee Chairman.  The Committee Chairman shall develop a timetable for the

Committee's work, in consultation with the Chancellor and the Chairman of the Board, and shall initiate mechanisms to develop an appropriate candidate pool and to seek information on several candidates.

1.5    Responsibilities of the Advisory Committee.  Following an introduction and charge by the Chancellor, the Advisory Committee shall inquire from competent sources as to the candidates' academic, administrative, and business abilities.

1.6    Interviews.  The Advisory Committee may interview candidates as a part of its selection process. Interviews should be conducted on the basis that the confidentiality of the process is critical to its ultimate success.

1.7    Recommendation.  The Advisory Committee shall submit to the Board, through its Chairman, a list of no more than 10 recommended candidates with no preference indicated. Candidates recommended shall have received a majority vote of the Committee.

The Committee shall strive to include candidates with diverse professional backgrounds and experiences. In making its recommendation, the Committee shall follow the U. T. Systemwide Policy UTS187, *Interviews of Executive Administrators and Other Senior Administrators*, to provide the Board with a diverse candidate pool. If it is not possible or practical to provide such a pool, the search committee chair shall identify for the Board efforts made to achieve a diverse candidate pool.

1.8    Finalists.  The Board determines which candidates will be further interviewed prior to naming a finalist or finalists. If none of the names submitted by the Advisory Committee is satisfactory to the Board of Regents, the Board in its discretion may either name a new committee or proceed to select a president under such other procedures as in its discretion it may deem proper and appropriate.

1.9    Alternate Process.  When the Board of Regents has candidate(s) from recent searches at other institutions, from within the U. T. System, and/or of national prominence from outside the U. T. System to advance for

**Exhibit 5**

consideration, the Chairman of the Board of Regents shall appoint a Special Committee to provide the Board with advice and evaluation consistent with that usually provided by an Advisory Committee. The Special Committee shall be composed as specified above for the Advisory Committee but will not include members of the Board of Regents. The Special Committee shall not extend its consideration beyond those candidates referred to it by the Board of Regents without specific concurrence from the Board.

1.10    Confidentiality.  The presidential selection process must be conducted in a manner that protects the identity of all candidates. Information about the process, other than statements or releases by the Chairman of the Board, the Chancellor, or the Deputy Chancellor, will be distributed only as required by the Texas Public Information Act (TPIA). Each individual participating in the search process, including U. T. System employees, members of the Board, search firm representatives, members of a Presidential Search Advisory Committee, and individuals asked to meet with candidates, must sign a confidentiality agreement in a form approved by the General Counsel to the Board and the U. T. System Vice Chancellor and General Counsel prior to participation.

An individual found to have violated the confidentiality agreement may be removed from the search process. A U. T. System employee found to have violated the confidentiality agreement is subject to disciplinary action, up to and including termination. A member of the Board found to have violated the confidentiality agreement is subject to sanctions.

Sec. 2    Reporting.  The president reports to and is responsible to the Chancellor. The president is expected to consult with the Chancellor or the Deputy Chancellor and the appropriate Executive Vice Chancellor on significant issues as needed.

Sec. 3    Term and Removal from Office.  The president serves without fixed term, subject to the pleasure of the Chancellor, following an opportunity for input by the appropriate Executive Vice Chancellor and subject to the approval of the Board of Regents. When circumstances warrant or require such action, the Chancellor may take interim action involving a president,

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 20201**

including but not limited to suspension or leave of absence, pending approval by the Board.

Sec. 4    Duties and Responsibilities.  Within the policies and regulations of the Board of Regents and under the supervision and direction of the Chancellor, the Deputy Chancellor, and the appropriate Executive Vice Chancellor, the president has general authority and responsibility for the administration of that institution. Specifically, the president is expected, with the appropriate participation of the staff, to:

4.1    Develop and administer plans and policies for the program, organization, and operation of the institution.

4.2    Interpret the System policy to the staff and interpret the institution's programs and needs to the System Administration and to the public.

4.3    Develop and administer policies relating to students and, where applicable, to the proper management of services to patients.

4.4    Recommend appropriate operating budgets and supervise expenditures under approved budgets.

4.5    Appoint all members of the faculty and staff, except as provided in Rule 31007, concerning the award of tenure, and maintain efficient personnel programs.

4.6    Ensure efficient management of business affairs and physical property and recommend additions and alterations to the physical plant.

4.7    Serve as presiding officer at official meetings of faculty and staff of the institution and as *ex officio* member of each college or school faculty, if any, within the institution.

4.8    Appoint or establish procedures for the appointment of all faculty, staff, and student committees.

4.9    Cause to be prepared and submitted to the appropriate Executive Vice Chancellor and the Vice Chancellor and General Counsel for approval, the rules and regulations for the governance of the institution and any related

Exhibit 5

amendments. Such rules and regulations shall constitute the *Handbook of Operating Procedures* for that institution. Any rule or regulation in the institutional *Handbook of Operating Procedures* that is in conflict with any rule or regulation in the Regents' *Rules and Regulations* is null and void and has no effect.

(a) Input from the faculty, staff, and student governance bodies for the institution will be sought for all significant changes to an institution's *Handbook of Operating Procedures.* The institutional *Handbook of Operating Procedures* will include a policy for obtaining this input that is in accordance with a model policy developed by the Office of General Counsel.

(b) Sections of the *Handbook of Operating Procedures* that pertain to the areas of faculty responsibility as defined in Regents' *Rules and Regulations,* Rule 40101 titled Faculty Role in Educational Policy Formulation will be explicitly designated in the *Handbook of Operating Procedures.* The president, with the faculty governance body of the campus, shall develop procedures to assure formal review by the faculty governance body before such sections are submitted for approval. The formal review should be done within a reasonable timeframe (60 days or less).

4.10   Assume initiative in developing long-range plans for the program and physical facilities of the institution.

4.11   Assume active leadership in developing private fund support for the institution in accordance with policies and procedures established in the Regents' *Rules and Regulations*.

4.12   Develop and implement plans and policies to ensure that the institution remains in compliance with any accreditation requirements appropriate to the institution or its programs, including, for the health institutions and those academic institutions with student health services, the accreditation of hospitals, clinics, and patient-care facilities.

4.13   The president of each general academic institution of The University of Texas System that engages in

**Exhibit 5**

intercollegiate athletic activities shall ensure that necessary rules and regulations are made so as to comply with the current *General Appropriations Act*.

Sec. 5    Evaluation

5.1    Within 12 months of beginning service as president, the new president will provide the Board with a statement outlining a vision and plans for the future of the institution. The presentation may be deferred for six months, if deemed appropriate by the Chancellor, the Deputy Chancellor, and the appropriate Executive Vice Chancellor after consultation with the Chairman of the Board.

5.2    Each president will have an annual performance evaluation, conducted by the Chancellor, the Deputy Chancellor, and the appropriate Executive Vice Chancellor, and presented to the Board for discussion.

5.3    Each president will receive a comprehensive performance review by the appropriate Executive Vice Chancellor, the Deputy Chancellor, the Chancellor, and the Board at the conclusion of each five-year period, beginning after the first year of service as president. The review will include an interview with the Board in Executive Session during which the president will outline his or her renewed vision and plans for the future of the institution.

3.    **Definitions**

None

4.    **Relevant Federal and State Statutes**

*Texas Government Code* Section 552.123 – Exception:  Name of Applicant for Chief Executive Officer of Institution of Higher Education (excepting applicant names and identifying information from public disclosure but requiring notice of name or names of finalists at least 21 days before meeting at which final action is to be taken)

*Texas Education Code* Section 51.913 – Executive Search Committees

*General Appropriations Act*

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 20201**

5.      **Relevant System Policies, Procedures, and Forms**

Model Policy – *Handbook of Operating Procedures* (HOP) Amendment Approval Process

Confidentiality Agreement – Search Committee Members

Confidentiality Agreement – Search Committee Staff and Others

U. T. Systemwide Policy UTS187, *Interviews of Executive Administrators and Other Senior Administrators*

6.      **Who Should Know**

Administrators
Faculty
Staff
Students

7.      **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

8.      **Dates Approved or Amended**

Editorial amendments to Sec. 4.2-4.3 and 4.6-4.8 made July 18, 2016
Editorial amendment to Sec. 1.1(e) made April 27, 2016
Editorial amendment to Number 4 made March 1, 2016
February 11, 2016
Editorial amendment to Number 5 made November 17, 2015
Editorial amendments to Secs 1.1, 1.10, 2, 4, 5.1-5.3 made July 13, 2015
May 14, 2015
November 6, 2014
May 9, 2013
Editorial amendments to Number 4 made October 4, 2011
August 23, 2007
August 10, 2006
May 11, 2006
March 10, 2005
December 10, 2004

9.      **Contact Information**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 20201**

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**       **Rule: 20202**

1. **Title**

   Cash Compensation for Chief Administrative Officers

2. **Rule and Regulation**

   Sec. 1    Purpose. This Rule sets forth the cash compensation structure authorized for the Chancellor and presidents (chief administrative officers) of the institutions of The University of Texas System. It is prospective in nature and application and is not intended to be applied retroactively. It does not pertain to, nor affect, benefit programs such as insurance, retirement benefits, and deferred compensation, which may also be a part of a chief administrative officer's overall compensation package.

   Sec. 2    Elements of Compensation Structure. In order to attract and to retain effective, highly skilled, and committed chief administrative officers of the institutions of the U. T. System and to recognize their professional achievements, it is the policy of the U. T. System to offer competitive levels of cash compensation within a compensation structure consistently applied. This Policy establishes and defines the various elements for the cash compensation portion of a chief administrative officer's compensation package. Compensation packages for the presidents are recommended by the appropriate Executive Vice Chancellor to the Chancellor, and then by the Chancellor to the Board of Regents for approval. The compensation package for the Chancellor is determined by the Board of Regents and will address issues related to residence at Bauer House.

        2.1    Base Salary. The base salary rate for each chief administrative officer shall be set by the U. T. System Board of Regents following a review of national compensation survey data for respective peer institutions.

        2.2    Housekeeping Staff. Each institution, at the institution's expense, shall provide appropriate housekeeping and other support services for business-related functions held at the chief administrative officer's residence, but no housekeeping or other support services will be provided for personal use at a residence that is not owned by the University.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                     **Rule: 20202**

2.3     Practice Plan Supplement.  The bylaws of the physician practice plans provide that the compensation for the presidents of the health institutions may be supplemented by up to 30% of the president's salary from practice plan funds. The supplement is contingent on availability of funds in the practice plan. The practice plan salary supplement is not a part of the base salary and shall be reported as a separate element of the health president's cash compensation because of the special nature of the source of funding. Practice plan supplements are not eligible for Teacher Retirement System and Optional Retirement Program retirement benefits or other retirement benefits and no employer matching contributions may be made with respect to practice plan supplements.

2.4     Deferred Compensation.  Upon approval by the Board, deferred compensation may be paid pursuant to a Deferred Compensation Plan originally adopted effective September 1, 1996, for the benefit of a select group of employees. The purpose of the plan is to offer those employees an opportunity to elect to defer the receipt of compensation pursuant to Section 457(f) of the Internal Revenue Code of 1987, as amended. Deferred compensation is not part of the base salary and shall be reported as a separate element of the chief administrative officer's cash compensation. Deferred compensation is not eligible for Teacher Retirement System or Optional Retirement Program retirement benefits or other retirement benefits.

2.5     One-time Merit Awards.  In instances where a chief administrative officer has made a significant contribution in a particular year, the Board of Regents may elect to make a merit award on an annual basis.

Sec. 3   Prohibited Allowances or Adjustments.  No allowances or adjustments will be provided for the following items.

3.1     Housing Allowance.  No separate allowance for housing may be paid. Base salary includes compensation sufficient to purchase or lease a residence.

3.2     Housing Maintenance Allowance.  No separate allowance for maintenance, utilities, landscaping, or other

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 20202**

expenses attributable to a chief administrative officer's personal residence may be paid. All personal expenses associated with a chief administrative officer's residence are intended to be covered by the base salary. No University physical plant personnel may be used to provide personal services related to repair or maintenance at a residence that is not owned by the University.

3.3     Car Allowance.  No separate car allowance may be provided to a chief administrative officer. Base salary includes compensation sufficient to purchase or lease a car. An institution may reimburse a chief administrative officer for mileage associated with business use of a personal vehicle in accordance with the latest published Internal Revenue Service guidelines, the State Travel Regulations Act (*Texas Government Code,* Chapter 660), and applicable institutional policies. No vehicle may be purchased for or assigned to the chief administrative officer for personal use.

Sec. 4     Other Compensation.  This rule covers all compensation provided for service as a chief administrative officer by the institution or an external organization that is established to support the mission of the institution. Compensation for other service, such as service on outside boards, must be pursuant to approval required by The University of Texas System Administration Policy UTS123, *Service on Outside Board*s.

Sec. 5     University-Owned Housing.  If the Board of Regents makes arrangements that require the chief administrative officer to reside in the institutionally-owned residence or if covenants, conditions, or restrictions applicable to the institutionally-owned residence require occupancy by the chief administrative officer, then he or she shall reside in the institutionally-owned residence. In the absence of such requirements, each chief administrative officer of an institution, for which a residence is owned by the U. T. System and is available, shall have the option of leasing the residence from the U. T. System.

5.1     Those presidents who elect to or are required to reside in an institutionally-owned residence shall enter into a lease arrangement with the U. T. System. The rental rate to be paid by the president under the lease shall be based on the current fair market rental value of that portion of the

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 20202**

residence that is used as the president's private residence.

**3.      Definitions**

None

**4.      Relevant Federal and State Statutes**

*Texas Education Code* Section 65.31 – General Powers and Duties

*Texas Government Code,* Chapter 660 – Travel Expenses

**5.      Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations*, Rule 20203 – Compensation for Key Executives

The University of Texas System Administration Policy UTS123, *Service on Outside Boards*

The University of Texas System Executive Performance Incentive Compensation Plan (September 1, 2012)

**6.      Who Should Know**

Executive Vice Chancellors
Presidents

**7.      System Administration Office(s) Responsible for Rule**

Office of the Chancellor

**8.      Dates Approved or Amended**

Editorial amendment to Number 5 made January 14, 2014
August 10, 2006
December 10, 2004

**9.      Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 20203**

1.      **Title**

        Compensation for Key Executives

2.      **Rule and Regulation**

        Sec. 1      Compensation Philosophy.  To attract, retain, and motivate the top
                    talent needed to lead The University of Texas System and accomplish
                    its mission, and to recognize and reward performance, the Board of
                    Regents seeks to compensate key executives at levels that are
                    competitive in the marketplace, cost effective, and, to the extent
                    possible, internally equitable.

        Sec. 2      Market Review.  To align executive compensation with the relevant
                    market, the Office of the Board of Regents will oversee the conduct of a
                    comprehensive survey and analysis to obtain current and reliable
                    market data on total compensation of key executives in comparable
                    positions at peer institutions. Market data will be adjusted using cost of
                    living information related to respondent's geographic region. The
                    survey will be conducted every three years. In non-survey years, the
                    Office of the Board of Regents will obtain information concerning
                    general changes in executive compensation in the marketplace, and
                    the comprehensive survey will be adjusted accordingly.

        Sec. 3      Elements of Compensation.  The elements of compensation may
                    include and are limited to base salary; short and long-term incentive
                    pay; supplemental retirement plans, such as deferred compensation
                    plans; one-time merit pay; special provisions necessary to recruit an
                    individual to a key executive position, such as salary supplement for a
                    limited time or one-time relocation payment as necessary and prudent
                    to recruit the top talent for the position; and perquisites such as
                    memberships, parking privileges, and provision of or allowance for cell
                    phone and/or other mobile communication devices as determined
                    necessary for business purposes and as covered in individual
                    agreements. Key executives must promptly reimburse the institution for
                    any personal use of a membership provided by the institution. All
                    compensation set pursuant to this Rule must comply with all applicable
                    state and federal laws and must be approved and documented in
                    budget summaries. All compensation for service as a key executive is
                    covered by this Rule. Elements of compensation paid on behalf of a
                    chief administrative officer must be disclosed in the annual report of
                    expenses required by Rule 20205.

        Sec. 4      Peer Institutions.  Peer institutions or groups of institutions will be
                    selected through an interactive, consultative process between the

**Exhibit 5**

Chancellor, Deputy Chancellor, Executive Vice Chancellors, presidents and the organization engaged to conduct the comprehensive survey. To the extent possible, the same institutions will be surveyed during each comprehensive survey. Peer institutions may be changed based on sound business decisions; such changes will be fully disclosed to the Board of Regents. The Executive Vice Chancellors will maintain the list of peer institutions. Factors to consider in selecting peer institutions include size, purpose, institutions used in assessing U. T. System performance and those from which U. T. System competes for key executives.

Sec. 5    Approval by Board of Regents.  All proposed elements of compensation, including taxable and nontaxable items, will be presented to the Board of Regents for approval in advance of the annual budgeting process.

Sec. 6    Determining Compensation.  In setting a key executive's initial compensation, the following factors should be considered: relevant market data, current compensation, cost of living differences, internal equity, and the U. T. System budget. Where appropriate, U. T. System may target the 75th percentile of the market rate of a key executive's peer institutions. Factors to consider in making future adjustments to a key executive's compensation include market data, key executive performance, the institution's progress on key performance indicators, internal equity, and the U. T. System budget.

Sec. 7    The presidents will implement appropriate policies and procedures concerning executive compensation for the direct reports at each U. T. System academic and health institution.

## 3.    Definitions

Key executive(s) – include the Chancellor, Deputy Chancellor, General Counsel to the Board, Chief Audit Executive, Executive Vice Chancellors, presidents of each of the U. T. System academic and health institutions, and Vice Chancellors.

## 4.    Relevant Federal and State Statutes

*Texas Education Code* Section 65.31 – General Powers and Duties

## 5.    Relevant System Policies, Procedures, and Forms

Regents' *Rules and Regulations*, Rule 20202 – Cash Compensation for Chief Administrative Officers

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 20203**

[The University of Texas System Executive Performance Incentive Compensation Plan (September 1, 2012)](#)

6. **Who Should Know**

    Chancellor
    Chief Audit Executive
    Deputy Chancellor
    Direct reports to the Board of Regents
    Executive Vice Chancellors
    Presidents
    Vice Chancellors

7. **System Administration Office(s) Responsible for Rule**

    Office of the Controller

8. **Dates Approved or Amended**

    Editorial amendments to Section 4 and Numbers 3 and 6 made July 13, 2015
    Editorial amendment to Number 5 made January 14, 2014
    Editorial amendment to Number 3 (Definitions) made April 10, 2012
    Editorial amendment to Number 7 made September 1, 2010
    August 10, 2006
    December 10, 2004

9. **Contact Information**

    Questions or comments regarding this Rule should be directed to:

    - bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 20204**

1.      **Title**

        Determining and Documenting the Reasonableness of Compensation

2.      **Rule and Regulation**

Sec. 1    Setting of Compensation.  Institutions of The University of Texas System are charged with setting compensation levels for Highly Compensated Personnel in such a way that compensation is reasonable and adequate documentation is maintained for supporting the reasonableness of compensation paid. Internal Revenue Code (IRC) Section 162 imposes a reasonableness requirement for the deductibility of compensation as a business expense and its applicability has been extended to tax-exempt organizations. IRC Section 4958 imposes excise taxes on excess benefit transactions between a tax-exempt organization and certain influential persons within the organizations. Although the U. T. System is not subject to the IRC sections, the process used to determine compensation by U. T. System shall be pursuant to a process in conformance with the spirit of the Internal Revenue Service (IRS) guidelines including any applicable factors previously used by the IRS to determine reasonable compensation (see Definitions) as well as any other factors deemed relevant.

Sec. 2    Compliance with IRS Guidelines.  The Chancellor shall develop a Systemwide policy for establishing the compensation for Highly Compensated Personnel, not covered in Regents' *Rules and Regulations*, Rule 20203 (which outlines the procedures for establishing the compensation of the presidents and executive officers at System Administration), that is in conformance with the spirit of the factors referenced in Section 1 above.

Sec. 3    Board Approval.  Compensation for employees whose total annual compensation is $1 million or more and who are not covered in Regents' *Rules and Regulations*, Rule 20203 must be approved by the Board of Regents, except as otherwise allowed by Rule 10501 for athletic directors or coaches when special circumstances exist. In all cases, the employing institution is responsible for providing documentation that the compensation was established in accordance with the Systemwide policy for establishing the compensation for Highly Compensated Personnel.

Sec. 4    Executive Vice Chancellor Approval.  Compensation for employees whose total annual compensation is $500,000 or more but less than $1,000,000 and who are not covered in Regents' *Rules and*

_____
                                                                    **Page 1 of 3**

**Exhibit 5**

*Regulations*, Rule 20203 must be approved by the appropriate Executive Vice Chancellor. The employing institution is responsible for providing documentation to the Executive Vice Chancellor that the compensation was established in accordance with the Systemwide policy for establishing the compensation for Highly Compensated Personnel.

3.    **Definitions**

Factors Previously Used by the IRS -

1)    the nature of the employee's duties;
2)    the employee's background and experience;
3)    the employee's knowledge of the business;
4)    the size of the business;
5)    the employee's contribution to the profit making;
6)    the time devoted by the employee to the business;
7)    the economic conditions in general and locally;
8)    the character and amount of responsibility of the employee;
9)    the time of year when compensation is determined;
10)   the relationship of shareholder-officer's compensation to stock holdings;
11)   whether alleged compensation is in reality, in whole or in part, payment for a business or assets acquired; and
12)   the amount paid by similar size businesses in the same area to equally qualified employees for similar services.

Highly Compensated Personnel – employees whose total annual compensation is $500,000 or more and who are not covered in Regents' *Rules and Regulations*, Rule 20203 (Compensation for Key Executives).

Total Annual Compensation – includes salaries or wages, practice plan supplements, incentive plan payments, and unpaid deferred compensation and excludes employer-provided insurance, expense allowances, employer contributions to Teachers Retirement System of Texas and Optional Retirement Program, and other fringe benefits.

4.    **Relevant Federal and State Statutes**

*Internal Revenue Code* Section 162 – Trade or Business Expense

*Internal Revenue Code of 1986* Section 4958 – Taxes on Excess Benefit Transactions

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 20204**

5.    **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations*, Rule 20202 – Cash Compensation for Chief
Administrative Officers

Regents' *Rules and Regulations*, Rule 20203 – Compensation for Key
Executives

Regents' *Rules and Regulations*, Rule 10501 – Delegation to Act on Behalf of the
Board

The University of Texas System Administration Policy UTS144, Establishing
Compensation for Highly Compensated Employees

6.    **Who Should Know**

Chancellor
Executive Vice Chancellors
Presidents

7.    **System Administration Office(s) Responsible for Rule**

Office of the Chancellor

8.    **Dates Approved or Amended**

Editorial amendment to Section 3 made September 17, 2014
May 15, 2014
Editorial amendments to Sections 1, 2, Definitions, and Number 4 made
    March 24, 2014
Editorial amendments to Section 3 made May 16, 2012
Editorial amendments to Section 3 and Number 5 made December 1, 2011
Editorial amendment to Section 3 made December 1, 2010
Editorial amendment to Number 6 made September 1, 2010
Editorial amendment to Number 5 made December 7, 2009
Editorial amendments to Section 3 and Number 5 made August 26, 2009
Editorial amendment to Number 5 made March 18, 2008
May 11, 2006
July 8, 2005

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 20205**

1.    **Title**

      Expenditures for Travel and Entertainment by Chief Administrators and for the
      Maintenance of University Residences

2.    **Rule and Regulation**

      Sec. 1    Purpose.  The University of Texas System Administration and U. T.
                System institutions are governed by State law and rules and
                regulations promulgated under those laws, as well as Systemwide and
                institutional policies and procedures concerning expenses incurred by
                officials for travel, entertainment, and housing. While recognizing the
                unique role of the Chancellor and presidents in representing the U. T.
                System and the institutions, the Board of Regents also recognizes the
                importance of oversight and accountability, transparency, and fiscal
                responsibility. The purpose of this *Rule* is to prescribe, clarify, and
                provide uniformity in the approval, review, and audit process for travel
                and entertainment expenses incurred by the Chancellor and
                presidents and for expenses for the maintenance of University
                residences.

      Sec. 2    Prudent Use of Funds.  In the performance of their unique roles, the
                chief administrators are frequently called upon to travel on behalf of the
                U. T. System and the institutions, to extend official hospitality to
                important visitors, and to entertain guests in conjunction with alumni
                and development activities, campus events, and other official functions.
                As a public institution, the U. T. System must make the most efficient
                and effective use of funds entrusted to it by various constituencies
                when making expenditures for those purposes and must be able to
                demonstrate compliance with applicable laws and rules. Additionally,
                individuals seeking reimbursement must certify that expenditures
                support the mission and purpose of the U. T. System and that the
                expenditures are not made for a private purpose.

      Sec. 3    Travel Expenditures.  All expenditures for travel by a chief administrator
                or his or her spouse must be for a business purpose of the U. T.
                System or the institution and must comply with all laws and policies of
                the institution and the U. T. System. All foreign travel must be approved
                in advance by the Chairman of the Board of Regents for the Chancellor
                and spouse and by the appropriate Executive Vice Chancellor for the
                presidents and spouses. Requests for approval of foreign travel must
                include a specific business purpose and an estimate of funds to be
                expended by U. T. System or by the institution.

                                                                          **Page 1 of 6**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 20205**

Sec. 4   Maintenance of University Residences.  All expenditures that exceed $10,000 for the furnishing, maintenance, or repair of a residence or its grounds owned by the U. T. System must be approved in advance by a committee composed of the Executive Vice Chancellor for Business Affairs, the Vice Chancellor and General Counsel, and the General Counsel to the Board of Regents. Prior approval by the committee is not required for expenditures made on an emergency basis to prevent damage to property.

Sec. 5   Documentation and Review.  Each chief administrator shall comply with all documentation requirements imposed by law and U. T. System Administration and institutional policies for travel and entertainment expenses and for expenses for the maintenance of University residences, including providing detailed receipts and information on the purpose of the expense and the individuals or groups attending the event.

   5.1   Each chief administrator shall take all necessary and reasonable steps to ensure that all employees follow applicable procedures for expense reimbursement.

   5.2   Reimbursements made directly to the Chancellor for travel and entertainment expenses must be reviewed and approved by the General Counsel to the Board of Regents before payment to assure compliance with applicable laws, rules, and policies. Payments made on the Chancellor's behalf in excess of $100 must be reviewed and approved by the General Counsel to the Board but may be reviewed after payment, with the quarterly report outlined in Section 7 below serving as documentation of that review.

   Reimbursements made directly to a president of a U. T. System institution for travel and entertainment expenses and for expenses for the maintenance of a University residence must be reviewed and approved by the institution's chief business officer before payment to assure compliance with applicable laws, rules, and policies. Payments made on the president's behalf in excess of $100 must be reviewed and approved by the institution's chief business officer but may be reviewed after payment, with the quarterly report outlined in Section 7 below serving as documentation of that review.

   Evidence of review, in all cases, must be documented in writing.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 20205**

Sec. 6     Timeliness of Requests for Reimbursements.  A chief administrator must request any reimbursement for travel and entertainment expenses or expenses for the maintenance of University residences within 90 days of the date on which the expense was incurred.

Sec. 7     Reporting.  Each chief administrator shall file quarterly reports, based on fiscal year, of travel and entertainment expenses and expenses for the maintenance of University residences in a standard format. The Chancellor shall file the report with the General Counsel to the Board of Regents for review by the Chairman of the Board of Regents. Each president shall file the report with the appropriate Executive Vice Chancellor. The reports are due not later than the 30th day of January, April, July, and October and are to be reviewed by the appropriate Executive Vice Chancellor for compliance.

7.1     Quarterly Reporting on Travel and Entertainment Expenses and the Maintenance of University Residences.  The quarterly reports must include each expense that exceeds $100 and that is reimbursed to the chief administrator during the quarter or directly paid to a vendor on the chief administrator's behalf. (This does not apply to events hosted by a chief administrator for development activities or to honor faculty, staff, or other guests, at which more than 10 individuals are present.) The report must include the payee, the date and amount of the expense, the type, and if applicable, the location of the event/expense, the participants if any, the business purpose of the expense, and the account charged for the expense.

7.2     Reporting on Reimbursable Spousal Expenses.  The quarterly reports must include each travel, meal, or incidental expense that exceeds $100 and that is reimbursed to a chief administrator's spouse during the quarter or directly paid to a vendor on the spouse's behalf. The report must include the information specified by Section 7.1 above.

7.3     Annual Certification.  The Executive Vice Chancellor for Academic Affairs or Health Affairs will provide an annual certification to the Chancellor and the Board of Regents documenting review of the presidents' quarterly expense reports.

Sec. 8     Audits.  Annually the travel and entertainment expenses and expenses for the maintenance of University residences for which the Chancellor or spouse has been reimbursed or that have been directly paid on the

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 20205**

Chancellor's or spouse's behalf shall be audited by an entity that does not report directly to the Chancellor. The travel and entertainment expenses and expenses for the maintenance of University residences for which the presidents or their spouses have been reimbursed or that have been paid directly to a vendor on the presidents' or their spouses' behalf will be audited by the U. T. System Audit Office. All of the presidents will be subject to audit annually.

8.1    The independent entity shall submit the results of the audit of the Chancellor and the Chancellor's spouse's expenditures to the Chairman of the Board and to the General Counsel to the Board of Regents. The System Audit Office shall submit the results of the audit of the president and the president's spouse's expenditures to the appropriate Executive Vice Chancellor.

8.2    All audits shall be submitted to the Audit, Compliance, and Management Review Committee for review during a quarterly meeting of the Committee.

3.    **Definitions**

Chief Administrator – means the Chancellor or the president at each U. T. System institution.

Entertainment Expenses – includes all expenses associated with meals and events involving others.

Expenses for the Maintenance of University Residences – includes expenses related to any State-owned residence, but does not include the salary supplement described by the Regents' *Rules and Regulations,* Rule 20202.

Foreign Travel – travel to, in, or from a destination that is neither in the United States nor a possession of the United States.

Travel Expenses – includes transportation, lodging, meals, and other expenses incurred in connection with travel, but does not include entertainment expenses or meals for others.

4.    **Relevant Federal and State Statutes**

*Texas Education Code* Section 65.31 – General Powers and Duties

*Texas Government Code* Section 660.003 – Applicability of Travel Expenses

**The University of Texas System**
**Rules and Regulations of the Board of Regents**          **Rule: 20205**

---

*Texas Government Code* Section 660.024 – Advance Approval for Certain International Travel

*Texas Government Code* Section 2203.004 – Requirement to Use State Property for State Purposes

**5.**     **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations*, Rule 20202 – Cash Compensation for Chief Administrative Officers

Regents' *Rules and Regulations*, Rule 20203 – Compensation for Key Executives

Regents' *Rules and Regulations*, Rule 20801 – Travel

The University of Texas Systemwide Policy UTS120, *Spousal Travel Policy*

The University of Texas System Administration Internal Policy INT114, *Travel Policy*

The University of Texas System Administration Internal Policy INT115, *Administrative Policy on Entertainment Expenses and Guidelines on Other Uses of Institutional/Gift Funds*

Request for Payment of Business Expense Form

Travel Reimbursement Forms

International Travel Approval Form for Presidents and Spouses

**6.**     **Who Should Know**

Chancellor
General Counsel to the Board of Regents
Chief Audit Executive
Deputy Chancellor
Executive Vice Chancellors
Presidents
Chief Business Officers
Internal Audit Directors

**7.**     **System Administration Office(s) Responsible for Rule**

Office of the Board of Regents

---

**The University of Texas System**
**Rules and Regulations of the Board of Regents** _____ **Rule: 20205**

8.     **Dates Approved or Amended**

       Editorial amendments to Section 5.2 made April 26, 2016
       Editorial amendments to Section 5.2 made February 15, 2016
       Editorial amendment to Number 6 made July 13, 2015
       August 22, 2013
       Editorial amendments made October 24, 2012
       Editorial amendments to Number 1, Sections 1, 4, 5, 6, 7, 8, and Number 3 made
       on December 8, 2010
       Editorial amendment to Section 5.2 made September 9, 2010
       Editorial amendment to Number 5 made January 8, 2010
       Editorial amendment to Section 8 made March 17, 2008
       May 11, 2006

9.     **Contact Information**

       Questions or comments regarding this Rule should be directed to:

       - bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**         **Rule: 20206**

1.     **Title**

      Intercollegiate Athletics

2.     **Rule and Regulation**

      Sec. 1     Board Oversight.  The Board provides oversight and broad policy guidelines for the budget, operation activities, and intercollegiate athletics program in a manner consistent with the operation of other units of the U. T. System.

      Sec. 2     Delegation of Authority.  The president of the institution is assigned ultimate responsibility and authority for the operation, fiscal integrity, and personnel of the institution's athletics program, including appointment and supervision of the athletics director(s). Each president is also responsible for ensuring that the institution's athletics program is in compliance with all applicable laws and regulations and that the mission, values, and goals of the athletics program are compatible with those of the institution.

3.     **Definitions**

      None

4.     **Relevant Federal and State Statutes**

      None

5.     **Relevant System Policies, Procedures, and Forms**

      Regents' *Rules and Regulations*, Rule 10501 – Delegation to Act on Behalf of the Board

      Regents' *Rules and Regulations*, Rule 30103 – Standards of Conduct

      Regents' *Rules and Regulations*, Rule 30104 – Conflict of Interest, Conflict of Commitment, and Outside Activities

      Regents' *Rules and Regulations*, Rule 80104 – Use of Facilities

6.     **Who Should Know**

      Chancellor
      Deputy Chancellor
      Executive Vice Chancellor for Academic Affairs

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                                     **Rule: 20206**

       Vice Chancellor and General Counsel
       Presidents

**7.**      **System Administration Office(s) Responsible for Rule**

       Office of the Board of Regents

**8.**      **Dates Approved or Amended**

       Editorial amendment to Number 6 made July 13, 2015
       Editorial amendment to Number 5 made September 10, 2012
       May 13, 2010

**9.**      **Contact Information**

       Questions or comments regarding this Rule should be directed to:

         • bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                         Rule: 20301**

1.     **Title**

       Honorary Titles and Degrees

2.     **Rule and Regulation**

       Sec. 1    Honorary Titles.  The titles Chancellor Emeritus, President
                 Emeritus, and similar honorary designations shall be conferred
                 only by appropriate action of the Board of Regents on
                 individuals who are fully retired. No person is authorized to use
                 any such title unless it has been bestowed by the Board.

       Sec. 2    Honorary Degrees.  In accordance with long-standing Board of
                 Regents tradition, honorary degrees may be awarded only to a
                 sitting President of the United States. Award of an honorary
                 degree is to be reported to the Board at the next regular
                 meeting of the Board.

3.     **Definitions**

       None

4.     **Relevant Federal and State Statutes**

       None

5.     **Relevant System Policies, Procedures, and Forms**

       None

6.     **Who Should Know**

       Administrators

7.     **System Administration Office(s) Responsible for Rule**

       Office of Business Affairs

8.     **Dates Approved or Amended**

       December 10, 2004

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 20301**

9.      **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 20401**

1.      **Title**

        Audit and Compliance Programs

2.      **Rule and Regulation**

        Sec. 1   Audit Program.  The Chancellor, as chief executive officer of the
                 U. T. System, is responsible for ensuring the implementation of
                 appropriate audit procedures for the U. T. System. Accordingly,
                 the U. T. System Chief Audit Executive (CAE) prepares an
                 executive summary of all internal audit activity by the U. T.
                 System internal auditors and the institutional internal auditors for
                 the Chancellor.

                 1.1   U. T. System Chief Audit Executive's Responsibilities.
                       The U. T. System CAE is charged with assuring that an
                       effective internal audit function is in place Systemwide.
                       The U. T. System CAE accomplishes this through
                       oversight of the following activities at U. T. System
                       Administration and all U. T. System institutions:

                       (a) Proposing a charter for the Audit, Compliance, and
                           Management Review Committee (ACMRC) to be
                           reviewed and approved by the Committee.

                       (b) Developing a Systemwide internal audit plan based
                           on a comprehensive risk assessment and
                           coordinating the implementation of the audit plan with
                           the chief audit executives at all U. T. System
                           institutions.

                       (c) Providing support and advice to each institution's
                           internal audit committee. This includes:

                           (i)    interviewing all candidates for an open
                                  institutional CAE position,

                           (ii)   participating in the annual performance review for
                                  each institution's CAE, and

                           (iii)  participating, with the institution's president and
                                  chair of the institution's audit committee, in any
                                  decision to terminate the employment of an
                                  institution's CAE.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**　　　　　**Rule: 20401**

(d) Establishing the standards and methodology to be followed by all U. T. System internal auditors in:

    (i)   preparation of the annual institutional audit plan,

    (ii)  documentation required for all internal audit work papers,

    (iii) establishment of a standard internal audit reporting format, and

    (iv) provision of direction concerning findings that must be reported to the ACMRC.

(e) Establishing a quality assurance and improvement program that includes monitoring and assessments, to the extent considered necessary by the CAE, to evaluate the internal auditors' conformance with prescribed standards.

(f) Providing audit assistance to the Chancellor, the Deputy Chancellor, the Executive Vice Chancellors, and the Vice Chancellors in the exercise of their responsibilities.

(g) Providing information to the ACMRC in Executive Session concerning personnel matters relating to appointment, employment, evaluation, assignment, duties, discipline, or dismissal of individual U. T. System employees involved in internal audit functions.

1.2    Appointment and Evaluation of the CAE.  The CAE shall be appointed by the ACMRC after nomination by the Chancellor. The CAE shall hold office subject to the pleasure of the ACMRC and the Chancellor. The Chancellor's actions regarding the CAE are subject to review and approval by the ACMRC.

1.3    The U. T. System internal auditors are the internal auditors for the U. T. System and augment the audit work of the institutional internal auditor and the State Auditors at the institutions of the U. T. System.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 20401**

Sec. 2    Compliance Program.  The Chancellor, as chief executive officer of the U. T. System, is responsible for ensuring the implementation of a compliance program for the U. T. System. Accordingly, the Systemwide Compliance Officer prepares an executive summary of all compliance activity of the institutions, The University of Texas Investment Management Company (UTIMCO), and System Administration.

2.1    Systemwide Compliance Officer's Responsibilities.  The Systemwide Compliance Officer is responsible, and will be held accountable for, apprising the Chancellor and the ACMRC of the institutional compliance functions and activities at System Administration, UTIMCO, and at each of the institutions as set out in Section 2.1 (b) below. The Systemwide Compliance Officer provides institutional compliance assistance to the Chancellor, the Deputy Chancellor, the Executive Vice Chancellors, the Vice Chancellors, and the Chief Compliance Officer of UTIMCO in the exercise of their responsibilities.

(a) The Systemwide Compliance Officer shall be appointed by the Chancellor. The Systemwide Compliance Officer is the senior compliance official of the U. T. System; provides assistance and advice covering all institution, UTIMCO, and System Administration compliance programs; and shall hold office without fixed term, subject to the pleasure of the Chancellor.

(b) The primary responsibilities of the Systemwide Compliance Officer include developing an infrastructure for the effective operation of the U. T. System Institutional Compliance Program; chairing the Systemwide Compliance Committee and the Compliance Officers Council; and prescribing the format for the annual risk based compliance plan and the quarterly compliance status reports to be submitted by each institution, UTIMCO, and System Administration.

**3.    Definitions**

None

**4.    Relevant Federal and State Statutes**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**           **Rule: 20401**

None

5. **Relevant System Policies, Procedures, and Forms**

None

6. **Who Should Know**

Administrators
Internal Audit
Compliance

7. **System Administration Office(s) Responsible for Rule**

Audit Office
Compliance

8. **Dates Approved or Amended**

Editorial amendments to Sections 1.1(f) and 2.1 made July 13, 2015
February 12, 2015
December 6, 2012
Editorial amendments made March 17, 2008
December 10, 2004

9. **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 20402**

1.    **Title**

      Provision of Audit and Non-Audit Services by External Audit Firms

2.    **Rule and Regulation**

      Sec. 1    Audit Services.

            1.1    Audit, Compliance, and Management Review
                   Committee's Role.  The ACMRC is responsible for
                   contracting with external audit firms for audit services.

            1.2    Board Approval.  Neither U. T. System nor any of the
                   institutions may engage an external audit firm for
                   audit services unless the contract is authorized
                   through a delegation of authority as provided by
                   *Texas Government Code* Section 321.020 and the
                   contract has been approved by the Board in
                   accordance with Section 3 of Regents' *Rules and
                   Regulations*, Rule 10501 concerning contracts
                   requiring Board approval.

            1.3    Conflict of Interest Provision.  Neither U. T. System
                   nor any of the institutions may engage an external
                   audit firm for audit services unless the contract
                   includes an acceptable conflict of interest provision
                   approved by the Vice Chancellor and General
                   Counsel.

                   (a) Lead Partner Rotation.  The lead (or coordinating)
                       audit partner (having primary responsibility for the
                       audit), or the audit partner responsible for
                       reviewing the audit shall not have performed audit
                       services for the institution(s) in each of the five
                       previous fiscal years.

                   (b) Hiring Restrictions.  Neither U. T. System nor any
                       of the institutions may hire a former or current
                       partner, principal, or professional employee in a
                       key position, as defined in the *Code of
                       Professional Conduct* of the American Institute of
                       Certified Public Accountants (AICPA), that would
                       cause a violation of the AICPA *Code of
                       Professional Conduct* or other applicable

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 20402**

independence rules, during the year subsequent to the completion of the audit engagement.

Sec. 2    Non-Audit Services.

2.1    ACMRC Review and Approval.  The U. T. System and the institutions may not engage the external audit firm to perform non-audit services unless the proposed engagement is reviewed and approved by the ACMRC.

2.2    Delegation of Authority.  The ACMRC Chairman may delegate to one or more designated members of the ACMRC the authority to grant the approval required in the previous Subsection. The decision(s) of any member to whom authority to approve is delegated shall be presented to the full ACMRC at the next Committee meeting.

2.3    Conflict of Interest Not Permitted.  If, upon review of a proposed engagement for non-audit services under Subsection 2.1 of this Rule, the ACMRC determines that a conflict of interest exists between the external audit firm's obligations to perform audit services and that firm's anticipated obligations to perform non-audit services contemporaneously with the performance of audit services, then U. T. System and the institutions may not engage the external audit firm to perform the non-audit services.

Sec. 3    Prohibited Non-Audit Services. Neither U. T. System nor any of the institutions may engage an external audit firm to provide prohibited non-audit services contemporaneously with the provision of audit services.

3.    **Definitions**

ACMRC – refers to the Audit, Compliance, and Management Review Committee of the Board.

Audit Services – are services provided for the purpose of expressing an opinion on the financial statements of U. T. System or any of the institutions.

External Audit Firm – is a public accounting firm (including its partners, employees and agents) engaged by the Board to provide audit services.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 20402**

Non-Audit Services – any non-audit services (including tax services) that are not listed in the definition of prohibited non-audit services.

Prohibited Non-Audit Services – include:

a) bookkeeping or other services related to the accounting records or financial statements of U. T. System or any of the institutions;

b) financial information systems design and implementation;

c) appraisal or valuation services, fairness opinions, or contribution-in-kind reports;

d) actuarial services;

e) internal audit outsourcing services;

f) management functions or human resources;

g) broker, dealer, investment adviser, or investment banking services;

h) legal services and expert services unrelated to the audit; and

i) any other service that the Board determines, by rule, is impermissible.

**4.     Relevant Federal and State Statutes**

*Texas Government Code* Section 321.020 – Coordination of Certain Audits

**5.     Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations*, Rule 10501 – Delegation to Act on Behalf of the Board

**6.     Who Should Know**

Administrators
Internal Audit

**7.     System Administration Office(s) Responsible for Rule**

Office of the Controller
Audit Office

**8.     Dates Approved or Amended**

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 20402**

August 22, 2013
December 10, 2004

**9.      Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 20501**

1.      **Title**

        Accounting, Operating Budgets, and Legislative Appropriation Requests

2.      **Rule and Regulation**

        Sec. 1      Approval of Accounting Records.  All accounting records and
                    procedures shall be subject to the approval of the chief business
                    officer and the Executive Vice Chancellor for Business Affairs.
                    The Executive Vice Chancellor for Business Affairs shall be
                    responsible for establishing internal controls to ensure that
                    funds are expended and recorded appropriately.

        Sec. 2      Financial Reports.  The Annual and Interim Financial Reports
                    shall be prepared under the direction of the chief business
                    officer and the Assistant Vice Chancellor and Controller. Copies
                    of the reports shall be furnished to the Board of Regents.

        Sec. 3      Approval of Budgets.  Operating Budgets for all the institutions
                    shall be approved annually by the Board of Regents within the
                    budget estimates of income prepared by the chief business
                    officer and the president of an institution and approved by the
                    Executive Vice Chancellor for Health Affairs, the Executive Vice
                    Chancellor for Academic Affairs, the Executive Vice Chancellor
                    for Business Affairs, the Deputy Chancellor, and the Chancellor.

        Sec. 4      Automatic Reappropriation.  General Funds balances shall not
                    be reappropriated from one fiscal year to the next unless
                    specific approval is given by the appropriate Executive Vice
                    Chancellor, the Deputy Chancellor, the Chancellor, and the
                    Board of Regents.

        Sec. 5      Budget Policies and Instructions.  General policies for the
                    budget preparation shall be recommended by the Chancellor to
                    the Board of Regents and shall be followed in preparing the
                    budgets. Instructions for details of budget preparation shall be
                    furnished to the institution presidents by System Administration.

        Sec. 6      Responsibility for Reviewing.  The institutional president shall
                    issue local instructions and shall furnish forms to the budget-
                    recommending officials. Their recommendations for salaries,
                    maintenance and operation, equipment, travel, and other
                    pertinent items shall be reviewed by the president. The budget
                    as finally recommended by the president shall be forwarded to
                    the appropriate Executive Vice Chancellor, the Deputy

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 20501**

Chancellor, and the Chancellor for further review and recommendation to the Board of Regents.

Sec. 7    Budget Administration.  Rules and procedures for budget administration shall be prepared by the Chancellor, with assistance of the Deputy Chancellor, the Executive Vice Chancellor for Health Affairs, the Executive Vice Chancellor for Academic Affairs, and the Executive Vice Chancellor for Business Affairs, approved by the Board of Regents, and shall be included in the completed budgets.

Sec. 8    Approval of Appropriation Requests.  Legislative appropriation requests for all institutions shall be prepared by the president in conformity with these instructions and approved by the Executive Vice Chancellor for Health Affairs, the Executive Vice Chancellor for Academic Affairs, the Executive Vice Chancellor for Business Affairs, the Deputy Chancellor, and the Chancellor.

3.    **Definitions**

None

4.    **Relevant Federal and State Statutes**

None

5.    **Relevant System Policies, Procedures, and Forms**

None

6.    **Who Should Know**

Administrators

7.    **System Administration Office(s) Responsible for Rule**

Office of the Controller

8.    **Dates Approved or Amended**

Editorial amendments to Section 3, 4, and 6-8 made July 13, 2015
December 10, 2004

Exhibit 5

9.     **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 20601**

1.    **Title**

      Aircraft Use

2.    **Rule and Regulation**

      Sec. 1    Official Use.  The U. T. System aircraft or any leased or
                chartered aircraft will be used only in the scope and conduct or
                furtherance of official State business and only in compliance
                with the travel regulations contained in *Texas Government Code
                Section 2205.001 et seq.* and any other laws applicable to the
                use of State-owned or leased aircraft. Donor Aircraft, including
                the gifted use of a passenger seat on a noncommercial flight,
                used in the scope and conduct or furtherance of official
                University business is also covered by this Rule.

      Sec. 2    Passengers.  In accordance with Texas Attorney General
                Opinion H-1089, the Board of Regents finds that attendance of
                the spouses of members of the Board of Regents and officials of
                the Office of the Board of Regents; spouses of the Executive
                Officers and the Administrative Officers of the U. T. System; and
                spouses of the presidents of the institutions of the U. T. System
                at official functions may be in furtherance of official State
                business. Whether the spouse's attendance is in furtherance of
                official State business is dependent in part on the nature of the
                employee's office, the spouse's role, the purpose of the
                particular trip, and the spouse's connection with that purpose.
                Examples of instances in which the spouse's attendance is in
                furtherance of official State business include, but are not limited
                to, attendance at U. T. System Board of Regents' meetings
                when there is an official function hosted by an institution and
                retirement functions honoring long-time key employees of the
                U. T. System or the institutions.

      Sec. 3    Justification for Passenger Use.

                3.1    Consistent with State law, U. T. System aircraft or leased
                       or chartered aircraft will be used to carry passengers only
                       when the destination is not served by commercial
                       carriers, the time required to use such a carrier interferes
                       with other obligations, or the number of authorized
                       passengers traveling makes the use of State aircraft cost
                       effective.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                 **Rule: 20601**

      3.2    Use of a leased or chartered aircraft, including Texas Department of Transportation (TxDOT) aircraft, will be approved only when the U. T. System aircraft is unavailable.

Sec. 4    Priority for Use.  Requests by the U. T. System Board of Regents shall be arranged through the General Counsel to the Board. All other flights of U. T. System aircraft or requests for leased or chartered aircraft, including TxDOT aircraft, will be requested from and approved in advance by the Chancellor or designee. Up until 24 hours before a flight is scheduled to begin, requests for the use of U. T. System aircraft will be approved upon the following order of priority:

1. Chairman of the U. T. System Board of Regents
2. A Vice Chairman of the U. T. System Board of Regents (in order of request)
3. Members of the U. T. System Board of Regents (in order of request)
4. Chancellor, Deputy Chancellor, and Executive Vice Chancellors (in order of request)
5. Vice Chancellors and other System officers (in order of request)
6. Institutional Presidents (in order of request)
7. Other staff of the U. T. System Administration (in order of request)
8. Other faculty and staff personnel of the institutions of the U. T. System (in order of request)

Sec. 5    Assignment of Aircraft by Chancellor.

      5.1    During the 24-hour period prior to the beginning of a flight, if the U. T. System aircraft has not been previously scheduled, the Chancellor may assign the U. T. System aircraft to any person on the priority list on a first-come first-served basis without regard to the order of priority.

      5.2    If a U. T. System aircraft flight that is scheduled before the beginning of the 24-hour period is cancelled, the Chancellor may assign, as practicable, the aircraft to the person requesting the aircraft that is next in order of priority. If a U. T. System aircraft flight scheduled during the 24-hour period is cancelled, the Chancellor or designee may assign the aircraft to the next person

**Exhibit 5**

requesting it on a first-come first-served basis without regard to the order of priority.

Sec. 6     Use by Other State Agencies.  In accordance with the expressed intent of the Legislature that State-owned aircraft be utilized by all agencies of the State, use of U. T. System aircraft by other State officials and personnel on official State business is encouraged and will be authorized by the Chancellor on a space available and first-come first-served basis after the individuals on the priority list indicated in Section 4 above.

Sec. 7     Direction of Pilots.  The pilots of U. T. System aircraft will report to and act under the direction of the Office of the Controller. Regents may direct an itinerary or passenger change to an approved flight, provided that the purpose of the flight and the passengers on the flight are in accordance with Section 2205.036 of the *Texas Government Code*. The Chancellor or designee must approve all other requests that would substantially change an approved itinerary or passengers. Notwithstanding the foregoing sentence, the pilot may authorize a change of itinerary or passengers in the event of an emergency.

Sec. 8     Rates Charged.  Excluding compensation for contract pilot services, charges to applicable U. T. System departments and the institutions for use of the U. T. System aircraft shall be equal to the rate approved by TxDOT for comparable interagency aircraft services.

Sec. 9     Flight Regulations.  The U. T. System aircraft shall be operated at all times in accordance with the provisions of the Federal Aviation Administration and U. T. System Flight Operations Procedures, which are in accordance with the Federal Aviation Act (as amended) and Civil Air Regulations. *Texas Government Code,* Chapter 2205 gives TxDOT oversight of specific aspects of maintenance and operations for U. T. System aircraft.

Sec. 10    Control of Aircraft in Flight.  Under Federal Regulations, the pilot of any aircraft is responsible for and is the final authority as to the flight operation of that aircraft. All decisions concerning the flight itself will rest solely with the pilot. However, the pilot should keep the priority person informed.

Sec. 11    Minimum Number of Pilots.  Two pilots are required for all flights used in conjunction with official University business. This

Section is applicable to U. T. System aircraft, leased aircraft, chartered flights, privately owned aircraft, and donor aircraft.

Sec. 12   Flight Reservations.  All flight reservations for the U. T. System aircraft shall be entered into the U. T. System Aircraft Reservation System. Information must include, but is not necessarily limited to, the following:

1.  departure/estimated arrival, date, time, and place,
2.  name of each passenger,
3.  destination(s) including intermediate stops and return information with date and time,
4.  purpose of trip for each passenger, and
5.  benefit to the State and university.

Sec. 13   Passenger Manifests.  For each flight, the pilot will complete a Passenger Manifest showing the following:

1.  flight number and duration,
2.  date,
3.  aircraft number,
4.  flight plan,
5.  destination and intermediate stops of flight,
6.  names of pilot and copilot, and
7.  passenger information
    - name of each passenger
    - department or institution
    - signature of each passenger.

Sec. 14   Record Keeping and Reports.  The approved reservation requests forms and post-flight passenger manifests will serve as the official record of flights.

14.1   The U. T. System Office of the Controller shall prepare and submit the following reports:

(a) Travel Log.  In accordance with *Texas Government Code* Section 2205.039, the passenger manifests for the month will be sent to TxDOT each month following the month in which travel occurred.

(b) Reports to the Board.  Passenger manifests for U. T. System aircraft, TxDOT aircraft flown on behalf of U. T. System, privately owned aircraft, and leased and charter aircraft, including donor or chartered

**Exhibit 5**

aircraft paid for by outside entities on behalf of the University, will be sent to the General Counsel to the Board twice a year in April and October for distribution to the Board's Finance and Planning Committee for review. For donor aircraft, passenger and donor names may be omitted consistent with State law, but will be provided, upon request, to the Board, to the Chancellor, the Deputy Chancellor, the appropriate Executive Vice Chancellor, the Vice Chancellor for External Relations, the Vice Chancellor and General Counsel, and/or the General Counsel to the Board.

Sec. 15   Leased and Privately Owned Aircraft.  No U. T. System employee may operate leased or privately owned aircraft in conjunction with official University business unless authorized in writing by the Chancellor or designee.

Sec. 16   Chartered Aircraft.  The following steps will be taken when securing charter aircraft.

16.1   Section 2205.035 of the *Texas Government Code* requires advance approval by the State Aircraft Pooling Board for the expenditure of appropriated funds for the rental or lease of an aircraft.

16.2   Charter operators must meet U. T. System insurance and operator requirements.

16.3   If more than one of the priority persons listed in Section 4 requests the use of the U. T. System aircraft more than 24 hours before the flight is scheduled to begin, the Chancellor will assign the U. T. System aircraft to the person with the highest priority, and will provide leased aircraft or a chartered flight for the use of the person or persons with the lower priority if necessary and feasible.

16.4   During the 24-hour period prior to the beginning of a flight, if the U. T. System aircraft has been previously scheduled and an additional request for its use is made by a person on the priority list, the Chancellor will, insofar as necessary and practicable, provide a leased aircraft or a chartered flight for the use of the person making the subsequent request.

Sec. 17   Donor Aircraft.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 20601**

17.1   Usage.  Approval to use Donor Aircraft, including the acceptance of a gift of the use of a passenger seat on a noncommercial flight within the definition of Donor Aircraft, in the scope and conduct or furtherance of official University business is conditioned upon the confirmation of the following requirements prior to the acceptance of flight:

(a)   Use of Donor Aircraft must be approved in writing and in advance by the Chancellor or designee following submission of a request using a Donor Aircraft Request for Approval form. In evaluating whether to allow the use of a Donor Aircraft, an individual should first assure that such use does not create a conflict of interest under Regents' Rule 30104. For such travel by U. T. System Administration employees, officers, and institutional presidents, any potential conflict of interest shall be evaluated by the U. T. System Vice Chancellor and General Counsel or designee prior to approval of the use. For other institution employees, the conflict of interest analysis may be performed by the institution's legal counsel and/or ethics advisor. In addition to the conflict of interest review, the Chancellor or designee shall review and approve such proposed travel by U. T. System institutional Presidents and System Administration employees. Presidents shall review and approve such proposed travel of their employees. In every instance, the decision to approve shall be based upon the totality of the circumstances. The reviewing parties may request additional information to assist them in review.

(b)   U. T. System insurance requirements must be met with a minimum of $1,000,000 per seat/passenger.

(c)   Donor Aircraft must be multiengine turboprop or jet.

(d)   Each flight must have 2 current and qualified pilots.

(e)   The aircraft owner may not serve as pilot or copilot.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 20601**

(f)   No passenger may enter the cockpit or distract pilots during flight, takeoff, or landing.

(g)   Students must be accompanied by a University staff member for the duration of any flight.

(h)   Donor is not a registered lobbyist.

(i)   Donor flight information (date of flight, aircraft tail number, origin/destination) along with a passenger list and emergency contact for each must be maintained by a responsible University individual on the ground.

17.2   Reporting.  For each donor flight, the following will be provided:

(a)   Donor Aircraft Request for Approval form will be forwarded to U. T. System Aircraft Operations prior to departure.

(b)   Detailed flight information will be reported as required by Section 17.1 of this Rule.

**3.      Definitions**

Donor Aircraft – aircraft and crew, or individual passenger seat on aircraft, provided at reduced or no cost to transport passengers or cargo to/from a predetermined departure location to a specific destination. Donor Aircraft does not include a reduced or no cost airline ticket on a noncharter commercial airline flight.

**4.      Relevant Federal and State Statutes**

*Texas Government Code,* Chapter 2205 – Aircraft Pooling

**5.      Relevant System Policies, Procedures, and Forms**

Aircraft Reservation System: https://www.utsystem.edu/air/

Donor Aircraft Acceptance Checklist

**6.      Who Should Know**

All employees

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 20601**

7.  **System Administration Office(s) Responsible for Rule**

    Controller's Office

8.  **Dates Approved or Amended**

    Editorial amendments to Sec. 4 and Sec. 14.1(b) made July 13, 2015
    November 6, 2014
    December 12, 2013
    July 11, 2012
    May 12, 2011
    Editorial amendments to Sec. 6 and new Sec. 16 made April 27, 2011
    Editorial amendment to Sec. 15.1(b) made September 17, 2010
    Editorial amendment to Sec. 15.1 made September 1, 2010
    December 10, 2004

9.  **Contact Information**

    Questions or comments regarding this Rule should be directed to:

    - bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 20701**

1. **Title**

   Use of Historically Underutilized Businesses

2. **Rule and Regulation**

   Sec. 1   Good Faith Effort.  It is the policy of the Board of Regents to promote full and equal opportunity for all businesses to supply the goods and services needed to support mission, administrative, and logistical operations of the U. T. System. The U. T. System commits to a good faith effort to increase purchases from and contract awards to Historically Underutilized Business (HUB) firms consistent with the state's goals for HUB participation and overall economic development.

   Sec. 2   Establishment of Procedures.  The U. T. System has a compelling interest to assure that procurement funds always are expended in an equal-business-opportunity context. To meet that obligation, the Board of Regents delegates to the Chancellor the responsibility for establishing and maintaining procurement systems and procedures that is nondiscriminatory with respect to race, color, religion, sex, or national origin. That obligation also encompasses procurement systems and procedures of business firms under contract with the U. T. System in order to preclude U. T. System institutions' passive participation in an unlawfully discriminatory marketplace. The Chancellor is also responsible for developing procedures to ensure that a good faith effort is made to meet the state's goals for HUB participation and overall economic development.

   Sec. 3   Adoption of Guidelines.  The Board of Regents adopts the use of the guidelines and related rules of the Texas Procurement and Support Services Division of the Texas Comptroller of Public Accounts (34 *Texas Administrative Code* Part 1, Sections 20.11 – 20.28).

   Sec. 4   Scope.  This policy applies to acquisition of specified commodities, professional and other services, and construction services, by System Administration and institutions of the U. T. System, including auxiliary enterprises, regardless of funding source (treasury or non-treasury funds).

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 20701**

3.      **Definitions**

Historically Underutilized Business – a business enterprise, with its principal place of business in Texas, which is formed for the purpose of making a profit, and meets one of the following categories:

- A corporation in which at least 51% of all classes of shares of stock or other equitable securities are owned by one or more persons from an economically disadvantaged group.
- A sole proprietorship that is 100% owned by a person from an economically disadvantaged group.
- A partnership in which at least 51% of the assets and interests in the partnership are owned by one or more persons from an economically disadvantaged group.
- A joint venture in which each entity in the joint venture is a historically underutilized business.
- A supplier contract between a historically underutilized business and a prime contractor under which the historically underutilized business is directly involved in the manufacture or distribution of the supplies or materials or otherwise warehouses and ships the supplies.
- A business other than described in the bullets above, which is a legally recognized business organization under the laws of the State of Texas, provided that at least 51% of the assets and interest and 51% of any classes of stock and equitable securities are owned by one or more persons from an economically disadvantage group.

Economically Disadvantaged Group – include the following:

- Black Americans – includes persons having origins in any of the Black racial groups of Africa.
- Hispanic Americans – includes persons of Mexican, Puerto Rican, Cuban, Central or South Americans, or other Spanish or Portuguese culture or origin.
- Asian Pacific Americans – includes persons whose origins are in Japan, China, Taiwan, Korea, Vietnam, Laos, Cambodia, the Philippines, Samoa, Guam, the U.S. Trust Territories of the Pacific, and the Northern Marianas, and Subcontinent Asian Americans which includes persons whose origins are from India, Pakistan, Bangladesh, Sri Lanka, Bhutan or Nepal.
- Native Americans – includes persons who are American Indians, Eskimos, Aleuts, or Native Hawaiians.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 20701**

- American Women – includes all women of any ethnicity except American women specified in the bullets immediately above.

Commodities – materials, supplies, or equipment.

Professional Services – services procured under provisions of the *Texas Government Code* Sections 2254.001 – 2254.005.

Other Services – all services, other than construction and professional services, including consulting services procured under provisions of *Texas Government Code* Sections 2254.021 – 2254.040.

Construction – construction, improvement, maintenance, or repair of buildings, roads, highways, or grounds.

Treasury Funds – funds maintained in the State treasury and disbursed through the State Comptroller's Office for System Administration or an institution of the U. T. System.

Non-Treasury Funds – all funds of the U. T. System Administration or an institution that are not deposited in the State Treasury.

4.     **Relevant Federal and State Statutes**

34 *Texas Administrative Code* Part 1, Sections 20.11 – 20.28 – Texas Procurement and Support Services Division of the Texas Comptroller of Public Accounts

*Texas Government Code* Sections 2254.001 – 2254.005 – Professional and Consulting Services

*Texas Government Code* Sections 2254.021 – 2254.040 – Consulting Services

5.     **Relevant System Policies, Procedures, and Forms**

The University of Texas System Administration Policy UTS137, *Historically Underutilized Business (HUB)* Program

6.     **Who Should Know**

Administrators
HUB Coordinators
Procurement Directors

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 20701**

7.    **System Administration Office(s) Responsible for Rule**

Office of the Chancellor

8.    **Dates Approved or Amended**

Editorial amendments made March 18, 2008
Editorial amendments to Section 3 and Number 4 made January 28, 2008
December 10, 2004

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents               Rule: 20801**

1.    **Title**

      Travel

2.    **Rule and Regulation**

      Sec. 1    Development of Travel Regulations.  Institutions of the U. T.
                System shall issue travel regulations covering authorization for
                travel and reimbursement for approved travel to implement
                applicable provisions of State law and regulations for the
                guidance of all personnel concerned. Following administrative
                approval by the appropriate Executive Vice Chancellor, travel
                regulations will be included in the institutional *Handbook of
                Operating Procedures*.

      Sec. 2    Authorization for Foreign Travel.  Authorization for foreign travel
                shall be transmitted through proper administrative channels to
                the Chancellor or the president of the institution, as applicable,
                or the respective officer's designee, for advance written
                approval. Authorization for foreign travel by Chief Administrators
                must be obtained as required by Regents' *Rules and
                Regulations,* Rule 20205, Expenditures for Travel and
                Entertainment by Chief Administrators and for the Maintenance
                of University Residences.

3.    **Definitions**

      Foreign Travel – travel to, in, or from a destination that is neither in the
      United States nor a possession of the United States.

      Chief Administrator – means the Chancellor or the president at each U. T.
      System institution.

4.    **Relevant Federal and State Statutes**

      *Texas Education Code* Section 65.31 – General Powers and Duties

      *Texas Government Code* Section 660.003 – Applicability of Travel
      Expenses

      *Texas Government Code* Section 660.024 – Advance Approval for Certain
      International Travel

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 20801**

*Texas Government Code* Section 2203.004 – Requirement to Use State Property for State Purposes

5.    **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 20205 – Expenditures for Travel and Entertainment by Chief Administrators and for the Maintenance of University Residences

Regents' *Rules and Regulations,* Rule 31005 – Faculty or Staff Absence

The University of Texas System Policy UTS120, *Spousal Travel Policy*

Chancellor Cigarroa's letter regarding international travel risks

6.    **Who Should Know**

Administrators

7.    **System Administration Office(s) Responsible for Rule**

Office of the Board of Regents

8.    **Dates Approved or Amended**

Editorial amendment to Number 4 made June 17, 2015
Editorial amendments made October 24, 2012
Editorial amendments to Sec. 2 and Numbers 3-5 made September 12, 2012
December 10, 2004

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**            **Rule: 20901**

1.      **Title**

        Procurement of Goods and Services; Contract Management Handbook

2.      **Rule and Regulation**

        Sec. 1      Contract Management Handbook. Each institution and U. T.
                    System Administration shall develop and maintain a Contract
                    Management Handbook that provides consistent contracting
                    policies and procedures, including a risk analysis procedure.

                    The Contract Management Handbook shall establish contract
                    review procedures and a contract review checklist approved by
                    the Office of General Counsel. The review procedures and
                    checklist must include:

                    1.1     a description of each step of the procedure used to
                            evaluate and process contracts;

                    1.2     a checklist that describes each process that must be
                            completed before contract execution; and

                    1.3     a value threshold that initiates required review by legal
                            counsel unless the contract is a standard contract
                            previously approved by counsel.

        Sec. 2      Acquisition of Stationery, Printing, and Fuel.  Each institution
                    and System Administration may acquire goods and services
                    covered by Texas Constitution, Article XVI, Section 21
                    (including but not limited to stationery, printing, and fuel) from
                    institutional departments or purchase the goods and services
                    from external sources. If the goods or services are purchased
                    from external sources, the goods and services shall be
                    purchased as follows:

                    2.1     using the method that provides the best value to the
                            institution or System Administration including competitive
                            bidding, competitive sealed proposals, a catalog
                            purchase, a group purchase program, or an open market
                            contract; and

                    2.2     in accordance with (a) the requirements of *Texas
                            Education Code* Sections 51.9335, 73.115, or 74.008, as
                            applicable, (b) the Regents' *Rules and Regulations*,
                            (c) the U. T. System Administration policies, and (d) the

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 20901**

policies and procedures of the institution or System Administration.

Sec. 3    Competitive Procurement.  If an institution or System Administration wishes to purchase goods or services covered by Texas Constitution, Article XVI, Section 21 from external sources, the purchase must utilize a competitive procurement method unless another procurement method is authorized by law. All procurements must comply with all applicable procurement policies including any applicable dollar limits.

**3.    Definitions**

Fuel – for purposes of this Rule, means anything consumed to produce energy including coal, natural gas, oil, diesel fuel, gasoline, and propane.

**4.    Relevant Federal and State Statutes**

Texas Constitution, Article XVI, Section 21, Public Printing and Binding; Repairs and Furnishings; Contracts

*Texas Education Code* Section 51.9335 – Acquisition of Goods and Services

*Texas Education Code* Section 73.115 – Acquisition of Goods and Services

*Texas Education Code* Section 74.008 – Acquisition of Goods and Services

*Texas Government Code,* Chapter 2261 – State Contracting Standards and Oversight

**5.    Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 10501 – Delegation to Act on Behalf of the Board

The University of Texas System Administration Policy UTS159, *Purchasin*g

The University of Texas System Administration Policy UTS148, *Protest Procedures Related to Procurements of Goods and Services*

The University of Texas System Administration Policy UTS137,

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**        **Rule: 20901**

*Historically Underutilized Business (HUB) Program*

The University of Texas System Administration Policy UTS145,
*Processing of Contract*s

The University of Texas System Administration Policy UTS156, *Purchaser
Training and Certification*

6. **Who Should Know**

   Administrators

7. **System Administration Office(s) Responsible for Rule**

   Office of the Board of Regents

8. **Dates Approved or Amended**

   November 5, 2015
   Editorial amendment to Number 5 made October 13, 2011
   February 8, 2007

9. **Contact Information**

   Questions or comments regarding this Rule should be directed to:

   - bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 30101**

1.    **Title**

      Classified Personnel Pay Plan

2.    **Rule and Regulation**

      Sec. 1    Institutional Classified Personnel Pay Plan.  The institutions of
                the U. T. System and System Administration shall adopt and
                maintain a classified personnel pay plan that conforms to the
                guidelines established by the Chancellor in a Business
                Procedures Memorandum. Each institution's president shall be
                responsible for the development and operation of the respective
                institution's classified personnel pay plan. The Chancellor shall
                be responsible for the development and operation of System
                Administration's classified pay plan.

3.    **Definitions**

      None

4.    **Relevant Federal and State Statutes**

      None

5.    **Relevant System Policies, Procedures, and Forms**

      None

6.    **Who Should Know**

      Employee Services

7.    **System Administration Office(s) Responsible for Rule**

      Office of Employee Services

8.    **Dates Approved or Amended**

      February 10, 2005
      December 10, 2004

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 30101**

9.     **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 30102**

1.      **Title**

        General Appointment Information

2.      **Rule and Regulation**

        Sec.1    Appointment of Employees.  The Board of Regents, upon the
                 recommendation of the Chancellor, shall elect or appoint, as the
                 case may be, all of the employees of The University of Texas
                 System and, subject to State and federal laws, shall assign the duties, rights, and privileges of
                 each employee or each class or group of employees; provided,
                 however, that the Board of Regents may delegate to the
                 Chancellor, and the Chancellor, through the appropriate
                 Executive Vice Chancellor, may delegate to the presidents of
                 the institutions, authority to appoint employees in certain
                 designated classes or categories.

        Sec. 2   Best Interest.  All appointments shall be on the basis of merit
                 and shall comply with the provisions of *Texas Education Code*
                 Section 51.948, which requires that any agreement with higher
                 education administrators be executed only after a finding that
                 the agreement is in the best interest of the U. T. System or any
                 of the institutions. Authority to make such findings is delegated
                 to the president or chief business officer of the institution and to
                 the Chancellor for employees not covered by Regents' *Rules
                 and Regulations,* Rule 10501, Section 3.4.

        Sec. 3   As provided in the Texas Constitution Article I, Section 4, and by
                 statute, no religious qualification shall be required for
                 appointment to any position.

3.      **Definitions**

        Agents of the System – An agent is one who is authorized by another, the
        principal, to transact some business or manage some affair for the
        principal, and to render the principal an accounting of the transaction.

4.      **Relevant Federal and State Statutes**

        Texas Constitution Article I, Section 4 – Religious Tests

        *Texas Education Code* Section 65.38 – Nonsectarian; Powers and Duties
        of Board

**Page 1 of 2**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 30102**

*Texas Education Code* Section 51.943 – Renewal of Faculty Employment Contracts

5.      **Relevant System Policies, Procedures, and Forms**

None

6.      **Who Should Know**

Administrators

7.      **System Administration Office(s) Responsible for Rule**

Office of Employee Services

8.      **Dates Approved or Amended**

Editorial amendment to Section 2 made August 14, 2012
December 10, 2004

9.      **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                **Rule: 30103**

1.      **Title**

        Standards of Conduct

2.      **Rule and Regulation**

        Sec. 1      Statutory Compliance.  Every employee is expected to obey all
                    federal, State, and local laws, and particularly *Texas Penal
                    Code,* Chapter 42 and Section 46.03 and *Texas Education
                    Code* Section 51.935. Any employee who violates any provision
                    of these statutes is subject to disciplinary action, including
                    dismissal, notwithstanding any action by civil authorities on
                    account of the violation.

        Sec. 2      Disruption of Activities.  Any employee who, acting singly or in
                    concert with others, obstructs, disrupts, or interferes with any
                    teaching, educational, research, administrative, disciplinary,
                    public service, or other activity, meeting, or event authorized to
                    be held or conducted on campus or on property or in a building
                    or facility owned or controlled by The University of Texas
                    System or any of the institutions is subject to disciplinary action,
                    including dismissal. Obstruction or disruption includes but is not
                    limited to any act that interrupts, modifies, or damages utility
                    service or equipment, communication service or equipment,
                    university computers, computer programs, computer records, or
                    computer networks accessible through University computer
                    resources.

        Sec. 3      Channel for Communication.  The Board of Regents is the only
                    proper channel through which recommendations concerning the
                    administration of the System or any of the institutions, as a
                    whole or in any of its parts, should reach the Legislature or other
                    State agencies or officials.

        Sec. 4      Public Office.
                    4.1     Conflict of Interest.  Subject to the other provisions of
                            these Rules, an employee of the U. T. System or any of
                            the institutions may hold other nonelective offices or
                            positions of honor, trust, or profit with the State of Texas
                            or the United States if holding the other offices or
                            positions is of benefit to the State of Texas or is required
                            by State or federal law and if there is no conflict between
                            holding the office or position and holding the office or
                            position with the U. T. System or any of the institutions
                            for which the employee receives salary or compensation.

Exhibit 5

4.2     Prior Board Approval.  Before an employee of the U. T.
        System or any of the institutions may accept an offer to
        serve in other nonelective offices or positions of honor,
        trust, or profit with the State of Texas or the United
        States, the employee must obtain from the appropriate
        administrative officials and the Board a finding via the
        Consent Agenda that the requirements of this Section
        have been fulfilled. The Consent Agenda entry shall also
        record any compensation the employee is to receive from
        the nonelective office or position, including salary, bonus,
        or per diem payment.

Sec. 5     Political Activities.

5.1     Right of Participation.  The Board of Regents recognizes
        the right of employees to participate in political activities
        provided such activities are not conducted during work
        hours unless the employee uses accrued compensatory
        or vacation leave; are in compliance with the Constitution
        and laws of the State of Texas; do not interfere with the
        discharge and performance of an employee's duties and
        responsibilities; do not involve the use of equipment,
        supplies, or services of the U. T. System or any of the
        institutions; do not involve the impermissible use of
        University facilities; do not involve the attempt to coerce
        students, faculty, or staff to participate in or support the
        political activity; and do not involve the U. T. System or
        any of the institutions in partisan politics.

5.2     Leave Without Pay.  With the interest of the U. T. System
        and any of the institutions being given first consideration,
        a leave of absence without pay pursuant to Regents'
        *Rules and Regulations*, Rule 30201, Section 3.1 may but
        need not be granted to an employee to participate in
        political activities. However, a leave of absence without
        pay shall not be granted to an employee of the U. T.
        System or any of the institutions for the purpose of being
        a candidate for an elective public office, holding an
        elective public office, or directing the political campaign of
        a candidate for an elective public office.

5.3     Interference with Job Duties.  An employee who wishes
        to engage in political activity that will interfere with the
        performance of his or her duties and responsibilities
        should voluntarily terminate employment. If the president

**The University of Texas System**
**Rules and Regulations of the Board of Regents                Rule: 30103**

of the institution, the Chancellor, the Deputy Chancellor, an Executive Vice Chancellor, or the Board of Regents finds that the employee's political activity interferes with the performance of his or her duties and responsibilities or does not comply with the requirements of this Subsection, the employee shall be subject to appropriate disciplinary action, including termination.

Sec. 6   Opinions for Advertising Purposes.  Every employee must protect the U. T. System and U. T. System institutions against the unauthorized use of opinions for advertising purposes.

## 3.   Definitions

None

## 4.   Relevant Federal and State Statutes

*Texas Penal Code* Section 42 – Disorderly Conduct and Related Offenses

*Texas Penal Code* Section 46.03 – Places Weapons Prohibited

*Texas Education Code* Section 51.935 – Disruptive Activities

## 5.   Relevant System Policies, Procedures, and Forms

Regents' *Rules and Regulations,* Rule 31008 – Termination of a Faculty Member

Regents' *Rules and Regulations,* Rule 30601 – Discipline and Dismissal of Classified Employees

Regents' *Rules and Regulations,* Rule 30602 – Employee Grievance

Regents' *Rules and Regulations,* Rule 30104 – Conflict of Interest, Conflict of Commitment, and Outside Activities

## 6.   Who Should Know

Administrators
Employees

## 7.   System Administration Office(s) Responsible for Rule

Office of General Counsel

**The University of Texas System**
**Rules and Regulations of the Board of Regents            Rule: 30103**

Office of Employee Services

8.    **Dates Approved or Amended**

February 11, 2016
Editorial amendment to Section 5.3 made July 13, 2015
July 11, 2012
Editorial amendment to Section 11.1 made April 12, 2012
December 10, 2004

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 30104**

1.     **Title**

       Conflict of Interest, Conflict of Commitment, and Outside Activities

2.     **Rule and Regulation**

       Sec. 1     Primary Responsibility.  The primary responsibility of employees
                  of the U. T. System Administration and each of the U. T. System
                  institutions is the accomplishment of the duties and
                  responsibilities assigned to one's position of appointment.

       Sec. 2     Outside Work or Activity.  Employees may engage in work or
                  activity with outside entities and individuals, including
                  governmental agencies, industry, or other educational
                  institutions so long as such work or activity complies, as
                  applicable, with the approval and disclosure requirements of
                  Section 5 below and does not violate State laws or U. T. System
                  Administration or U. T. System institution rules or policies
                  governing the conduct of employees, including ethics standards
                  and provisions prohibiting conflicts of interest, conflicts of
                  commitment, and the use of State resources.

       Sec. 3     Unmanaged Conflicts of Interest Prohibited.  U. T. System
                  Administration and U. T. System institution employees may not
                  have a direct or indirect interest, including financial and other
                  interests, or engage in a business transaction or professional
                  activity, or incur any obligation of any nature that is in
                  substantial conflict with the proper discharge of the employee's
                  duties in the public interest.

       Sec. 4     Conflicts of Commitment Prohibited.  Activities on behalf of
                  outside entities or individuals must not interfere with a U. T.
                  System Administration or U. T. System institution employee's
                  fulfillment of his/her duties and responsibilities to the University.
                  Such conflicts of commitment may arise regardless of the
                  location of these activities (on or off campus), the type of
                  outside entity (individual, for-profit, not-for-profit, or
                  government), or the level of compensation (compensated or
                  unpaid).

       Sec. 5     Approval and Disclosure Requirements.  U. T. System
                  Administration and each institution shall adopt policies that
                  clearly delineate the nature and amount of permissible outside
                  work or activities. The policies shall include provisions to
                  prevent, identify, and manage conflicts of interest and conflicts

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 30104**

of commitment and shall include specific processes for disclosing such work or outside activities, as well as the procedures for obtaining and documenting institutional approval to carry out such engagements, consistent with this Rule.

5.1    Approval Required for Outside Activities.  U. T. System Administration shall establish a policy providing requirements for the approval and disclosure of outside activities for employees: (1) authorized to execute contracts on behalf of U. T. System Administration or a U. T. System institution, (2) authorized to exercise discretion with regard to the award of contracts or other pecuniary transactions, and (3) who are executive officers of U. T. System Administration or a U. T. System institution. Disclosure and approvals for the presidents will be made to the appropriate Executive Vice Chancellor. Disclosure and approvals for the Chancellor, the General Counsel to the Board, and the Chief Audit Executive will be made to the Chairman of the Board.

5.2    U. T. System Administration and each institution shall adopt a policy governing an officer's or employee's outside activities, including compensated employment and board service, that clearly delineates the nature and amount of permissible outside activities and that includes processes for disclosing the outside activities and for obtaining and documenting institutional approval to perform the activities.

5.3    Additional Financial Disclosures.  All officers and employees shall, in a timely manner, furnish such additional written financial disclosures as may be required by State or federal authorities or by U. T. System Administration or institutional authorities.

5.4    Electronic Database.  Disclosure of outside activity, documentation of requests for approval, and subsequent approvals required above shall be maintained in an electronic database, following guidelines provided by U. T. System Administration.

Sec. 6    Free Advice.  Even in the case of employees specifically engaged only in residence work, there exists an obligation, usually intermittent, to furnish expert knowledge and counsel for public benefit free of charge, provided that the meeting of this

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                Rule: 30104**

obligation by an employee does not interfere with his or her regular duties, and provided further that in meeting this obligation an employee shall avoid undue competition with legitimate private agencies.

Sec. 7    Separation of Activities.  If a U. T. System Administration or U. T. System institution employee engages in any outside activity, the employee must make it clear to those who employ him or her that the work is unofficial and that the name of the U. T. System or any of the institutions is not in any way to be connected with the employee's name, except when used to identify the member as the author of work related to the employee's academic or research area as more fully described in Rule 90101 of the Regents' *Rules and Regulations* concerning general rules for intellectual property. No employee engaged in outside activities shall use in connection therewith the official stationery of the System, give as a business address any building or department of the U. T. System or any of the institutions, or any University telephone extension.

Sec. 8    Use of University Property.  U. T. System Administration and U. T. System institutional property may only be used for State purposes appropriate to the System or institutional mission.

Sec. 9    Noncompliance.  Noncompliance with this Rule subjects an employee to disciplinary action, including termination, in accordance with applicable procedures.

## 3.    Definitions

Executive officer - includes, but is not limited to, a chancellor or president, all individuals who report directly to the Chancellor or president (other than administrative support positions), and any employee who exercises broad and significant discretion over key institution or U. T. System functions.

## 4.    Relevant Federal and State Statutes

*Texas Government Code* Chapter 572 – Personal Financial Disclosure, Standards of Conduct, and Conflict of Interest

## 5.    Relevant System Policies, Procedures, and Forms

Regents' *Rules and Regulations*, Rule 30103 – Standards of Conduct

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 30104**

Regents' *Rules and Regulations*, Rule 90101 – Rules for Intellectual Property: Purpose, Scope, Authority

The University of Texas System Office of General Counsel website on ethics

The University of Texas System Policy UTS118, *Statement of Operating Policy Pertaining to Dishonest or Fraudulent Activities*

The University of Texas System Policy UTS123, *Policy on Service on Outside Boards*

The University of Texas System Policy UTS134, *Code of Ethics for Financial Officers and Employees*

The University of Texas System Policy UTS175, *Disclosure of Significant Financial Interests and Management and Reporting of Financial Conflicts of Interest in Research*

The University of Texas System Policy UTS180, *Conflicts of Interest, Conflicts of Commitment, and Outside Activities*

The University of Texas System Administration Internal Policy INT129, *Outside Employment*

The University of Texas System Administration Internal Policy INT180, *Conflicts of Interest, Conflicts of Commitment, and Outside Activities*

6.    **Who Should Know**

Board of Regents
Employees

7.    **System Administration Office(s) Responsible for Rule**

Office of General Counsel

8.    **Dates Approved or Amended**

February 11, 2016
September 24, 2015
February 12, 2015
July 11, 2012
Editorial amendment to Numbers 4 and 5 made April 17, 2008
December 10, 2004

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 30104**

9.    **Contract Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents            Rule: 30105**

1.      **Title**

        Sexual Harassment, Sexual Misconduct, and Consensual Relationships

2.      **Rule and Regulation**

        Sec. 1     Environment.  The educational and working environments of
                   The University of Texas System and all of the institutions shall
                   be free from sexual harassment, sexual misconduct,
                   inappropriate consensual relationships, and other inappropriate
                   sexual conduct. Engaging in such conduct or relationships is
                   unprofessional and unacceptable.

        Sec. 2     Adoption of Policies.  Each U. T. System institution and U. T.
                   System Administration shall adopt policies and procedures
                   prohibiting sexual harassment, sexual misconduct, other
                   inappropriate sexual conduct, and regarding consensual
                   relationships in substantial compliance with the Office of
                   General Counsel model policies and procedures. Each
                   institution's policy must include definitions of prohibited
                   behavior, sanctions for violations, and the protocol for reporting
                   and responding to reports of assault. Each institution must
                   review the policy each biennium and submit changes to the
                   Board for approval.

        Sec. 3     Publication of Policies.  The institution's policies and procedures
                   must be published through the institution's website on a web
                   page dedicated solely to the policy through the institution's
                   website and in the institution's *Handbook of Operating
                   Procedures* after review and approval by the appropriate
                   Executive Vice Chancellor and the Board.

3.      **Definitions**

        Sexual Harassment – Unwelcome conduct of a sexual nature,
        including, but not limited to, unwelcome sexual advances, requests
        for sexual favors, or other verbal or physical conduct of a sexual
        nature when:

        a)      Submission to such conduct is made either explicitly or
                implicitly a term or condition of employment, student status,
                or participation in University activities; or

        b)      Such conduct is sufficiently severe or pervasive that it
                interferes with an individual's education, employment, or

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 30105**

> participation in University activities, or creates an
> objectively hostile environment; or

> c)   Such conduct is intentionally directed towards a specific
>      individual and has the effect of unreasonably interfering with
>      that individual's education, employment, or participation in
>      University activities, or creating an intimidating, hostile, or
>      offensive environment.

Sexual assault, sexual exploitation, dating violence, domestic
violence, and stalking are behaviors that may constitute sexual
harassment.

Sexual Misconduct – A broad term encompassing a range of
nonconsensual sexual activity or unwelcome behavior of a sexual
nature. The term includes, but is not limited to, sexual assault,
sexual exploitation, sexual intimidation, sexual harassment,
domestic violence, dating violence, and stalking. Sexual
misconduct can be committed by men or women, strangers or
acquaintances, and can occur between or among people of the
same or opposite sex.

Inappropriate Consensual Relationships – A consensual sexual
relationship, romantic relationship, or dating between a university
faculty member or other employee and any employee or student
over whom the individual has any direct or indirect supervisory,
teaching, evaluation, or advisory authority, unless the relationship
has been reported in advance and a plan to manage the conflict
inherent in the relationship has been approved and documented.

Other Inappropriate Sexual Conduct – Includes unwelcome sexual
advances, requests for sexual favors, or verbal or physical conduct
of a sexual nature directed towards another individual that does not
rise to the level of sexual harassment but is unprofessional and
inappropriate for the workplace or classroom. It also includes
consensual sexual conduct that is unprofessional and inappropriate
for the workplace or classroom.

4.   **Relevant Federal and State Statutes**

Equal Employment Opportunity Commission, *Guidelines on Discrimination
Because of Sex* (defining sexual harassment), 29 Code of Federal
Regulations § 1604.11(a) (1988)

*Texas Penal Code* Ann. § 39.03 – Official Oppression

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 30105**

*Texas Education Code* Section 51.9363 – Campus Sexual Assault Policy

Campus Sexual Violence Act (SaVE Act), Pub. L. No. 113-4, Section 304, 127 Stat. 89 (2013)

5.    **Relevant System Policies, Procedures, and Forms**

The University of Texas System Administration Policy UTS105, *Sexual Orientation Nondiscrimination Policy*

The University of Texas System Administration Policy UTS184, *Consensual Relationships*

The University of Texas System Administration Internal Policy INT134, *Sexual Harassment and Misconduct*

6.    **Who Should Know**

Employees

7.    **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs
Office of General Counsel
Office of Employee Services

8.    **Dates Approved or Amended**

Editorial amendment to Number 4 made March 29, 2016
Editorial amendment to Number 4 made March 17, 2016
November 5, 2015
May 14, 2015
August 22, 2014
December 10, 2004

9.    **Contract Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents** _____ **Rule: 30106**

1. **Title**

    Nepotism

2. **Rule and Regulation**

    Sec. 1    Statutory Requirement.  *Texas Government Code,* Chapter 573 prohibits public officials from appointing any individual to a position that is to be directly or indirectly compensated from public funds or fees of office if the individual is related to the public official within the second degree by affinity or within the third degree by consanguinity.

    Sec. 2    System Requirement.  Even though the appointment of a person, would not be prohibited by the *Texas Government Code*, no employee of The University of Texas System or any of the institutions may approve, recommend, or otherwise act with regard to the appointment, reappointment, promotion, or salary of any person related to such employee as outlined in Sections 2.4 or 2.5 regardless of the source of funds for the payment of salary. This provision also includes individuals hired as private contractors.

    2.1    Supervision.  If the appointment, reappointment, or promotion of a person places him or her under an administrative supervisor related within the specified degree, all subsequent actions with regard to the evaluation, reappointment, promotion, or salary shall be the responsibility of the next highest administrator to make a written review of the work performance of such employee at least annually and to submit each review for approval or disapproval by the institution's Chief Human Resources Officer in the case of classified employees or the Chancellor or the president in the case of faculty or non-classified employees.

    2.2    Promotion.  If the appointment, reappointment, or promotion of a person places him or her in an administrative or supervisory position with responsibility to approve, recommend, or otherwise act with regard to reappointment, promotion, or salary of a person who is related to them within the above degree specified, all subsequent actions regarding the evaluation, reappointment, promotion, or salary of such person shall be made by the next highest supervisor.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 30106**

2.3     Marriage.  The provision of Section 2.1 of this Rule shall apply to situations where two employees marry and one spouse is the supervisor of the other.

2.4     Relationship by Blood.  Relationship by blood (consanguinity) as determined by *Texas Government Code,* Chapter 573 (see also Figure 1 in the Relationships by Consanguinity or Affinity chart):

   (a)     First degree is the employee's father, mother, son, or daughter.

   (b)     Second degree is the employee's brother, sister, grandfather, grandmother, grandson, or granddaughter.

   (c)     Third degree is the employee's uncle or aunt (who is a brother or sister of the employee's parent), nephew or niece (who is a child of the employee's brother or sister), great grandfather, great grandmother, great grandson or great granddaughter.

2.5     Relationship by Marriage.  Relationship by marriage (affinity) as determined by *Texas Government Code,* Chapter 573 (see also Figure 2 in the Relationships by Consanguinity or Affinity chart):

   (a)     First degree is the employee's spouse, father-in-law, mother-in-law, son-in-law, daughter-in-law, stepparent, or stepchild.

   (b)     Second degree is the employee's brother-in-law (sister's spouse or spouse's brother), employee's sister-in-law (brother's spouse or spouse's sister), spouse's grandfather, spouse's grandmother, spouse's grandson, spouse's granddaughter, spouse of the employee's grandparent, or spouse of the employee's grandchild.

3.     **Definitions**

Affinity – relationship by marriage. According to *Texas Government Code* Section 573.024, two individuals are related by affinity if:

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                         Rule: 30106**

1. they are married to each other; or
2. the spouse of one of the individuals is related by consanguinity to the other individual.

Consanguinity – relationship by blood or origin. According to *Texas Government Code* Section 573.022:

(a)  Two individuals are related to each other by consanguinity if:

1. one is a descendant of the other; or
2. they share a common ancestor.

(b)  An adopted child is considered to be a child of the adoptive parent for this purpose.

Public official – defined in *Texas Government Code* Section 573.001(3) as:

1. An officer of this state or of a district, county, municipality, precinct, school district, or other political subdivision of this state;
2. An officer or member of a board of this state or of a district, county, municipality, school district, or other political subdivision of this state; or
3. a judge of a court created by or under the statute of this state.

**4.      Relevant Federal and State Statutes**

*Texas Government Code,* Chapter 573 – Nepotism Prohibitions

**5.      Relevant System Policies, Procedures and Forms**

The University of Texas System Administration Policy UTS120, *Spousal Travel Policy*

**6.      Who Should Know**

Board of Regents
Administrators and Supervisors

**7.      System Administration Office(s) Responsible for Rule**

Office of General Counsel
Office of Employee Services

**8.      Dates Approved or Amended**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 30106**

December 10, 2004

**9.      Contract Information**

Questions or comments regarding this Rule should be directed to:

- [bor@utsystem.edu](mailto:bor@utsystem.edu)

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                **Rule: 30107**

1.    **Title**

      Veteran's Employment Preferences

2.    **Rule and Regulation**

      Sec. 1    Preference in Employment.  As authorized in Chapter 657 of the
                *Texas Government Code*, an individual who qualifies for a
                veteran's preference is entitled to a preference in State
                employment over other applicants for the same position who do
                not have greater qualifications.

      Sec. 2    Complaint Regarding Employment Decision.  Chapter 657 of the
                *Texas Government Code* provides that an individual entitled to a
                veteran's employment preference who is aggrieved by a
                decision of a State agency or institution, relating to hiring or to
                retention of the individual in the event of a workforce reduction,
                may appeal the decision by filing a complaint with the governing
                body of the agency.

      Sec. 3    Delegation.  The Board delegates to the Chief Administrative
                Officer of each U. T. System institution the authority to review all
                such written complaints and to respond within 15 business days
                of receipt. The Chief Administrative Officer shall review
                complaints promptly and may render a different employment
                decision if it is determined that the veteran's preference was not
                applied. The decision of the Chief Administrative Officer shall be
                final.

3.    **Definitions**

      Chief Administrative Officer – The Chancellor of the U. T. System and the
      presidents of each of the institutions of the U. T. System.

4.    **Relevant Federal and State Statutes**

      *Texas Government Code,* Chapter 657 – Veteran's Employment
      Preferences

5.    **Relevant System Policies, Procedures and Forms**

      None

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 30107**

6. **Who Should Know**

   Administrators

7. **System Administration Office(s) Responsible for Rule**

   Office of General Counsel

8. **Dates Approved or Amended**

   November 9, 2007

9. **Contract Information**

   Questions or comments regarding this Rule should be directed to:

   - bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 30108**

1.     **Title**

       Employment Preferences for Former Foster Children

2.     **Rule and Regulation**

       Sec. 1     Preference in Employment.  As authorized in Chapter 672 of the
                  *Texas Government Code*, an individual 25 years of age or
                  younger who was under the permanent managing
                  conservatorship of the Department of Family and Protective
                  Services on the day preceding the individual's 18th birthday is
                  entitled to a preference in State employment over other
                  applicants for the same position who do not have greater
                  qualifications.

       Sec. 2     Complaint Regarding Employment Decision.  Chapter 672 of the
                  *Texas Government Code* provides that a former foster child
                  entitled to an employment preference who is aggrieved by a
                  decision of a State agency or institution relating to hiring or to
                  retention of the individual in the event of a workforce reduction
                  may appeal the decision by filing a complaint with the governing
                  body of the agency.

       Sec. 3     Delegation.  The Board delegates to the Chief Administrative
                  Officer of each U. T. System institution the authority to review all
                  such written complaints and to respond within 15 business days
                  of receipt. The Chief Administrative Officer shall review
                  complaints promptly and may render a different employment
                  decision if it is determined that the employment preference was
                  not applied. The decision of the Chief Administrative Officer
                  shall be final.

3.     **Definitions**

       Chief Administrative Officer – The Chancellor of the U. T. System and the
       Presidents of each of the institutions of the U. T. System.

4.     **Relevant Federal and State Statutes**

       *Texas Government Code,* Chapter 672 – Employment Preference for
       Former Foster Children

5.     **Relevant System Policies, Procedures and Forms**

       None

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 30108**

6.      **Who Should Know**

        Administrators

7.      **System Administration Office(s) Responsible for Rule**

        Office of General Counsel

8.      **Dates Approved or Amended**

        November 12, 2009

9.      **Contract Information**

        Questions or comments regarding this Rule should be directed to:

        • bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 30112**

1.    **Title**

      Training and Education

2.    **Rule and Regulation**

      Sec. 1    Responsibility.  The Office of Employee Services, by delegation
                from the Executive Vice Chancellor for Business Affairs, is
                responsible for promulgating the necessary policies and
                procedures for implementation of the *State Employees Training
                Act*, consistent with the guidelines approved by the Governor.

      Sec. 2    Policy Requirements.  Pursuant to *Texas Government Code
                Section 656.048* – Rules Relating to Training and Education,
                The University of Texas System requires the establishment of
                policies that promote training programs of benefit to employees.
                Policies implemented must be consistent with provisions of the
                *State Employees Training Act*, as follows:

                2.1    Interest of the Institution.  The U. T. System or any of the
                       institutions will not extend funds under these provisions
                       without the interest of the U. T. System or any of the
                       institutions being given first consideration.

                2.2    Written Agreements.  If an employee does not perform
                       the regular duties of the job for three or more months, a
                       written agreement complying with the provisions of
                       institutional policy will be executed between the
                       employee and the U. T. System or any of the institutions
                       as required by State law.

                2.3    Failure to Comply with Agreement.  Should an employee
                       fail to honor the provisions of the agreement, the U. T.
                       System or any of the institutions will be reimbursed for all
                       costs associated with the training period, including any
                       amounts of the employee's salary not accounted for as
                       paid vacation or compensatory leave.

                2.4    Annual Report.  The U. T. System and the institutions will
                       report annually to the Legislative Budget Board detailing
                       the amount of money expended in the preceding fiscal
                       year for training subject to the Act.

**The University of Texas System**
**Rules and Regulations of the Board of Regents**         **Rule: 30112**

3.     **Definitions**

    None

4.     **Relevant Federal and State Statutes**

    *Texas Government Code* Section 656.048 – Rules Relating to Training and Education

5.     **Relevant System Policies, Procedures, and Forms**

    None

6.     **Who Should Know**

    Administrators

7.     **System Administration Office(s) Responsible for Rule**

    Office of Employee Services

8.     **Dates Approved or Amended**

    Editorial amendment to Sec. 1 made June 12, 2013
    Editorial amendment to Sec. 1 made September 1, 2010
    December 10, 2004

9.     **Contact Information**

    Questions of comments regarding this Rule should be directed to:

    •  bor@ustystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 30201**

1.      **Title**

        Leave Policies

2.      **Rule and Regulation**

        Sec. 1    Holidays.  All employees, except those employed in positions
                  that require student status as a condition of employment, are
                  entitled to such holidays as are provided by the Legislature in
                  the current Appropriations Act and as are approved annually by
                  the Executive Vice Chancellor for Business Affairs, or to
                  alternate holidays approved in the official calendars of the
                  various institutions by the Executive Vice Chancellor for
                  Business Affairs.

        Sec. 2    Vacations.  Vacations for eligible employees, including faculty
                  appointed on a 12-month basis, shall be as provided by State
                  law. Vacations for eligible full and part-time employees shall be
                  on a percentage basis for the time appointed, regardless of
                  whether they are paid on a monthly or hourly basis. Eligible
                  employees accrue vacation hours based on length of state
                  service.

                  2.1    Termination.  An employee who leaves employment shall
                         be entitled to be paid in "lump sum" for all vacation leave
                         entitlement duly accrued at the date of termination;
                         provided the employee has had continuous employment
                         with the State of Texas for six months. The payment shall
                         be calculated at the rate of compensation being paid the
                         employee at the time of termination.

                  2.2    Death.  In the case of death of an employee who has
                         accumulated vacation leave, their estate will be paid for
                         such leave. The payment shall be calculated at a rate of
                         compensation being paid the employee at the time of his
                         or her death.

        Sec. 3    Leave Without Pay.  With the interest of the institution being
                  given first consideration and for good cause, leaves of absence
                  without pay may be granted for a period within the term of
                  appointment of any faculty or staff, subject to the general
                  conditions included herein. Leaves of absence for a first year or
                  portion thereof or a second consecutive year's leave may be
                  granted by the Chancellor or president, or his or her designee.
                  Leaves of absence for a third consecutive year will be granted

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**        **Rule: 30201**

only for the reasons outlined in Sections 3.2 and 3.3 below, following review and approval by the appropriate Executive Vice Chancellor.

3.1      First Year of Leave.  The maximum period for which a leave of absence will be granted is twelve months from when the leave begins.

3.2      Second Year of Leave.  Except in unusual circumstances such as military service, reasons of health, continued graduate study, and public service or other activity that reflects credit on the institution and enhances an individual's ability to make subsequent contributions to the institution, a second consecutive year of leave will not be granted.

3.3      Third Year of Leave.  Except in very unusual circumstances a third consecutive leave of absence for one year will not be granted.

3.4      Return of Duty.  After a return to duty of one year, the leave-of-absence privilege will again be available, subject to the conditions above.

3.5      Exhaust Leave.  Unless otherwise provided by or authorized pursuant to law, all accumulated paid leave entitlement must be exhausted before a leave of absence without pay may be granted, with the additional provision that sick leave must be exhausted only in those cases where the employee is eligible to take sick leave.

3.6      Family and Medical Leave.  Upon expiration of Family and Medical Leave pursuant to these *Rules and Regulations*, an employee may be eligible for a leave of absence under this section.

3.7      Other Absences.  For leave of absence to participate in a political campaign, faculty development leave, parental leave, sick leave, leave for jury duty, leave for military duty, and leave related to on-the-job injuries, see other sections of these *Rules and Regulations*.

Sec. 4      Development Leave.  Development leaves for faculty members may be granted as set out in *Texas Education Code* Section 51.101 et seq. upon approval by the president of an institution.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 30201**

The law provides that after two consecutive academic years at the same institution, faculty members as defined in this Act may be considered for a faculty development leave for one academic year at one-half his or her regular salary or for one-half academic year at his or her full regular salary. Such leaves shall be granted pursuant to procedures outlined in the Act and to the limitations therein.

Sec. 5      Administrative Leave.  As set out in the *Texas Government Code* Section 661.911, the Chancellor or president of an institution may grant administrative leave without a deduction in salary to an employee as a reward for outstanding performance as documented by employee performance appraisals. The total amount of administrative leave an employee may be granted under this law may not exceed 32 hours in a fiscal year.

Sec. 6      Parental Leave.  Parental leave for all employees shall be as provided by State law as set out in the *Texas Government Code* Section 661.913 giving supervisors the responsibility for approving parental leave requests for those employees not eligible for Family and Medical leave for the birth of a natural child or adoption by or foster care placement with the employee of a child younger than 3 years of age. Employees must first use all available and appropriate vacation and sick leave and then the remainder of the leave period will be leave without pay. Parental leave of absence may not exceed twelve weeks.

Sec. 7      Sick Leave.  Sick leave for all employees, including faculty, non-teaching personnel, and classified personnel, shall be as provided by State law.

Sec. 8      Compensatory Leave.  Compensatory time for those employees exempted from the *Fair Labor Standards Act* shall be determined by the Chancellor or president of the institution involved, or their respective designees, and set forth in the respective institution's policy and procedures.

Sec. 9      Death.  In the case of death of an employee who has accumulated sick leave, the estate will be paid for such leave as permitted by law. The payment shall be calculated at the rate of compensation being paid the employee at the time of death.

Sec. 10     Jury Duty.  Necessary time off for jury duty is required to be given without loss of pay or vacation leave.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 30201**

Sec. 11    Military Duty.  A leave of absence not to exceed 15 working days in any one federal fiscal year is granted employees who, as members of the National Guard or Official Militia of Texas or members of any of the Reserve institutions of the Armed Forces, shall be engaged in authorized training or duty, ordered or authorized by proper authority. During such periods, the employee is absent without loss of efficiency rating, vacation time, or salary; and when relieved from military duty, the employee is restored to the position and status he or she previously held. A leave of absence with full pay shall be provided any employee who is called to active duty with the National Guard by the Governor of Texas. Such leave shall not be charged against the employee's vacation or sick leave privileges. The chief business officer of each institution may prescribe forms and procedures for such leaves.

11.1    Paid Emergency Leave.  As set out in the *Texas Government Code* Section 431.0825, a state employee called by the Governor to state active duty as a member of the state military forces is entitled to receive paid emergency leave without loss of military leave under *Texas Government Code* Section 431.005 or annual leave.

11.2    Use of Compensatory Time.  As set out in the *Texas Government Code* Section 659.023 a state agency shall provide an employee activated to military service as a member of the reserve component of the armed forces with a statement containing the balance of the employee's accrued stated compensatory time and shall accommodate the employee's request to use the balance of accrued state compensatory time before the compensatory time expires.

11.3    Unpaid Leave.  As set out in the *Texas Government Code* Section 661.904, an employee called to active duty during a national emergency to serve in a reserve component of the armed forces of the United States under Titles 10 or 32 of the *United States Code* is entitled to an unpaid leave of absence. The employee on an unpaid leave of absence during military duty continues to accrue state service credit for purpose of longevity pay, vacation leave, and sick leave.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 30201**

(a) The employee may retain any accrued vacation or sick leave and is entitled to be credited with those balances on return to state employment. Leave earned while in a state-paid status is credited to the employee's balance when the employee returns to active state employment.

(b) The employee may use any accrued vacation leave, earned state compensatory leave, or overtime compensatory leave earned under the federal *Fair Labor Standards Act* to maintain benefits for the employee or the employee's dependents while the employee is on military duty.

(c) Before an employee leaves for military service, any issues related to maintaining state health insurance coverage during the employee's military duty must be reviewed with him or her, including what the employee needs to do to maintain state health coverage, how health coverage is affected by paid or unpaid leave, and how to pay any premium required for health care coverage.

(d) Continued accrual of service credit with the Teacher Retirement System of Texas (TRS) for an employee activated for military service shall be as determined by TRS consistent with State and federal law.

11.4   In accordance with *Texas Government Code* Section 661.9041, the Chancellor or president of an institution shall grant sufficient emergency leave as differential pay to a state employee on unpaid military leave if the employee's military pay is less than the employee's state gross pay. The combination of emergency leave and military pay may not exceed the employee's actual state gross pay.

Sec. 12   Family and Medical Leave.  Any employee may request and receive a leave of absence without pay for up to 12 weeks per year for family and medical reasons specified by the Family and Medical Leave Act of 1993 (29 United States Code Sec. 2601) and accompanying regulations governing the Act, as set forth in approved institutional and System policies. Eligibility criteria are defined in the Act. Upon expiration of the 12 weeks of leave taken pursuant to the *Family and Medical Leave Act*, an

employee may be eligible for a leave of absence without pay pursuant to Section 3 above.

Sec. 13    Servicemember Family Leave.  As specified by the Family and Medical Leave Act of 1993 (29 United States Code Sec. 2601) and accompanying regulations governing the Act and as set forth in approved institutional and System policies, any eligible employee who is the spouse, son, daughter, parent, or next of kin of a covered servicemember who is recovering from a serious illness or injury sustained in the line of duty while on active duty may request and receive a leave of absence without pay for up to 26 workweeks during a single 12-month period to care for the servicemember. Eligibility criteria are defined in the Act. An eligible employee is entitled to a combined total of 26 workweeks of leave under Sections 12 and 13 of this Rule during the single 12-month period described in this Section. This does not limit the leave available under Section 12 for any other 12-month period. Further, after the 26 weeks of leave expire, an employee may be eligible for a leave of absence without pay pursuant to Section 3 of this Rule.

Sec. 14    Bone Marrow and Organ Donors.  *Texas Government Code Section 661.916* provides that an employee is entitled to a leave of absence without a deduction in salary for the time necessary to permit the employee to serve as a bone marrow or organ donor. The leave of absence may not exceed five working days in a fiscal year to serve as a bone marrow donor or 30 working days in a fiscal year to serve as an organ donor.

Sec. 15    Blood Donors.  In accordance with *Texas Government Code Section 661.917*, an employee shall be allowed sufficient time off, without a deduction in salary or accrued leave to donate blood.

15.1    Approval.  An employee may not receive time off unless the employee obtains approval from the employee's supervisor before taking off.

15.2    Proof.  On returning to work after taking time off, the employee shall provide the employee's supervisor with proof that the employee donated blood during the time off. If an employee fails to provide proof that the employee donated blood during the time off, the employee will deduct the time from accrued leave, if available, or be placed on leave without pay.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**        **Rule: 30201**

15.3     Limitation. An employee may receive time off under this section not more than four times a year.

Sec. 16     Authorization for Absence. Authorization for any staff member to be absent from his or her usual and regular duties for a purpose related to his or her duties will be granted only under the following conditions:

16.1     When such absence is on State business, and

16.2     When appropriate provisions are made to carry on the duties of the absent person without additional expense to the institution; or

16.3     In the case of military leave, not to exceed 15 working days each year.

Sec. 17     Institutional Regulations. Permission to be absent from usual and regular duties shall be obtained as prescribed in institutional regulations.

**3.**     **Definitions**

None

**4.**     **Relevant Federal and State Statutes**

*Fair Labor Standards Act of 1938* (29 United States Code 201, et seq.)

*Family and Medical Leave Act of 1993* (29 United States Code Sec. 2601)

*Employment and Reemployment Rights of Members of the Uniform Services Act* (38 U.S.C. Sec. 4301)

*Armed Forces* (10 U.S.C Sec. 101 et seq.)

*National Guard* (32 U.S.C. Sec. 101 et seq.)

*Texas Education Code* Section 51.101 – Definitions; Faculty Development Leaves of Absence

*Texas Government Co*de Section 661.909 – Leave Without Pay

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents               Rule: 30201**

*Texas Government Code* Section 431.005 – Leave of Absence for Public Officers and Employees

*Texas Government Code* Section 431.0825 – Employees in National Guard; Emergency Leave

*Texas Government Code* Section 659.023 – Compensatory Time Policy

*Texas Government Code* Section 661.904 – Military Leave During National Emergency

*Texas Government Code* Section 661.9041 – Differential Pay

*Texas Government Code* Section 661.911 – Administrative Leave With Pay

*Texas Government Code* Section 661.916 – Leave for Organ or Bone Marrow Donors

*Texas Government Code* Section 661.917 – Donation of Blood

5.    **Relevant System Policies, Procedures, and Forms**

    None

6.    **Who Should Know**

    Employees

7.    **System Administration Office(s) Responsible for Rule**

    Office of Employee Services

8.    **Dates Approved or Amended**

    Editorial amendments to Sec. 11.3 made September 27, 2012
    Editorial amendments to Sec. 8, 11.3(b), and Number 4 made
    June 15, 2012
    Editorial amendments to Sec. 11.3(c) and (d) made September 28, 2010
    Editorial amendment to Sec. 1 made September 1, 2010
    Editorial amendment made November 17, 2009, to add new Sec. 8 back
    into the Rules
    August 14, 2008
    Editorial amendment to Sec. 1 made September 1, 2010
    Editorial amendment to Sec. 11 and Number 4 made July 14, 2008

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 30201**

Editorial amendment to Sec. 5 made April 1, 2008
August 11, 2005
December 10, 2004

**9.     Contact Information**

Questions of comments regarding this Rule should be directed to:

- bor@ustystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents                Rule: 30202**

1.    **Title**

      Employee Benefits

2.    **Rule and Regulation**

      Sec. 1    Optional Retirement Program.  As authorized by *Texas Government Code,* Chapter 830, eligible employees may participate in the Optional Retirement Program (ORP) administered by the U. T. System and established pursuant to Section 403(b) of the *Internal Revenue Code*.

                1.1    Delegation of Authority.  The Board of Regents delegates to the Chancellor authority to approve the ORP employer contribution rates for all institutions and U. T. System Administration in accordance with rules issued by the Texas Higher Education Coordinating Board. The Board of Regents further delegates to the Executive Vice Chancellor for Business Affairs the authority to sign and amend the ORP plan documents consistent with applicable law and to take all actions and make all decisions and interpretations necessary or appropriate to administer and operate the ORP consistent with the plan documents. The Executive Vice Chancellor for Business Affairs will perform, or cause to be performed, such record keeping functions as necessary to administer and maintain the Program in accordance with Section 403(b) of the *Internal Revenue Code*, consistent with *Texas Government Code* Section 830.001 et seq.

      Sec. 2    Excess Benefits Plan.  The Board of Regents authorizes the establishment of a "governmental excess benefits plan" for the Optional Retirement Program, authorized under *Internal Revenue Code* Section 415(m) and *Texas Government Code* Section 830.004 and designated as The University of Texas Governmental Retirement Arrangement (UTGRA).

                2.1    Eligibility.  Eligibility for participation shall be based on an employee's date of initial participation in the Optional Retirement Program and the employee's level of earnings. Participation in the program and all subsequent distributions shall be in accordance with the plan documents.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 30202**

    2.2    Delegation of Authority.  The Board of Regents delegates to the Executive Vice Chancellor for Business Affairs the power and authority to amend the plan documents consistent with applicable law and to take all actions and make all decisions and interpretations necessary or appropriate to administer and operate UTGRA consistent with the plan documents.

    2.3    Ownership.  All funds participating in UTGRA including the monthly State contribution, amounts reduced from each participant's salary, and any subsequent investment earnings are the property of the Board of Regents until such time as an authorized distribution is executed in accordance with the plan documents.

    2.4    Trustee and Record Keeper.  The University of Texas M. D. Anderson Cancer Center Physicians Referral Service Retirement Board (PRS Retirement Board) shall serve as trustee and record keeper for UTGRA.

Sec. 3    Group Insurance Plans.  The Chancellor on behalf of the Board of Regents shall administer all group insurance, health benefit programs, and cafeteria plans authorized by law for employees of the U. T. System and any of the institutions.

    3.1    Administration.  The Chancellor shall provide for the planning, implementation, management, and administration of the employee group insurance and health benefit programs through such U. T. System committees and administrators, as the Chancellor deems appropriate.

Sec. 4    Workers' Compensation Insurance.  Pursuant to *Texas Labor Code* Section 503.001 et seq., a self-insured Systemwide Workers' Compensation Insurance (W.C.I.) Program will provide certain benefits for injuries sustained in the course and scope of employment.

    4.1    Investigation of Injuries.  The Office of Risk Management shall investigate injuries, with the assistance of other appropriate U. T. System institutions offices.

    4.2    Reporting.  The institutions of the U. T. System shall be responsible for reporting all work-related injuries to the Office Risk Management. The Office of Risk

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**        **Rule: 30202**

Management shall file reports of lost time injuries and occupational diseases with the Texas Workers' Compensation Commission (T.W.C.C.).

4.3     Safety Activities.  The Office of Risk Management shall coordinate occupational safety and health activities.

4.4     Funding.  A percentage of annual payroll, as approved by the Executive Vice Chancellor for Business Affairs, shall be set aside to fund the Workers' Compensation Insurance Fund (W.C.I. Fund).

(a) Each institutional chief business officer shall be responsible for the transmission of amounts to be added to the W.C.I. Fund for all salaries paid, as instructed by the Office of Risk Management, for receipt into the W.C.I. Fund no later than 20 days after the end of each month.

(b) The W.C.I. Fund must be deposited or invested in the same manner as other local institutional funds as specified in these *Rules and Regulations*.

4.5     Processing of Claims.  The Office of Risk Management shall be responsible for processing all W.C.I. claims for medical care and compensation.

4.6     Report on Fund.  The Office of Risk Management shall prepare an annual report on the status of the W.C.I. Fund for the Board of Regents.

Sec. 5     Unemployment Compensation Insurance.  The Unemployment Compensation Insurance (U.C.I.) Fund is established by the Board of Regents to be deposited or invested in the same manner as other local institutional funds. The Office of Risk Management shall administer funding by assessment on all salary sources that are eligible for benefits from the Systemwide U.C.I program.

5.1     Reimbursements to the State.  The Systemwide U.C.I Program will reimburse the State from the U.C.I. Fund for claims charge-backs paid by the State Comptroller for former employees in accordance with *Texas Labor Code Section 205.001 et seq*.

Exhibit 5

5.2     Assessed Rates.  Assessment rates shall be calculated to provide minimum U.C.I. Fund balance fluctuations and maximum rate stability. Each institutional chief business officer shall be responsible for the transmission of such assessed amounts, as instructed by the Office of Risk Management, for receipt into the U.C.I. Fund no later than 20 days after the end of the month.

5.3     Administrator.  The Office of Risk Management, working in coordination with appropriate System and institution offices, shall administer the U.C.I. Program and provide assistance as necessary to the institutions of the U.T. System.

5.4     Annual Report.  The Office of Risk Management shall prepare an annual report on the status of the U.C.I. Fund for the Board of Regents.

Sec. 6     UTSaver Deferred Compensation Plan.  As authorized by *Texas Government Code,* Chapter 609, any employee may participate in the UTSaver Deferred Compensation Plan administered by the U. T. System and established pursuant to Section 457(b) of the *Internal Revenue Code*.

6.1     Delegation of Authority.  The Board of Regents delegates to the Executive Vice Chancellor for Business Affairs the power and authority to amend the UTSaver Deferred Compensation Plan consistent with applicable law and to take all actions and to make all decisions and interpretations that may be necessary or appropriate to administer and operate the UTSaver Deferred Compensation Plan, as further provided in the UTSaver Deferred Compensation Plan. The Executive Vice Chancellor for Business Affairs will perform, or cause to be performed, such record keeping functions as necessary to administer and maintain the Plan in accordance with Section 457(b) of the *Internal Revenue Code*, consistent with *Texas Government Code,* Chapter 609.

Sec. 7     Discretionary Bonus Plans.  As authorized by *Texas Revised Civil Statutes Annotated* Article 6228a-5, Section 3(a), the Board approves the establishment of deferred compensation – Section 457(f) discretionary bonus plans.

**Exhibit 5**

7.1    Purpose of the Plans.  Such plans provide financial incentives in recruiting highly qualified candidates for employment and encouraging existing qualified employees to continue to devote their best efforts to the service of the institutions of the U. T. System.

7.2    U. T. System Plan.  The Board has established a deferred compensation – Section 457(f) discretionary bonus plan pursuant to Section 457(f) of the *Internal Revenue Code*, for the benefit of a select group of employees as defined by the Board.

(a) Delegation of Authority.  The Board of Regents delegates to the Executive Vice Chancellor for Business Affairs the power and authority to amend the U. T. System Deferred Compensation Plan consistent with applicable law and to take all actions and to make all decisions and interpretations that may be necessary or appropriate to administer and operate the U. T. System Deferred Compensation Plan as further provided in such Plan.

(b) Record Keeping.  The Executive Vice Chancellor for Business Affairs will perform, or cause to be performed, such record keeping functions as necessary to administer and maintain such Plan in accordance with Sections 457(f) and 409A of the *Internal Revenue Code*, consistent with *Texas Revised Civil Statutes Annotated* Article 6228a-5, Section 3(a).

7.3    Institution Prototype Plan.  The Board of Regents has promulgated a prototype deferred compensation – Section 457(f) discretionary bonus plan which may be adopted by the various academic or health institutions. Only employees of the adopting institution with the appropriate approvals may participate in the Prototype Plan as adopted.

(a) Administration of the Plan.  The Board of Regents delegates to the Executive Vice Chancellor for Business Affairs the authority to amend the Prototype Plan consistent with applicable law and to take all actions and to make all decisions and interpretations

**Exhibit 5**

that may be necessary or appropriate to administer and operate the Prototype Plan.

(b) Delegation to the Executive Vice Chancellor.  The Board of Regents delegates to the Executive Vice Chancellor for Academic Affairs or the Executive Vice Chancellor for Health Affairs, as appropriate, the authority to approve an institution's adoption of the Prototype Plan, designation of an eligible employee to participate in such Plan, and the setting of the amount of deferred compensation to be made available to the eligible employee under such Plan.

(c) Delegation to the President.  The Board of Regents delegates to the President of the adopting institution the authority to designate eligible employees of such institution to participate in the Prototype Plan and the amount of deferred compensation with the approval of the appropriate Executive Vice Chancellor. The President will perform, or cause to be performed, such record keeping functions as necessary to administer and maintain the institution's adoption of the Institution Deferred Compensation Prototype Plan in accordance with Sections 457(f) and 409A of the *Internal Revenue Code* consistent with *Texas Revised Civil Statutes Annotated* Article 6228a-5, Section 3(a).

7.4    Not Eligible for Retirement Benefits.  Deferred compensation is not part of the base salary and shall be reported as a separate element of the employee's cash compensation. Deferred compensation is not eligible for Teacher Retirement System or Optional Retirement Program retirement benefits or other retirement benefits.

Sec. 8    Tax-Sheltered Annuities (T.S.A.) – Voluntary Section 403(b) Plan.  As authorized by *Texas Revised Civil Statutes Annotated* Article 6228a-5, Sections 1 and 2, the Board has established a voluntary program pursuant to Section 403(b) of the *Internal Revenue Code*, for the benefit of all employees.

8.1    Delegation of Authority.  The Board of Regents delegates to the Executive Vice Chancellor for Business Affairs the power and authority to amend the UTSaver Tax-Sheltered Annuity Program consistent with applicable law

**Exhibit 5**

and to take all actions and make all decisions and interpretations that may be necessary or appropriate to administer and operate the UTSaver Tax-Sheltered Annuity Program. The Executive Vice Chancellor for Business Affairs will perform, or cause to be performed, such record keeping functions as necessary to administer and maintain the Plan in accordance with Section 403(b) of the *Internal Revenue Service Code*, consistent with *Texas Revised Civil Statutes Annotated* Article 6228a-5, Sections 1 and 2.

8.2     Authorized Companies.  An employee may purchase annuities or any investment authorized in Section 403(b), *Internal Revenue Code of 1986*, as amended from a company authorized to provide T.S.A. products and services to employees of the U. T. System.

8.3     Listing of Companies.  The University of Texas System Office of Employee Services, in consultation with the Office of Business Affairs shall maintain a listing of companies authorized to offer annuities or other investments under the UTSaver Tax-Sheltered Annuity Program.

Sec. 9     Payroll Deductions.  As authorized by Section 51.9611 of the *Texas Education Code,* the Board of Regents finds that a public purpose is served by and that employees are benefitted by allowing a payroll deduction for Educational Investment Programs.

9.1     Delegation.  The Board delegates authority to the Chancellor to (1) establish a payroll deduction for Educational Investment Programs, (2) implement policies and procedures for the deduction, and (3) approve the collection of a fee to cover the costs of making the deduction.

9.2     Compliance.  An authorized payroll deduction for any Educational Investment Program must comply with applicable State and federal laws. The proposed deduction must be at the written request of the employee and must state the amount to be deducted and the entity to which the deducted amount is to be transferred. The deduction will be in effect until revoked in writing by the

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 30202**

employee, but the Chancellor may provide for enrollment periods.

Sec. 10   The adoption of any type of retirement benefit plan not listed in this Rule or mandated by State law requires the approval of the Board.

**3.      Definitions**

Educational Investment Programs – accounts funded with after-tax dollars that permit an employee to either prepay or contribute to an account for paying a student's qualified education expenses at an eligible education institution as authorized under the *Internal Revenue Code* of 1986, as may be amended.

**4.      Relevant Federal and State Statutes**

*Internal Revenue Code* Section 403(b)

*Internal Revenue Code* Section 409A

*Internal Revenue Code* Section 415(m)

*Internal Revenue Code* Section 457(b)

*Internal Revenue Code* Section 457(f)

*Texas Government Code,* Chapter 609 – Deferred Compensation Plans

*Texas Government Code* Section 830.001 et seq. – Optional Retirement Program

*Texas Government* Code Section 830.004(c) – Administration

*Texas Labor Code* Section 207.001 et seq. – Payment of Benefits

*Texas Labor Code* Section 503.001 et seq. – Workers' Compensation Insurance

*Texas Revised Civil Statutes Annotated* Article 6228a-5– Annuities or Investments for Certain Public Employees

**5.      Relevant System Policies, Procedures, and Forms**

None

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 30202**

6. **Who Should Know**

   Chief Business Officers
   Chief Human Resources Officers
   Risk Managers
   Administrators
   Employees

7. **System Administration Office(s) Responsible for Rule**

   Office of Employee Services
   Office of General Counsel
   Office of Risk Management
   Office of Business Affairs

8. **Dates Approved or Amended**

   Editorial amendment to Section 8.3 made June 12, 2013
   May 9, 2013
   February 9, 2012
   Editorial amendments made September 1, 2010
   November 13, 2008
   Editorial amendment to add Section 1.1 made September 10, 2008, in
   accordance with Board action August 14, 2008
   February 7, 2008
   Editorial amendments to Sections 7 and 8 made January 13, 2008.
   May 10, 2007
   December 10, 2004

9. **Contract Information**

   Questions or comments regarding this Rule should be directed to:

   - bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 30203**

1.     **Title**

       Sick Leave Pool

2.     **Rule and Regulation**

       Sec. 1    Introduction.  Pursuant to *Texas Government Code* Section
                 661.002 the Board of Regents is required to establish a program
                 to allow a University of Texas System employee to voluntarily
                 transfer previously earned sick leave to a sick leave pool. All
                 institutions of the U. T. System shall establish and maintain a
                 sick leave pool except for those institutions for which the Board
                 of Regents has adopted a comprehensive leave policy in
                 accordance with *Texas Education Code* Section 51.961. The
                 Chancellor, or his or her designee, shall administer the sick
                 leave pool. The Board of Regents is required to adopt rules and
                 prescribe procedures relating to the operation of the sick leave
                 pool.

       Sec. 2    Sick Leave Pool Administrator.  An administrator designated by
                 the president shall administer this policy at each institution and
                 at the U. T. System Administration by a pool administrator
                 designated by the Chancellor.

                 2.1    Regulations.  The administrator shall adopt forms and
                        regulations appropriate for administration of this rule.

                 2.2    Withdrawals.  The decision of the administrator regarding
                        withdrawals from the sick leave pool shall be final.

       Sec. 3    Sick Leave Pool.  The U. T. System sick leave pool shall consist
                 of the sick leave voluntarily contributed by employees.

                 3.1    Contributions.  Contributions to the pool must be in units
                        of eight (8) hours. Employees are permitted to contribute
                        an unlimited number of hours to the sick leave pool.
                        Retiring employees are also permitted to contribute to the
                        sick leave pool and may do so in increments of less than
                        eight (8) hours.

                 3.2    Crediting of Sick Leave.  The pool administrator shall
                        credit the sick leave pool with the sick leave contributed
                        by an employee and shall direct the human resources
                        office to deduct a corresponding amount from that
                        employee's accrued sick leave.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 30203**

3.3   Non-designation of Use.  Sick leave contributed to the pool may not be designated for the use of a particular person.

3.4   Encouragement to Contribute.  Although contributions are voluntary, employees who leave State employment should be encouraged to contribute to the pool, unless there is a possibility that they will be reemployed by the State within twelve months and thereby eligible to have their sick leave balance restored.

Sec. 4   Withdrawal of Leave.  Applications to withdraw sick leave from the pool must be submitted on the form prescribed by the pool administrator. An application must be filed with the pool administrator and be accompanied by a statement from the licensed physician who treated the illness or injury that resulted in the exhaustion of the accrued annual and sick leave of the employee making the application. The pool administrator will consider applications in the order in which they are received and will approve or deny an application within ten (10) working days after receipt.

4.1   Eligibility.  An employee is eligible to withdraw sick leave from the pool if the pool administrator finds that the employee has exhausted all accrued annual leave and sick leave because of a catastrophic illness or injury or because of a previous donation of sick leave to the pool.

4.2   Amount Assigned.  In determining the amount of sick leave to be assigned to an eligible employee from the pool, the pool administrator shall take into consideration the information contained in the employee's application, the number of applications then pending, and the amount of sick leave available in the pool. In no event shall the sick leave allocated to an eligible employee from the pool exceed ninety (90) days or one-third (1/3) of the sick leave pool balance, whichever is less. Upon approval of an employee's application, the pool administrator shall notify the human resources office of the amount of sick leave to be assigned to the employee.

4.3   Use of Sick Leave.  The employee may use sick leave assigned from the pool in the same manner as sick leave earned by the employee and shall be treated for all

Exhibit 5

purposes as if the employee were absent on earned sick leave.

4.4     Deceased Employees.  The estate of a deceased employee shall not be entitled to payment for unused sick leave assigned from the pool.

4.5     Use of Sick Leave.  Sick leave may be taken to care for members of an employee's family who do not reside in the same household only if the time taken is necessary to provide care to a spouse, child, or parent of the employee who needs care due to a documented medical condition. Sick leave may not be taken to care for an employee's parents-in-law if they do not live in the same household as the employee.

3.     **Definitions**

Catastrophic Illness or Injury - a severe condition or combination of conditions affecting the mental or physical health of an employee or the employee's immediate family requiring the services of a licensed physician for a prolonged period of time and requires the employee to exhaust accrued leave and to lose compensation from the State.

Employee - an eligible employee of the U. T. System or any of the institutions. An eligible employee is defined as employed for at least 20 hours per week for a period of at least four and one-half months, and not employed in a position for which student status is required as a condition of the employment.

4.     **Relevant Federal and State Statutes**

*Texas Government Code* Section 661.002 – Sick Leave Pool

*Texas Education Code* Section 51.961 – Leave Provisions for Employees

5.     **Relevant System Policies, Procedures, and Forms**

None

6.     **Who Should Know**

Employees

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 30203**

7.      **System Administration Office(s) Responsible for Rule**

Office of Employee Services

8.      **Dates Approved or Amended**

December 10, 2004

9.      **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 30301**

1.      **Title**

        Employment of Retirees

2.      **Rule and Regulation**

        Sec. 1      Required Retirement.  No person employed by The University
                    of Texas System or any of the institutions shall be required to
                    retire because of age except as permitted by law. However, a
                    licensed pilot operating an aircraft under Part 91 of the *Federal
                    Aviation Regulations* may be employed as a pilot until the end of
                    the fiscal year that includes the pilot's 70th birthday.

        Sec. 2      Modified Service.  In accordance with the *Texas Education
                    Code* Section 51.964, an institution of higher education may
                    employ a person who has retired under the Teacher Retirement
                    System of Texas (TRS) or the Optional Retirement Program
                    (ORP) if:

                    2.1      the Board of Regents determines that the employment is
                             in the best interest of the U. T. System and,

                    2.2      a person retired under TRS must have been retired for at
                             least 30 days before the effective date of reemployment;
                             or

                    2.3      a person retired under the ORP may be rehired after
                             retirement without a break in service.

        Sec. 3      Restrictions.  Appointment to modified service shall be without
                    tenure, and for not more than one academic year. The notice
                    provisions of Rule 31002, Section 1 of the Regents' *Rules and
                    Regulations* shall not apply to nonrenewal of such
                    appointments. If the U. T. System or any of the institutions
                    determines that it is in the best interest of the U. T. System, it
                    may offer reappointment to modified service

3.      **Definitions**

        Retirement – withdrawal from employment with the U. T. System or any of
        the institutions with a retirement benefit or enrollment in retiree health
        insurance.

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 30301**

4.      **Relevant Federal and State Statutes**

*Texas Education Code* Section 51.922 – Mandatory Retirement Prohibited

*Texas Education Code* Section 51.964– Hiring of Certain Retirees

5.      **Relevant System Policies, Procedures, and Forms**

None

6.      **Who Should Know**

Administrators
Employees

7.      **System Administration Office(s) Responsible for Rule**

Office of General Counsel
Office of Employee Services

8.      **Dates Approved or Amended**

December 10, 2004

9.      **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 30401**

1.    **Title**

      Employee and Faculty Advisory Councils

2.    **Rule and Regulation**

      Sec. 1    Employee Advisory Council.  A staff Employee Advisory Council
                represents institutions in the U. T. System to facilitate the flow of
                ideas and information between and among the Board of
                Regents, the System Administration, and the institutions of the
                System. The Executive Vice Chancellor for Business Affairs or
                his or her designee serves as System liaison to the Council.
                Representatives of the Employee Advisory Council are
                encouraged to address the Board of Regents at meetings of the
                Board, including meetings of the Standing Committees, and
                may recommend action to the Board through the Chancellor. At
                least once each year, a meeting will be arranged between the
                Employee Advisory Council Executive Committee and the Board
                of Regents.

      Sec. 2    Faculty Advisory Council.  A Faculty Advisory Council
                represents institutions in the U. T. System to facilitate the flow of
                ideas and information between and among the Board of
                Regents, the System Administration, and the institutions of the
                System. The Executive Vice Chancellor for Academic Affairs or
                his or her designee serves as System liaison to the Council.
                Representatives of the Faculty Advisory Council are
                encouraged to address the Board of Regents at meetings of the
                Board, including meetings of the Standing Committees, and
                may recommend action to the Board through the Chancellor. At
                least once each year, a meeting will be arranged between the
                Faculty Advisory Council Executive Committee and the Board of
                Regents.

3.    **Definitions**

      None

4.    **Relevant Federal and State Statutes**

      None

5.    **Relevant System Policies, Procedures, and Forms**

      Regents' *Rules and Regulations,* Rule 50201 – Student Advisory Council

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 30401**

**6.      Who Should Know**

Employees
Faculty

**7.      System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs
Office of Business Affairs

**8.      Dates Approved or Amended**

Editorial amendments made January 14, 2015
Editorial amendment to Sec. 1 made September 1, 2010
December 10, 2004

**9.      Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**            **Rule: 30501**

1.      **Title**

       Employee Evaluations

2.      **Rule and Regulation**

       Sec.1      Annual Evaluation.  An annual evaluation program for all employees (administrative, faculty and classified) within The University of Texas System or any of the institutions is to be used for the improvement of performance, promotion consideration, and merit salary review.

       Sec. 2      Development of Policies.  System Administration and each institution of the U. T. System will develop policies and procedures regarding evaluations for inclusion in the *Handbook of Operating Procedures* or a Policies and Procedures Memorandum issued by the U. T. System Administration Office of Employee Services, as appropriate, after prior approval.

       Sec. 3      Probationary Policies.  System Administration and each institution of the U. T. System shall establish a probationary period not to exceed six months of actual service for all new classified employees. Probationary employees will be evaluated pursuant to procedures and criteria that have been approved for inclusion in the institutional *Handbook of Operating Procedures* or the U. T. System Administration Internal Policy INT131 (Probationary Period for Classified Employees), as appropriate.

       Sec. 4      Faculty Evaluations.  Faculty in tenure-track appointments will be evaluated pursuant to criteria contained in these *Rules and Regulations* and procedures and criteria that have been approved for inclusion in the institutional *Handbook of Operating Procedures.*

3.      **Definitions**

       None

4.      **Relevant Federal and State Statutes**

       None

5.      **Relevant System Policies, Procedures, and Forms**

       Regents' *Rules and Regulations,* Rule 30103 – Standards of Conduct

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 30501**

Regents' *Rules and Regulations*, Rule 30601 – Discipline and Dismissal of Classified Employees

Regents' *Rules and Regulations,* Rule 31101 – Evaluation of Administrators

Regents' *Rules and Regulations,* Rule 31102 – Evaluation of Tenured Faculty

U. T. System Administration Internal Policy INT131, Probationary Period for Classified Employees

6. **Who Should Know**

   Employees

7. **System Administration Office(s) Responsible for Rule**

   Office of Employee Services

8. **Dates Approved or Amended**

   Editorial amendment to Sec. 3 made June 26, 2013
   December 10, 2004

9. **Contact Information**

   Questions or comments regarding this Rule should be directed to:

   - bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**        **Rule: 30601**

1.     **Title**

        Discipline and Dismissal of Classified Employees

2.     **Rule and Regulation**

      Sec. 1    Policy.  It is the policy of The University of Texas System to encourage fair and efficient processes to resolve disputes arising out of the employment relationship and to meet the requirements of State and federal law.

      Sec. 2    Establishment of Policies.  System Administration and each U. T. System institution shall adopt a policy governing discipline and dismissal of classified employees. Such a policy, at the minimum, shall comply with the provisions below and become effective upon approval by the appropriate Executive Vice Chancellor and the Vice Chancellor and General Counsel.

           2.1    Purpose.  The purpose of a policy is to provide a procedure for the discipline and dismissal of classified employees who are subject to its provisions.

           2.2    At-Will Employees.  Classified employees are at-will employees who serve without tenure. No provision of this policy or any policy adopted by System Administration or any U. T. System institution shall confer rights to employees that are contrary to the employment-at-will doctrine.

      Sec. 3    Required Provisions.  The policy adopted by System Administration and each U. T. System institution shall address the following elements:

           3.1    Applicability.  The policy shall be applicable to conduct or job performance of a classified employee that results in a decision to impose a disciplinary penalty of demotion, suspension without pay, or dismissal. The policy shall not apply to:

                 (a) Faculty or Police.  Institutional police or faculty who are subject to other approved discipline or dismissal procedures;

                 (b) Suspension.  Suspension with pay pending investigation of allegations relating to an employee;

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**        **Rule: 30601**

    (c) Appointed Positions.  Decisions not to offer reappointment to persons whose appointment for a stated period of one year or less expires at the end of such period;

    (d) Positions without Fixed Term.  Employees who are appointed to positions without fixed term and serve at the pleasure of a specific administrative officer;

    (e) Student Status.  Persons who are employed in positions that require student status as a condition of employment; or

    (f) Dismissal.  Dismissal of employees:

        (1) who occupy positions that are dependent upon funding from a specific source and such funding is not received;

        (2) as a result of a reduction in force;

        (3) due to financial exigency;

        (4) during any probationary period of employment;

        (5) who are appointed for a stated period that is less than 180 days;

        (6) who are appointed at a per diem or hourly rate and work on an as needed basis;

        (7) who have not attained or maintained the necessary clearance, certification, or licensure for their positions; or

        (8) who have exhausted applicable leave entitlements.

3.2    Conduct Subject to Disciplinary Actions.  The policy shall include provisions pertaining to requisite standards of conduct for employees, work performance, and unacceptable conduct that can subject an employee to disciplinary action.

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 30601**

3.3    Procedures.  The policy shall include disciplinary and appeal procedures consistent with the following provisions:

(a) Notice and Opportunity to Respond.  The employee shall be informed in writing of the reasons for the proposed disciplinary action and the facts upon which the proposed discipline is based. The employee shall be provided with a reasonable opportunity to respond to the proposed disciplinary action before a final decision is made to take disciplinary action.

(b) Appeals.  The employee shall be provided a process to appeal a disciplinary demotion, suspension without pay, or dismissal to the vice president or administrative equivalent for the employee's department.

(1) The vice president or administrative equivalent shall, at his or her discretion, handle the appeal or appoint a delegate(s). The decision of the vice president or administrative equivalent is final.

(2) The employee has the right to be represented during the appeal by an attorney or other individual representative. If the employee is represented by an attorney or an individual from an employee organization, the institution may be represented by an attorney from the institution or the Office of General Counsel of The University of Texas System.

3.    **Definitions**

Classified Employee – any employee in a position that has been designated as a classified employee in the Classified Personnel Pay Plan of the employing U. T. System institution.

Financial Exigency – a state in which financial demands call for budget cuts.

Work Performance – includes all aspects of an employee's work including the performance of job duties and adherence to work conduct standards.

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 30601**

4.      **Relevant Federal and State Statutes**

*Texas Government Code* Section 554.002 – Retaliation Prohibited for Reporting Violation of Law

*Texas Government Code* Section 617 et seq. – Collective Bargaining and Strikes

5.      **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 30501 – Employee Evaluations

Regents' *Rules and Regulations,* Rule 30602 – Employee Grievance

Regents' *Rules and Regulations,* Rule 30101 – Classified Personnel Pay Plan

Regents' *Rules and Regulations,* Rule 30103 – Standards of Conduct

The University of Texas System Administration Policy UTS133, Classified Pay Plan

Office of General Counsel - Model Policy for Discipline and Dismissal of Classified Employees

6.      **Who Should Know**

Employees

7.      **System Administration Office(s) Responsible for Rule**

Office of Employee Services
Office of General Counsel

8.      **Dates Approved or Amended**

November 9, 2007
December 10, 2004

9.      **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 30602**

1.      **Title**

        Employee Grievance

2.      **Rule and Regulation**

        Sec. 1    Policy.  It is the policy of The University of Texas System or any
                  of the institutions to encourage fair, efficient, and equitable
                  solutions for problems arising out of the employment
                  relationship and to meet the requirements of State and federal
                  law.
        .
        Sec. 2    Scope of Policy.  This policy shall be applicable to complaints
                  concerning wages, hours of work, working conditions,
                  performance evaluations, merit raises, job assignments,
                  reprimands, the interpretation or application of a rule, regulation
                  or policy, unlawful discrimination on any basis, or allegations
                  that the termination of a probationary or temporary employee or
                  an hourly or per diem employee who works on an as needed
                  basis was for an unlawfully discriminatory reason. Such
                  complaints shall not be processed through the Discipline and
                  Dismissal Appeal Procedure.  Such complaints will be
                  considered on an informal basis in order to allow prompt
                  correction or explanation of the subject of the complaint.

        Sec. 3    Who is Covered.  The complaint of all employees (except
                  employees subject to another approved grievance procedure),
                  including probationary and temporary employees and those
                  hourly or per diem employees who work on an as needed basis,
                  will be considered pursuant to the procedure provided below.

        Sec. 4    Retaliation Prohibited.  *Texas Government Code* Section
                  554.002 states that "a state or local governmental entity may not
                  suspend or terminate the employment of, or take other adverse
                  personnel action against, a public employee who in good faith
                  reports a violation of law by the employing governmental entity
                  or another public employee to an appropriate law enforcement
                  authority." Therefore, employees shall not be penalized,
                  disciplined, or prejudiced for exercising the right to make a
                  complaint or for aiding another employee in the presentation of
                  that complaint.

        Sec. 5    Presentation to Supervisor.  The employee shall informally
                  present the complaint to his or her supervisor for discussion,
                  consideration, and resolution within five working days from the

                                                              **Page 1 of 3**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 30602**

date of the action, which is subject of the complaint. If the supervisor is the subject of the complaint, the employee may address the complaint to the appropriate department head or administrative equivalent.

Sec. 6    Presentation to Department Head.  If the supervisor does not satisfactorily resolve the complaint within five working days, the employee may present the complaint in writing within five working days to the appropriate department head or administrative equivalent for consideration and action. The written complaint should be clearly identified as a grievance, contain a concise statement that explains the specific complaint, and contain the employee's recommendation for attaining a sufficient remedy of the complaint. A written decision shall be mailed to the employee within five working days of receipt of the complaint.

Sec. 7    Presentation to Dean.  If the employee is not satisfied with the decision of the department head or administrative equivalent, a written appeal stating why the appealed decision is incorrect may be made to the appropriate dean, director or administrative equivalent within five working days of the date of the appealed decision. A written decision shall be mailed to the employee within ten working days of the date of the appeal.

Sec. 8    Presentation to Appropriate Vice President.  Complaints not satisfactorily resolved by the dean, director or administrative equivalent may be appealed in writing to the appropriate vice president or administrative equivalent for the employee's department within five working days of the date of the appealed decision. The appeal shall state why the appealed decision is not correct. Within a reasonable time, not to exceed thirty calendar days following receipt of the appeal, a written decision shall be mailed to the employee. This decision is final.

Sec. 9    Employee's File.  The written complaint and all decisions or responses regarding such complaint shall be a part of the employee's personnel file.

3.    **Definitions**

Grievance – a statement of complaint arising from the employment relationship together with a recommendation for resolution of the complaint that is identified as a grievance.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 30602**

4.      **Relevant Federal and State Statutes**

*Texas Education Code* Section 51.960 – Grievance Rights on Certain Personnel Issues

*Texas Government Code,* Chapter 554 – Protection for Reporting Violations of Law

*Texas Government Code* Section 617.005 – Collective Bargaining and Strikes

5.      **Relevant System Policies, Procedures, and Forms**

The University of Texas System Administration Internal Policy INT123, *Grievance*

6.      **Who Should Know**

Employees

7.      **System Administration Office(s) Responsible for Rule**

Office of Employee Services
Office of General Counsel

8.      **Dates Approved or Amended**

Editorial amendments made to Section 2 on January 8, 2010
December 10, 2004

9.      **Contract Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 31001**

1.     **Title**

       Faculty Appointments and Titles

2.     **Rule and Regulation**

       Sec. 1     Introduction.  *Texas Education Code* Section 51.943 outlines
                  the steps Texas public institutions of higher education must
                  follow in reappointing faculty. That statute specifies that faculty
                  members who are to be reappointed shall be offered a written
                  contract at least 30 days prior to the beginning of the academic
                  year. The statute also outlines the steps an institution of the
                  System must take if it is unable to provide a written contract
                  within the specified time frame. It is important that the content of
                  such contracts appropriately reflect the rights of the institution
                  and the faculty. The terms and conditions of employment of all
                  faculty members shall be embodied in a Memorandum of
                  Appointment in the form and containing the content specified in
                  the standard contracts found on the web site of the U. T.
                  System Administration's Office of General Counsel.

       Sec. 2     Academic Titles.  To achieve consistency in the use of
                  academic titles among the institutions of the System, the
                  following subsections describe the use of titles to apply in all
                  institutions.

                  2.1     Tenure Titles. Except for the titles Regental Professor
                          and Regents' Research Scholar, the only titles to be used
                          in which faculty members may hold tenure or be on the
                          tenure track are as follows:

                          (a) Professor

                          (b) Associate Professor

                          (c) Assistant Professor

                  2.2     Other Titles.  The following academic titles may also be
                          used by the institutions of the U. T. System. Tenure may
                          not be awarded to a person appointed to these titles.
                          With the exception of the title of Instructor, academic
                          service with these titles may not be counted toward the
                          satisfaction of any maximum probationary period.
                          Appointments to these titles shall be for a period of time
                          not to exceed one academic year except in the case of

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 31001**

Lecturer, Senior Lecturer, or a clinical or research position with a title authorized by Section 2.2(g) below when an appointment may be for periods of time not to exceed three academic years. With the exception of the title of Instructor, such appointments shall terminate at the expiration of the stated period of appointment without notification of nonrenewal. If an institution determines that it is to the benefit of the institution, it may offer reappointments to these titles in accordance with *Texas Education Code* Section 51.943.

(a) Instructor.  This title denotes a probationary appointment.

(b) Lecturer.  This title may be used for individuals who will serve as Teachers and whose teaching experience and qualifications are comparable to those of faculty members in untenured, tenure-track positions. Upon approval by the president, an institution may identify up to three divisions within this rank to be designated Lecturer I, Lecturer II, and Lecturer III.

(c) Senior Lecturer.  This title may be used for Teachers who will augment and complement regular teaching faculty and whose teaching experience and qualifications are comparable to those in tenure positions.

(d) Distinguished Senior Lecturer.  This title may be used for Teachers who will augment and complement regular teaching faculty and whose teaching experience and qualifications demonstrate extraordinary service and performance.

(e) Faculty Associate.  This title may be applied to a person assigned to a research or nonteaching center, institute, or other unit or interdisciplinary program of an institution.

(f) Specialist.  This title may be used for professional individuals who will serve as practitioners in specific areas of instruction, training, or supervision. In accordance with institutional policy, the title may carry appropriate descriptive prefixes so as to indicate the

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 31001**

specific areas of proficiency, such as Practice Teaching Specialist, Physical Activity Specialist, or Social Work Field Training Specialist.

(g) Patient Care or Research.  Persons appointed to full-time positions for the primary purpose of patient care and other service activities or to full-time or part-time positions for the primary purpose of research activities shall be given one of the following titles, even though the individuals may be assigned teaching responsibilities:

    (1)    Professor of (title of specialty)
           _____

    (2)    Associate Professor of (title of specialty)
           _____

    (3)    Assistant Professor of (title of specialty)
           _____

    (4)    Instructor in (title of specialty)
           _____

(h) Visiting Professor, Visiting Associate Professor, and Visiting Assistant Professor.  These titles are used only for temporary appointments of persons either visiting from other institutions where they hold similar ranks or who are brought to the institution on a trial basis. Such appointments are limited to two years.

(i) Adjunct Professor, Adjunct Associate Professor, and Adjunct Assistant Professor.  One of these titles may be used when a qualified person from business, industry, government, private practice, or another institution of higher education may be teaching a course or participating in the teaching of a course at one of the institutions. For the health institutions, this prefix should be used only for those persons not involved in patient care who otherwise satisfy the above criteria. Appointments to the faculty with an adjunct title may be with or without pay and shall be for a stated period of time not to exceed one academic year. Such appointments shall terminate upon expiration of the stated period of appointment

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 31001**

without notification of nonrenewal. If an institution determines that it is to the benefit of the institution, it may offer reappointment to an adjunct faculty member in accordance with the *Texas Education Code* Section 51.943.

(j)  Clinical Professor, Clinical Associate Professor, Clinical Assistant Professor, and Clinical Instructor. These titles may be used by the institutions of the U. T. System to designate regular part-time or full-time service on the faculty while involved in a professional clinical experience program. Appointments to the faculty with a clinical title may be with or without pay and shall be for a period of time not to exceed three academic years. Such appointments shall terminate upon expiration of the stated period of appointment without notification of nonrenewal. If an institution determines that it is to the benefit of the institution, it may offer reappointment to a clinical faculty member in accordance with the *Texas Education Code* Section 51.943.

(k)  Adjoint Professor, Adjoint Associate Professor, and Adjoint Assistant Professor.  These titles may be used by the institutions of the U. T. System to designate faculty who serve the institution in cooperative or joint programs pursuant to a memorandum of understanding, cooperative research and development agreement, or similar partnership instrument. Persons holding these titles will be employees of and compensated by the partnership organization. They will not be deemed employees of the institution. They will, however, have the same obligations, responsibilities, and authority as regular faculty employed directly by the institution when performing faculty functions pursuant to the agreement. Appointments will usually be part-time for the purpose of supervising theses and dissertations or for the teaching of highly specialized courses. The term of the appointment shall be specified in the agreement with the partner organization.

(l)  Professor in Practice, Associate Professor in Practice, and Assistant Professor in Practice.  These titles may be used by the institutions of the U. T. System to

Exhibit 5

designate regular part-time or full-time service for faculty involved in a professional experience program. Appointments to the faculty with a Professor in Practice title may be with or without pay and shall be for a period of time not to exceed three academic years. Such appointments shall terminate upon expiration of the stated period of appointment without notification of nonrenewal. If an institution determines that it is to the benefit of the institution, it may offer reappointment to a faculty member in accordance with the *Texas Education Code* Section 51.943.

(m) Assistant Instructor or Graduate Teaching Associate. These titles may be used interchangeably for:

- certain graduate students teaching on a part-time or full-time basis who are in the last phase of their doctoral programs and who are unconditionally enrolled in graduate study, or

- persons who, because of the nature of their duties, such as in a laboratory or hospital, do not qualify for one of the usual academic titles and do not hold the academic training or professional distinction usually required for attaining tenured positions.

(n) Teaching Assistant. This title usually applies to graduate students who assist faculty and who are employed on a part-time basis.

2.3    Honorific Titles

(a) Regental Professor. Any faculty member who is awarded the Nobel Prize or who has in the past been awarded the Nobel Prize may, upon recommendation of the president of the institution, the appropriate Executive Vice Chancellor, the Deputy Chancellor, and the Chancellor, be given the title Regental Professor by the Board. Because of the great honor associated with the award of a Nobel Prize, institutional tenure is awarded to Regental Professors by virtue of the appointment to this rank.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 31001**

      (b) Distinguished Teaching Professor.  Members of an institutional academy of distinguished teachers, approved by the Chancellor, the Deputy Chancellor, the Executive Vice Chancellor for Academic Affairs, or the Executive Vice Chancellor for Health Affairs, may use the honorific title Distinguished Teaching Professor to recognize faculty members who have made significant contributions to education.

      (c) Regents' Research Scholar.  Any tenure-track faculty recruit, regardless of rank, would be eligible for a Regents' Research Scholar title. To be eligible for this title, the U. T. System institution would identify an important recruitment of a Regents' Research Scholar and obtain philanthropic commitments for the specific recruitment. Recipients of these monies would be known as Regents' Research Scholars for the duration of the financial support and could also bear the name of the donor.

      (d) Honorary Titles.  Honorary titles such as Dean Emeritus, Chair Emeritus, Professor Emeritus, and similar honorary designations may be given to a retired faculty member or in anticipation of the retirement of a faculty member, effective upon retirement. The conferring of one of these titles is not automatic upon retirement and may be conferred only upon approval by the president of the institution in accordance with procedures included in the institutional *Handbook of Operating Procedures* and final approval by the Board of Regents.

Sec. 3   Departure from an Administrative Position.  Administrative and academic (faculty) titles, duties, and pay rates for individuals who hold both administrative and academic appointments are distinct and severable. Departure or removal from an administrative position does not impair the individual's rights and responsibilities as a faculty member.

**3.**    **Definitions**

Faculty Member – a faculty member is any individual holding an academic title listed above, with the exception of Assistant Instructors or Teaching Assistants.

**The University of Texas System**
**Rules and Regulations of the Board of Regents**          **Rule: 31001**

4.      **Relevant Federal and State Statutes**

     *Texas Education Code* Section 51.943 – Renewal of Faculty Employment Contracts

5.      **Relevant System Policies, Procedures, and Forms**

     U. T. System, Office of General Counsel, Standard Contracts – Memorandum of Appointment

6.      **Who Should Know**

     Administrators
     Faculty

7.      **System Administration Office(s) Responsible for Rule**

     Office of Academic Affairs
     Office of Health Affairs

8.      **Dates Approved or Amended**

     February 11, 2016
     Editorial amendments to Section 2.3(a) and (b) made July 13, 2015
     Editorial amendment to Section 2.2 made August 1, 2013
     Editorial amendments to Section 2.2(m), (n), and (o) made
     March 27, 2012
     Editorial amendment to Section 2.3(a) made December 5, 2011
     November 10, 2011
     Editorial amendments to Section 2 made October 6, 2011
     Editorial amendments to Sections 2.2 – 2.3 made March 28, 2011
     February 18, 2011
     Editorial amendment to Section 2.2 made September 3, 2010
     Editorial amendment to Section 2.4(d) made February 3, 2009
     November 16, 2006
     May 11, 2006
     December 10, 2004

9.      **Contact Information**

     Questions or comments regarding this Rule should be directed to:

     •   bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                **Rule: 31002**

1.      **Title**

        Notice of Nonrenewal to Nontenured Faculty Members

2.      **Rule and Regulation**

        Sec. 1      Notice of Nontenured Faculty.  In the event of decision not to
                    reappoint a nontenured faculty member in an academic rank
                    specified in Rule 31007, Section 3 of the Regents' *Rules and
                    Regulations* written notice will be given them not later than
                    March 1 of the first academic year of probationary service if the
                    appointment expires at the end of that academic year, or not
                    later than December 15 of the second academic year of
                    probationary service if the appointment expires at the end of
                    that academic year. After two or more academic years, written
                    notice shall be given not later than 30 days prior to the end of
                    the then current academic year that the subsequent year will be
                    the terminal academic year of appointment and a Memorandum
                    of Appointment shall be provided to such faculty member in
                    accordance with *Texas Education Code* Section 51.943. The
                    notice required by this Subsection is not applicable where
                    termination of employment is for good cause under Rule 31008,
                    Section 1 of the Regents' *Rules and Regulations*.

        Sec. 2      Notice of Faculty on Term Tenure.  A faculty member serving a
                    seven-year term appointment shall be given notice not later than
                    30 days prior to the end of the sixth academic year of such
                    appointment period that the subsequent academic year will be
                    the terminal year of employment or that, subject to the approval
                    of the Board of Regents, at the conclusion of the subsequent
                    academic year he or she will be reappointed to a seven-year
                    term appointment. A Memorandum of Appointment shall be
                    provided to such faculty member in accordance with *Texas
                    Education Code* Section 51.943.

        Sec. 3      Notice and Approval by President Required.  Upon expiration of
                    an appointment period, reappointment of nontenured members
                    of the faculty may be accomplished only by approval of the
                    president of an institution. Reappointment of members of the
                    faculty who are serving a seven-year term appointment to a
                    succeeding seven-year term appointment may be accomplished
                    only by notice by the president of an institution or his or her
                    delegate. No nontenured member of the faculty shall expect
                    continued employment beyond the period of his or her current
                    appointment. Any commitment to employ a nontenured member

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**        **Rule: 31002**

of the faculty beyond the period of his or her current employment shall have no force and effect until approved by the president of the institution.

Notwithstanding any provisions of Rule 31007, Section 5 of the Regents' *Rules and Regulations*, or Sections 1 and 2 of this Rule to the contrary, no person shall be deemed to have been reappointed or to have been awarded tenure or a seven-year appointment because notice is not given or received by the time prescribed in Rule 31007, Section 5 of the Regents' *Rules and Regulations*, or Sections 1 and 2 of this Rule or in the manner prescribed in Section 1 of Rule 31003 of the Regents' *Rules and Regulations*. Should it occur that no notice is received by the time prescribed in Rule 31007, Section 5 of the Regents' *Rules and Regulations*, or Sections 1 and 2 of this Rule, it is the duty of the faculty member concerned to make inquiry to determine the decision of the president of an institution, who shall without delay give the required notice to the faculty member.

Sec. 4    Current Mailing Address.  Each faculty member shall keep the president of the institution or his or her delegate notified of his or her current mailing address. The written notice required by this Rule and Rule 31007, Section 5 concerning tenure shall be sent by certified mail, return receipt requested, to the last address given by the faculty member.

**3.**     **Definitions**

None

**4.**     **Relevant Federal and State Statutes**

*Texas Education Code* Section 51.943– Renewal of Faculty Employment Contracts.

**5.**     **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations*, Rule 31001 – Faculty Appointments and Titles

Regents' *Rules and Regulations*, Rule 31007 – Tenure

Regents' *Rules and Regulations*, Rule 31008 – Termination of a Faculty Member

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 31002**

6. **Who Should Know**

   Administrators
   Faculty

7. **System Administration Office(s) Responsible for Rule**

   Office of Academic Affairs
   Office of Health Affairs
   Office of General Counsel
   Office of Employee Services

8. **Dates Approved or Amended**

   Section 3 was editorially amended on February 22, 2010
   August 23, 2007
   December 10, 2004

9. **Contact Information**

   Questions or comments regarding this Rule should be directed to:

   - bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 31003**

1.      **Title**

        Abandonment of Academic Positions or Programs

2.      **Rule and Regulation**

        Sec. 1      President's Responsibility.  The president of an institution of The
                    University of Texas System is responsible for determining when
                    to eliminate occupied academic positions, the titles of which are
                    given in the Regents' *Rules and Regulations,* Rule 31001, or
                    abandon academic programs or both, subject to approval by the
                    appropriate Executive Vice Chancellor. The decision of the
                    president shall include full and meaningful faculty input as
                    specified below and in the institution's *Handbook of Operating
                    Procedures,* and the implementation of that decision shall be
                    subject to the following minimum procedural requirements.

        Sec. 2      Elimination for Academic Reasons.  An academic program
                    under consideration for abandonment or an academic position
                    that is under consideration for elimination for bona fide
                    academic reasons should be reviewed in depth through a
                    procedure determined by the president that includes the
                    elements specified below and in the institution's *Handbook of
                    Operating Procedures*. Neither the procedures specified in
                    Rule 31008 of the Regents' *Rules and Regulations* concerning
                    termination of a faculty member, the notice requirements of
                    Rule 31007, Section 5 concerning tenure, nor Rule 31002,
                    Sections 1 and 2, concerning notice of nonrenewal to
                    nontenured faculty members, shall be applicable.

                    2.1      Notification.  Tenured faculty in a program that is under
                             consideration for abandonment or in an academic
                             position that is under consideration for elimination will be
                             notified and afforded an opportunity to contribute to the
                             review process through a duly constituted committee
                             consisting of faculty members and administrators and
                             have those contributions fairly considered.

                    2.2      Supporting Rationale.  Upon completion of the review
                             process, a recommendation with supporting rationale
                             should be submitted to the chief academic officer for
                             review and recommendation to the president.

                    2.3      Review by Executive Vice Chancellor.  If the president
                             determines that an academic program should be

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 31003**

abandoned, a request for approval with supporting documentation should be forwarded to the appropriate Executive Vice Chancellor.

2.4     Appeal Procedures.  The president of an institution shall appoint a hearing committee comprised of faculty members to consider any appeals for reconsideration of termination decisions. Within 30 days from the date of notice of termination, a faculty member shall have the right to appeal to the hearing committee for reconsideration of the termination decision. The appeal for reconsideration shall be in writing and addressed to the president of the institution. A faculty member who appeals to the hearing committee (the appellant) shall be given a reasonably adequate written statement of the basis for the initial decision to reduce academic positions and, upon request of the person, shall be given any written data or information relied upon in arriving at such decision. The hearing committee shall conduct the hearing in accordance with the following conditions and procedures:

(a) The hearing committee shall set the date, time, and place for hearing the appeal for reconsideration. Such hearing shall be held within 30 days of the date of the written request unless the appellant waives such time requirement; however, such hearing shall be held within 90 days from the date of the request.

(b) The hearing will be closed to the public unless requested to be open by the appellant.

(c) The appellant may be represented by legal counsel at his or her expense.

(d) The appellant and the institution may offer any written evidence or oral testimony that is material to the issues.

(e) The burden shall be upon the appellant to show by a preponderance of the credible evidence that the decision to terminate the appellant as compared to another individual in the same discipline or teaching specialty was arbitrary and unreasonable based upon the evidence presented.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 31003**

(f)  No other issues shall be heard or considered by the hearing committee.

2.5     Establishment of Date.  The date for abandoning or phasing out an academic program should take into consideration the time required for anticipated completion by students currently enrolled or for facilitation of their placement in acceptable alternative programs.

2.6     Requests for Reassignment.  The administration will notify tenured faculty in the program to be abandoned and ask each faculty member to inform the president or designee, in writing, of the faculty member's request for reassignment to other academic program(s) and to provide details of their qualifications for appointment to such academic program(s).

2.7     Employment Alternatives.  The president or designee will meet individually with tenured faculty who respond to discuss possible employment alternatives to termination.

2.8     Non-retention.  If the decision is not to retain, the president or designee will send a written response stating reasons for non-retention.

2.9     Displacement.  If retention of a tenured faculty member results in displacement of a tenured faculty member in another program, the displaced faculty member is entitled to the above procedures.

2.10    Benefit Information.  Any faculty member whose employment is terminated pursuant to this Subsection shall be informed of applicable benefits available upon termination, such as retirement, accrued leave, and opportunity to continue insurance coverage.

2.11    Employment Assistance.  U. T. System institutions shall provide appropriate assistance to affected faculty members concerning available alternative employment opportunities.

Sec. 3     Elimination Due to an Institutional Financial Exigency.  When such reductions are necessary as a result of financial exigency, the procedure for the selection and notification of those

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                Rule: 31003**

academic positions that are to be terminated shall be governed by this Section and the institution's *Handbook of Operating Procedures.* Neither the procedures specified in Rule 31008 of the Regents' *Rules and Regulations* concerning termination of a faculty member, nor the notice requirements of Rule 31007, Section 5 concerning tenure, or Rule 31002, Sections 1 and 2, concerning notice of nonrenewal to nontenured faculty members, shall be applicable.

3.1     Committee Recommendations.  Upon determining the existence of a financial exigency and the need to reduce academic positions or academic programs, or both, the president of an institution shall appoint a committee composed of faculty and administrative personnel to make recommendations to the president as to which academic positions and/or academic programs should be eliminated as a result of the financial exigency. At least one-half of the total committee membership shall be faculty members and at least one-half of the faculty members on the committee shall be appointed from recommendations submitted to the president from the institution's faculty governance body.

3.2     Assessment of Academic Program.  The committee will review and assess the academic programs of the institution and identify those academic positions that may be eliminated with minimum effect upon the degree programs that should be continued and upon other critical components of the institution's mission. The review will include, but not be limited to, as relevant: (a) an examination of the course offerings, degree programs, supporting degree programs, teaching specialties, and semester credit hour production; (b) an evaluation of the quality, centrality, and funding of research activities; and/or (c) an assessment of the productivity, community service, and quality of clinical services (in relation to teaching, health care delivery, and scholarly activity).

3.3     Review Consideration.  Upon determining that one or more academic positions in a degree program or teaching specialty should be eliminated, the committee will recommend to the president, in writing, the particular position or positions to be terminated after reviewing the academic, research, and clinical qualifications and talents

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 31003**

of holders of all academic positions in those degree programs or clinical or academic teaching specialties, the needs of the program and the needs of the school or college they serve, past performance, and the potential for future contributions to the development of the institution. Tenure status of a faculty member shall not be a consideration in the determination of whether a particular position should be eliminated except as permitted in Section 3.4 below.

3.4    Tenure Preference.  If, in the opinion of the committee, two or more faculty members are equally qualified and capable of performing the same teaching, research, and/or clinical role, the faculty member or members having tenure shall be given preference over nontenured faculty. However, if such faculty members have the same tenure status and equal qualifications, consideration will be given to other documented needs of the institution.

3.5    Recommendation.  Upon completion of its review, the committee shall promptly recommend in writing to the president those persons who may be terminated, ranked in order of priority, with the reasons for their selection. The president shall, after consultation with institutional administrative officers as the president may deem appropriate, determine which academic positions are to be terminated because of the financial exigency and shall give the holders of these positions written notice of the decision.

3.6    Notification of Vacancies.  Any person terminated due to financial exigency will be notified when a vacancy occurs in the same institution in their field of teaching within the next two academic years following the termination. If such person makes timely application and is qualified for the position to be filled, they shall be offered employment in that position. If the vacancy is in a field of teaching in which two or more persons have been terminated because of financial exigency, all will be notified of the vacancy and of those so notified and making timely application, employment will be offered to the person who is the better qualified for the position to be filled.

3.7    Hearing Committee.  The president shall appoint a hearing committee comprised of faculty members to hear

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**            **Rule: 31003**

any appeals for reconsideration of termination decisions based upon financial exigency. Within 30 days from the date of the notice of termination, a faculty member shall have the right to appeal to the hearing committee for reconsideration of the termination decision. The appeal for reconsideration shall be in writing and addressed to the president. A faculty member who appeals to the hearing committee (the appellant) shall be given a reasonably adequate written statement of the basis for the initial decision to reduce academic positions and, upon request of the person, shall be given all written data or information relied upon in arriving at such decision.

3.8     Appeal Procedures.  The hearing committee shall set the date, time, and place for hearing the appeal for reconsideration. Such hearing shall be held within 30 days of the date of the written request unless the appellant waives such time requirement; however, such hearing shall be held within 90 days from the date of the request. The hearing committee shall conduct the hearing in accordance with the following conditions and procedures.

(a) The hearing will be closed to the public unless requested to be open by the appellant.

(b) The appellant may be represented by legal counsel at his or her own expense.

(c) The appellant and the institution may offer any written evidence or oral testimony that is material to the issues.

(d) The burden shall be upon the appellant to show by a preponderance of the credible evidence that:

(1) Financial exigency was not in fact the reason for the initial decision to reduce academic positions; or

(2) The decision to terminate the appellant as compared to another individual in the same discipline or teaching specialty was arbitrary and unreasonable based upon the evidence presented.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                      Rule: 31003**

(e) No other issues shall be heard or considered by the hearing committee.

(f) The hearing committee shall make written findings of fact and recommendations to the president of the institution as soon as practical following the hearing. The president shall have the final decision to either accept or reject the recommendation of the hearing committee.

Sec. 4        Institutional policies and procedures implementing this Rule shall be approved in accordance with applicable Regents' Rules (including Rule 20201, Sec. 4.9) and placed in each institution's *Handbook of Operating Procedures*.

## 3.    Definitions

Financial exigency:  a demonstrably bona fide financial crisis that adversely affects an institution as a whole and that, after considering other cost-reducing measures, including ways to cut faculty costs, requires consideration of terminating appointments held by tenured faculty.[1]

Governance body:  the elected body representative of the faculty and charged with developing academic policy in the areas designated in Regents' Rule 40101.

## 4.    Relevant Federal and State Statutes

None

## 5.    Relevant System Policies, Procedures, and Forms

None

## 6.    Who Should Know

Administrators
Faculty

## 7.    System Administration Office(s) Responsible for Rule

---

[1] Includes faculty holding seven-year term appointments during the term of their appointments, (see Regents' Rule 31007, Sec. 2).

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 31003**

       Office of Academic Affairs
       Office of Health Affairs

**8.      Dates Approved or Amended**

       May 13, 2010
       December 10, 2004

**9.      Contact Information**

       Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 31004**

1.      **Title**

        Rights and Responsibilities of Faculty Members

2.      **Rule and Regulation**

        Sec. 1    Freedom in Research.  Faculty members are entitled to full
                  freedom in research and in the publication of the results.

        Sec. 2    Freedom in the Classroom.  Faculty members are entitled to
                  freedom in the classroom in discussing his or her subject, but
                  are expected not to introduce into their teaching
                  controversial matter that has no relation to his or her subject.

        Sec. 3    Clarification of Role.  Faculty members are citizens, members of
                  learned professions, and officers of an educational institution
                  supported by the State of Texas. When the faculty member
                  speaks or writes as a citizen, he or she should be free from
                  institutional censorship or discipline, but should make it plain
                  that the faculty member is not an institutional spokesperson.

        Sec. 4    Primary Duties.  The primary duties of a member of the faculty
                  are to:

                  4.1    Teaching.  Teach in the classroom, laboratory, seminar,
                         or clinical setting.

                  4.2    Research.  Study, investigate, discover, create, and
                         develop professionally.

                  4.3    Administration.  Perform curricular tasks auxiliary to
                         teaching and research, e.g., serving on faculty
                         committees, attending to administrative and disciplinary
                         tasks, fostering intellectual curiosity and integrity in the
                         student body.

                  4.4    Contribution to Society.  Use their professional expertise
                         to benefit society.

        Sec. 5    Compensation Restriction.  Full-time faculty or staff of the rank
                  of instructor or above on 12-month appointments may receive
                  additional compensation for correspondence course and/or
                  extension center teaching, but may not receive additional
                  compensation for summer school teaching. Full-time faculty on
                  nine-month appointments may receive additional compensation

_____

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 31004**

for correspondence course and/or extension center teaching during the nine-month period and also may be paid for summer school teaching.

Sec. 6    Textbook and Course Materials.  The policy of the Board of Regents concerning textbooks and other materials prescribed for the use of students is as follows:

     6.1    Choice of Materials.  Individual faculty members or the department should have discretion in the choice of materials to be used in the courses offered by the department.

Sec. 7    Materials Authored by Faculty.  Although the authorship of books, outlines, manuals, and similar materials by members of the faculty and staff should be encouraged, the prescribed use of these for students is a responsibility that goes beyond that of the individual author. Whenever an approved fee includes a charge for such materials distributed through the classroom, the prices should be as low as possible, consistent with the payment of any required royalty to the author or authors.

     7.1    Required Approval.  Textbooks, notebooks, manuals, or other materials for the use of students of an institution, written or prepared by a member of the faculty of that institution, shall not be prescribed for the use of students in that institution or sold to such students until approved by the dean, chief academic officer, and president of an institution, pursuant to policies included in the institutional *Handbook of Operating Procedures*. At a minimum, these policies should provide for consultation with departmental faculty.

Sec. 8    Nonsectarian.  In accordance with *Texas Education Code* Section 65.38, no course of instruction of a sectarian character shall be taught in the System.

Sec. 9    Fees.  Faculty members without previous and special approval of the Board of Regents, shall not collect from students any fees or charges to be expended for institutional purposes, and shall not sell to students books, notes, or similar student supplies.

     9.1    Prohibited Fees.  A member of the faculty may not accept pay for extra instruction or teaching of students registered in the institution where he or she is employed.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**　　　　　　　**Rule: 31004**

9.2    Allowed Fees.  With written approval, teaching assistants and other like instructional employees below the rank of an instructor may accept pay from students for extra-class instruction or coaching but only in courses or sections of courses with which they have no instructional connection. The *Handbook of Operating Procedures* of the institution shall specify the procedure for approval at the institutional level.

**3.    Definitions**

None

**4.    Relevant Federal and State Statutes**

*Texas Education Code* Section 65.38– Nonsectarian Courses

**5.    Relevant System Policies, Procedures, and Forms**

None

**6.    Who Should Know**

Faculty

**7.    System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

**8.    Dates Approved or Amended**

December 10, 2004

**9.    Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 31005**

1.     **Title**

       Faculty or Staff Absence

2.     **Rule and Regulation**

       Sec. 1     Statutory Requirement.  In accordance with *Texas Education Code* Section 51.108, the Board of Regents is required to issue regulations concerning the authorized and unauthorized absence from duty of faculty members, including teaching assistants and research assistants.

       Sec. 2     Required Authorization.  Authorization for any member of a faculty or staff to be absent from his or her usual and regular duties will be granted only, with permission from the Chancellor or president of the institution or their designee, under the following conditions:

                  2.1     When such absence is on State business, and

                  2.2     When appropriate provisions are made to carry on the duties of the absent person without additional expense to the institution; or

                  2.3     In the case of military leave, not to exceed 15 working days each year.

       Sec. 3     Institutional Regulations.  Permission to be absent from usual and regular duties shall be obtained as prescribed in institutional regulations.

3.     **Definitions**

       None

4.     **Relevant Federal and State Statutes**

       *Texas Education Code* Section 51.108– Regulations Concerning Absence

5.     **Relevant System Policies, Procedures, and Forms**

       None

6.     **Who Should Know**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 31005**

Employees

7.      **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

8.      **Dates Approved or Amended**

December 10, 2004

9.      **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 31006**

1.     **Title**

       Academic Workload Requirements

2.     **Rule and Regulation**

       Sec. 1     Statutory Requirement.  State law requires the Board of
                  Regents to adopt rules concerning faculty academic workloads.
                  *Texas Education Code* Section 51.402 recognizes that
                  important elements of workload include classroom teaching,
                  basic and applied research, and professional development.
                  Workload for the faculty members of the institutions of The
                  University of Texas System is expressed in terms of classroom
                  teaching, teaching equivalencies, and presidential credits for
                  assigned activities.

       Sec. 2     Minimum Workload.  Each person paid full time from the
                  appropriations item "Faculty Salaries" shall be assigned a
                  minimum workload equivalent to 18 semester credit hours of
                  instruction in organized undergraduate classes each nine-month
                  academic year, or fiscal year at an institution's option, in
                  accordance with guidelines listed below.

       Sec. 3     Source of Funding.  When a faculty member is paid partially
                  from a source of funds other than the "Faculty Salaries" line
                  item, the minimum workload shall be proportioned to the
                  percentage of salary paid from the appropriations item "Faculty
                  Salaries."

       Sec. 4     Supervision of Teaching Assistants.  Teaching assistants shall
                  be used only when given proper guidance and supervision to
                  ensure quality instruction. The minimum faculty workload
                  established below does not apply to graduate teaching
                  assistants or assistant instructors who are pursuing degrees.
                  The institutional head is responsible for assuring that all
                  teaching assistants are carefully supervised.

       Sec. 5     Institutional Requirements.  This policy sets the minimum
                  workload and equivalencies only; an institution may enact more
                  intensive and/or more detailed minimum requirements for
                  inclusion in the institutional *Handbook of Operating Procedures*,
                  following appropriate approvals. For example, an institution may
                  set individual minimum requirements, consistent with these
                  minimum guidelines, for a specific school or college.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 31006**

Sec. 6     Equivalencies.  The following equivalencies are available to
           meet workload requirements:

6.1     Graduate Instructions.  One semester credit hour of
        graduate instruction will be considered the equivalent of
        one and one-half semester credit hours of undergraduate
        instruction.

6.2     Labs.  One and one-half contact hours of instruction of
        regularly scheduled laboratory and clinical courses,
        physical activity courses, studio art, studio music
        instruction, and primary music performance
        organizations, such as ensembles and marching bands,
        for each week of a long-term semester will be considered
        the equivalent of one semester credit hour of
        undergraduate instruction.

6.3     Supervision.  Supervision of student teachers, clinical
        supervision, and intern supervision shall be credited such
        that 12 total student semester credit hours taught will be
        considered the equivalent of one semester credit hour.

6.4     Honors Program or Individual Research Projects.
        Supervision of student practicum and individual
        instruction courses, such as honors programs and
        individual research projects, shall provide equivalency at
        the rate of one-tenth semester credit hour for each
        student semester hour of undergraduate instruction and
        one-fifth semester hour for each student semester hour
        of graduate instruction per long-term semester. In no
        case will individual instruction in a single course generate
        more semester credit hour equivalence than if the course
        were taught as a regularly scheduled, organized course.

6.5     Thesis or Dissertation Supervision.  Graduate thesis or
        dissertation supervision shall provide equivalent credit
        hours only to the chairperson of the thesis or dissertation
        committee at the rate of one semester credit hour for
        each six total student semester hours of thesis research
        credit and at the rate of one semester credit hour for
        each three total student semester hours of dissertation
        credit.

6.6     Coordination of Courses.  A faculty member who
        coordinates several sections of a single course shall be

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 31006**

given one semester hour of workload credit for each six sections coordinated up to a maximum of three semester hours of credit per semester.

6.7    Large Classes.  Workload credit may be proportionally increased for teaching a large class that requires extensive grading or evaluation of students' work by the faculty member according to the following weighing factors:

| Class Size | Weighing Factor |
|---|---|
| 59 or less | 1.0 |
| 60 - 69 | 1.1 |
| 70 - 79 | 1.2 |
| 80 - 89 | 1.3 |
| 90 - 99 | 1.4 |
| 100 - 124 | 1.5 |
| 125 - 149 | 1.6 |
| 150 - 174 | 1.7 |
| 175 - 199 | 1.8 |
| 200 - 249 | 1.9 |
| 250 or more | 2.0 |

6.8    Proportional Credit.  When more than one teacher participates in the instruction of a single course, the credit is proportioned according to the effort expended.

6.9    Insufficient Enrollment.  A reduced workload may be granted temporarily if assigned classes do not materialize because of insufficient enrollment and when additional classes or other academic duties cannot be assigned to the faculty member. This exception may be granted for two consecutive long-term semesters only for any particular faculty member.

6.10   Administrative Services.  Workload credit may be granted for a faculty member who is head of a department or head of a comparable administrative unit up to a maximum of six semester hours of workload credit per semester. When justified by the department/unit head and approved by the institutional head, three hours of credit may be given to faculty members who provide non-teaching academic services to the department/unit head. In no case will the total for departmental administration,

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                  Rule: 31006**

including the head, exceed nine workload credits per semester unless the institution's organizational structure includes academic units composed of more than one academic discipline.

6.11　New Faculty Members.  At the recommendation of the head of the department or comparable unit and upon approval of the institutional head, up to three semester hours of workload credit for each of two semesters may be given to a newly-appointed faculty member during the first year of employment for the purpose of developing instructional materials for the courses he or she will teach.

6.12　Course Development.  At the recommendation of the departmental chair and upon approval of the institutional head, workload credit may be granted to a faculty member involved in the creation of a new course, new course format, or new course materials.

6.13　Credit Granted by Institution Head.  Academic workload credit granted by the head of the institution for all other purposes is limited to 1% of the total semester credit hours taught at the institution during the comparable (fall or spring) semester in the previous year. With the approval of the institutional head, limited faculty workload credit (within the 1% limit above) may be granted for major academic advising responsibilities, for basic and applied research following a research work plan approved pursuant to institutional policy, for preparing major documents in the fulfillment of programmatic needs or accreditation requirements, or for duties performed in the best interest of the institution's instructional programs as determined by the head of the institution.

Sec. 7　Monitoring of Workloads.  The president of an institution shall designate the officer of the institution who will monitor workloads, review workload reports, and submit the reports to the institutional head for approval and comment, as appropriate, prior to submitting the reports to the Board of Regents through the System Administration following the standard reporting format and deadlines as provided by the Texas Higher Education Coordinating Board in accordance with *Texas Education Code* Section 51.402 and any applicable riders in the current *General Appropriations Act*.

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 31006**

      Sec. 8    Compliance Assessment.  Every faculty member's compliance with these minimum academic workload requirements shall be assessed each academic year. If a faculty member is found to be out of compliance, the institution shall take appropriate steps to address the noncompliance and to prevent such noncompliance in the future.

**3.**    **Definitions**

    None

**4.**    **Relevant Federal and State Statutes**

    *Texas Education Code* Section 51.402 – Report of Institutional and Academic Duties

**5.**    **Relevant System Policies, Procedures, and Forms**

    None

**6.**    **Who Should Know**

    Administrators
    Faculty

**7.**    **System Administration Office(s) Responsible for Rule**

    Office of Academic Affairs
    Office of Health Affairs

**8.**    **Dates Approved or Amended**

    November 10, 2011
    December 10, 2004

**9.**    **Contact Information**

    Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 31007**

1.    **Title**

      Tenure

2.    **Rule and Regulation**

      Sec. 1    Granting of Tenure.  Tenure denotes a status of continuing
                appointment as a member of the faculty at an institution of The
                University of Texas System. Academic titles in which faculty
                members can hold tenure are listed in Rule 31001, Section 2.1
                of the Regents' *Rules and Regulations.* Tenure may be granted
                at the time of appointment to any of such academic ranks, or
                tenure may be withheld pending satisfactory completion of a
                probationary period of faculty service. Such tenure status shall
                not be applicable to the faculty of The University of Texas M. D.
                Anderson Cancer Center or The University of Texas Health
                Science Center at Tyler.

      Sec. 2    Seven-Year Term Appointment.  The University of Texas M. D.
                Anderson Cancer Center and The University of Texas Health
                Science Center at Tyler are authorized to award a seven-year
                term appointment that will denote a status of continuing
                appointment at that institution as a member of the faculty for a
                period of seven years. Only members of the faculty with
                academic titles of Professor, Associate Professor, or Assistant
                Professor may be granted a seven-year term appointment. A
                seven-year term appointment may be granted at the time of
                appointment to any of such academic rank or may be withheld
                pending satisfactory completion of a probationary period of
                faculty service. No institution may adopt or implement a seven-
                year term appointment policy except The University of Texas
                M. D. Anderson Cancer Center and The University of Texas
                Health Science Center at Tyler.

      Sec. 3    Full-time Service Requirement.  Only full-time service in the
                academic ranks of Professor, Associate Professor, Assistant
                Professor, and Instructor, or any combination thereof, shall be
                counted toward fulfillment of a required probationary period
                related to the award of tenure or a seven-year term
                appointment. Periods during which a faculty member is on leave
                of absence shall not be counted toward fulfillment of a required
                probationary period.

      Sec. 4    Prior Service.  Prior service at other academic institutions,
                whether inside or outside the U. T. System, shall not be counted

**Exhibit 5**

toward fulfillment of the required probationary period unless specifically permitted under the provisions of an institution's *Handbook of Operating Procedures*.

Sec. 5    Probationary Service.  The maximum period of probationary faculty service in non-tenured status with any academic title or combination of academic titles specified in Section 3 of this Rule shall not be more than seven years of full-time academic service at the general academic institutions of the U. T. System and not more than nine years of full-time academic service at the health-related institutions of the U. T. System. In the event that an institution fails to specify the maximum length of probationary service in its *Handbook of Operating Procedures*, such period shall be seven years at the general academic institutions of the U. T. System and nine years at the health-related institutions of the U. T. System. No later than 30 days prior to the beginning of the final academic year of the maximum probationary period in effect at any institution, all non-tenured faculty appointed to a title that accrues time toward satisfaction of a probationary period shall be given notice that the subsequent academic year will be the terminal year of employment or that, subject to the approval of the Board of Regents, beginning with the subsequent academic year tenure or a seven-year term appointment will be granted according to local institutional policy. A Memorandum of Appointment shall be provided to such faculty member in accordance with Rule 31001, Section 1 of the Regents' *Rules and Regulations* concerning faculty appointments and titles. In the event that the employment of a nontenured faculty member in any academic rank specified in Section 3 of this Rule is to be terminated prior to the end of the maximum probationary period, notice shall be given in accordance with Rule 31002, Section 1 of the Regents' *Rules and Regulations* concerning the notice of nonrenewal to nontenured faculty members.

5.1    Calculation of Service.  For purposes of calculating the period of probationary service, an "academic year" shall be the period from September 1 through the following August 31.

(a) If a faculty member is initially appointed during an academic year, the period of service from the date of appointment until the following September 1 shall not be counted as academic service toward fulfillment of the maximum probationary period. One year of

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 31007**

probationary service is accrued by at least nine months full-time academic service during any academic year. A faculty member shall be considered to be on full-time academic service when in full compliance with Regental standards pertaining to minimum faculty workloads or when in compliance with the academic service standard of any health-related institution. All institutional requirements shall be contained in the *Handbook of Operating Procedures*.

(b) Each institution with tenured faculty will establish and appropriately communicate a policy for the extension of the maximum probationary period and include the policy in the institutional *Handbook of Operating Procedures* following the standard review and approval process. In the case of The University of Texas M. D. Anderson Cancer Center or The University of Texas Health Science Center at Tyler, the institution may establish a policy that allows the extension of a term-tenure appointment consistent with these guidelines and the term-tenure policy. Institutional policies are to be consistent with the following guidelines:

(1) A faculty member who determines that certain personal circumstances may impede his or her progress toward achieving demonstration of eligibility for recommendation of award of tenure may make a written request for extension specifying the reason(s) for the requested extension. Personal circumstances that may justify the extension include, but are not restricted to, disability or illness of the faculty member; status of the faculty member as a principal caregiver of a preschool child; or status of the faculty member as a principal caregiver of a disabled, elderly, or ill member of the family of the faculty member. It is the responsibility of the faculty member to provide appropriate documentation to adequately demonstrate why the request should be granted.

(2) The request for extension shall be limited to one academic year. A request for an additional academic year's extension will follow the

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 31007**

established request process, with the maximum duration of extension, whether consecutive or nonconsecutive, to be two academic years.

(3) Normally, requests for extension must be made in advance of the academic year or semester for which the extension is desired and may be made no later than three months prior to the deadline for initiation of the mandatory review process to determine recommended award of tenure or notice as provided under Rule 31002, Section 1 of the Regents' *Rules and Regulations*, concerning notice of non-renewal, that the next year will be the faculty member's terminal year of appointment.

(4) The decision regarding the request shall be made by the chief academic officer of the institution, upon recommendation of the department chair and the dean, within a reasonable period of time and in a manner specified by institutional policy.

Sec. 6    Board Approval.  The award of tenure is subject to the approval of the Board of Regents.

Sec. 7    Prohibition.  A person appointed to a tenured faculty position at an institution of the U. T. System may not, during the term of such appointment, hold a tenured position on the faculty of another educational institution without the express written permission of the appropriate Executive Vice Chancellor.

7.1    Resignation of Outside Tenure.  Unless an exception is approved as authorized above, tenured faculty appointments within the U. T. System shall be conditioned upon the appointee having resigned any tenured position at any other educational institution. Such resignation must be completed and effective prior to the effective date of the appointment at the U. T. System institution; otherwise, such appointment shall be void and of no effect.

7.2    Acceptance Considered Resignation.  After a person holds a tenure faculty appointment at a U. T. System institution, the acceptance of a tenured faculty appointment at any other educational institution shall be considered a resignation of the U. T. System faculty

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 31007**

appointment unless the appropriate Executive Vice Chancellor has granted express written permission for the holding of such a dual appointment.

3.    **Definitions**

None

4.    **Relevant Federal and State Statutes**

*Texas Education Code* Section 65.32 – Removal of Officers, Etc.

5.    **Relevant System Policies, Procedures, and Forms**

None

6.    **Who Should Know**

Administrators
Faculty

7.    **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

8.    **Dates Approved or Amended**

February 11, 2016
November 10, 2011
Editorial amendment to Section 5 made July 6, 2010
July 8, 2009
August 23, 2007
December 10, 2004

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

1.      **Title**

        Termination of a Faculty Member

2.      **Rule and Regulation**

        Sec. 1      Termination for Good Cause.  Termination by an institution of
                    the employment of a faculty member who has been granted
                    tenure and of all other faculty members before the expiration of
                    the stated period of appointment, except as is otherwise
                    provided in Rule 31007, Section 5, and *Texas Education Code*
                    Section 51.943, or by resignation or retirement, will be only for
                    good cause shown. Faculty member, as used in this Section,
                    includes a professional librarian with an academic title. In each
                    case the issue of good cause will be determined according to
                    the equitable procedures provided in this Section.

        Sec. 2      Review of Allegation.  The president of the institution (the
                    president) shall assure that all allegations against a faculty
                    member that involve the potential for termination are reviewed
                    under the direction of the chief academic officer unless another
                    officer is designated by the president. The faculty member who
                    is the subject of the allegations shall be given an opportunity to
                    be interviewed and shall have the right to present a grievance,
                    in person or through a representative, to the chief academic
                    officer on an issue or subject related to the allegations under
                    review. The chief academic officer or another individual
                    designated by the president if the allegations pertain to the chief
                    academic officer shall take the grievance, if any, into
                    consideration prior to making a determination whether the
                    allegations are supported by evidence that justifies the initiation
                    of termination procedures. Upon making that determination, the
                    chief academic officer or other appropriate designee will
                    recommend to the president whether to proceed with charges
                    for termination. Failure to present a grievance to the chief
                    academic officer or other appropriate designee prior to his or
                    her recommendation shall not preclude a faculty member from
                    presenting an issue or subject to the special hearing tribunal in
                    defense of charges for termination that may result from the
                    review. A tenured faculty member who is recommended for
                    termination on the basis of periodic evaluation must be given
                    the opportunity for referral of the matter to nonbinding
                    alternative dispute resolution, as required by *Texas Education
                    Code* Section 51.942 and in compliance with applicable policies
                    and procedures for alternative dispute resolution within The

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 31008**

University of Texas System or any of the institutions, prior to referral of the charges to a hearing tribunal under Section 4 of this Rule.

Sec. 3    Response to Allegation.  If the president determines that the allegations are supported by evidence that justifies the initiation of termination procedures, the president will meet with the faculty member, explain the allegations and supporting evidence, and give the faculty member a reasonable amount of time, as determined by the president, to respond either orally or in writing. In cases of incompetency or gross immorality where the facts are admitted, or in cases of felony conviction, the hearing procedures of Section 4 of this Rule shall not apply, and dismissal by the president will follow.

Sec. 4    Hearings Tribunal.  In cases where other offenses are charged, and in all cases where the facts are in dispute, the accused faculty member will be informed in writing of the charges. If the president determines that the nature of the charges and the evidence are such that it is in the best interest of the institution, the accused faculty member may be suspended with pay pending the completion of the hearing and a final decision. A special hearing tribunal of at least three faculty members will hear the charges. The academic rank of each member of the tribunal must be at least equal to that of the accused faculty member. The accused faculty member will be notified of the names of the faculty members selected for the tribunal and of the date, time, and place for the hearing. Such notification shall be made at least eight workdays prior to the hearing. The hearing tribunal members are appointed by the president from a standing panel (pool) of members of the faculty. At least 50% of the panel members from which the hearing tribunal members are appointed shall be selected by a procedure established by the faculty governance organization, an existing faculty committee with oversight for university-wide faculty committee selection. The president shall appoint the remaining members of the panel. A minimum of one member of a hearing tribunal appointed by a president is to be from among panel members selected by the faculty input, existent faculty committee, or faculty governance procedure. The president may request counsel from the System Administration's Office of General Counsel to advise the hearing tribunal.

4.1    Right to Cross-examine.  In every such hearing the accused faculty member will have the right to appear in

**Exhibit 5**

person and by counsel of the accused's selection and to confront and cross-examine witnesses who may appear. If counsel represents the accused faculty member, the institution is entitled to be represented by counsel from System Administration's Office of General Counsel.

4.2     Right to Testify.  The accused faculty member shall have the right to testify, but may not be required to do so. He or she may introduce in his or her behalf all evidence, written or oral, which may be relevant and material to the charges.

4.3     Record of Proceeding.  A stenographic or electronic record of the proceedings will be taken and filed with the Board of Regents, and such record shall be made accessible to the accused.

4.4     Burden to Prove Good Cause.  A representative of the institution may appear before the hearing tribunal to present witnesses and evidence in support of the charge against such faculty member, and such institutional representatives shall have the right to cross-examine the accused faculty member (if the faculty member testifies) and the witnesses offered in behalf of the faculty member. The institution has the burden to prove good cause for termination by the greater weight of the credible evidence.

4.5     Make-up of Hearing Tribunal.  The hearing tribunal shall not include any accuser of the faculty member. If the accused faculty member is not satisfied with the fairness or objectivity of any member or members of the hearing tribunal, the faculty member may challenge the alleged lack of fairness or objectivity, but any such challenge must be made in writing to the hearing tribunal at least three workdays prior to the date for the hearing. The accused faculty member shall have no right to disqualify any member or members from serving on the tribunal. It shall be up to each challenged member to determine whether he or she can serve with fairness and objectivity in the matter, and if any challenged member should voluntarily disqualify himself or herself, the president shall appoint a substitute member of the tribunal from the panel described in Section 4 of this Rule.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 31008**

4.6     Findings and Recommendations.  The hearing tribunal, by a majority of the total membership, will make written findings on the material facts and will make a recommendation of the continuance or termination of the accused faculty member. The hearing tribunal, by a majority of its total membership, may make any supplementary suggestions it deems proper concerning the disposal of the case. The original of such findings and the recommendation, with any supplementary suggestions, shall be delivered to the president and a copy to the accused. If minority findings, recommendations, or suggestions are made, they shall be similarly treated. The original transcript of the testimony and the exhibits shall also be forwarded to the president.

4.7     President's Report.  Within fourteen (14) workdays after receipt of the findings and recommendations of the hearing tribunal, the president shall make one of the following decisions based solely on the evidence of record in the proceedings and report that decision in writing to the accused faculty member:

(a)   The president may decide to dismiss the matter or impose sanctions short of termination. In this case, the president's decision is final and the Board of Regents will not review the matter.

(b)   If the allegations are supported by evidence that constitutes good cause for termination, the president may decide to recommend termination to the Board of Regents. If so, the president shall forward the findings and recommendations of the hearing tribunal, the original transcript of the testimony and the exhibits to the Board of Regents for its review, along with the president's report. If the president's recommendation is not the same as the majority recommendation of the hearing tribunal, the president shall state the reasons for the president's decision to recommend termination in his or her report. The accused faculty member may, within seven workdays after receiving the president's report, submit a written response to the Board of Regents. The response must be based solely on the evidence of record in the proceeding.

Exhibit 5

Sec. 5   Board Review.  The Board of Regents, by a majority of the total membership, will approve, reject, or amend such findings, recommendations, and suggestions, if any, or will recommit the report to the same tribunal for hearing additional evidence and reconsidering its findings, recommendations, and suggestions, if any. Reasons for approval, rejection, or amendment of such findings, recommendations, or suggestions will be stated in writing and communicated to the accused.

Sec. 6   Reasons for Termination Not Required.  Full-time faculty members who are notified in accordance with Rule 31002, Section 1 of the Regents' *Rules and Regulations*, concerning notice of nonrenewal, that they will not be reappointed or who are notified in accordance with Rule 31007, Section 5 and Rule 31002, Sections 1 and 2 that the subsequent academic year will be the terminal year of appointment shall not be entitled to a statement of the reasons upon which the decision for such action is based. Such a decision shall only be subject to review pursuant to the following procedures:

6.1   Grievance.  The affected faculty member may present a grievance, in person or through a representative, to the chief academic officer or another individual designated by the president if the allegations pertain to a chief academic officer on an issue or subject related to the nonrenewal decision. The chief academic officer shall meet with the faculty member. Unless a review by a hearing tribunal is requested and granted, pursuant to Section 6.2 below, the nonrenewal decision shall not be subject to further review.

6.2   Hearing Tribunal to Hear Grievance.  A review by a hearing tribunal shall be granted only in those cases where the affected faculty member submits a written request for review by a hearing tribunal to the president and describes in detail the facts relied upon to prove that the decision was made for reasons that are unlawful under the Constitution or laws of Texas or the United States. If the president determines that the alleged facts, if proven by credible evidence, support a conclusion that the decision was made for unlawful reasons, such allegations shall be heard by a hearing tribunal under the procedures in Section 4 of this Rule as in the case of dismissal for cause, with the following exceptions:

**Exhibit 5**

(a) The burden of proof is upon the affected faculty member to establish by the greater weight of the credible evidence that the decision in question was made for reasons that are unlawful under the Constitution or laws of Texas or the United States.

(b) The administration of the institution need not state the reasons for the questioned decision or offer evidence in support thereof unless the affected faculty member presents credible evidence that, if unchallenged, proves the decision was made for unlawful reasons.

(c) The hearing tribunal shall make written findings and recommendations based on the evidence presented at the hearing and shall forward such findings and recommendations with the transcript and exhibits from the hearing to the president.

(d) The president may approve, reject, or amend the recommendations of the hearing tribunal or may reach different conclusions based upon the record of the hearing. The decision of the president shall be final.

Sec. 7   Special Circumstances.  The Board authorizes the Chancellor, in consultation with the appropriate Executive Vice Chancellor and the Vice Chancellor and General Counsel, to appoint officers, staff, and/or others, other than those specifically designated in this Rule, to fulfill the roles specified in Sections 2, 3, and 4 above when the Chancellor deems such appointments necessary.

## 3.   Definitions

Faculty Member – a faculty member is any individual holding an academic title listed in Regents' *Rules and Regulations*, Rule 31001, Section 2, with the exception of Assistant Instructors, Teaching Associates, and Teaching Assistants.

## 4.   Relevant Federal and State Statutes

*Texas Education Code* Section 51.942 – Performance Evaluation of Tenured Faculty

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**            **Rule: 31008**

*Texas Education Code* Section 51.943– Renewal of Faculty Employment Contracts

5. **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations*, Rule 31001 – Faculty Appointments and Titles

6. **Who Should Know**

Administrators
Faculty

7. **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

8. **Dates Approved or Amended**

May 12, 2016
Editorial amendment to Section 3 made August 4, 2014
Editorial amendment to Section 6.2 made October 2, 2009
February 12, 2009
Editorial amendment to Sec. 1 made April 8, 2008
December 10, 2004

9. **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                              **Rule: 31101**

1.      **Title**

        Evaluation of Administrators

2.      **Rule and Regulation**

        Sec. 1    President's Evaluation.  Evaluation of the president of each
                  institution is primarily the responsibility of the appropriate
                  Executive Vice Chancellor and shall occur annually.

        Sec. 2    President's Responsibility.  Subject to the requirements of Rule
                  31102 of the Regents' *Rules and Regulations* concerning the
                  evaluation of tenured faculty and Section 3 of this Rule, the
                  evaluation of the vice presidents and deans is primarily the
                  responsibility of the president or delegate.

        Sec. 3    Administrative Evaluations.  Each academic administrator below
                  the level of president of an institution should be reviewed at
                  least every six years. A committee appointed by the president or
                  provost of the institution shall conduct the review. A written
                  report will contain the substance of the review.

                  3.1    Development of Policies.  The institutional Academic
                         Senate or other representative faculty body should be
                         consulted in the development of the review policies and
                         procedures.

                  3.2    Input from Others.  The review shall be comprehensive
                         and include input from faculty, staff, and students, and
                         where appropriate alumni, community leaders, and other
                         sources identified in the charge to the committee from the
                         president or provost.

                  3.3    Written Report.  A summary of the report will be provided
                         to the administrator under review and to the
                         administrator's supervisor. The written report will be
                         made available to the Executive Vice Chancellor for the
                         campus.
                         .
3.      **Definitions**

        Administrator – unless otherwise defined by approved institutional policy,
        administrator is intended to refer to chief academic officer (vice president
        for academic affairs or provost); deans, department chairs, and directors
        of academic units.

**Page 1 of 2**

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents              Rule: 31101**

4.     **Relevant Federal and State Statutes**

       None

5.     **Relevant System Policies, Procedures, and Forms**

       Regents' *Rules and Regulations,* Rule 30501 – Employee Evaluations

6.     **Who Should Know**

       Administrators
       Faculty

7.     **System Administration Office(s) Responsible for Rule**

       Office of Academic Affairs
       Office of Health Affairs

8.     **Dates Approved or Amended**

       February 9, 2006
       December 10, 2004

9.     **Contact Information**

       Questions or comment regarding this Rule should be directed to:

       • bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 31102**

1.     **Title**

       Evaluation of Tenured Faculty

2.     **Rule and Regulation**

       Sec. 1     Statutory Requirements.  In accordance with the *Texas Education Code* Section 51.942, the Board of Regents is required to adopt rules and procedures providing for a periodic performance evaluation process for all tenured faculty. The Board is required to seek advice and comment from the faculty before adopting any rules pursuant to that section. The advice and comment from the faculty on the performance evaluation of tenured faculty shall be given the utmost consideration by the Board.

       Sec. 2     Importance of Tenure.  The Board of Regents recognizes the time-honored practice of tenure for university faculty as an important protection of free inquiry, open intellectual and scientific debate, and unfettered criticism of the accepted body of knowledge. Academic institutions have a special need for practices that protect freedom of expression, since the core of the academic enterprise involves a continual reexamination of ideas. Academic disciplines thrive and grow through critical analysis of conventions and theories. Throughout history, the process of exploring and expanding the frontiers of learning has necessarily challenged the established order. That is why tenure is so valuable, not merely for the protection of individual faculty members but also as an assurance to society that the pursuit of truth and knowledge commands our first priority. Without freedom to question, there can be no freedom to learn.

       Sec. 3     Purpose of Evaluation.  The Board of Regents supports a system of periodic evaluation of all tenured faculty. Periodic evaluation is intended to enhance and protect, not diminish, the important guarantees of tenure and academic freedom. The purpose of periodic evaluation is to provide guidance for continuing and meaningful faculty development; to assist faculty to enhance professional skills and goals; to refocus academic and professional efforts, when appropriate; and to assure that faculty members are meeting their responsibilities to the University and the State of Texas. The Board is pledged to regular monitoring of this system to make sure that it is serving its intended purposes and does not in any way threaten tenure as a concept and practice. In implementing the plan, institutions

**Exhibit 5**

shall maintain an appropriate balance of emphasis on teaching, research, service, and other duties of faculty.

Sec. 4     Institutional Policies.  Each institution of The University of Texas System shall have an institutional policy and plan consistent with the following guidelines for the periodic (annual and comprehensive) performance evaluation of tenured faculty. Institutional policies in accordance with the model policy shall be developed with appropriate faculty input, including consultation with and guidance from faculty governance organizations, and shall be included in each institutional *Handbook of Operating Procedures* after review and appropriate administrative approval and submission to the Board of Regents for review and final approval. Nothing in these guidelines or the application of institutional evaluation policies shall be interpreted or applied to infringe on the tenure system, academic freedom, due process, or other protected rights nor to establish new term-tenure systems or to require faculty to reestablish their credentials for tenure.

Sec. 5     Minimum Elements.  Institutional *Handbook of Operating Procedures* policies should include the following minimum elements for periodic evaluation:

5.1     Annual Reviews.  Annual reviews are not the comprehensive periodic evaluations required under *Texas Education Code* Section 51.942. Annual reviews should focus on individual merit relative to assigned responsibilities in accordance with Regents' Rule 30501.

(a)     Review Categories.  Each faculty member being reviewed shall be placed in one of the following categories: a. exceeds expectations; b. meets expectations; c. does not meet expectations; or d. unsatisfactory. Expectations shall be set by institutional policy according to the faculty member's rank, discipline, and institution.

(b)     Scheduled Reviews.  Evaluation of tenured faculty shall be performed annually. The evaluation may not be waived for any tenured faculty member but may be deferred in rare circumstances when the review period will coincide with approved leave, comprehensive review for promotion, or appointment to an endowed position. No deferral of review of an

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                     Rule: 31102**

active faculty member may extend beyond one year from the scheduled review.

(c)  Responsibilities Reviewed.  The evaluation shall include review of the faculty member's professional responsibilities in teaching, research, service, patient care, and administration. Institutional policies shall detail the criteria and factors to be evaluated.

(d)  Material Submitted.  The faculty member being evaluated shall submit a curriculum vita, including a summary statement of professional accomplishments, and shall submit or arrange for the submission of teaching evaluations. The faculty member may provide copies of a statement of professional goals, a proposed professional development plan, and any other additional materials the faculty member deems appropriate.

(e)  Review of Evaluation.  In accordance with institutional policy, initial evaluation of the faculty member's performance may be carried out by the department, department chair (or equivalent), dean, or peer review committee, but in any event must be reported to the chair (or equivalent) and dean for review. Evaluation shall include review of the current curriculum vita, student and any peer evaluations of teaching for the review period, and all materials submitted by the faculty member.

(f)  Communication of Results.  Results of the evaluation will be communicated in writing to the faculty member, the department chair/dean, the chief academic officer, and the president for review and appropriate action.

(g)  Uses.  Possible uses of the information contained in the report include the following:

(1)  The evaluation may be used to determine salary recommendations, nomination for awards, or other forms of performance recognition.

(2)  For individuals whose performance indicates they would benefit from additional institutional support or a remediation plan, the evaluation shall be used

**Exhibit 5**

to provide such support or a remediation plan (e.g., teaching effectiveness assistance, counseling, or mentoring in research issues/service expectations). Schools/colleges and/or departments, in consultation with a peer committee, shall monitor individuals receiving such support for evidence of improvement and, if there is insufficient improvement, shall take action under (4) or Section 5.3, below, if appropriate.

(3) Individuals whose performance is unsatisfactory may be subject to further review and/or to appropriate administrative action. Institutional policies shall provide procedures for appeals.

(4) Individuals whose performance is unsatisfactory for two consecutive annual reviews may be subject to a comprehensive review (Section 5.2, below) or action under (3) above or Section 5.3 below, if appropriate.

(5) If incompetence, neglect of duty, or other good cause is determined to be present, appropriate disciplinary action may be taken under Section 5.3 below.

5.2   Comprehensive Periodic Evaluations.  Comprehensive periodic evaluations are required in compliance with *Texas Education Code* Section 51.942.

(a) Review Categories.  Each faculty member being reviewed shall be placed in one of the following categories: a. exceeds expectations; b. meets expectations; c. does not meet expectations; or d. unsatisfactory. Expectations shall be set by institutional policy according to the faculty member's rank, discipline, and institution.

(b) Scheduled Reviews.  Comprehensive periodic evaluation of tenured faculty shall be performed no less often than every six years. The evaluation may not be waived for any tenured faculty member but may be deferred in rare circumstances when the review period will coincide with approved leave, comprehensive review promotion, or appointment to an endowed

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 31102**

position. No deferral of review of an active faculty member may extend beyond one year from the scheduled review. Institutional policy may specify that periods when a faculty member is on leave need not be counted in calculating when the comprehensive evaluation is required.

(c) Responsibilities Reviewed.  The evaluation shall include review of the faculty member's professional responsibilities in teaching, research, service, patient care, and administration. Institutional policies shall detail the criteria and factors to be evaluated.

(d) Notice of Evaluation.  Reasonable individual notice of at least six months of intent to review shall be provided to a faculty member.

(e) Material Submitted.  The faculty member being evaluated shall submit a curriculum vita, including a summary statement of professional accomplishments, and shall submit or arrange for the submission of annual reports and teaching evaluations. The faculty member may provide copies of a statement of professional goals, a proposed professional development plan, and any other additional materials the faculty member deems appropriate.

(f) Review of Evaluation.  In accordance with institutional policy, initial evaluation of the faculty member's performance may be carried out by the department, department chair (or equivalent), dean, or peer review committee, but in any event must be reported to the chair (or equivalent) and dean for review. Evaluation shall include review of the current curriculum vita, student and any peer evaluations of teaching for the review period, annual reports for the review period, and all materials submitted by the faculty member.

(g) Peer Review.  Comprehensive periodic evaluation of tenured faculty shall include peer review. The members of peer review committees shall include representatives of the college/school or department and will be appointed, on the basis of their objectivity and academic strength, by the dean or chair in consultation with the tenured faculty in the college/school or

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                **Rule: 31102**

department or pursuant to other process as defined in institutional policies. The faculty member shall be provided with an opportunity to meet with the committee or committees.

(h) Communication of Results.  Results of the evaluation will be communicated in writing to the faculty member, the department chair/dean, the chief academic officer, and the president for review and appropriate action.

(i) Uses.  Possible uses of the information contained in the report include the following:

(1) The evaluation may be used to determine salary recommendations, nomination for awards, or other forms of performance recognition.

(2) For individuals whose performance indicates they would benefit from additional institutional support or a remediation plan, the evaluation shall be used to provide such support or a remediation plan (e.g., teaching effectiveness assistance, counseling, or mentoring in research issues/service expectations). Schools/colleges and/or departments, in consultation with a peer committee, shall monitor individuals receiving such support for evidence of improvement and, if there is insufficient improvement, shall take action under (3) or Section 5.3, below, if appropriate.

(3) Individuals whose performance is unsatisfactory may be subject to further review and/or to appropriate administrative action. Institutional policies shall provide procedures for appeals.

(4) If incompetence, neglect of duty, or other good cause is determined to be present, appropriate disciplinary action may be taken under Section 5.3 below.

5.3  Termination or Other Appropriate Disciplinary Action.  For tenured faculty members for whom incompetence, neglect of duty, or other good cause is found, review to determine if good cause exists for termination under the current Regents' *Rules and Regulations* shall be considered, in

Exhibit 5

accordance with the due process procedures of the Regents' *Rules and Regulations,* Rule 31008. If disciplinary action other than termination is considered appropriate, such faculty members shall have access to procedures that include notice of the specific charges and a hearing prior to the imposition of disciplinary action.

Sec. 6     Follow-up Review.  The acceptance and success of periodic evaluation for tenured faculty will be dependent upon a well-executed, critical process and an institutional commitment to assist and support faculty development. Thus, remediation and follow-up review for faculty, who would benefit from such support, as well as the designation of an academic administrator with primary responsibility for monitoring such needed follow-up activities, are essential.

## 3.    Definitions

None

## 4.    Relevant Federal and State Statutes

*Texas Education Code* Section 51.942– Performance Evaluation of Tenured Faculty

## 5.    Relevant System Policies, Procedures, and Forms

Regents' *Rules and Regulations,* Rule 30501 – Employee Evaluations

Regents' *Rules and Regulations,* Rule 31008 – Termination of a Faculty Member

Model Policy developed by U. T. System Faculty Advisory Council

## 6.    Who Should Know

Administrators
Faculty

## 7.    System Administration Office(s) Responsible for Rule

Office of Academic Affairs
Office of Health Affairs

## 8.    Dates Approved or Amended

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 31102**

February 9, 2012
December 10, 2004

**9.      Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
__Rules and Regulations of the Board of Regents__                    __Rule: 40101__

1.      **Title**

        Faculty Role in Educational Policy Formulation

2.      **Rule and Regulation**

        Sec. 1      Board Commitment.  The Board of Regents will devote its best
                    efforts to making all of the institutions of The University of Texas
                    System of the "first class," as the Texas Constitution directs in
                    Article VII, Section 10. The Board will be guided in general by
                    the best practices of the top universities in the United States
                    and abroad, especially by the best practices of state universities
                    in the United States.

        Sec. 2      Advice on Board Policies.  The Board of Regents will ordinarily
                    seek the advice of the faculty on important matters of academic
                    policy.

        Sec. 3      General Authority.  Subject to the authority of the Board of
                    Regents and subject further to the authority that the Board has
                    vested in the various administrative officers and subdivisions of
                    the System, the faculties of the institutions regularly offering
                    instruction shall have a major role in the governance of their
                    respective institutions in the following areas:

                    3.1      General academic policies and welfare.
                    3.2      Student life and activities.
                    3.3      Requirements of admission and graduation.
                    3.4      Honors and scholastic performance.
                    3.5      Approval of candidates for degrees.
                    3.6      Faculty rules of procedure.

        Sec. 4      Necessity of Approval by Regents.  Legislation recommended
                    by an institutional faculty, or legislative body thereof, requiring
                    approval of the Board of Regents, shall not be effective unless
                    and until approved by the Board. Such legislation by a college
                    or school faculty shall not be presented to the Board until it has
                    been approved by the institutional faculty, either directly or
                    through its legislative body, and has received the consideration
                    and recommendation of the institutional president, the
                    appropriate Executive Vice Chancellor, the Deputy Chancellor,
                    and the Chancellor. The faculty affected will be notified by
                    the Board, through administrative channels, of its action on
                    recommended faculty legislation.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**          **Rule: 40101**

Sec. 5    Approval of Degree Candidates.  It shall be the duty of the several institutional faculties to recommend approval or disapproval of all candidates for degrees. This duty may be delegated by affirmative vote of the institutional faculty, or its legislative body, to the respective deans or other appropriate official. Should this duty not be delegated, the institutional registrar, or his or her equivalent, shall furnish to the members of the institutional faculty a complete list of the degree candidates for recommendation.

Sec. 6    List of Degree Candidates.  The institutional registrar, as soon as possible after each commencement, shall provide the secretary of his or her institutional faculty, or its legislative body, with a complete list of all successful degree candidates.

3.    **Definitions**

None

4.    **Relevant Federal and State Statutes**

Texas Constitution Article VII, Section 10 – Establishment of University

5.    **Relevant System Policies, Procedures, and Forms**

None

6.    **Who Should Know**

Administrators
Faculty

7.    **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

8.    **Dates Approved or Amended**

Editorial amendment to Section 4 made on July 13, 2015
December 10, 2004

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 40101**

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40201**

1.      **Title**

        Registered Organizations

2.      **Rule and Regulation**

        Sec. 1      Procedures for Registration.  Each institution shall adopt
                    procedures for the registration of faculty, staff, and student
                    organizations at that institution. The period of registered status
                    of an organization shall not exceed one academic year and
                    such status shall automatically terminate at the end of each
                    academic year; provided, however, an organization previously
                    registered as a faculty, staff, or student organization may apply
                    for and be granted registration for subsequent periods of one
                    academic year if it meets all applicable criteria in effect for the
                    period for which registration is sought.

        Sec. 2      Suspension of Registered Status.  A registered faculty, staff, or
                    student organization shall be subject to all applicable rules and
                    regulations of the institution and The University of Texas
                    System. Action taken by or on behalf of a registered faculty,
                    staff, or student organization that results in a violation of such
                    rules and regulations is subject to disciplinary action that may
                    result in the suspension or revocation of the registered status of
                    the organization.

        Sec. 3      Membership Restricted.  No organization may become
                    registered or remain registered at an institution as a faculty,
                    staff, or student organization unless the membership of the
                    organization is restricted to the faculty, staff or students of that
                    institution.

                    3.1      At the time of application for registration and at the
                             beginning of each semester that an organization is
                             registered as a faculty, staff, or student organization,
                             each such organization shall file with the appropriate
                             officer at the institution a statement that the organization
                             does not presently have, nor during any period of
                             registration will it have, as a member any person who is
                             not a student, faculty or staff member at the institution.

                    3.2      If the president of the institution, or his or her designee,
                             determines that the statement filed above is false,
                             registration shall be denied. If the president, or his or her
                             designee, later determines that statements made by an

                                                                        **Page 1 of 3**

                                            **Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents               Rule: 40201**

organization in its application for registration have become false during a registration period, the organization's registration shall be cancelled.

Sec. 4    Required Contact Information.  Each application for registration as a faculty, staff, or student organization shall be accompanied by a complete list of the names and addresses of all officers of the organization as well as all person(s) authorized to speak for, represent, or receive official notices, directives, or instructions from the institution on behalf of the organization. This information shall be updated by the organization as necessary during any period of registration. If at any time during a period of registration it is determined that the organization's required contact information is not current, the organization shall be notified of the deficiency. If the organization fails to update its information within 10 days of notification, the organization's registration shall be cancelled unless good cause is shown for an extension of deadline.

Sec. 5    Prohibition.  A registered faculty, staff, or student organization may state that its membership is composed of the faculty, staff or students of an institution, but it shall not suggest or imply that it is acting with the authority or as an agency of the institution. A faculty, staff or student organization shall not use the name of an institution or the name of The University of Texas System as a part of the name of the organization, and it shall neither display the seal of either an institution or The University of Texas System in connection with any activity of the organization nor use such seal or seals as part of any letterhead, sign, banner, pamphlet, or other printed material that bears the name of the organization.

3.    **Definitions**

None

4.    **Relevant Federal and State Statutes**

None

5.    **Relevant System Policies, Procedures, and Forms**

None

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 40201**

**6.     Who Should Know**

   Faculty
   Staff
   Students

**7.     System Administration Office(s) Responsible for Rule**

   Office of Academic Affairs
   Office of Health Affairs

**8.     Dates Approved or Amended**

   December 10, 2004

**9.     Contact Information**

   Questions or comments regarding this Rule should be directed to:

   - bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40301**

1.    **Title**

      General Admission Policy

2.    **Rule and Regulation**

      Sec. 1    Policy.  The institutions of The University of Texas System will
                make maximum use of resources, consistent with standards of
                appropriate accrediting bodies and enrollment and admissions
                policies approved by the Board of Regents, to admit and
                educate as many qualified students as possible.

3.    **Definitions**

      None

4.    **Relevant Federal and State Statutes**

      *Texas Education Code* Section 51.352 – Responsibility of Governing
      Boards

5.    **Relevant System Policies, Procedures, and Forms**

      None

6.    **Who Should Know**

      Administrators
      Students

7.    **System Administration Office(s) Responsible for Rule**

      Office of Academic Affairs
      Office of Health Affairs

8.    **Dates Approved or Amended**

      December 10, 2004

9.    **Contact Information**

      Questions or comments regarding this Rule should be directed to:

      - bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                Rule: 40302**

1.      **Title**

        Provisional Admission Policy

2.      **Rule and Regulation**

        Sec. 1    Institutions Covered by Policy.  The Provisional Admission
                  Program for freshmen shall apply to all of The University of
                  Texas System four-year general academic institutions, with the
                  exception of The University of Texas at Austin. Prospective
                  students interested in admission to U. T. Austin should refer to
                  U. T. Austin's Coordinated Admission Program in Regents'
                  *Rules and Regulations*, Rule 40305 and U. T. Austin's Summer
                  Enrollment Plan in Rule 40306.

        Sec. 2    Prospective Enrollees.  Any Texas resident may enter any U. T.
                  System institution regardless of his or her high school record or
                  score on the Scholastic Aptitude Test (SAT) or American
                  College Test (ACT) provided that he or she has graduated from
                  an accredited high school with the required units and subjects
                  as prescribed by the institution.

        Sec. 3    Semesters to Enroll.  Generally, provisional admission students
                  may enroll initially in the summer session (both summer terms)
                  or the spring semester following the student's graduation from
                  high school provided the student has not previously enrolled in
                  credit courses in any other institution of higher education
                  following high school graduation. However, The University of
                  Texas at El Paso has, with concurrence of the Board of
                  Regents, admitted provisional students in the fall semester
                  since 1973. Also, a fall semester program, called the Academic
                  Enhancement Program, was approved for The University of
                  Texas at Arlington in 1981.

        Sec. 4    Minimum GPA.  The student who demonstrates an ability to
                  perform college level work by achieving a GPA of 2.0 or above
                  during the entire summer session (both summer terms) or
                  during the spring semester may be admitted as a regular
                  university student in subsequent semesters. Students who
                  achieve a GPA of at least a 1.5 in their first semester or summer
                  session (both summer terms) may be allowed to continue for the
                  next semester or summer session. At the conclusion of the
                  second period of enrollment, the student must have achieved a
                  cumulative GPA of 2.0 or above to continue in the institution. An
                  institution may establish higher grade point average

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40302**

requirements or adopt provisional admission enrollment limits based on institutional enrollment management needs or capacity by including such provisions in the institutional General Admissions Policies for approval by the Board of Regents.

Sec. 5    Academic Advisement.  Each institution will provide some means of academic advisement or counseling for provisional students to enhance their chances of success.

Sec. 6    Adequate Record Keeping.  Each institution will maintain an adequate system of record keeping on provisional students for the purpose of evaluating their academic performance.

Sec. 7    Deviations from Guidelines.  Any deviations from these basic guidelines will require approval by the Board of Regents as a part of general campus admissions policy statements.

3.    **Definitions**

None

4.    **Relevant Federal and State Statutes**

*Texas Education Code* Section 51.352 – Responsibility of Governing Boards

5.    **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 40305 - Coordinated Admission Program

Regents' *Rules and Regulations,* Rule 40306 - Summer Enrollment Plan

6.    **Who Should Know**

Administrators
Students

7.    **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 40302**

8.      **Dates Approved or Amended**

        December 10, 2004

9.      **Contact Information**

        Questions or comments regarding this Rule should be directed to:

        • bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents** **Rule: 40303**

1. **Title**

   Admissions Procedures for U. T. System Institutions

2. **Rule and Regulation**

   Sec. 1   Policy.  It is the policy of The University of Texas System Board of Regents that U. T. System institutions implement admissions policies and establish admissions criteria and processes in a manner that is as fair and transparent as possible to ensure that integrity in the admissions process is upheld.

   Sec. 2   Establishing Admission Policies.  *Texas Education Code* Section 51.352 assigns responsibility to governing boards to "set campus admission standards consistent with the role and mission of the institution and considering the admission standards of similar institutions. . . ." In addition, Chapter 51 (Subchapter U) establishes guidelines for admission of freshman students and requires that institutions of higher education adopt guidelines for admission of students to other programs. The policies governing admission to academic programs shall be designed to maximize opportunity and access for all Texans, within parameters established by applicable laws.

   2.1   Automatic Admission.  Each covered institution shall adopt a policy for admission of first-time freshman students that incorporates criteria consistent with *Texas Education Code* Sections 51.803, 51.804, and 51.805. The admissions policy must provide, in keeping with regulations promulgated by the Texas Higher Education Coordinating Board, for automatic admission for students who have graduated in the top ten percent of the graduating class from an accredited Texas high school. For students who do not qualify for automatic admission, the policy shall specify the criteria that will be considered in making the admission decision.

   2.2   Graduate and Professional School Admissions.  Each covered institution shall also adopt policies for admission of transfer students and for admission to graduate, postgraduate, and/or professional programs. The factors to be considered in graduate and professional school admissions decisions must be consistent with *Texas Education Code* Section 51.842.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40303**

2.3     Delegation to President.  In keeping with the requirement of *Texas Education Code* Section 51.804 that governing boards determine for each academic year whether automatic admission to a general academic institution shall be granted to students who graduate in the top 25 percent of their graduating class, the responsibility for this annual determination is delegated to the president of each institution covered by this policy. If a change in the admissions policy were proposed, Board of Regents' approval would follow established procedures for administrative approval and inclusion in the Consent Agenda.

Sec. 3    Fairness and Transparency in the Admissions Process for Prospective Students.

3.1     Publicly Available Information.  Each U. T. System institution shall identify and make readily available to prospective students all criteria used in its admissions review process. Such criteria shall be publicly available on the institution's website through written policies that outline the admissions process and expectations for all admissions categories including freshmen, transfer students, graduate students, and professional school students. The policy shall include descriptions of the process and factors to be considered in the admissions review process including those used in holistic review processes. The information shall also include deadlines, notification dates, and response dates.

3.2     Each institution may tailor its process to the specific needs of a campus and student population; however, the following elements shall be common to all academic institutions:

3.2.1   A prospective student shall apply to an institution using an accepted application method for the relevant degree program.

3.2.2   The applicant shall submit required information such as transcripts, test scores, letters of recommendation, or other information identified as required or as optional.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**          **Rule: 40303**

3.2.3   Applicants who are automatically admitted by law or approved institutional policy shall be promptly notified of admission.

3.2.4   Applicants whose files are incomplete shall be notified of missing information.

3.2.5   An applicant with a complete file who is not automatically admitted by law or approved institutional policy may be reviewed through a holistic process.

3.2.6   Holistic review shall be conducted in accordance with an institution's approved and published process and evaluation criteria, considering the relevant factors identified for a particular degree or program. An applicant admitted after holistic review shall be notified in accordance with published notification policies.

3.2.7   Because the admissions process is a rolling process, an applicant may be admitted at any time after the applicant's file is complete.

3.2.8   Any applicant who is not qualified for admission or who has no realistic chance of admission shall be notified that he or she has not been admitted.

3.2.9   An admissions file may be flagged to manage the timing of an admissions decision or to assist with administration of the admissions process, but not in any way that would manifest advantage for a particular applicant in the holistic review process.

Sec. 4   Consistency and Fairness in the Holistic Review Process. Admissions decisions shall involve collaborative decision-making among multiple qualified, well-trained parties. Admissions decisions shall be based on the substantive information contained within the applicant file. It is the responsibility of admissions officials, deans, the provost, and the president to protect the admissions staff from undue influence. The president shall provide leadership to ensure compliance with policies and rules.

**The University of Texas System**
**Rules and Regulations of the Board of Regents**              **Rule: 40303**

Sec. 5    Undue Influence and Conflicts of Interest.  To uphold the integrity of the admissions process, undue influence and conflicts of interest should be eliminated. It is acknowledged that institutional leaders and other personnel may receive third-party inquiries, calls, emails, letters, or other forms of communication about a prospective student that may range from providing substantive information about an applicant to an attempt to unduly influence or coerce decision makers into admitting an applicant. The presidents, provosts, and deans of U. T. System institutions shall ensure that the admissions offices are shielded from attempted undue influence and shall handle such communications as follows:

5.1    Letters, emails, or other communications that provide substantive, relevant information about an applicant. Communications that provide credible, substantive input about an applicant shall be forwarded to the appropriate admissions office or staff member. The individual forwarding such communication shall make clear that in providing information, there is no request for special treatment of the applicant or attempt at undue influence or favoritism toward the applicant. Presidents shall provide leadership to ensure that admissions officers understand that they are to independently evaluate recommendation letters based on the substance of the letter and not the status of the author or the fact that the letter was forwarded by the president or other university official. The person who originally received the communication may respond to those who provided the information with an acknowledgement that the information has been received and forwarded to the relevant office for consideration.

5.2    Letters, emails, or other communications that provide a general endorsement of an applicant without containing substantive information pertinent to evaluating the relevant qualities, character, or ability of an applicant.  If the communication does not contain substantive information pertinent to the qualities, character, or ability of the applicant, the communication shall not be forwarded and shall not become part of the applicant file. The individual receiving the communication may acknowledge receipt without referencing any further specific action regarding the communication or the applicant.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40303**

5.3    Letters, emails, or other communications from government officials.  Government officials are often asked by constituents to write letters for or otherwise communicate on behalf of applicants. Communications from government officials shall be treated the same as communications from others. Communications that provide credible, substantive input about an applicant shall be forwarded to the appropriate admissions office or staff member. Admissions officials shall give no consideration to any relationship they or others at the institution may have with a particular government official. As with letters from others, the individual forwarding such communication shall make clear that in providing information, there is no request for special treatment of the applicant or attempt at undue influence or favoritism toward the applicant.

5.4    Third-party inquiries and requests for status updates of applicants.  Updates on applicants shall not be provided to third parties. Only the applicant may be provided updates and notified of the final admission decision.

5.5    Letters, emails, or other communications that go beyond providing information about the applicant or are designed to influence or coerce admissions decisions.  There are occasions in which calls, letters, and inquiries are not confined to substantive information relevant to the applicant's qualifications or general endorsements. These may range from citing long service to the institution by a relative or friend of the applicant to more far-ranging contributions. One way or another, such communications attempt to influence admissions outcomes. In these instances, institutional leaders shall shield admissions staff from undue influence or coercion. Depending upon the nature of the communication, the institutional leader shall act as follows:

5.5.1    Letters, emails, or other communications indicating that special consideration is owed because of past action.  An outside party may indicate that because of past actions of those who have some relationship with the applicant the institution owes the applicant special consideration. In such instances, the

**Exhibit 5**

communication shall not be forwarded to the admission process and shall not become part of the applicant file. The person receiving the communication may acknowledge the communication, according to the circumstances, but will do so neutrally with respect to the prospect of admission.

5.5.2   Letters, emails, and other communications indicating that special consideration is owed and there exists a threat of action or promise of quid pro quo.  There are very rare circumstances in which a communication may contain a threat regarding consequences of a negative admissions decision or a promise related to a positive decision. In such cases, institutional leadership shall respond with a firm reminder that only information pertinent to the qualifications of the candidate shall be considered in the applicant file. The communication shall not be forwarded to the admissions process or become part of the applicant file. If the attempt to influence is egregious, the institution's president shall inform and confer, in a timely manner, with the Chancellor and the Vice Chancellor and General Counsel.

5.5.3   Inappropriate internal influence.  Institutional personnel shall not allow their personal relational considerations to influence admissions decisions. If credible suspicion exists of inappropriate relational considerations influencing admissions decisions, such suspicions must be reported to the institutional or U. T. System compliance office or hotline.

Sec. 6   Presidents' Discretion to Act Optimally and Properly in the Best Interest of the Institution within the Holistic Admission Process. Since it is ultimately the responsibility of the president to operate in the best interest of the institution, he or she may, on very rare occasions, have cause to admit a qualified student who might not otherwise be admitted through the normal process. It is the policy of the U. T. System that such admission decisions be very rare, be limited only to students who are qualified to pursue the degree for which admission is sought, be defensible

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40303**

decisions that take into consideration the overall best interests of the institution, be consistent with the requirements of Section 5 on Undue Influence and Conflicts of Interest, and be reported by the president to the Chancellor at the conclusion of the admissions cycle. The expectation is that any such decision shall only be made under situations of highest institutional importance consistent with the "very rare" concept. In no case shall such an admissions decision displace another student who would otherwise be admitted.

For cases in which the president decides to admit a qualified applicant counter to the recommendation of the normal admissions process, the president shall:

(1) Discuss the merits of the applicant's admission case with appropriate admissions officials prior to making a decision to ensure that the president fully understands the admissions case, and

(2) Be required to meet with the Chancellor at the conclusion of the admissions cycle to discuss the process employed, the rationale, all personal or institutional relational considerations in each decision, and to explain why the decision was in the best interest of the institution.

It shall be the responsibility of the Chancellor to ensure the decisions of an institution's president are reasonable in terms of process, the number of such admissions decisions is consistent with the policy of very rare, and the rationale for such decisions is consistent with the requirement for highest institutional importance. The Chancellor shall report to the Board of Regents any significant deviation from this policy. The rationale for admitting a student outside the normal process shall be documented by the president.

Sec. 7    Responsibility for Admissions to Certain Degree Programs. Deans of graduate and professional schools, by presidential delegation, are principally responsible for admissions to the school's degree programs. The roles, duties, and responsibilities of the deans in the graduate and professional schools will mirror those designated for the president. The president will require an annual face-to-face report from the provost on admissions cases that were external to the normal admissions process. In all cases, decisions at any level that would admit a student outside of the normal admissions process

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**          **Rule: 40303**

must be reported by the president to the Chancellor and follow the procedures outlined above.

Sec. 8    Establishing Scholarship Award Policies. *Texas Education Code* Section 51.809 requires that institutions of higher education adopt guidelines for awarding of competitive scholarships and fellowships. For the award of institutional competitive scholarships and fellowships, each covered institution shall adopt policies that identify the criteria to be considered in making the awards. The policies governing the award of institutional competitive scholarships and fellowships shall be designed to maximize opportunity and access for all Texans, within parameters established by applicable laws.

Sec. 9    Inclusion of Policy Changes in Catalog.  The admissions policies and criteria for award of scholarships and fellowships shall be included in institutional catalogs and shall be available to the public on request.

9.1    Changes in admission policies must be published in the institutional catalog and made available to the public not later than one year before the date that applications for admission are first considered.

9.2    Changes in the factors to be considered for the award of competitive scholarships/fellowships for a graduate or professional program must be published in the institutional catalog and made available to the public not later than one year before the date that applications for competitive scholarships/fellowships are first considered. Changes in factors to be considered for the award of all other competitive scholarships/fellowships must be published in the institutional catalog and made available to the public prior to the deadline for submission of applications.

Sec. 10   Board Approval.  Regental approval of the initial policies and subsequent amendments, if any, shall be made via the Consent Agenda following administrative review and approval by the appropriate Executive Vice Chancellor for inclusion in the institutional catalog(s).

3.    **Definitions**

None

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40303**

4.      **Relevant Federal and State Statutes**

*Texas Education Code* Section 51.352 – Responsibility of Governing Boards

*Texas Education Code* Sections 51.803 – Automatic Admissions: All Programs

*Texas Education Code* Section 51.804 – Additional Automatic Admissions:  Selected Institutions

*Texas Education Code* Section 51.805 – Other Admissions

*Texas Education Code* Section 51.809 – Scholarships and Fellowship Awards

*Texas Education Code* Section 51.842 – Admission and Scholarship Factors for Graduate and Professional Programs

5.      **Relevant System Policies, Procedures, and Forms**

U. T. System Proposed Admissions Policy for Academic Institutions – August 2015

6.      **Who Should Know**

Administrators
Students

7.      **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

8.      **Dates Approved or Amended**

August 20, 2015
Editorial amendments to Sections 1.3 and 4 made April 12, 2012
Editorial amendments made to Section 3 and Number 4 on
     September 16, 2008
December 10, 2004

9.      **Contact Information**

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 40303**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                **Rule: 40304**

1.      **Title**

        Affirmative Action Plans

2.      **Rule and Regulation**

        Sec. 1     Authorization to Develop Plans.  Each institution is authorized to develop and propose plans regarding whether to consider an applicant's race and ethnicity, as part of the institution's admissions or financial assistance policies, in accordance with the standards enunciated in the United States Supreme Court cases of *Grutter v. Bollinger* and *Gratz v. Bollinger*. Initial responsibility for developing and proposing such admissions and financial assistance policies may be further delegated within each institution to colleges, departments, or other programs.

        Sec. 2     Inadequacy of Race-Neutral Alternatives.  No institution or program shall propose to consider race or ethnicity unless it finds, after serious and good faith consideration, that race-neutral alternatives are inadequate. This consideration may include the degree of diversity attainable with race-neutral methods and the impact on other academic objectives of exclusive reliance on those race-neutral methods.

        Sec. 3     Development of a Plan.  Any institution or program that proposes to consider race or ethnicity shall develop a written plan. Any such plan must provide for individualized and holistic review of applicant files, in which race and ethnicity are among a broader array of qualifications and characteristics considered. Any such plan must also provide for periodic review of whether, and to what extent, the plan is still needed or needs revisions.

        Sec. 4     Approval of Plan.  Any proposal for admissions or financial assistance policies that considers race and ethnicity among an array of qualifications and characteristics, and any subsequent revisions to such policies, must be reviewed and approved by System Administration's Office of General Counsel, and by the appropriate Executive Vice Chancellor, prior to implementation.

        Sec. 5     Review of Policy.  The Board of Regents shall review the policy expressed herein every five years.

3.      **Definitions**

        None

_____

                                                        **Page 1 of 2**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40304**

4.    **Relevant Federal and State Statutes**

None

5.    **Relevant System Policies, Procedures, and Forms**

None

6.    **Who Should Know**

Administrators
Admission Officers
Students

7.    **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

8.    **Dates Approved or Amended**

Editorial amendment to Sec. 5 made March 3, 2016
Editorial amendment to Sec. 5 made February 12, 2008
December 10, 2004

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

---

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40305**

1.    **Title**

      Coordinated Admission Program

2.    **Rule and Regulation**

      Sec. 1    Program.  Under the Coordinated Admission Program (CAP), a Texas resident high school graduate applying for freshman admission who is not offered regular admission to The University of Texas at Austin is given the opportunity to attend one of the other University of Texas System general academic institutions cooperating in the program to complete certain minimum requirements during the freshman year.

      Sec. 2    Requirements.  The requirements in effect for freshman applicants applying for admission for Fall Semester 2005 are:

                2.1    Grade Point Average.  The minimum grade point average requirement for the prescribed 30 semester credit hours of course work will be 3.2 rather than 3.0.

                2.2    Mathematics Course.  A mathematics course beyond Math 301 (college algebra) will be required as part of the prescribed 30 semester credit hours of course work.

                2.3    Short Semesters.  Short semester courses may not be counted in the prescribed 30 semester credit hours of course work.

                2.4    Deadline.  Applicants offered admission into CAP must accept by a June 1 deadline rather than the current July 1 deadline.

                2.5    Admission Requirements.  The other U. T. System institutions participating in CAP need to accept for participation only those applicants offered CAP who meet the regular minimum admission requirements of the respective institution.

      Sec. 3    Transferring or Remaining.  If the student successfully completes these requirements, he or she is guaranteed the opportunity to transfer to U. T. Austin at the beginning of the sophomore year. A successful CAP student also may elect to remain at the campus at which he or she completed the freshman year. A CAP student who does not successfully

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40305**

complete the minimum requirements for guaranteed transfer to
U. T. Austin may remain at the freshman-year campus if he or
she is in good academic standing.

3.    **Definitions**

None

4.    **Relevant Federal and State Statutes**

*Texas Education Code* Section 51.352 – Responsibility of Governing
Boards

5.    **Relevant System Policies, Procedures, and Forms**

None

6.    **Who Should Know**

Administrators
Admission Officers
Students
Prospective Students

7.    **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

8.    **Dates Approved or Amended**

Editorial amendment made to Section 2.5 on March 10, 2016
December 10, 2004

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40306**

1.      **Title**

        Summer Enrollment Plan

2.      **Rule and Regulation**

        Sec. 1    Applicability.  This rule applies only to The University of Texas
                  at Austin. Summer enrollment is covered for other institutions
                  under the Regents' *Rules and Regulations*, Rule 40302, which
                  pertains to provisional admission.

        Sec. 2    Background.  To better control overall student enrollment while
                  admitting quality students, the Board of Regents approved a
                  Summer Enrollment Plan for U. T. Austin. The Plan, effective
                  Summer 2001, is designed to yield approximately 600 regularly
                  admitted students, as set out below. The top students who are
                  not offered regular Fall Admission would be offered the Summer
                  Enrollment Plan. The revised Program will be evaluated at the
                  end of the third year.

        Sec. 3    Program.  Students will enroll in typical first-semester freshman
                  courses and be held to the same GPA requirements placed on
                  students entering in the fall.

3.      **Definitions**

        None

4.      **Relevant Federal and State Statutes**

        *Texas Education Code* Section 51.352 – Responsibility of Governing
        Boards

5.      **Relevant System Policies, Procedures, and Forms**

        Regents' *Rules and Regulations,* Rule 40302 – Provisional Admission
        Policy

6.      **Who Should Know**

        Administrators
        Faculty

7.      **System Administration Office(s) Responsible for Rule**

_____

                                                            **Page 1 of 2**
**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40306**

      Office of Academic Affairs
      Office of Health Affairs

**8.**    **Dates Approved or Amended**

    December 10, 2004

**9.**    **Contact Information**

    Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 40307**

1.      **Title**

        Academic Program Approval Standards

2.      **Rule and Regulation**

        Sec. 1      Overarching Principles.  The standards used for review and approval of academic program proposals are derived from three overarching principles that guide decisions about program goals, design, and implementation at The University of Texas System institutions. These principles are:

                    1.1      Mission.  New university degree and certificate programs should be consistent with the higher education goals and mission of the State of Texas, The U. T. System, and the offering institution. This principle has implications not only for which programs should be offered by U. T. System institutions, but also for how they are designed and delivered so as to be responsive to the needs of students, parents, and the private and public sectors.

                    1.2      Quality.  U. T. System degree and certificate programs should be of excellent quality. Program design, resources, and implementation plan, judged critically in view of the stated goals for a particular program, should compare favorably with State, national and international standards and competing programs. In general, they should exceed minimum standards of the Texas Higher Education Coordinating Board or appropriate accrediting bodies.

                    1.3      Efficient Use of Resources.  Academic programs at institutions of the U. T. System should represent good investments and efficient use of public and private resources. Program choice, design, and implementation plans should reflect wise use of institutional and inter-institutional or shared resources.

        Sec. 2      Standards.  Proposed new academic degree or certificate programs must provide good evidence of meeting the following standards:

                    2.1      Standards Relating to Goals, Need, Fit

                             (a) Program goals and educational objectives are clear.

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40307**

(b) Connections between proposed program goals and State and U. T. System goals and mission are strong and convincing.

(c)  Program goals advance institutional mission and strategic plan.  Program is on the approved Table of Programs.

(d) Program would meet a well-documented unmet need related to present or future manpower or social needs or regional priorities.

(e) Program complements and builds upon existing university programs, strengths, and resources.

2.2     Standards for Quality of Implementation

(a) Design of the degree or certificate program reflects understanding of state-of-the-art in the discipline.

(b) Resources, including faculty, facilities, special equipment, field placement sites for internships, library and information access, and others as necessary, are adequate to deliver a program of excellent quality, meeting or exceeding Southern Association of Colleges and Schools (SACS) standards and those of other professional accrediting bodies where applicable.

(c) Faculty responsible for program design and delivery have appropriate, relevant content expertise, scholarship records, and other professional experience and credentials.

(d) New graduate programs are built upon demonstrated competence in related areas at the undergraduate or, where appropriate, master's level.

(e) Program implementation and delivery plans are responsive to student needs and supportive of student retention and graduation, in light of program goals and resource availability.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40307**

(f)  The program proposal includes a plan for periodic program evaluation focusing on the program objectives, productivity, faculty and resources, changes in environment such as competition and delivery modes, student outcomes, retention, and graduation.

(g)  An efficient administration plan for the program is described with clear accountability and appropriate roles for faculty committees and unit administrators.

(h)  Interdisciplinary, cross-departmental, or cross-college programs are supported by administrative reporting structures likely to preserve interdisciplinary cooperation.

2.3    Standards for Costs and Revenues

(a)  Program proposal presents clear, logically consistent estimates of program costs and revenues.

(b)  Prospective student demand adequate for an efficient program is convincingly demonstrated, with specific attention to competing programs, other providers, and other delivery systems.

(c)  Proposal establishes growth potential to generate adequate resources to support program costs from State formula funding sources after the first three years and, where appropriate, from non-State sources.

(d)  Available inter-institutional, shared resources are utilized where appropriate.

(e)  Overall program costs are justifiable in light of potential program benefits and impact.

2.4    Compliance Standard

(a)  Program proposal complies in content and format with the Texas Higher Education Coordinating Board rules and instructions for program authorization.

**The University of Texas System**
**Rules and Regulations of the Board of Regents              Rule: 40307**

2.5     Additional Standards for Doctoral Programs

(a) There is a sufficient base of sponsored research programs in place to support student and faculty research.

(b) Proposal presents convincing plans for recruitment of a critical mass of very talented students, carefully screened in accordance with the goals of the program.

(c) Proposed program addresses preparation for graduates' future roles of teaching, research or creative endeavor, and work in nonacademic professional settings as appropriate.

(d) Appropriate student support is available and/or there is a convincing plan for development of future support.

(e) Because of the high level of resource requirements for doctoral programs, particularly rigorous attention must be applied to almost all approval standards in this document.

Sec. 3     Approvals.

3.1     Executive Vice Chancellor Approval.  The Executive Vice Chancellor for Academic Affairs or Health Affairs approves (1) nonsubstantive program change requests and (2) substantive certificate, baccalaureate, and master's degree requests from respective general academic or health-related institutions.

3.2     Board Approval.  Doctoral programs or other substantive proposals not meeting the criteria for approval by the Executive Vice Chancellors for Academic Affairs or Health Affairs must be approved by the Board of Regents' Academic Affairs or Health Affairs Committee and forwarded to the Board of Regents for final approval.

3.3     Reporting.  The Offices of Academic Affairs and Health Affairs will provide annually to the Board of Regents a list of academic program approvals made by the respective Executive Vice Chancellors.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**          **Rule: 40307**

Sec. 4    Changes in Degree Requirements.  Changes in degree
requirements shall not become effective until approved by the
Board of Regents and published in the appropriate catalog;
however, students may be given the benefit of any action
reducing or modifying the requirements for their degrees
immediately upon Board approval.

3.    **Definitions**

Nonsubstantive Program Change Requests – Generally meet the
following criteria: (1) no implications for changes in institutional role and
scope, (2) no significant new costs, (3) no issues of unnecessary
duplication with programs at other institutions, and (4) potential for high
quality programming obvious from institution's previous experience in the
same or closely treated subject field.

Substantive Baccalaureate and Master's Degree Requests that are
Eligible for Staff-level Approval by the Commissioner of Higher
Education – Generally meet the following criteria: (1) within the approved
Table of Programs, (2) of high quality and meet SACS and other
accrediting agency standards, (3) adequate practicum placement sites are
available, if applicable, (4) demonstrated student interest and job market
need, (5) no program duplication issues, (6) five year cost is less than $2
million, and (7) no new special item funding would be required.

4.    **Relevant Federal and State Statutes**

None

5.    **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 40311 – Graduate Education
(Section 7, Milestone Agreement Form)

6.    **Who Should Know**

Administrators
Faculty

7.    **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**         **Rule: 40307**

8. **Dates Approved or Amended**

   July 14, 2006
   December 10, 2004

9. **Contact Information**

   Questions or comments regarding this Rule should be directed to:

   - bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 40309**

1.    **Title**

      Administration of Courses Offered in Shortened Format

2.    **Rule and Regulation**

      Sec. 1    Purpose.  To delegate to the president of an institution the
                responsibility for developing policies and procedures that ensure
                courses offered in a shortened format are of the same quality
                and rigor as courses offered during a normal semester or
                summer session.

      Sec. 2    Delegated Responsibility.  The president of each institution shall
                cause to be developed such additional policies and procedures
                as are necessary to assure compliance with the intent and spirit
                of this rule for the administration of courses offered in shortened
                formats. These additional requirements should address specific
                standards such as minimum class contact hours per credit hour
                and the minimum duration per credit hour among others. Such
                requirements will be published in the institution's *Handbook of
                Operating Procedures* following normal approval procedures.

      Sec. 3    Oversight of Courses.  The president of each institution shall
                designate an individual or individuals who shall have the
                authority to approve the scheduling of courses offered in
                shortened formats. Those so designated shall also be
                responsible for monitoring academic expectations and for the
                scheduling of all such courses and shall maintain records of
                compliance with institutional standards for all such course
                requests considered and approved.

3.    **Definitions**

      Course Offered in Shortened Format.  A course offered in a shortened
      format is any course for which academic credit is given and for which the
      elapsed time from the first class meeting until the last class meeting or
      examination period is less than a normal semester or summer session
      term.

4.    **Relevant Federal and State Statutes**

      None

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 40309**

5.      **Relevant System Policies, Procedures, and Forms**

None

6.      **Who Should Know**

Administrators
Faculty

7.      **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

8.      **Dates Approved or Amended**

December 10, 2004

9.      **Contact Information**

Questions or comments regarding this Rule should be directed to:

bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 40310**

1.      **Title**

        Accessibility of Teacher Certification Courses

2.      **Rule and Regulation**

        Sec. 1    Plan.  Pursuant to *Texas Education Code* Section 54.214(g) the
                  Board of Regents directs the Executive Vice Chancellor for
                  Academic Affairs to work with each of the teacher preparation
                  programs at The University of Texas System general academic
                  institutions to develop and monitor a plan, which includes
                  implementation of timelines and strategies, to make teacher
                  certification courses more accessible to students seeking
                  teacher certification. The plans will consider evening classes,
                  internet classes, or other means approved by the Texas Higher
                  Education Coordinating Board.

3.      **Definitions**

        None

4.      **Relevant Federal and State Statutes**

        *Texas Education Code* Section 54.214(g)– Educational Aides

5.      **Relevant System Policies, Procedures, and Forms**

        None

6.      **Who Should Know**

        Executive Vice Chancellor for Academic Affairs

7.      **System Administration Office(s) Responsible for Rule**

        Office of Academic Affairs

8.      **Dates Approved or Amended**

        December 10, 2004

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40310**

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents**          **Rule: 40311**

1.      **Title**

        Graduate Education

2.      **Rule and Regulation**

        Sec. 1    Responsibility for Graduate Programs.  The academic and
                  health institutions of the U. T. System authorized to offer
                  graduate degrees shall provide and maintain an appropriate
                  faculty and administrative organization for such graduate
                  degrees. The president of each institution of the U. T. System
                  shall be responsible through the appropriate Executive Vice
                  Chancellor and the Deputy Chancellor to the Chancellor, and
                  through him or her, to the Board of Regents for policies and
                  administration of the graduate programs.

        Sec. 2    Program Requirements.  Within the academic institutions, the
                  designation "Graduate School" will be used if (a) there is a
                  minimum of three distinct programs approved for doctoral
                  degrees and 30 such doctoral degrees have been awarded; or
                  (b) there is a minimum of 10 distinct programs approved for
                  master's degrees and 50 master's degrees have been awarded.
                  In institutions that do not meet these requirements, graduate
                  study will be in a "Division of Graduate Studies."

        Sec. 3    Exceptions.  Institutions which offer graduate degrees and elect
                  an administrative organization and designations different from
                  those authorized above may do so only upon the
                  recommendation of the president, the concurrence of the
                  appropriate Executive Vice Chancellor, the Deputy Chancellor,
                  and the Chancellor, and the approval of the Board of Regents.

        Sec. 4    Establishment of Policies and Procedures.  The policies and
                  procedures for staffing and administering the graduate
                  programs at all institutions shall be set forth in the institutional
                  *Handbook of Operating Procedures*. These policies and
                  procedures shall include qualifications for faculty members
                  assigned to teach graduate courses, supervise graduate
                  programs, and advise graduate students.

        Sec. 5    Joint or Cooperative Degree Programs.  Where two or more
                  institutions of the U. T. System are authorized to conduct joint or
                  cooperative degree programs, the presidents of the cooperating
                  institutions shall be authorized to establish, subject to the

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 40311**

approval of the appropriate Executive Vice Chancellor, special procedures and organizations for the administration of such programs.

Sec. 6   Milestone Agreement Form.  Academic departments of institutions within the U. T. System must provide all Ph.D. students with an individualized Milestone Agreement Form. This form should be in an electronic format consistent with Family Educational Rights and Privacy Act (FERPA) policies and shall be provided for the purpose of informing students about the milestones that they will be expected to reach to earn a Ph.D. degree. Students are expected to reach each milestone within the specified time period to make satisfactory progress through the program.

6.1   Required Template.  The Office of Academic Affairs and the Office of Health Affairs shall provide to the institutions a template of those elements of information that must be contained in every form. Departments may add information to the form to fit unique program requirements.

6.2   Implementation Timeline.  Beginning in Fall 2013, a Milestone Agreement Form is to be provided annually to all Ph.D. students.

**3.      Definitions**

Graduate Programs – as the term is used in these *Rules*, does not include the programs that lead to the M.D., D.D.S., M.P.H., Dr. P.H., J.D., LL.M., and M.C.J. degrees, other professional masters and doctoral degrees, or others that may be excluded upon recommendation by the president of the institution and concurrence by the appropriate Executive Vice Chancellor, the Deputy Chancellor, and the Chancellor.

**4.      Relevant Federal and State Statutes**

Family Educational Rights and Privacy Act (FERPA)

**5.      Relevant System Policies, Procedures, and Forms**

None

**6.      Who Should Know**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40311**

      Executive Vice Chancellor for Academic Affairs
      Executive Vice Chancellor for Health Affairs

**7.**      **System Administration Office(s) Responsible for Rule**

      Office of Academic Affairs

**8.**      **Dates Approved or Amended**

      Editorial amendments made April 28, 2016
      Editorial amendments to Sections 1, 4, and Number 3 made July 13, 2015
      November 15, 2012
      December 10, 2004

**9.**      **Contact Information**

      Questions or comments regarding this Rule should be directed to:

         • bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40401**

1.      **Title**

        Assessment, Collection, Delegation, and Waiver of Tuition and Fees

2.      **Rule and Regulation**

        Sec. 1      Published Fees.  Tuition, fees, and other charges will be fixed
                    as prescribed or authorized by statute and the relative debt
                    covenants of the Board and will be published in the institutional
                    catalog with a description of the criteria for any authorized
                    exemptions and waivers.

        Sec. 2      Exemptions and Waivers.  The authority of the Board of
                    Regents to grant exemptions and waivers from tuition, fees, and
                    other charges in accordance with statute, is delegated to the
                    presidents of the institutions.

        Sec. 3      Delegation of Approval of Certain Fees and Charges.  Subject
                    to the obligation of the Board to set fees and charges at levels
                    sufficient to comply with the covenants made in the Master
                    Resolution Establishing the Revenue Financing System and in
                    related agreements and debt instruments entered into or issued
                    thereunder, the Board of Regents delegates to the presidents
                    the authority to assess and collect the following fees and other
                    charges, upon a finding by the president that such fees and
                    other charges and changes to such fees and other charges are
                    required for the fee or other charge to reasonably reflect the
                    actual cost to the institution of the materials or services to be
                    provided. Except for the approval of continuing education
                    course fees, which is delegated directly to the president by Rule
                    40403, the approval authority granted herein is conditioned on
                    prior review and approval by the Executive Vice Chancellor for
                    Academic Affairs or the Executive Vice Chancellor for Health
                    Affairs.
                    1. Fees for Vehicle Registration and Fees and Other Charges
                       associated with parking, as authorized by *Texas Education
                       Code* Sections 51.202(a) and 54.505
                    2. Matriculation Fee, as authorized by *Texas Education Code*
                       Section 54.006(a-1)
                    3. Fees Associated with the Option to Pay Tuition by
                       Installment, as authorized by *Texas Education Code* Section
                       54.007(c)
                    4. Supplemental Fees for coaching or individual instruction, as
                       authorized by *Texas Education Code* Section 54.051(l)

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 40401**

5. Laboratory Fees, as authorized by *Texas Education Code* Section 54.501(a)
6. Incidental Fees, as authorized by *Texas Education Code* Section 54.504 including, but not limited to, course fees
7. Charges and Fees for Certain Payments, related to electronic funds transfer or credit card payment, as authorized by *Texas Education Code* Section 54.5011
8. Fees and Other Charges for rentals, rates, and charges for certain occupancy, services, use and availability of facilities or services including, but not limited to, student housing room and board rates as authorized by *Texas Education Code* Section 55.16
9. Continuing Education Course Fees, as authorized by *Texas Education Code* Section 54.545 and further detailed in Rule 40403.

Sec. 4     Approval of Method of Payment.  The Board of Regents delegates to the presidents of the institutions the authority to collect the payment of tuition, fees, and other charges in accordance with those methods prescribed or authorized by statute.

Sec. 5     Student Fees Associated with CIP Projects.  In accordance with Rule 80301 of these Rules, Board approval of a Capital Improvement Program (CIP) project shall be obtained prior to the call for a student election to authorize new or increased fees to fund the CIP project.

## 3.     Definitions

None

## 4.     Relevant Federal and State Statutes

*Texas Education Code* Section 51.202(a) – Rules and Regulations

*Texas Education Code* Section 54.006(a-1) – Matriculation

*Texas Education Code* Section 54.007(c) – Fees Associated with Option to Pay Tuition By Installment

*Texas Education Code* Section 54.0071 – Authority of Institution to Provide Payment Options for Student with Delayed Financial Aid

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                Rule: 40401**

*Texas Education Code* Section 54.008 – Tuition Rate Set by Governing Board

*Texas Education Code* Section 54.051(l) – Tuition Rates

*Texas Education Code* Section 54.0513 – Designated Tuition

*Texas Education Code* Section 54.501(a) – Laboratory Fees

*Texas Education Code* Section 54.5011 – Charges and Fees for Certain Payments

*Texas Education Code* Section 54.504 – Incidental Fees

*Texas Education Code* Section 54.505 – Vehicle Registration Fees and Other Fees Related to Parking and Traffic

*Texas Education Code* Section 54.545 – Fees for Continuing Education Courses

*Texas Education Code* Section 55.16(c) – Rentals, Rates, and Charges

5.   **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 40403 – Fees for Continuing Education Courses

Regents' *Rules and Regulations,* Rule 80109 – Parking and Traffic Regulations

6.   **Who Should Know**

Administrators
Students

7.   **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

8.   **Dates Approved or Amended**

December 12, 2013
Editorial amendments made to Number 4 on March 6, 2012

**The University of Texas System**
**Rules and Regulations of the Board of Regents**          **Rule: 40401**

November 10, 2011
Editorial amendments made to Section 3 and Number 5 on September 17, 2008
Editorial amendments made to Section 3 on February 15, 2008
August 23, 2007
December 10, 2004

9. **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 40402**

1.      **Title**

        Emergency Student Loan Program for Tuition and Fees

2.      **Rule and Regulation**

        Sec. 1      Introduction.  Pursuant to *Texas Education Code* Section
                    56.053 the Board of Regents is required to adopt rules providing
                    the terms of an emergency student loan program.

        Sec. 2      Eligibility Rules.  The eligibility rules for a student emergency
                    loan program are as follows:

                    2.1     To be eligible for emergency loans, a student must have
                            been accepted for enrollment and be enrolled on at least
                            a half-time basis at the institution.

                    2.2     To be eligible for the emergency loan program a student
                            must face an emergency situation and must not have
                            received loan or grant funds from the Financial Aide
                            Office to pay tuition and fees for the current semester.

                    2.3     Loans to eligible students shall be granted on the basis of
                            the order in which the institution receives applications.

        Sec. 3      Terms.  The terms for a student emergency loan program are as
                    follows:

                    3.1     As long as funds are available in the emergency loan
                            program, an eligible student must be allowed to receive a
                            loan in an amount equal to tuition, required fees, and the
                            cost of textbooks for the courses in which the student is
                            enrolling.

                    3.2     The maximum loan amount per student may not exceed
                            charges for tuition, mandatory fees, and the cost of
                            textbooks unless the institution determines that a lower
                            amount would be in the best interest of the student.

                    3.3     The loan must be evidenced by a written or electronic
                            agreement containing terms approved by The University
                            of Texas System Administration's Office of General
                            Counsel and that provides for either interest at a rate of
                            not less than three percent or more than five percent per

**The University of Texas System**
**Rules and Regulations of the Board of Regents**         **Rule: 40402**

year, or an origination fee of not more than 1.25 percent of the amount of the loan.

3.4    The loan must be repaid within 90 days or five days before the last class day of the semester, in which the student is enrolled, whichever period is shorter. Students enrolled in programs not on a semester basis must repay the loan prior to 30 days before the last class day of the annual academic term in which the loan is made.

**3.    Definitions**

None

**4.    Relevant Federal and State Statutes**

*Texas Education Code* Section 56.053 - Terms; Emergency Tuition and Fee Loans

**5.    Relevant System Policies, Procedures, and Forms**

None

**6.    Who Should Know**

Administrators
Financial Aid Officers
Students

**7.    System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs
Office of General Counsel

**8.    Dates Approved or Amended**

Editorial amendments to Sections 3.1-3.2 made July 27, 2011
December 10, 2004

**9.    Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                     **Rule: 40403**

1.      **Title**

        Fees for Continuing Education Courses

2.      **Rule and Regulation**

        Sec. 1      Authorization.  Institutions are authorized by the Board of
                    Regents in accordance with Section 54.545 of the *Texas
                    Education Code* to charge a reasonable fee to each person
                    registered in an extension, correspondence or other self-
                    supporting course at the institution and to set the fee in an
                    amount sufficient to recover the costs for providing the course.
                    Such courses may not include any course for which the
                    institution collects tuition or receives formula funding.

        Sec. 2      Delegation.  The Board of Regents delegates to the president of
                    the respective institutions the authority and responsibility for
                    approving the amount of the fee to be charged for each course.

        Sec. 3      *Handbook of Operating Procedures*.  Each institution shall adopt
                    provisions in the institutional *Handbook of Operating
                    Procedures* to reflect this policy and to incorporate institutional
                    procedures for the approval process.

3.      **Definitions**

        None

4.      **Relevant Federal and State Statutes**

        *Texas Education Code* Section 54.545 – Fees for Continuing Education
        Courses

5.      **Relevant System Policies, Procedures, and Forms**

        Regents' *Rules and Regulations*, Rule 40401 – Assessment, Collection,
        Delegation, and Waiver of Tuition and Fees

        Regents' *Rules and Regulations*, Rule 40404 – Tuition Rates for Students
        Residing in Certain Counties and States and Attending Certain Institutions

        Regents' *Rules and Regulations*, Rule 40405 – Tuition Rates for
        Undergraduate Students with Excessive Semester Credit Hours

6.      **Who Should Know**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40403**

Administrators

7.    **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

8.    **Dates Approved or Amended**

Editorial amendments made to Number 5 on September 17, 2008
December 10, 2004

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 40404**

1.      **Title**

        Tuition Rates for Students Residing in Certain Counties and States and
        Attending Certain Institutions

2.      **Rule and Regulation**

        Sec. 1    Background.  Pursuant to *Texas Education Code* Section
                  54.231(g) the Board of Regents may agree to admit nonresident
                  students at resident tuition rates as allowed under *Texas
                  Education Code* Section 54.231. That statute provides that a
                  student who resides in a county or parish of Arkansas,
                  Louisiana, New Mexico, or Oklahoma, that is adjacent to Texas,
                  is eligible for such a tuition concession provided the adjoining
                  state allows a Texas resident of a county adjoining that state
                  enrolled at a public institution in that state to pay the tuition rate
                  charged for residents of that state. Pursuant to *Texas Education
                  Code* Section 54.0601, the Board may also request permission
                  from the Texas Higher Education Coordinating Board to set a
                  nonresident tuition rate that is lower than the regular
                  nonresident tuition rate for a general academic teaching
                  institution located not more than 100 miles from the boundaries
                  of Texas with another state.

        Sec. 2    Authorizations.  As a result, the Board of Regents authorized
                  the following:

                  2.1    The University of Texas at El Paso was authorized to
                         establish resident tuition rates for students residing in
                         counties in New Mexico that are adjacent to Texas.

                  2.2    The Board of Regents authorized The University of
                         Texas at Dallas, The University of Texas of the Permian
                         Basin, and The University of Texas at Tyler, respectively,
                         to charge, effective with the Spring Semester 1996, a
                         reduced tuition rate equal to the statutory rate for Texas
                         residents, plus $30 per semester credit hour, for citizens
                         of states within 100 miles of each institution as indicated
                         below:

| Institution | State(s) within 100 Miles |
|---|---|
| U. T. Dallas | OK |
| U. T. Permian Basin | NM |
| U. T. Tyler | AR, LA, OK |

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                Rule: 40404**

3.      **Definitions**

        Student – the Texas Higher Education Coordinating Board has defined a
        student for the purposes of this Rule as applying only to an undergraduate
        student.

4.      **Relevant Federal and State Statutes**

        *Texas Education Code* Section 54.231 – Resident of Bordering State or
        Nation or Participant in Student Exchange Program:  Tuition

        *Texas Education Code* Section 54.0601 – Nonresident Tuition Rates at
        Certain Institutions

5.      **Relevant System Policies, Procedures, and Forms**

        Regents' *Rules and Regulations*, Rule 40401 – Assessment, Collection,
        Delegation, and Waiver of Tuition and Fees

6.      **Who Should Know**

        Administrators
        Students

7.      **System Administration Office(s) Responsible for Rule**

        Office of Academic Affairs
        Office of Health Affairs

8.      **Dates Approved or Amended**

        Editorial amendments made May 15, 2013
        Editorial amendment made to Number 5 on September 17, 2008
        December 10, 2004

9.      **Contact Information**

        Questions or comments regarding this Rule should be directed to:

        • bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 40405**

1.   **Title**

     Tuition Rates for Undergraduate Students with Excessive Semester Credit Hours

2.   **Rule and Regulation**

     Sec. 1   Background.  Pursuant to *Texas Education Code* Section 54.014, institutions of higher education may charge a resident student a tuition rate that is higher than the regular resident tuition, but does not exceed the nonresident tuition rate, if the student has previously attempted 170 or more semester credit hours without earning a baccalaureate degree. Section 61.0595 of the *Texas Education Code* directs the Texas Higher Education Coordinating Board to withhold formula funding for students who have previously attempted 170 or more semester credit hours for courses taken at any institution of higher education while classified as a resident of Texas for tuition purposes.

     Sec. 2   Delegation.  The Board of Regents delegates to the presidents of institutions authority to charge a tuition rate that is higher than the regular tuition rate but that does not exceed the statutory nonresident tuition rate to resident undergraduate students who accumulate excessive hours.

3.   **Definitions**

     Excessive Semester Credit Hours – An undergraduate student who has previously attempted 170 or more semester credit hours without earning a baccalaureate degree.

4.   **Relevant Federal and State Statutes**

     *Texas Education Code* Section 54.014 – Tuition for Repeated or Excessive Undergraduate Hours  (Note:  Although the current Statute speaks also to "repeated" hours, the Board's delegation did not extend to "repeated" hours.)

     *Texas Education Code* Section 61.0595 – Funding for Certain Excess Undergraduate Credit Hours

5.   **Relevant System Policies, Procedures, and Forms**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**       **Rule: 40405**

Regents' *Rules and Regulations*, Rule 40401 - Assessment, Collection, Delegation, and Waiver of Tuition and Fees

6. **Who Should Know**

    Administrators
    Students

7. **System Administration Office(s) Responsible for Rule**

    Office of Academic Affairs
    Office of Health Affairs

8. **Dates Approved or Amended**

    Editorial amendments made to Numbers 4 and 5 on September 17, 2008
    December 10, 2004

9. **Contact Information**

    Questions or comments regarding this Rule should be directed to:

    - bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 40406**

1.     **Title**

       Administration of Scholarships

2.     **Rule and Regulation**

       Sec. 1     Background.  The *General Appropriations Act* calls for the
                  adoption of rules and regulations by the Board of Regents
                  relating to the administration of scholarships.

       Sec. 2     Eligible Students.  Scholarships from said fund may be awarded
                  only to students who have been accepted for enrollment and
                  who actually enroll on at least a half-time basis in the term or
                  terms for which the scholarship is awarded.

       Sec. 3     Financial Need.  Scholarships are to be awarded based on the
                  financial need of the applicant as determined by the institution
                  and based on accepted need analysis procedures generally in
                  use in other "need-based" financial assistance programs.

       Sec. 4     Use of Other Grants.  Each student shall first use any other
                  grant funds for support of educational expenses for which the
                  student may reasonably be eligible before receiving state
                  scholarship funds.

       Sec. 5     Amount of Award.  The amount of the scholarship award, when
                  combined with all other grant or gift funds awarded to the
                  student, shall not exceed 70% of the reasonable expenses to be
                  incurred by the student in the semester or term for which the
                  scholarship is awarded.

       Sec. 6     Demonstrated Need.  No student shall receive an amount in
                  excess of demonstrated need.

       Sec. 7     Non-Resident Students.  No more than 10% of total scholarship
                  funds awarded through the program in a fiscal year shall be
                  awarded to nonresident students.

       Sec. 8     College Work-Study Program.  Any or all of the scholarship
                  funds appropriated may be used for the institutional matching
                  share of earnings in the College Work-Study Program. Funds
                  used in this manner will not be subject to the restriction
                  governing the scholarships.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40406**

Sec. 9    Prohibition.  No funds appropriated in this Act for scholarships to institutions of higher education may be used to provide athletic scholarships.

## 3.    Definitions

None

## 4.    Relevant Federal and State Statutes

*General Appropriations Act*

## 5.    Relevant System Policies, Procedures, and Forms

None

## 6.    Who Should Know

Administrators
Financial Aid Officers
Students

## 7.    System Administration Office(s) Responsible for Rule

Office of Academic Affairs
Office of Health Affairs

## 8.    Dates Approved or Amended

December 10, 2004

## 9.    Contact Information

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 40407**

1.     **Title**

       Texas Public Education Grants/Loan Program

2.     **Rule and Regulation**

       Sec. 1     Establishment of Percentage.  The Board of Regents authorizes
                  each degree-granting institution to set aside from the
                  percentage specified by the *General Appropriations Act* for the
                  applicable academic year as provided by Section 56.033(a)(2)
                  of the *Texas Education Code* from each resident student's
                  tuition charge and 3% from each nonresident's tuition charge for
                  use as Texas Public Educational Grants and Emergency Loans.
                  In allocating the set-aside funds, the allocation shall reflect the
                  legislatively mandated parameter that "not less than 90 percent
                  [of the set-aside funds] shall be used for Texas Public
                  Educational Grants (TPEG) and not more than 10 percent [of
                  the set-aside funds] shall be use for emergency loans...." Within
                  this parameter, each institution may adjust the allocation in
                  accordance with its needs after consultation with the appropriate
                  Executive Vice Chancellor. Each institution shall establish
                  administrative procedures to insure that Texas Public
                  Educational Grants and Emergency Loans are awarded on the
                  basis of projected set-aside revenues for each semester or
                  annual academic term.

       Sec. 2     Criteria for Awarding Grants.  The following criteria shall be
                  used in awarding Texas Public Education Grants:

                  2.1     Enrolled Students.  Grants are to be made only to
                          students who have been accepted for enrollment and
                          who actually enroll in the term or terms for which the
                          grant is awarded.

                  2.2     Financial Need.  Grants are to be awarded based upon
                          the financial need of the applicant.

                  2.3     Method for Determining Need.  Financial need is to be
                          determined by use of accepted needs analysis
                          procedures generally in use in other "needs based"
                          financial assistance programs. Deviation from such
                          procedures shall be properly documented.

                  2.4     Restrictions on Awards.  Awards to residents may only
                          be funded through funds set aside from resident student

---

**Page 1 of 3**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**              **Rule: 40407**

tuition revenues. Awards to nonresident and foreign students may only come from funds set aside from the tuition revenues of such students. After the end of the sixth class week of each semester, an institution may transfer any excess funds set aside from tuition paid by resident or nonresident students to the funds set aside for grants awarded to the other class of students. Priority for awarding grants from any excess funds set aside from tuition paid by resident students shall be given to resident students.

2.5    Use of Interest Earned.  Interest earned from the funds set aside for Texas Public Educational Grants may be spent only for grants to students under the Texas Public Educational Grants Program.

2.6    Transfer of Funds.  Any or all of the funds set aside for making Texas Public Educational Grants may be transferred to the Texas Higher Education Coordinating Board to be used for matching federal or other grant funds for awarding to students at each U. T. System institution. Generally only such amounts as can be equally matched by funds held by the Coordinating Board shall be transferred to the Coordinating Board and any unmatched funds transferred to the Coordinating Board shall be returned to each institution upon request of the president.

2.7    Excess Funds.  At the end of a fiscal year, if the total amount of unencumbered funds that has been set aside under this program by each U. T. System institution, together with the total amount of unencumbered funds transferred to the Texas Higher Education Coordinating Board, exceeds 150 percent of the amount of funds set aside by that institution in the fiscal year, each institution within the U. T. System shall transfer the excess amount to the Coordinating Board for the purpose of awarding scholarships as provided by law to students at institutions other than the institution that transferred funds.

**3.    Definitions**

None

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 40407**

4. **Relevant Federal and State Statutes**

   *Texas Education Code* Section 56.033 – Source of Program Funding

   *Texas Education Code* Section 56.034 – Guidelines for Determining Eligibility and Awarding Grants

5. **Relevant System Policies, Procedures, and Forms**

   None

6. **Who Should Know**

   Administrators

7. **System Administration Office(s) Responsible for Rule**

   Office of Academic Affairs
   Office of Health Affairs

8. **Dates Approved or Amended**

   December 10, 2004

9. **Contact Information**

   Questions or comments regarding this Rule should be directed to:

   - bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                     **Rule: 40501**

1.      **Title**

        Speech and Assembly

2.      **Rule and Regulation**

        Sec. 1    Time, Place, and Manner.  The freedoms of speech and
                  assembly are basic and essential to intellectual development.
                  However, these activities are subject to the well-established
                  right of colleges and universities to regulate time, place, and
                  manner so that the activities do not intrude upon or interfere
                  with the academic programs and administrative processes of
                  The University of Texas System or any of the institutions. Each
                  institution may designate one or more appropriate areas on the
                  campus where students, faculty, and staff may engage in rallies,
                  group demonstrations, or public oratory without prior
                  administrative approval. All rallies, group demonstrations,
                  and public oratory must be conducted in accordance with
                  the provisions of this Rule and the reasonable and
                  nondiscriminatory rules and regulations of the institution.

        Sec. 2    Campaign for Public Office.  Students, faculty, or staff who are
                  candidates for public office, or who wish to campaign on behalf
                  of a particular candidate or candidates, may engage in conduct
                  in behalf of such candidacy in the areas designated pursuant to
                  this Section or in accordance with the provisions of Section 3
                  below relating to off-campus speakers. A person who is not a
                  student, a faculty member, or a staff member may speak on
                  behalf of such a candidacy only in accordance with the
                  provisions of Section 3 below relating to off-campus speakers.

        Sec. 3    Regulation of Off-Campus Speakers.  The Board of Regents
                  has, and reserves the right to, regulate the presentation of guest
                  speakers on the campus who are unaffiliated with the
                  U. T. System or any of the institutions thereof (hereafter referred
                  to as off-campus speakers).

                  3.1    Only registered student organizations, faculty or staff
                         organizations, System-owned dormitories, and Student
                         Government may present off-campus speakers on
                         the campus.

                  3.2    The organization sponsoring an off-campus speaker has
                         the responsibility of making clear the fact that the
                         organization, not the institution, is extending the

                                                                    **Page 1 of 3**

**Exhibit 5**

invitation to speak and that any views the speaker may express are his or her own and not necessarily those of the System or of any institution.

3.3    An off-campus speaker is subject to all provisions of federal, State, and local laws.

3.4    Registered student organizations, faculty or staff organizations, University-owned dormitories, and the students' association may be permitted the use of System-owned facilities to present off-campus speakers on campus pursuant to the facilities use regulations of the System and the institution.

3.5    An application for the use of any facility of the System or any of the institutions must be made to the Chancellor of the U. T. System or the president of an institution, or his or her delegate, at least 48 hours before the time the event is scheduled to take place.

3.6    No person shall be permitted on any campus of the System to engage in speech, either orally or in writing, which is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.

3.7    No off-campus speaker who is to be paid from State funds as consideration for his or her speech shall be permitted to speak on the campus of any institution of the System unless the university facility in which the speech is to be delivered will be open to the public, including members of the news media, who will be entitled to record, videotape, or telecast live portions of the speech. The provisions of this Subdivision do not apply to classes, seminars, symposia, and conferences intended for the use and benefit of students, faculty, staff, and invited guests. No person may in any way obstruct or lessen in any way the opportunity for the audience to take the fullest advantage of the speech, including the opportunity to see and hear the speaker during the entire speech.

3.    **Definitions**

None

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40501**

4.    **Relevant Federal and State Statutes**

      None

5.    **Relevant System Policies, Procedures, and Forms**

      None

6.    **Who Should Know**

      Administrators
      Students
      Faculty
      Staff

7.    **System Administration Office(s) Responsible for Rule**

      Office of Academic Affairs
      Office of Health Affairs

8.    **Dates Approved or Amended**

      December 10, 2004

9.    **Contact Information**

      Questions or comments regarding this Rule should be directed to:

      • bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 40502**

1.     **Title**

       Negotiations Related to Disruptive Activities Prohibited

2.     **Rule and Regulation**

       Sec. 1     Prohibition.  Neither the Chancellor of The University of Texas
                  System, the president of an institution, any officer in the System
                  Administration, nor any representative of either of them when
                  dealing with disruptive activities, shall negotiate or attempt to
                  negotiate with any person or persons engaged in any disruptive
                  activity on the campus of any institution of the U. T. System.

       Sec. 2     Discretion.  When such a situation arises, the Chancellor of the
                  U. T. System, the president of an institution, any officer in the
                  System Administration, or any representative of either of them,
                  shall take immediate action to utilize all lawful measures to halt
                  and eliminate any and all such disruptive activities that come to
                  their attention: provided, however, the Chief of Police of the
                  U. T. System or any of the institutions and those people
                  designated by any such Chief of Police are authorized to use
                  their sound discretion under the attendant circumstances in
                  addressing any such disruptive behavior.

3.     **Definitions**

       None

4.     **Relevant Federal and State Statutes**

       *Texas Education Code* Section 51.935 – Disruptive Activities

5.     **Relevant System Policies, Procedures, and Forms**

       None

6.     **Who Should Know**

       Faculty
       Staff
       Students

7.     **System Administration Office(s) Responsible for Rule**

       Office of General Counsel

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**          **Rule: 40502**

**8.**     **Dates Approved or Amended**

December 10, 2004

**9.**     **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                **Rule: 40601**

1.    **Title**

      Institutions Comprising The University of Texas System

2.    **Rule and Regulation**

      Sec. 1    Official Titles of Institutions.  The U. T. System is composed of
                the institutions set forth below. To ensure uniformity and
                consistency of usage throughout the U. T. System, the
                institutions shall be listed in the following order and the following
                titles (short form of title follows) shall be used:

                1.1    The University of Texas System Board of Regents (U. T.
                       System Board of Regents)

                1.2    The University of Texas System Administration (U. T.
                       System Administration)

                1.3    Academic Institutions of the U. T. System are:

                       (a) The University of Texas at Arlington (U. T. Arlington)

                       (b) The University of Texas at Austin (U. T. Austin)

                       (c) The University of Texas at Brownsville (U. T.
                           Brownsville)

                       (d) The University of Texas at Dallas (U. T. Dallas)

                       (e) The University of Texas at El Paso (U. T. El Paso)

                       (f)  The University of Texas of the Permian Basin (U. T.
                           Permian Basin)

                       (g) The University of Texas Rio Grande Valley (U. T. Rio
                           Grande Valley)

                       (h) The University of Texas at San Antonio (U. T. San
                           Antonio)

                       (i)  The University of Texas at Tyler (U. T. Tyler)

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**      **Rule: 40601**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**      **Rule: 40601**

    1.4    Health Institutions of the U. T. System are:

        (a) The University of Texas Southwestern Medical Center (U. T. Southwestern Medical Center)

        (b) The University of Texas Medical Branch at Galveston (U. T. Medical Branch - Galveston)

        (c) The University of Texas Health Science Center at Houston (U. T. Health Science Center - Houston)

        (d) The University of Texas Health Science Center at San Antonio (U. T. Health Science Center - San Antonio)

        (e) The University of Texas M. D. Anderson Cancer Center (U. T. M. D. Anderson Cancer Center)

        (f) The University of Texas Health Science Center at Tyler (U. T. Health Science Center - Tyler)

Sec. 2    Other Entities Within an Institution.

    Sec. 2.1    The establishment of a college or school requires approval by the Board of Regents, upon recommendation of the president, the appropriate Executive Vice Chancellor, the Deputy Chancellor, and the Chancellor.

    Sec. 2.2    The establishment of a department or similar academic unit requires approval by the appropriate Executive Vice Chancellor, upon the recommendation of the president.

    Sec. 2.3    Approval of the naming of a college, school, department, and other entity in honor of a donor or other individual shall be according to Regents' Rule 80307.

    Sec. 2.4    A nonsubstantive change to the name of an established college, school, or department shall be

**Exhibit 5**

approved by the appropriate Executive Vice Chancellor.

3. **Definitions**

   None

4. **Relevant Federal and State Statutes**

   *Texas Education Code* Section 65.11 – Board of Regents

   *Texas Education Code* Section 65.02 – Organization

5. **Relevant System Policies, Procedures, and Forms**

   List of Colleges and Schools

6. **Who Should Know**

   Administrators

7. **System Administration Office(s) Responsible for Rule**

   Office of the Board of Regents
   Office of Academic Affairs
   Office of Health Affairs

8. **Dates Approved or Amended**

   February 11, 2016
   Editorial amendment to Sec. 1.14(c) made December 2, 2015
   November 5, 2015
   Editorial amendments to reflect changes in status of U. T. Brownsville and
      U. T. Pan American made September 1, 2015
   May 14, 2015
   Editorial amendments to Sec. 1.10 (UTRGV) made March 25, 2015
   February 12, 2015
   November 6, 2014
   Editorial amendment to Sec. 1.6 made October 28, 2014
   August 21, 2014
   May 15, 2014
   Editorial amendment to add the U. T. Austin Dell Medical School,
      approved by the Board on December 6, 2012, to 1.4(o) made
      March 28, 2014
   February 6, 2014

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**       **Rule: 40601**

December 12, 2013 (addition of UTRGV)
Editorial amendment to Section 1.11(f) made October 7, 2013
August 22, 2013
May 9, 2013
February 14, 2013
Editorial amendment to Section 1.17 made August 17, 2012
Editorial amendment to Section 1.8 made July 24, 2012
February 18, 2011
November 11, 2010
Editorial amendment made May 28, 2010, to reflect creation of the
     School of Undergraduate Studies at U. T. Austin in May 2008
     (see November 12, 2008, Academic Affairs Committee Item 3)
May 13, 2010
February 5, 2010
August 14, 2008
March 26, 2008
November 16, 2006
December 10, 2004

9.     **Contact Information**

     Questions or comments regarding this Rule should be directed to:

        •   bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40602**

1.      **Title**

        Organized Research Units

2.      **Rule and Regulation**

        Sec. 1      Functions of an Organized Research Unit.  An Organized
                    Research Unit (ORU) is established to provide support for
                    interdisciplinary research that complements the academic goals
                    of departments of instruction and research. These units are
                    typically referenced as institutes, laboratories, or centers. The
                    functions of an ORU are to

                    1.1   Facilitate research and research collaborations;
                    1.2   Disseminate research results through conferences,
                          meetings, and other activities;
                    1.3   Strengthen graduate and undergraduate education by
                          providing students with training opportunities and access to
                          facilities;
                    1.4   Seek extramural research funds; and
                    1.5   Carry out university and public service programs related to
                          the ORU's research expertise.

        Sec. 2      Designation of ORUs.  Units included as organized research
                    units normally carry one of the designations listed and defined
                    below. Institute, Laboratory, and Center are the most commonly
                    used designations.

                    2.1   Institute.  A major unit that coordinates and promotes
                          faculty and student research on a continuing basis over an
                          area so wide that it extends across department, school or
                          college, or campus boundaries. The unit enhances and
                          supports broad-based research efforts. The unit may also
                          engage in public service activities stemming from its
                          research program, within the limits of its stated objectives.

                    2.2   Laboratory.  A non-departmental organization that
                          establishes and maintains facilities for research in several
                          departments, sometimes with the help of full-time research
                          staff appointed in accordance with institutional policy. A
                          laboratory in which substantially all participating faculty
                          members are from the same academic department is a
                          departmental laboratory and not an ORU.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                Rule: 40602**

2.3   Center.  A unit that furthers research in a designated field or a unit engaged primarily in providing research facilities for other units and departments. Centers with anticipated annual budgets of at least $3,000,000, representing the sum of research grants and contracts managed through the Center's operations as well as institutional and other funding, are in this category.

2.4   Non-ORU Center.  The term Center may be used for research units not formally constituted as ORUs. Centers with an anticipated annual budget of less than $3,000,000 may be constituted upon approval of the campus president or designee. The campus shall periodically review non-ORU centers and programs.

Sec. 3   Procedure for Establishment of ORUs.  An ORU is established upon submittal and approval of a proposal by the president and the Executive Vice Chancellor for Academic Affairs or the Executive Vice Chancellor for Health Affairs. The proposal should describe the purpose and benefits of the ORU to the institution, the faculty members and other participants, research and other activity plans, space requirements, and budget needs. If institutional space or funds are committed, confirmation of such commitments from the appropriate institutional representative should be included in the proposal.

Sec. 4   Named ORU.  Proposals to name an ORU for an individual or an entity must comply with the provisions of Regents' *Rules and Regulations,* Rule 80307 related to honorific and gift-related namings, and should be submitted to the appropriate Executive Vice Chancellor. The ORU naming will only be maintained as long as the ORU is active.

Sec. 5   Advisory Committee or Council.  Each ORU is headed by a director and will have an advisory committee/council that assists the director in setting the unit's goals and may assist by critically evaluating its effectiveness on a continuing basis. The creation of an advisory committee/council must be approved by the Board of Regents in accordance with Regents' *Rules and Regulations,* Rule 60302.

Sec. 6   Procedures for Review.  Periodic review of ORUs is necessary to ensure consistency with institutional goals and priorities and the institution's need to sustain a capacity to innovate. Each ORU should be reviewed at least every six years. An ad hoc

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40602**

committee shall be formed to assess the ORU's original goals and objectives, its present functioning, recent accomplishments, future plans, adequacy of space and budget allocations, and future prospects to contribute to the institution's vision and mission. The committee's report will be forwarded to the president, who, in consultation with others, will determine whether the ORU should continue, be phased out, or be discontinued. The president shall forward the recommendation and ad hoc committee's report to the Executive Vice Chancellor for Academic Affairs or the Executive Vice Chancellor for Health Affairs.

Sec. 7    ORU Reviews and Approvals.  The periodic reviews and the establishment of institutes, laboratories, and centers must be filed with the office of Academic Affairs or Health Affairs. Such office will maintain and make available to the Board of Regents an inventory of those organized research units throughout The University of Texas System.

**3.    Definitions**

None

**4.    Relevant Federal and State Statutes**

None

**5.    Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 60302 – Advisory Councils of an Institution

Regents' *Rules and Regulations,* Rule 80307 – Naming Policy

**6.    Who Should Know**

Administrators

**7.    System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents** **Rule: 40602**

8.     **Dates Approved or Amended**

       May 11, 2006

9.     **Contact Information**

       Questions or comments regarding this Rule should be directed to:

       • bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**          **Rule: 40701**

1.      **Title**

        Medical and Hospital Services

2.      **Rule and Regulation**

        Sec. 1     Compensation for Service.  With exceptions as outlined below,
                   no health care services shall be provided by any institution of
                   The University of Texas System to any person without
                   compensation or reimbursement to the U. T. System. In the
                   case of health care facilities operated by the U. T. System,
                   which under the law are open to the general public, free or
                   partly free health care services may be rendered to persons
                   who are indigent and who are able to offer proof that they are
                   not financially able to pay either all or any part of their health
                   care expenses. In the case of health care services provided by
                   faculty of a general academic institution in the conduct of an
                   educational program, persons receiving such services need not
                   be charged for such services.

        Sec. 2     Acceptance of Patients.  Health institutions may accept patients
                   for acute or continuing, or both, care without referral by another
                   physician or agency. The patients are accepted for total and
                   continuing care including the obligation to obtain the services of
                   other physicians when indicated.

3.      **Definitions**

        None

4.      **Relevant Federal and State Statutes**

        None

5.      **Relevant System Policies, Procedures, and Forms**

        None

6.      **Who Should Know**

        Administrators

7.      **System Administration Office(s) Responsible for Rule**

        Office of Health Affairs

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40701**

**8.**     **Dates Approved or Amended**

December 10, 2004

**9.**     **Contact Information**

Questions or comments regarding this Rule should be directed to:

- [bor@utsystem.edu](mailto:bor@utsystem.edu)

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                              **Rule: 40703**

1.      **Title**

        Health Care Risk Management

2.      **Rule and Regulation**

        Sec. 1    Focus of Risk Management.  All risks of loss should be
                  minimized by risk management and prevention programs,
                  including risks associated with the provision of health care.
                  Health institutions and medical schools on academic campuses
                  shall establish and maintain programs whose purpose is to
                  promote the quality of care provided to patients. Wherever
                  possible, the focus of these programs is to prevent loss or injury
                  through:

                  1.1    Striving for quality in all aspects of patient care.

                  1.2    Education of all levels of staff and employees.

                  1.3    Providing basic elements for each institution's quality and
                         risk management program.

                  1.4    Monitoring of activities resulting in loss of time,
                         equipment and resources.

                  1.5    Compliance with federal, state and local codes, rules and
                         regulations.

                  1.6    Coordination and integration of programs in risk
                         management and in quality improvement.

                  1.7    Timely reporting of quality issues and adverse
                         occurrences within organizations and from institutions to
                         U. T. System Administration.

        Sec. 2    Responsibility for Implementation.  By this policy, each
                  institution is hereby delegated the operational responsibility to
                  implement a health risk management and risk prevention
                  program which will reflect the principles stated above. Each
                  program should reflect the principle that an effective risk
                  management program is the responsibility of all levels of
                  management and all personnel.

**The University of Texas System**
**Rules and Regulations of the Board of Regents**          **Rule: 40703**

3. **Definitions**

   Risk Management/Risk Prevention – as used in this rule includes programs dealing with medical liability and quality management.

4. **Relevant Federal and State Statutes**

   None

5. **Relevant System Policies, Procedures, and Forms**

   None

6. **Who Should Know**

   Administrators

7. **System Administration Office(s) Responsible for Rule**

   Office of Health Affairs

8. **Dates Approved or Amended**

   Editorial amendment to Sec. 1 made April 27, 2016
   December 10, 2004

9. **Contact Information**

   Questions or comments regarding this Rule should be directed to:

   - bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40801**

1.      **Title**

        Official Seal, Colors, Logo, and Mascot

2.      **Rule and Regulation**

Sec. 1      Official Seal.  The official seal of The University of Texas
            System shall be the seal held in the custody of the General
            Counsel to the Board of Regents on which shall be inscribed,
            "Seal of The University of Texas." The official seal of each
            institution shall consist of the System seal with such heraldic
            variations as may be approved by the Board of Regents upon
            recommendation of the president of the institution, the
            appropriate Executive Vice Chancellor, the Deputy Chancellor,
            and the Chancellor. This official seal shall be used for the
            purpose of certifying diplomas, official transcripts for students,
            and for such other official purposes as may be approved by the
            Board of Regents, by System Administration, or by the president
            of an institution. Provided, however, that if any institution has
            previously adopted and presently uses an institutional seal,
            such institution may continue to use such seal in lieu of the seal
            hereby provided for. Provided further, however, no institution
            shall use as its official seal that seal approved herein as the
            official seal of the System, unless the full title of the institution as
            designated in the Regents' *Rules and Regulations,* Rule 40601
            is also used as an integral part of the seal.

Sec. 2      Official Colors.  The official colors for the U. T. System shall be
            orange and white; provided, however, that an institution may
            adopt one additional color to be used in connection with athletic
            and other activities of the institution when approved by the
            Board of Regents upon recommendation of the president of the
            institution, the appropriate Executive Vice Chancellor, the
            Deputy Chancellor, and the Chancellor.

Sec. 3      Themes, Logos, and Mascots.  Each institution may adopt a
            theme, a logo, and a mascot, provided same are approved by
            the Board of Regents via the Agenda following recommendation
            of the president of the institution, the appropriate Executive Vice
            Chancellor, the Deputy Chancellor, and the Chancellor.

3.      **Definitions**

        None

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 40801**

4.      **Relevant Federal and State Statutes**

None

5.      **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 40601 – Institutions Comprising
The University of Texas System

6.      **Who Should Know**

Administrators

7.      **System Administration Office(s) Responsible for Rule**

Office of the Board of Regents

8.      **Dates Approved or Amended**

Editorial amendments to Sections 1-3 made July 13, 2015
Section 3 editorially amended October 13, 2009
December 10, 2004

9.      **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 40901**

1.    **Title**

      Charter Schools

2.    **Rule and Regulation**

      Sec. 1    Conditions for Starting a Charter School.  Upon a finding by the
                Chancellor, the Deputy Chancellor, and the Executive Vice
                Chancellor for Academic Affairs that a proposed application to
                operate a charter school as authorized by *Texas Education
                Code,* Chapter 12 meets requirements of State law and furthers
                the institutional mission, an institution may apply to the State
                Board of Education to operate a charter school. Charter school
                operations will adhere to all applicable provisions of State law
                including the *Texas Public Information Act*.

      Sec. 2    Oversight.  The oversight and supervision of charter schools is
                delegated to the appropriate institutional president, with a report
                to the Board each year, detailing activities and performance of
                the charter school.

      Sec. 3    Advisory Council.  A board or council may be appointed by the
                president to advise him or her on operation of the charter
                school. The board or council will comply with all provisions of
                the *Texas Open Meetings Act* applicable to the Board of
                Regents.

3.    **Definitions**

      None

4.    **Relevant Federal and State Statutes**

      *Texas Education Code* Section 12.101 – Authorization of Open-Enrollment
      Charter School

      *Texas Government Code,* Chapter 551 – Open Meetings

      *Texas Government Code,* Chapter 552 – Public Information

5.    **Relevant System Policies, Procedures, and Forms**

      None

**The University of Texas System**
**Rules and Regulations of the Board of Regents**               **Rule: 40901**

6.   **Who Should Know**

     Administrators

7.   **System Administration Office(s) Responsible for Rule**

     Office of Academic Affairs

8.   **Dates Approved or Amended**

     Editorial amendment to Sec. 1 made July 13, 2015
     Editorial amendment to Sec. 2 made November 3, 2009
     December 10, 2004

9.   **Contact Information**

     Questions or comments regarding this Rule should be directed to:

     - bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents**        **Rule: 40902**

1.      **Title**

        Guidelines for Cooperative Use of Courses and Facilities with Texas A&M University

2.      **Rule and Regulation**

        Sec. 1      Purpose.  Establishment of a simplified procedure for the cooperative use of courses and facilities in graduate education to allow graduate students from The University of Texas System or Texas A&M University to benefit from the laboratory facilities and/or graduate course offerings unique to each institution.

        Sec. 2      Background.  The following guidelines were developed with representatives from The Texas A&M University System and the concept was approved by the offices of General Counsel in both systems for transmission to the Texas Higher Education Coordinating Board. Participation in the program will be voluntary and operating details will be written by the graduate deans and approved by the presidents of the institutions concerned.

        Sec. 3      Cooperative Use.  A graduate student from one institution may study at a cooperating institution with its sister System when there exists a unique educational opportunity related to the student's program and interest (laboratory or course), but only with the consent of the instructor or director of the laboratory and when all concerned recognize that it is in the best interest of all parties. Such arrangements are contingent on space being readily available in the laboratory or course.

        Sec. 4      Registration.  The graduate student will maintain registration only at the home institution. Credit for any course or work taken at an institution with its sister System will be through student registration in an appropriate course at the home institution (such as graduate special problems). The graduate dean of the sister institution will certify the course grade to the graduate dean of the home institution by letter or on a form adopted for this purpose.

        Sec. 5      Compliance.  Graduate students doing work at a sister System institution will comply with all appropriate rules of the sister institution.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                Rule: 40902**

Sec. 6    Fees.  Graduate students will pay all applicable fees at the home institution, but none at the cooperating sister system institution. It is anticipated that the number of students participating in this program will be small and that the paperwork associated with money exchanges will not justify such a practice.

Sec. 7    Financial Assistance.  Students on a fellowship or receiving financial assistance at the home institution may continue receiving such assistance, if otherwise appropriate, while doing research in a laboratory or taking courses with its sister system institution, but will not at the same time receive financial support from the sister system institution. The cooperating sister system institution assumes no financial responsibility for the student.

Sec. 8    Operating Details.  Other operating details which may be needed will be worked out within these guidelines by the graduate deans of the individual cooperating institutions with the approval of the presidents of the institutions concerned.

3.    **Definitions**

None

4.    **Relevant Federal and State Statutes**

None

5.    **Relevant System Policies, Procedures, and Forms**

*Regents' Rules and Regulations,* Rule 50701 – Visiting U. T. System Students Program

6.    **Who Should Know**

Administrators
Faculty
Students

7.    **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 40902**

8.    **Dates Approved or Amended**

      December 10, 2004

9.    **Contact Information**

      Questions or comments regarding this Rule should be directed to:

      - bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                     **Rule: 50101**

1.     **Title**

       Student Conduct and Discipline

2.     **Rule and Regulation**

       Sec. 1     Standards of Conduct.  All students are expected and required
                  to obey federal, State, and local laws; to comply with the
                  Regents' *Rules and Regulations*, with The University of Texas
                  System and institutional rules and regulations, and with
                  directives issued by administrative officials of the U. T. System
                  or U. T. System institution in the course of their authorized
                  duties; and to observe standards of conduct appropriate for an
                  academic institution.

       Sec. 2     Institutional Rules.  Each U. T. System institution shall adopt
                  rules and regulations concerning student conduct and discipline.
                  Such rules shall be in accordance with a model policy
                  developed by the Office of General Counsel that complies with
                  State and federal law, Regents' Rules, and U. T. System
                  policies. Institutional rules shall become effective upon review
                  and approval by the Executive Vice Chancellor for Health Affairs
                  or the Executive Vice Chancellor for Academic Affairs, as
                  appropriate, and by the Vice Chancellor and General Counsel.
                  Each student is deemed to have notice of the provisions of the
                  Regents' *Rules and Regulations* and institutional policies.

3.     **Definitions**

       None

4.     **Relevant Federal and State Statutes**

       *Texas Education Code* Section 51.936 – Hazing

       *Texas Education Code* Section 37.151 et seq. – Definitions

5.     **Relevant System Policies, Procedures, and Forms**

       Model Policy for Student Conduct and Discipline

6.     **Who Should Know**

       Administrators
       Dean of Students

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**               **Rule: 50101**

     Hearing Officers
     Students
     Office of General Counsel

**7.**     **System Administration Office(s) Responsible for Rule**

     Office of Academic Affairs
     Office of Health Affairs

**8.**     **Dates Approved or Amended**

     Editorial amendments to Numbers 4 and 5 made October 22, 2013
     May 3, 2012
     August 14, 2008
     December 10, 2004

**9.**     **Contact Information**

     Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 50201**

1.      **Title**

        Student Advisory Council

2.      **Rule and Regulation**

        Sec. 1      Student Advisory Council.  A Student Advisory Council
                    represents institutions in the U. T. System to facilitate the flow of
                    ideas and information between and among the Board of
                    Regents, the System Administration, and the institutions of the
                    System. The Executive Vice Chancellor for Academic Affairs or
                    his or her designee serves as System liaison to the Council.
                    Representatives of the Student Advisory Council are
                    encouraged to address the Board of Regents at meetings of the
                    Board, including meetings of the Standing Committees, and
                    may recommend action to the Board through the Chancellor. At
                    least once each year, a meeting will be arranged between the
                    Student Advisory Council Executive Committee and the Board
                    of Regents.

3.      **Definitions**

        None

4.      **Relevant Federal and State Statutes**

        None

5.      **Relevant System Policies, Procedures, and Forms**

        Regents' *Rules and Regulations,* Rule 30401 – Employee and Faculty
        Advisory Councils

6.      **Who Should Know**

        Administrators
        Students

7.      **System Administration Office(s) Responsible for Rule**

        Office of Academic Affairs
        Office of Health Affairs

8.      **Dates Approved or Amended**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                        Rule: 50201**

Editorial amendments made January 14, 2015
December 10, 2004

**9.      Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                Rule: 50202**

1.   **Title**

     Student Organizations

2.   **Rule and Regulation**

     Sec. 1   Registration Procedures.  An organization in which membership
              is limited to students (recognizing that faculty and staff may also
              be members) of an institution may become a registered student
              organization at that institution by complying with the registration
              procedures established by the chief student affairs officer or his
              or her designee.

     Sec. 2   Advisors.  The chief student affairs officer, with the approval of
              the president of an institution, may establish regulations
              requiring faculty or staff advisers for registered student
              organizations.

     Sec. 3   Limitation on Representations.  A registered student
              organization may state that its membership is composed of
              students, or of students, faculty, and/or staff, of an institution,
              but it shall not suggest or imply that it is acting with the authority
              or as an agency of that institution. A student organization shall
              not use the name of an institution or the name of The University
              of Texas System as a part of the name of the organization, and
              it shall neither display the seal of either an institution or the
              U. T. System in connection with any activity of the organization
              nor use such seal or seals as a part of any letterhead, sign,
              banner, pamphlet, or other printed material that bears the name
              of the organization.

     Sec. 4   Eligibility.  The chief student affairs officer, with the approval of
              the president of an institution, may issue regulations governing
              the eligibility of students for participation in organized activities.

     Sec. 5   Disciplinary Action.  Any student organization is subject to
              disciplinary action or revocation of registration as a student
              organization for violation of a rule or regulation of the
              U. T. System and/or of the institution at which the organization
              is registered.

     Sec. 6   Coordination of Registration.  The president of each institution
              of the System shall require and enforce the following:

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 50202**

6.1     List of Officers and Members.  As a condition to being a registered student organization or group during a semester, every registered student organization or group shall furnish to the appropriate institutional officer at the beginning of each such semester a complete list of officers or other members of the organization or group who are authorized to speak for or represent the organization or group in its relations with the institution and who are authorized to receive for the organization or group official notices, directives, or information from the institution. Each such list shall be kept current and accurate throughout the semester by the organization or group, and it shall be conclusively presumed that the officers or members whose names are on the list most recently filed by the organization or group are authorized to speak for and represent the organization or group in its relations with the institution and are authorized to receive for the organization or group official notices, directives, or information from the institution.

6.2     Restrictions on Membership.  No registered student organization or group may have any person as a member who is not either a student or a member of the faculty or staff of the institution. Except pursuant to the provisions of the Regents' *Rules and Regulations,* Rule 80106, no organization or group, whether registered or not, may use any facility of any institution of the System if it has as a member any person who is not either a student or a member of the faculty or staff of the institution.

6.3     Statement as to Make-up of Members.  At the beginning of each semester, each registered student organization or group must file with the appropriate institutional officer a written statement that the organization or group does not, and will not during the semester, have as a member any person who is not either a student or a member of the faculty or staff of the institution. If an organization or group fails or refuses to file the required statement, or if the Dean of Students determines that the statement is or has become false, the Dean of Students, after providing notice, shall begin disciplinary proceedings. The Dean or Hearing Officer may cancel the registered status of the organization or group or impose other appropriate penalties.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                     **Rule: 50202**

6.4     Debts to the Institution.  No organization or group, whether registered or not, may use the facilities of any institution as long as it owes a monetary debt to the institution and the debt is considered delinquent by the crediting institutional agency.

Sec. 7     Limit on Registration.  Any institution may require student organizations or groups to sign an agreement to comply with institutional rules and may refuse to register any organization that refuses to sign such an agreement.

Sec. 8     Application for Re-registration.  A registered student organization whose registered status has been cancelled by the Dean of Students pursuant to Section 6.3 above or Rule 80103, Section 3 of the Regents' *Rules and Regulations* may apply for re-registration not less than six months following the date of such cancellation.

3.     **Definitions**

Chief Student Affairs Officer – The administrative officer or officers directly responsible for student affairs at each institution.

Dean or Dean of Students – Refers to the administrative officer or officers responsible for the administration of the disciplinary process at each institution.

Hearing Officer – An individual selected in accordance with procedures adopted by the institution to hear disciplinary charges, make findings of fact, and, upon a finding of guilt, imposes an appropriate sanction(s).

Student – The following persons shall be considered students for purposes of these policies and regulations:

1.  A person currently enrolled at an institution of the System.

2.  A person accepted for admission or readmission to an institution of the System.

3.  A person who has been enrolled at an institution of the System in a prior semester or summer session and is eligible to continue enrollment in the semester or summer session that immediately follows.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 50202**

    4.  A person who engaged in prohibited conduct at a time when he or
        she met the criteria of 1, 2, and 3 immediately above.

**4.**     **Relevant Federal and State Statutes**

    None

**5.**     **Relevant System Policies, Procedures, and Forms**

    None

**6.**     **Who Should Know**

    Administrators
    Dean of Students
    Chief Student Affairs Officer
    Students

**7.**     **System Administration Office(s) Responsible for Rule**

    Office of Academic Affairs
    Office of Health Affairs

**8.**     **Dates Approved or Amended**

    December 10, 2004

**9.**     **Contact Information**

    Questions or comments regarding this Rule should be directed to:

       •  bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 50203**

1.      **Title**

        Participation in Student Government

2.      **Rule and Regulation**

        Sec. 1    Student Associations.  Students' associations currently
                  authorized at the institutions of The University of Texas System
                  are hereby approved. They shall have such jurisdictions and
                  shall exercise such powers as the Board of Regents may now or
                  hereafter delegate to them.

                  1.1    Associations in Force.  The constitutions and bylaws of
                         the several associations in force at the date of adoption
                         of these *Rules and Regulations* are hereby approved.

                  1.2    Approval of Changes.  An amendment to the constitution
                         or bylaws of a students' association may be adopted by
                         an association, in accordance with its constitution and
                         bylaws, but the change shall not become effective until
                         transmitted to and approved by the chief student affairs
                         officer, the president, and the appropriate Executive Vice
                         Chancellor.

                  1.3    Amendment or Repeal of Provisions.  The chief student
                         affairs officer shall have the power, when in his or her
                         judgment the interests of the institution require it, to
                         amend or repeal any provision in the constitution or
                         bylaws of the particular association, but such action shall
                         not be effective until approved by the president and the
                         appropriate Executive Vice Chancellor.

                  1.4    Approval of Employees.  All persons officially employed
                         on salary by or under the direct supervision of a students'
                         association shall be subject to approval by the chief
                         student affairs officer and the president.

                  1.5    Required Financial Reports.  Every officially recognized
                         students association shall make annually a complete
                         financial report to the institutional chief business officer
                         and shall make such special reports as may be called for
                         by such business officer. A duplicate copy of each report
                         shall be filed with the chief student affairs officer.
                         Committees and administrative units of a students'
                         association shall make such interim reports of financial

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 50203**

condition as may be required by the chief student affairs officer.

Sec. 2      Student Opinion.  The students' association on each campus shall be a recognized forum of student opinion.

2.1     Recommendations to the Board of Regents.  When a students' association takes a position with reference to issues directly related to an institution and its operations, its recommendations to the Board of Regents shall go through the chief student affairs officer, the president, the appropriate Executive Vice Chancellor, the Deputy Chancellor, and the Chancellor.

2.2     Position on Non-University Issues.  When a students association takes a position on non-University issues, it shall make clear the fact that it does not speak for the institution.

2.3     Conditions for Getting Feedback.  A students' association may conduct polls, initiate petitions, and/or establish forums for debate or discussion under conditions approved by the chief student affairs officer.

2.4     Personal Views of Officers.  Officers of a students association may so identify themselves when they express their personal views, but they shall then make it clear that they are not speaking for the institution, or for the student body, and they shall make it clear they are not speaking for the students' association unless the legislative body of that association has authorized the statement in advance.

**3.      Definitions**

Chief Student Affairs Officer – The administrative officer or officers directly responsible for student affairs at each institution.

**4.      Relevant Federal and State Statutes**

None

**5.      Relevant System Policies, Procedures, and Forms**

None

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 50203**

6.    **Who Should Know**

Administrators
Dean of Students
Chief Student Affairs Officer
Students

7.    **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

8.    **Dates Approved or Amended**

Editorial amendment to Section 2.1 made July 13, 2015
December 10, 2004

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 50301**

1.    **Title**

    Off-Campus Student Housing

2.    **Rule and Regulation**

    Sec. 1    Approved Housing Status.  The institutions of The University of Texas System will not extend Approved Housing status to any student residential units except those directly operated by the System. Each student at an institution will have free choice in the selection of his or her residential accommodations not operated by the University, subject to parietal rules.

3.    **Definitions**

    None

4.    **Relevant Federal and State Statutes**

    None

5.    **Relevant System Policies, Procedures, and Forms**

    None

6.    **Who Should Know**

    Administrators
    Students

7.    **System Administration Office(s) Responsible for Rule**

    Office of Academic Affairs
    Office of Health Affairs

8.    **Dates Approved or Amended**

    December 10, 2004

9.    **Contact Information**

    Questions or comments regarding this Rule should be directed to:

       • bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 50302**

1.      **Title**

        Student Participation in Selection and Monitoring of Food Service
        Contractors

2.      **Rule and Regulation**

        Sec. 1    Establishment of Policies.  As required by the *Texas Education
                  Code* Section 51.945, each U. T. System general academic
                  institution and each health institution which offers degree
                  programs shall include as part of the respective institutional
                  *Handbook of Operating Procedures*, a policy and procedure for
                  student participation in the selection and monitoring of food
                  service vendors which contract to provide regular and ongoing
                  food or beverage services for students. The policies, at a
                  minimum, shall provide for:

                  1.1    Input on Initial Selection or Renewal.  Meaningful input
                         from student patrons in the initial selection or the renewal
                         of a contract of a food service vendor, including input in
                         the development of desired qualifications of food service
                         providers.

                  1.2    Continued Input.  Inclusion in a food service contract of a
                         commitment by the vendor to hold periodic meetings or
                         forums for student patrons to discuss the performance of
                         the food service provider.

        Sec. 2    Services Covered.  The policies are intended to cover contracts
                  for food and beverage services located in or in conjunction with
                  student unions, residence halls, or campus-wide cafeterias, and
                  contracts for vending machine food and beverage services.
                  Contracts with vendors for concessions at athletic facilities, food
                  services for special events, hospital food services, or
                  faculty/staff dining facilities do not require policies for student
                  involvement.

        Sec. 3    Required Approval.  The institutional policies and procedures,
                  which implement this requirement, are subject to approval by
                  the appropriate Executive Vice Chancellor for inclusion in the
                  institutional *Handbook of Operating Procedures*.

3.      **Definitions**

        None

---

**Page 1 of 2**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 50302**

4.      **Relevant Federal and State Statutes**

*Texas Education Code* Section 51.945 – Student Participation in Selection of Food Service Contracts

5.      **Relevant System Policies, Procedures, and Forms**

None

6.      **Who Should Know**

Administrators
Students

7.      **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

8.      **Dates Approved or Amended**

December 10, 2004

9.      **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**        **Rule: 50303**

1. **Title**

   Debts of Students

2. **Rule and Regulation**

   Sec. 1    Student Responsibilities.  The University of Texas System is not responsible for debts contracted by individual students or by student organizations. However, students and student organizations are expected to conduct themselves honorably in all commercial transactions. The U. T. System will not assume the role of a collection agency except for monies owed to the System, nor will the System adjudicate disputes between students and creditors over the existence or the amounts of debts.

   Sec. 2    Penalties for Nonpayment.  In the event of nonpayment to the U. T. System, one or more of the following actions may be taken:  (a) a bar against readmission for the student; (b) withholding of the student's grades and official transcript; (c) withholding of a degree to which the student otherwise would be entitled.

3. **Definitions**

   None

4. **Relevant Federal and State Statutes**

   None

5. **Relevant System Policies, Procedures, and Forms**

   None

6. **Who Should Know**

   Administrators
   Students

7. **System Administration Office(s) Responsible for Rule**

   Office of Academic Affairs
   Office of Health Affairs

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 50303**

**8.    Dates Approved or Amended**

December 10, 2004

**9.    Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 50304**

1.      **Title**

        Student Debit Cards

2.      **Rule and Regulation**

        Sec. 1      Delegation.  The Board of Regents delegates to each
                    institution's president the authority to establish a program to
                    provide students enrolled at the institution with a debit card. The
                    debit card program must comply with applicable State and
                    federal law. Before implementing a debit card program at the
                    institution, the president must obtain the prior approval of the
                    Executive Vice Chancellor for Business Affairs. In addition, the
                    president shall comply with applicable guidelines issued by the
                    Office of General Counsel.

3.      **Definitions**

        None

4.      **Relevant Federal and State Statutes**

        *Texas Education Code* Section 51.940 – Student Debit Cards

5.      **Relevant System Policies, Procedures, and Forms**

        The University of Texas System Administration Policy UTS167, *Banking
        Services Policy*

6.      **Who Should Know**

        Administrators

7.      **System Administration Office(s) Responsible for Rule**

        Office of Business Affairs

8.      **Dates Approved or Amended**

        Editorial amendment made to Numbers 4 and 5 on January 7, 2013
        December 10, 2004

9.      **Contact Information**

        Questions or comments regarding this Rule should be directed to:

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 50304**

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 50305**

1.    **Title**

      Employment of a Student's Attorney

2.    **Rule and Regulation**

      Sec. 1    Limitation on Representation.  If an attorney is retained in any
                manner by an institution or by a Students' Association or other
                agency of student government or other agency of an institution
                of The University of Texas System to serve as a students'
                attorney, said attorney shall not act as counsel of record nor
                represent any student, faculty member, or staff member; any
                group or combination of students, faculty members, or staff
                members; or System Administration or any institution of the
                System:

                1.1    In any matter that requires an administrative decision to
                       be made by any officer, committee, board, or agency of
                       an institution of the U. T. System, the System, or the
                       Board of Regents.

                1.2    At any stage of any felony criminal proceeding in any
                       court, or if a student suspect is attending the same
                       campus as the victim of the alleged crime. Further, no
                       representation is to be provided at trial if the detention or
                       arrest involved university police.

                1.3    At any stage of any civil proceeding in any federal, State,
                       county, or local court where such proceeding is directly or
                       indirectly against or antagonistic to the interests of the
                       U. T. System or any institution thereof, or against or
                       antagonistic to the interests of any person who is sued in
                       his or her official capacity as an officer of the System or
                       any institution thereof.

      Sec. 2    Contracts Subject to Rules.  Any contract or agreement for legal
                services entered into by a students' association or other agency
                of student government or other agency of an institution with an
                attorney whose remuneration will be paid from funds under the
                control and management of the Board of Regents, including
                funds from student fees whether compulsory or voluntary, is
                expressly subject to the applicable provisions of the Regents'
                *Rules and Regulations*.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 50305**

3.      **Definitions**

        None

4.      **Relevant Federal and State Statutes**

        None

5.      **Relevant System Policies, Procedures, and Forms**

        None

6.      **Who Should Know**

        Administrators
        Students

7.      **System Administration Office(s) Responsible for Rule**

        Office of General Counsel

8.      **Dates Approved or Amended**

        December 10, 2004

9.      **Contact Information**

        Questions or comments regarding this Rule should be directed to:

        • bor@utsystem.edu

1.      **Title**

        Student Health Insurance Requirements

2.      **Rule and Regulation**

        Sec. 1   International Students

        1.1   Requirement for International Students and Delegation of
              Authority.  The Board of Regents delegates to the Chancellor
              the authority to approve a policy on International Student
              Health Insurance, which defines the categories of students
              who shall be defined as "international students" who are
              required to maintain health insurance as a condition of
              enrollment, and outlines the health insurance requirements
              which shall be applicable to such International Students.

        1.2   The policy on International Student Health Insurance shall
              include, at a minimum:

              1.2.1   A requirement that international students subject to
                      the policy shall be automatically enrolled in the U. T.
                      System sponsored student health insurance plan
                      titled U. T. System Student Health Insurance
                      Program (UT SHIP), with the exceptions noted in
                      Section 2.2.

              1.2.2   The authority of each institution of the U. T. System
                      to assess each international student, for each
                      semester in which the international student is
                      enrolled, a Student Health Insurance Premium fee
                      (as an incidental fee authorized by *Texas Education
                      Code* Section 54.504) sufficient to cover the cost of
                      the international student's enrollment in coverage
                      under the UT SHIP and the cost of medical evacuation
                      and repatriation coverage provided through UT SHIP
                      for that semester.

              1.2.3   The process by which the enrollment requirement
                      and Health Insurance Premium fee may be waived
                      for international students who:

                      a.  are sponsored by the U.S. government, a foreign
                          government recognized by the U.S., or certain

**Exhibit 5**

international, government sponsored or nongovernmental organizations, if: 1) the sponsor has guaranteed payment of all health care expenses in writing, or 2) has provided coverage through a Patient Protection and Affordable Care Act (PPACA) compliant plan;

b. are enrolled in the U. T. System Employee Group Health Plan;

c. are enrolled in another PPACA-compliant employer-provided plan or another PPACA individual plan, with such coverage compliant with the PPACA; or

d. are enrolled exclusively in distance learning programs or classes.

1.2.4   A requirement that any international student granted a waiver based on coverage that does not include medical evacuation and repatriation coverage must purchase the medical evacuation and repatriation coverage provided through UT SHIP for each semester of enrollment; and

1.2.5   A requirement that any international student who obtains a waiver based on proof of alternative coverage as described in this Rule is required to report any lapse of such coverage to the institution immediately.

Sec. 2   Students Enrolled at Institutions with a Medical or Dental Unit

2.1   Requirement for Students Enrolled at Institutions with a Medical and Dental Unit.  In accordance with *Texas Education Code* Section 51.952, the Board of Regents is authorized to require students enrolled in a U. T. System institution with a medical or dental unit to have health insurance coverage

2.2   Delegation of Authority.  The Board of Regents delegates to the Chancellor the authority to approve a policy that defines the categories of students who are required to comply with this requirement. The policy shall also provide that the

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 50402**

> requirement may be satisfied by either the student's enrollment in UT SHIP or by the student presenting evidence of comparable PPACA health insurance from a source other than the University, following policy guidelines issued by the Chancellor.
>
> 2.3  Notification of Requirement.  Catalog supplements will be published by the U. T. System institution with a medical or dental unit regarding this requirement.

Sec. 3   Failure to comply with the policies described in Section 1 or Section 2 above shall be grounds for institutional disciplinary action against the student.

**3.    Definitions**

None

**4.    Relevant Federal and State Statutes**

Patient Protection and Affordable Care Act, Public Law 111-148

*Texas Education Code* Section 51.952 – Student Health Insurance

*Texas Education Code* Section 54.504 – Incidental Fees

*22 CFR Part 62* – Exchange Visitor Program

*45 CFR Parts 144 and 147* – Student Health Insurance Coverage

**5.    Relevant System Policies, Procedures, and Forms**

The University of Texas System Administration Policy UTS186 – Student Health Insurance Requirements for International Students

**6.    Who Should Know**

Administrators
International students
Students enrolled at institutions with a Medical or Dental Unit

**7.    System Administration Office(s) Responsible for Rule**

Office of the Chancellor

---

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 50402**

       Office of Business Affairs
       Office of Academic Affairs
       Office of Health Affairs

**8.**     **Dates Approved or Amended**

    May 15, 2014 (Rules 50402 and 50403 combined into one new Rule 50402)

**9.**     **Contact Information**

    Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 50501**

1.      **Title**

        Liability Insurance for Students

2.      **Rule and Regulation**

        Sec. 1      Students Enrolled in Health Institutions and Medical Schools at
                    Academic Institutions.  All students enrolled in a health
                    institution or a medical school at an academic institution of the
                    U. T. System in a program that involves direct patient care
                    activities shall be required to purchase professional liability
                    insurance as a prerequisite to enrollment. The appropriate level
                    of coverage shall be determined by the U. T. System Office of
                    Risk Management. The requirement shall be included in each
                    institution's catalog.

        Sec. 2      Students in Field Experience Courses.  The institutions of the
                    U. T. System may require students enrolled in field experience
                    courses to show evidence of student liability insurance when
                    enrolled in field experience courses, which utilize off-campus
                    facilities, if such facilities require the insurance. The requirement
                    shall be included in each institution's catalog.

        Sec. 3      Students in Allied Health and Nursing.  Allied health and nursing
                    students shall, prior to official registration, provide evidence of
                    professional liability (malpractice) insurance coverage in a
                    minimum amount determined by the president of the institution.
                    Nursing students receiving stipends may be reimbursed for this
                    fee through that source. The requirement shall be included in
                    each institution's catalog.

        Sec. 4      Students in Pharmacy.  All pharmacy students enrolling in fifth-
                    year clinical and/or pharmacy internship courses shall provide
                    evidence of professional liability insurance coverage paid for the
                    duration of the course or courses as a prerequisite to
                    enrollment. The effective date of the policy shall be on or before
                    the first regular class period of the clinical and/or pharmacy
                    internship course for which the student is enrolling. The
                    requirement shall be included in each institution's catalog.

3.      **Definitions**

        None

4.      **Relevant Federal and State Statutes**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**            **Rule: 50501**

*Texas Education Code* Section 54.504 – Incidental Fees

*Texas Education Code* Section 55.16 – Board Responsibility

**5.**     **Relevant System Policies, Procedures, and Forms**

None

**6.**     **Who Should Know**

Administrators
Students

**7.**     **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

**8.**     **Dates Approved or Amended**

February 11, 2016
December 10, 2004

**9.**     **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 50601**

1.      **Title**

        Student Travel

2.      **Rule and Regulation**

        Sec. 1    Establishment of Policies.  Consistent with the requirements of
                  *Texas Education Code* Section 51.950, each institution of The
                  University of Texas System shall adopt a policy governing
                  student travel. Such a policy, at a minimum, shall comply with
                  the guidelines below and become effective upon approval by the
                  appropriate Executive Vice Chancellor. Approved policies shall
                  be published in the institutional *Handbook of Operating
                  Procedures* and catalogs and filed with the Texas Higher
                  Education Coordinating Board.

        Sec. 2    Activities Governed.  This Policy is applicable to student travel
                  undertaken by one or more currently enrolled students to reach
                  an activity or event that meets all of the following criteria:

                  2.1    An activity or event organized and sponsored by the
                         institution.  An activity or event is considered to be
                         organized and sponsored if it has been planned and
                         funded by the institution and approved by an
                         administrator designated by the institution.

                  2.2    The activity or event is located more than 25 miles from
                         the institution; and

                         (a) Travel to the activity or event is funded and
                             undertaken using a vehicle owned or leased by the
                             institution; or

                         (b) Attendance at the activity or event is required by a
                             registered student organization and approved in
                             accordance with Section 3 of this Policy.

        Sec. 3    Required Approval.  Registered student organizations that
                  require their members to travel 25 miles or more from the
                  institution to attend an activity or event covered by this Policy
                  must obtain prior written approval for the proposed travel by the
                  institutional officer designated by the institution.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 50601**

Sec. 4     Required Provisions.  The policy adopted by an institution shall incorporate the following provisions concerning safety and modes of travel likely to be used by students:

    4.1     Seat Belts.  Occupants of motor vehicles shall use seat belts or other approved safety restraint devices required by law or regulation at all times when the vehicle is in operation.

    4.2     Alcohol and Illegal Substances.  Occupants of motor vehicles shall not consume, possess, or transport any alcoholic beverages or illegal substances.

    4.3     Passenger Capacity.  The total number of passengers in any vehicle at any time it is in operation shall not exceed the manufacturer's recommended capacity or the number specified in applicable federal or State law or regulations, or applicable U. T. System policy, whichever is lower.

    4.4     License and Training.  Each operator of a motor vehicle shall have a valid operator's license and be trained as required by law to drive the vehicle that will be used, and comply with applicable requirements of *The University of Texas System Administration Policy UTS157, Automobile Insurance Coverage for Officers and Employees and General Requirements for the Use of Vehicles*.

    4.5     Insurance, Inspection, and Safety Devices.  Each motor vehicle must have a current proof of liability insurance card and State inspection certification, be equipped with all safety devices or equipment required by federal or State law or regulation, and comply with all other applicable requirements of federal or State law or regulations and any applicable U. T. System policy.

    4.6     Legal Operation.  Operators of motor vehicles shall comply with all laws, regulations, and posted signs regarding speed and traffic control and shall not operate the vehicle for a continuous period that is longer than the maximum provided by guidelines promulgated by federal or State law or regulations or guidelines promulgated by the institution, whichever is lower, without scheduled rest stops or overnight stops.

**The University of Texas System**
**Rules and Regulations of the Board of Regents                     Rule: 50601**

4.7     Service and Maintenance.  Each vehicle owned or leased by an institution must be subject to scheduled periodic service and maintenance by qualified persons and comply with all applicable requirements of any U. T. System policy.

4.8     Operators of Vehicle.  All operators of vehicles owned or leased by an institution shall be employees of the institution and shall have a valid operator's license for the operation of the particular vehicle. In addition, operators of vehicles owned or leased by an institution shall only be operated by persons authorized to operate such vehicles in accordance with any U. T. System policy.

4.9     Rented Vehicles.  Each institution shall adopt rules concerning the use of rental vehicles for travel covered by this Policy. The rules shall comply, where applicable, with the State contracts for rental cars and all applicable requirements of any U. T. System policy.

4.10    Common Carrier.  When a common carrier is used for student travel covered by this policy, each institution shall take reasonable steps to assure the travel is undertaken in conformance with this Policy.

**3.     Definitions**

None

**4.     Relevant Federal and State Statutes**

*Texas Education Code* Section 51.950– Policy Regulating Student Travel

**5.     Relevant System Policies, Procedures, and Forms**

The University of Texas System Administration Policy UTS157, *Automobile Insurance Coverage for Officers and Employees and General Requirements for the Use of Vehicles*

**6.     Who Should Know**

Administrators
Students
Student Organizations

**The University of Texas System**
**Rules and Regulations of the Board of Regents                Rule: 50601**

7. **System Administration Office(s) Responsible for Rule**

   Office of Academic Affairs
   Office of Health Affairs

8. **Dates Approved or Amended**

   December 10, 2004

9. **Contact Information**

   Questions or comments regarding this Rule should be directed to:

   - bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 50701**

1.      **Title**

        Visiting U. T. System Students Program

2.      **Rule and Regulation**

        Sec. 1      Purpose.  The visiting students program is designed to allow
                    upper-level and graduate or professional students enrolled in an
                    institution of The University of Texas System to take courses or
                    engage in research at another institution within the System
                    during a regular semester or summer session.

        Sec. 2      Qualifying Students.  The U. T. System visiting students
                    program is limited to upper-level students (students with more
                    than 60 semester credit hours of degree-related college level
                    work) and graduate or professional students.

        Sec. 3      Establishment of Requirements.  Each U. T. System institution
                    with degree programs will establish requirements for eligibility
                    for participation such as a minimum grade point average and
                    completion of a minimum number of semester credit hours at
                    the home institution. The requirements may vary among
                    programs at an institution.

        Sec. 4      Designation of Coordinators.  Each institution will designate
                    individuals to coordinate visiting student programs at home and
                    host institutions. Coordinators will facilitate communication
                    between the student and appropriate major advisors at both
                    institutions. The advisor at the home institution will have final
                    authority on courses, which may receive credit under the
                    visitation program.

        Sec. 5      Coordinator Approval.  A student's proposed visitation should
                    clearly relate to the student's program and academic interest
                    and be approved by the designated program coordinator
                    (undergraduate or graduate/professional) at both the home
                    institution and the proposed host institution.

        Sec. 6      Course Availability.  Approval for a student's proposed visitation
                    will be contingent on space and desired courses being readily
                    available in the proposed visitation program and, for
                    participation in a research laboratory, on approval of the director
                    of the laboratory.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**         **Rule: 50701**

Sec. 7     Home Institution.  For continuity of financial aid, the visiting student should be registered at the home institution, with grades for any course taken at the cooperating host institution reported to the home institution.

         7.1     Identification of Courses.  The home institution will identify at the time of registration the course title/number under which the visitation course credit would be recorded.

         7.2     Reporting of Grades.  The designated visitation program coordinator at the host institution will report the student's grade(s) to the coordinator at the home institution at the end of each semester or summer session.

         7.3     How Grade will be Used.  The home institution will determine whether the grade earned at a host institution is to be treated as regular course credit for determining academic standing and grade point averages or as transfer credit.

Sec. 8     Compliance with Rules.  The visiting student will be subject to the rules and regulations of the host institution as well as the home institution.

Sec. 9     Payment of Tuition and Fees.  To maintain consistency and to assure the integrity of student financial aid requirements, charges for tuition and required fees (including course-specific fees and other required fees associated with enrollment at the host institution) are to be paid to the home institution. The host institution must provide the home institution with the list of fees to be charged and the home institution will transfer the amounts collected to the host institution.

Sec. 10     Financial Assistance.  A student awarded a fellowship, stipend, or other financial assistance by the home institution will be eligible to receive such assistance while visiting the host institution.

         10.1     Approval of Financial Support.  Acceptance of financial support from the visited institution will necessitate prior approval by the home institution.

**Exhibit 5**

10.2   Eligibility for Financial Aid.  The usual eligibility requirements for financial aid at the home institution will apply to a visiting student.

Sec. 11   Regular Admission.  The host institution for the period of the visitation will not regularly admit a visiting student and a student should not assume that he or she would be eligible for transfer to that institution.

11.1   Transfers.  If a visiting student desires to transfer to the cooperating institution, the student must comply with the regular transfer admission requirements and procedures.

11.2   Length of Visitation.  Normally, a visitation may last no longer than one long session semester or a long session semester and a summer session; otherwise, the student should apply for and be admitted to the cooperating institution.

Sec. 12   Notification of Program.  Each institution shall include in the appropriate catalog(s) information, which describes the U. T. System visiting students program, specifies eligibility requirements, and identifies the designated visiting students program coordinator(s) at that institution.

3.    **Definitions**

None

4.    **Relevant Federal and State Statutes**

None

5.    **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 40902 – Guidelines for Cooperative Use of Courses and Facilities with Texas A&M University

6.    **Who Should Know**

Administrators
Students

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 50701**

7.    **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

8.    **Dates Approved or Amended**

December 10, 2004

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 50702**

1.      **Title**

        Confidentiality and Security of Education Records Subject to the Family
        Educational Rights and Privacy Act (FERPA)

2.      **Rule and Regulation**

        Sec. 1    At the direction of the Chancellor, The University of Texas
                  System shall adopt a Systemwide policy to provide
                  guidance to U. T. System institutions, as well as the offices
                  within System Administration, on compliance with the
                  Family Educational Rights and Privacy Act (FERPA). The
                  purpose of the policy is to promote consistency and best
                  practices throughout U. T. System with regard to FERPA
                  compliance.

        Sec. 2    Each U. T. System institution and U. T. System Administration
                  shall adopt a policy in accordance with the Systemwide policy
                  described in Section 1 as part of its *Handbook of Operating
                  Procedures*. The policies adopted by U. T. System institutions
                  pursuant to this Rule must also comply with the model FERPA
                  policy developed by the Office of General Counsel that
                  incorporates best practices designed to ensure the
                  confidentiality and security of Education Records.

        Sec. 3    Each U. T. System institution and U. T. System Administration
                  shall adopt a process for the review of all proposed contracts to
                  determine if the services will involve the outsourcing of, or any
                  other access to or maintenance of, Education Records or
                  Personally Identifiable Information from an Education Record by
                  a third party contractor. All such contracts shall include terms
                  that ensure that the contractor will employ FERPA privacy and
                  security safeguards as to all of the institution's Education
                  Records that the contractor or its subsequent subcontractors will
                  maintain and/or access pursuant to the contract.

3.      **Definitions**

        Education Record – any record that is directly related to a Student and
        created and/or maintained by or for a U. T. System institution, as well as
        Personally Identifiable Information about a Student derived from an
        Education Record.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 50702**

FERPA – Family Educational Rights and Privacy Act; 20 U.S.C. Sec. 1232g and 34 CFR Part 99.

Personally Identifiable Information – any information derived from an Education Record which can be used alone, or in combination with, other information known to a requestor or the university community, to identify a student. It includes, but is not limited to: the student's name; the name of the student's parent or other family members; the address of the student or student's family; a personal identifier, such as the student's social security number, student number, or biometric record.

Student – an individual, regardless of age, who is or who has been in attendance at a U. T. System institution.

4.     **Relevant Federal and State Statutes**

Family Educational Rights and Privacy Act:  20 U.S.C. § 1232g

34 Code of Federal Regulations Part 99 – Family Educational Rights and Privacy

5.     **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations*, Rule 10101, Board Authority and Duties

Regents' *Rules and Regulations*, Rule 20201, Presidents

Model Family Educational Rights and Privacy (FERPA) Policy, Office of General Counsel

Model Notice of Student Rights under FERPA and Notice Concerning Directory Information

The University of Texas System Administration Policy UTS183, *Maintenance of Education Records Subject to the Family Educational Rights and Privacy Act (FERPA)*

The University of Texas System Administration Internal Policy INT183, *Confidentiality and Security of Education Records Subject to the Family Educational Rights and Privacy Act (FERPA)*

6.     **Who Should Know**

Administrators

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 50702**

      Faculty
      Staff

**7.**     **System Administration Office(s) Responsible for Rule**

      Office of the Board of Regents

**8.**     **Dates Approved or Amended**

      July 10, 2014

**9.**     **Contact Information**

      Questions or comments regarding this Rule should be directed to:

        • bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 50801**

1.     **Title**

       Student Learning Outcomes Assessment

2.     **Rule and Regulation**

       Sec. 1     Board Commitment.  The Board of Regents and U. T. System
                  Administration are committed to continuous improvement for the
                  purpose of establishing best practices as a means of ensuring
                  institutional effectiveness and ongoing enhancement of all
                  academic programs. Assessing student learning -- the
                  outcomes of an institution's educational programs -- is at the
                  heart of these efforts.

       Sec. 2     Purpose.  The purpose of this Rule is (a) to ensure that U. T.
                  System institutions design and implement appropriate strategies
                  for assessing student learning outcomes and for the use of
                  assessment findings for continuous improvement of teaching
                  and learning, and (b) to set forth principles and guidelines for
                  the implementation of learning outcomes assessment at
                  U. T. System institutions.

       Sec. 3     Principles and Guidelines.

                  3.1     Student learning outcomes assessment will be used to
                          inform the continuous improvement of teaching and
                          learning in all degree programs offered at each U. T.
                          System institution.

                  3.2     Assessment  of  student learning outcomes at the
                          program level are to be designed, implemented, and
                          interpreted by the faculty most directly associated with the
                          program.

                          Rationale. Outcomes assessment is based on explicit
                          learning goals or expectations associated with particular
                          educational programs. It involves the systematic
                          collection and analysis of data -- both qualitative and
                          quantitative -- to determine how well student performance
                          matches goals or expectations. The major purpose of
                          outcomes assessment is to improve student learning.

       Sec. 4     Requirements.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 50801**

    4.1    U. T. System institutions shall develop and implement methods for assessing student learning outcomes in all undergraduate, graduate, and professional programs with the expectation of establishing best practices.

    4.2    Assessment findings will be systematically analyzed and used as a basis for making changes in curriculum, instruction, advising, or other aspects of an educational program to improve student learning and success.

Sec. 5    Implementation and Reporting.

    5.1    Implementation of this Rule at the U. T. System institutions is to be consistent with the *Principles of Accreditation: Foundations for Quality Enhancement* as promulgated by the Southern Association of Colleges and Schools Commission on Colleges (SACSCOC).

    5.2    On a schedule that aligns with its reaffirmation of accreditation with SACSCOC, each institution shall submit an assessment report on student learning outcomes to the Office of Academic Affairs or to the Office of Health Affairs.

**3.    Definitions**

None

**4.    Relevant Federal and State Statutes**

None

**5.    Relevant System Policies, Procedures, and Forms**

None

**6.    Who Should Know**

Presidents and Provosts/Chief Academic Officers
Chancellor, Deputy Chancellor, and Executive Vice Chancellors
Board of Regents

**7.    System Administration Office(s) Responsible for Rule**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**        **Rule: 50801**

Office of Academic Affairs
Office of Health Affairs

**8.**     **Dates Approved or Amended**

Editorial amendment to Number 6 made July 13, 2015
May 14, 2015

**9.**     **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 60101**

1.      **Title**

        Acceptance and Administration of Gifts

2.      **Rule and Regulation**

        Sec. 1      Authority to Accept Gifts and Develop Acceptance Procedures.
                    The authority to accept gifts to The University of Texas System
                    or to any of the institutions is vested in the Board of Regents
                    and delegated by the Board as specifically set out in this Rule.
                    Except as provided in this Rule or any other Rule in the
                    Regents' *Rules and Regulations*, or approved institutional
                    policies, no member of the staff of any institution has the
                    authority to accept gifts.

        Sec. 2      U. T. System Gift Acceptance Procedures.  The Board
                    delegates to the Vice Chancellor for External Relations the
                    authority and responsibility to promulgate a set of guidelines
                    regarding the acceptance, processing, investment, and
                    administration of gifts. These guidelines, known as The
                    University of Texas System Administration Policy UTS138, *Gift
                    Acceptance Procedures*, shall be adhered to by the U. T.
                    System and the institutions. In promulgating the *U. T. System
                    Gift Acceptance Procedures*, the delegate shall also consider
                    provisions to:

                    2.1      accomplish the goal of increasing financial support for the
                             U. T. System through the appropriate assistance of
                             donors,

                    2.2      allow staff members to respond to donor initiatives
                             quickly and with certainty,

                    2.3      establish administrative processes to accept and
                             administer gifts in a prudent and efficient manner, with
                             fiduciary responsibilities of fundamental importance,

                    2.4      comply with the Texas Constitution and applicable
                             federal and State law,

                    2.5      comply with the provisions of the *Internal Revenue Code*
                             and related regulations,

                    2.6      specifically incorporate provisions related to the
                             acceptance of pledges for current purpose commitments

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 60101**

to fund endowments, and in conjunction with a gift-related naming of a facility or program as follows:

(a) for gifts and pledges to name a facility or program, a U. T. System approved gift agreement, which includes defined pledge payment terms, must be in place,

(b) prior to the creation of an endowment, at least 20% of the donors' total required minimum funding must be received and a U. T. System approved gift agreement, which contains defined pledge payment terms, must be in place, and

(c) the pledge payment duration for either endowed or non-endowed gifts shall not exceed five years. However, with the written approval of the Vice Chancellor for External Relations, the pledge period may be longer than five years under special circumstances, and

2.7    provide that, in the interest of financial responsibility and efficiency, it is the specific preference of the Board that all endowment gifts be eligible for commingling for investment purposes with other endowment funds.

Sec. 3    Board Approval of Nonconforming Gifts.  Recommendations regarding the acceptance of gifts or other actions that do not conform to all relevant policies, including but not limited to the *U. T. System Gift Acceptance Procedures*, shall be made through the Vice Chancellor for External Relations to the Board of Regents after review by appropriate offices of the terms of the gifts, the nature of the donated assets, and/or the requested action.

Sec. 4    Gifts of Art

4.1    Outdoor Works of Art.  Approval by the Board is also required prior to the acceptance of a gift of an outdoor work of art. Considerations will include appropriateness with regard to the institution's Campus Master Plan and expense related to installation and/or continuing maintenance.

4.2    Gifts of Statuary Depicting Living Persons.  No gift of statuary depicting a living person shall be accepted by an

Exhibit 5

institution, unless intended for display in a museum or for addition to the collection of works of art for display in a museum. Authority to accept proposed museum gifts of statuary depicting living persons, intended for display indoors, is delegated to the presidents. Proposed gifts of statuary intended for outdoor display require approval under Section 4.1 above.

Sec. 5    Approval of Conforming Gifts.  The Board of Regents delegates to the Chancellor or the president of an institution, following prior review and approval by the Deputy Chancellor, the appropriate Executive Vice Chancellor, and the Vice Chancellor for External Relations, the authority to accept conforming gifts, including pledges, other than gifts of real property, that are not processed or administered by the Office of External Relations, and the authority to take any and all desirable actions relating to the administration and management of gifts accepted by the Chancellor or the president of the institution, as may be permitted by applicable law, policies, these Regents' *Rules and Regulations*, and the *U. T. System Gift Acceptance Procedures*.

Sec. 6    Gifts Requiring Approval by Executive Director of Real Estate. The Board of Regents delegates to the Executive Director of Real Estate authority to accept all conforming gifts of real property of any value that are not processed or administered by the Office of External Relations, and the authority to take any and all desirable actions relating to the administration and management of gifts accepted by the Executive Director of Real Estate, as may be permitted by applicable law, policies, the *U. T. System Gift Acceptance Procedures*, The University of Texas System Administration Policy UTS161, *Environmental Review for Acquisition of Real Property*, and these Regents' *Rules and Regulations*, including Rule 60103 concerning guidelines for acceptance of gifts of real property. Acceptance of all gifts of real property shall be subject to the Regents' *Rules and Regulations,* Rule 60103 and The University of Texas System Administration Policy UTS161, *Environmental Review for Acquisition of Real Property*.

Sec. 7    Gifts Requiring Approval by Vice Chancellor for External Relations.  The Board of Regents delegates to the Vice Chancellor for External Relations authority to accept all conforming gifts, including pledges, of any value (either in cash or in kind) that are processed or administered by the Office of External Relations. The Board also delegates to the Vice

**Exhibit 5**

Chancellor for External Relations authority to take any and all desirable actions relating to the administration and management of gifts accepted by the Office of External Relations, including without limitation the modification or termination of trusts and endowments as may be permitted by applicable law, policies, these *Rules and Regulations*, and the *U. T. System Gift Acceptance Procedures*.

7.1    Gifts Reviewed.  The Office of Development and Gift Planning Services, with assistance from the Real Estate Office, the University Lands Office, and the Office of General Counsel as required, shall review all gift assets processed or administered by the Office of External Relations and certain gift assets that the Chancellor or president is authorized to accept. Gift assets requiring review include, but are not limited to, securities, interests in limited partnerships, stock of closely-held corporations, stock of S corporations, stock options, and warrants. The Office of Development and Gift Planning Services shall also review all bequests, interests in trusts, gifts, and other funds to establish endowments and other planned gifts as defined in the *U. T. System Gift Acceptance Procedures*.

7.2    Gifts to Establish Endowments.  Endowments will be established with gifts that have been completed for tax purposes or with a combination of such gifts, pledges, and other funds at a minimum funding level of $10,000.

Sec. 8    Internal Revenue Service Forms.  The Board of Regents delegates to the Chancellor, the Executive Director of Real Estate, the Vice Chancellor for External Relations, and the president of the institution the authority to execute all necessary Internal Revenue Service forms, including without limitation IRS Forms 8283 and 8282, that relate to gifts accepted by each.

Sec. 9    Gift Benefiting an Individual.  Neither the U. T. System nor any of the institutions will administer a gift for the benefit of any designated individual unless the donor is exempt from federal income taxes as defined by the Commissioner of Internal Revenue.

Sec. 10   Service by Board as Estate Executor/Administrator.  The Board of Regents will not serve as executor or administrator of an

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 60101**

estate because of the potential for conflicts of interest and the scope of the required duties.

Sec. 11    Prohibition to Act as Witness to Will.  The employees of the U. T. System or any of the institutions should not knowingly act as witnesses to wills in which the U. T. System or an institution is named as a beneficiary so as not to jeopardize the receipt of the bequest.

Sec. 12    Service by Employee as Executor/Administrator of Estate or Trustee of Trust.  Employees of the U. T. System or any of the institutions who agree to serve as trustee of a trust, or executor or administrator of an estate benefiting the U. T. System or any of the institutions are immediately to notify the Office of Development and Gift Planning Services of their appointment. Upon notification, the employee will be furnished with a statement advising of the potential for conflicts of interest and directing that all communications pertaining to the trust or estate between the employee and any office of the U. T. System or the institutions shall be in writing.

3.    **Definitions**

None

4.    **Relevant Federal and State Statutes**

Internal Revenue Code of 1986, as amended

*Texas Education Code* Section 65.36 (f) and (g) – Donations for Professorships and Scholarships

*Texas Property Code,* Chapter 163 – Management, Investment, and Expenditure of Institutional Funds

5.    **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 60103 – Guidelines for Acceptance of Gifts of Real Property

Regents' *Rules and Regulations,* Rule 60202 – Endowed Academic Positions

The University of Texas System Administration Policy UTS161, *Environmental Review for Acquisition of Real Property*

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents               Rule: 60101**

The University of Texas System Administration Policy UTS138, *Gift Acceptance Procedures*

6.    **Who Should Know**

Administrators
Chief Business Officers
Development Officers
Employees

7.    **System Administration Office(s) Responsible for Rule**

Office of External Relations
Office of General Counsel

8.    **Dates Approved or Amended**

Editorial amendment to Section 5 made July 13, 2015
May 15, 2014
Editorial amendments to Sections 6, 7.1, and 8 made September 1, 2010
November 13, 2008
February 9, 2006
December 10, 2004

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                **Rule: 60102**

1.      **Title**

        Fees for Endowment Administration and Management

2.      **Rule and Regulation**

        Sec. 1   Background.  Each University of Texas System institution is
                 charged with raising private sector contributions for the
                 establishment of endowments to fulfill the mission and goals of
                 the institution. Endowments are designated for student
                 scholarships and fellowships, faculty and administrative support,
                 and for programmatic purposes. Administration and
                 management of the endowments are the joint responsibility of
                 the U. T. System and each institution. The U. T. System and
                 System institutions must devote adequate resources to assure
                 appropriate accounting and use of endowment funds. In
                 addition, high-quality, effective compliance programs are of
                 fundamental importance and represent an ongoing fiduciary
                 responsibility of System Administration and each institution. As
                 authorized by *Texas Education Code* Section 65.37, the Board
                 of Regents may assess fees for endowment administration and
                 management.

        Sec. 2   Type and Amount of Fees.  The Board of Regents authorizes
                 The University of Texas Investment Management Company
                 (UTIMCO) to assess an administration and management fee of
                 up to 0.20% of the market value of the Long Term Fund's (LTF)
                 net asset value as determined by UTIMCO for the support of
                 endowment administration and management efforts by each
                 institution.

                 In addition, the Board of Regents authorizes UTIMCO to assess
                 an administrative fee of up to 0.03% of the market value of the
                 LTF's net asset value as determined by UTIMCO for the support
                 of endowment administration and management efforts by
                 System Administration for support of enhanced and expanded
                 System Administration endowment administration and
                 management efforts. These administration and management
                 fees replace the previously charged fee for endowment
                 compliance (0.08%) and the fee for education purposes (0.02%)
                 and those fees will no longer be assessed.

        Sec. 3   Implementation and Use of Fee.  This Rule authorizes a small
                 portion of the LTF (up to an aggregate of 0.23%) to be used to
                 offset the U. T. System and an institution's administrative and

                                                                    **Page 1 of 3**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 60102**

management activities to ensure appropriate administration and management as well as institutional compliance with the agreements made with endowment donors. The Chancellor may authorize an institution to exercise this funding option and assess up to 0.20% of the market value of its endowments invested in the LTF and up to 0.03% of the market value of all LTF endowments for System Administration.

To be eligible to receive these administration and management fees above a rate of 0.08% for the institutions and 0.02% for the U. T. System, System Administration offices and each institution must provide evidence of expenditures on endowment administration and management based on guidance provided by the Office of External Relations and verified by institutional internal audit departments in coordination with the System Audit Office. The assessment of the administration and management fees on the endowments may not exceed the amount necessary to reimburse System offices and the institution for its verified endowment administration and management expenses. An institution may exempt specific endowments from the assessment and is not required to assess a fee if it wishes to absorb administration and management expenses.

Sec. 4    Program Details.  Operational details are to be determined by the Chancellor, the President and Chief Executive Officer of UTIMCO, and/or their designated representatives.

4.1    Basis of Distributions.  Assessment level distributions will be made annually based on the prior 12-quarter average of the market value of the LTF on May 31 of each fiscal year.

3.    **Definitions**

Endowment – funds that typically have certain donor imposed restrictions placed upon the principal and/or the funds available for distribution (e.g., income and/or gains).

4.    **Relevant Federal and State Statutes**

*Texas Education Code* Section 65.37 – Funds Received for Trust Services

5.    **Relevant System Policies, Procedures, and Forms**

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**          **Rule: 60102**

The University of Texas System Administration Policy UTS138, *Gift Acceptance Procedures*

6. **Who Should Know**

   Administrators
   Chief Business Officers
   Development Officers

7. **System Administration Office(s) Responsible for Rule**

   Office of External Relations
   Audit Office

8. **Dates Approved or Amended**

   October 12, 2007
   December 10, 2004

9. **Contact Information**

   Questions or comments regarding this Rule should be directed to:

   - bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**        **Rule: 60103**

1.      **Title**

         Guidelines for Acceptance of Gifts of Real Property

2.      **Rule and Regulation**

         Sec. 1      Purpose.  To provide guidelines for accepting and valuing leasehold interests, campus properties, and bequests of surface and mineral estates in real property.

         Sec. 2      Applicability of Guidelines.  These guidelines apply to all gifts of surface and mineral estates in real property regardless of type, location, or designated use of the funds to be derived there from. In the absence of guidelines or policies relating to such gifts designated for campus use, these policy guidelines shall apply. The Board of Regents recognizes that the full implementation of these guidelines with respect to surface and mineral estates in real property donated or bequeathed to The University of Texas System or any of the institutions may not be achievable in all cases. U. T. System Administration's Real Estate Office and the University Lands Office will evaluate gifts of surface and mineral estates in real property and apply these guidelines to the extent reasonably practicable and in the best interest of the System.

         Sec. 3      Acceptance of Surface Estates.  The following procedures are to be followed for the acceptance of gifts of surface estates.

                 3.1      Notification of the Real Estate Office.  The institution (for current purpose gifts) or System Administration's Office of Development and Gift Planning Services (for planned or endowment gifts) will notify the Real Estate Office upon identification of a potential gift of real property.

                 3.2      Information to be submitted to the Real Estate Office. The institution or Real Estate Office will request that the donor provide as much of the following information as possible to allow the Real Estate Office to evaluate the proposed gift. If not paid by the donor, the benefited institution shall pay all costs incurred by the Real Estate Office to evaluate the gift or protect System's interests with respect to the gift, including title policy premiums. The Board of Regents strongly encourages the acquisition of a title policy at the time the property is

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**          **Rule: 60103**

acquired whether the policy premium is paid with funds provided by the donor or the institution.

(a) Fee interests in surface estates

- Map showing location of property

- Legal description of property

- Proof of ownership (deed)

- Survey of subject property and improvement (Category 1A survey preferred)

- List of improvements

- Copies of current leases, if any

- Current title commitment and copies of all title exceptions, including deed restrictions or covenants and liens

- Copy of the donor's title policy, if any

- List of current expenses required to maintain/operate the property

- Proof of payment of taxes and association fees, if any

- Recent appraisal or other acceptable valuation

- Copies of documents relating to past or current litigation directly affecting the real estate

- A written statement from the donor identifying any known waste disposal sites or contamination or spills of hazardous or other regulated materials on the property, or a statement to the contrary, and assuring compliance with The University of Texas System Administration Policy UTS161, *Environmental Review for Acquisition of Real Property*

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 60103**

- Written statement from the donor outlining purpose of the gift

- Permission for access to the property to conduct on-site inspections

- Such other information as may be requested by System Administration's Office of General Counsel, Real Estate Office, or Office of Development and Gift Planning Services

(b) Leased fee interests in surface estates

- Copies of fully executed leases and lease amendments

- Items listed in (a) above

- History of all lease payments

- Estoppel certificates

- Insurance policy and certificates.

3.3   Sale of a Surface Estate.  The Real Estate Office will generally request that the surface estate received from an estate or trust be sold rather than distributed to the University. The sale price shall be based upon a fair market value appraisal or other generally accepted industry standard for valuing the property. The Real Estate Office shall provide assistance to facilitate the sale of the surface estate, when appropriate. If the surface estate is not sold within a reasonable period of time, the Real Estate Office will evaluate the surface estate to determine whether the gift will be accepted or rejected.

3.4   Evaluation of Qualified Gifts.  The Real Estate Office will evaluate and inspect a proposed gift of surface estate. Only qualified gifts of surface estates will be recommended for further review and evaluation.

3.5   Unencumbered Surface Estate.  The Real Estate Office generally will not recommend acceptance of a qualified gift of an unencumbered surface estate unless there is a

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 60103**

clear benefit to the U. T. System or any of the institutions and all of the following conditions are met:

(a) Adequate provisions are made by the donor or the institution for the expense of management until disposition. The donor should be encouraged to contribute funds for the management of the property until disposition occurs. Any unreimbursed costs of management or sale of the property will be charged either against income from the property or proceeds from the sale of the property.

(b) The gift is of a 100% interest in the property.

(c) There are no undue limitations on the System's ability to own, manage, and dispose of the property.

3.6     Encumbered Surface Estate.  The Real Estate Office generally will not recommend acceptance of a qualified gift of a surface estate that is mortgaged or encumbered unless there is a clear benefit to the U. T. System or any of the institutions and all of the following conditions are met:

(a) The donor donates funds or makes other appropriate arrangements to meet all debt requirements.

(b) Adequate provisions are made by the donor or the institution for the expense of management until disposition. The donor should be encouraged to contribute funds for the management of the property until disposition occurs. Any un-reimbursed costs of management or sale of the property will be charged either against income from the property or proceeds from the sale of the property.

(c) The gift is of a 100% interest in the property.

(d) There are no undue limitations on the System's ability to own, manage, and dispose of the property.

3.7     Environmental Assessment.  An environmental assessment of the gift must be completed in accordance with the "The University of Texas System Administration

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 60103**

Policy UTS161, *Environmental Review for Acquisition of Real Property*."

3.8    Evaluation Criteria.  The Real Estate Office will consider all criteria for acceptance outlined in this policy and information gathered with respect to the property in determining whether to recommend acceptance of a qualified gift of real property. To demonstrate a clear benefit to the System, the Real Estate Office will evaluate the return expected from a qualified gift of a surface estate based on, but not limited to, such factors as income potential, development characteristics, type of property interest, holding costs, management requirements, holding period, location, potential environmental liabilities, encumbrances, and any other potential liabilities or risks associated with the asset.

3.9    Gift Acceptance.  The Real Estate Office will make a recommendation to the Responsible Officer or the Board who will accept or reject the gift.

3.10    Title.  Title to each property shall be held in the name of the Board, and not in the name of any institution, department, or individual. The Real Estate Office will ensure that all deeds for gifts of surface estates are recorded in the county where the property is located and will retain the original deed in its permanent records.

3.11    Valuation.  The preferred method of valuation for the purpose of determining gift value, sale price, or lease rates for a surface estate shall be an appraisal prepared by an independent State-certified or other licensed appraiser.

(a) The value of a surface estate less than $50,000 may be determined by solicitation of offers or by any other generally accepted industry standards including tax assessments.

(b) An appraisal is not required when a surface estate is sold at public auction or by use of sealed bids.

Sec. 4    Acceptance of Mineral Estates.  The following procedures are to be followed for the acceptance of gifts of surface estates:

4.1     Notification of the University Lands Office.  The institution (for current purpose gifts) or Office of Development and Gift Planning Services (for planned or endowment gifts) will notify the University Lands Office upon identification of a potential gift of a mineral estate. The University Lands Office will evaluate the mineral estate and determine whether the asset should be accepted or rejected by the System or in the case of a testamentary transfer or trust whether to request that the interest be sold. The University Lands Office will provide assistance to facilitate the conveyance or sale of the mineral assets.

4.2     Information to be submitted to the University Lands Office.  The institution or the University Lands Office will request that the donor provide as much of the following information as possible to allow the University Lands Office to evaluate the proposed gift. If not paid by the donor, the benefited institution shall pay all costs incurred by the University Lands Office to evaluate the gift or to protect the U. T. System's interests with respect to the gift.

(a)     Map, plat, or survey of the property

(b)     Legal description of the property

(c)     Proof of ownership (deed or assignment)

(d)     Copies of current oil and gas leases, if any

(e)     Copies of division orders, if any

(f)     Copies of other relevant documents, such as unit agreements and operating agreements

(g)     List of encumbrances including any liens and copies of the corresponding documentation

(h)     Abstracts of title or title opinions

(i)     Geological or geophysical records

(j)     Lease ratifications and lease assignments

(k)     Copies of appraisals or reserve studies

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 60103**

      (l)    Copies of documents relating to past or present litigation directly affecting the property

      (m)  Copies of insurance coverage carried by the well operator relative to environmental damage.

4.3    Sale of a Mineral Estate.  The University Lands Office will generally request that the mineral estate received from an estate or trust be conveyed. However, if the sale of the minerals is appropriate, the sale price shall be based upon a fair market value appraisal or other generally accepted industry standard for valuing the property. The University Lands Office shall provide assistance to facilitate the sale of the mineral estate, when appropriate. If the mineral estate is not sold within a reasonable period of time, the University Lands Office will evaluate the mineral estate to determine whether the gift will be accepted or disclaimed.

4.4    Evaluation of Mineral Estates.  The University Lands Office will evaluate a proposed gift of mineral estate. Only qualified gifts of mineral estates will be recommended for further review and evaluation.

4.5    Evaluation Criteria.  The University Lands Office will consider all of the criteria for acceptance outlined in this policy and information gathered with respect to the minerals in determining whether to recommend acceptance of a qualified gift of a mineral estate.

4.6    Gift Acceptance.  The University Lands Office will make a recommendation to the Responsible Officer or the Board who will accept or reject the gift.

4.7    Title.  Title to each mineral estate shall be held in the name of the Board and not in the name of any institution, department, or individual. The University Lands Office will ensure that all deeds for gifts of mineral estates are recorded in the county where the mineral estate is located and will retain the original deed in its permanent records.

4.8    Valuation of a Mineral Estate.  The preferred method of valuation for the purpose of determining value for a

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**             **Rule: 60103**

mineral estate shall be at the discretion of the University Lands Office, but shall always be by generally accepted industry standards.

**3.     Definitions**

Gift – conveyances and testamentary transfers, as well as trust distributions to the U. T. System.

Real Property – individually and collectively the surface and mineral estate.

Surface Estate – any interest in the surface of real property, including fee and leased fee interests, together with all appurtenances and improvements attached thereto, and all property interests that do not constitute the mineral estate.

Mineral Estate – mineral rights of gas, oil and minerals, whether joined to or severed from the surface estate and the associated rights as properly conveyed to the U. T. System or any of the institutions. An overriding royalty interest that is not subject to any costs shall also be a "mineral estate."

Responsible Officer – the Executive Vice Chancellor for Business Affairs or his/her designee (for current purpose gifts) or the Vice Chancellor for External Relations or his/her designee (for endowments and other planned gifts) and is responsible, based on the recommendations of the Real Estate Office and the University Lands Office, for the initiation and completion of the formal acceptance of the gift via administrative approval, the Consent Agenda, or the Agenda, as appropriate.

Qualified Gift of a Surface Estate – any interest that will net more than $25,000 upon sale or a property for which there is an effective direct use by an institution.

**4.     Relevant Federal and State Statutes**

None

**5.     Relevant System Policies, Procedures, and Forms**

The University of Texas System Administration Policy UTS138, *Gift Acceptance Procedures*

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents            Rule: 60103**

*The University of Texas System Administration Policy UTS161,*
*Environmental Review for Acquisition of Real Property*

**6.      Who Should Know**

Administrators
Chief Business Officers
Development Officers
Environmental Health and Safety Directors/Professionals
Physical Plant Directors

**7.      System Administration Office(s) Responsible for Rule**

Office of Business Affairs
Real Estate Office

**8.      Dates Approved or Amended**

Editorial amendment to Number 3 made April 12, 2012
Editorial amendments made September 3, 2010
December 10, 2004

**9.      Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                **Rule: 60201**

1.    **Title**

      Administration of Fellowships, Scholarships, and Loan Funds

2.    **Rule and Regulation**

      Sec. 1    Administration of Scholarships and Fellowships.  In the case of
                scholarships and fellowships, the appropriate committee, or
                designated individual, receives applications, makes the
                necessary inquiries, and determines the award. The committee
                or designated individual advises the institutional head of the
                award who, in turn, approves and forwards the notice of award
                to the business office. Payments on scholarships and
                fellowships are made through the business office of the
                institution.

      Sec. 2    Administration of Loan Funds.  In the case of loan funds, the
                awarding committee or designated individual receives
                applications for loans, makes the necessary inquiries, and
                approves or declines the original loan as well as all renewals
                and extensions. The chairman of the awarding committee or the
                designated individual notifies the business office of the granting
                of loans, and all records including notes, cash, accounts, and
                collections are thereafter handled by that office. The principal of
                loan funds is kept intact insofar as possible. The chairman of the
                awarding committee or the designated individual may be
                requested by the business office to assist in collection of past
                due interest or principal.

3.    **Definitions**

      None

4.    **Relevant Federal and State Statutes**

      None

5.    **Relevant System Policies, Procedures, and Forms**

      None

6.    **Who Should Know**

      Administrators
      Chief Business Officers

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 60201**

7.    **System Administration Office(s) Responsible for Rule**

Office of External Relations
Office of General Counsel

8.    **Dates Approved or Amended**

December 10, 2004

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 60202**

1.      **Title**

        Endowed Academic Positions

2.      **Rule and Regulation**

        Sec. 1      Approval Prior to Announcement.  Negotiations and fund raising
                    for an endowment are permitted prior to its formal approval and
                    establishment by the Board or its designee(s). However an
                    endowment will not be announced as having been established
                    prior to its establishment by the Board or its designee(s). No
                    initial appointment will be made to an endowed or named
                    academic position without prior approval as a Request for
                    Budget Change by the president of an institution after review
                    and approval by the appropriate Executive Vice Chancellor.
                    Subsequent new or continuing appointments to the endowed or
                    named academic positions may be approved as a part of the
                    annual operating budget.

        Sec. 2      Categories and Minimum Funding Levels.  The six categories of
                    endowed and named academic positions and the minimum
                    funding levels to establish the positions are:  Distinguished
                    University Chair ($2 million), Distinguished Chair ($1 million),
                    Chair ($500,000), Distinguished Professorship ($250,000),
                    Professorship ($100,000), and Fellowship ($50,000). All
                    agreements related to endowed academic positions made prior
                    to April 14, 1988, will remain in effect unless a specific request
                    for change is made by the donor and the institution and
                    approved by the Board of Regents. Individual institutions are not
                    required to utilize all categories of endowed academic positions
                    and may, with advance administrative approval and inclusion in
                    the institutional *Handbook of Operating Procedures*, limit
                    institutional endowment activity to those position categories
                    which best fit the institution's goals and mission.

                    2.1      Whether an endowment has attained the minimum
                             funding level necessary to establish a particular
                             academic position will be determined by the total value of
                             gifts from donors and transfers of funds valued as of the
                             gift date or date of transfer, respectively. Funding levels
                             will not be determined by the amount of net sale
                             proceeds received from a non-cash gift or by the current
                             market value of the investments held in an endowment.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 60202**

2.2   With the specific approval of the Board of Regents, a named academic position may be established without the above minimum funding levels only in accordance with agreements recommended by the Chancellor, the Deputy Chancellor, the appropriate Executive Vice Chancellor, and the Vice Chancellor for External Relations. Such agreements must contain the provisions outlined in Sections 2.3 and 2.4 immediately below.

2.3   If an external entity requests that the Board of Regents establish a named academic position based upon the entity's agreement to hold and manage an endowment fund supporting the position, the entity must irrevocably agree to dedicate the endowment to the support of the academic position in perpetuity or for a specified term of years. The entity must agree to adhere to Board policies regarding minimum funding levels for an endowment. The entity must agree to employ annual payout policies that are consistent with the goal of distributing from the endowment, or otherwise contributing to the institution, an annual payout amount substantially similar to that distributed from a comparable Board-managed endowment. The entity must agree that funds distributed from the endowment shall be paid to the institution for further expenditure in accordance with Board policies. The Board must retain the right to appoint all holders of the academic position.

2.4   If an external entity requests that the Board of Regents establish a named academic position without the funding of an endowment to support the position, the entity must irrevocably agree to contribute annually, either in perpetuity or for a specified term of years, an amount substantially similar to that distributed from a Board-managed endowment in support of a comparable position. The entity must agree that the funds will be contributed for further expenditure in accordance with Board policies regarding the particular category of academic position being established. The Board must retain the right to appoint all holders of the academic position.

Sec. 3   Distributions for Endowed Academic Positions.  The institution will pay from its funds such amounts as are necessary to set the salary of the holder at a level commensurate with his or her

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 60202**

record, experience, and position in the faculty. Distributions from the endowment may be used both for salary supplementation and for other professional support of the holder of the endowed position, including assistance in the holder's research. Endowment distributions also may be used to pay an appropriate part of the salary of the holder of the endowed position commensurate with an authorized reduced faculty workload when required by other duties of the position or when the holder is on part-time or full-time research leave which is otherwise unfunded. It is provided specifically, however, that in no event, will endowment distributions be used to supplant any other source of funds used to pay the base salary of the holder of the position when the holder is performing his or her regular duties.

Sec. 4    Establishment and Distributions of Endowed Fellowships. Distributions from the endowment may be used to supplement the salary of the holder of the fellowship, who may be a qualified person of any academic rank irrespective of tenure status, and will also be available for other professional support of the holder. The endowed fellowship will be used to provide temporary support (not to exceed one academic year) of distinguished scholars who are in temporary residence at the institution while participating in planned academic programs; visiting scholars who are in temporary residence at the institution for special academic programs or purposes; institution faculty who have made unique contributions to academic life or to knowledge in their academic discipline; and institution faculty of any academic rank, irrespective of tenure status, who have been selected for teaching excellence through procedures established by the institution. Grants for endowed visiting professorships and endowed teaching fellowships of at least $50,000 already under contractual agreement for the future, bequests included in wills made prior to April 14, 1988, and other prior bona fide arrangements for endowed teaching fellowships and endowed visiting professorships are excepted in this regulation. Grants for endowed lectureships of at least $20,000 already under contractual agreement for the future, bequests in wills made prior to April 14, 1988, and other prior bona fide arrangements for endowed lectureships are excepted from the minimum amount restriction in this regulation.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                **Rule: 60202**

3.      **Definitions**

Endowed Academic Position – an endowed academic position is a faculty position supported by an endowment from which distributions are dedicated to salary supplementation, research support, or other professional needs of a faculty member. The position holder will normally be a faculty member who has had a distinguished career. A holder may be named to an endowed academic position for the remainder of his or her employment, or for a term of years, and the position may be renewable or non-renewable.

Endowed Fellowships – an endowed fellowship (or faculty fellowship) is a faculty position supported by an endowment from which distributions are dedicated to salary supplementation, research support, or other professional needs of a faculty member of any academic rank. The endowed fellowship will be awarded for a specified length of time and may or may not be renewable.

4.      **Relevant Federal and State Statutes**

None

5.      **Relevant System Policies, Procedures, and Forms**

None

6.      **Who Should Know**

Administrators
Chief Business Officers
Development Officers

7.      **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs
Office of External Relations
Office of General Counsel

8.      **Dates Approved or Amended**

Editorial amendment to Section 2.2 on July 13, 2015
February 9, 2012
December 10, 2004

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 60202**

9.      **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents                  Rule: 60301**

1.      **Title**

        Development Board of an Institution

2.      **Rule and Regulation**

        Sec. 1    Authorization.  With the approval of the president of an
                  institution, the Vice Chancellor for External Relations, the
                  appropriate Executive Vice Chancellor, the Deputy Chancellor,
                  the Chancellor, and the Board of Regents, each institution may
                  have a development board dedicated to its own unique
                  interests.

        Sec. 2    Purpose.  An institution's development board shall serve an
                  institution of the U. T. System by assisting in the development
                  plans and programs of the institution with an emphasis on
                  increasing private support.

        Sec. 3    Composition.  Unless otherwise excepted, the institution's
                  development board shall consist of members recommended and
                  appointed by the president of the institution. Presidents of
                  institutions shall adopt guidelines for the appointment of the
                  members of the institution's development board. The guidelines
                  shall make clear each individual's term of office and the
                  expectations and responsibilities of membership. Consideration
                  shall be directed to appropriate balance in board membership,
                  including gender, ethnicity, range of experience, geographical
                  distribution, and the special needs of the institution and the
                  development board. All terms shall officially begin on
                  September 1. The president of the institution shall be an
                  *ex officio* member with voting privileges.

        Sec. 4    Governance and Bylaws.  Consistent with the Regents' *Rules
                  and Regulations*, the president of each institution shall be
                  responsible for and have authority over the institution's
                  development board. The institution's president may appoint from
                  the development board's membership a chair and such other
                  officers as appropriate or may choose to allow the membership
                  to elect such officers.

                  4.1    Model Bylaws.  Subject to the approval of the president
                         of the institution, each development board shall adopt
                         bylaws for its internal governance that are consistent with
                         this Rule and that substantially comply with model bylaws
                         developed by the Office of General Counsel.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 60301**

Sec. 5     Reporting Rosters and Expenses.  Institutions shall annually forward an accurate roster of the development board membership to the Vice Chancellor for External Relations on a designated date. In addition, each institution shall maintain specifically identifiable accounts that document any development board related revenues and expenses out of the president's office or other offices that support development board activities. These accounts must be identifiable in an institution's annual operating budget.

Sec. 6     Role of Internal Foundations.  As used in this Rule, the term "internal foundation" means an entity created by resolution of the Board of Regents of The University of Texas System for certain development purposes. An internal foundation is part of the organizational structure of either a development board or an advisory council and functions as an administrative and accounting mechanism that is employed to approach prospective donors. Internal foundations are not encouraged and shall not be established or maintained except with the approval of the president of the institution, the Vice Chancellor for External Relations, the appropriate Executive Vice Chancellor, the Deputy Chancellor, the Chancellor, and the Board of Regents.

Sec. 7     Private Development Campaigns.

7.1     Comprehensive Campaigns.  All broad-scale, institution-wide campaigns must be reviewed and approved by the Vice Chancellor for External Relations and the appropriate Executive Vice Chancellor before campaign plans, or any activity, including a silent phase of a campaign, are implemented and consultants retained.

7.2     Special Purpose Campaigns.  From time to time, special purpose campaigns for campus-specific objectives (for example, a significant scholarship fund or faculty endowment program) may be conducted without approval by the Vice Chancellor for External Relations and the appropriate Executive Vice Chancellor. However, special purpose campaigns regarding prominent buildings and programs as identified in Rule 80307 must be approved as set out in Section 7.1 above.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 60301**

Sec. 8    Ex-Students' Associations.  Not withstanding the provisions
          hereof conferring authority upon and placing responsibility with
          the Chancellor for fund development and fund raising, it is
          understood that ex-students' associations of the U. T. System
          institutions may engage in fund raising for their own support
          through dues and payments for memberships, both annual and
          life. However, it is expected that no such ex-students'
          association will sponsor or participate in any other organized
          fund raising effort without first consulting with and gaining the
          approval of the president of the institution.

Sec. 9    Development Activity Reporting.  Each institution shall
          participate annually in the Voluntary Support of Education (VSE)
          survey administered by the Council for Aid to Education (CAE)
          and submit the resulting report to the institution's president and
          the Vice Chancellor for External Relations.

3.    **Definitions**

      None

4.    **Relevant Federal and State Statutes**

      None

5.    **Relevant System Policies, Procedures, and Forms**

      Regents' *Rules and Regulations*, Rule 60302 – Advisory Councils of an
      Institution

      Office of General Counsel – Model Bylaws for a Development Board

6.    **Who Should Know**

      Administrators
      Development Officers

7.    **System Administration Office(s) Responsible for Rule**

      Office of External Relations
      Office of General Counsel

8.    **Dates Approved or Amended**

      Editorial amendment to Sections 1 and 6 made July 13, 2015

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 60301**

November 9, 2007
August 10, 2006
December 10, 2004

**9.      Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                Rule: 60302**

1.     **Title**

       Advisory Councils of an Institution

2.     **Rule and Regulation**

       Sec. 1     Authorization.  With the approval of the president of an
                  institution, the Vice Chancellor for External Relations, the
                  appropriate Executive Vice Chancellor, the Deputy Chancellor,
                  the Chancellor, and the Board of Regents, any school, college,
                  or other comparable teaching or research unit may have an
                  advisory council dedicated to its own unique interests. An
                  advisory council for any subdivision or small unit such as a
                  department or unit within a college or school requires specific
                  approval of the president.

       Sec. 2     Purpose.  An advisory council shall promote and support,
                  including assistance in increasing private support, a particular
                  school, college, or other comparable teaching or research unit
                  with which the advisory council is affiliated in a manner
                  determined by the dean or the director of the school, college, or
                  research unit subject to the approval of the institution's
                  president.

       Sec. 3     Composition.  An advisory council shall consist of members
                  recommended by the dean or director of the school, college, or
                  other approved unit and appointed by the president of the
                  institution. Presidents shall, in consultation with the dean or
                  director of the school, college, or other approved unit, adopt
                  guidelines for the appointment of the members of the
                  institution's advisory council(s). The guidelines shall make clear
                  each individual's term of office and the expectations and
                  responsibilities of membership. Consideration shall be directed
                  to appropriate balance in advisory council membership,
                  including gender, ethnicity, years of involvement or experience
                  with the college, school, or unit, geographical distribution, and
                  the special needs of the school, college, or unit and the advisory
                  council. All terms shall officially begin on September 1. A dean
                  or director shall be an *ex officio* member with voting privileges
                  on the advisory council that serves the school, college or unit's
                  advisory council he or she administers. The president of the
                  institution shall be an *ex officio* member with voting privileges of
                  all the institution's advisory councils.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 60302**

Sec. 4    Governance and Bylaws.  Consistent with the Regents' *Rules and Regulations*, the president of each institution shall be responsible for and have authority over the institution's advisory council. An advisory council will elect a chair and such other officers as are appropriate from among its membership.

4.1    Model Bylaws.  Subject to the approval of the president of the institution, each advisory council shall adopt bylaws for its internal governance that are consistent with this Rule and that substantially comply with model bylaws developed by the Office of General Counsel.

Sec. 5    Reporting and Budget.  Institutions shall annually forward an accurate roster of all advisory council memberships to the Vice Chancellor for External Relations on a designated date. Each institution shall maintain specifically identifiable accounts that document any advisory council related revenues and expenses out of the dean's office or other offices that support advisory council activities. These accounts must be identifiable in an institution's annual operating budget. An advisory council's budget shall be determined and approved through established budget procedures.

Sec. 6    Role of Internal Foundations.  As used in this Rule, the term "internal foundation" means an internal development entity created by resolution of the Board of Regents of The University of Texas System for certain development purposes. An internal foundation is part of an organizational structure of either a development board or an advisory council and functions as an administrative and accounting mechanism that is employed to approach prospective donors. Internal foundations are not encouraged and shall not be established or maintained except with the approval of the president of the institution, the Vice Chancellor for External Relations, the appropriate Executive Vice Chancellor, the Deputy Chancellor, the Chancellor, and the Board of Regents.

3.    **Definitions**

None

4.    **Relevant Federal and State Statutes**

None

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 60302**

5.      **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 60301 – Development Board of an Institution

Office of General Counsel – Model Bylaws for an Advisory Council

6.      **Who Should Know**

Administrators
Development Officers

7.      **System Administration Office(s) Responsible for Rule**

Office of External Relations

8.      **Dates Approved or Amended**

Editorial amendments made to Sections 1 and 6 made July 13, 2015
August 10, 2006
December 10, 2004

9.      **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                Rule: 60303**

1.    **Title**

      Internal Nonprofit Corporations

2.    **Rule and Regulation**

      Sec. 1    Management.  An internal corporation is managed pursuant to
                its charter and bylaws and in accordance with the Regents'
                *Rules and Regulations*.

      Sec. 2    List of Corporations.  The following internal corporation is
                presently authorized:

| Internal Corporation | Date Established |
|---|---|
| The University of Texas System Medical Foundation | 10/5/73 |

3.    **Definitions**

      Internal Corporation – As used in this Chapter, the term "internal
      corporation" means a nonprofit corporation chartered under the laws of the
      State of Texas under the Charter of which

      (1)  the Board of Regents:

           (a)    acts as the Board of Directors or has the authority to appoint
                  or to approve or reject the appointment of the Board of
                  Directors; and

           (b)    has the authority to approve amendments to the charter and
                  bylaws.

      (2) the funds of which are deposited and accounted for in appropriate
          University accounts.

4.    **Relevant Federal and State Statutes**

      None

5.    **Relevant System Policies, Procedures, and Forms**

      None

---

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 60303**

6.    **Who Should Know**

    Administrators
    Chief Business Officers
    Development Officers

7.    **System Administration Office(s) Responsible for Rule**

    Office of External Relations

8.    **Dates Approved or Amended**

    May 15, 2014
    Editorial amendment made February 24, 2011
    December 10, 2004

9.    **Contact Information**

    Questions or comments regarding this Rule should be directed to:

       • bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 60304**

1.     **Title**

       External Nonprofit Corporations

2.     **Rule and Regulation**

       Sec. 1     Acceptance of Gifts or Bequests.  The Board of Regents
                  recognizes that there are legally incorporated nonprofit
                  organizations (most having the word "foundation" in their
                  charter) whose sole purpose is to benefit The University of
                  Texas System, the institutions, or teaching, research, and other
                  activities within those institutions. These organizations are
                  administered by boards of directors independent from the
                  control and supervision of the Board of Regents. Gifts or
                  bequests from any such external organization to the University
                  must be accepted and approved under gift acceptance policies.

       Sec. 2     University-Affiliated Foundations.  The relationships between
                  the U. T. System and U. T. System institutions and nonprofit
                  organizations classified as University-Affiliated Foundations is
                  defined in Regents' Rule 60305.

3.     **Definitions**

       None

4.     **Relevant Federal and State Statutes**

       None

5.     **Relevant System Policies, Procedures, and Forms**

       Regents' *Rules and Regulations,* Rule 60101, Acceptance and
       Administration of Gifts

       Regents' *Rules and Regulations,* Rule 60305, University-Affiliated
       Foundations

       Regents' *Rules and Regulations,* Rule 60306, Use of University
       Resources

6.     **Who Should Know**

       Administrators
       Chief Business Officers

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 60304**

Development Officers

**7.      System Administration Office(s) Responsible for Rule**

Office of External Relations

**8.      Dates Approved or Amended**

May 15, 2014
December 10, 2004

**9.      Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

1.     **Title**

       University-Affiliated Foundations

2.     **Rule and Regulation**

       Sec. 1    Importance and Mission Alignment. The independence and
                 diversity of the U. T. System's university-affiliated foundations is
                 a great strength, one that uniquely reflects and serves the
                 System's mission and community with great impact. As a public
                 entity entrusted with both private and public funds, the U. T.
                 System's governing board has a responsibility to ensure that the
                 development, management, and expenditure of resources that
                 support U. T. System institutions are done in a manner
                 consistent with federal, state, and local laws, and that the focus
                 of university fundraising efforts by university personnel remain
                 on funds to be administered by the university. The U. T. System
                 also shares with its institutions and the affiliated foundations a
                 special obligation to maintain the public's trust.

                 Each U. T. System institution and its university-affiliated
                 foundations should assess, develop, and promote alignment
                 between the university-affiliated foundation's and the
                 institution's missions.

                 1.1    Memorandum of Understanding.  Each U. T. System
                        institution should engage its affiliated foundations in a
                        process to review or develop a Memorandum of
                        Understanding (MOU). The process should principally
                        involve the institution and the affiliated foundation,
                        including the chief executive of the university, the chief
                        executive officer of the affiliated foundation, and the chair
                        of the foundation board. Representatives of the U. T.
                        System's Office of External Relations, Office of Academic
                        Affairs or Office of Health Affairs, Office of General
                        Counsel, and Office of the Board of Regents and the
                        affiliated foundation's legal counsel should be engaged
                        as necessary throughout the process.

                        The resulting proposed MOU should substantially comply
                        with a model MOU developed with broad and appropriate
                        input from U. T. System institutions and university-
                        affiliated foundations and approved by the Board of
                        Regents. The MOU should also include the provisions
                        listed in Section 1.2 below.

**Exhibit 5**

The MOU process should culminate in a formal adoption of the MOU between the System or the institution and respective affiliated foundation executed by the institutional President or the Chancellor after approval by the Deputy Chancellor, the appropriate Executive Vice Chancellor, and the Vice Chancellor and General Counsel.

1.2   MOU Provisions.  The MOU should include provisions that:

(a)   Summarize the overall relationship between the foundation and the university and how the foundation's assets, functions, gift administration, or grant-making serve the university's mission.

(b)   Establish the President, or the President's designee, as the primary institutional staff contact for the university-affiliated foundation; the institution's Chief Financial Officer, or the Chief Financial Officer's designee, as the primary financial contact for the university-affiliated foundation; and the institutional Chief Development Officer, or the Chief Development Officer's designee, as the primary fundraising contact for the university-affiliated foundation.

(c)   Define the foundation's role in fundraising, if any, and delineate, as appropriate, the respective oversight responsibilities of foundation and institutional personnel with regard to prospect management, gift acceptance and receipting, and stewardship. The primary focus of fundraising efforts by university-compensated personnel, including development professionals, deans, and faculty, should remain on funds given directly to the university and administered by the university. The exclusive focus of any fundraising efforts by university-compensated personnel to benefit an external entity must be for funds to directly benefit the university.

(d)   Identify specific services provided by the foundation, which might include fundraising,  gift acceptance

**Exhibit 5**

and advancement services, records and data management, investment services, real estate projects, or other activities in support of institutional functions and priorities, and any payments or consideration provided to the foundation in exchange for such services (precise fees or payments may be documented in separate agreements).

(e)    Describe any institutional resources provided for the use of the foundation. Resources might include budget allocations, staff support, office space, and technology. Recovery of costs associated with providing such resources should be at the same rates charged to university departments. Further, the institutions and university-affiliated foundations should use separate computers and computer systems to avoid the intermingling of data and information. If a database is shared for purposes of maximizing efficiency, accuracy of data, and prospect management, the rationale for sharing a database should be documented and approved in accordance with applicable policies of the Board of Regents (see Regents' Rule 10501), and appropriate steps should be taken and documented to protect the interests of both the U. T. System institution and the university-affiliated foundation, for example, by implementing separate gift-processing modules. (Because funding and fee structures may vary from year to year, the MOU may reference separate support or service agreements or disclosures.)

(f)    Identify a process to phase out any employment arrangements currently in place between any institution and its affiliated foundation whereby an institution and foundation share staff. Where extraordinary circumstances exist requiring the continuation of any such arrangement, establish terms under which foundation functions and operations may be staffed by university employees, including a description of reporting relationships and the role played by foundation staff or board members in hiring decisions, performance evaluation, and compensation decisions. Consistent

**Exhibit 5**

with the guidance found in the Attorney General Opinion No. MW-373 (1981), U. T. System institutions lack the authority to place foundation employees on payroll or to provide them benefits reserved for state employees. (Because funding and fee structures may vary from year to year, the MOU may reference separate support or service agreements or disclosures.)

(g)   Describe records, including alumni and donor records, owned either by the institution or foundation and policies governing the use and sharing of such records, including public access under the Texas Public Information Act. The MOU should also include language related to the privacy of student information subject to the Family Educational Rights and Privacy Act (FERPA) and include procedures for providing and safeguarding any student information in full compliance with FERPA.

(h)   Define reciprocal responsibilities and mutual expectations regarding the frequency, content, and method of reporting between the university-affiliated foundation and its supported institution. This should include a requirement for an independent annual audit of the foundation and a requirement that the audit report be provided to the supported institution.

(i)   Describe the terms, process, and frequency by which foundation funds or grants will be provided to the university, including discretionary funds or funds intended to fund the compensation or benefits of university employees (not including transfers of funds for endowed faculty or administrative positions). This should also include requisition guidelines, annual guidelines for seeking foundation funds or support for the purchase of tickets to attend or sponsor third-party or institutional annual dinners, galas, auctions, or other donor-related functions, and provisions for the reimbursement to university employees for expenses incurred on behalf of the foundation.

(j)   Define terms for the foundation's use of the university's name, service marks, branding, and

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                Rule: 60305**

other proprietary university property, consistent with Board of Regents' policy. (See U. T. System Trademark Licensing Policy).

(k)  Include statements regarding (a) practices to identify and appropriately manage potential conflicts of interests involving institutional staff, foundation staff, and foundation board members, and (b) practices to prevent the payment or accrual of impermissible benefits to university or university-affiliated foundation employees, directors, or officers. This should include a prohibition of the gift or loan of university-affiliated foundation property, services, funds, credit, or assets to university employees, families, or their representatives, except under circumstances whereby a specific program or strategy has received prior written approval by the Board of Regents.

(l)  Include information regarding gift or management fees assessed by the foundation.

(m)  Clearly define the extent of any liability arising out of the relationship.

(n)  Establish guidelines and the conditions under which the MOU may be terminated by the institution or foundation and outline a process for the orderly separation of an institution from a foundation and/or a foundation from an institution as well as the distribution of foundation assets consistent with its articles of incorporation and bylaws.

1.3  Periodic Assessment.  Institutions and affiliated foundations should engage in periodic assessment of the role of the university-affiliated foundation and its relationship with its supported institution by revisiting the MOU process periodically.

1.4  Use of Name or Logo.  Execution of an MOU is required for the continued approval for the use of the name or logo of any entity within the U. T. System by a university-affiliated foundation.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**            **Rule: 60305**

Sec. 2     Transparency.  Institutions and their affiliated foundation(s) should work together to implement practices that increase transparency, openness, and disclosure to the supported institution and the public.

2.1     Each institution and its university-affiliated foundations should provide for the sharing, consistent with applicable laws and donor privacy, of financial information, audits, annual IRS filings, and other records with each other and outside parties.

2.2     Each institution and its university-affiliated foundations should work together to adopt a transparency statement oriented specifically to donors, alumni, and outside parties that

(a)     clarifies the relationship between the institution and the university-affiliated foundation;

(b)     explains the role that the private foundation plays in the university setting;

(c)     lists each foundation's leadership, budget, and assets; and

(d)     explains the difference between making a gift to the U. T. System, a U. T. institution, or the university-affiliated foundation.

2.3     Each institution and its university-affiliated foundations should adopt practices to assure the university is aware of foundation policies regarding gift or administrative fees, including the disclosure to donors or potential donors of any and all fees for endowment or non-endowment gifts, pledges, or bequests.

2.4     Each institution and its university-affiliated foundations should establish a practice to assure routine reports to donors.

2.5     Each institution should identify all affiliated foundations on its website, clearly noting their status as separate from the supported institution. Similarly, each university-affiliated foundation should have a well-developed website that provides public access to information about

Exhibit 5

the foundation's mission, a list of foundation employees and board members, and clear contact information for the foundation.

Sec. 3      Governance.  Each institution and university-affiliated foundation should:

(a)   Ensure that the work of the foundation is aligned with the strategic priorities of the supported university.

(b)   Collaborate to establish strong periodic orientation programs to educate new university officials and all new foundation board members about the foundation's mission, legal requirements, and fiduciary duties.

Sec. 4      Foundation Policies.  University-affiliated foundations should adopt policies that are transparent, reflect best practices, and mitigate even the appearance of impropriety, unfairness, financial self-dealing, or fiscal imprudence.

Sec. 5      Donor Intent.  Institutions and university-affiliated foundations should adopt and consistently apply gift acceptance policies, thoroughly document donor intent, and carefully review proposed gifts to ensure that donors' intentions can be fulfilled and that through the acceptance of gifts, institutions will not be subject to undue external influence, such as over academic programs and appointments, or to financial or compliance risk.

The policies should require consultation between the foundation and appropriate institution representatives prior to the foundation accepting gifts restricted for a) institution purposes other than those addressed in existing gift acceptance policies, or b) that may subject the institution to unusual conditions or requirements.

3.    **Definitions**

University-Affiliated Foundations - Texas nonprofit trusts or corporations whose sole, primary, or operationally significant purpose is to provide financial support to a U. T. System institution.

4.    **Relevant Federal and State Statutes**

*Texas Business Organizations Code* Section 22.353

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 60305**

*Texas Government Co*de Section 2255.001 – Rules (Private Donors or Organizations)

Texas Attorney General Opinion No. MW-373 (1981)

5.    **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations*, Rule 10501, Delegation to Act on Behalf of the Board

Regents' *Rules and Regulations*, Rule 30104, Conflict of Interest, Conflict of Commitment, and Outside Activities

Regents' *Rules and Regulations,* Rule 60101, Acceptance and Administration of Gifts

Regents' *Rules and Regulations,* Rule 60304, External Nonprofit Corporations

Regents' *Rules and Regulations,* Rule 60306, Use of University Resources

The University of Texas System Administration Policy UTS138, *Gift Acceptance Procedures*

Best Practices Regarding University-Affiliated Foundation Relationships – Advisory Task Force Report (2013)

6.    **Who Should Know**

Administrators
Chief Business Officers
Development Officers

7.    **System Administration Office(s) Responsible for Rule**

Office of External Relations

8.    **Dates Approved or Amended**

Editorial amendment to Section 1.1 made July 13, 2015
May 15, 2014

9.    **Contact Information**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 60305**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents            Rule: 60306**

1.    **Title**

      Use of University Resources

2.    **Rule and Regulation**

      Sec. 1    Chancellor's Authorization.  Unless authorized by the
                Chancellor, no officer or employee of The University of Texas
                System or any of the institutions shall accept remuneration from
                or serve as an officer, director, employee, or agent of an
                external nonprofit corporation or an external entity that has as
                its primary objective the provision of funds or services for the
                furtherance of the purposes and duties of the U. T. System or
                any of the institutions. Any employee authorized by the
                Chancellor to act in such a capacity shall not be involved in the
                negotiation of the terms or conditions of any agreement relating
                to the provision of funds, services, or property to the U. T.
                System or any of the institutions.

      Sec. 2    No Service as an Agent.  No officer or employee of the U. T.
                System or any of the institutions shall act as the agent for any
                corporation, association, organization, partnership, or individual
                in the negotiation of the terms or conditions of an agreement
                relating to the provision of funds, services, or property to the
                U. T. System or any of the institutions by such corporation,
                association, organization, partnership, or individual.

      Sec. 3    Compensation for Resources Used.  The use of equipment,
                facilities, or services of employees of the U. T. System or any of
                the institutions by an external nonprofit corporation or external
                entity that has as its primary objective the provision of funds or
                services for the furtherance of the purposes and duties of the
                U. T. System shall be permitted only in accordance with a
                negotiated agreement that provides for the payment of
                adequate compensation for such equipment, facilities or
                services.

3.    **Definitions**

      None

4.    **Relevant Federal and State Statutes**

      *Texas Government Co*de Section 2255.001 – Rules (Private Donors or
      Organizations)

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**         **Rule: 60306**

5. **Relevant System Policies, Procedures, and Forms**

   None

6. **Who Should Know**

   Administrators
   Chief Business Officers
   Development Officers

7. **System Administration Office(s) Responsible for Rule**

   Office of External Relations

8. **Dates Approved or Amended**

   Editorial amendment to Number 4 made December 22, 2011
   December 10, 2004

9. **Contact Information**

   Questions or comments regarding this Rule should be directed to:

   - bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                 Rule: 70101**

1. **Title**

    Authority to Accept and Manage Assets

2. **Rule and Regulation**

    Sec. 1    Acceptance of Real Property.  The management and disposition of interests in real property owned or controlled by the Board of Regents, other than real property acquired and managed by The University of Texas Investment Management Company (UTIMCO) for investment purposes, are governed by Rule 70301 of the Regents' *Rules and Regulations*.

    Sec. 2    Acceptance of Funds for Endowment or Life Income Funds.  All assets received by the Board of Regents to establish, or that modify, an endowment (other than the Permanent University Fund), a fund functioning as an endowment, or a life income fund shall be accepted and processed by the Office of External Relations and, after acceptance and processing, shall be delivered to the appropriate office for management.

    Sec. 3    Acceptance of Funds from a Bequest, Trust, or Planned Gift.  All assets received by the Board of Regents through a bequest, a distribution from an account held in trust by others, or for the establishment or modification of any planned gift shall be accepted and processed by the Office of External Relations and, after acceptance and processing, shall be delivered to the appropriate office for management.

    Sec. 4    Acceptance of Intellectual Property Rights.  Rights in intellectual property received by the Board of Regents to establish or modify an endowment, a fund functioning as an endowment, or a life income fund or received through a bequest, a distribution from an account held in trust by others, or for the establishment or modification of any planned gift shall be accepted and processed by the Office of External Relations and after acceptance and processing, shall be delivered to the appropriate office for management in accordance with this Rule. This Rule shall not apply to rights in intellectual property owned or controlled by the Board except as provided in this section.

    Sec. 5    Management of Permanent University Fund (PUF) Assets.  All assets of the PUF, other than PUF lands, shall be managed by UTIMCO or as otherwise directed by the Board of Regents.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 70101**

Sec. 6   Management of Endowment and Life Income Funds.  All assets received for or held in an endowment fund (other than the PUF), a fund functioning as an endowment, or a life income fund shall be managed by UTIMCO or as otherwise directed by the Board of Regents.

Sec. 7   Management of Consolidated System Funds.  All assets of Retirement of Indebtedness Funds, Bond Proceeds, Unemployment Compensation Funds, Workers' Compensation Funds, the Medical/Dental Self-Insurance Fund, the Vision Services Fund, the Student Health Insurance Fund, the Flexible Benefits Fund, the Rolling Owner-Controlled Insurance Fund, the Comprehensive Property Protection Plan, the Comprehensive Property Protection Plan Catastrophic Self-Insurance Fund, the Director & Officer/Employee Practices Insurance Fund, the Resource Allocation Program and the Medical Liability Self-Insurance Fund ("consolidated U. T. System funds") shall be managed with respect to investment of such funds as set forth below:

   7.1   The Office of Business Affairs shall invest the Retirement of Indebtedness Funds, Bond Proceeds, Unemployment Compensation Funds, Workers' Compensation Funds, the Medical/Dental Self-Insurance Fund, the Student Health Insurance Fund, the Flexible Benefits Fund, the Rolling Owner-Controlled Insurance Fund, the Comprehensive Property Protection Plan, the Comprehensive Property Protection Plan Catastrophic Self-Insurance Fund, the Director & Officer/Employee Practices Insurance Fund, the Resource Allocation Program and the Vision Services Fund in the same manner that chief business officers may invest the operating funds of each institution.

   7.2   UTIMCO shall invest the Medical Liability Self-Insurance Fund in the Long Term Fund, Intermediate Term Fund, and Short Term Fund as directed by the Vice Chancellor and General Counsel.

Sec. 8   Management of Other Assets.  Assets that are not a part of the PUF, an endowment fund, a fund functioning as an endowment, a life income fund, or consolidated U. T. System funds shall be managed as set forth in this section:

Exhibit 5

8.1     Tangible personal property shall be managed by the institutional president.

8.2     Intangible personal property consisting of securities, interests in businesses, and equity interests in technology transfer firms as set out in the Regents' intellectual property policy shall be managed by the institutional president or by UTIMCO, as determined by the institutional president. UTIMCO shall hold all stock certificates of securities managed by, or held on behalf of, the institutional president and shall assign, transfer, or sell such securities, as directed by the institutional president or his or her designees, in accordance with this Rule. Other intangible personal property shall be managed by the institutional president.

8.3     The institutional president may designate in writing one or more committees, employees, officers, or other agents of the institution, or one or more outside managers to manage any or all of the assets described in 8.1 or 8.2 immediately above on behalf of the institutional president.

Sec. 9     Authority to Execute Transactions – UTIMCO.  Pursuant to an Investment Management Services Agreement and Investment Policy Statement approved by the Board of Regents, UTIMCO shall be authorized to purchase, exchange, and sell, for and on behalf of the PUF or the Board of Regents, any and all securities of any description and from any source, including gifts and bequests, registered in the name of the PUF or the Board, or in any other form of registration of such securities held for the account of the PUF or the Board in whatever manner, including all fiduciary capacities and including those registered in the names of trusts or foundations managed and controlled by said Board. In addition, external investment managers appointed by UTIMCO may purchase, sell, or exchange securities, pursuant to written agreement with UTIMCO and in accordance with the applicable Investment Policy Statements.

Sec. 10     Authority to Transact Through Investment Dealers.  Sales, purchases, and exchanges by UTIMCO shall be effected through investment dealers or brokers in accordance with the applicable Investment Policy Statement.

Sec. 11     Authority to Execute Securities Transactions – Development and Gift Planning Services.  The Associate Vice Chancellor for

**Exhibit 5**

Development and Gift Planning Services shall be authorized to sell, for and on behalf of the Board of Regents, any and all securities received as gifts and/or bequests, registered in the name of the Board, or in any other form of registration of such securities held for the account of the Board in whatever manner, including all fiduciary capacities and including those registered in the names of trusts managed and controlled by said Board.

Sec. 12   Authority to Assign and Transfer Securities Owned by the PUF and the Board of Regents.  UTIMCO may assign and transfer any and all securities of any description and from any source, including gifts and bequests, and execute any and all documents necessary to the consummation of any sale, assignment, or transfer of any securities registered in the name of the PUF or the Board, or in any other form of registration of such securities held for the account of the PUF or the Board in whatever manner, including all fiduciary capacities and including those registered in the names of trusts or foundations managed and controlled by said Board. In addition, custodian banks appointed by UTIMCO may assign and transfer securities and execute any and all documents necessary to the consummation of any sale, assignment, or transfer of any security owned by the Board.

Sec. 13   Authority to Collect Money or Property – UTIMCO.  UTIMCO is authorized and empowered to seek, demand, collect, recover, and receive any and all sums of money, debts, dues, rights, property, effects, or demands due, payable, or belonging, or that may become due, payable, or belonging to the PUF or the Board of Regents from any person or persons as a result of any investment transaction and to execute any and all necessary or proper receipts, releases, and discharges therefore and any other instruments as may be necessary or appropriate from time to time relating to the handling, management, control, and disposition of any investment.

Sec. 14   Authority to Collect Money or Property – External Relations. The Vice Chancellor for External Relations or the Associate Vice Chancellor for Development and Gift Planning Services is authorized to seek, demand, collect, recover, and receive any and all sums of money, debts, dues, rights, property, effects, or demands due, payable, or belonging, or that may become due or payable to the Board of Regents from any person or persons as a result of, or relating to, a gift or bequest and to execute any and all necessary or proper receipts, releases, and discharges

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 70101**

and any other instruments as may be necessary or appropriate from time to time relating to the receipt, handling, management, control, and disposition of any asset acquired by gift or bequest unless and until such time as the Office of Development and Gift Planning Services has delivered the asset to another office for management purposes as provided in these *Rules and Regulations.*

Sec. 15     Authority as Relates to Litigation.  The authority granted in Sections 13 and 14 above does not include the authority to institute litigation on behalf of the Board of Regents or to settle contested claims or litigation that may result in UTIMCO or the U. T. System receiving less than full value for the claim or the payment of damages or awards. The settlement of any contested claim or litigation for less than full value requires the prior approval of the U. T. System Vice Chancellor and General Counsel and appropriate U. T. System officials, as set out in the Regents' *Rules and Regulations,* Rule 10501.

Sec 16     Authority to Execute Proxies and Consent to Modifications in Bond Indentures – UTIMCO.  UTIMCO is authorized to consent to modifications in bond indentures and to execute proxies within the approved investment policies.

Sec. 17     Authority to Use Book-Entry Form.  Securities owned by the PUF or the Board of Regents may be delivered and maintained by a custodian bank or a member bank of the Federal Reserve System in book-entry form subject to applicable law.

3.    **Definitions**

Endowment funds – funds that typically have certain donor imposed restrictions placed upon the principal and/or the funds available for distribution (e.g., income and/or gains).

Custodian bank – a bank that provides custody services pursuant to an agreement with the Board of Regents or UTIMCO.

Member bank – one of the twelve Reserve Banks that comprise the Federal Reserve System.

4.    **Relevant Federal and State Statutes**

None

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 70101**

5.    **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 10501 – Delegation to Act on Behalf of the Board

Regents' *Rules and Regulations,* Rule 70301 – Matters Relating to Real Property

6.    **Who Should Know**

Administrators
UTIMCO Board of Directors
UTIMCO Employees

7.    **System Administration Office(s) Responsible for Rule**

Office of Business Affairs
Office of Development and Gift Planning Services
Office of External Relations
Office of General Counsel

8.    **Dates Approved or Amended**

Editorial amendments to Sections 11 and 14 made on December 15, 2011
Editorial amendments to Sections 11 and 14 made on October 3, 2008
December 10, 2004

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**       **Rule: 70201**

1.      **Title**

        Investment Policies

2.      **Rule and Regulation**

     Sec. 1     Permanent University Fund (PUF). The policies for the investment of funds for the PUF shall be those outlined in the Permanent University Fund Investment Policy Statement.

     Sec. 2     Investment Pools. The policies for the investment of funds for U. T. investment pools shall be those outlined in the applicable Investment Policy Statement. Each pooled fund established by The University of Texas System shall be administered according to the U. T. System Separately Invested Funds Investment Policy Statement, the fund's trust indenture, and applicable law.

     Sec. 3     Endowments. Endowment funds and funds functioning as endowments will be managed in a manner consistent with the governing instrument, The University of Texas System Administration Policy UTS138, *Gift Acceptance Procedures*, and the investment standards set forth in the Uniform Management of Institutional Funds Act (*Texas Property Code,* Chapter 163 et seq.). These funds will be invested in the Long Term Fund unless the terms of the instrument by which the endowment was created preclude commingling of assets. Those endowments for which the terms of the instrument preclude the commingling of assets or for which illiquid assets are held will be separately invested.

     Sec. 4     Life Income Funds. Life income funds will be invested and administered consistent with the governing instrument, The U. T. System Separately Invested Endowment, Trust, and Other Accounts Investment Policy Statement, the *U. T. System Gift Acceptance Procedures*, and the investment standards set forth in the *Texas Trust Code* (*Texas Property Code* Section 111.001 et seq.).

     Sec. 5     System Medical Liability Fund. The Professional Medical Liability Fund shall be administered in a manner consistent with all provisions of the System Professional Medical Liability Benefit Plan.

     Sec. 6     Other Accounts. Other Accounts as defined in the U. T. System Separately Invested Endowment, Trust, and Other Accounts

**The University of Texas System**
**Rules and Regulations of the Board of Regents                Rule: 70201**

Investment Policy Statement shall be invested and administered consistent with that policy.

Sec. 7    Required Reports.  The following annual reports are required:

7.1    The investment performance of the PUF, as measured by an unaffiliated organization, shall be reported to the Board of Regents at least annually.

7.2    The nature and extent of any investments in or business transacted with any firm with which a director, officer or employee of UTIMCO is affiliated will be reported to the Board of Regents annually.

Sec. 8    Authorization to Protect Investments.  UTIMCO is authorized to take any and all steps as may be considered necessary or advisable to protect the interest of the PUF, Investment Pools, Endowments, and Life Income Funds in event of default or any other significant changes occurring with respect to any investment.

Sec. 9    Stock Rights and Warrants.  Exercise of or sale of stock rights and warrants is to be made at the discretion of UTIMCO.

Sec. 10    Fractional Shares.  Fractional shares that arise in connection with funds under control of UTIMCO shall be handled at its discretion.

Sec. 11    Voting Stocks.  As a general rule, voting stocks held are to be voted by UTIMCO pursuant to its proxy voting policy.

Sec 12    Financial Advisors and Service Provider Disclosures.  Financial advisors and service providers as defined in *Texas Government Code* Section 2263.002 shall comply with the disclosure requirements contained in *Texas Government Code* Section 2263.004.

Sec. 13    Referrals to UTIMCO and Related Disclosures.  Members of the U. T. Board of Regents and U. T. System officers and employees shall avoid all appearance of conflict of interest pertaining to UTIMCO's investment opportunities. Referral of information related to investment opportunities outside of a posted open meeting of the U. T. Board of Regents or the UTIMCO Board of Directors must be made directly to the UTIMCO President and CEO without endorsement of the merits

**Page 2 of 4**

Exhibit 5

of the potential investment and with full disclosure concerning whether the investment opportunity involves any potential economic benefit to the individual making the referral or to an individual related within the second degree of affinity or the third degree of consanguinity to the individual making the referral. Referrals will be accepted with the understanding that decisions on individual investments are at the discretion of the UTIMCO Board and staff.

13.1   Applicability to UTIMCO Board.  Members of the UTIMCO Board of Directors are to be guided by the same requirements through UTIMCO policies.

13.2   Disclosure of Referrals.  Should UTIMCO staff ultimately recommend to the UTIMCO Board an investment that was the subject of a direct referral from a member of the U. T. Board of Regents, an officer or employee of the U. T. System, or a member of the UTIMCO Board of Directors, UTIMCO staff is required to disclose the source of the referral and whether such referral involves any potential economic benefit to the individual making the referral or to an individual related within the second degree of affinity or the third degree of consanguinity to the individual making the referral.

3.     **Definitions**

None

4.     **Relevant Federal and State Statutes**

*Texas Government Code* Sections 2263.002 – Definition of financial advisor or service

*Texas Government Code* Section 2263.004 – Ethics Requirements for Outside Financial Advisors or Service Providers

*Texas Property Code,* Chapter 163 – Management, Investment and Expenditure of Institutional Funds

*Texas Property Code* Section 111.001 – Trusts

5.     **Relevant System Policies, Procedures, and Forms**

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 70201**

The University of Texas System Administration Policy UTS138, *Gift Acceptance Procedures*

Regents' *Rules and Regulations,* Rule 60101 – Acceptance and Administration of Gifts

Permanent University Fund Investment Policy Statement

General Endowment Fund Investment Policy Statement

Permanent Health Fund Investment Policy Statement

Long Term Fund Investment Policy Statement

Intermediate Term Fund Investment Policy Statement

Separately Invested Funds Investment Policy Statement

Short Term Fund Investment Policy Statement

Allocation for Non-endowment Funds Policy Statement

6.     **Who Should Know**

Administrators
UTIMCO Board of Directors
UTIMCO Employees

7.     **System Administration Office(s) Responsible for Rule**

Office of Business Affairs
Office of External Relations
Office of General Counsel

8.     **Dates Approved or Amended**

Editorial amendments to Sec. 5 and Number 5 made February 19, 2015
Editorial amendments to Sec. 2 and Number 5 made April 23, 2008
December 10, 2004

9.     **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 70202**

1. **Title**

   Interest Rate Swap Policy

2. **Rule and Regulation**

   Sec. 1   Authority.  *Texas Education Code*, Chapter 55, including
            Section 55.13, *Texas Education Code,* Chapter 65, including
            Section 65.461, and *Texas Government Code*, Chapter 1371,
            including Section 1371.056, authorize the Board of Regents
            (Board) of The University of Texas System (U. T. System) to
            enter into interest rate management agreements and bond
            enhancement agreements (collectively "swaps").

   Sec. 2   Purpose.  This policy will govern the use of swaps in connection
            with the U. T. System's management of its debt programs,
            including the Permanent University Fund and Revenue
            Financing System debt programs. By using swaps in a prudent
            manner, the U. T. System can increase the U. T. System's
            financial flexibility, provide opportunities for interest rate
            savings, allow the U. T. System to actively manage asset and
            liability interest rate risk, take advantage of market opportunities
            to lower the overall cost of debt, balance interest rate risk, or
            hedge other exposures. The use of swaps must be tied directly
            to U. T. System debt instruments. The U. T. System shall not
            enter into swaps for speculative purposes.

   Sec. 3   Legality/Approval.  Prior to entering into a swap, the U. T.
            System must receive approval from the Board of Regents
            (which may include a delegation of authority to an Authorized
            Representative to enter into one or more swaps) and any
            required approvals from the Texas Attorney General and the
            Texas Bond Review Board. The U. T. System will also secure
            an opinion acceptable to the Authorized Representative from
            legal counsel that the swap is a legal, valid, and binding
            obligation of the U. T. System and that entering into the
            swap complies with applicable State and federal laws.

   Sec. 4   Form of Agreements.  Each interest rate swap shall contain
            terms and conditions as set forth in the International Swaps
            and Derivatives Association, Inc. (ISDA) Master Agreement,
            as amended, and such other terms and conditions including
            schedules, credit support annexes, and confirmations as
            deemed necessary by an Authorized Representative.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 70202**

Sec. 5    Methods of Procuring Swaps.  Swaps can be procured via competitive bids or on a negotiated basis with counterparties or its credit support providers having credit ratings of 'A' or 'A2' or better from Standard & Poor's or Moody's, respectively.

5.1    Competitive.  The competitive bid should include a minimum of three firms. An Authorized Representative may allow a firm or firms not submitting the bid that produces the lowest cost to match the lowest bid and be awarded a specified percentage of the notional amount of the swap.

5.2    Negotiated.  An Authorized Representative may procure swaps by negotiated methods in the following situations:

(a) A determination is made by an Authorized Representative that due to the complexity of a particular swap, a negotiated bid would result in the most favorable pricing;

(b) A determination is made by an Authorized Representative that, in light of the facts and circumstances, a negotiated bid will promote the U. T. System's interests by encouraging and rewarding innovation; or

(c) A determination is made by an Authorized Representative that a competitive bid would likely create market pricing effects that would be detrimental to the interests of the U. T. System.

Sec. 6    Counterparty Risk.  Counterparty risk is the risk of a failure by one of the U. T. System's swap counterparties to perform as required under a swap. To mitigate this risk, the U. T. System will 1) diversify its exposure among highly rated swap counterparties satisfying the rating criteria set forth in Section 5 above; 2) require collateralization as set forth below; and 3) include an optional termination event if the counterparty (or its credit support provider, if applicable) is downgraded below a second (lower) threshold.

6.1    Value Owed by Counterparty.  To limit and diversify the U. T. System's counterparty risk and to monitor credit exposure to each counterparty, the U. T. System may not enter into a swap with an otherwise qualified counterparty

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**          **Rule: 70202**

unless the cumulative mark-to-market value owed by the counterparty (and its credit support provider, if applicable) to the U. T. System shall be less than or equal to the applicable threshold amount set forth in Section 6.3 below.

6.2    Calculation of Value Owed.  The value owed shall be the sum of all mark-to-market values between the subject counterparty and the U. T. System regardless of the type of swap, net of collateral posted by the counterparty. Collateral will consist of cash, U.S. Treasury securities, and Federal Agency securities guaranteed unconditionally by the full faith and credit of the U.S. Government. Collateral shall be deposited with a third party trustee acceptable to U. T. System or as mutually agreed upon between U. T. System and each counterparty.

6.3    Threshold Amounts Based on Credit Rating.  Specific threshold amounts by counterparty are based on the cumulative mark-to-market value of the swap(s) and the credit rating of the counterparty or its credit support provider. The threshold amounts are as follows:

    (a) AAA / Aaa        $30 million
    (b) AA+ / Aa1        $25 million
    (c) AA / Aa2         $20 million
    (d) AA- / Aa3        $15 million
    (e) A+ / A1          $10 million
    (f)  A / A2          $ 5 million

6.4    Downgraded Rating.  If the credit rating of a counterparty or its credit support provider is downgraded such that the cumulative mark-to-market value of all swaps between such counterparty and the U. T. System exceeds the maximum permitted by this policy, the counterparty must post collateral or provide other credit enhancement that is satisfactory to the U. T. System and ensures compliance with this policy.

Sec. 7    Termination Risk.  The U. T. System shall consider the merits of including a provision that permits optional termination at any time over the term of the swap (elective termination right). In general, exercising the right to optionally terminate a swap should produce a benefit to the U. T. System, either through

Exhibit 5

receipt of a payment from a termination, or if a termination payment is made by the U. T. System, a conversion to a more beneficial debt instrument or credit relationship. It is possible that a termination payment by the U. T. System may be required in the event of termination of a swap due to a counterparty default or following a decrease in credit rating.

Sec. 8      Amortization Risk. The amortization schedules of the debt and associated swap should be closely matched for the duration of the swap. Mismatched amortization schedules can result in a less than satisfactory hedge and create unnecessary risk. In no circumstance may (i) the notional amount of a swap exceed the principal amount of the related debt at any time, or (ii) the term of a swap extend beyond the final maturity date of the related debt instrument, or in the case of a refunding transaction, beyond the final maturity date of the refunding bonds.

Sec. 9      Basis Risk. Basis risk arises as a result of movement in the underlying variable rate indices that may not be in tandem, creating a cost differential that could result in a net cash outflow from the U. T. System. Basis risk can also result from the use of floating, but different, indices. To mitigate basis risk, any index used as part of a swap shall be a recognized market index, including but not limited to the Securities Industry and Financial Markets Association (SIFMA) Municipal Swap Index or the London Interbank Offered Rate (LIBOR).

Sec. 10     Tax Risk. Tax risk is the risk that tax laws will change, resulting in a change in the marginal tax rates on swaps and their underlying assets. Tax risk is present in all tax-exempt debt issuances. The U. T. System Office of Finance will continually monitor and evaluate tax risk.

Sec. 11     Interest Rate Risk. Interest rate risk is the risk that costs associated with variable rate exposure increase as a result of changes in market interest rates. Additional interest rate risk can be created by entering into certain types of swaps. The U. T. System Office of Finance will incorporate the impact of each swap on the overall debt portfolio.

Sec. 12     Reporting.

        12.1     The U. T. System Office of Finance staff will report to the Board within 30 days of completion of any swap transaction.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**          **Rule: 70202**

12.2   The Annual Financial Report prepared by the U. T. System and presented to the Board of Regents will discuss the status of all swaps. The report shall include a list of all swaps with notional value and interest rates, a list of counterparties (and credit support providers, if applicable) and their respective credit ratings, and other key terms.

Sec. 13   Qualified Independent Representative.  In connection with Commodities Futures Trading Commission Rule 23.450(b)(1), an Authorized Representative will select a qualified independent representative (QIR) to advise the U. T. System Office of Finance on derivative transactions, and U. T. System Office of Finance staff will monitor the performance of such QIR on an ongoing basis. The U. T. System Office of Finance will consult with the QIR prior to entering into or modifying any derivative transactions.

3.   **Definitions**

Authorized Representative – includes the Executive Vice Chancellor for Business Affairs, the Vice Chancellor and General Counsel, the Associate Vice Chancellor for Finance, and the Assistant Vice Chancellor for Finance.

Counterparty – a participant in a swap who exchanges payments based on interest rates or other criteria with another counterparty.

Counterparty Long-Term Debt Rating – lowest prevailing rating from Standard & Poor's / Moody's.

Hedge – a transaction entered into to reduce exposure to market fluctuations.

Interest Rate Swap – a swap in which two parties agree to exchange future net cash flows based on predetermined interest rates or indices calculated on an agreed notional amount. An interest rate swap is not a debt instrument and there is no exchange of principal.

ISDA Master Agreement – the International Swaps and Derivatives Association, Inc. (ISDA), is the global trade association for the derivatives industry. The ISDA Master Agreement is the basic governing document that serves as a framework for all interest rate swaps and certain other

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 70202**

types of swaps between two counterparties. It is a standard form used throughout the industry. It is typically negotiated once, prior to the first swap transaction, and remains in force for all subsequent swap transactions.

London Interbank Offered Rate (LIBOR) – the rate of interest at which banks borrow funds from other banks in the London interbank market. It is a commonly used benchmark for swaps.

Mark-to-Market – calculation of the value of a financial instrument (like an interest rate swap) based on the current market rates or prices of the underlying indices.

Maximum cumulative mark-to-market – value of swaps owed to the U. T. System by counterparty (net of collateral posted).

Notional Amount – the size of the swap and the dollar amount used to calculate interest payments.

SIFMA Index – the principal benchmark for floating rate payments for tax-exempt issuers [formerly known as the Bond Market Association (BMA) Municipal Swap index]. The index is a national rate based on a market basket of high-grade, seven-day, tax-exempt variable rate bond issues.

**4.      Relevant Federal and State Statutes**

*Texas Education Code,* Chapter 55 – Financing Permanent Improvements

*Texas Education Code,* Chapter 65 – Administration of The University of Texas System

*Texas Government Code,* Chapter 1371 – Obligations for Certain Public Improvements

**5.      Relevant System Policies, Procedures, and Forms**

None

**6.      Who Should Know**

Administrators

**7.      System Administration Office(s) Responsible for Rule**

Office of Business Affairs

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                **Rule: 70202**

**8.    Dates Approved or Amended**

   Editorial amendment to Number 3 made July 24, 2012
   Editorial amendments made June 30, 2011
   August 23, 2007
   December 10, 2004

**9.    Contact Information**

   Questions or comments regarding this Rule should be directed to:

   • bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 70301**

1.      **Title**

        Matters Relating to Real Property

2.      **Rule and Regulation**

        Sec. 1      Management of Real Property Generally.  All interests in real
                    property owned or controlled by the Board of Regents shall be
                    administered and managed by System Administration's Real
                    Estate Office, except Permanent University Fund lands, real
                    properties used for institutional purposes, and real property
                    investments managed by UTIMCO. "Institutional purposes" shall
                    not include use solely to generate funds for the institution.

        Sec. 2      Management of Real Properties Used for Institutional Purposes.
                    All interests in real property owned or controlled by the Board of
                    Regents and used for institutional purposes shall be
                    administered and managed by the institution, with the
                    assistance and supervision of U. T. System Administration's
                    Real Estate Office.

        Sec. 3      Management of Permanent University Fund Lands.  Permanent
                    University Fund lands shall be administered and managed by
                    U. T. System Administration's University Lands Office.

        Sec. 4      Delegation of Authority.  Subject to Sections 4.1, 4.2, and 4.3
                    below and the general provisions of Rule 10501 of the Regents'
                    *Rules and Regulations* and except as otherwise specified in
                    these *Rules and Regulations*, the Board of Regents delegates
                    to the Executive Vice Chancellor for Business Affairs or a
                    designee specified in writing the authority to execute and deliver
                    on behalf of the Board contracts, agreements, and other
                    documents or instruments regarding or conveying interests in
                    Permanent University Fund lands and in mineral interests in
                    other lands owned or controlled by the Board. The authority
                    granted in this Section to the Executive Vice Chancellor for
                    Business Affairs shall include all instruments necessary and
                    convenient relating to the management, control, sale,
                    acquisition, lease, and disposition of Permanent University Fund
                    lands, including mineral interests, and of mineral interests in
                    other lands owned or controlled by the Board, and licenses and
                    permits for activities on Permanent University Fund lands.
                    Subject to Sections 4.1, 4.2, and 4.3 below and the general
                    provisions of Rule 10501 of the Regents' *Rules and Regulations*
                    and except as otherwise specified in these *Rules and*

Exhibit 5

*Regulations*, the Board of Regents delegates to the Executive Director of Real Estate or a designee specified in writing the authority to execute and deliver on behalf of the Board contracts, agreements, and other documents or instruments regarding or conveying interests in real property owned or controlled by the Board, including real property acquired by purchase, gift, or bequest and real property used for institutional purposes, but excluding Permanent University Fund lands and leases of mineral interests in other lands owned or controlled by the Board. Except as provided in the preceding sentence, the authority granted in this Section to the Executive Director of Real Estate shall include all instruments necessary and convenient relating to the management, control, sale, acquisition, lease, and disposition of any real property or interests in real property owned or controlled by the Board, including mineral interests, and licenses, permits for activities on such real property, and instruments relating to mortgages.

4.1    The delegate shall comply with all guidelines issued by U. T. System Administration's Office of General Counsel.

4.2    The delegate shall consult with the institutional chief business officer prior to approving and executing any agreement or instrument relating to lands used or to be used for institutional purposes.

4.3    The authority granted by this Section to execute and deliver binding contracts, agreements, and other documents or instruments relating to the acquisition of real property applies only if the real property is within a Campus Master Plan approved by the Board of Regents or if the matter is an easement or other similar agreement necessary to implement projects approved by the Board in the Capital Improvement Program and the Capital Budget.

4.4    If approval of the Board of Regents is required by Section 3 of Rule 10501 of the Regents' *Rules and Regulations* before the real property may be sold or leased to a third party, the following information shall be provided to the Board of Regents with the request for approval:

(a) a description of the process used to select the third party and the rationale for using the process described;

(b) a description of the process used to set the consideration to be received by U. T. System; and

(c) a statement of the appraised value as determined by an independent appraisal conducted no earlier than 12 months prior to the Board of Regents' meeting date at which the sale or lease is to be presented for approval.

Sec. 5    Delegation of Authority Regarding Space Leases.  Subject to Section 4.1 above and the general provisions of Rule 10501 of the Regents' *Rules and Regulations*, the Board of Regents delegates to each president the authority to execute and deliver on behalf of the Board lease agreements and related documents for the purpose of leasing space for use by the institution for institutional purposes.

Sec. 6    Board for Lease.  The Board of Regents delegates to the Executive Vice Chancellor for Business Affairs authority to take any action on behalf of the Board as may be necessary or desirable with regard to the management and administration of oil and gas leases and other instruments issued by the Board for Lease of University Lands, including without limitation, promulgating forms and requiring submission of documents, records, or reports to verify gross production, and disposition and market value of the production.

Sec. 7    Title.  Title to all interests in real property, including leasehold interests, held for the use or benefit of the U. T. System, an institution, or otherwise shall be held in the name of the Board of Regents.

Sec. 8    Planned Gifts and Bequests.  The Office of Development and Gift Planning Services shall, in accordance with applicable Board of Regents policies, process and administer the receipt of real property received by the Board through a bequest, an interest in an account held in trust, a gift to establish or modify an endowment (other than the Permanent University Fund), a fund functioning as an endowment, or a life income or annuity fund. The Office of Development and Gift Planning Services shall promptly notify the Real Estate Office and the University

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                     **Rule: 70301**

Lands Office of gifts of surface and mineral estates in real property received, processed, and administered pursuant to this Section to be managed by the Real Estate Office and the University Lands Office, respectively. This Section shall not apply to current purpose gifts of surface and mineral estates in real property (other than gifts received through a bequest or a trust) or additions to an existing endowment, a fund functioning as an endowment, or a life income or annuity fund if the addition does not change or modify the purpose of the endowment or fund.

Sec. 9   Current Purpose Gifts.  The Real Estate Office and the University Lands Office shall, in accordance with Board of Regents policies, process and administer the receipt of all gifts of surface and mineral estates in real property that are not processed and administered in accordance with Section 8 above, unless the property is used as campus property by the institution. The institution shall manage real property used for campus purposes.

Sec. 10   Rents, Mortgages, and Other Charges.  The Board delegates to U. T. System Administration's Real Estate Office authority to collect, and account for, all rents, mortgages, and other charges relating to real property managed by that Office.

**3.**   **Definitions**

None

**4.**   **Relevant Federal and State Statutes**

None

**5.**   **Relevant System Policies, Procedures, and Forms**

Procedures for Seeking Relief from Rate and Damage Schedule
Applicable to Easements and Other Interests on University Lands

**6.**   **Who Should Know**

Administrators

**7.**   **System Administration Office(s) Responsible for Rule**

Office of Business Affairs

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**        **Rule: 70301**

**8.**      **Dates Approved or Amended**

Editorial amendment to Number 5 made November 10, 2011
Editorial amendments to Sec. 4 made October 5, 2010
Editorial amendments to Sec. 3, 4, 8, and 9 made September 1, 2010
Section 9 editorially amended on February 22, 2010
Section 5 regarding space leases added editorially on December 5, 2008
May 12, 2005
December 10, 2004

**9.**      **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 70401**

1.    **Title**

      Oversight Responsibilities for UTIMCO

2.    **Rule and Regulation**

      Sec. 1    Chancellor.  The Chancellor of The University of Texas System
                serves on the Board of Directors of The University of Texas
                Investment Management Company (UTIMCO). The Chancellor
                oversees the operations of UTIMCO and coordinating inter-
                action between the U. T. System and UTIMCO, ensures that
                UTIMCO implements the core investment functions delegated to
                it in conformance with these *Rules and Regulations*, the
                Investment Management Services Agreement, and the
                Investment Policy Statements adopted by the Board of Regents,
                and directs UTIMCO in areas other than core investment
                functions, such as relations with the media, intergovernmental
                relations, and public disclosure issues.

      Sec. 2    Executive Vice Chancellor for Business Affairs.  The Executive
                Vice Chancellor for Business Affairs designates and supervises
                the U. T. System liaison to UTIMCO, overseeing audits and
                investment performance assessments of UTIMCO, and
                reviewing budgetary and investment reports submitted by
                UTIMCO.

      Sec. 3    Vice Chancellor and General Counsel.  The Vice Chancellor
                and General Counsel oversees legal services provided to
                UTIMCO by outside legal counsel, consistent with the
                requirements of the Texas Disciplinary Rules of Professional
                Conduct, and providing counsel, advice, and legal
                interpretations to the Board of Regents, the Chancellor, and
                other U. T. System officials concerning UTIMCO-related issues.

      Sec. 4    Authority of Vice Chancellor and General Counsel to enter into
                investment management agreements with foundations and
                similar tax-exempt charitable organizations.  The Vice
                Chancellor and General Counsel, in consultation with the
                Chancellor, is authorized to enter into investment management
                agreements under which the Board of Regents will control,
                manage, and invest funds for foundations and similar tax-
                exempt charitable organizations affiliated with the U. T. System
                and its institutions at the request of the foundation or tax-exempt
                charitable organization provided that (i) any such foundation or
                charitable organization is integral to the public and educational

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 70401**

purposes of the U. T. System, (ii) funds invested are exclusively dedicated to the educational purposes of the U. T. System, and (iii) any such agreement furthers the support and maintenance of U. T. System institutions. Funds managed under such agreements will be invested by UTIMCO under its Investment Management Services Agreement with the U. T. System Board of Regents.

Sec. 5    Systemwide Compliance Officer.  The Systemwide Compliance Officer is responsible, and will be held accountable for, apprising the Chancellor and the Audit, Compliance, and Management Review Committee of the institutional compliance functions and activities at UTIMCO. The Systemwide Compliance Officer provides institutional compliance assistance to the Chief Compliance Officer of UTIMCO in the exercise of their responsibilities and prescribes the format for the annual risk based compliance plan and the quarterly compliance status reports to be submitted by UTIMCO.

Sec. 6    Joint Meeting.  A joint meeting of the UTIMCO Board of Directors and the U. T. System Board of Regents may be held to discuss investment policies including asset allocation, investment performance, determination of risk, performance of the Corporation, organizational issues, proposed budget, and related issues. Notice of the joint meeting shall be provided in accordance with the Texas Open Meetings Act.

**3.    Definitions**

None

**4.    Relevant Federal and State Statutes**

None

**5.    Relevant System Policies, Procedures, and Forms**

None

**6.    Who Should Know**

Administrators
UTIMCO Board of Directors
UTIMCO Employees

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents** **Rule: 70401**

7. **System Administration Office(s) Responsible for Rule**

   Office of the Board of Regents

8. **Dates Approved or Amended**

   Editorial amendment made September 3, 2014, to add new Section 6
   Editorial amendments made March 13, 2013, to add new Section 4 as
   authorized by the Board on November 9, 2005, and to renumber former
   Section 4 as Section 5
   December 10, 2004

9. **Contact Information**

   Questions or comments regarding this Rule should be directed to:

   - bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**               **Rule: 80101**

1.     **Title**

       Category of Facilities and Authorized Users

2.     **Rule and Regulation**

       Sec. 1     Category of Facility.  The property or buildings, owned or
                  controlled by The University of Texas System are not open for
                  assembly, speech, or other activities as are the public streets,
                  sidewalks, and parks. The responsibility of the Board of Regents
                  to operate and maintain an effective and efficient system of
                  institutions of higher education requires that the time, place, and
                  manner of assembly, speech, and other activities on the
                  grounds and in the buildings of the U. T. System or any of the
                  institutions be regulated. Acting pursuant to the general
                  authority of *Texas Education Code,* Chapter 65, and the specific
                  authority of *Texas Education Code,* Chapter 51, the Board
                  adopts and promulgates rules related to the use of buildings and
                  grounds for purposes other than programs and activities related
                  to the role and mission of the U. T. System and the institutions.

       Sec. 2     Authorized Users.  No person, organization, group, association,
                  or corporation may use property or buildings owned or
                  controlled by the U. T. System or any of the institutions for any
                  purpose other than in the course of the regular programs or
                  activities related to the role and mission of the U. T. System and
                  the institutions, unless authorized by the Regents' *Rules and
                  Regulations.* Any authorized use must be conducted in
                  compliance with the provisions of the Regents' *Rules and
                  Regulations,* the approved rules and regulations of the
                  institution, and applicable federal, State, and local laws and
                  regulations.

       Sec. 3     Identification Required.  Pursuant to the authority conferred
                  upon the Board of Regents by *Texas Education Code* Section
                  51.209, in order to protect the safety and welfare of students,
                  employees, patients, and other participants in the programs and
                  activities of the U. T. System and the institutions and to protect
                  the property and buildings of the U. T. System and the
                  institutions, it shall be unlawful for any person who is on any
                  property or in a building owned or controlled by the U. T.
                  System or any of the institutions to refuse to identify himself or
                  herself in response to a request by an institutional
                  representative. For the purpose of this Section, a person
                  identifies himself or herself by:  (1) giving his or her name and

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80101**

complete address substantiated by a current driver's license, voter registration card, or other official documentation; and (2) stating truthfully whether he or she is a student or employee of the U. T. System or any of the institutions. For the purpose of this Section, an "institutional representative" is:

    3.1    Any member of the Board of Regents or the General Counsel to the Board;

    3.2    Any executive officer or administrative officer of the U. T. System or any of the institutions;

    3.3    Any attorney of the U. T. System or the institutions; and

    3.4    Any peace officer or security officer of the U. T. System or any of the institutions acting pursuant to authority of Texas law.

Sec. 4    Refusal to Identify.  Any person who refuses to identify himself or herself in accordance with this Rule may be convicted of a misdemeanor punishable by a fine of not more than $200. Students, faculty, or staff who refuse to identify themselves in accordance with this Rule are also subject to disciplinary action.

**3.     Definitions**

None

**4.     Relevant Federal and State Statutes**

*Texas Education Code,* Chapter 65 – Administration of The University of Texas System

*Texas Education Code* Section 51.202 – Rules and Regulations, Penalty

*Texas Education Code* Section 51.209 - Unauthorized Persons; Refusal of Entry, Ejection, Identification

**5.     Relevant System Policies, Procedures, and Forms**

None

**6.     Who Should Know**

Administrators

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 80101**

    Faculty
    Staff
    Students
    Police Officers

**7.      System Administration Office(s) Responsible for Rule**

    Office of Academic Affairs
    Office of Health Affairs

**8.      Dates Approved or Amended**

    December 10, 2004

**9.      Contact Information**

    Questions or comments regarding this Rule should be directed to:

    - bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**          **Rule: 80102**

1.    **Title**

      Alcoholic Beverages

2.    **Rule and Regulation**

      Sec. 1    Prohibition.  The use of alcoholic beverages is prohibited on
                property and in buildings owned or controlled by The University
                of Texas System or any of the institutions. However, the
                Chancellor of the U. T. System or the president of an institution
                may waive this prohibition with respect to any event sponsored
                by the U. T. System or any of the institutions. An event is
                sponsored if a budgeted office, department, or division of the
                U. T. System or any of the institutions is responsible for
                organizing the event, inviting attendees, and paying expenses
                related to the event, except that such an event is considered to
                be sponsored even if an outside entity pays for the food and
                beverages at the event. Meetings or events organized and
                presented by registered faculty, staff, or student organizations
                are not events sponsored by the U. T. System or any of the
                institutions.

      Sec. 2    Does Not Apply.  Section 1 immediately above does not apply to
                areas that are licensed under State law for the sale and service
                of alcoholic beverages, to a Special Use Facility during use by
                a non-institutional individual, group, association, or corporation
                for purposes permitted by the Regents' *Rules and Regulations,*
                Rule 80106, or to property, buildings, or facilities that are
                occupied by a third party pursuant to a written lease or
                occupancy agreement that does not specifically exclude
                alcoholic beverages.

      Sec. 3    Strict Enforcement.  State law relating to alcoholic beverages
                will be strictly enforced at all times on property and in buildings
                owned or controlled by the U. T. System or any of the
                institutions.

3.    **Definitions**

      None

4.    **Relevant Federal and State Statutes**

      *Texas Education Code* Section 51.202 – Rules and Regulations; Penalty

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                **Rule: 80102**

5.     **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 80106 – Special Use Facilities

6.     **Who Should Know**

Faculty
Staff
Students
Police Officers

7.     **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

8.     **Dates Approved or Amended**

December 10, 2004

9.     **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents** **Rule: 80103**

1.     **Title**

       Solicitation

2.     **Rule and Regulation**

       Sec. 1     Prohibition of Solicitation.  No solicitation shall be conducted on
                  any property, street, or sidewalk, or in any building, structure, or
                  facility owned or controlled by the U. T. System or any of the
                  institutions unless permitted by the Regents' *Rules and
                  Regulations.*

       Sec. 2     Exceptions to Prohibition.  The following activities shall not be
                  deemed solicitations prohibited by this Rule when conducted in
                  accordance with the approved rules and regulations of the U. T.
                  System or any of the institutions. Such activities must be
                  conducted in a manner that does not disturb or interfere with the
                  academic programs or administrative activities of the U. T.
                  System or any of the institutions or any program or activity that
                  is conducted by or is authorized by the U. T. System or any of
                  the institutions; does not interfere with entry to or exit from a
                  building, structure, or facility; does not interfere with the flow of
                  pedestrians or vehicular traffic on sidewalks or streets or at
                  places of ingress and egress to and from property, buildings, or
                  facilities; does not harass, or intimidate the person or persons
                  being solicited; and does not violate applicable State, federal, or
                  local laws or regulations:

                  2.1     Newspapers and Magazines.  The distribution, sale, or
                          offer for sale of a newspaper, magazine, or other
                          publication by means of an unattended rack or vending
                          machine in area(s) designated in advance by the
                          Chancellor of the U. T. System or the president of an
                          institution or his or her delegate for the direction of such
                          activity.

                  2.2     Food and Drink.  The sale or offer for sale of food, drink,
                          or any other product that may be lawfully sold by means
                          of a vending machine that is operated by the U. T.
                          System or a subcontractor, under an approved written
                          agreement, in an area designated in advance by the
                          Chancellor of the U. T. System or the president of an
                          institution or his or her delegate.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80103**

2.3    Publications.  The sale or offer for sale by the U. T. System or a subcontractor, under an approved written agreement, of any publication of the U. T. System or any of the institutions or of any book or other printed material to be used in the regular academic work of an institution.

2.4    Services.  Any offering of services and related products by a third party or by U. T. System and/or one or more of the institutions on behalf of a third party (a "Third Party Service Offering") established and maintained primarily for the convenience of students, faculty, staff, or patients. Such Third Party Service Offering must be established and maintained pursuant to a written agreement between the third party and the affected U. T. System entity or entities and such written agreement:

(a) clearly sets for the nature and scope of the solicitation activities that the third party is permitted to undertake on U. T. System property and is construed to prohibit any solicitation activities not specifically enumerated in such written agreement;

(b) is of specified duration with defined renewal procedures and periods; and

(c) includes appropriate provisions to protect the privacy of students, faculty, staff, and patients and requires compliance with the first paragraph of Section 2.

A president who has exercised delegated authority to authorize a Third Party Service Offering that allows campus credit card marketing activities shall comply with all requirements of Chapter 761 of the *Texas Business and Commerce Code* and shall assure that a session on credit card and debt education, as well as protecting personal information from identity theft, is included in all orientation programs for new students.

2.5    Sale of Items at Events.  The sale or offer for sale by the U. T. System or any of the institutions or a subcontractor, under an approved written agreement, of food, drink, souvenirs, novelty items, and programs at athletic contests or other programs or events sponsored or authorized by the U. T. System or any of the institutions.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 80103**

2.6     Collections and Sales by University Organizations.  The collection of contributions or the sale of merchandise, publications, food, or nonalcoholic beverages by the students' association or by a registered student, faculty, or staff organization. A students' association or a registered student, faculty, or staff organization may not conduct such solicitation activities on behalf of or for the benefit of any individual, association, organization, corporation, or group of individuals that is not registered as a student, faculty, or staff organization or that is not otherwise qualified under the criteria of Section 2.9 below to conduct solicitation. In the case of specific drives for disaster relief, the chief student affairs officer of the institution may approve a drive that complies with all other requirements of the first paragraph of Section 2. Texas law allows a registered student organization to be relieved from State sales tax liability in certain circumstances detailed in the *Texas Tax Code*. All proposed sales events are subject to applicable provisions of these *Rules* and to other institutional policies concerning the time, place, and manner of solicitation. The items offered for sale may not be items that the organization has obtained on consignment.

2.7     Collections of Fees or Dues.  The collection of membership fees or dues by registered student, faculty, or staff organizations at meetings of such organizations scheduled in accordance with the facilities use regula-tions of any institution.

2.8     Admission Fees.  The collection of admission fees for the exhibition of movies or for other programs that are sponsored or presented by the U. T. System or any of the institutions or, if permitted by and scheduled in accordance with the approved rules and regulations of the institution, by the students' association or by a registered student, faculty, or staff organization.

2.9     501(c)(3) Organizations.  Solicitation of funds by any organization that can present to the Chancellor of the U. T. System or the president of the institution, or his or her delegate, written evidence from the Internal Revenue Service that the organization has been granted an exemption from taxation under *Internal Revenue Code Section 501(c)(3)*. Such solicitation must be conducted in

**Exhibit 5**

an area(s) designated for that purpose by the chief administrative officer or his or her delegate. Persons soliciting on behalf of an organization must have credentials identifying them as authorized agents of the organization. Permission to solicit shall not be used by the organization as an endorsement by the U. T. System or any of the institutions. No organization may solicit under this subdivision for more than a total of 14 days, whether continuous or intermittent, during each State fiscal year.

2.10   Goods and Services for Residence Halls.  Occasional sales or offers of sales of goods or services that comply with applicable federal, State, and local laws and regulations and are conducted solely for the resident(s) of an individual university residence hall room or an individual apartment when a resident of such room or apartment has given specific invitation in advance for salespersons to come to the individual residence hall room or individual apartment for that purpose. This exception does not authorize sales or offers of sales of goods or services within a university residence hall room or apartment by the occupant, door-to-door sales or offers of sales of goods or services, or sales or offers of sales of goods or services to persons who are present in an individual residence hall room or apartment but are not residents of such room or apartment.

2.11   Event Sponsors.  Under the terms of an approved written agreement, the acknowledgement of a sponsor of an intercollegiate athletics department or athletic event of an institution may be displayed on the official web page of such athletics department and, at the option of the sponsor, a textual hypertext link and/or a graphic hypertext link to the Web page of the sponsor may also be displayed. Such agreement may also provide for an acknowledgement of the sponsor to be announced over a public address system, displayed on a scoreboard or electronic message center, or displayed by other means at locations designated for that purpose in athletic facilities pursuant to an approved policy of the institution. The content of such acknowledgement and any use of the name, logos, symbols, or marks of an institution by the sponsor must be according to established formats approved by the Trademark Licensing Director or, if

**Exhibit 5**

nonstandard, have the prior written approval of the Trademark Licensing Director. See also The University of Texas System Administration Policy UTS122, *Guidelines for Web Site Solicitations*.

2.12   Electronic Message Centers.  Advertising displayed on an outdoor electronic marquee or message center owned and operated by the U. T. System or any of the institutions.

2.13   Athletic Tournaments.  Advertising and merchandise displayed at an athletic tournament that is sanctioned by the official national or international organization for such athletic competitions, provided that, such advertising and merchandise is required to be displayed under the terms of one or more contractual agreements between such organization and one or more sponsors and such contracts were in effect prior to the date that an institution was selected as the site for the tournament.

2.14   Raffle Tickets.  The sale or offer for sale by a registered student organization of charitable raffle tickets on behalf of an organization that is authorized to conduct a charitable raffle under the provisions of *Texas Occupations Code* Section 2002.001 et seq.

2.15   Computer Hardware and Software.  The display and demonstration by manufacturers and distributors of personal computer hardware and software suitable for use by students and faculty in the academic programs of an institution and the presentation of information and demonstrations related to remote networks for personal computers by entities that provide access to such networks. Such activities may be conducted once each academic year upon invitation by the president of the institution or his or her delegate and must be limited to the time and place designated by and under guidelines specified and controlled by the institution. A manufacturer or distributor of personal computer hardware or software or an entity that provides access to remote networks for personal computers may not make sales or take orders.

2.16   Benefit Plan Information.  The distribution or presentation to officers and employees of the U. T. System or any of the institutions of material related to health benefit plans,

**Exhibit 5**

life insurance, tax sheltered annuities, retirement plans or programs, or other benefits that are available to such officers and employees through employee benefit plans or programs offered by or approved by the U. T. System or any of the institutions. Such material may be distributed or presented only at the Office of Employee Services of the U. T. System or any of the institutions, at the benefits office of a health profession practice plan of a health institution, or at meetings scheduled for that purpose pursuant to guidelines established by the U. T. System Office of Employee Services. Those companies that are currently authorized Optional Retirement Program vendors may, at the invitation of the U. T. System or any of the institutions, be permitted to engage in on-campus group seminars for the purpose of providing education, product marketing, and participant enrollment, subject to such rules and limitations as the U. T. System may deem necessary and appropriate. Currently authorized Optional Retirement Program vendors may advertise such on-campus meetings throughout the institution, subject to prior approval by the institution. The term "currently authorized Optional Retirement Program vendor" means a company that has a current contractual agreement with the U. T. System to provide Optional Retirement Program products to officers and employees of the U. T. System or any of the institutions but does not include those companies with grandfathered Optional Retirement Program participation or vendors of Tax Sheltered Annuity products or services.

2.17    Employee Discount Programs.  The distribution or presentation to employees of the U. T. System and any of the institutions of material related to products and services offered by companies that provide employee discount programs, merchandise membership programs, credit union and banking programs, or other benefits that are available to such officers and employees through discount plans or programs approved by the U. T. System or any of the institutions. Such material may be distributed or presented by the Office of Employee Services of the U. T. System or any of the institutions, with the approval of the institution's president, and placed on institution web pages for the purpose of providing education, product and service information, and participant enrollment, in accordance with guidelines

**Exhibit 5**

promulgated by the Executive Vice Chancellor for Business Affairs.

2.18    Employees.  Solicitation by the officers or employees of the U. T. System or any of the institutions acting in the course and scope of their authority.

2.19    Printed Material from U. T. Organizations.  Subject to the institution's reasonable and nondiscriminatory rules concerning the time, place, and manner of distribution, sale, or display of material, the distribution, sale, or display by a students' association or a registered student, faculty, or staff organization of printed material (including any newspaper, magazine, or other publication, any leaflet, flyer, or other informal matter or any sign, banner, or exhibit), or the distribution or display of such material, at no cost, by individual students, faculty, or staff, or oral statements by students, faculty, staff, or their associations or registered organizations. A publication within this rule may contain paid advertising, but only if the publication is devoted to promoting the views of a not-for-profit organization or to other bona fide editorial content distinct from the advertising. Printed material and oral statements under this rule may also contain advertising for academic or administrative units of the U. T. System or any of the institutions, for registered student, faculty, or staff organizations, or for organizations that are not operated for profit. This rule does not authorize any form of advertising except as provided in the preceding two sentences. This rule does not authorize distribution, sale, or display of any publication operated for profit. An organization or publication is operated for profit if any part of the net earnings of its operation or distribution inures to the benefit of any private shareholder or individual.

2.20    Commonly Used Services.
        (a)    Delegation.  The display and distribution of printed material from tables or booths by providers of services that are commonly utilized by students, faculty, and staff of the U. T. System or any of the institutions, such as financial institutions, long distance telephone carriers, utilities, housing locators, printers and duplicators, tutors, or employment agencies. The Board delegates to the

**Exhibit 5**

Chancellor or president the authority to designate no more than two one-day periods each academic year for the activities authorized under this provision and will determine their time and place as well as the number of providers who participate. The activities of a provider must be conducted in compliance with State law, Section 1 above, and other U. T. System or institutional guidelines. A provider may not make sales of or take orders for services. The U. T. System or any of the institutions shall charge an appropriate fee for the privilege of conducting such activities. Any provider who violates State law, the Regents' *Rules and Regulations,* or the applicable guidelines of the institution in the course of activities permitted under this provision, shall not be permitted to participate in such activities for a period of one (1) year from the date of the violation.

(b)     Restrictions on Credit Card Marketing.  An individual who has exercised delegated authority under (a) above to allow campus credit card marketing activities shall comply with all requirements of Chapter 761 of the *Texas Business and Commerce Code* and shall assure that a session on credit card and debt education, as well as protecting personal information from identity theft, is included in all orientation programs for new students.

2.21    Athletic Events, Professional Entertainment Touring Events, or Cultural or Historical Festivals or Exhibitions.

(a)     Delegation.  A president may designate a reasonable number of areas in a reasonable proximity to the exterior of a facility used for intercollegiate athletic events, professional entertainment touring events, or occasional cultural or historical festivals or exhibitions, and may authorize such areas to be used for the display of motor-propelled vehicles and for the location of booths, tables, or kiosks to be used for the display of merchandise, the distribution of free samples of merchandise, and the display and distribution of printed material related to merchandise, products, or services. Such activities may be authorized only on the day before and the day or days of an intercollegiate athletic event, a professional

entertainment touring event, a cultural or historical festival or exhibition, or an event that is related to athletics that takes place in the facility. The president may designate a reasonable number of areas inside a facility to be used for intercollegiate athletic events, professional entertainment touring events, or cultural or historical festivals or exhibitions for such activities if the safety officer of the institution approves the designation and use of the area. All persons engaged in or associated with such displays and distributions must conduct those activities in compliance with State law, the Regents' *Rules and Regulations*, and with other guidelines specified by the institution. Such persons may not make sales of or take orders for such vehicles, merchandise, products, or services. The institution shall charge an appropriate fee for the privilege of using such areas. Persons or entities that violate State law, the Regents' *Rules and Regulations*, or the applicable guidelines of the institution while using designated areas under this provision shall not be permitted to engage in activities under this provision for a period of one (1) year from the date of the violation.

(b)    Restrictions on Credit Card Marketing.  An individual who has exercised delegated authority under (a) above to allow campus credit card marketing activities shall comply with all requirements of Chapter 761 of the *Texas Business and Commerce Code* and shall assure that a session on credit card and debt education, as well as protecting personal information from identity theft, is included in all orientation programs for new students.

2.22   Elections.  In the course of an election process held pursuant to the approved constitution, bylaws, or election code of the faculty governance organization or of the student government organization of an institution or an election held pursuant to the approved rules, regulations, or policies of an institution, requests may be made to support or to vote for or against a qualified candidate for an office or position to be filled at such election or to support or to vote for or against a proposition to be decided at such election. Such request may be made

Exhibit 5

only by the candidates for an office or position; by a registered student, faculty, or staff organization and its members; or by a student, faculty member, or staff member. Individuals and organizations making such requests must conduct all activities in compliance with the approved time, place, and manner regulations of the institution; the provisions of the constitution, bylaws, election code, rules, regulations, or policies authorizing the election; and Section 1 above. No faculty member, staff member, or student employee may engage in such activities during any period that he or she is being paid to perform services for an institution.

2.23   Support of a Candidate or Proposition.

(a)   By institution students, faculty, or staff or registered organization.  The request to support or to vote for or against a candidate for an elective position or office or for or against a proposition on a ballot for a public election held pursuant to federal, State, or local laws when such request is made by a registered student, faculty, or staff organization, or by a student, faculty member, or staff member. Persons or organizations must conduct such activities in compliance with the first paragraph of Section 2; the time, place, and manner regulations of the institution; and the provisions of federal, State, or local laws governing such election; and may not use any equipment, supplies, or services of an institution. No faculty member, staff member, or student employee may engage in such activities during any period that he or she is being paid to perform duties for an institution. No registered student, faculty, or staff organization that receives State funds from any source may engage in such activities.

(b)   By non-institution persons or organizations.  The request to support or to vote for or against a candidate for an elective position or office or for or against a proposition on a ballot for a public election held pursuant to federal, State, or local laws when such request is made by a non-institution person or organization when the polls are open for voting during the early voting period or voting period in which an institution building is being used as a

**Exhibit 5**

polling place. Persons or organizations must conduct such activities in compliance with the first paragraph of Section 2; the time, place, and manner regulations of the institution; and the provisions of federal, State, or local laws governing such election, including *Texas Election Code* Sections 61.003, 85.001, and 85.036.

2.24   Web Page Link.  The placement on an institution web page (as defined below) of textual and graphic information and a hypertext link to the web site of a person or commercial entity for which the U. T. System or any of the institutions may receive revenue or avoid costs as a result of the permitted solicitation ("Web Site Solicitation"). Web Site Solicitations shall be placed on institution web pages in accordance with guidelines promulgated by the Executive Vice Chancellor for Business Affairs. An institution web page is a page created or maintained by or on behalf of an institution or an office, department, or division of an institution, and located within an institution's information technology environment.

2.25   Roommate Advertisements.  Subject to the institution's reasonable and nondiscriminatory rules concerning time, place, and manner of posting, students, faculty, and staff may post advertisements for roommates, subleases, and sales of used goods that the seller has personally owned and used.

Sec. 3   Impermissible Solicitation.  All permissible solicitation must be conducted in compliance with the first paragraph of Section 2 and the time, place, and manner regulations of the institution. If, after reasonable investigation, it is determined that impermissible solicitation is being or has been conducted or that permissible solicitation is being or has been conducted in violation of the Regents' *Rules and Regulations* or the approved rules and regulations of the institution (1) a student, a faculty member, or a staff member will be subject to such disciplinary penalty as may be appropriate, and (2) a students' association or a registered student, faculty, or staff organization shall be prohibited from solicitation for such period or periods of time as may be appropriate. In the case of repeated violations, the registered status of the organization may be cancelled or other appropriate penalties may be imposed. Any penalty or penalties

Exhibit 5

must be imposed pursuant to the due process procedures of applicable Regents' *Rules and Regulations* or approved rules and regulations of the U. T. System or any of the institutions.

Sec. 4     Disclosure of Solicitation.  A students' association and each registered student organization shall, within 30 days after the beginning of each long session semester, file with the Dean of Students or other appropriate official a statement fully disclosing the sources and amounts of money obtained from solicitations during the preceding semester or summer session and fully disclosing the purposes and amounts of the expenditures made during the preceding semester or summer session. Any organization failing to comply with the provisions of this Rule shall be prohibited from solicitation activities until the organization files the required report.

3.      **Definitions**

Electioneering – includes the posting, use, or distribution of political signs or literature.

Solicitation – means the sale, lease, rental or offer for sale, lease, rental of any property, product, merchandise, publication, or service, whether for immediate or future delivery; an oral statement or the distribution or display of printed material, merchandise, or products that is designed to encourage the purchase, use, or rental of any property, product, merchandise, publication, or service; the receipt of or request for any gift or contribution; or the request to support or oppose or to vote for or against a candidate, issue, or proposition appearing on the ballot at any election held pursuant to State or federal law or local ordinances.

4.      **Relevant Federal and State Statutes**

*Texas Government Code* Section 572.060 – Solicitation of or Recommendations regarding Contributions to Charitable Organizations and Governmental Entities

*Texas Occupations Code* Section 2002.001 et seq. – Charitable Raffles

Chapter 761 of the *Texas Business and Commerce Code* - Credit Card Marketing at Postsecondary Educational Institutions

*Texas Election Code* Section 61.003 – Electioneering and Loitering Near Polling Place

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80103**

*Texas Election Code* Section 85.001 – Early Voting Period

*Texas Election Code* Section 85.036 – Electioneering

*Texas Tax Code*

5.      **Relevant System Policies, Procedures, and Forms**

The University of Texas System Administration Policy UTS122, *Guidelines for Web Site Solicitations*

6.      **Who Should Know**

Faculty
Staff
Students
Police Officers

7.      **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

8.      **Dates Approved or Amended**

Editorial amendments made April 1, 2015
Editorial amendment to Sec. 2.16 and 2.17 made June 7, 2013
Editorial amendment to Sec. 2.4(c), 2.20(b), and 2.21(b) made August 31, 2010
May 15, 2008
Editorial amendment to Section 2.4 made April 23, 2008
November 9, 2007
May 12, 2005
December 10, 2004

9.      **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                Rule: 80104**

1.    **Title**

      Use of Facilities

2.    **Rule and Regulation**

      Sec. 1    Use by Registered Organizations.  Subject to constitutional and
                statutory restrictions on the use of State property for religious or
                political purposes, a students' association; a registered student,
                faculty, or staff organization; or an officially recognized alumni
                association that qualifies under Rule 80103, Section 2.9 of the
                Regents' *Rules and Regulations* and whose fund-raising
                activities are dedicated to the benefit of the U. T. System or any
                of the institutions, may reserve and use buildings, grounds, and
                facilities owned or controlled by the U. T. System or any of the
                institutions in compliance with reasonable and nondiscriminatory
                time, place, and manner provisions of the approved regulations
                of the U. T. System or any of the institutions. Such regulations
                shall specify the procedures under which such organizations
                may reserve the buildings, grounds, and facilities for their use.
                Such use must be for purposes permitted by the Regents' *Rules
                and Regulations* and be conducted in compliance with Rule
                80103 of the Regents' *Rules and Regulations*. Groups of
                students, faculty, or staff who are not registered or groups of
                alumni other than officially recognized alumni associations
                whose fund-raising activities are dedicated to the benefit of any
                institution may not use the institution's buildings, facilities, or
                grounds.

      Sec. 2    Use by Non-registered Organizations.  A students' association,
                a registered student, faculty, or staff organization, or an alumni
                association may not reserve or use facilities owned or controlled
                by the U. T. System or any of the institutions for the purpose of
                engaging in any project or program with any association,
                organization, or corporation, or with any individual or group of
                individuals that are not registered.

      Sec. 3    Permissible Activity.  In compliance with reasonable and
                nondiscriminatory regulations of the U. T. System or any of the
                institutions, students, faculty, or staff or their registered or non-
                registered organizations, may petition, post signs, distribute
                literature, set up tables and exhibits, or peacefully demonstrate
                on property owned or controlled by the U. T. System or any of
                the institutions, provided that the posting of signs and the setting
                up of tables and exhibits may require prior authorization.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80104**

Sec. 4    Impermissible Activity.  No person, including a student or employee of an institution, shall distribute any petition, handbill, object, or piece of literature; post or carry any sign, placard, or banner; or engage in speech or conduct on property or in buildings or facilities owned or controlled by the U. T. System or any of the institutions if it is obscene, libelous, or directed to inciting or producing imminent lawless action and is likely to incite or produce such action.

3.    **Definitions**

Student Registered Organization – an organization that complies with the registration procedures set by the chief student affairs officer.

4.    **Relevant Federal and State Statutes**

*Texas Education Code* Section 51.202 – Rules and Regulations; Penalty

5.    **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 80103 – Solicitation

6.    **Who Should Know**

Faculty
Staff
Students
Administrators

7.    **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

8.    **Dates Approved or Amended**

December 10, 2004

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

1.      **Title**

        Joint Sponsorship of the Use of Property or Buildings

2.      **Rule and Regulation**

Sec. 1      Joint Sponsorship Permitted.  Except as permitted in Rules 80103, 80106, and 80112 of the Regents' *Rules and Regulations*, the use of property or buildings owned or controlled by the U. T. System or any of the institutions by individuals who are not students, faculty, or staff; by groups that are not registered student, faculty, or staff organizations; or by associations or corporations for programs or activities must be jointly sponsored by the institutions of the U. T. System and shall be subject to the following conditions:

1.1      The program or activity must be upon the invitation of the institutions of the U. T. System. Only the Chancellor of the U. T. System or the president of an institution, or his or her delegate, can authorize joint sponsorship.

1.2      For joint sponsorship to be appropriate, the implications of a program or activity must, in the determination of the Chancellor or President, directly supplement the educational purposes of the institution.

1.3      Established as public institutions without regard to political affiliation or religious faith the institutions of the U. T. System cannot be a joint sponsor for political or sectarian gatherings.

1.4      The institutions of the U. T. System will be responsible for all details of the program or activity, and reserves the right to approve all copy for advertising and news releases, and may require an accounting of the income and expenses directly related to the program or activity.

1.5      The scheduling of property or buildings for programs or activities of any institutions of the U. T. System shall always have priority over the scheduling for programs or activities that are jointly sponsored.

1.6      The fee to be paid by the invited individual, group, association, or corporation will be a matter for negotiation in each case and will be specified in the agreement

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80105**

providing for the joint sponsorship. At a minimum, the fee must ensure recovery of the cost incurred by the institution.

3.      **Definitions**

None

4.      **Relevant Federal and State Statutes**

Texas Constitution Article III, Section 51 – Grants of Public Money Prohibited; Exceptions

*Texas Education Code* Section 51.202 – Rules and Regulations

5.      **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 80101 – Category of Facilities and Authorized Users

Regents' *Rules and Regulations,* Rule 80103 – Solicitation

Regents' *Rules and Regulations,* Rule 80106 – Special Use Facilities

Regents' *Rules and Regulations,* Rule 80112 – Residential Conference Centers

6.      **Who Should Know**

Faculty
Staff
Students
Administrators

7.      **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

8.      **Dates Approved or Amended**

May 14, 2015
Editorial amendment made to Section 1 on October 20, 2008
Editorial amendment made to Number 5 on June 4, 2008
December 10, 2004

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80105**

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                **Rule: 80106**

1.      **Title**

        Special Use Facilities

2.      **Rule and Regulation**

        Sec. 1      Designation.  Notwithstanding any other provisions of this Rule,
                    the president of an institution may designate specific facilities,
                    such as special event centers, conference centers, concert
                    halls, theaters, or auditoria, as Special Use Facilities. The
                    president shall cause to be prepared and submitted for
                    approval, as a part of the *Handbook of Operating Procedures* of
                    the institution, appropriate rules and regulations for the
                    reservation and use of Special Use Facilities.

        Sec. 2      Rules for Use.  The rules and regulations must restrict the
                    reservation and use of such facilities in accordance with the
                    following:

                    2.1      Designation as a Special Use Facility shall not constitute
                             the facility as a public facility or forum that is open to use
                             by individuals, groups, associations, or corporations on a
                             first-come, first-served basis.

                    2.2      Priority in the reservation and use of Special Use
                             Facilities shall be given to programs and activities of the
                             U. T. System or any of the institutions that are in
                             furtherance of and related to the educational, cultural,
                             recreational, and athletic programs of the U. T. System or
                             any of the institutions.

                    2.3      As a lower priority, the rules and regulations may provide
                             for reservation and use of Special Use Facilities by
                             individuals, groups, associations, or corporations without
                             the necessity of joint sponsorship by the U. T. System or
                             any of the institutions. Subject to all constitutional and
                             statutory provisions relating to the use of State property
                             or funds for religious or political purposes, Special Use
                             Facilities may be made available for religious and
                             political conferences or conventions. Rates must be
                             charged for the use of the Special Use Facility that, at a
                             minimum, ensure recovery of that part of the operating
                             cost of the facility attributable directly or indirectly to such
                             use. Agreements for the use of Special Use Facilities

Exhibit 5

shall be consistent with model contracts developed by the Office of General Counsel.

2.4     The rules and regulations applicable to a Special Use Facility may provide for the rental of space for display of advertising and the display of samples of merchandise in designated areas inside the Facility that have been approved by the president of the institution or his or her delegate, and for advertising by displays on an electronic scoreboard or message center inside the Facility or on the Facility's outdoor electronic marquee or message center. Such rules and regulations may further provide for the sale of advertising space on ticket envelopes for events sponsored by the Facility and in any publication of the Facility distributed in connection with a sponsored event or announcing future sponsored events.

3.     **Definitions**

None

4.     **Relevant Federal and State Statutes**

*Texas Education Code* Section 51.202 – Rules and Regulations; Penalty

*Texas Government Code* Section 2165.002 – Exceptions to Commission Charge and Control

*Texas Government Code* Section 2203.004 – Requirement to Use State Property for State Purposes

5.     **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 80105 – Joint Sponsorship of the Use of Property or Buildings

6.     **Who Should Know**

Faculty
Staff
Students
Administrators

7.     **System Administration Office(s) Responsible for Rule**

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                      **Rule: 80106**

      Office of Academic Affairs
      Office of Health Affairs

**8.**     **Dates Approved or Amended**

      Editorial amendment to Section 2.1 made August 28, 2015
      May 14, 2015
      Editorial amendment to Section 2.3 made April 12, 2012
      Editorial amendment to Number 4 made May 27, 2008
      December 10, 2004

**9.**     **Contact Information**

      Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80107**

1.      **Title**

        Filming Motion Pictures or Television Productions

2.      **Rule and Regulation**

        Sec. 1      Authorization to Film.  The Chancellor or the president of an
                    institution may authorize the use of property or buildings owned
                    or controlled by the U. T. System or any of the institutions for
                    filming motion pictures or television productions under a written
                    agreement approved pursuant to U. T. System procedures.
                    Requests to film a motion picture or television production shall
                    be reviewed and considered on a case by case basis. Subject to
                    the provisions of this Rule; it shall be within the discretion of the
                    Chancellor or the president of an institution, following
                    consultation with campus security personnel, to determine
                    whether to grant the request. The safety of students, faculty,
                    and staff; the potential for damage to buildings, facilities, or
                    property and for disruption of administrative or academic
                    programs or other scheduled activities; and the subject matter of
                    the film shall be of primary consideration in determining whether
                    to grant a filming request.

        Sec. 2      Scheduling.  The Chancellor or president shall be responsible
                    for ensuring that scheduled time(s) and location(s) for filming do
                    not interfere with administrative and academic programs or
                    other scheduled activities of the U. T. System or any of the
                    institutions.

        Sec. 3      Script Approval.  The Chancellor or the president of an
                    institution must approve either the script for the motion picture
                    or television production or the topic and format for a live or
                    unscripted program.

        Sec. 4      Interest in the Production.  The production company must
                    identify the persons or entities with an interest in the company.

        Sec. 5      Insurance Requirements.  The production company must
                    provide a policy providing protection against all liability, to the
                    extent possible, with a minimum of comprehensive general
                    liability and property damage insurance issued by a company
                    authorized to do business in the State of Texas naming the
                    Board of Regents, the U. T. System, the institution, and the
                    officers and employees of each as additional insureds, providing
                    coverage for injury and death of persons and damage to

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 80107**

property that result directly or indirectly from the negligent or intentional act or omission of, or from the use or condition of any property, equipment, machinery, or vehicle used, operated, or controlled by, the production company or its officers, employees, agents, or subcontractors while on property owned or controlled by the U. T. System or any of the institutions. The scope and limits of coverage shall be determined by the Chancellor or the president of an institution on the basis of the nature and extent of the activities to be conducted by the production company and the property, buildings, or facilities to be utilized. In no event shall the limits of liability for each occurrence be less than $2 million for injury or death of a person and $1 million for property damage.

Sec. 6    Use Fee.  A use fee will be established in each case based upon the nature and extent of the activities, including costs associated with moving and replacing computers and other equipment and furniture of the production company and the U. T. System property, buildings, personnel, and services that are required to accommodate such activities. The use fee must be paid in advance by a certified or cashiers check made payable to the U. T. System or the institution. If the production company cancels a scheduled use, the deposit, less any expense incurred by the U. T. System or any of the institutions in preparation for such use, will be refunded.

**3.    Definitions**

None

**4.    Relevant Federal and State Statutes**

*Texas Education Code* Section 51.202 – Rules and Regulations; Penalty

*Texas Government Code* Section 2165.008 – Temporary Use of State Building or Grounds by Television or Film Production Company

*Texas Government Code* Section 2203.004 – Requirement to Use State Property for State Purposes

**5.    Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 80101 – Category of Facilities and Authorized Users

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 80107**

Regents' *Rules and Regulations,* Rule 80103 – Solicitation

Regents' *Rules and Regulations,* Rule 80105 – Joint Sponsorship of the Use of Property or Buildings

**6.      Who Should Know**

Administrators

**7.      System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

**8.      Dates Approved or Amended**

Editorial amendment to Number 4 made May 5, 2008
December 10, 2004

**9.      Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**        **Rule: 80108**

1.      **Title**

      Use of Facilities for Weddings

2.      **Rule and Regulation**

      Sec. 1      Designation of Area. The president of an institution and the Chancellor of the U. T. System may designate one or more indoor and/or outdoor areas that may be used for weddings, subject to the following conditions:

         1.1      Use of such space for activities of an institution or the U. T. System shall have priority over weddings.

         1.2      A charge for the use of such space will be made that at least recovers the actual cost.

         1.3      The user shall be required to provide for adequate insurance and to execute a Facilities Use Agreement, the form and content of which has been approved by U. T. System Administration's Office of General Counsel.

3.      **Definitions**

      None

4.      **Relevant Federal and State Statutes**

      *Texas Education Code* Section 51.202 – Rules and Regulations; Penalty

      *Texas Government Code* Section 2165.002 – State Buildings, Grounds, and Property, Exceptions to Texas Facilities Commission Charge and Control

      *Texas Government Code* Section 2203.004 – Requirement to Use State Property for State Purposes

5.      **Relevant System Policies, Procedures, and Forms**

      None

6.      **Who Should Know**

      Administrators

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80108**

7.      **System Administration Office(s) Responsible for Rule**

Office of Academic Affairs
Office of Health Affairs

8.      **Dates Approved or Amended**

December 10, 2004

9.      **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80109**

1.      **Title**

        Parking and Traffic Regulations

2.      **Rule and Regulation**

        Sec. 1    Delegation of Authority.  The Board of Regents delegates to the
                  Chancellor and presidents of the U. T. System institutions the
                  authority to establish parking and traffic regulations at the
                  institutions of the U. T. System and U. T. System Administration.
                  Substantive changes require review and approval by the Office
                  of General Counsel.

3.      **Definitions**

        None

4.      **Relevant Federal and State Statutes**

        *Texas Education Code* Section 51.202(a) – Rules and Regulations

        *Texas Education Code* Section 54.505 – Vehicle Registration Fees and
        Other Fees Related to Parking and Traffic

5.      **Relevant System Policies, Procedures, and Forms**

        Regents' *Rules and Regulations,* Rule 40401 – Assessment, Collection,
        Delegation, and Waiver of Tuition and Fees

6.      **Who Should Know**

        Chief Business Officers
        Presidents

7.      **System Administration Office(s) Responsible for Rule**

        Office of the Board of Regents

8.      **Dates Approved or Amended**

        Editorial amendment made November 10, 2011
        Editorial amendment made March 18, 2008
        December 10, 2004

9.      **Contact Information**

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80109**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 80110**

1.    **Title**

       Protection of Artificial Bodies of Water and Other Property

2.    **Rule and Regulation**

       Sec. 1    Protection of Artificial Bodies of Water.  Pursuant to the
                 authority conferred upon the Board of Regents by *Texas
                 Education Code* Sections 51.202 and 51.204, in order to protect
                 the safety and welfare of students, faculty, and staff and to
                 protect the property, buildings, and facilities of the U. T. System
                 and the institutions, it shall be unlawful for any person to enter,
                 walk, run, lie, play, remain, or be in the water of any fountain or
                 other artificial body of water, which is not designed and
                 maintained for recreational or therapeutic purposes, located on
                 property owned or controlled by the U. T. System or the
                 institutions unless such person has the prior written permission
                 of the Chancellor or president to enter, remain, or be in such
                 water. It shall further be unlawful for any person to dump, throw,
                 place, or cause any material, object, person, animal, trash,
                 waste, or debris to be placed in such fountain or other artificial
                 body of water.

       Sec. 2    Protection of Other Property.  It shall be unlawful for any person
                 to damage, deface, or remove any portion of any fountain,
                 monument, building, statue, structure, facility, tree, shrub, or
                 memorial located on property owned or controlled by the U. T.
                 System or any of the institutions.

       Sec. 3    Punishment.  Any person who violates any provision of this
                 Subsection may be convicted of a misdemeanor punishable by
                 a fine of not more than $200. Students, faculty, or staff who
                 violates any portion of this Rule are also subject to disciplinary
                 action.

3.    **Definitions**

       None

4.    **Relevant Federal and State Statutes**

       *Texas Education Code* Section 51.202 – Rules and Regulations; Penalty

       *Texas Education Code* Section 51.204 – Trespass, Damage, etc.

**The University of Texas System**
**Rules and Regulations of the Board of Regents**        **Rule: 80110**

5.      **Relevant System Policies, Procedures, and Forms**

      None

6.      **Who Should Know**

      Faculty
      Staff
      Students
      Police Officers

7.      **System Administration Office(s) Responsible for Rule**

      Office of Academic Affairs
      Office of Health Affairs

8.      **Dates Approved or Amended**

      December 10, 2004

9.      **Contact Information**

      Questions or comments regarding this Rule should be directed to:

         •   bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80111**

1.    **Title**

      Smoke Free or Tobacco Free Policies

2.    **Rule and Regulation**

      Sec. 1    Policies.  The institutions of the U. T. System and System
                Administration may adopt smoke free or tobacco free policies.
                Such policies shall be reviewed by the Office of General
                Counsel and shall be consistent with State law.

      Sec. 2    Tobacco Use Cessation Services.  The U. T. System and U. T.
                System institutions may provide employees with tobacco use
                cessation services or make referrals to such services.

      Sec. 3    Prohibition of Tobacco Sales.  Tobacco sales are prohibited on
                U. T. System campuses or at University-sponsored events.

3.    **Definitions**

      None

4.    **Relevant Federal and State Statutes**

      *Texas Penal Code* Section 48.01 – Smoking Tobacco

5.    **Relevant System Policies, Procedures, and Forms**

      None

6.    **Who Should Know**

      Faculty
      Staff
      Students

7.    **System Administration Office(s) Responsible for Rule**

      Office of the Board of Regents

8.    **Dates Approved or Amended**

      May 3, 2012
      December 10, 2004

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80111**

**9.      Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents**        **Rule: 80112**

1.     **Title**

        Residential Conference Centers

2.     **Rule and Regulation**

    Sec. 1     Designation.  The president of an institution may designate rules for a Residential Conference Center that includes rooms for overnight residential guests, rooms for conferences, banquets, and meetings, catering services, and conference and related programming services. The president shall cause to be prepared and submitted for approval, as a part of the *Handbook of Operating Procedures* of the institution, appropriate rules and regulations for the reservation and use of a Residential Conference Center.

    Sec. 2     Rules for Use.  The rules and regulations must restrict the reservation and use of such facilities in accordance with the following:

        2.1     Designation.  Designation as a Residential Conference Center shall not constitute the facility as a public facility or forum that is open to use by individuals, groups, associations, or corporations on a first-come, first-served basis.

        2.2     Reservations.  Priority in the reservation and use of facilities within a Residential Conference Center shall be given to programs and activities of the U. T. System or any of the institutions that are in furtherance of and related to the academic, educational, cultural, outreach, recreational, and athletic programs of the U. T. System or any of the institutions.

        2.3     Use of Facilities.  As a lower priority, the rules and regulations may provide for reservation and use of facilities within a Residential Conference Center by individuals, groups, associations, or corporations without the necessity of joint sponsorship by the U. T. System or any of the institutions and within accepted industry standards and the needs of the institution. Subject to all constitutional and statutory provisions relating to the use of State property or funds for religious or political purposes, facilities within a Residential Conference Center may be made available for religious and political

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80112**

conferences, debates, or conventions. A Residential Conference Center may be used for purposes such as banquets or conferences by entities that use annual conferences or other similar activities to acquire operational funds for the entities. Rates for such use must be charged that, at a minimum, ensure recovery of that part of the operating cost of the Center attributable directly or indirectly to such use; provided, however, that the manager of the facility may grant complimentary rooms or food as is ordinary and customary in the operation of similar facilities for promotional or customer relations purposes if it is reasonably necessary for the operation of the facility.

2.4    Rental.  The rules and regulations applicable to a Residential Conference Center may provide for the rental of space for display of advertising and the display of samples of merchandise in designated areas inside the Residential Conference Center that have been approved by the president of the institution or his or her delegate, and for advertising by displays on a message center inside the Center or on the Center's outdoor electronic marquee, message center, or other signage. A Conference Center retail store operation for goods related to conferences or guest services as well as sales of books, other educational products, software, or related products within the Conference Center shall be allowed and considered within Section 2.5 of Rule 80103 on Solicitation.

3.    **Definitions**

None

4.    **Relevant Federal and State Statutes**

*Texas Education Code* Section 51.202 – Rules and Regulations, Penalty

*Texas Government Code* Section 2165.002 – Exceptions to Commission Charge and Control

*Texas Government Code* Section 2203.004 – Requirement to Use State Property for State Purposes

5.    **Relevant System Policies, Procedures, and Forms**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80112**

Regents' *Rules and Regulations*, Rule 80105 – Joint Sponsorship of the Use of Property or Buildings

6.    **Who Should Know**

Faculty
Staff
Students

7.    **System Administration Office(s) Responsible for Rule**

Office of the Board of Regents

8.    **Dates Approved or Amended**

May 15, 2008

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

1.      **Title**

        Disposal of U. T. System Property

2.      **Rule and Regulation**

        Sec. 1    Determination of Obsolescence.  Whenever any item of equipment becomes obsolete or useless for the needs and purposes of the department concerned, a written report of such fact shall be made to the chief business officer to determine whether or not such item of equipment is needed by any other department and, if so, to transfer and assign the equipment to such department.

        Sec. 2    Transfer to Public School.  If the chief business officer determines that the equipment is not needed for any department, that it is not practical to store the equipment for possible future use, and that the equipment can be used for instructional purposes, it shall be made available to a public school, school district, or an assistance organization designated by the school district at a price or for other consideration agreeable to the U. T. System and the public school, school district, or the assistance organization in accordance with *Texas Government Code* Section 2175.304(b) before disposing of the property in another manner. Preference must be given to a public school or school district or to an assistance organization designated by the school district before disposing of the property in another manner. If more than one public school, school district, or assistance organization seeks to acquire the same equipment on substantially the same terms, the preferences stated in *Texas Government Code* Section 2175.304(c) shall govern the disposition. The instructional equipment may be transferred to the public school or school district for such consideration, or for no consideration, as the chief business officer determines appropriate. Any surplus or salvage property not otherwise disposed of under this Section and having no resale value may be donated to an assistance organization, as defined by *Texas Government Code* Section 2175.001(1).

        Sec. 3    Disposal of Information Technology Equipment.  Surplus or salvage information technology equipment, as defined by *Texas Government Code* Section 2054.003(3)(A), that is not transferred to a public school, school district, or an assistance organization designated by the school district as provided in

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 80201**

Section 2 above or that is not disposed of under other law must be offered next and at no charge to a school district, an open-enrollment charter school, or the Texas Department of Criminal Justice in accordance with *Texas Government Code, Section 2175.905*.

Sec. 4   Disposal Provisions.  Surplus or salvage equipment that is not disposed of as provided in Sections 1, 2, or 3 above shall be disposed of in accordance with the following provisions:

4.1   For items of little value or limited use where sale on competitive bids is not practicable, the chief business officer shall have the authority to dispose of the property on the basis of negotiated bids or surplus auction in amounts under $50,000.

4.2   Sale of property estimated to bring $50,000 or more shall be made on a basis of competitive bids.

4.3   A sale in the amount of $100,000 or more shall be approved in advance by the Chancellor and approved by the Board of Regents through the Consent Agenda; provided, however, that in the event of a catastrophic occurrence where insurable property losses are expected to exceed the institution's $250,000 deductible under the U. T. System's Comprehensive Property Protection Plan (CPPP), the chief business officer of an institution is authorized to enter into contracts to dispose of damaged institution property, including equipment, in a manner deemed to be in the interest of the institution consistent with State law and Regents' Rule 10501.

4.4   Sales to employees are governed by the provisions of The University of Texas Systemwide Policy UTS159 regarding purchasing.

Sec. 5   Donations to Charitable Organizations.  If an item of surplus or salvage equipment is not disposed of as provided in this Rule and the chief business officer determines that the item is of nominal use or value, the chief business officer may direct that the item be donated to a civic or charitable organization or destroyed. If the chief business officer directs the donation of the item to a civic or charitable organization, he or she shall assure that the donation serves a proper public purpose appropriate to the function of the U. T. System or any of the

Exhibit 5

institutions, adequate consideration flows to the public, and sufficient controls are in place to ensure the public purpose is achieved.

Sec. 6    Sale of Artwork or Duplicate Volumes.  When the president of an institution determines that a work of art or a duplicate of a valuable, rare, or significant volume is no longer of significant use for the purposes of teaching or research, the item is subject to sale following the procedure outlined in this Section. The disposability and current fair market value of the item shall be certified by a three-member panel (including either an art historian or a bibliographer) and the director of the collection disposing of the property. U. T. System and any of the institutions shall be given first choice in acquiring the item before it is offered for sale. Proceeds from the sale shall be used for purchases to improve the collection from which the item was drawn or to select items more appropriate to the institution's collection areas. Sale is subject to the approval of the president and must be for the fair market value of the item. A permanent record shall be made of the disposition and future location of the item.

Sec. 7    Transfer of Property.  Property may be transferred from one State agency to another when it becomes surplus. Such transfers from one institution to another or from an institution to another State agency shall have the advance approval of the chief business officer concerned and shall be reported to the president. The chief business officer shall advise departments and administrative offices as to the procedure to be followed in disposing of or acquiring property by this means.

Sec. 8    Transfers of Data Processing Equipment to Hospitals Located in Rural Counties.  Notwithstanding the requirements of this Rule, a U. T. institution or U. T. System may donate data processing equipment that is surplus or salvage property to a public or private hospital located in a rural county. For the purposes of this Rule, "rural county" has the meaning assigned by *Texas Government Code* Section 487.301.

3.    **Definitions**

None

4.    **Relevant Federal and State Statutes**

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80201**

*Texas Government Code* Section 487.301 – Definitions, Rural Health
Facility Capital Improvement

*Texas Government Code* Section 2054.003(3)(A), – Information
Resources Definitions

*Texas Government Code* Section 2175.905 – Disposition of Data
Processing Equipment

*Texas Government Code* Section 2175.304(b) – Exception for Institutions
of Higher Education

5.     **Relevant System Policies, Procedures, and Forms**

       The University of Texas System Administration Policy UTS159,
       *Purchasing*

6.     **Who Should Know**

       Employees
       Chief Business Officers
       Property Managers

7.     **System Administration Office(s) Responsible for Rule**

       Office of Business Affairs

8.     **Dates Approved or Amended**

       Editorial amendment to add new Section 8 made September 14, 2012
       Editorial amendment to Section 4.3 made April 12, 2012
       November 11, 2010
       August 11, 2005
       December 10, 2004

9.     **Contact Information**

       Questions or comments regarding this Rule should be directed to:

       • bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80301**

1.     **Title**

       Capital Improvement Program

2.     **Rule and Regulation**

       Sec. 1     Annual Status Report.  The University of Texas System
                  Administration will maintain a Capital Improvement
                  Program (CIP) on an ongoing basis. Although the CIP is a
                  dynamic document subject to change throughout the year, a
                  report detailing the current status of the CIP will be formally
                  presented to the Board of Regents no less than annually.

       Sec. 2     Contents of Program.  The CIP will consist of a six-year
                  projection of major new construction and repair and
                  rehabilitation projects (Major Projects) to be implemented and
                  funded from institution and Systemwide revenue sources. The
                  CIP should be a current reflection of the institutions' continuous
                  processes of strategic planning and master planning for
                  institutional programs.

       Sec. 3     Modifications to the CIP.  The CIP is subject to modification at
                  any Board of Regents' meeting. Candidate projects will routinely
                  be added to the CIP, and project information such as funding
                  sources, project cost, and delivery dates will routinely be
                  revised. For Major Projects seeking Board action, the
                  institutional president will submit a request for inclusion on the
                  Board of Regents' agenda. Requests to add to or modify the
                  CIP will be reviewed in accordance with the processes
                  administered by the Office of Facilities Planning and
                  Construction adopted in the CIP.

       Sec. 4     Preliminary Cost Expenditures for Major Projects.  Approval by
                  the appropriate Executive Vice Chancellor and the Chancellor
                  will allow a Major Project to proceed to the Definition Phase.
                  The Definition Phase provides authority for the U. T. System
                  Administration and the institutional administration to expend
                  institutional funds up to 5% of the anticipated total project cost
                  to select the project architect and other consultants, confirm the
                  basis of design, develop the formal Facility Program document,
                  and develop schematic project plans. These funds will be
                  provided by the institution initially but will be reimbursed to the
                  institution from applicable project funds upon design
                  development approval or upon submission of a project

                                                                      **Page 1 of 3**

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 80301**

application to the Texas Higher Education Coordinating Board (if applicable), whichever is later.

Sec. 5    Addition of a Major Project to the CIP.  Following the Definition Phase, addition of a project to the CIP provides authority for the U. T. System Administration and the institutional administration to expend institutional funds up to 10% of the anticipated total project cost to proceed to Design Development Approval. These funds will be provided by the institution initially but will be reimbursed to the institution from applicable project funds upon Design Development Approval or upon submission of a project application to the Texas Higher Education Coordinating Board (if applicable), whichever is later.

Sec. 6    Institutional Management of a Major Project.  Addition of a project to the CIP includes authorization of institutional management of Major Projects so designated in the CIP. Requests for institutional management shall be reviewed and approved by the Associate Vice Chancellor for Facilities Planning and Construction. Projects approved for institutional management will be included in the CIP. Projects designated for institutional management shall follow the process, authority, and approvals as outlined in Rule 80404 of the Regents' *Rules and Regulations* for the full amount stipulated in the CIP.

Sec. 7    Timing of Student Election.  For such additions to the CIP that are anticipated to be funded in part by student fees, the project must be presented to the Board by the institutional President or his/her delegate and student representative(s) for approval prior to the call for a student election on the authorization or increase of the associated fee. This Section does not require a student election if one is not otherwise required by statute.

3.    **Definitions**

Facility Program – A project planning document that organizes and summarizes client needs and programmatic information needed to design a capital project. It is generated through a process of collecting, analyzing, synthesizing, and documenting significant requirements for a Project prior to proceeding into the Design Phase.

Major Project – Any project that meets one or more of the following criteria: 1) new building construction with a total project cost of $10 million or more, 2) road, paving, and repair and rehabilitation projects with a total

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**          **Rule: 80301**

project cost of $10 million or more, and 3) any project determined by the Board to be architecturally or historically significant.

4.     **Relevant Federal and State Statutes**

       None

5.     **Relevant System Policies, Procedures, and Forms**

       Regents' *Rules and Regulations,* Rule 40401 – Assessment, Collection, Delegation, and Waiver of Tuition and Fees

6.     **Who Should Know**

       Administrators

7.     **System Administration Office(s) Responsible for Rule**

       Office of Business Affairs

8.     **Dates Approved or Amended**

       September 24, 2015
       August 20, 2015 (effective September 1, 2015)
       December 12, 2013
       Editorial amendment to Number 3 made December 3, 2012
       August 12, 2010
       August 20, 2009
       May 15, 2008 (effective July 1, 2008)
       Editorial amendment to Number 3 made April 7, 2008
       Editorial amendment to Number 3 made March 18, 2008
       May 10, 2007
       December 10, 2004

9.     **Contact Information**

       Questions or comments regarding this Rule should be directed to:

       - bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 80302**

1.     **Title**

       Building Committees

2.     **Rule and Regulation**

       Sec. 1     Building Advisory Committees.  There may be a Building
                  Advisory Committee for each institution. The duties,
                  composition, and appointment of the members of the Committee
                  shall be set forth in the *Handbook of Operating Procedures* of
                  each institution. The Committee shall have no further direct
                  responsibility after the construction contract is awarded but shall
                  be available for consultation as the building progresses, as
                  requested by the president of the institution, the appropriate
                  Executive Vice Chancellor, the Deputy Chancellor, the
                  Chancellor, or the Office of Facilities Planning and Construction.

       Sec. 2     Ad Hoc Project Building Committee.  The president may
                  appoint, according to the institutional *Handbook of Operating
                  Procedures*, an Ad Hoc Project Building Committee composed
                  of, but not limited to, representatives of the departments or
                  divisions that will occupy the building. The chairperson of the
                  Building Advisory Committee shall be an *ex officio* member of
                  each Ad Hoc Project Building Committee. The Ad Hoc Building
                  Committee shall work with U. T. System Administration's Office
                  of Facilities Planning and Construction to prepare a facility
                  program in accordance with the Facilities Programming
                  Guidelines maintained by the Office of Facilities Planning and
                  Construction.

       Sec. 3     Architect Selection Advisory Committees.  Architect Selection
                  Advisory Committees for Major Projects shall be appointed by
                  the institutional president in consultation with the Office of
                  Facilities Planning and Construction and the Associate Vice
                  Chancellor for Facilities Planning and Construction. The
                  Architect Selection Advisory Committee is authorized to
                  evaluate, rank, and make selection recommendations of project
                  architects for appointment by the Executive Vice Chancellor for
                  Business Affairs, with the exception of Special Interest Projects
                  discussed in Section 4 below. Architect Selection Advisory
                  Committees for Minor Projects shall be appointed by the
                  president of the institution.

       Sec. 4     Special Interest Projects.  Upon recommendation of the
                  Associate Vice Chancellor for Facilities Planning and

_____

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 80302**

Construction following consultation with the Chairman of the Facilities Planning and Construction Committee, a project may be designated by the Board of Regents to be of special interest because of proposed building site, historical or cultural significance, proposed use, or other unique characteristics. For these special interest projects, the institutional president, in consultation with the Office of Facilities Planning and Construction, will appoint an Architect Selection Advisory Committee that may include any two members of the Board of Regents named by the Chairman of the Board. The Architect Selection Advisory Committee will investigate the competence and qualifications of the candidates. Board members of the Architect Selection Advisory Committee will report the findings and recommendations based on the interviews to the FPCC. The FPCC may select an architect from this list, or may ask the Selection Advisory Committee for additional recommendations of architects responding to the Request for Qualifications (RFQ), or may select an architect responding to the RFQ but not on the list on the basis of competence and qualifications. The FPCC may conduct interviews and site visits as necessary and will select the most qualified architect for the project based on demonstrated competence, qualifications, and the criteria published in the RFQ, without consideration of fees or costs.

Sec. 5    Selection Committee for Construction Firms.  Selection Committees for Major Projects shall be appointed by the Associate Vice Chancellor for Facilities Planning and Construction in consultation with the institutional president. Selection Committees for Minor Projects shall be appointed by the president of the institution. Selection Committees are authorized to evaluate, rank, and make selection recommendations of design-build contractors, construction manager-agents, construction managers-at-risk, general contractors, and job order contractors on the basis of qualifications and competitive sealed proposals in response to RFQs and Requests for Proposals (RFPs). Selection Committees are also authorized to enter into discussions for modification and negotiation of competitive sealed proposals in response to requests for proposals with respondents, as required or permitted by law.

3.    **Definitions**

None

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**        **Rule: 80302**

4.      **Relevant Federal and State Statutes**

     None

5.      **Relevant System Policies, Procedures, and Forms**

     None

6.      **Who Should Know**

     Administrators

7.      **System Administration Office(s) Responsible for Rule**

     Office of Business Affairs

8.      **Dates Approved or Amended**

     August 20, 2015 (effective September 1, 2015)
     Editorial amendment to Section 1 made July 13, 2015
     November 9, 2007
     November 10, 2005
     December 10, 2004

9.      **Contact Information**

     Questions or comments regarding this Rule should be directed to:

        •   bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents          Rule: 80303**

1.     **Title**

       Use of the Available University Fund

2.     **Rule and Regulation**

       Sec. 1     Impact of Spending.  Any staff recommendation to appropriate
                  funds from the Available University Fund (AUF) or from
                  Permanent University Fund (PUF) Bond Proceeds will be
                  presented in the context of that appropriation's impact on:
                  (a) AUF funding for the support and maintenance of U. T.
                  Austin, (b) bond ratings, and (c) projected AUF balances. These
                  impacts will be considered to provide a consistent and
                  dependable level of funding.

       Sec. 2     Required Reports.  To determine the appropriate level of
                  spending of the AUF, the following reports will be provided to
                  the Board of Regents:

                  2.1     A forecast of at least six years of the income and
                          expenditures of the AUF will be presented as needed to
                          the Board of Regents' Finance and Planning Committee.
                          The University Lands Office shall provide to The
                          University of Texas Investment Management Company
                          (UTIMCO) a forecast of revenue expected to be derived
                          from PUF lands and deposited into the PUF. UTIMCO
                          shall provide to the Office of Finance a forecast of PUF
                          distributions to the AUF, based on expected PUF land
                          contributions and investment returns, which will serve as
                          the basis of the AUF forecast. Included as part of the
                          AUF forecast will be the projected amount of remaining
                          PUF debt capacity as calculated by the Office of Finance.

                  2.2     In May of each year, the Board of Regents shall
                          determine an amount to be distributed to the AUF during
                          the next fiscal year. The default annual distribution shall
                          be an amount equal to 4.75% of the trailing 12-quarter
                          average of the net asset value of the PUF for the quarter
                          ending February of each year unless the average annual
                          rate of return of the PUF investments over the trailing
                          12 quarters exceeds the Expected Return by 25 basis
                          points or more, in which case the distribution shall be
                          5.0% of the trailing 12-quarter average. "Expected
                          Return" is the Expected Annual Return or Benchmark set

                                                                    **Page 1 of 4**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**       **Rule: 80303**

out in the Permanent University Fund Investment Policy Statement.

2.3    The CIP will be updated quarterly and reviewed with the Board of Regents every year. The updated CIP will include an estimated start date for each project, which will be based on the criteria set forth in Section 3.2 below, project readiness, projected fund availability, and relative urgency of need for the completed project.

Sec. 3    Individual Projects.  The following items will be done when preparing requests of AUF expenditures:

3.1    As a part of each agenda item requesting approval of AUF expenditures or PUF funded projects, a statement indicating compliance with this policy shall be included.

3.2    In preparing recommendations for projects to be approved, the staff will be guided by the following justification criteria:

(a) consistency with institution's mission;

(b) project need;

(c) unique opportunity;

(d) matching funds/leverage;

(e) cost effectiveness;

(f)  state of existing facility condition; and

(g) other available funding sources.

3.3    No project will be recommended for approval, if in any of the forecasted years the required appropriations from the AUF or PUF bond proceeds would cause:

(a) the forecasted AUF expenditures for program enrichment at U. T. Austin to fall below 45% of the sum of the projected U. T. System share of the net divisible AUF annual income and interest income on AUF balances [subject to the limits imposed by (b) and (c) below];

    (b) debt service coverage to be less than 1.50:1.00; and

    (c) the forecasted end of year AUF balance to be less than $30 million.

Sec. 4    System Administration Budget.  Operating expenditures of the U. T. System Administration will be carefully controlled to maximize the opportunity to meet the capital needs of the institutions of the U. T. System and the operating budget needs of U. T. Austin. Wherever possible, alternate funding from institutions, State funds, or other sources will be sought. Programs for which alternative funding cannot be obtained will be evaluated for possible reductions or phase-out.

**3.**    **Definitions**

None

**4.**    **Relevant Federal and State Statutes**

None

**5.**    **Relevant System Policies, Procedures, and Forms**

None

**6.**    **Who Should Know**

Administrators

**7.**    **System Administration Office(s) Responsible for Rule**

Office of Business Affairs

**8.**    **Dates Approved or Amended**

Editorial amendments to Sec. 2.1 and 2.2 made September 18, 2014
August 14, 2008
May 15, 2008 (effective July 1, 2008)
December 10, 2004

**9.**    **Contact Information**

Questions or comments regarding this Rule should be directed to:

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80303**

- bor@utsystem.edu

**Exhibit 5**

1.      **Title**

        Debt Policy

2.      **Rule and Regulation**

        Sec. 1      Purpose.  This policy governs the use of debt to finance capital
                    projects within The University of Texas System. The prudent
                    use of debt can help the U. T. System achieve its strategic
                    objectives while maintaining a credit rating that appropriately
                    balances financial flexibility with cost of capital.

        Sec. 2      Financing Programs.  The U. T. System issues debt through
                    three primary programs:  the Revenue Financing System (RFS),
                    the Permanent University Fund (PUF), and the Higher
                    Education Assistance Fund (HEAF). This policy will govern the
                    issuance of all U. T. System debt.

                    2.1      Revenue Financing System.  The RFS was created by
                             the Board of Regents through the adoption of a Master
                             Resolution on February 14, 1991. The Board established
                             the RFS for the purpose of assembling the U. T.
                             System's revenue-supported debt capacity into a single
                             financing program in order to provide a cost-effective
                             debt program to institutions of the U. T. System and to
                             maximize the financing options available to the Board.

                    2.2      Permanent University Fund.  Article VII, Section 18 of the
                             Texas Constitution authorizes the Board of Regents to
                             issue bonds and notes secured by the U. T. System's
                             interest in the Available University Fund (AUF). The AUF
                             consists of distributions from the total return of PUF
                             investments. The Texas Constitution limits the amount of
                             PUF debt that may be issued by the U. T. System to 20%
                             of the cost value of investments and other assets of the
                             PUF. The Texas Constitution prohibits the issuance of
                             PUF debt for auxiliary projects.

        Sec. 3      Authority.  All debt incurred by the U. T. System will be issued or
                    incurred pursuant to resolutions approved by the Board of
                    Regents and in accordance with the general laws of the State of
                    Texas, including particularly Article VII, Sections 17 and 18 of
                    the Texas Constitution, Chapters 55 and 65 of the *Texas
                    Education Code*, and Chapters 1207 and 1371 of the *Texas
                    Government Code.* Before any debt can be issued, the

**Exhibit 5**

U. T. System must obtain an opinion from bond counsel that the issue complies with applicable Texas and federal laws. The U. T. System must also receive the necessary approvals from both the Texas Bond Review Board and the Texas Attorney General.

Sec. 4    Debt Guidelines.  Any debt must be issued in strict compliance with applicable law. The following debt guidelines will apply:

4.1    Project Funding.  The U. T. System will borrow money, through the issuance of debt, to finance only those projects that have been approved for financing by the Board of Regents. Capital projects are generally evaluated and prioritized through the U. T. System's Capital Improvement Program. For construction projects that require debt financing, bond proceeds will be provided only after design development approval and appropriation of funds by the Board.

4.2    Interest Rate Exposure.  System Administration's Office of Finance will evaluate and determine the appropriate amount of its interest rate exposure, defined as the possible increase in capital costs resulting from rising short-term interest rates. The U. T. System will limit its variable rate debt in accordance with rating agency guidelines for assessing the debt structure of peer institutions of higher education with comparable credit ratings. In determining the amount of variable rate debt, the Office of Finance will evaluate the level of variable rate assets that may be available to provide a natural hedge to interest rate fluctuations. The U. T. System will seek to minimize its cost of capital within a prudent level of exposure to interest rate volatility. The U. T. System shall broadly target variable rate debt of 30-50% of total outstanding debt.

4.3    Amortization.  The amortization of tax-exempt debt will be based on the types of assets financed, the expected availability of cash flows to meet debt service requirements, and tax regulations. Generally, the amortization of tax-exempt debt should not exceed the useful life of the financed asset and may never exceed the Internal Revenue Service limit of 120% of the useful life of the financed asset. The maximum maturity of RFS debt is limited to 50 years by Chapter 55 of the *Texas*

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**               **Rule: 80305**

*Education Code*. The maximum maturity of PUF debt is limited to 30 years by Article VII, Section 18 of the Texas Constitution. The maximum maturity of HEAF debt is limited to 10 years by Article VII, Section 17 of the Texas Constitution.

4.4   Financial Ratios.  The U. T. System will use selected actual and pro forma financial ratios, consistent with major credit rating agency criteria, to ensure the U. T. System is operating within appropriate financial bounds. Although other ratios may also be evaluated, the primary financial ratios to be analyzed include the debt service coverage ratio, the debt burden ratio, and the leverage ratio.

4.5   Economies of Scale.  Debt financings will be coordinated to the extent practical so that multiple project needs can be accommodated in a single borrowing, thereby increasing the efficiency of the debt issuance. Since many issuance costs do not vary with the size of a borrowing, a large bond issue increases the efficiency of the financing by spreading fixed costs over a greater number of projects.

4.6   Refunding Opportunities.  The Office of Finance will actively consider refinancing of outstanding debt issues when net savings for that refinancing measured on a net present value basis are positive. Since there are limitations on the number of allowable re-financings, it is important to use re-financing opportunities wisely. In evaluating refunding opportunities, the Office of Finance will consider the value of the call option to be exercised, including the amount of time to the call date and the amount of time from the call date to maturity. Based on these and other factors, the Office of Finance will determine the minimum savings threshold for any particular refunding transaction. Refundings that do not produce savings may be considered under certain circumstances, such as eliminating restrictive bond covenants or other situations that produce a greater benefit to the U. T. System.

4.7   Disclosure.  The Office of Finance will provide updated financial information and operating data and timely notice of specified material events to each nationally recognized

Exhibit 5

municipal securities information repository and any State information depository, pursuant to its continuing disclosure undertakings with respect to Rule 15c2-12 promulgated by the Securities and Exchange Commission.

4.8    Hedging Instruments.  The Office of Finance will consider the use of interest rate swaps and other interest rate risk management tools after carefully evaluating the risks and benefits of any proposed transaction in accordance with Regents' *Rules and Regulations,* Rule 70202 titled *Interest Rate Swap Policy*. By using swaps in a prudent manner, the U. T. System can take advantage of market opportunities to minimize expected costs and manage interest rate risk. As outlined in Regents' *Rules and Regulations,* Rule 70202, the use of swaps must be tied directly to U. T. System debt instruments. The U. T. System shall not enter into swap transactions for speculative purposes.

4.9    Project Financing.  The Office of Finance will consider the use of project financing in those limited circumstances where the benefits of such a transaction exceed the increased costs. Project financing can be a useful financing technique in certain circumstances; however, these transactions are typically less efficient and more costly than traditional financing due to lower credit ratings, fewer economies of scale, the funding of a reserve fund, and the cost of bond insurance. Project financing does not preserve or increase debt capacity relative to traditional financing. The credit rating agencies and the U. T. System include project debt when assessing the debt capacity of institutions of the U. T. System.

4.10   Taxable Debt.  The U. T. System may use taxable debt for those projects that have an intended use or other characteristics that preclude the use of tax-exempt debt. The U. T. System will strive to allocate its available resources, including equity capital, among its various capital projects to minimize or eliminate the need to issue taxable debt, thereby minimizing the U. T. System's cost of capital. Any use of taxable debt would require separate Board of Regents approval and be subject to the same statutory requirements as tax-exempt debt.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                        Rule: 80305**

        4.11   Reporting Requirements.  The Annual Financial Report (AFR), prepared by the U. T. System and presented to the Board of Regents, will discuss the status of all outstanding bond and note indebtedness. The AFR presented to the Board provides detailed information on the U. T. System's outstanding bonds and notes including, by series, the amount outstanding, interest rates, maturity dates, a summary of the changes in outstanding indebtedness, and the associated debt service requirements.

**3.      Definitions**

None

**4.      Relevant Federal and State Statutes**

Texas Constitution Article VII, Section 17 – Colleges and Universities; Appropriations and Funding

Texas Constitution Article VII, Section 18 – Bonds or Notes Payable from Income of Available University Fund

*Texas Education Code,* Chapter 55 – Financing Permanent Improvements

*Texas Education Code,* Chapter 65 – Administration of the U. T. System

*Texas Government Code,* Chapter 1207 – Refunding Bonds

*Texas Government Code,* Chapter 1371 – Obligations for Certain Public Improvements

**5.      Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 70202 – Interest Rate Swap Policy

**6.      Who Should Know**

Administrators

**7.      System Administration Office(s) Responsible for Rule**

Office of Business Affairs

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80305**

8.    **Dates Approved or Amended**

Editorial amendment made September 1, 2015
December 10, 2004

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                      Rule: 80307**

1.      **Title**

        Naming Policy

2.      **Rules and Regulation**

        Sec. 1      General.  Before proceeding with any naming, institutions must
                    carefully consider all circumstances surrounding the naming,
                    including the overall benefit to the institution and whether
                    displaying the name is and will continue to be a positive
                    reflection on the institution.

                    1.1      Review.  Any naming of Facilities and Programs must
                             undergo a high level of consideration and due diligence
                             to ensure that the name comports with the purpose and
                             mission of the U. T. System and the U. T. System
                             institutions. No naming shall be permitted for any
                             corporation or individual whose public image, products,
                             or services may conflict with such purpose and mission.

                    1.2      Time Limitation for Approval.  Naming approvals granted
                             under this Rule are valid for a period not to exceed
                             365 days from the date of approval. After approval of a
                             naming, the negotiated gift agreement must be executed
                             within 365 days of that approval. If that does not occur,
                             the naming must be resubmitted for approval by the
                             Board of Regents through the Vice Chancellor for
                             External Relations unless the Chancellor approves a
                             one-time, 90-day extension of the naming approval,
                             consistent with the requirements of Section 2 below.

        Sec. 2      Naming of Prominent Facilities and Prominent Programs.

                    2.1      Each naming for a Prominent Facility or Prominent
                             Program must be approved by the Board of Regents.
                             Recommendations for namings of any university building
                             or athletic facility, college, school, and academic
                             department or clinical division shall be forwarded to the
                             Board of Regents with recommendations of the
                             Chancellor, the Deputy Chancellor, the Executive Vice
                             Chancellor for Academic or Health Affairs, the Vice
                             Chancellor for External Relations, and the president of
                             the institution, according to procedures established by
                             the Office of External Relations.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80307**

2.2    Naming of Other Prominent Facilities and Programs.
Each naming for Other Prominent Facilities and Other
Prominent Programs may be approved by the Chancellor
with recommendations of the Deputy Chancellor, the
Executive Vice Chancellor for Academic or Health Affairs,
the Vice Chancellor for External Relations, and the
president of the institution, according to procedures
established by the Office of External Relations. Other
Prominent Facilities and Programs may include wings
and other major components of academic, medical,
athletics, and arts facilities, large auditoria, concert halls,
atria, prominent outdoor spaces, and clinics and
academic and health programs, centers, institutes, and
organized research units. The Vice Chancellor for
External Relations, in consultation with the appropriate
Executive Vice Chancellor, will make final determinations
concerning what types of Facilities and Programs will be
considered Other Prominent.

Sec. 3    Naming of Less Prominent Facilities and Less Prominent
Programs. The Board of Regents has delegated naming
authority for Less Prominent Facilities and Less Prominent
Programs to each president based on a set of general
guidelines that are reviewed and approved by the Chancellor,
except that any Corporate Naming requires approval by the
Chancellor and compliance with the procedures set forth below
in Section 8, including the requirement for advance consultation.
The Vice Chancellor for External Relations, through consultation
with the appropriate Executive Vice Chancellor and the U. T.
System institutions, will make final determinations concerning
what types of Facilities and Programs may be considered Less
Prominent.

Sec. 4    Naming of Streets.  The naming of all streets located on campus
must be approved by the Board of Regents. Recommendations
for any street names shall be forwarded to the Board of Regents
with recommendations of the Chancellor, the Deputy
Chancellor, the Executive Vice Chancellor for Academic or
Health Affairs, the Vice Chancellor for External Relations, and
the president of the institution.

Sec. 5    Honorific Naming.  Honorific namings may be considered for
individuals who have made exemplary or meritorious
contributions to the U. T. System or any of the institutions or
society. Any naming in honor of U. T. System administrative
officials, faculty, or staff members or for elected or appointed

Exhibit 5

public officials shall normally occur only after the campus employment or public service has concluded.

> 5.1     Honorific namings of Prominent Facilities and Programs or Other Prominent Facilities and Programs must be approved by the Board of Regents. Requests shall be forwarded to the Board of Regents with the recommendations of the Chancellor, the Deputy Chancellor, the Executive Vice Chancellor for Academic or Health Affairs, the Vice Chancellor for External Relations, and the president of the institution.

> 5.2     Under appropriate circumstances, honorific namings of Less Prominent Facilities and Programs may be granted by the president of the institution. Such naming for a U. T. System administrative official, faculty, or staff member or for an elected or appointed public official will be submitted to U. T. System Administration and to the Board of Regents on the Consent Agenda.

Sec. 6     Gift-Related Naming.  Facilities and Programs may be named under the terms of a negotiated gift agreement to memorialize or otherwise recognize substantial gifts and significant donors or individuals designated by donors. Each institution shall develop guidelines for what constitutes substantial and significant donations to warrant a gift-related naming. Institutional donor guidelines must be approved by the Executive Vice Chancellor for Academic Affairs or Health Affairs, the Vice Chancellor for External Relations, and the Vice Chancellor and General Counsel for inclusion in the institutional *Handbook of Operating Procedures.*

Sec. 7     Corporate Naming.  Each Corporate Naming for Prominent Facilities or Programs must be approved by the Board of Regents. Each Corporate Naming for Other Prominent Facilities and Programs or Less Prominent Facilities or Programs must be approved by the Chancellor.

> 7.1     Special Considerations. The Office of External Relations must complete a detailed due diligence review, in accordance with policies and procedures established by that office, of the corporation prior to any Corporate Naming. Each Corporate Naming must be analyzed by the Office of External Relations, the Office of the Board of Regents, the Office of General Counsel, and the Office of

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80307**

Business Affairs to ensure that there are no impermissible conflicts or legal issues. Certain restrictions may also apply to any proposed naming of a Facility financed with the proceeds of tax-exempt bonds.

Corporate namings for academic and health buildings, colleges and schools, and academic departments shall not occur, with the exception of rare and special circumstances.

Corporate namings for athletics facilities, arts facilities, and museums, conference centers, and non-academic and non-health facilities may receive consideration with preference given to term limits for corporate namings.

7.2    Procedures for Corporate Naming.  Before negotiating a possible Corporate Naming, the president shall send a written request, in compliance with procedures established by the Office of External Relations, to the Executive Vice Chancellor for Academic or Health Affairs. Except in the case of Less Prominent Facilities or Programs, the institution shall negotiate an agreement with the corporation, using the Standard Corporate Naming Gift/Licensing Agreement prepared by the Office of General Counsel. Any substantive variations to the standard agreement must be approved by the Office of General Counsel. The Executive Vice Chancellor for Academic or Health Affairs shall have authority to sign such agreements after appropriate review and approval.

Sec. 8    Changes to Approved or Existing Names of Prominent Facilities, Programs, and Streets and Nonhonorific Redesignation.  Minor changes to approved or existing names of Prominent Facilities, Programs, and Streets as determined by the Vice Chancellor for External Relations and the General Counsel to the Board may be approved by the Chancellor after review by the Deputy Chancellor, the Executive Vice Chancellor for Academic and Health Affairs, and the president of the institution. Nonhonorific renaming and redesignation of projects in the Capital Improvement Program (CIP) shall be reviewed and approved by the Associate Vice Chancellor for Facilities Planning and Construction. Such approved redesignations will be included in the amended CIP.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 80307**

Sec. 9    Namings Approvals Chart

|  | Corporate* | Non-Corporate | Honorific |
|---|---|---|---|
| Namings for Prominent Facilities and Programs** | Board of Regents | Board of Regents | Board of Regents |
| Namings for Other Prominent Facilities and Programs*** | Chancellor | Chancellor | Board of Regents |
| Less Prominent Facilities and Programs**** | Chancellor | Institutional President | Institutional President |

* In addition to the approvals specified in this chart, all requests for Corporate Naming must be forwarded in writing by the institution's president to the Executive Vice Chancellor for Academic or Health Affairs (as appropriate), the Vice Chancellor for External Relations, and the Office of General Counsel; must be recommended by the Chancellor; and must otherwise comply with specific guidelines relating to Corporate Naming.

** In addition to the approvals specified in this chart, all requests for naming for Prominent Facilities and Programs (as defined in Regents' *Rule*, Rule 80307) must be recommended by the Chancellor, the Deputy Chancellor, the Executive Vice Chancellor for Academic or Health Affairs (as appropriate), and the Vice Chancellor for External Relations, and must comply with procedures established by the Office of External Relations. The Vice Chancellor for External Relations, in consultation with the Executive Vice Chancellor for Academic or Health Affairs (as appropriate), makes final determinations as to which Facilities and Programs are considered Prominent.

*** Any naming for Other Prominent Facilities and Programs shall be based on a set of general guidelines that are reviewed and approved by the Chancellor. The Vice Chancellor for External Relations, in consultation with the appropriate Executive Vice Chancellor, makes final determinations as to which Facilities and Programs are considered Other Prominent.

**** Any naming for Less Prominent Facilities and Programs shall be based on a set of general guidelines that are reviewed and approved by the Chancellor. The Vice Chancellor for External Relations, in consultation with the appropriate Executive Vice Chancellor and the institutions, makes final determinations as to which Facilities and Programs are considered Less Prominent.

Sec. 10    Announcements.  No institution shall announce the naming of any Facility or Program prior to the final approval required by this Rule.

3.    **Definitions**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    Rule: 80307

Facilities - all physical facilities and buildings.

Prominent Facilities - all buildings; athletic facilities.

Other Prominent Facilities - areas such as wings and other major components of academic, medical, athletics, and arts facilities, large auditoria, concert halls, atria, prominent outdoor spaces, and clinics.

Less Prominent Facilities - facilities such as laboratories, classrooms, seminar or meeting rooms, and patient rooms that the Vice Chancellor for External Relations, in consultation with the Executive Vice Chancellor for Academic or Health Affairs, and the U. T. System institutions, determines are less prominent and therefore not within the category of Prominent Facilities.

Programs - all non-physical entities.

Prominent Programs - major entities, such as colleges, schools, academic departments, and clinical divisions.

Other Prominent Programs - academic and health centers, programs, institutes, and organized research units.

Less Prominent Programs - academic centers, programs, and institutes that the Vice Chancellor for External Relations, in consultation with the Executive Vice Chancellor for Academic or Health Affairs, determines are less prominent and therefore not within the category of Prominent Programs.

Corporate Naming - the naming of any Facility or Program after a corporate or other business-oriented entity.

Prominent Naming - the naming of Prominent Facilities or Prominent Programs.

4.      **Relevant Federal and State Statutes**

*Texas Education Code* Section 51.923 – Qualifications of Certain Business Entities to Enter Into Contracts With an Institution of Higher Education

5.      **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 40602 – Organized Research Units

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents            Rule: 80307**

Regents' *Rules and Regulations,* Rule 60301 – Development Board of an
Institution

6.     **Who Should Know**

Administrators
Development Officers

7.     **System Administration Office(s) Responsible for Rule**

Office of External Relations

8.     **Dates Approved or Amended**

February 11, 2016
Editorial amendments made to Sections 2, 4, 7, 9, and 10 made
      July 13, 2015
August 25, 2011
Section 9 (Nonhonorific Redesignation) was added back in as an editorial
      amendment on March 5, 2010; this section (formerly Sec. 6) was deleted
      in May 2006. Sections 9-10 were renumbered as Sections 10-11.
February 5, 2010
August 23, 2007
May 11, 2006
December 10, 2004

9.     **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 80308**

1.      **Title**

        Inscriptions on Building Plaques

2.      **Rule and Regulation**

        Sec. 1    Content and Format.  The Board of Regents authorized the
                  Chancellor to approve inscriptions on building plaques within
                  The University of Texas System, which are in conformity with
                  the content and format below:

                            BUILDING NAME
                            20__
                            (Year of Notice to Proceed)

        BOARD OF REGENTS

        Name, Chairman              Name, Chancellor, The University of Texas System
        Name, Vice Chairman         Name, President, The University of Texas (Institution)
        Name, Vice Chairman         Name, Project Advocate
        Name, Regent                Name, Project Architect
        Name, Regent                Name, Contractor
        Name, Regent
        Name, Regent
        Name, Regent
        Name, Regent

3.      **Definitions**

        None

4.      **Relevant Federal and State Statutes**

        None

5.      **Relevant System Policies, Procedures, and Forms**

        None

6.      **Who Should Know**

        Administrators

7.      **System Administration Office(s) Responsible for Rule**

        Office of External Relations

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 80308**

8.     **Dates Approved or Amended**

       Editorial amendment made July 7, 2016
       December 10, 2004

9.     **Contact Information**

       Questions or comments regarding this Rule should be directed to:

       • bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                              **Rule: 80401**

1.      **Title**

        Prevailing Wage Rates

2.      **Rule and Regulation**

        Sec. 1    Use of Wage Surveys.  Pursuant to state law construction
                  contracts are required to incorporate prevailing wage rates
                  established for each county of each campus based on
                  geographic location. The basis for establishing the wage rates
                  shall be in compliance with state law. The Board of Regents
                  authorizes periodic surveys to be performed to update wage
                  rate data.

3.      **Definitions**

        None

4.      **Relevant Federal and State Statutes**

        *Texas Government Code* Section 2258 – Prevailing Wage Rates

5.      **Relevant System Policies, Procedures, and Forms**

        None

6.      **Who Should Know**

        Chief Business Officers

7.      **System Administration Office(s) Responsible for Rule**

        Office of Business Affairs

8.      **Dates Approved or Amended**

        December 10, 2004

9.      **Contact Information**

        Questions or comments regarding this Rule should be directed to:

        • bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 80402**

1.      **Title**

        Major Construction and Repair and Rehabilitation Projects

2.      **Rule and Regulation**

        Sec. 1      Contract Authorization – Architects, Engineers, and Design-
                    Build Contractors.  Subject to Regents' *Rules and Regulations*,
                    Rule 80301 and Rule 10501, and Sections 2, 3, 4, and 5 below,
                    and except as otherwise specified in these *Rules and
                    Regulations*, the Executive Vice Chancellor for Business Affairs,
                    with the advice of the Associate Vice Chancellor for Facilities
                    Planning and Construction and the institutional president, is
                    authorized to appoint architects, engineers, and design-build
                    contractors and execute contracts for professional services.

        Sec. 2      Contract Authorization – Construction.  The Executive Vice
                    Chancellor for Business Affairs is authorized to execute
                    construction and related contracts for all Major Projects that
                    have previously been approved for the Definition Phase by the
                    appropriate Executive Vice Chancellor and the Chancellor or
                    authorized by the Board of Regents in the Capital Improvement
                    Program (CIP).

        Sec. 3      Standardized Contracts.  Construction contracts executed and
                    delivered on behalf of the Board of Regents for Major Projects
                    shall comply with guidelines issued by the U. T. System
                    Administration's Office of General Counsel and shall be written
                    on a standard form approved by the Office of General Counsel.
                    Payment and performance bonds, when required by law for
                    contracts, shall be on a standard form approved by the Office of
                    General Counsel. Contracts with architects and engineers shall
                    comply with guidelines issued by the Office of General Counsel
                    and shall be written on a standard form approved by the Office
                    of General Counsel.

        Sec. 4      Authorization to Expend Funds Appropriated in the CIP.

                    4.1     The Chancellor will approve the Design Development
                            Plans for all major repair and rehabilitation projects that
                            are not architecturally or historically significant and
                            authorize expenditure of appropriated funds. The
                            executive officers and institutional presidents shall be
                            responsible for identifying special interest projects to
                            the Facilities Planning and Construction Committee.

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                Rule: 80402**

    4.2     The Board of Regents will approve the Design Development Plans for all Major Projects other than repair and rehabilitation projects that are not architecturally or historically significant and authorize expenditure of appropriated funds. The executive officers and institutional presidents shall be responsible for identifying special interest projects to the Facilities Planning and Construction Committee.

Sec. 5     Approval for Excess Costs.  Project costs that exceed 10% of the Total Project Cost approved by the Board of Regents or $500,000, whichever is greater, must be approved by the Board.

Sec. 6     Contract Management.  The Associate Vice Chancellor for Facilities Planning and Construction is authorized to implement and manage all professional service, construction, and construction-related contracts executed by the Executive Vice Chancellor for Business Affairs pursuant to Sections 1 and 2 of this Rule and Rule 80403, Section 1. The Associate Vice Chancellor for Facilities Planning and Construction's authority includes, but is not limited to, extending the term of existing contracts to the extent such extensions are contemplated in the contract; approving additional work requests; approving a construction contractor's, design-build contractor's, or construction manager's estimates, guaranteed maximum price proposals, or stipulated sum proposals; approving change orders; and providing general supervision of all Major and Minor Projects.

Sec. 7     Authority to Increase Project Cost.  The Chancellor, with the advice of the Deputy Chancellor, the appropriate Executive Vice Chancellor, the Office of Finance, and the institutional president, is authorized to increase the approved Total Project Cost not more than 10% or $500,000, whichever is greater. To provide funding for the increase, the Chancellor may reallocate funding between or among approved projects at a single institution if funding for such projects has previously been authorized or approved funding from some other source is available to the institution.

Sec. 8     Facility Program.  A facility program shall be prepared for all Major Projects in accordance with the Facilities Programming Guidelines maintained by the Office of Facilities Planning and

**The University of Texas System**
**Rules and Regulations of the Board of Regents** **Rule: 80402**

Construction. The facility program must be approved by the president of the institution.

Sec. 9     Adherence with Campus Master Plan.  Requests for Qualifications (RFQs) issued to solicit responses from interested architects, engineers, and design-build contractors will include a requirement that the architect, engineer, and design-build contractor evidence agreement to adhere to the approved Campus Master Plan and a set of criteria applicable to the facility program and the needs of the institution.

Sec. 10    Preparation of Schematic Plans and Design Development Plans.  Pursuant to approval under Section 4 of Rule 80301, the Associate Vice Chancellor for Facilities Planning and Construction is authorized to release the project architect, engineer, or design-build contractor to prepare Schematic Plans (exterior design, site plans, cost estimates, and other necessary and appropriate documents). Pursuant to approval under Section 5 of Rule 80301, the Associate Vice Chancellor for Facilities Planning and Construction is authorized to release the project architect, engineer, or design-build contractor to prepare Design Development Plans (elevations, sections, outline specifications, cost estimates, and other related work to establish the scope, design, dimensions, and materials of the project in greater detail). The project architect, engineer, or design-build contractor shall work with the institutional delegates and the Office of Facilities Planning and Construction.

Sec. 11    Construction Documents.  After approval of the Design Development Plans, the Associate Vice Chancellor for Facilities Planning and Construction is authorized to direct the preparation of the Construction Documents (working drawings and specifications).

**3.     Definitions**

None

**4.     Relevant Federal and State Statutes**

None

**5.     Relevant System Policies, Procedures, and Forms**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80402**

Regents' *Rules and Regulations,* Rule 10501 – Delegation to Act on Behalf of the Board

Regents' *Rules and Regulations,* Rule 80301 – Capital Improvement Program

Regents' *Rules and Regulations,* Rule 80403 – Minor Construction and Repair and Rehabilitation Projects

6. **Who Should Know**

   Administrators

7. **System Administration Office(s) Responsible for Rule**

   Office of Business Affairs

8. **Dates Approved or Amended**

   September 24, 2015
   August 20, 2015 (effective September 1, 2015)
   Editorial amendment to Section 7 made July 13, 2015
   Editorial amendment to Number 3 made December 3, 2012
   August 12, 2010
   August 20, 2009
   Editorial amendment to Number 5 made December 5, 2008
   November 13, 2008
   May 15, 2008 (effective July 1, 2008)
   Editorial amendment to Number 3 made March 18, 2008
   May 10, 2007
   November 10, 2005
   December 10, 2004

9. **Contact Information**

   Questions or comments regarding this Rule should be directed to:

   - bor@utsystem.edu

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80403**

1.    **Title**

      Minor Construction and Repair and Rehabilitation Projects

2.    **Rule and Regulation**

      Sec. 1    Delegation of Authority.  Subject to Sections 2 and 3
                immediately below and the general provisions of Rule 10501 of
                the Regents' *Rules and Regulations* and except as otherwise
                specified in these *Rules and Regulations*, each institutional
                president or the Executive Vice Chancellor for Business Affairs,
                as appropriate, is authorized to appoint architects, approve
                plans and Construction Documents, and execute and deliver
                contracts, agreements, guaranteed maximum price or stipulated
                sum proposals, and other documents on behalf of the Board of
                Regents for all Minor Projects.

      Sec. 2    Review and Approval.  Minor Projects shall be subject to review
                as directed by the appropriate Executive Vice Chancellor. If the
                Minor Project is to accommodate facility program changes
                requiring System approval, then (i) necessary facility program
                approvals must be secured in advance of requests for
                construction approval; (ii) funds must have been approved
                through standard System budgetary procedures; and (iii) the
                project must have been approved by the institution director of
                physical plant, chief business officer, and president.

      Sec. 3    Standardized Contracts.  Contracts with architects and
                engineers shall comply with guidelines issued by the U. T.
                System Administration Office of General Counsel and shall be
                written on a standard form approved by the Office of General
                Counsel. Construction contracts shall comply with guidelines
                issued by the U. T. System Administration's Office of General
                Counsel and shall be written on a standard form approved by
                the Office of General Counsel. Payment and performance
                bonds, when required by law or contracts, shall be on a
                standard form approved by the Office of General Counsel.

3.    **Definitions**

      Minor Project – New building construction and road, paving, and repair
      and rehabilitation projects with a total project cost of less than $10 million.

4.    **Relevant Federal and State Statutes**

_____

                                                          **Page 1 of 2**

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 80403**

None

5.      **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 10501 – Delegation to Act on Behalf of the Board

Regents' *Rules and Regulations,* Rule 80402 – Major Construction and Repair and Rehabilitation Projects, Section 6, regarding Contract Management

6.      **Who Should Know**

Administrators
Chief Budget Officers

7.      **System Administration Office(s) Responsible for Rule**

Office of Business Affairs

8.      **Dates Approved or Amended**

August 20, 2015 (effective September 1, 2015)
Editorial amendment to Number 3 made December 3, 2012
August 20, 2009
Editorial amendment to Number 5 made December 5, 2008
Editorial amendment to Number 3 made March 18, 2008
May 10, 2007
November 10, 2005
December 10, 2004

9.      **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents            Rule: 80404**

1.      **Title**

        Institutional Management of Major Construction and Repair and
        Rehabilitation Projects

2.      **Rule and Regulation**

        Sec. 1      Contract Authorization – Architects, Engineers, and Design-
                    Build Contractors.  Subject to Regents' *Rules and Regulations*,
                    Rule 80301 and Rule 10501, and Sections 2, 3, 4, and 5 below,
                    and except as otherwise specified in these *Rules and
                    Regulations*, the institutional president, with the advice of the
                    appropriate Executive Vice Chancellor, is authorized to appoint
                    architects, engineers, and design-build contractors and execute
                    contracts for professional services.

        Sec. 2      Contract Authorization – Construction.  The institutional
                    president is authorized to execute construction and related
                    contracts for Major Projects that have previously been approved
                    for the Definition Phase by the appropriate Executive Vice
                    Chancellor and the Chancellor or authorized by the Board of
                    Regents in the Capital Improvement Program (CIP).

        Sec. 3      Standardized Contracts.  Construction contracts executed and
                    delivered on behalf of the Board of Regents for Major Projects
                    shall comply with guidelines issued by the U. T. System
                    Administration Office of General Counsel and shall be written
                    on a standard form approved by the Office of General Counsel.
                    Payment and performance bonds, when required by law for
                    contracts, shall be on a standard form approved by the Office of
                    General Counsel. Contracts with architects and engineers shall
                    comply with guidelines issued by the Office of General Counsel
                    and shall be written on a standard form approved by the Office
                    of General Counsel.

        Sec. 4      Authorization to Expend Funds Appropriated in the CIP.

                    4.1      The institutional president will approve the Design
                             Development Plans for all major repair and rehabilitation
                             projects that are not architecturally or historically
                             significant and authorize expenditure of appropriated
                             funds. The executive officers and institutional presidents
                             shall be responsible for identifying special interest
                             projects to the Facilities Planning and Construction
                             Committee.

---

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**        **Rule: 80404**

4.2    The Board of Regents will approve the Design Development Plans for all Major Projects other than repair and rehabilitation projects that are not architecturally or historically significant and authorize expenditure of appropriated funds. The executive officers and institutional presidents shall be responsible for identifying special interest projects to the Facilities Planning and Construction Committee.

Sec. 5    Approval for Excess Costs or Material Change.  Project costs that exceed 10% of the Total Project Cost approved by the Board of Regents or $500,000, whichever is greater, must be approved by the Board.

Sec. 6    Contract Management.  The institutional president shall approve the construction contractor's, design-build contractor's, or construction manager's estimates, guaranteed maximum price, or stipulated sum proposals; sign change orders; and provide general supervision of all Major Projects.

Sec. 7    Authority to Increase Project Cost.  The institutional president, with the advice of the appropriate Executive Vice Chancellor, is authorized to increase the approved Total Project Cost not more than 10% or $500,000, whichever is greater. To provide funding for the increase, the institutional president may reallocate funding between or among approved projects at the institution if funding for such projects has previously been authorized or is from some other source of approved funds available to the institution.

Sec. 8    Facility Program.  A facility program shall be prepared in accordance with the Facilities Programming Guidelines maintained by the Office of Facilities Planning and Construction. The facility program must be approved by the president of the institution.

Sec. 9    Adherence with Campus Master Plan.  Requests for Qualifications (RFQs) issued to solicit responses from interested architects, engineers, and design-build contractors will include a requirement that the architect, engineer, and design-build contractor evidence agreement to adhere to the approved Campus Master Plan and a set of criteria applicable to the facility program and the needs of the institution.

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents               Rule: 80404**

Sec. 10    Preparation of Schematic Plans and Design Development
           Plans.  Pursuant to approval under Section 4 of Rule 80301, the
           institutional president is authorized to release the project
           architect, engineer, or design-build contractor to prepare
           Schematic Plans (exterior design, site plans, cost estimates,
           and other necessary and appropriate documents). Pursuant to
           approval under Section 5 of Rule 80301, the institutional
           president is authorized to release the project architect, engineer,
           or design-build contractor to prepare Design Development Plans
           (elevations, sections, outline specifications, cost estimates, and
           other related work to establish the scope, design, dimensions,
           and materials of the project in greater detail). The project
           architect, engineer, or design-build contractor shall work with
           the institutional delegates and the institutional president.

Sec. 11    Construction Documents.  After approval of the Design
           Development Plans, the institutional president is authorized to
           direct the preparation of the Construction Documents (working
           drawings and specifications).

**3.     Definitions**

       None

**4.     Relevant Federal and State Statutes**

       None

**5.     Relevant System Policies, Procedures, and Forms**

       Regents' *Rules and Regulations,* Rule 10501 – Delegation to Act on
       Behalf of the Board

       Regents' *Rules and Regulations,* Rule 80301 – Capital Improvement
       Program

**6.     Who Should Know**

       Administrators

**7.     System Administration Office(s) Responsible for Rule**

       Office of Business Affairs

**8.     Dates Approved or Amended**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents** **Rule: 80404**

September 24, 2015
August 20, 2015 (effective September 1, 2015)
Editorial amendment to Number 3 made December 3, 2012
August 12, 2010
August 20, 2009
May 15, 2008 (effective July 1, 2008)
Editorial amendment to Number 3 made March 18, 2008
May 10, 2007
November 10, 2005

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 80601**

1.      **Title**

        Property and Casualty Insurance and Surety Bonds

2.      **Rule and Regulation**

        Sec. 1    Authority to Purchase.  The terms of any insurance policies and
                  surety bonds, other than life, disability, and health insurance
                  policies for any U. T. System institution or for System
                  Administration, shall be negotiated by the Director of Risk
                  Management. The Executive Vice Chancellor for Business
                  Affairs shall approve the purchase or renewal of policies with
                  premiums in excess of $500,000.

        Sec. 2    Notice of Loss and Approval of Claims.  At the time a loss
                  occurs applicable to either Systemwide or individual insurance
                  policies and surety bonds, the Director of Risk Management
                  shall be notified by the chief business officer of the institution.
                  For all claims, other than life, disability and health claims, the
                  Director of Risk Management shall approve all loss claims and
                  settlements under $250,000. The Executive Vice Chancellor for
                  Business Affairs shall approve any settlement between
                  $250,000 and $1,000,000, and any settlements under the
                  University's Comprehensive Property Protection Plan.
                  Settlement of commercial insurance or surety bond claims in
                  excess of $1,000,000 must have the approval of the Board of
                  Regents.

        Sec. 3    Settlement of Catastrophic Claims.  In the case of a catastrophic
                  occurrence where the loss is so extensive that partial
                  commercial insurance payments in excess of $1,000,000 are
                  necessary, the Chancellor is delegated authority to execute all
                  documents related to the partial payment or adjustment. The
                  Board of Regents will be notified by the Chancellor of all partial
                  payments received in excess of $1,000,000. Final settlement of
                  commercial insurance claims in excess of $1,000,000 will
                  require approval from the Board.

3.      **Definitions**

        None

4.      **Relevant Federal and State Statutes**

        None

                                                                        **Page 1 of 2**

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**        **Rule: 80601**

5.     **Relevant System Policies, Procedures, and Forms**

     None

6.     **Who Should Know**

     Chief Business Officers
     Risk Managers

7.     **System Administration Office(s) Responsible for Rule**

     Office of Risk Management

8.     **Dates Approved or Amended**

     Editorial amendment to Section 2 made October 24, 2013
     February 10, 2005
     December 10, 2004

9.     **Contact Information**

     Questions or comments regarding this Rule should be directed to:

       •  bor@utsystem.edu

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                    Rule: 80702**

1.    **Title**

      Indirect Cost Recoveries

2.    **Rule and Regulation**

      Sec. 1    Indirect Cost Recoveries.  To the extent that indirect cost
                recoveries from the application of overhead rates are derived
                from use charges for buildings, other improvements, or
                equipment, the funds so derived shall be designated for
                renewals or replacements of such buildings, improvements, or
                equipment or for other purposes specified and approved in the
                budget processes as related to the indirect cost recoveries.

3.    **Definitions**

      None

4.    **Relevant Federal and State Statutes**

      None

5.    **Relevant System Policies, Procedures, and Forms**

      None

6.    **Who Should Know**

      Chief Business Officers

7.    **System Administration Office(s) Responsible for Rule**

      Office of Academic Affairs
      Office of Health Affairs

8.    **Dates Approved or Amended**

      December 10, 2004

9.    **Contact Information**

      Questions or comments regarding this Rule should be directed to:

      • bor@utsystem.edu

Exhibit 5

**The University of Texas System**
__Rules and Regulations of the Board of Regents__                    **Rule: 80801**

1.    **Title**

      Flags

2.    **Rule and Regulation**

      Sec. 1    Display of Flags.  The flag of the United States and the flag of
                the State of Texas shall be flown at The University of Texas
                System and any of the institutions on each regular school day
                as required by *Texas Education Code* Section 1.003. The flags
                shall be raised, lowered, and displayed as required by Title 4
                *United States Code* Sections 5 through 9 and by the Texas Flag
                Code, *Texas Government Code,* Chapter 3100, and may be
                placed at half-staff only as permitted or required by such
                statutory provisions.

      Sec. 2    Official Flag.  The Texas State Flag shall be designated as the
                official flag of the U. T. System and the official flag of each
                institution shall be the Texas State Flag with a streamer with the
                official name of the institution in white letters on an orange field,
                and a special occasion banner, as determined to be appropriate
                by the institutional president in consultation with the appropriate
                Executive Vice Chancellor. No institution shall have or display
                any other flag as its official flag. Nothing in this section shall be
                interpreted to prohibit display of other flags in a manner
                consistent with the Texas Flag Code, *Texas Government Code,*
                Chapter 3100.

3.    **Definitions**

      None

4.    **Relevant Federal and State Statutes**

      *Texas Education Code* Section 1.003 – The Flying of the United States
      and Texas Flags

      *Texas Government Code,* Chapter 3100 – State Flag

5.    **Relevant System Policies, Procedures, and Forms**

      None

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 80801**

6.      **Who Should Know**

Administrators

7.      **System Administration Office(s) Responsible for Rule**

Office of the Board of Regents

8.      **Dates Approved or Amended**

December 10, 2004

9.      **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 80901**

1.      **Title**

        Constitutional and Legislative Restrictions on Capital Improvements

2.      **Rule and Regulation**

        Sec. 1   Approval by Coordinating Board.  Sections 17 and 18 of
                 Article VII of the Texas Constitution (regarding the Permanent
                 University Fund and the Higher Education Fund, as referenced
                 at *Texas Education Code* Section 62.026) require approval by
                 the Legislature, or an agency designated by the Legislature,
                 prior to the construction of physical improvements financed by
                 bonds authorized under those Sections at institutions of the
                 U. T. System other than The University of Texas at Austin.

                 1.1    Unless otherwise authorized by law, new construction
                        and major repair and rehabilitation projects with an
                        Education and General (E&G) project cost of $10 million
                        or more must be submitted to the Texas Higher
                        Education Coordinating Board. The format for submission
                        will be as prescribed by the Coordinating Board.

                        Submission will be prepared by the institution,
                        in consultation with and assisted by System
                        Administration's Office of Facilities Planning and
                        Construction, if necessary, and forwarded to System
                        Administration for review, approval, and handling of
                        submission. It is anticipated that necessary documents
                        will be submitted to the Coordinating Board when the
                        project scope and estimated cost are sufficiently defined
                        to meet the Coordinating Board's requirements for
                        approval. Normally, submission will be made after the
                        institutional president, the Chancellor, or the Board of
                        Regents has approved the Design Development Plans
                        and the related cost estimate.

        Sec. 2   Delegation by Board of Regents.  The Texas Higher Education
                 Coordinating Board requires a signed Board of Regents
                 Certification form under Coordinating Board Rule 17.21. The
                 authority to execute this certification for the Board of Regents is
                 delegated to the Executive Vice Chancellor for Business Affairs
                 or the Associate Vice Chancellor for Facilities Planning and
                 Construction.

3.      **Definitions**

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents                Rule: 80901**

---

None

4.      **Relevant Federal and State Statutes**

Texas Constitution Article VII, Section 17 – Colleges and Universities; Appropriations and Funding

Texas Constitution Article VII, Section 18 – Bonds or Notes Payable from Income or Available University Funds

*Texas Education Code* Section 62.026 – Higher Education Fund

5.      **Relevant System Policies, Procedures, and Forms**

None

6.      **Who Should Know**

Administrators

7.      **System Administration Office(s) Responsible for Rule**

Office of Business Affairs

8.      **Dates Approved or Amended**

August 20, 2015 (effective September 1, 2015)
Editorial amendment to Section 1.1 made December 3, 2012
Editorial amendment to Section 1 made December 1, 2009
August 20, 2009
December 10, 2004

9.      **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

---

**Exhibit 5**

**The University of Texas System**
**Rules and Regulations of the Board of Regents**            **Rule: 90101**

1.     **Title**

        Intellectual Property: Preamble, Scope, Authority

2.     **Rule and Regulation**

    Sec. 1    Preamble.  This intellectual property Rule is intended to serve the public good, promote partnerships with the private sector, encourage innovation, promote the engagement of faculty, staff, and students in research, and foster economic development. The Board of Regents recognizes the high importance of discovery commercialization as a core mission. U. T. System recognizes that it will attract more collaborative research supported by industry if timely and efficient processes exist to manage intellectual property.

           This Rule is intended to be adaptable to the highly varied circumstances that characterize the private sector and the portfolio of research at U. T. System institutions. In all cases, U. T. System institutions will strive to enable the ease of intellectual property creation, protection, management, and transfer to the private sector and society within an environment that promotes the highest quality and integrity of academic activity, teaching, and research.

           U. T. System is guided by the following fundamental principles on intellectual property:

        1.1      The successful deployment of intellectual property developed through teaching, research, discovery, creative activities, and application of knowledge, whether through sponsored research, licensing, or other types of transactions or arrangements, allows for knowledge and technology to be disseminated to benefit the broad public and comports with the mission of the U. T. System;

        1.2      Sponsored research is very important to the vitality and competitiveness of U. T. System institutions, the State of Texas, and our nation. All U. T. System institutions shall (a) encourage and strengthen

Exhibit 5

university-industry partnerships, (b) efficiently and expeditiously manage intellectual property created from these partnerships, and (c) remain understanding, flexible, and open to the varied circumstances and needs of potential industry sponsors;

1.3    U. T. System institutions should expect that when industry is underwriting sponsored research, industry commences negotiations with the expectation of speed in the execution of critical agreements, clear financial outcomes, and ownership rights in, or appropriate access to, intellectual property resulting from the work;

1.4    Sponsored research is frequently tightly integrated with the educational mission at many U. T. System institutions but must not abridge publication and research rights, impinge upon the dissemination of research results, including student theses and dissertations, nor diminish an environment of academic and research integrity;

1.5    The primary research-related duties of members of the faculty at U. T. System institutions are to teach, study, investigate, discover, create, disseminate, develop professionally, and infuse new knowledge into their classes and student interaction;

1.6    Commercialization of technology enhances the reputation of the U. T. System and enables transformation of knowledge into the marketplace; and

1.7    Compliance with all applicable federal laws and regulations, the Texas Constitution, and applicable laws of the State of Texas is essential for successful U. T. System technology commercialization.

Exhibit 5

Sec. 2    Ownership of Intellectual Property.  Except as set forth in Section 5, the Board of Regents automatically owns the intellectual property created by individuals subject to this Rule, yet recognizes the importance of discovery commercialization. In appropriate circumstances concerning intellectual property resulting from research supported by (a) an entirely private, nongovernmental grant or contract with a nonprofit or for-profit entity, or (b) an entirely private gift or grant to the U. T. System or any U. T. System institution, as set forth in Section 12.1, the U. T. System or a U. T. System institution may enter into an agreement to transfer the Board of Regents' rights in intellectual property to third parties. For purposes of this Rule, intellectual property includes, but is not limited to, any invention, discovery, creation, know-how, trade secret, technology, scientific or technological development, research data, work of authorship and software, regardless of whether subject to protection under patent, trademark, copyright, or other laws.

Sec. 3    Individuals Subject to this Rule.  While students are governed by Section 6, this Rule applies to all persons employed by the U. T. System or any U. T. System institution, as well as to anyone using the facilities or resources of the U. T. System or any U. T. System institution. All individuals subject to this Rule must assign, and do hereby assign, their rights in such intellectual property to the Board of Regents, and such individuals shall promptly execute and deliver all documents and other instruments as are reasonably necessary to reflect the Board of Regents' ownership of such intellectual property. A creator of intellectual property owned by the Board of Regents has no independent right or authority to convey, assign, encumber, or license such intellectual property other than to the Board of Regents. U. T. System institutions may promulgate institutional rules, regulations, or policies defining the course and scope of employment for persons or classes of persons and specifying that authorized outside employment is or is not within an employee's course and scope of employment.

Sec. 4    Intellectual Property Subject to this Rule.  Intellectual property (a) developed within the course and scope of employment of the individual, (b) resulting from activities performed on U. T. System time or with support of State funds, or (c) resulting from

Exhibit 5

using facilities or resources owned by the U. T. System or any U. T. System institution (other than incidental use) is owned by the Board of Regents.

Sec. 5   Intellectual Property Not Subject to this Rule.  Intellectual property developed or created by a U. T. System employee outside the course and scope of employment of the individual that is developed or created on his/her own time and without the support of the U. T. System or any U. T. System institution or use of U. T. System facilities or resources, is the exclusive property of the creator.

Sec. 6   Students and Intellectual Property.  A student enrolled at a U. T. System institution, such as in an undergraduate or graduate degree program or certificate program, including a postdoctoral and predoctoral fellow, owns the intellectual property he or she creates (a) in courses, (b) during extracurricular activities, and (c) while using the resources and facilities of U. T. System institutions commonly provided for a student's use and for which a student has paid tuition and fees, unless:

6.1   The student is also an employee of the U. T. System or any U. T. System institution and the intellectual property is developed within the course and scope of his or her employment, in which case the provisions of this Rule relating to employees shall apply;

6.2   The student works on a work-for-hire or institutional project as described by Section 8, in which case Section 8 governs that work;

6.3   The student participates in a research project where any intellectual property created under that project has already been committed to, or encumbered by an agreement with, a governmental, philanthropic, corporate or other sponsor, including a sponsor as described in Section 12.1; or

6.4   The student jointly creates the intellectual property with a non-student, in which case this Rule (other than Section 6) and applicable law dictate ownership

**Exhibit 5**

of the intellectual property as if the student was a non-student described in Section 3.

Sec. 7    Interest in Certain Copyrights.  Notwithstanding Section 2 but subject to Section 12, the Board of Regents will not assert an ownership interest in the copyright of scholarly or educational materials, artworks, musical compositions, and literary works related to the author's academic or professional field, regardless of the medium of expression. Such creators are encouraged to manage their copyrights in accordance with the guidelines concerning management and marketing of copyrighted works consistent with applicable institutional policies.

As the Board of Regents has done historically, as reasonably required for the limited purpose of continuing an institution's scheduled course offerings, the Board of Regents retains for one year following the loss of a course instructor's services a fully paid-up, royalty-free, nonexclusive worldwide license to use, copy, distribute, display, perform, and create derivative works of materials prepared by the instructor (including lectures, lecture notes, syllabi, study guides, bibliographies, visual aids, images, diagrams, multimedia presentations, examinations, web-ready content, and educational software) for use in teaching a course.

Sec. 8    Works for Hire and Institutional Projects.  Notwithstanding any provisions of Sections 6 or 7 to the contrary, the Board of Regents shall have sole ownership of all intellectual property created by (a) an employee, student, or other individual or entity commissioned, required, authorized, or hired specifically to produce such intellectual property by the U. T. System or any U. T. System institution, and (b) an employee, student, or other individual as part of an institutional project. The provisions of Section 11.5 shall not apply to intellectual property governed by this Section unless approved by the institution or U. T. System Administration in a written agreement.

Sec. 9    Use of Research Data.  Research data or results created by an employee are owned by the Board of Regents and except to the extent that rights to such research data are contractually assigned or licensed to another by the Board of Regents, the

Exhibit 5

creator shall have a nonexclusive license to use such data for patient care, teaching, scholarly, and other academically related purposes and nonprofit research, provided such activities are within the scope of the employee's employment.

Sec. 10    Use of Facilities and Resources.  Other than in connection with student-owned intellectual property governed by Section 6, U. T. System and U. T. System institution facilities and resources may not be used (a) to create, develop, or commercialize intellectual property outside the course and scope of employment of an individual, or (b) to further develop or commercialize intellectual properties that have been released to an inventor by the Board of Regents under Section 11.2, except as the institution's president may approve in writing where the U. T. System retains an interest under the terms of the release.

Sec. 11    Invention Disclosure and Commercialization.

11.1    Determination of the Board of Regents' Interest. Before intellectual property owned by the Board of Regents is disclosed to any party outside the U. T. System, to the public generally, or for commercial purposes, and before publishing same, the creator shall submit a reasonably complete and detailed invention disclosure of such intellectual property to the president (or designee) of his or her institution for determination of the Board of Regents' interest. The institution will regularly and promptly communicate with the creator during this decision-making process and the creator shall not proceed with any disclosure, commercialization, or publication until that decision is made.

11.2    Election Not to Assert Ownership Interest.  If the institution's president elects not to assert the Board of Regents' ownership interest, the institution's president shall notify the U. T. System Office of General Counsel and the primary creator in writing within 20 business days after the decision is made that the institution will release the intellectual property to the creator, except where prohibited by law or contractual

Exhibit 5

obligations or requirements.  Thereafter, the creator will be free to obtain and exploit a patent or other intellectual property protection in his or her own right and the U. T. System and U. T. System institutions shall not have any further rights, obligations, or duties with respect thereto except that, in appropriate circumstances, the institution's president may elect to (a) retain income rights, and (b) impose certain limitations or obligations, including, but not limited to, a nonexclusive license for the creator, U. T. System, and any U. T. System institution to use the released invention for patient care, teaching, scholarly, and other academically related purposes, nonprofit research, and to comply with United States government reporting and license requirements.

11.3     Later Release of Invention.  Except where prohibited by law or contractual obligations or requirements, the institution's president may elect to release an invention to its creator at any time after asserting the Board of Regents' ownership interest, with notice to the U. T. System Office of General Counsel; however, such release must include provisions for the recovery by U. T. System of any patent and licensing expenses as well as the retention of income rights by U. T. System, and may include certain limitations or obligations, including those set forth in Section 11.2.

11.4     Protection and Commercialization of Intellectual Property.  With respect to intellectual property in which the Board of Regents asserts an interest, the institution's president, or his or her designee, shall decide how, when, and where the intellectual property is to be protected and commercialized. The institution may contract with outside counsel for legal services with the prior consent of the Vice Chancellor and General Counsel and, if required by law, the approval of the Attorney General.

11.5     Reimbursement of Licensing Costs and Allocation of Income.  In those instances where the U. T. System

Exhibit 5

or any U. T. System institution licenses rights in intellectual property to third parties, the costs of licensing, including, but not limited to, the costs to operate and support a technology transfer office and the costs of obtaining a patent or other protection for the property on behalf of the Board of Regents must first be recaptured from any royalties or other license payments received by the U. T. System or any U. T. System institution. The remainder of any such income (including, but not limited to, license fees, prepaid royalties, minimum royalties, running royalties, milestone payments, and sublicense payments) shall be divided as follows:

> 30-50% to creator(s), and
> 50-70% to U. T. System institutions.

The U. T. System or the U. T. System institution licensing rights in intellectual property to third parties shall decide on a case-by-case basis the allocation of income within these ranges for all creators, with the remainder to be disbursed to and/or retained by the U. T. System or the applicable U. T. System institution. A creator may, however, disclaim his/her interest in such income, in which case the institution shall receive and/or retain the creator's share and shall decide, in its sole discretion, if, how and when to disburse such income. Income received and/or retained by the U. T. System or any U. T. System institution from any intellectual property shall be used by the U. T. System institution where the intellectual property originated.

Sec. 12   Sponsored Research.

12.1   Private Sources.  Intellectual property resulting from research supported by private sources is owned by the Board of Regents. However, with respect to intellectual property resulting from research entirely supported by (a) a private, nongovernmental grant or contract with a nonprofit or for-profit entity, or (b) a private gift or grant to

Exhibit 5

the U. T. System or any U. T. System institution, if otherwise permitted by this Rule, applicable law and Section 12.3, the U. T. System and U. T. System institutions are permitted and encouraged to negotiate an agreement acceptable to U. T. System Administration or applicable U. T. System institution transferring the Board of Regents' ownership rights or other rights in the intellectual property resulting from such arrangements to the sponsor or the sponsor's designee. Any such agreement shall be negotiated:

    (a)      In accordance with the sponsor's needs and preferences, as best may be accomplished;

    (b)      With flexibility and adaptability in mind; and

    (c)      In a timely, cooperative, and efficient manner.

12.2   Public Sources. Intellectual property resulting from research supported by a grant or contract with the government (federal and/or state) or an agency thereof is owned by the Board of Regents.

12.3   Nonconformance with Intellectual Property Guidelines. Approval by a U. T. System institution under Section 15.2 of grants and contracts containing ownership and other provisions inconsistent with this Rule and other policies and guidelines adopted by the Board of Regents, including, but not limited to, The University of Texas Systemwide Policy *UTS125, Processing of Intellectual Property Agreements* is permissible, as it implies a decision that the benefit and value to the U. T. System or any U. T. System institution from receiving the grant or performing the contract outweighs the impact of any nonconforming provisions on the intellectual property policies and guidelines of the U. T. System or any U. T. System institution, such as The University of Texas Systemwide Policy *UTS125, Processing of Intellectual Property Agreements*.

Exhibit 5

12.4   Conflicting Provisions.  Subject to approval as described in Section 12.3, the intellectual property policies and guidelines of the U. T. System or any U. T. System institution are subject to, and thus amended and superseded by, the specific terms pertaining to intellectual property rights included in state and/or federal grants and contracts, or grants and contracts with nonprofit and for-profit nongovernmental entities or private donors, to the extent of any such conflict.

12.5   Cooperation with Necessary Assignments.  Those persons subject to this Rule whose intellectual property creations result from (a) a grant or contract with the government (federal and/or state), or any agency thereof, (b) a grant or contract with a nonprofit or for-profit nongovernmental entity, or (c) private gift to the U. T. System or any U. T. System institution, shall promptly execute and deliver such documents and other instruments as are reasonably necessary for the U. T. System or any U. T. System institution to discharge its obligations, expressed or implied, under the particular agreement.

12.6   Sharing of Royalty Income.  In the event that two or more persons who are entitled to share royalty income or equity cannot agree in writing on an appropriate sharing arrangement, the institution's president shall determine that portion of the royalty income (or equity) to which the creators are entitled under the circumstances and such amount will be distributed (or issued) to them accordingly. In the event that the creators are located at two or more U. T. System institutions and cannot agree, such royalty (or equity) distribution decision shall be made by the involved institutions' presidents (or their respective designees). In the further event that the involved presidents cannot agree, then the Chancellor shall decide and his/her decision shall be binding on the creators.

12.7   Geographical Scope of Protection.  A decision by the U. T. System or any U. T. System institution to seek

Exhibit 5

patent or other available protection for intellectual property covered by Section 9 shall not obligate the U. T. System or any U. T. System institution to pursue such protection in all national jurisdictions. The U. T. System's decision relating to the geographical scope and duration of such protection shall be final.

Sec. 13   Equity Interests.

13.1   Agreements with Business Entities.  The U. T. System or any U. T. System institution may receive equity interests as partial or total compensation for the conveyance of intellectual property rights. The institution where the intellectual property was created may elect, at its sole option and discretion, to share an equity interest, dividend income, or a percentage of the proceeds of the sale of an equity interest with the creator(s). The U. T. System or any U. T. System institution may also receive equity interests in a business entity as consideration for the institution's role as a founder, or for other contributions made to the business entity other than as a licensor, and institution shall not be obligated to share such equity interests with the creator(s). The U. T. System or any U. T. System institution may also, but shall not be obligated to, negotiate an equity interest on behalf of any employee who conceived, created, discovered, invented, or developed intellectual property owned by the Board of Regents that is the subject of an agreement between the U. T. System or any U. T. System institution and a business entity relating thereto.

13.2   Creator Holding Equity and Managing Conflict of Interest. Employees of the U. T. System Administration or any U. T. System institution who conceive, create, discover, invent, or develop intellectual property may hold an equity interest in a business entity that has an agreement with the U. T. System or any U. T. System institution relating to the research, development, licensing, or exploitation of that intellectual property only so long as the institution where the intellectual property was developed is in full compliance with the requirement to

Exhibit 5

have, implement, and enforce for that employee an effective conflict of interest management plan approved by the institution's president, the Office of General Counsel, and the respective Executive Vice Chancellor as set forth in the U. T. System Office of General Counsel's Procedure for Managing Conflicts of Interest. In any case where an actual conflict of interest is found, the employee may be required to divest the equity interest or terminate affected research.

Sec. 14    Conflicts of Interest.

14.1    Approval to Serve as Officer or Director.  Any individual subject to Sections 2, 3, 4, or 8 who conceives, creates, discovers, invents, or develops intellectual property may serve, in his/her individual capacity, as a member of the board of directors or other governing board or as an officer or an employee (other than as a consultant) of a business entity that has an agreement with the U. T. System or any U. T. System institution relating to the research, development, licensing, or exploitation of that intellectual property only so long as the institution where the intellectual property was developed is in full compliance with the requirement to have, implement, and enforce for that individual an effective conflict of interest management plan approved by the institution's president, the Office of General Counsel, and the appropriate Executive Vice Chancellor as set forth in the U. T. System Office of General Counsel's Procedure for Managing Conflicts of Interest. In any case where an actual conflict of interest is found, the individual may be required to terminate the business relationship or the relevant research.

14.2    Request for Employee to Serve as Officer or Director. When requested by the Board of Regents, an employee may serve on behalf of the Board of Regents as a member of the board of directors or other governing board of a business entity that has an agreement with the U. T. System or any U. T. System institution relating to the research, development, licensing, or exploitation of

Exhibit 5

intellectual property, but may not accept any consideration offered for service on such board.

14.3  Report of Equity Interest and Service as Officer or Director.  Any individual subject to this Rule or this Section must report in writing to the president of the institution the name of any business entity in which the person has an interest or for which the person serves as a director, officer, or employee, and shall be responsible for submitting a revised written report upon any change in the interest or position held by such person in such business entity. The U. T. System institution or its office of technology commercialization will file a report by October 1 of each year with the Office of the Board of Regents for transmittal to the Comptroller of Public Accounts as required by Section 51.912 and Section 51.005, *Texas Education Code.*

Sec. 15  Execution of Documents Related to Intellectual Property.

15.1  Execution of Agreements.  Agreements that grant an interest in the Board of Regents' intellectual property, including, but not limited to, option and license agreements and contracts with corporate sponsors, may be executed and delivered in accordance with the provisions of Regents' Rule 10501, after any required review by the U. T. System Office of General Counsel.

15.2  Agreements That Do Not Conform to the Rules.  Any agreement that deviates substantially from this Rule or other policies and guidelines adopted by the Board of Regents, including, but not limited to, The University of Texas Systemwide Policy UTS125, *Processing of Intellectual Property Agreements* may be executed and delivered as set forth above if, in the judgment of the institution's president and after any required review by the U. T. System Office of General Counsel, the benefits from the level of funding for proposed research and/or other consideration from a sponsor, licensee, or other party outweigh any potential disadvantage that may result from the deviation.

Exhibit 5

15.3    Delegation of Authority.  The Chancellor, the Deputy
        Chancellor, the appropriate Executive Vice Chancellor, or
        the Vice Chancellor and General Counsel may execute,
        on behalf of the Board of Regents, legal documents
        relating to the Board of Regents' rights in intellectual
        property, including, but not limited to, assignments of
        ownership, applications, declarations, affidavits, powers
        of attorney, disclaimers, and other such documents
        relating to patents and copyrights; applications,
        declarations, affidavits, affidavits of use, powers of
        attorney, and other such documents relating to
        trademarks; and corporate documents related to the
        formation of new companies. In addition, the institution's
        president may execute, on behalf of the Board of
        Regents, (a) institutional applications for registration or
        recordation of transfers of ownership and other such
        documents relating to copyrights, and (b) corporate
        documents related to the formation of new companies if
        first reviewed and approved by (i) the U. T. System Office
        of General Counsel, or (ii) institution's outside counsel
        working under a U. T. System Office of General Counsel-
        approved outside counsel agreement.

## 3.    Definitions

None

## 4.    Relevant Federal and State Statutes

35 U.S.C. 18 – Patent Rights in Inventions Made with Federal Assistance
(The Bayh Dole Act of 1980, as amended)

*Texas Education Code* Section 51.005 – Reports

*Texas Education Code* Section 51.912 – Equity Ownership: Business
Participation

*Texas Education Code*, Chapter 153 – Centers for Technology
Development and Transfer

Exhibit 5

**The University of Texas System**
**Rules and Regulations of the Board of Regents**                    **Rule: 90101**

5.    **Relevant System Policies, Procedures and Forms**

Regents' *Rules and Regulations*, Rule 10501 – Delegation to Act on Behalf of the Board of Regents

The University of Texas Systemwide Policy UTS125, *Processing of Intellectual Property Agreements*

U. T. System Office of General Counsel's Procedure for Managing Conflicts of Interest

6.    **Who Should Know**

Administrators
Faculty
Staff
Students

7.    **U. T. System Administration Office(s) Responsible for Rule**

Office of General Counsel

8.    **Dates Approved or Amended**

August 20, 2015 (Rules 90101 - Rule 90106 combined into one new Rule 90101)

9.    **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

Exhibit 5