UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

DR. JENNIFER LYNN GLASS, et al.,
*Plaintiffs*,

v.

KEN PAXTON, et al.
*Defendants.*

Case No. 1:16-cv-845-LY

# DEFENDANT KEN PAXTON'S MOTION TO DISMISS

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

PRERAK SHAH
Senior Counsel to the Attorney General
Texas Bar No. 24075053

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 001)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697
prerak.shah@texasattorneygeneral.gov

COUNSEL FOR DEFENDANT KEN PAXTON

# Table of Contents

Table of Authorities ...................................................................................................... iii

Introduction .................................................................................................................. 1

Standard of Review ....................................................................................................... 2

Argument ...................................................................................................................... 3

    I.   Count One: First Amendment Academic Freedom Claim. .............................. 3

        A.   Plaintiffs Have No Right to Academic Freedom to Assert in This Case. ............... 3

        B.   There Can Be No Constitutional Violation Here, Because Plaintiffs Can Identify No State Action That Is Violating Their Rights. ....................................... 7

        C.   There Can Be No Violation of Academic Freedom Here, Because the Alleged Violation Is Neither Direct Nor Content-Based. ....................................... 8

        D.   The Plaintiffs' First Amendment Rights Are Not Infringed by Allowing Licensed Adults to Conceal Carry Handguns in a Classroom. .............................. 9

        E.   Important Governmental Interests Justify Any Potential Effect on Plaintiffs' Speech. ............................................................................................. 11

    II.  Count Two: Second Amendment Claim. ....................................................... 12

    III. Count Three: Fourteenth Amendment Equal Protection Claim. ................... 13

        A.   It Is Not Irrational For the State to Treat Public And Private Property Differently. .................................................................................................... 14

        B.   It Is Not Irrational to Prohibit Concealed Carry In Some Areas of a University Campus, But Allow Concealed Carry In Other Areas. ....................... 15

    IV. Count Four: Fourteenth Amendment Due Process Claim. ........................... 16

Conclusion ................................................................................................................... 19

Certificate of Service ................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................... 2

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................... 2

*Bishop v. Aronov,*
    926 F.2d 1066 (11th Cir. 1991) ................................................... 4

*Borden v. Sch. Dist. of Twp. of E. Brunswick,*
    523 F.3d 153 (3d Cir. 2008) ......................................................... 4

*Boring v. Buncombe Cty. Bd. of Educ.,*
    136 F.3d 364 (4th Cir. 1998) ....................................................... 4

*Bradley v. Pittsburgh Bd. of Educ.,*
    910 F.2d 1172 (3d Cir. 1990) ....................................................... 4

*Cohen v. San Bernardino Valley Coll.,*
    92 F.3d 968 (9th Cir. 1996) ......................................................... 6

*Cooksey v. Futrell,*
    721 F.3d 226 (4th Cir. 2013) ....................................................... 9

*Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury,*
    545 F.3d 4 (D.C. Cir. 2008) ..................................................... 5, 6

*F.C.C. v. Beach Commc'ns, Inc.,*
    508 U.S. 307 (1993) ................................................................... 13

*FM Prop. Operating Co. v. City of Austin,*
    93 F.3d 167 (5th Cir. 1996) ....................................................... 14

*Ford Motor Co. v. Texas Dept. of Transp.,*
    264 F.3d 493 (5th Cir. 2001) ..................................................... 16

*Heller v. Doe by Doe,*
    509 U.S. 312 (1993) ................................................................... 13

*Hillis v. Stephen F. Austin State Univ.,*
    665 F.2d 547 (5th Cir. 1982) ....................................................... 5

*Johnson-Kurek v. Abu-Absi,*
    423 F.3d 590 (6th Cir. 2005) ....................................................... 4

*Keyishian v. Board of Regents,*
    385 U.S. 589 (1967) ................................................................. 6, 9

*Kirkland v. Northside Indep. Sch. Dist.,*
    890 F.2d 794 (5th Cir. 1989) ....................................................... 5

*Laird v. Tatum,*
    408 U.S. 1 (1972) ......................................................................... 9

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .................................................................18

*Martin v. Parrish*,
    805 F.2d 583 (5th Cir. 1986) .....................................................5

*Miles v. Denver Pub. Sch.*,
    944 F.2d 773 (10th Cir. 1991) ...................................................5

*Moody v. Jefferson Par. Sch. Bd.*,
    2 F.3d 604 (5th Cir. 1993) ........................................................5

*Piarowski v. Ill. Cmty. Coll. Dist. 515*,
    759 F.2d 625 (7th Cir. 1985) .....................................................6

*Reid v. Rolling Fork Pub. Util. Dist.*,
    979 F.2d 1084 (5th Cir. 1992) .................................................13

*Rowell v. Pettijohn*,
    816 F.3d 73 (5th Cir. 2016) ...............................................16, 18

*Sweezy v. New Hampshire*,
    354 U.S. 234 (1957) ...............................................................4, 6

*Taylor v. Books A Million, Inc.*,
    296 F.3d 376 (5th Cir.2002) .....................................................2

*Turner Broad. Sys., Inc. v. F.C.C.*,
    512 U.S. 622 (1994) ................................................................11

*United States v. Albertini*,
    472 U.S. 675 (1985) ................................................................12

*United States v. O'Brien*,
    391 U.S. 367 (1968) ................................................................11

*Univ. of Pa. v. E.E.O.C.*,
    493 U.S. 182 (1990) ..............................................................6, 8

*Urofsky v. Gilmore*,
    216 F.3d 401 (4th Cir. 2000) ............................................3, 4, 6

*Vance v. Bd. of Supervisors of S. Univ.*,
    124 F.3d 191 (5th Cir. 1997 (per curiam)) ..............................5

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) ................................................................12


## Constitutional Provisions and Statutes

COLO. REV. STAT. ANN. § 18-12-214 ...............................................14

IDAHO CODE § 18-3309 .....................................................................14

KAN. STAT. ANN. § 75-7c20 ..............................................................14

TEX. GOV'T. CODE §411.2031(d-1) ..................................................18

U.S. Const. amend. II ........................................................................12

UTAH CODE ANN. § 53B-3-103 ........................................................14

**Other Authorities**

Senate Research Center, Bill Analysis, Tex. S.B. 11, 84th Leg., R.S. (June 29, 2015), available at
http://www.capitol.state.tx.us/tlodocs/84R/analysis/pdf/SB00011F.pdf ........................... 15

Tex. Att'y Gen. Op. No. KP-0051 (2015) ................................................................................... 16

The Campus Personal Protection Act: Hearings on Tex. S.B. 11 before the Senate Comm. on State Affairs, 84th Leg., R.S. (Feb. 12, 2015), available at
http://tlcsenate.granicus.com/MediaPlayer.php?view_id=30&clip_id=9093 ..................... 15

University of Texas at Austin, *Campus Carry Policy Working Group: Final Report* (Dec. 2015), available at http://campuscarry.utexas.edu/CCWorkingGroup-FinalReport.pdf ................................................................................................................................. 10

University of Texas System Handbook of Operating Procedures 8-1060 ................................... 17

# Introduction

This lawsuit is a policy debate dressed up in threadbare Constitutional claims. Plaintiffs obviously disagree with the decision of the elected representatives of the people of Texas to permit licensed adults to conceal carry in classrooms. And they have the right to disagree with that decision. But they're not on a soapbox or in front of a legislature. They're in a court of law. And each of their claims faces insurmountable legal flaws, requiring dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs' First Amendment claim fails for any of five independent reasons: (1) they cannot assert an individual constitutional right to academic freedom; (2) their alleged violation of their right to academic freedom is not fairly traceable to state action; (3) the alleged state action is indirect and content-neutral; (4) there is no objectively reasonable effect on Plaintiffs' academic freedom by allowing licensed adults to conceal carry handguns in a classroom; (5) any alleged effect on their right to academic freedom is justified by an important government interest.

Plaintiffs' Second Amendment claim makes no sense. The Second Amendment is a limtation on the government's ability to infringe the right to bear arms—it sets a floor, not a ceiling, on the right of the people to bear arms. The people of Texas, through their elected officials, have decided to allow licensed adults the right to conceal carry in classrooms. Regardless of the scope of the protections afforded by the Second Amendment, there is simply no Second Amendment basis to challenge the State's decision to *not* infringe an individual's right to bear arms.

Plaintiffs' Fourteenth Amendment Equal Protection claim fares no better: it is eminently rational for the State to treat public and private institutions differently—as the State does in countless other areas of the law, including in the regulation of firearms generally. And it is not irration-

al to allow handguns in certain areas of a college campus while prohibiting them in others, because those distinctions achieve the legislature's goal of generally permitting conceal carry on campuses and enhancing public safety.

Plaintiffs' Fourteenth Amendment Due Process claim is similarly meritless. Plaintiffs can only challenge the University policy that prohibits them from banning concealed carry in their own classrooms, and there is nothing vague about that policy: the Plaintiffs cannot ban conceal carry from their classrooms.

Accordingly, the Complaint does not state a claim for which relief can be granted and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## Standard of Review

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378 (5th Cir.2002) (citation omitted). The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

# ARGUMENT

## I.   Count One: First Amendment Academic Freedom Claim.

Plaintiffs claim that their First Amendment right to academic freedom will be violated if adults who are licensed by the state to carry concealed handguns are allowed to potentially conceal carry in classrooms where Plaintiffs are teaching. There are several flaws with this claim, each of which is independently fatal and warrants dismissal on the pleadings.

### A.   Plaintiffs Have No Right to Academic Freedom to Assert in This Case.

The claim that Plaintiffs' right to academic freedom has been violated suffers from a threshold problem: Plaintiffs have no individual right to academic freedom, because the right to academic freedom is held by their institution. To be sure, Plaintiffs have First Amendment rights as to their academic research, their out-of-class public statements, and a plethora of other forms of expression. But this case is not about any of that. Plaintiffs have alleged a violation of their right to academic freedom, with a focus on their classroom curriculum and instruction. On those matters, Plaintiffs do not have an individual First Amendment right to academic freedom—their institution, the University of Texas, does.

In a thorough opinion recounting the history and development of the concept of academic freedom in the law, the *en banc* Fourth Circuit explained: "Our review of the law, however, leads us to conclude that to the extent the Constitution recognizes any right of 'academic freedom' above and beyond the First Amendment rights to which every citizen is entitled, the right inheres in the University, not in individual professors." *Urofsky v. Gilmore*, 216 F.3d 401, 410 (4th Cir. 2000) (en banc); *see also id.* at 412 ("Appellees ask us to recognize a First Amendment right of academic freedom that belongs to the professor as an individual. The Supreme Court, to the extent it has constitutionalized a right of academic freedom at all, appears to have recognized only

an institutional right of self-governance in academic affairs."); *id.* ("The right recognized by Justice Frankfurter [in *Sweezy v. New Hampshire*, 354 U.S. 234 (1957)], however, was not the individual right claimed by Appellees, but rather an institutional right belonging to the University of New Hampshire."); *id.* at 414 ("Significantly, the Court has never recognized that professors possess a First Amendment right of academic freedom to determine for themselves the content of their courses and scholarship, despite opportunities to do so."); *Boring v. Buncombe Cty. Bd. of Educ.*, 136 F.3d 364, 370 (4th Cir. 1998) (en banc) ("We agree with Plato and Burke and Justice Frankfurter that the school, not the teacher, has the right to fix the curriculum.").

The Third, Sixth, and Eleventh Circuits have come to the same conclusion as the Fourth Circuit. *See, e.g.*, *Borden v. Sch. Dist. of Twp. of E. Brunswick*, 523 F.3d 153, 172 (3d Cir. 2008) ("We have held that a teacher's in-class conduct is not protected speech . . . The rationale for this holding is that the teacher is acting as the educational institution's proxy during his or her in-class conduct, and the educational institution, not the individual teacher, has the final determination in how to teach the students."); *Bradley v. Pittsburgh Bd. of Educ.,* 910 F.2d 1172, 1176 (3d Cir. 1990) ("Although a teacher's out-of-class conduct, including her advocacy of particular teaching methods, is protected, her in-class conduct is not."); *Johnson-Kurek v. Abu-Absi*, 423 F.3d 590, 593 (6th Cir. 2005) ("'[T]o the extent the Constitution recognizes any right of 'academic freedom' above and beyond the First Amendment rights to which every citizen is entitled, the right inheres in the University, not in individual professors.'" (citation omitted)); *Bishop v. Aronov*, 926 F.2d 1066, 1075 (11th Cir. 1991) ("Though we are mindful of the invaluable role aca-

demic freedom plays in our public schools, particularly at the post-secondary level, we do not find support to conclude that academic freedom is an independent First Amendment right.").[1]

As for the Fifth Circuit, it has yet to squarely answer the question of whether an individual, as opposed to an institution, has a right to academic freedom. Nonetheless, the Fifth Circuit has been skeptical of the right to academic freedom generally. *See, e.g.*, *Hillis v. Stephen F. Austin State Univ.*, 665 F.2d 547, 553 (5th Cir. 1982) ("its perimeters are ill-defined and the case law defining it is inconsistent"). Indeed, we have not found a single case where the Fifth Circuit ruled in favor of a Plaintiff who was claiming that his or her right to academic freedom was being infringed.[2] The Fifth Circuit has also occasionally issued statements that suggest that—if presented with the issue of whether there is an individual right to academic freedom—it would agree with the Third, Fourth, Sixth, and Eleventh circuits. *See, e.g.*, *Kirkland*, 890 F.2d at 800 ("Although,

---

[1] Judge Silberman on the D.C. Circuit has also expressed support for this position, in a concurring opinion in a case that was ultimately decided on other grounds. *Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury*, 545 F.3d 4, 19–20 (D.C. Cir. 2008) (Silberman, J., concurring) ("I therefore share the doubts of our Fourth Circuit colleagues as to the notion that 'academic freedom' is a constitutional right at all and that, should it exist, it inheres in individual professors."); *id.* ("[T]he Supreme Court has never once invalidated a state regulation on the grounds that it violated a right to academic freedom."). And the Tenth Circuit has held that there is no individual right to academic freedom, but did so in a case involving a secondary school teacher, not a university professor—though there is nothing in the opinion to indicate that the Tenth Circuit would hold any differently in the case of a university professor. *See Miles v. Denver Pub. Sch.*, 944 F.2d 773, 779 (10th Cir. 1991) ("[T]he caselaw does not support Miles's position that a secondary school teacher has a constitutional right to academic freedom.").

[2] In cases presenting a claim of a violation of academic freedom, the Fifth Circuit has been able to reject the claim on alternative grounds, without having to decide in that case whether the Plaintiff had an individual right to academic freedom. *See, e.g.*, *Vance v. Bd. of Supervisors of S. Univ.*, 124 F.3d 191 (5th Cir. 1997) (per curiam); *Moody v. Jefferson Par. Sch. Bd.*, 2 F.3d 604, 606 (5th Cir. 1993) (per curiam); *Kirkland v. Northside Indep. Sch. Dist.*, 890 F.3d 794, 795 (5th Cir. 1989); *Martin v. Parrish*, 805 F.2d 583, 584 (5th Cir. 1986); *Hillis*, 665 F.2d at 553.

the concept of academic freedom has been recognized in our jurisprudence, the doctrine has never conferred upon teachers the control of public school curricula." (footnote omitted)).[3]

As all of these Courts have explained, the Supreme Court has *never* recognized an individual right to academic freedom—the *Keyishian* and *Sweezy* cases, which Plaintiffs rely on almost exclusively, certainly never recognized such an individual right. As the Supreme Court later explained in *Univ. of Pa. v. E.E.O.C.*: "In *Keyishian,* for example, government was attempting to substitute its teaching employment criteria for those already in place at the academic *institutions*, directly and completely usurping the discretion of each *institution*." 493 U.S. 182, 198 (1990) (emphasis added). As for *Sweezy*, it too concerned an institutional right: "When weighed against the grave harm resulting from governmental intrusion into the intellectual life *of a university,* [the] justification for compelling a witness to discuss the contents of his lecture appears grossly inadequate." *Sweezy,* 354 U.S. at 261 (Frankfurter, J., concurring in the result) (emphasis added); *see also Urofsky*, 216 F.3d at 412 ("The right recognized by Justice Frankfurter, however, was

---

[3]  The other circuits are, at best, ambiguous on the question of whether a professor has an individual right to academic freedom. *Piarowski v. Ill. Cmty. Coll. Dist. 515*, 759 F.2d 625, 629 (7th Cir. 1985) ("[T]hough many decisions describe 'academic freedom' as an aspect of the freedom of speech that is protected against governmental abridgment by the First Amendment … the term is equivocal."). No circuit appears to have explicitly rejected the holdings of the Third, Fourth, Sixth, and Eleventh Circuits. Some have never squarely confronted the question. Others have assumed without deciding that there is an individual right to academic freedom, so that they could reject the claims in the case on other grounds. *See, e.g.*, *Emergency Coal. to Defend Educ. Travel*, 545 F.3d at 12 ("Assuming that the right to academic freedom exists and that it can be asserted by an individual professor," then rejecting the claim on alternative grounds); *Cohen v. San Bernardino Valley Coll.*, 92 F.3d 968, 971 (9th Cir. 1996) (rejecting an academic freedom claim on other grounds, but adding "Neither the Supreme Court nor this Circuit has determined what scope of First Amendment protection is to be given a public college professor's classroom speech.").

not the individual right claimed by Appellees, but rather an institutional right belonging to the University of New Hampshire.").

In sum, there is no individual right to academic freedom—and the Fifth Circuit will not invent such a right for Plaintiffs here.

## B. There Can Be No Constitutional Violation Here, Because Plaintiffs Can Identify No State Action That Is Violating Their Rights.

Let's assume that Plaintiffs can assert an individual right to academic freedom under the First Amendment in this case. Plaintiffs still lose.

The First Amendment is only violated by state action, not private conduct. To be sure, the state action need not be exclusive or direct, but the alleged injury must still be fairly traceable to a state action. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992). And no such state action is present here. Plaintiffs are complaining that the presence of concealed carry violates their right to academic freedom. But the State is not responsible for an individual's decision to conceal carry in a classroom or not. That choice belongs to the individual, a level of attenuation that cannot serve to put the State on the hook for a constitutional violation.

Consider Plaintiffs' example of a heckler's veto: the presence of a heckler does not violate the First Amendment, even if the government created an environment where a heckler could heckle (e.g., by admitting potential hecklers into a forum) and the speaker decides to modify his expression as a result of the possibility of a heckler in the crowd. It's only if the government itself restricts the speaker's expression because of a heckler that a First Amendment violation could occur. Thus, in this case, if Defendants decided to restrict Plaintiffs' speech because of the potential presence of handguns in a classroom, then Plaintiffs could trace a potential First Amendment claim against Defendants. But if Plaintiffs decide to modify their own expression because a

private individual might have a handgun in the classroom, that alleged injury is not fairly traceable to state action. The government is no more responsible for the potential presence in a classroom of a heckler than it is responsible for the potential presence in a classroom of a licensed adult who has chosen to carry a concealed handgun.

### C. There Can Be No Violation of Academic Freedom Here, Because the Alleged Violation Is Neither Direct Nor Content-Based.

Now let's assume that Plaintiffs can assert an individual right to academic freedom under the First Amendment in this case *and* that Plaintiffs' right to academic freedom is being infringed by a state action. Plaintiffs still lose.

The Supreme Court has explained that, regardless of any general First Amendment standards, a violation of the right to academic freedom only exists when there is a *direct* infringement of the right and when the state action is *content-based*. *See Univ. of Pa.*, 493 U.S. at 197-99 ("In our view, petitioner's reliance on the so-called academic-freedom cases is somewhat misplaced. In those cases government was attempting to control or direct the *content* of the speech engaged in by the university or those affiliated with it . . . . Also, the cases upon which petitioner places emphasis involved *direct* infringements on the asserted right to 'determine for itself on academic grounds who may teach.'").

Neither of those requirements is present here. There is no direct infringement, because Defendants are not doing anything that directly controls what Plaintiffs wish to teach—at most, Plaintiffs are alleging that Defendants are allowing other individuals the opportunity to potentially affect what Plaintiffs wish to teach. Nor is this alleged infringement content-based, because there is nothing Defendants are doing to specifically control or direct the content of Plaintiffs' speech. *See id.* at 197 ("When, in those cases, the Court spoke of 'academic freedom' and the

right to determine on 'academic grounds who may teach' the Court was speaking in reaction to content-based regulation." (distinguishing *Keyishian v. Board of Regents,* 385 U.S. 589 (1967), which is the source of the "pall of orthodoxy" language relied on by Plaintiffs)).

### D. The Plaintiffs' First Amendment Rights Are Not Infringed by Allowing Licensed Adults to Conceal Carry Handguns in a Classroom.

Now let's assume that Plaintiffs can assert an individual right to academic freedom under the First Amendment in this case *and* that Plaintiffs' right to academic freedom is being infringed by a state action *and* that Plaintiffs can challenge an indirect and content-neutral infringement of their academic freedom. Plaintiffs still lose.

Plaintiffs allege that their First Amendment rights are being infringed as a result of the potential that someone in their classroom may be carrying a concealed handgun. They claim that the potential presence of such an individual will cause them to restrict their speech—presumably based on a belief that their unrestricted speech would lead to violent reprisals from individuals who are carrying concealed handguns in their classroom. But subjective or speculative accounts of a chilling effect are not sufficient. *See Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."). Rather, government action will only be deemed "chilling when it is likely to deter a person of *ordinary firmness* from the exercise of First Amendment rights." *Cooksey v. Futrell*, 721 F.3d 226, 236 (4th Cir. 2013) (emphasis added and citation omitted).

Plaintiffs fail to meet this standard. Indeed, at no point do they clearly state *why* this exchange of ideas will be impaired—a failure of pleading that also warrants dismissal. Even their affidavits in support of their request for preliminary injunction, which presumably mimic their

position in the litigation as a whole, are simply full of innuendo about the sensitive issues they teach, mixed in with unfounded stereotyping of their own students. *See, e.g.*, Glass Aff. ¶ 15 ("Many religiously conservative students have extreme views on these subjects . . . . Most of the openly libertarian students in my undergraduate classes are male and overtly hostile to women's rights. I do not have specific knowledge, but I strongly suspect that they are more likely to own guns given their distaste for government and law enforcement."); *id.* ¶ 16 ("I shudder to think what might have happened had that ['diehard libertarian'] student had a concealed handgun.").

There is only one apparent basis for their fear: Plaintiffs think the adults in their class who have been licensed by the State to carry handguns state-wide are ticking time-bombs who are likely to commit acts of violence if they are allowed to carry a handgun in class where they are exposed to the Professors' ideas. That is ridiculous.

As the University of Texas Working Group explained in its final report: "Our examination of states that already have campus carry revealed little evidence of campus violence that can be directly linked to campus carry, and none that involves an intentional shooting." University of Texas at Austin, *Campus Carry Policy Working Group: Final Report*, at 3 (Dec. 2015), available at http://campuscarry.utexas.edu/CCWorkingGroup-FinalReport.pdf. Moreover, states such as Colorado and Utah have long allowed the carrying of concealed weapons in university classrooms, with no evidence of violence or chilled speech resulting from that decision.

The regulation of handguns state-wide also bears this out. Approximately one out of every twenty adults over the age of 21 in Texas are licensed to conceal handguns. *Id.*[4] They can conceal

---

[4] The University of Texas estimates, however, that less than 1% of its students will have a license to carry a handgun. *Final Report*, at 12.

carry in public parks, government buildings, shopping malls, and countless other public locations. There is zero evidence that this has chilled free speech across the state, even on controversial topics.

Plaintiffs may very well personally fear that adults who have been licensed to carry handguns could attack them at any moment if they say anything potentially controversial in class. But that fear is not objectively reasonable. Accordingly, Plaintiffs do not have a First Amendment injury.

### E. Important Governmental Interests Justify Any Potential Effect on Plaintiffs' Speech.

Finally, let's assume that Plaintiffs can assert an individual right to academic freedom under the First Amendment in this case *and* that Plaintiffs' right to academic freedom is being infringed by a state action *and* that Plaintiffs can challenge an indirect and content-neutral infringement of their academic freedom *and* that there is an effect on Plaintiffs' academic freedom by allowing licensed adults to conceal carry handguns in a classroom. Plaintiffs still lose.

The First Amendment is not violated in every case where someone's right to say whatever they want, wherever they want is curtailed. The government can regulate speech in certain situations. Here, the governmental action is content-neutral and "a content neutral regulation will be sustained if 'it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.'" *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 662 (1994) (quoting *United States v. O'Brien*, 391 U.S. 367, 377 (1968)). "To satisfy this standard, a regulation need not be the least speech-restrictive means of advancing the Government's interests." *Id.* "Rather, the requirement of narrow tailoring is satisfied 'so long as the ... regulation promotes a substantial govern-

ment interest that would be achieved less effectively absent the regulation.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)).

All of those requirements are met here. Allowing concealed carry in classrooms furthers an important or substantial governmental interest—namely, it furthers public safety, an individual's right to self-defense, and an individual's Second Amendment rights. The government's decision to allow concealed carry in classrooms is unrelated to the suppression of free expression—even Plaintiffs only allege an indirect effect on their free expression. And the impact on free expression is no greater than is necessary to further the important government interest—not allowing students to conceal carry in classrooms would largely prevent students from ever carrying handguns on campus, which would obliterate the important government interest at stake.

Accordingly, allowing licensed adults to conceal carry in classrooms does not violate the First Amendment.

## II.   Count Two: Second Amendment Claim.

Plaintiffs' Second Amendment claim is a bit difficult to decipher. They appear to be arguing that a state law that allows individuals to bear arms should be struck down pursuant to the Second Amendment, because Plaintiffs supposedly have a right to not have handguns in their presence or because Texas does not regulate handguns in a manner to Plaintiffs' liking.

But that argument makes no sense. The Second Amendment is a floor, not a ceiling. The amendment restricts the government from infringing the right of the people to bear arms; it has absolutely nothing to do with the government deciding to allow its people to bar arms to a greater extent than required by the Second Amendment. *See* U.S. Const. amend. II ("A well regulated

Militia, being necessary to the security of a free State, *the right of the people to keep and bear Arms, shall not be infringed.*" (emphasis added)). Texas' decision to permit licensed adults to conceal carry in classrooms simply does not implicate the Second Amendment—unless we want to talk about whether the law goes far enough in allowing individuals to carry on public campuses.

## III. Count Three: Fourteenth Amendment Equal Protection Claim.

Plaintiffs argue that it is utterly irrational for state law to treat public property differently from private property and that it is utterly irrational to prohibit handguns from certain areas of campus while allowing concealed carry in classrooms. Neither argument has any merit.

As an initial matter, Plaintiffs fail to properly appreciate just how low a bar the rational basis standard sets. Under rational basis, a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993); *see also Reid v. Rolling Fork Pub. Util. Dist.*, 979 F.2d 1084, 1087 (5th Cir. 1992) ("[T]he decision of a governmental body does not violate the equal protection guarantees if there is any basis for the action that bears a debatably rational relationship to a conceivable legitimate governmental end.").

Importantly, rational basis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Beach Commc'ns, Inc.*, 508 U.S. at 313. "A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns, Inc.*, 508 U.S. at 315.

## A. It Is Not Irrational For the State to Treat Public And Private Property Differently.

The classrooms where the professors are teaching are state property. The State has the right to decide how it wants to administer its property, and can distinguish how it chooses to administer its property from what it demands from private property owners. Here, the State has decided that it wishes to allow properly licensed adults to carry concealed handguns on its property, but that it will not require private individuals to do the same. The legitimate governmental interest in permitting citizens to lawfully conceal carry for purposes of self-defense can be tempered by the legitimate governmental interest in respecting private property rights. That is an eminently rational distinction for a state to make, and one that several other states have made as well. *See, e.g.*, UTAH CODE ANN. § 53B-3-103; IDAHO CODE § 18-3309; COLO. REV. STAT. ANN. § 18-12-214; KAN. STAT. ANN. § 75-7c20.

The legislature knew full well what it was doing in drawing this distinction, because the same distinction exists in the broader regulation of handguns state-wide: Public buildings must allow the carry of handguns to a much greater degree than private buildings. To be clear, the actual motivations of the legislature are irrelevant in a rational basis analysis. *See FM Prop. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996) ("[T]he 'true' purpose of the [policy], (i.e., the actual purpose that may have motivated its proponents, assuming this can be known) is irrelevant for rational basis analysis." (citation omitted)). But in this case, the legislative history confirms the rational basis for distinguishing between public and private land. For example, Senator Brian Birdwell, the primary author of the bill, addressed this directly at a committee hearing:

> Sen. Judith Zaffarini: In your bill, you differentiate between private institutions of higher education and public institutions of higher education.
>
> Sen. Birdwell: Because of who owns the property.

Sen. Zaffarini:  So you're giving one right to the private institutions that you're not giving to the public institutions.

Sen. Birdwell:  No, I'm protecting the right of the private property owner and their Second Amendment rights and their article [1], section 23 rights to determine that. The public's—no, because it is public property. Therefore, I'm protecting the public's right to express that or exercise that Second Amendment right on public property. That's the differentiation, it's not a carve out for some special exemption. It is a respecting of both the constitutional rights that apply to the private property owner.

The Campus Personal Protection Act: Hearings on Tex. S.B. 11 before the Senate Comm. on State Affairs, 84th Leg., R.S., at 20:24 (Feb. 12, 2015), available at http://tlcsenate.granicus.com/MediaPlayer.php?view_id=30&clip_id=9093.

The Statement of Intent found in the Senate Research Center's Bill Analysis also highlights this reasoning:

> The bill states that public institutions of higher education may not circumvent the intent of the Act by imposing administrative bans and sanctions on CHLs on their campuses. Private or independent institutions of higher education may, after consulting with students, faculty and staff, establish rules or regulations prohibiting CHLs on their campuses. The structure of this bill tracks with how public and private property are generally treated elsewhere in the state under the concealed carry law.

Senate Research Center, Bill Analysis, Tex. S.B. 11, 84th Leg., R.S., at 1 (June 29, 2015), available at http://www.capitol.state.tx.us/tlodocs/84R/analysis/pdf/SB00011F.pdf.

## B.  It Is Not Irrational to Prohibit Concealed Carry In Some Areas of a University Campus, But Allow Concealed Carry In Other Areas.

Plaintiffs do not find any greater success on their argument that there is no rational basis to exclude handguns from certain places on campus, but not classrooms. The goal of the law is to generally permit license holders from carrying concealed handguns on campus, for the legitimate government interests of public safety and self-defense. Those legitimate goals can still be achieved if concealed carry is prohibited from certain areas of campus, but they cannot be

achieved if concealed carry is prohibited in classrooms—because attending class is one of the primary reasons individuals will be on campus.

Accordingly, if the legislative goal is to generally allow licensed individuals to carry concealed handguns on campus, it is rational to allow concealed carry in classrooms while simultaneously prohibiting concealed carry in other areas of campus. *See, e.g.*, Tex. Att'y Gen. Op. No. KP-0051, at 2 (2015) ("[A]ttending or teaching class is the primary reason most individuals are on campus. If an institution prohibited the carrying of concealed handguns in a substantial number of classrooms, a court would likely conclude that the effect would be to 'generally prohibit' license holders from carrying concealed handguns on campus, contrary to the Legislature's express requirements."); *Final Report*, at 6 ("The primary on-campus activity for most of our more than 50,000 students is going to class. Excluding handguns from classrooms would have the effect of generally prohibiting license holders from carrying their handguns and so would violate S.B. 11.").

## IV.  Count Four: Fourteenth Amendment Due Process Claim.

Plaintiffs face a similarly high burden on their Fourteenth Amendment due process "void for vagueness" claim. "[I]n civil actions, a law is void for vagueness only if its 'terms [are] so vague and indefinite as really to be no rule or standard at all or [are] substantially incomprehensible.'" *Rowell v. Pettijohn*,  816 F.3d 73, 84 (5th Cir. 2016) (quoting *Ford Motor Co. v. Texas Dept. of Transp.*, 264 F.3d 493, 507–08 (5th Cir. 2001)). "Moreover, a federal court must construe a state statute to avoid a constitutional problem if the statute is susceptible of such a construction. Here, even if there is any vagueness in the Texas statute, it can be construed to eliminate that vagueness." *Id.* (quotation marks and citations omitted).

Before we can even analyze Plaintiffs' claim, however, we need to determine precisely what they can challenge here. The Complaint appears to be making two claims: Texas law is void for vagueness and the University's policies are void for vagueness. But Plaintiffs can only make the second claim.

Plaintiffs are being injured as a result of the University policy, not the law itself. The University is telling Plaintiffs that they are not allowed to prohibit conceal carry in their classrooms and that they will be punished if they ignore that directive. To be sure, the University made that decision because it (correctly) determined that was the best way to be in compliance with state law, but that is actually irrelevant to *Plaintiffs'* claims—because the state law is not being enforced against them, only the university's policies are. After all, the state law provides a floor, not a ceiling, of the extent to which universities must permit concealed carry on campuses. Even if the University had provided greater concealed carry rights than the law requires, which it has not, the University has the power to enforce those policies against Plaintiffs.

Accordingly, Plaintiffs can only raise a Due Process challenge against the University policies. And there is nothing vague about those policies: individual professors cannot prohibit conceal carry in their classrooms. *See, e.g.*, University of Texas System Handbook of Operating Procedures 8-1060 (Stipulated Joint Ex. 4) ("Individuals licensed to carry may do so on campus except in locations and at activities prohibited by law or by this policy[]"—and classrooms are not an identified location—and further providing that "[t]his policy applies to all students, employees,

University affiliates, and visitors of the University while on campus or University owned property.").[5]

Moreover, even if Plaintiffs could challenge the underlying Texas campus carry law, their claim would fail. Texas law states that the President or officer of a public university "may not establish provisions that generally prohibit or have the effect of generally prohibiting license holders from carrying concealed handguns on the campus of the institution." TEX. GOV'T. CODE §411.2031(d-1). The phrase "generally prohibit" is not "so vague and indefinite as really to be no rule or standard at all.'" *Rowell*, 816 F.3d at 84. Indeed, it is literally a standard. It delegates to an official the authority to evaluate the unique circumstances on a particular public campus, so that the official may establish specific policies that comply with the law's directive to not "generally prohibit" conceal carry on public campuses—an objective standard that can be determined by a court if the official's policies are challenged. If such a law is impermissibly vague, countless laws that delegate to state officials the details of enforcement will have to be similarly struck down.

---

[5] There is potentially another argument that Plaintiffs may be making, though it is even less apparent in the Complaint itself. In the hearing on their motion for preliminary injunction, Plaintiffs suggested that the disciplinary procedures that will be employed by the University for any professor that violates University policy by banning concealed carry in their classroom may also be void for vagueness. But this confusion cannot serve as a basis for a constitutional challenge to the underlying state law or University policy. Just because an enforcement mechanism may be vague, that does not mean a separate law or policy is vague. In any event, as the University defendants have persuasively demonstrated, there is nothing vague about the enforcement mechanism: if the Plaintiffs violate the University policy that permits licensed adults to conceal carry in classrooms, they will suffer adverse consequences. *See* UT Defts' Motion to Dismiss.

Of course, if Plaintiffs want to argue that they are not subject to any disciplinary measures from their employer, then this case is even easier to dismiss. Plaintiffs would be arguing against their own Article III standing to file this lawsuit—something they have the burden to establish in the first place. *See, e.g.*, *Lujan*, 504 U.S. at 560-61 (1992). Accordingly, the case would have to be dismissed.

# Conclusion

The Court should dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

/s/ Prerak Shah
PRERAK SHAH
Senior Counsel to the Attorney General
Texas Bar No. 24075053

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697
prerak.shah@texasattorneygeneral.gov

COUNSEL FOR DEFENDANT KEN PAXTON

## CERTIFICATE OF SERVICE

On August 8, 2016, this Motion to Dismiss was served on the following counsel of record for all parties via the Court's CM/ECF filing system:

James George, Jr.
GEORGE, BROTHERS, KINCAID & HORTON LLP
114 West 7th Street, Suite 1100
Austin, Texas 78701

Malcolm Greenstein
GREENSTEIN & KOLKER
1006 E. Cesar Chavez Street
Austin, Texas 78702

Renea Hicks
LAW OFFICE OF MAX RENEA HICKS
101 West 6th Street, #504
Austin, Texas 78701

COUNSEL FOR PLAINTIFFS

Amanda J. Cochran-Mccall
Anne Marie Mackin
OFFICE OF THE ATTORNEY GENERAL
GENERAL LITIGATION DIVISION
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548

COUNSEL FOR UT DEFENDANTS

/s/ Prerak Shah
PRERAK SHAH