IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DR. JENNIFER LYNN GLASS, *et al.,* §<br>        *Plaintiffs,* §<br> §<br>v.  §           NO. 1:16-CV-845<br> §<br>KEN PAXTON, IN HIS OFFICIAL CAPACITY AS §<br>ATTORNEY GENERAL OF TEXAS, *et al.,* §<br>        *Defendants.* § | |

### UT DEFENDANTS' POST-HEARING SUPPLEMENTAL BRIEF

To The Honorable Judge Yeakel:

Defendants Gregory L. Fenves, President of The University of Texas at Austin ("UT Austin"), and the Board of Regents for The University of Texas System, in their official capacities, including Paul L. Foster, R. Steven Hicks, Jeffery D. Hildebrand, Ernest Aliseda, David J. Beck, Alex M. Cranberg, Wallace L. Hall, Jr., Brenda Pejovich, Sara Martinez Tucker, and Varun P. Joseph, (collectively "UT Defendants") file this supplemental brief, as directed by the Court at the August 4, 2016 hearing on Plaintiffs' Motion for Preliminary Injunction, and respectfully show the Court as follows:

#### INTRODUCTION

During the August 4, 2016 hearing on Plaintiffs' Motion for Preliminary Injunction, the Court sought clarity on (i) what constitutes the official campus carry policy at issue in this matter; and (ii) whether faculty are subject to discipline for violation of that policy. This post-hearing supplemental brief is provided to clarify and address these two points. Additionally, UT Defendants respond to Plaintiffs' arguments that the policy is void for vagueness and thus a basis for a preliminary injunction. The policy is not vague; it delineates where campus carry is prohibited, which necessarily implies where

it is permitted: in general classrooms.  And UT Austin administration has the right to discipline the faculty if they do not abide by university policies—including the campus concealed carry policy.

### I. The UT Austin Campus Carry Policy is Policy 8-1060 of UT Austin's Handbook of Operating Procedures.

UT Austin's campus carry policy was established after a deliberative and consultative process that culminated in a formal policy implemented in the University's Handbook of Operating Procedures. This process spanned almost a full year before the final policy was incorporated into the University's governing handbook and made effective August 1, 2016.  Because the process was deliberative and thoughtful, various documents form the bases of the final policy.  But there is only one official campus carry policy at UT Austin: HOP 8-1060.

As set out in UT Defendants' Response to Plaintiffs' Motion for Preliminary Injunction (Clerk's Doc. 28), and discussed at last week's hearing, the campus carry law requires the president of a university to consult with various university community members to establish reasonable rules and regulations regarding the carrying of concealed handguns by license holders on campus.  TEX. GOV'T CODE § 411.20131(d-1).  That is exactly what President Fenves did here.

#### a. President Creates Working Group to Issue Policy Recommendations

In order to comply with the campus carry law's directive "to consult" with the university's community members, President Fenves established the Campus Carry Policy Working Group ("Working Group"). The Working Group's 19 members included faculty, staff, students, an alumnus, a parent, and University administrators. They were tasked with recommending the campus carry policies required under §411.2031(d-1) to the President, which they did in their Final Report. Joint Stipulated Ex. 3 (Clerk's Doc. 35-3). This report details the Working Group's extensive consultation with the University community in issuing its policy recommendations.

In addition to this consultation with the University community, the Working Group met weekly during the Fall 2015 semester to deliberate regarding the best way to implement the statute's

2

requirements while maximizing campus safety, alleviating fears, and enhancing UT Austin's role in the study of gun violence. *Id.* After engaging in this process, the Working Group issued its Final Report in December, 2015. *Id.* The Report made 25 recommendations, and detailed the reasons for each. *Id.* at 16-26. The recommendations explain how handguns must be carried and stored, identify gun exclusion zones, and provide incidental implementation and proactive measures. *Id.* Nevertheless, because it was charged with implementing the law—which requires that UT Austin's policy not have the "effect of generally prohibiting license holders from carrying their handguns on the campus"—they did not recommend that classrooms could legally be identified as gun exclusion zones. *Id.* The Working Group recommended six areas—other than places where carrying is already prohibited under applicable law—as gun exclusion zones where concealed carry should be banned. *Id.* at 4-5. While the Working Group's Final Report is not the University's official campus carry policy, upon examination, it is obvious that it is the blue print for the policy.

### b. President Accepts Working Group's Policy Recommendations and Submits them to the Board of Regents for Review

President Fenves considered the Working Group's recommendations which he alone retained the authority to accept, modify, or ignore. TEX. GOV'T CODE §411.2031(d-1). President Fenves accepted the Working Group's recommendations, and in February, 2016, those recommendations were compiled into his policy document detailing his decision, entitled "Campus Carry Policies and Implementation Strategies." Joint Stipulated Ex. 1 (Clerk's Doc. 35-1) at 3-13. The Campus Carry Policies and Implementation Strategies list 25 "policy statements," the findings that support each one, and the implementation strategy and criteria applicable to each. *Id.*

The President then transmitted the Campus Carry Policies and Implementation Strategies to the Board of Regents on February 17, 2016. Joint Stipulated Ex. 1 (Clerk's Doc. 35-1) at 1. In his transmittal letter, President Fenves noted that, "[u]nless the Board of Regents amends the policies

transmitted herein by two-thirds vote within 90 days, these policies and the resulting guidelines and rules will go into effect at The University of Texas at Austin on August 1, 2016." *Id.* at 2.

### c. Board of Regents Amends by Eliminating One Policy Recommendation

The members of the Board of Regents took no action on the Campus Carry Policies and Implementation Strategies, with one exception—they rejected Policy Statement No. 3, which would have required a license holder carrying a semiautomatic handgun on campus to do so without a chambered round of ammunition. *Id.* at 4-5.[1] As a result, the Campus Carry Policies and Implementation Strategies submitted by the President, as amended by the Board of Regents, became effective August 1, 2016. *See, e.g.,* TEX. GOV'T. CODE §411.2031(d-2). These policy statements, based on the Working Group Final Report, and amended by the Regents form the bases of what is the final campus carry policy.

### d. UT Austin Incorporates Policy Recommendations, as Amended, into its Handbook of Operating Procedures

Each institution within The University of Texas System maintains a Handbook of Operating Procedures ("HOP"), which includes the institution's governing policies. *See, e.g.,* Rule 20101: "Presidents" at §4.9 Regents' *Rules and Regulations*, UNIVERSITY OF TEXAS SYSTEM (amended February 11, 2016) ("[T]he president is expected, with the appropriate participation of staff, to [c]ause to be prepared and submitted to the appropriate Executive Vice Chancellor and the Vice Chancellor and General Counsel for approval, the rules and regulations for the governance of the institution and any related amendments. Such rules and regulations shall constitute the Handbook of Operating Procedures for that institution."). UT Austin incorporated the Campus Carry Policies and Implementation Strategies, as amended by the Board of Regents, as HOP 8-1060 ("Campus Concealed Carry"). Stipulated Joint Ex. 4 (Clerk's Doc. 35-4). Under the heading "Reason for Policy," HOP 8-

---

[1] This recommendation is reflected at ECF pages 4-5, which are numbered 2-3 within the "Campus Carry Policies and Implementation Strategies" document.

1060 explains "[t]his policy memorializes the rules and regulations enacted by the president regarding the carrying of concealed handguns by license holders on campus or University owned property." *Id.* at Part II.

A table setting forth a side-by-side-comparison of the provisions in the Campus Carry Policies and Implementation Strategies and HOP 8-1060 is included with this filing as Table 1, to demonstrate that HOP 8-1060 fully adopts the Campus Carry Policies and Implementation Strategies, as accepted by the President and amended by the Board of Regents. *See* Table 1. Practically speaking, it makes sense that new university policies are formally implemented into the HOP. This ensures that the University community can more easily locate policies instead of being left to track down different policies at different locations within the University. It also helps alleviate any confusion about what is the formal and final policy of the University. Community members are not left to guess. They can merely consult UT Austin's Handbook of Operating Procedures which is available online.[2]

## II. Faculty Are Subject To Discipline For Violations of University Policy and State Law

Any professor's attempt to ban guns from a classroom is inconsistent with §411.2031. There are two reasons for this. First, professors lack the authority to specify gun exclusion zones. Second, UT Austin believes that banning licensees from carrying in classrooms would have the effect of generally prohibiting them from carrying on campus.

Indeed, the President is the sole individual authorized to establish gun exclusion zones on UT Austin's campus.[3] He has not designated classrooms as gun exclusion zones. As a result, as a matter

---

[2] The University of Texas Policy Office, Policies, https://www.policies.utexas.edu/policies (all UT Austin Policies) (last visited August 8, 2016); *Id.* at Risk/Security/EH&S, https://www.policies.utexas.edu/policies/category/risk-security-ehs (last visited August 8, 2016).

[3] As explained above, the Board of Regents may "by a vote of not less than two-thirds…amend wholly or partly" the provisions established by the President. TEX. GOV'T. CODE §411.2031(d-2). Thus, no individual other than the President has unilateral authority to make this determination.

of Texas law, "[a] license holder may carry a concealed handgun on or about the license holder's person while the license holder is on the campus of" UT Austin, including in classrooms that are not otherwise designated as gun exclusion zones under HOP 8-1060. TEX. GOV'T. CODE §411.2031(b). Section 411.2031(d-1) does not give individual professors the authority to designate classrooms as gun exclusion zones—only the President can do that. *Id.* §411.2031(d-1). Thus, a professor's attempt to do so is legally ineffective, because it cannot substitute for the President's exclusive authority under §411.2031(d-1).

Additionally, Texas Government Code §411.209, entitled "Wrongful Exclusion of Concealed Handgun License Holder" provides that

> [a] state agency or a political subdivision of the state may not provide notice by a communication described by [§]30.06, Penal Code, or by any sign expressly referring to that law or to a concealed handgun license, that a license holder carrying a handgun under the authority of this subchapter is prohibited from entering or remaining on a premises or other place owned or leased by the governmental entity unless license holders are prohibited from carrying a handgun on the premises or other place by [§]46.03 or 46.035, Penal Code.

TEX. GOV'T CODE §411.209(a). Violators are subject to a civil penalty. *Id.* at §411.209(b), (c). UT Austin is a political subdivision of the State. TEX. CONST. art. VII §10. Thus, depending upon the particular facts, there is a question of whether a faculty member's actions could subject the University to such civil penalties. That is, even though a professor's attempt to exclude licensees from a classroom is invalid, it nevertheless could subject the University to legal exposure.

Also, under the Regents' Rules of The University of Texas System[4] "[e]very employee is expected to obey all federal, State and local laws, and particularly," among other laws, "[Texas Penal Code] Section 46.03."[5] Exhibit A (Rule 30103: "Standards of Conduct" §1, Regents' *Rules and*

---

[4] The University of Texas System governs UT Austin and the eleven other institutions and entities under its purview. TEX. EDUC. CODE §65.02.

[5] Important here, Texas Penal Code §46.03, entitled "Places Weapons Prohibited," specifically provides for licensees to "possess[] or go[] with a concealed handgun that the person is licensed to

*Regulations*, UNIVERSITY OF TEXAS SYSTEM (amended February 11, 2016)).[6] Rule 30103 is clear that "any employee who violates any provision of these statutes is subject to disciplinary action." *Id.*

Moreover, faculty, like all employees, are expected to abide by the University's policies. If they do not, the administration has the right to discipline faculty and employees. UT Austin's HOP does not spell out specific discipline for every possible policy violation in which an employee or faculty member might engage. Instead, it vests the administration with the discretion to determine the appropriate discipline in a particular factual scenario. *See, e.g.*, Stipulated Joint Ex. 4 (Clerk's Doc. 35-4) (HOP 8-1060 "Concealed Campus Carry" policy which incorporates by reference HOP 2-2310 Faculty Grievance Procedure at §X-Related Information); Exhibit B (HOP 2-2310: "Faculty Grievance Procedure" policy) at § I(C).

In the event a faculty member violates the concealed carry policy, she could be disciplined. And because the Faculty Grievance Procedure (HOP 2-2310) is incorporated into HOP 8-1060's Concealed Campus Carry policy by reference, faculty are on notice that violating that policy subjects them to potential discipline. Joint Stipulated Ex. 4 (HOP 8-1060, incorporating by reference HOP 2-2310) at §X, *see also* Exhibit B (HOP 2-2310). HOP 2-2310 expressly provides that "[t]he administration has the right to discipline members of the faculty. The administration also has the right to terminate faculty members for good cause." Exhibit B (HOP 2-2310) at § (I)(C).[7] Thus, in the event that a faculty member is subject to discipline, HOP 2-2310 provides specific procedures for imposing that discipline, all of which include notice and an opportunity to be heard. Exhibit B (HOP 2-2310) at §(I)(C)(3).

---

carry under Subchapter H, Chapter 411, Government Code…on the premises of an institution of higher education[.]" TEX. PENAL CODE §46.03(a)(1)(B).

[6] Rule 30103 may be found at Joint Stipulated Ex. 5 (Doc. 35-5, ECF page no. 131).
[7] HOP 2-2310 cites Rule 30103: "Termination of a Faculty Member", Regents' *Rules and Regulations*, UNIVERSITY OF TEXAS SYSTEM (amended May 12, 2016). This rule applies when the disciplinary action against a faculty member is termination.

In short, faculty members are subject to disciplinary consequences for violating State or federal law or University policy, although the particular consequences depend upon the specific facts involved. Faculty members are on notice that State law provides that guns can be carried on campus, and that the president has not made a rule excluding them from classrooms. As a result, any individual professor who attempts to establish a prohibition is subject to discipline. Any such discipline would occur pursuant to HOP 2-2310 and all applicable Rules of the Board of Regents.

### III.     UT Defendants' Campus Carry Policy Is Valid And Not Void For Vagueness.

The policy, HOP 8-1060, is not vague in any respect.  It puts the University community on notice regarding the proscribed conduct—prohibiting concealed carry in areas other than gun exclusions zones created by the policy.  And it communicates, by adopting by reference, disciplinary procedures elsewhere in the policy handbook.  UT Defendants, adopt by reference, for all purposes, as if fully set forth herein, their arguments and authorities, set out in their Motion to Dismiss [Clerk's Doc. 39] at pp. 22-25, regarding why Plaintiffs fail to state a claim under the Due Process Clause.  The policy is not unconstitutionally vague.  Accordingly, this Court should deny preliminary injunctive relief on Plaintiffs' due process void for vagueness theory.

### CONCLUSION & PRAYER

For the reasons set forth in their Response to Plaintiffs' motion, the arguments made at the August 4, 2016 hearing, and the supplemental briefing provided here, UT Defendants respectfully request that this Court deny Plaintiffs' Motion for Preliminary Injunctive thereby denying the extraordinary relief they seek.

**Respectfully submitted,**

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief, General Litigation Division

/s/Amanda J. Cochran-McCall
AMANDA J. COCHRAN-MCCALL
Deputy Chief, General Litigation Division
Texas Bar No. 24069526
amanda.cochran-mccall@texasattorneygeneral.gov
ANNE MARIE MACKIN
Assistant Attorney General
Texas Bar No. 24078898

OFFICE OF THE ATTORNEY GENERAL
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
(512) 463-2120
(512) 320-0667 *Facsimile*
anna.mackin@texasattorneygeneral.gov

**ATTORNEYS FOR UT DEFENDANTS**

# CERTIFICATE OF SERVICE

      I hereby certify that on this the 8th day of August, 2016, a true and correct copy of the foregoing was filed electronically with the Court and delivered via the CM/ECF system to:

James George, Jr.
GEORGE, BROTHERS, KINCAID & HORTON LLP
114 W 7th Street, Ste. 1100
Austin, Texas 78701
512-495-1400
512-499-0094 Fax
State Bar No. 07810000
rjgeorge@gbkh.com

Malcolm Greenstein
GREENSTEIN & KOLKER
1006 E. Cesar Chavez Street
Austin, Texas 78702
512-472-6270
512-472-8263 Fax
State Bar No. 08403300
malcolm@greensteinandkolker.com

Renea Hicks
LAW OFFICE OF MAX RENEA HICKS
101 West 6th Street, # 504
Austin, Texas 78701
512-480-8231
512-480-9105
State Bar No. 09580400
rhicks@renea-hicks.com

**ATTORNEYS FOR PLAINTIFFS**

Prerak Shah
Senior Counsel to the Attorney General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697
Texas Bar No. 24075053
prerak.shah@texasattorneygeneral.gov

**ATTORNEY FOR DEFENDANT PAXTON**

                        /s/Amanda J. Cochran-McCall
                        **ATTORNEY FOR UT DEFENDANTS**