# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

**DR. JENNIFER LYNN GLASS, et al.,**
*Plaintiffs*,

**v.**

Case No. 1:16-cv-845-LY

**KEN PAXTON, et al.**
*Defendants.*

---

## DEFENDANT KEN PAXTON'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MEMORADUM IN SUPPORT OF THE MOTION FOR PRELIMINARY INJUNCTION

Attorney General Ken Paxton respectfully submits this response to Plaintiffs' Supplemental Memorandum in Support of the Motion for Preliminary Injunction.

### ARGUMENT

### I.   Plaintiffs Have No Response to the Fatal Defects in Their First Amendment Claim.

Plaintiffs have now had three opportunities to respond to the arguments General Paxton made in his response to their motion for preliminary injunction: a reply in support of their motion, a three-hour hearing on the motion, and a supplemental filing in support of their motion. In spite of these numerous opportunities, Plaintiffs have failed to address a number of arguments that are fatal to their First Amendment claim, including: the alleged violation of their First Amendment rights is not fairly traceable to state action, *see* Paxton Resp. at 6-7; the alleged state action is indirect and content-neutral, *see* Paxton Resp. at 7-8; and any alleged effect on their First Amendment rights is justified by an important government interest, *see* Paxton Resp. at 10-11. Their silence on these arguments is deafening. Plaintiffs are unlikely to succeed on the merits of their First Amendment claim, so the motion for preliminary injunction should be denied.

## II. Plaintiffs Know Their Academic Freedom Claim Will Fail, So They Are Apparently Abandoning It In Favor of a Brand New, Unpled Claim—Which Will Also Fail.

Curiously, Plaintiffs appear to be abandoning their academic freedom claim—declaring that the details of such a claim (otherwise known as the requirements to prove the claim) are "academic." Instead, they discuss for the first time what sounds like a general First Amendment free speech claim. But while Plaintiffs' surreptitious abandonment of their academic freedom claim is surprising, it is understandable: they simply will not succeed on the claim. In addition to the overwhelming case law demonstrating that there is no individual right to academic freedom,[1] Plaintiffs have absolutely no response to the fact that the right to academic freedom can only be infringed if the state action is *direct* and *content-based*, neither of which is the case here.

But just because Plaintiffs' actions are understandable does not mean they are permissible. Plaintiffs have filed a lawsuit alleging a violation of their right to academic freedom. *See, e.g.*, Complaint at ¶ 33 ("Compelling professors at a public university to allow, without any limitation or restriction, students to carry concealed guns in their classrooms chills their First Amendment

---

[1] Contrary to Plaintiffs' assertions, the Supreme Court has *never* recognized an individual right to academic freedom. *Keyishian v. Bd. Of Regents of Univ. of N.Y.*, 385 U.S. 589 (1967), and *Sweezy v. State of N.H.*, 354 U.S. 234 (1957), which Plaintiffs rely on almost exclusively, certainly never recognized an individual right. As the Supreme Court explained in *University of Pennsylvania. v. E.E.O.C.*: "In *Keyishian,* for example, government was attempting to *substitute* its teaching employment criteria for those already in place at the academic *institutions*, directly and completely usurping the discretion of each *institution*." 493 U.S. 182, 198 (1990) (emphasis added and in original). The same is true with *Sweezy*: "When weighed against the grave harm resulting from governmental intrusion into the intellectual life *of a university,* [the] justification for compelling a witness to discuss the contents of his lecture appears grossly inadequate." 354 U.S. at 261 (Frankfurter, J., concurring in the result) (emphasis added); *see also Urofsky v. Gilmore*, 216 F.3d 401, 412 (4th Cir. 2000) ("The right recognized by Justice Frankfurter, however, was not the individual right claimed by Appellees, but rather an institutional right belonging to the University of New Hampshire."). *See also* Paxton Resp. at 3-6.

rights to academic freedom."); ¶ 46 ("These policies and procedures chill the professors' exercise of their rights to academic freedom."). It is based on that Complaint that Plaintiffs seek a preliminary injunction. They cannot simply change the claims in their lawsuit via a supplement to a motion. And, in any event, this brand new claim also fails for several independent reasons.

1.   As noted above, Plaintiffs still have not addressed the fact that their alleged First Amendment injury cannot be fairly traced to any state action. *See* Paxton Resp. at 6-7.

2.   Plaintiffs' apparent fear that they will be attacked by an adult who has been licensed by the State to conceal carry if Plaintiffs do not censor their own speech is not objectively reasonable or certain, so they have no First Amendment injury. *See* Paxton Resp. at 8-10.

3.   Plaintiffs still have not addressed the fact that any supposed restriction on their speech is justified by an important governmental interest. Plaintiffs briefly attempt to mention the applicable standard, stating that the restriction must be "narrowly tailored to serve a compelling government interest." Pls.' Supp. Mem. at 12. But this is only half the story: "narrow tailoring" means something very different in this context than it does in others, where it is often synonymous with the "least restrictive means" standard. Here, "the requirement of narrow tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)); *see also Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 662 (1994) ("To satisfy this standard, a regulation need not be the least speech-restrictive means of advancing the Government′s interests."). Moreover, contrary to Plaintiff's brief, the governmental interest in question need not be "compelling," it need only

be important or substantial: "a content-neutral regulation will be sustained if 'it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.'" *Turner Broad. Sys., Inc.*, 512 U.S. at 662 (quoting *United States v. O'Brien*, 391 U.S. 367, 377 (1968)).

Plaintiffs cannot beat this standard. Indeed, they do not even try to do so. At no point do they address the discussion in General Paxton's response to their initial memorandum in support of the application for preliminary injunction, which explained that allowing concealed carry in classrooms furthers an important or substantial governmental interest, is unrelated to the suppression of free expression, and any incidental restriction on alleged First Amendment freedoms is no greater than is essential to further the governmental interest. *See* Paxton Resp. at 10-11.

*   *   *

Plaintiffs' abandonment of their claim to the unique right to academic freedom reveals the sheer scope of their First Amendment claim. Not only are they seeking to essentially prohibit guns on public campuses, contrary to the legislative decision made by the representations of the people of Texas, their claim could stretch to all public property. If Plaintiffs are no different than anyone else in asserting First Amendment free speech rights, if they succeed in banning guns from public classrooms on the grounds that their right to free speech is unconstitutionally infringed by the fact that a concealed handgun may be present in their vicinity, then *anyone* could assert such a right *anywhere*. That is absurd. Indeed, the fact that the people of this State continue to enjoy robust free speech rights despite the presence of licensed carry throughout the State only confirms that Plaintiffs' subjective fears are not objectively reasonable.

4

### III. Plaintiffs Will Not Prevail on Their Due Process "Void for Vagueness" Claim.

Plaintiffs have now supplemented their motion for preliminary injunction with their Fourteenth Amendment due process "void for vagueness" claim, but that claim is also unlikely to prevail for a number of reasons.

1.    There are two threshold matters that must be addressed. First, Plaintiffs are confused about the applicable legal standard. They cite language from *Smith v. Goguen*, 415 U.S. 566 (1974), Pls.' Supp. Mem. at 1, but that case is actually inapplicable here because it involved a challenge to a criminal statute. There is a distinction between the "void for vagueness" standard when it comes to criminal statutes versus civil enforcement statutes or similar non-criminal penalties (such as violations of university policies). "[I]n civil actions, a law is void for vagueness only if its 'terms [are] so vague and indefinite as really to be no rule or standard at all or [are] substantially incomprehensible.'" *Rowell v. Pettijohn*,  816 F.3d 73, 84 (5th Cir. 2016) (quoting *Ford Motor Co. v. Texas Dep't of Transp.*, 264 F.3d 493, 507–08 (5th Cir. 2001)). "Moreover, a federal court must construe a state statute to avoid a constitutional problem if the statute is susceptible of such a construction. Here, even if there is any vagueness in the Texas statute, it can be construed to eliminate that vagueness." *Id.* (quotation marks and citations omitted).

Second, the scope of Plaintiffs' due process claim must be limited to university policies, not state law. Plaintiffs can only challenge the University policies because Plaintiffs are being injured as a result of the University policy, not the law itself. The University is telling Plaintiffs that they are not allowed to prohibit conceal carry in their classrooms and that they will be punished if they ignore that directive. To be sure, the University made that decision because it (correctly) determined that was the best way to be in compliance with state law, but that is actually irrelevant to *Plaintiffs'* claims—because the state law is not being enforced against them, only the university's

policies are. After all, the state law provides a floor, not a ceiling, of the extent to which universities must permit concealed carry on campuses. Even if the University had provided greater concealed carry rights than the law requires, which it has not, the University has the power to enforce those policies against Plaintiffs.[2]

3.     Accordingly, Plaintiffs can only raise a Due Process challenge against the University policies. And there is nothing vague about those policies: individual professors cannot prohibit conceal carry in their classrooms. *See, e.g.*, University of Texas System Handbook of Operating Procedures 8-1060, at 1 (Stipulated Joint Ex. 4) ("Individuals licensed to carry may do so on campus except in locations and at activities prohibited by law or by this policy[]" —and classrooms are not an iden-

---

[2]   Given the amount of space devoted to the argument, General Paxton feels obligated to respond to Plaintiffs' argument that state law would permit the University to allow individual professors to prohibit concealed carry in individual classrooms. That is not true. First of all, prohibiting concealed carry in classrooms would serve to "generally prohibit" concealed carry on campus, which would be contrary to state law. *See, e.g.*, Tex. Att'y Gen. Op. No. KP-0051, at 2 (2015) ("[A]ttending or teaching class is the primary reason most individuals are on campus. If an institution prohibited the carrying of concealed handguns in a substantial number of classrooms, a court would likely conclude that the effect would be to 'generally prohibit' license holders from carrying concealed handguns on campus, contrary to the Legislature's express requirements."); University of Texas at Austin, *Campus Carry Policy Working Group: Final Report*, at 6 (Dec. 2015), available at http://campuscarry.utexas.edu/CCWorkingGroup-FinalReport.pdf ("The primary on-campus activity for most of our more than 50,000 students is going to class. Excluding handguns from classrooms would have the effect of generally prohibiting license holders from carrying their handguns and so would violate S.B. 11.").

Second, state law does not permit the University to delegate the authority to make those decisions to individual professors. *See, e.g.*, Tex. Att'y Gen. Op. No. KP-0051, at 2 ("While the Legislature has required that faculty be consulted prior to establishing the rules, S.B. 11 places the authority to make rules regarding the carrying of concealed handguns on campus with the 'president or other chief executive officer.' 2015 Tex. Gen. Laws at 1723 (to be codified at Tex. Gov't Code § 411.2031(d-1). No provisions within S.B. 11 authorize a president or chief executive officer to delegate this authority to individual professors, and reading S.B. 11 as a whole suggests that the Legislature did not intend to allow such piecemeal regulation of handguns on campus.").

tified location—and further providing that "[t]his policy applies to all students, employees, University affiliates, and visitors of the University while on campus or University owned property."); *see also* UT Defs.' Resp. to Pls.' Supp. Mem.[3]

General Paxton will defer to the University of Texas defendants as to the details of their policies, but will note that the policies seem straightforward in their meaning and application. Moreover, General Paxton will note that the University is responsible for enacting policies that comply with state law. Here, the University policy preventing individual professors from banning concealed carry in classrooms is necessary to be in compliance with state law. If the University was violating state law by "generally prohibiting" concealed carry on the university campus or impermissibly delegating decision-making regarding concealed carry to individual professors, the Attorney General could ultimately bring an enforcement action to bring the University into compliance, which would include enacting policies that do not allow individual professors to prohibit licensed adults from carrying concealed handguns in classrooms.[4]

---

[3]  Plaintiffs may also be arguing that the disciplinary procedures that will be employed by the University for any professor that violates University policy by banning concealed carry in their classroom is void for vagueness. But this confusion cannot serve as a basis for a constitutional challenge to the underlying state law or University policy. Just because an enforcement mechanism may be vague, that does not mean a separate law or policy is vague. In any event, as the University defendants have persuasively demonstrated, there is nothing vague about the enforcement mechanism: if the Plaintiffs violate the University policy that permits licensed adults to conceal carry in classrooms, they will suffer adverse consequences.

Of course, if Plaintiffs want to argue that they are not subject to any disciplinary measures from their employer, then this case is even easier to dismiss. Plaintiffs would be arguing against their own Article III standing to file this lawsuit—something they have the burden to establish in the first place. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Accordingly, the case would have to be dismissed.

[4]  Plaintiffs have expressed confusion about whether the University is a "state agency or public division of the state." To be clear, the University is a state agency and thus the Attorney General has enforcement authority against it for violations of the campus carry law. *See* TEX. GOV'T

4.     Even if Plaintiffs could challenge the underlying Texas campus carry law, their claim would fail. Texas law states that the President or officer of a public university "may not establish provisions that generally prohibit or have the effect of generally prohibiting license holders from carrying concealed handguns on the campus of the institution." TEX. GOV'T CODE §411.2031(d-1). The phrase "generally prohibit" is not "so vague and indefinite as really to be no rule or stand-ard at all.'" *Rowell*, 816 F.3d at 84 (citation omitted). Indeed, it is literally a standard. It delegates to an official the authority to evaluate the unique circumstances on a particular public campus, so that the official may establish specific policies that comply with the law's directive to not "gener-ally prohibit" conceal carry on public campuses—an objective standard that can be determined by a court if the official's policies are challenged. If such a law is impermissibly vague, countless laws that delegate to state officials the details of enforcement will have to be similarly struck down.

As the Supreme Court has explained, "we can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) (upholding criminal statute against vagueness challenge). The campus carry law is written with "flexibility and reasonable breadth, rather than meticulous specificity, but we think it is clear what the ordinance as a whole prohibits." *Id.* The President or officer of the university cannot enact any rules that will generally prohibit licensed adults from carrying concealed while on the university's campus. Within that restriction, the President or officer have the authority to enact common-sense regulations. *Id.* at 114 ("As always, enforcement requires the exercise of some degree of police judgment, but, as confined, that degree of judgment here is permissible.") In this case, the University has properly

---

CODE § 572.002(10) ("State agency" . . . means (B) a university system or an institution of higher education as defined by Section 61.003, Education Code"); TEX. EDUC. CODE § 61.003 (explicitly listing the University of Texas at Austin).

decided that it must allow concealed carry in individual classrooms. There is nothing unconstitutionally vague about that policy, or the underlying law it is meant to effectuate.

## Conclusion

The Court should deny the motion for preliminary injunction.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Jeffrey C. Mateer
First Assistant Attorney General

Brantley Starr
Deputy First Assistant Attorney General

/s/ Prerak Shah
Prerak Shah
Senior Counsel to the Attorney General
Texas Bar No. 24075053

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697
prerak.shah@texasattorneygeneral.gov

Counsel for Defendant Ken Paxton

## CERTIFICATE OF SERVICE

On August 10, 2016, this Motion to Dismiss was served on the following counsel of record for all parties via the Court's CM/ECF filing system:

James George, Jr.
GEORGE, BROTHERS, KINCAID & HORTON LLP
114 West 7th Street, Suite 1100
Austin, Texas 78701

Malcolm Greenstein
GREENSTEIN & KOLKER
1006 E. Cesar Chavez Street
Austin, Texas 78702

Renea Hicks
LAW OFFICE OF MAX RENEA HICKS
101 West 6th Street, #504
Austin, Texas 78701

COUNSEL FOR PLAINTIFFS

Amanda J. Cochran-Mccall
Anne Marie Mackin
OFFICE OF THE ATTORNEY GENERAL
GENERAL LITIGATION DIVISION
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548

COUNSEL FOR UT DEFENDANTS

/s/ Prerak Shah
PRERAK SHAH