IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Dr. Jennifer Lynn Glass, *et al.*, | § | |
|     *Plaintiffs,* | § | |
| | § | |
| v. | § | No. 1:16-cv-845 |
| | § | |
| Ken Paxton, in his official capacity as | § | |
| Attorney General of Texas, *et al.,* | § | |
|     *Defendants.* | § | |

**UT Defendants' Response to Plaintiffs' Supplemental Memorandum in Support of Application for Preliminary Injunction**

Defendants Gregory L. Fenves, President of The University of Texas at Austin ("UT Austin"), and the Board of Regents for The University of Texas System, in their official capacities, including Paul L. Foster, R. Steven Hicks, Jeffery D. Hildebrand, Ernest Aliseda, David J. Beck, Alex M. Cranberg, Wallace L. Hall, Jr., Brenda Pejovich, Sara Martinez Tucker, and Varun P. Joseph, (collectively "UT Defendants") hereby respond to Plaintiffs' Supplemental Memorandum in Support of their Application for Preliminary Injunction (Doc. 38) ("Pl.'s Supp. Mem.").

## Introduction

Plaintiffs' Application for Preliminary Injunction (Doc. 20) and Memorandum of Law in Support (Doc. 21) disavowed any attempt to seek a preliminary injunction on vagueness grounds. But at the Court's August 4, 2016 hearing on their request for this extraordinary injunctive relief, Plaintiffs' counsel reversed course. At that hearing—and in their Supplemental Memorandum— Plaintiffs' counsel alleged that "[n]o person of common intelligence…can figure out what governs them on this issue." Pl.'s Supp. Mem. at 2. "This issue," as put by the Plaintiffs, is whether individual

professors at UT Austin have "the option of banning guns from their classrooms." *Id.*[1] The Supplemental Memorandum further asserts that "[n]o person of common intelligence…can figure out…what, if anything, will happen to [professors] if they trip over the stumbling block somebody at UT may set up." *Id.* Finally, the Memorandum argues that "the open-endedness of the potential punishment is rife with the possibility of arbitrary and discriminatory enforcement." *Id.* at 3.

Plaintiffs are not likely to succeed on the merits of this vagueness claim, for two reasons. First, HOP 8-1060 (as well as its originating documents, and State law) makes clear that professors may not ban licensees from lawfully carrying concealed handguns in classrooms at UT Austin. Instead, the only individuals Texas law authorizes to establish gun exclusion zones of any kind at UT Austin are the President, or the Board of Regents acting by a two-thirds vote. Second, a provision is not unconstitutionally vague simply because an individual is uncertain what particular consequences might follow from a hypothetical future violation thereof.[2]

Additionally, the Supplemental Memorandum's further urgings in support of Plaintiffs' First Amendment claim do not remedy the failure to establish a likelihood of success on that claim's merits. Finally, Plaintiffs' Supplemental Memorandum fails to respond in any way to the UT Defendants' showing that Plaintiffs' equal protection claim lacks merit. As a result, for the reasons set forth here and in the UT Defendants' Response in Opposition to Plaintiffs' Request for Preliminary Injunction (Doc. 28) ("UT Defs.' PI Rsp."), that Application should be denied.

---

[1] It is also worth noting that individual professors do not have any legally protected property interest in University owned or leased classrooms.

[2] Moreover, as set forth in the UT Defendants' Motion to Dismiss (Doc. 39), even if Plaintiffs could assert a pre-enforcement due process challenge to HOP 8-1060—which they cannot—the practices in place under HOP 2-2310, "Faculty Grievance Procedure," plainly provide for all process that is due.

I.      **The recent addition of a vagueness claim does not entitle Plaintiffs to a preliminary injunction because such claim is not likely to succeed on the merits.**

As set forth in the UT Defendants' Motion to Dismiss, unconstitutional vagueness is not present "merely because…an individual can raise uncertainty about [a provision's] application to the facts of their case." *Ford Motor Co. v. Texas Dept. of Transp.*, 264 F.3d 493, 509 (5th Cir. 2001). Instead, unconstitutional vagueness in the civil context exists "'only where no standard of conduct is outlined at all; when no core of prohibited activity is defined.'" *Id.* (quoting *Margaret S. v. Edwards*, 794 F.2d 994, 997 (5th Cir. 1986)). HOP 8-1060 gives professors ample notice of the appropriate standard of conduct, which satisfies this test.

a.      **Plaintiff's Supplemental Brief shows their understanding that HOP 8-1060, which does not allow professors to ban licensees from carrying in class, is UT Austin's policy.**

The Supplemental Memorandum asks, "[w]hat counts as the policy" governing concealed carry on UT Austin's campus? Pl.'s Supp. Mem. at 8. As noted at the August 4 hearing, and set forth in detail in the UT Defendants' Supplemental Brief filed August 8, 2016 (Doc. 41), HOP 8-1060 is UT Austin's official Campus Concealed Carry policy. *See, e.g.,* Stipulated Joint Ex. 4 (UT Austin Handbook of Operating Procedures 8-1060 titled "Campus Concealed Carry"). This is clear not just from the policy's title, but because HOP 8-1060 tracks and incorporates the Campus Carry Working Group's Final Report and Campus Carry Policies and Implementation Strategies that are its blueprint. *Compare* Stipulated Joint Ex. 1 ("Campus Carry Policies and Implementation Strategies") *and* Stipulated Joint Ex. 3 ("Campus Carry Working Group Final Report") *with* Stipulated Joint Ex. 4 (HOP 8-1060). Table 1, attached to the UT Defendants' Supplemental Brief, explicitly shows where HOP 8-1060 incorporates the substance of these originating documents.

Nevertheless, Plaintiffs argue that a "detailed march through the statutes, policies and implementation pronouncements" provides insufficient clarity regarding appropriate faculty conduct.

Pl.'s Supp. Mem. at 4. The UT Defendants disagree, and instead submit that Plaintiffs' specific allegations of vagueness are refuted by the "detailed march" their counsel undertook.

First, Plaintiffs assert that Texas Government Code §411.2031 "[d]oes not direct that guns must be allowed in individual university classrooms." Pl.'s Supp. Mem. at 4.[3] This argument falls flat, because the law *does* state that "[a] license holder may carry a concealed handgun on or about the license holder's person while the license holder is on the campus of an institution of higher education" in Texas, unless the President or the Board acting by a two-thirds vote establishes a gun exclusion zone. TEX. GOV'T CODE §411.2031(b), (d-1), (d-2). The law plainly "directs" that guns are allowed in classrooms, unless an exception is created pursuant to (d-1) or (d-2). And classrooms are not an exception created pursuant to those provisions.

Plaintiffs further seek to show vagueness by claiming that the statute "speaks only of conceal[ed] carry 'on the campus,'" and that it "specifies no rule governing an individual faculty member's decision about guns in her particular classroom." Pl.'s Supp. Mem. at 5. Here again, Plaintiffs ignore that §411.2031 specifically defines "[c]ampus" to include "all land and buildings owned or leased by" the higher education institution, which includes classrooms. *Id.* §411.2031(a)(1). Plaintiffs further ignore that the statute *does* specify that only the President or the Board by a two-thirds vote has the authority to make any "decision" about where licensees cannot carry. TEX. GOV'T CODE §411.2031(d-1). The "rule governing an individual faculty member's decision about guns in her particular classroom" is HOP 8-1060, which does not allow individual professors the authority to make such a decision at all. If the classroom where a professor is teaching is one of HOP 8-1060's gun exclusion zones, then licensees are not permitted to carry a concealed handgun in that classroom.

---

[3] Plaintiffs' position is akin to a suggestion that, because neither federal antidiscrimination law nor UT Austin's Nondiscrimination Policy specifically states that "Canadians must be allowed in individual university classrooms," professors of ordinary intelligence cannot determine that banning Canadians from class violates nondiscrimination law and the University's Nondiscrimination Policy.

If the classroom where a professor is teaching is not one of HOP 8-1060's gun exclusion zones, then licensees are permitted to carry a concealed handgun in that classroom.

For the same reason, Plaintiffs' argument that the Campus Carry Policies and Implementation Strategies "are careful to avoid a general prohibition but utterly silent on the question of an individual professor's decision about guns in her particular classroom" also does not show vagueness. Pl.'s Supp. Mem. at 6. *See also id.* at 5, n.3. (alleging that President Fenves left "the matter of guns in the classroom…unaddressed.") The President did not need to "speak" to "the question of an individual professor's decision about guns in her particular classroom," because the law does not give her the authority to make such a decision.

Finally, HOP 8-1060 expressly states that "[i]ndividuals licensed to carry may do so on campus except in locations and at activities prohibited by law or by this policy." HOP 8-1060 (Joint Stip. Ex. 4) at Part I ("Policy Statement") (emphasis supplied). In fact, Plaintiffs' Supplemental Memorandum claims in one breath that HOP 8-1060 has no "direct statement about guns in the classroom," but in the next, acknowledges what the policy makes clear—"[i]ndividuals licensed to carry may do so on campus *except in locations and at activities prohibited by law or by this policy.*'" Pl.'s Supp. Mem. at 8 (emphasis Plaintiffs') (quoting HOP 8-1060 at Part I). Plaintiffs concede, as they must, that "[t]he highlighted clause certainly is an indication that professors are not allowed to keep guns out of their classrooms." *Id.* The argument then becomes that "[t]he highlighted clause…cross-references no statute and no Presidential Policy from July 13th." *Id.* But none of the void for vagueness jurisprudence requires any statutory "cross-reference" in order to survive allegations of unconstitutional vagueness. Rather, unconstitutional vagueness exists "'only where no standard of conduct is outlined at all; when no core of prohibited activity is defined.'" *Ford Motor Co. v. Texas Dept. of Transp.*, 264 F.3d at 509 (quoting *Margaret S. v. Edwards*, 794 F.2d at 997). Plaintiffs have not shown this here.

5

**b.  Plaintiffs' uncertainty about the consequences of hypothetical future violations of HOP 8-1060 does not render it unconstitutionally vague.**

A potential for "arbitrary and discriminatory enforcement" is a proxy for vagueness itself—if a restriction is sufficiently unclear in how it can be violated, it is also sufficiently unclear to allow for arbitrary and discriminatory enforcement. That is, a provision "encourages arbitrary enforcement by failing to describe with sufficient particularity what a suspect must do in order to satisfy" it. *Kolender v. Lawson*, 461 U.S. 352, 361 (1983). Because it is clear that professors cannot ban licensees from carrying concealed handguns in classrooms at UT Austin, it is also clear that HOP 8-1060 does not allow for arbitrary and discriminatory enforcement.

Plaintiffs' own cited authorities are telling in this regard. *See* Pl.'s Supp. Mem. at 1. First, Plaintiffs cite *Smith v. Gougen*, which is inapposite because it involved a challenge to a *criminal* statute. 415 U.S. 566 (1974). Second, Plaintiffs cite *Grayned v. City of Rockford*, where the Court concluded that a prohibition on willfully making noise or a disruption that tends to disturb the peace or order of a school was *not* unconstitutionally vague. 408 U.S. 104, 110 (1972). Third, *Groome Resources v. Parish of Jefferson* reiterated the standard applicable in the civil context: in order to be unconstitutionally vague, a provision that is neither criminal nor semi-criminal "must be 'so vague and indefinite as really to be no rule at all.'" 234 F.3d 192, 217 (citing *Seniors Civil Liberties Ass'n v. Kemp*, 965 F.2d 1030, 1036 (11th Cir. 1992); *Boutilier v. INS*, 387 U.S. 118, 123 (1967)). Finally, Plaintiffs cite *Rowell v. Pettijohn*, 816 F.3d 73 (5th Cir. 2016), *petition for cert. filed*, (U.S. June 3, 2016) (No. 15-1455). There, merchants challenged Texas's prohibition on imposing a surcharge upon customers who pay with a credit card as unconstitutionally vague, "because the distinction between a surcharge and a discount is purely semantic, and difficult to abide by in practice." 816 F.3d at 78. The Fifth Circuit disagreed, because the law has a "core meaning that can be reasonably understood," and is therefore not "so vague and indefinite as really to be no rule or standard at all." *Id.* at 84. (citations and quotation marks omitted). Each of these cases supports the finding that HOP 8-1060 is not void for vagueness, because,

reasonably understood, it prevents professors from attempting to ban licensees from carrying in classrooms at UT Austin.

Nevertheless, Plaintiffs' attorneys persist in an obtuse reading of the UT Defendants' Response in Opposition to Plaintiffs' Application for Preliminary Injunction,[4] suggesting that it is

---

[4] In particular, Counsel focus upon the language "the UT Defendants policies do not provide for termination of public employment, or any other punitive measures against university professors." Pl.'s Supp. Mem. at 9 (quoting UT Defs.' PI Rsp. at 10). Counsel take these words wholly out of context. The full text of the cited passage reads as follows:

> *Keyishian* [*v. Board of Regents of the University of the State of New York*, 385 U.S. 589 (1967)] is inapplicable because *no* speech is prohibited under the UT Defendants' policies. Indeed, Plaintiffs do not have to "guess" anything in exercising their First Amendment rights under the UT Defendants' policies—those policies do not say anything about what Plaintiffs may say, either individually *or* as professors. Moreover, the UT Defendants' policies do not provide for termination of public employment, or any other punitive measures against university professors. Thus, *Keyishian* does not provide a basis for the Plaintiffs to succeed on the merits of their First Amendment claim.

UT Defs.' TI Rsp. at 10. Plainly, this passage conveys that the UT Defendants' policies do not provide for termination of public employment, or any other punitive measures against university professors, *in connection with engaging in any activity the First Amendment protects. Cf. Keyishian*, 385 U.S. at 593 (invalidating, on vagueness grounds, statute under which "'the utterance of any treasonable or seditious word or words or the doing of any treasonable or seditious act' is a ground for dismissal" from public employment). As explained at length in both the UT Defendants' Response in Opposition to Plaintiffs' Motion for Temporary Injunction (Doc. 28 at 9-12) and their Motion to Dismiss (Doc. 39 at 16-19), no such activity is present here.

Plaintiffs' counsel further urge that "[t]he[] [UT Defendants] said that 'termination or adverse employment action' are 'not at issue here.'" Pl.'s Supp. Mem. at 10 (quoting UT Defs. PI Rsp. at 9). Indeed, termination and adverse employment action "are not at issue here" because Plaintiffs *have not been terminated, nor have they suffered adverse employment action.* That they could, hypothetically, violate University policy and be subject to adverse employment action in the future is irrelevant for purposes of whether they are likely to succeed on the merits of their *current* lawsuit. In all of the authorities Plaintiffs rely upon in support of their preliminary injunction request, the public employees filing suit had *already* suffered termination or adverse employment action for engaging in activity they believed was constitutionally protected. Thus, these authorities do not help the Plaintiffs, because those are not the facts at issue here.

The UT Defendants clarified these points at the August 4, 2016 hearing, and to the extent Plaintiffs' counsel remain confused, include this footnote in an attempt to dispel that confusion here again. In any event, the potential consequences the UT Defendants have the authority to impose against faculty members who violate State law and/or University policy are not relevant unless the Plaintiffs have any constitutionally protected interest in their desired conduct. Here, they do not.

unclear whether Plaintiffs are subject to discipline for violating State law or University policy. Plainly, they are. To the extent that Plaintiffs argue they are uncertain what precise consequences will follow from hypothetical future violations of University policy, this does not state a claim of unconstitutional vagueness. Instead, the inquiry is whether a reasonable person might know what *conduct* is prohibited. As has been exhaustively briefed, that conduct here is an individual professor's attempt to ban licensees from lawfully carrying concealed handguns in classrooms on UT Austin's campus.

## II.   Plaintiffs' Supplemental Memorandum does not save their First Amendment Claim from failure on the merits.

Plaintiffs' Supplemental Memorandum makes a final attempt to revive this case by (1) restyling their academic freedom claim as a more generalized First Amendment grievance, and (2) re-urging academic freedom arguments already refuted. Both efforts fail.

First, Plaintiffs claim that "[r]egardless of whether it is in a written syllabus for a course or the opening of the lecture on the first day of class [Plaintiffs' desire to ban licensees from carrying concealed handguns in their classes] is a First Amendment activity. It is speech." Pl.'s Supp. Mem. at 12. But even assuming this is so, Plaintiffs' First Amendment claim fails. That is, when a challenged provision "does not directly abridge free speech, but—while regulating a subject within the State's power—tends to have the incidental effect of inhibiting First Amendment rights, it is well settled that the statute can be upheld if the effect on speech is minor in relation to the need for control of the conduct and the lack of alternative means for doing so." *Younger v. Harris*, 401 U.S. 37, 51 (1971) (citing *Schneider v. State*, 308 U.S. 147 (1939); *Cantwell v. Connecticut*, 310 U.S. 296 (1940); U*nited Mine Workers of America, Dist. 12 v. Illinois Bar Assn.*, 389 U.S. 217 (1967)).

Indeed, "[j]ust as the incidental 'chilling effect' of such statutes does not automatically render them unconstitutional, so the chilling effect that admittedly can result from the very existence of certain laws on the statute books does not in itself justify prohibiting the State from carrying out the important and necessary task of enforcing these laws[.]" *Younger*, 401 U.S. at 51-52. And here, HOP

8-1060 cannot allow individual professors to ban licensees from their classrooms while remaining consistent with the legislature's dictate that (1) the President and Board determine the University's concealed carry policy, including gun exclusion zones, and; (2) those policies not have the effect of "generally prohibiting" licensees from carrying on campus. Thus, to the extent Plaintiffs would ban licensees from carrying in their classes *through* expressive activity, such activity is not protected by the First Amendment. *See, e.g.,* UT Defs.' Mot. to Dismiss at 17-19.

Next, Plaintiffs assert that "[t]he Supreme Court only recently has warned that it remains open to giving public university professors greater First Amendment protection from employer discipline for speech made in connection with their official duties, including classroom instruction, than is given public employees more generally." Pl.'s Supp. Mem. at 13 (citing *Garcetti v. Ceballos*, 547 U.S. at 410, 426 (2006)). But the law is what the Supreme Court has *held*. And even Justice Souter's *Garcetti* dissent and the Ninth Circuit's decision in *Demers v. Austin*, 746 F.3d 402 (9th Cir. 2014) did not contemplate a First Amendment academic freedom right that extends to direct violation of public university policy implementing duly enacted State law that does not speak to the content of academic instruction. *Cf. Demers,* 746 at 412 ("We conclude that *Garcetti* does not…apply to *teaching and academic writing*[.]") Yet, this is the sort of "right" Plaintiffs assert here. As before, they fail to carry their burden to establish a likelihood of success on the merits of a First Amendment claim.

C<small>ONCLUSION</small> & P<small>RAYER</small>

For the reasons set forth in their Response to Plaintiffs' Motion for Preliminary Injunction, the supplemental briefing provided on August 8, 2016, the UT Defendants respectfully move the Court to deny Plaintiffs' motion for the extraordinary remedy of a preliminary injunction.

**Dated this 10th day of August, 2016.**

**Respectfully submitted,**

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief, General Litigation Division

/s/ Anne Marie Mackin
AMANDA J. COCHRAN-MCCALL
Deputy Chief, General Litigation Division
Texas Bar No. 24069526
amanda.cochran-mccall@texasattorneygeneral.gov
ANNE MARIE MACKIN
Assistant Attorney General
Texas Bar No. 24078898

O<small>FFICE OF THE</small> A<small>TTORNEY</small> G<small>ENERAL</small>
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
(512) 463-2120
(512) 320-0667 *Facsimile*
anna.mackin@texasattorneygeneral.gov

A<small>TTORNEYS FOR</small> UT D<small>EFENDANTS</small>

## CERTIFICATE OF SERVICE

I hereby certify that on this the 10th day of August, 2016, a true and correct copy of the foregoing was filed electronically with the Court and delivered via the CM/ECF system to:

James George, Jr.
GEORGE, BROTHERS, KINCAID & HORTON LLP
114 W 7th Street, Ste. 1100
Austin, Texas 78701
512-495-1400
512-499-0094 Fax
State Bar No. 07810000
rjgeorge@gbkh.com

Malcolm Greenstein
GREENSTEIN & KOLKER
1006 E. Cesar Chavez Street
Austin, Texas 78702
512-472-6270
512-472-8263 Fax
State Bar No. 08403300
malcolm@greensteinandkolker.com

Renea Hicks
LAW OFFICE OF MAX RENEA HICKS
101 West 6th Street, # 504
Austin, Texas 78701
512-480-8231
512-480-9105
State Bar No. 09580400
rhicks@renea-hicks.com

**ATTORNEYS FOR PLAINTIFFS**

Prerak Shah
Senior Counsel to the Attorney General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697
Texas Bar No. 24075053
prerak.shah@texasattorneygeneral.gov

**ATTORNEY FOR DEFENDANT PAXTON**

/s/ Anne Marie Mackin
**ATTORNEY FOR UT DEFENDANTS**

11