UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DR. JENNIFER LYNN GLASS, *et al.*, *Plaintiffs*, | : : : | |
| v. | : : | No. 1:16cv845-LY |
| KEN PAXTON, *et al.*, *Defendants*. | : : : : | |

**PLAINTIFFS' RESPONSE TO UT DEFENDANTS' POST-HEARING SUPPLEMENTAL BRIEF**

Plaintiffs respond to the Post-Hearing Supplemental Brief of the UT Defendants (Doc. 41).

**I.   UT-AUSTIN'S GUNS-IN-THE-CLASSROOM POLICY AND THE PUNISHMENT FOR VIOLATING IT KEEPS SHIFTING, AND THE SHIFTS DEMONSTRATE WHY IT IS VOID-FOR-VAGUENESS.**

There now are at least three potential policies on campus carry that govern the UT-Austin campus and what Plaintiffs are specifically proscribed from doing on the question of guns in their classrooms. Each of the policies states the rules differently, and each emanates from a different source. Which is the true guide, and how are Plaintiffs to know? And, once they know, which specifically addresses their situation and the punishment for it?

First, there are the July 13th policies, initiated by President Fenves and ratified (with one modification) by the UT Regents. As modified, there are twenty-four policy statements. None addresses guns-in-the-classroom in any way. Nothing is said about the consequences of violating the policies.

Then, there is the July 14th Provost e-mail to faculty, specifically telling them that they cannot ban guns in the classroom. Unlike the July 13th policies, the Provost's statement is ex-

plicit: no ban on guns in the classroom, regardless of a professor's preference for how to run her classroom. Nothing is said about violating the policies.

Finally, there is the operating procedure, HOP 8-1060. It is undated, but it wasn't in existence until some point after July 14th. It is now represented to be "the one official campus carry policy at UT Austin." Supp. Br. 2. On the topic of guns in the classroom, it does not even mention classrooms and gives only indirect instruction, more specific than the July 13th policies but less than the July 14th Provost statement. It says that those licensed to carry may do so on campus except where "prohibited by law or by this policy." Nothing specific is said about violating the 8-1060 policy but, buried at the end as a "related" reference is a link to the faculty grievance process. Following the link for faculty grievances, a Regent's rule is cross-referenced that gives UT-Austin's President to exercise his discretion to institute proceedings for adverse employment actions against UT-Austin faculty for "good cause." "Good cause" is not defined.

The shifting reference point for the governing policies and the punishments that might attend them leaves Plaintiffs in the no-man's-land that the void-for-vagueness doctrine says is unconstitutional. It does not provide a person of reasonable intelligence a sufficiently clear guide for that person to know where to look for the legally-valid rule that must be followed and what the potential consequences would be of violating the rule. The shifts we have seen in the last month about what the policy is, along with the lack of a clear trail from whatever the rule is to the punishment for violating it, shows how susceptible it is to arbitrary and capricious enforcement. If the source of the rule changes on virtually a weekly basis, and the punishment for it is revealed at best only through a buried link in a "related references" section at the tail end

of the most recent rule iteration, it is not hard to see that the "good cause" basis for potential punishment is dangerously open-ended.[1]

Discerning the governing policy is made even more difficult because of the source of each policy statement. The July 13th policies emanated from the President and the Regents. Those officials are the ones with express statutory responsibilities under subsections (d-1) and (d-2) of Section 411.2031. The Provost's statement comes from an important UT-Austin official but most certainly not the President or the Regents. The HOP 8-1060 statement emanates from a bureaucratic arm of UT-Austin: the University Policy Office, which is an "administrative unit" that "coordinates policy lifecycle management with key policy owners." *See* https://www.policies.utexas.edu/about-us.

One would think that the July 13th policies are the governing ones under law. Subsection (d-2) of Section 411.2031 is clear: The President's policies as amended by the Regents on July 13th "are . . . considered to be those of the institution as established under Subsection (d-1)." These policies—the July 13th ones that the Texas Legislature has authorized UT-Austin's President

---

[1] The very phrases (with emphasis added) used to defend the policy and punishment betray its vagueness:

- "The policy . . . delineates where campus carry is prohibited, which necessarily *implies* where it is permitted[,]" Supp. Br. 1-2.

- Table 1 accompanying the brief "*helps alleviate* any confusion about what is the formal and final policy[.]" Supp. Br. 5.

- "UT Austin *believes* that banning licensees from carrying in classrooms would have the effect of generally prohibiting them from carrying on campus." Supp. Br. 5.

- [T]here is a *question of whether* a faculty member's actions could subject the University to . . . civil penalties." Supp. Br. 6.

- UT Austin's Handbook of Operating Procedures "vests the administration with the *discretion* to determine the appropriate discipline in a *particular factual scenario*." Supp. Br. 7.

- "[F]aculty members are *subject to* disciplinary procedures . . ., although the particular consequences depend upon the *specific facts involved*." Supp. Br. 8.

3

and Regents to impose, not the amended version published in the UT-Austin handbook by the University Policy Office—are the ones that, under Texas law, seem to govern Plaintiffs, other faculty, students, and administrative staff at UT-Austin.

If HOP 8-1060, with its different statement of the rule, is to govern Plaintiffs in their determinations about what they may and may not require or request in their classrooms with respect to the presence of concealed handguns, then it can only do so as part of the amendment process the Legislature has authorized for campus carry policies at public universities. But there is no evidence that the statutory amendment process has been followed. The third and fourth sentences of Subsection (d-1) provide:

> The president or officer may amend the provisions as necessary for campus safety. The provisions take effect as determined by the president or officer unless subsequently amended by the board of regents or other governing board under Subsection (d-2).

Assuming HOP 8-1060's articulation of where students may conceal carry on campus and in campus buildings is considered an amendment by President Fenves of the July 13th policies, subsection (d-2) indicates that they cannot take effect for ninety days from their establishment.[2] The new provision, specifically stating for the first time that licensed holders[3] may carry anywhere on campus that law or policy doesn't prohibit, could not have been established until some date—we've not been told when—after July 13th. The Board of Regents hasn't met since

---

[2] Reading the subsection (d-1) Presidential amendment process *in pari materia* with the subsection (d-2) process seems dictated not only by the specific (d-2) cross-reference in (d-1), but also by the structure of the process. It plainly contemplates that the Regents must be given at least an opportunity to review the President's policies. Otherwise, the President could amend at will without running afoul of the statutory scheme.

[3] Even scope of the term "licensed holders" is uncertain. Under Tex. Gov't Code § 411.173, Texas has entered into agreements with 43 other states, through either reciprocity or unilateral gubernatorial action, to recognize the right of licensees in those states to conceal carry in Texas. *See* https://www.txdps.state.tx.us/RSD/CHL/legal/reciprocity/index.htm. Some of the 43 states allow those under 21 to be licensed. Texas, in fact, does, too, in limited circumstances. Tex. Gov't Code § 411.172(g) (certain veterans). UT-Austin has a large number of out-of-state students and is bound to have some under-21 veterans. Thus, the universe of those eligible to conceal carry on the UT-Austin campus is larger than the 1% estimate provided by UT and includes some under 21.

then, so it has not been reviewed as provided by statute. In short, *if* HOP 8-1060 is meant to be the UT-Austin President's conceal carry policy under Texas statutes, it is not yet legally effective—and won't be by the start of classes on August 24th.

Next, the UT Defendants take the tack that, since they "believe" the exercise of by a professor of the option to exclude guns from her classroom would in effect be the same thing as generally prohibiting conceal carry on the UT-Austin campus, the option is banned clearly enough to survive a vagueness challenge. Supp. Br. 5-6. Whether a general rule, expressly stated in policies, that guns are not permitted in any UT-Austin classroom would constitute a general prohibition on carrying deadly weapons on campus may be subject to some debate. Going to class isn't the only thing students do on campus. But, aside from that debate, there is no way that *not* establishing a policy banning guns from all UT-Austin classroom and simply leaving the matter unaddressed (which is what the July 13th policies do) can constitute a general ban by UT-Austin's President of guns on campus.

The UT-Defendants try to buttress their position about what a general guns-on-campus ban would look like with the argument that an individual faculty member's position on guns in her specific classroom potentially could subject UT-Austin to penalties imposed through Attorney General action under Tex. Gov't Code § 411.209. Supp. Br. 6. But this argument is baseless. Even the UT Defendants don't seem to really buy into it. It is fully hedged, with an introductory reservation that it depends on "the particular facts" and the passive statement that "there is a question" about what this would mean. Ultimately, this argument adds nothing to UT-Austin's defense against Plaintiffs' vagueness challenge.

The UT Defendants' also make a thoroughly misleading argument that Section 46.03 of the Texas Penal Code somehow constitutes a Texas statute that UT Regents' rules obligate Plaintiffs to follow on pain of punishment by the President. Supp. Br. 6-7. Section 46.03 imposes no *requirement* on Plaintiffs and their decision about whether to permit guns in their classroom. It is a penal statute, and it makes it a crime to carry deadly weapons on campuses and other education institutions. Subsection (a)(1)(B) of Section 46.03[4] provides an exception to the criminal offense definition, limited to licensed concealed handguns. This simply removes a criminal penalty for guns in the classroom and anywhere else on campus, including the specific gun exclusion zones in the July 13th policies. It does not override either campus or individual faculty decisions about general rules for conduct on campus and in class.

The UT Defendants end their argument by stating that a faculty member "could be disciplined" for violating the concealed carry policy. Supp. Br. 7. The discipline is a discretionary matter, and, if exercised, must be based the broad phrase "good cause." As already explained, this is an egregiously open-ended threat of punishment, made even more problematic by the fact that there is nothing in what is rightly viewed as the official campus carry policies for UT-

---

[4] "(a)  A person commits an offense if the person intentionally, knowingly, or recklessly possesses or goes with a firearm, illegal knife, club, or prohibited weapon listed in Section 46.05(a):
   (1) on the physical premises of a school or educational institution, any grounds or building on which an activity sponsored by a school or educational institution is being conducted, or a passenger transportation vehicle of a school or educational institution, whether the school or educational institution is public or private, unless:
. . . .
     (B) the person possesses or goes with a concealed handgun that the person is licensed to carry under Subchapter H, Chapter 411, Government Code, and no other weapon to which this section applies, on the premises of an institution of higher education or private or independent institution of higher education, on any grounds or building on which an activity sponsored by the institution is being conducted, or in a passenger transportation vehicle of the institution[.]"

Austin—the July 13th policies—that speaks directly to the issue of what Plaintiffs can tell their students.[5]

## II. Granting a preliminary injunction based on the vagueness claim is the least intrusive manner of moving this case to trial while providing temporary relief to Plaintiffs.

A preliminary injunction based on Plaintiffs' likelihood of success on their void-for-vagueness challenge is the least intrusive route for the Court to protect the rights of Plaintiffs while this case moves to full trial on the merits while also honoring the opportunity of UT-Austin administrators to make carefully thought out decisions, consistent with not just federal law but also state law, special to their campus. The vagueness flaw in the UT-Austin's campus carry policy and litigation position is remediable. And it is probably advisable in any event. It is increasingly apparent that the UT-Austin has not fully and carefully worked through what is going to happen—practically, as well as in terms of what must and may happen—come August 24th. Its policies are a shifting mish-mash, adjusted as the moment demands.

No doubt, if the preliminary injunction issues and the UT-Defendants figure out in a few months how to solve the current vagueness problems in its campus carry rules, policies, and discipline, the other constitutional issues raised by Plaintiffs will remain. But at least they can be tried on a full record, with a clearer view of what the policies themselves are. UT-Austin has

---

[5] If the test is to be not what is explicit and clear, but only what is implicit, then account also must be taken of Section 2 of Regents' Rule 31004 which is headed "Freedom in the Classroom" and which states that "[f]aculty members are entitled to freedom in the classroom in discussing his or her subject." Historically, this freedom has been understood to encompass the concept of a professor's right to control his or her own classroom in terms of matters such as use of cell phones and other technology and no doubt would have included the right to tell students that they couldn't bring deadly weapons to class. This would would have to have been implicitly overruled by the implicit statement the UT Defendants seem to find in the July 13th policies about guns in the classroom. The attenuated logic necessary to reach a conclusion such as this is the heart of why there is such a thing as the void-for-vagueness doctrine.

been around for 133 years.[6] Its faculty has never been forced to allow guns in their classrooms and, until July 14th at the earliest, never before been expressly told that, their freedom to control their classrooms notwithstanding, they are prohibited on pain of being disciplined from keeping loaded guns out of their classrooms. Waiting another three months to possibly force that new, unprecedented imposition into place cannot realistically be thought to work any harm to the interests of Texas's flagship university.

        Respectfully submitted,

GEORGE, BROTHERS, KINCAID & HORTON LLP

/s/R. James George, Jr.
    R. James George, Jr.
    State Bar No. 07810000
114 West 7th Street, Suite 1100
Austin, Texas 78701
(512) 495-1400
(512) 499-0094 *facsimile*
rjgeorge@gbkh.com


GREENSTEIN & KOLKER

By:   /s/ *Malcolm Greenstein*
    Malcolm Greenstein
    State Bar No.08403300
1006 E. Cesar Chavez Street
Austin, Texas 78702
malcolm@greensteinandkolker.com
Telephone:  (512) 472-6270
Facsimile:   (512) 472-8263

   /s/ *Renea Hicks*
Renea Hicks
Texas Bar No. 09580400
LAW OFFICE OF MAX RENEA HICKS
101 West 6th Street, Suite 504
Austin, Texas 78701

---

[6] https://utexas.edu/about/history-and-traditions

                  (512) 480-8231
                  fax (512) 480-9105
                  rhicks@renea-hicks.com

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of August, 2016, I served a true and correct copy of the foregoing pleading on all counsel of record through the Court's CM/ECF system.

                __/s/ Renea Hicks_____
                Max Renea Hicks