IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

2016 AUG 22  PM 4: 53

DM

| | |
|---|---|
| DR. JENNIFER LYNN GLASS, DR. LISA MOORE, AND DR. MIA CARTER,<br>　　　　　PLAINTIFFS,<br><br>V.<br><br>KEN PAXTON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF TEXAS, GREGORY L. FENVES, IN HIS OFFICIAL CAPACITY AS PRESIDENT, UNIVERSITY OF TEXAS AT AUSTIN, AND PAUL L. FOSTER, R. STEVEN HICKS, JEFFERY D. HILDEBRAND, ERNEST ALISEDA, DAVID J. BECK, ALEX M. CRANBERG, WALLACE L. HALL, JR., BRENDA PEJOVICH, SARA MARTINEZ TUCKER, AND VARUN P. JOSEPH, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE UNIVERSITY OF TEXAS BOARD OF REGENTS,<br>　　　　　DEFENDANTS. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§　CAUSE NO. 1:16-CV-845-LY |

## ORDER ON MOTION FOR PRELIMINARY INJUNCTION

Before the court are is Plaintiffs' Application for Preliminary Injunction filed July 22,

2016 (Clerk's Doc. No. 20), Plaintiffs' Memorandum in Support of Application for Preliminary

Injunction filed July 22, 2016 (Clerk's Doc. No. 21), Plaintiffs' Supplement to Application for

Preliminary Injunction filed July 26, 2016 (Clerk's Doc. No. 24), Defendant Ken Paxton's

Response to Application for Preliminary Injunction filed August 1, 2016 (Clerk's Doc. No. 27),

UT Defendants' Response to Plaintiff's Application for Preliminary Injunction filed August 1,

2016 (Clerk's Doc. No. 28), Plaintiffs' Reply to Responses to Application for Preliminary

Injunction filed August 3, 2016 (Clerk's Doc. No. 34), the Joint Proposal On Preliminary

Injunction Matters filed July 20, 2016 (Clerk's Doc. No. 16), Amended Exhibits for Joint Proposal on Preliminary Injunction Matters filed August 4, 2016 (Clerk's Doc. No. 35), Plaintiffs' Supplemental Memorandum in Support of Application for Preliminary Injunction filed August 8, 2016 (Clerk's Doc. No. 38), UT Defendants' Post-Hearing Supplemental Brief filed August 8, 2016 (Clerk's Doc. No. 41), Defendant Ken Paxton's Response to Plaintiffs' Supplemental Memorandum in Support of the Motion for Preliminary Injunction filed August 10, 2016 (Clerk's Doc. No. 50), UT Defendants' Response to Plaintiffs' Supplemental Memorandum in Support of Application for Preliminary Injunction filed August 10, 2016 (Clerk's Doc. No. 52), and Plaintiffs' Response to UT Defendants' Post-Hearing Supplemental Brief filed August 10, 2016 (Clerk's Doc. No. 53). On August 4, 2016, the court conducted a hearing on Plaintiffs' Application for Preliminary Injunction at which all parties were represented by counsel.

Having reviewed the motion, responses, reply, argument of counsel, exhibits, post-hearing briefs, applicable law, and case file, the court will deny the motion for preliminary injunction for the reasons to follow. In doing so, the court reaches only Plaintiffs' request for immediate relief and makes no final ruling on any asserted issue.

## I. BACKGROUND

In 2015, the Texas Legislature enacted Senate Bill 11, which established new rules for carrying handguns on the campuses of institutions of higher education in Texas. The Governor of Texas signed the measure on June 13, 2015, and it became effective on August 16, 2016. Senate Bill 11 provides, *inter alia*,

> A license holder[1] may carry a concealed handgun on or about the license holder's person while the license holder is on the campus of an institution of higher education…in this state. . . . After consulting with students, staff, and faculty of the institution regarding the nature of the student population, specific safety considerations, and the uniqueness of the campus environment, the president or other chief executive officer of an institution of higher education in this state shall establish reasonable rules, regulations, or other provisions regarding the carrying of concealed handguns by license holders on the campus of the institution or on premises located on the campus of the institution. The president or officer may not establish provisions that generally prohibit or have the effect of generally prohibiting license holders from carrying concealed handguns on the campus of the institution.

Tex. Gov't Code § 411.2031(d-1) ("Campus Carry Law").

Under the Campus Carry Law, Defendant Gregory L. Fenves, President of The University of Texas at Austin (the "University") established a working group made up of faculty, staff, students, an alumnus, a parent, and University administrators to recommend rules and regulations regarding the carrying of concealed handguns by license holders on campus. The working group submitted a final report to President Fenves in December 2015, containing 25 policy recommendations specifying how handguns should be carried and stored, identifying gun-exclusion zones, and describing the working group's consultation process and the rationale behind the recommendations ("Campus Carry Policy Working Group Report"). President Fenves accepted the report and provided the policy statements to the Board of Regents of University of Texas System ("Board of Regents") on February 17, 2016. The Board of Regents amended the policy statements at a July 13, 2016 meeting. The policy statements, as amended by the Board of Regents, are memorialized in the University's Handbook of Operating Procedures 8-1060, and took effect on August 1, 2016 ("Campus Carry Policy").

---

[1] To become a "license holder," an individual must meet the requirements set out in Texas Government Code Section 411.172 and submit an application to the Texas Department of Public Safety. Tex. Gov't Code § 411.174.

Plaintiffs Dr. Jennifer Lynn Glass, Dr. Lisa Moore, and Dr. Mia Carter, professors at the University, now seek a preliminary injunction against President Fenves and the members of the Board Of Regents (the "University Defendants"), as well as the Attorney General of Texas, Ken Paxton, arguing the Campus Carry Law and Policy violate their First Amendment right of academic freedom, the Equal Protection Clause of the Fourteenth Amendment, and the Due Process Clause of the Fourteenth Amendment. U.S. Const. amend. I, XIV.

## II. APPLICABLE LAW

A preliminary injunction is an "extraordinary remedy." *See Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 536 (5th Cir. 2013). To secure a preliminary injunction, the movant must establish: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury that would result if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *See Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). This extraordinary remedy should not be granted unless the party seeking it has "clearly carried the burden of persuasion on *all* four requirements." *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009) (emphasis added) (quoting *Lake Charles Diesel, Inc. v. General Motors Corp.*, 328 F.3d 192, 195-96 (5th Cir. 2003)).

## III. ANALYSIS

### *Due-Process Claim*

Plaintiffs argue that the Campus Carry Policy violates the Due Process Clause of the Fourteenth Amendment because, to the extent the Policy imposes a penalty on professors at the University for prohibiting handguns in their classrooms, the Policy is unconstitutionally vague.

A law must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  In a civil action, a law is void for vagueness only if it "commands compliance in terms so vague and indefinite as really to be no rule or standard at all" or if it is "substantially incomprehensible." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 507 (5th Cir. 2001) (internal citation omitted); *see also Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 ("The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.").

The Campus Carry Policy states that "[i]ndividuals licensed to carry [a handgun] may do so on campus except in locations and at activities prohibited by law or by this policy."  The court finds that a person of ordinary intelligence would understand if a professor were to communicate to her class that individuals licensed to carry handguns may not carry a handgun in her classroom, such communication would be a misrepresentation of and in contravention to the Campus Carry Policy.  Further, the University's Handbook of Operating Procedures 5-2420 gives professors, such as Plaintiffs here, notice that disciplinary action may be imposed for unacceptable conduct, including "violation of policies or rules of the institution or The University of Texas System."  The provision further describes the specific process for disciplinary action, including a hearing before discipline is imposed and an appeal process.

The court concludes that the Campus Carry Policy does not fail for unconstitutional vagueness.

***First-Amendment Claim***

Plaintiffs argue that the Campus Carry Law and Policy infringe on their First Amendment right of academic freedom. The court must determine the extent of any right of academic freedom Plaintiffs possess[2], and whether any such right is sufficient to overcome the decision of the Texas Legislature and Board of Regents that a student who is licensed to carry a handgun may do so in a public-university classroom.

"Our Nation is deeply committed to safeguarding academic freedom, which is of transcendent value to all of us and not merely to the teachers concerned." *Keyishian v. Board of Regents of University of New York*, 385 U.S. 589, 603 (1967). "That freedom is therefore a special concern of the First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom." *Id.* (invalidating state laws that made "treasonable or seditious words or acts" grounds for removal from state employment and barred from employment in public school system any person advocating forcible overthrow of government). It is significant to note at the outset that the Supreme Court has linked any right of academic freedom to the First Amendment's guarantee of free speech. *See id.*

In *University of Pennsylvania v. EEOC*, the university argued that EEOC subpoenas of the university's peer-review materials pertinent to charges of discrimination in tenure decisions placed a burden on the peer-review process that violated its First Amendment right of academic freedom. *See* 493 U.S. 182, 188 (1990). The university asserted that allowing the subpoenas would have a "chilling effect" on candid evaluations and discussions of candidates, "impair[] the

---

[2] Defendants assert that the Supreme Court has recognized a right of academic freedom under the First Amendment only with regard to educational institutions, and Plaintiffs therefore do not individually possess a right of academic freedom. The court will assume without deciding for purposes of preliminary injunctive relief that Plaintiffs do have a right of academic freedom under the First Amendment. Final determination of whether there is an individual right of academic freedom will await later determination by the court.

free interchange of ideas that is a hallmark of academic freedom" and that the "quality of instruction and scholarship [would] decline" as a result. *Id*. at 197. The Court noted that the university did not allege that the EEOC subpoenas were "intended to or will in fact direct the content of university discourse toward or away from particular subjects or points of view" and that the "burden of which the University complains is neither content-based nor direct." *Id*. at 198-99. The Court therefore concluded that the "burden of which the University complains does not fit within any recognized right of academic freedom" and declined to extend the First Amendment to encompass the university's claim. *Id*. at 199; *see also Keyishian*, 385 U.S. at 603; *Sweezy v. N.H.*, 354 U.S. 234, 250 (1957) ("Mere unorthodoxy or dissent from the prevailing mores is not to be condemned.").

Similarly in this case, neither the Campus Carry Law nor the Campus Carry Policy is a content-based regulation of speech, nor can either reasonably be construed as a direct regulation of speech. Plaintiffs assert that classroom discussion will be "circumscribed by the near-certain presence of loaded guns" and that their ability to "make [their classrooms] truly a marketplace for the robust exchange of ideas will be impaired." They argue that they are now "incentivized to err on the side of 'trimming their sails,' academically speaking, when they push for classroom debate." Perhaps they are correct. But the Campus Carry Law and Policy do not direct Plaintiffs either toward or away from any particular subject or point of view. *See Univ. of Pa.*, 493 U.S. at 198. The provisions do not prohibit, require, or even mention any form of speech by professors of the University. The burden of which Plaintiffs complain therefore does not fit within any recognized right of academic freedom. *See id.* at 199.

The court has searched the jurisprudence of this country from the ratification of the Constitution forward and has found no precedent for Plaintiffs' proposition that there is a right of

academic freedom so broad that it allows them such autonomous control of their classrooms—both physically and academically—that their concerns override decisions of the legislature and the governing body of the institution that employs them.  Their First Amendment claim is and must be bottomed on their right to speak and teach freely.  Neither the Campus Carry Law nor the Campus Carry Policy forbids them from doing so.  This is fatal to their attempt at this stage in the proceedings to establish a substantial likelihood that their case will succeed on the merits.

### *Equal-Protection Claim*

Finally, Plaintiffs argue that the Campus Carry Law and Policy violate the Equal Protection Clause of the Fourteenth Amendment.  The Campus Carry Law allows private and independent institutions of higher education in Texas to "establish rules, regulations, or other provisions prohibiting license holders from carrying handguns on the campus of the institution...." Tex. Gov't Code § 411.2031(e).  Plaintiffs assert that there is no rational basis for requiring professors at public universities to allow licensees to carry handguns in classrooms, when professors at private universities are not subject to the same requirement.  Further, Plaintiffs argue that there is no rational basis for the Campus Carry Policy to exclude handguns from some areas on campus but not others.

"[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).  Under the rational-basis test, a law that "neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.*; *see also Reid v. Rolling Fork Pub. Util. Dist.*, 979 F.2d 1084, 1087 (5th Cir. 1992) ("[T]he decision of a

governmental body does not violate the equal protection guarantees if there is any basis for the action that bears a debatably rational relationship to a conceivable legitimate governmental end."); *see also Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) ("A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification."); *Beach Commc'ns*, 508 U.S. at 315 ("[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.").

"The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and…judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Id.* at 314; (quoting *Vance v. Bradley*, 440 U.S. 93, 97 (1979)).

The Attorney General asserts that the legitimate governmental interest for the Campus Carry Law is to permit citizens who are licensed to carry concealed handguns to do so for purposes of self-defense, and the rationale for allowing private universities to opt-out of the requirement to permit licensed citizens to carry concealed handguns is the state's legitimate interest in respecting private-property rights. *See McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 785 (2010) ("[S]tate and local experimentation with reasonable firearms regulations will continue under the Second Amendment.").

The court concludes at this stage in the proceedings that requiring public universities to allow licensed individuals to carry concealed handguns is a basis for the Campus Carry Law that bears a debatably rational relationship to the conceivable legitimate governmental end of enabling individuals to defend themselves. *See Reid*, 979 F.2d at 1087.   Further, the court concludes that allowing private universities to prohibit concealed carry by licensed individuals

bears a rational relationship to the legitimate governmental interest of respecting the private-property rights of private universities.

Finally, the University Defendants assert that the University's exclusion of handguns from some areas although the University allows them in classrooms and other areas furthers the University's interest in promoting safety on campus and following the requirements of state law. The University Defendants point to the Campus Carry Policy Working Group Report, which explains that "[t]he primary on-campus activity for most of our more than 50,000 students is going to class. Excluding handguns from classrooms would have the effect of generally prohibiting license holders from carrying their handguns and so would violate [the Campus Carry Law]." The Report also provides comments explaining the rationale behind the exclusion zones adopted by the University. For example, the occupant of an office to which the occupant has been solely assigned may prohibit the concealed carry of handguns in that office because the occupant of an office to which the occupant has been solely assigned has traditionally been vested with substantial control over his or her office space. *See e.g., O'Connor v. Ortega*, 480 U.S. 709 (1987). And concealed carry of handguns is prohibited in areas where the discharge of a firearm might cause great harm, such as laboratories with extremely dangerous chemicals, biologic agents, or explosive agents because, as the Report explains, the training required for handgun license holders does not include special training regarding the safe use of weapons in such facilities, and the accidental or purposeful discharge of a weapon in such a facility could cause grave and catastrophic harm. The Campus Carry Policy's allowance of the licensed concealed carrying of handguns in some areas on campus but not others does not violate the Equal Protection Clause because they are rationally related to the University's legitimate

interests of complying with the Campus Carry Law and promoting safety on campus as explained in the Report. *See Reid*, 979 F.2d at 1087.

It appears to the court that neither the Texas Legislature nor the Board of Regents has overstepped its legitimate power to determine where a licensed individual may carry a concealed handgun in an academic setting. The court concludes that Plaintiffs have failed to establish a substantial likelihood of success on their equal-protection claim under the Fourteenth Amendment.

## IV. CONCLUSION

Because Plaintiffs at this time have failed to establish a substantial likelihood of ultimate success on the merits of their asserted claims, their request for immediate relief must fail. The court therefore need not and does not reach the remaining requirements for granting a preliminary injunction. *Bluefield*, 577 F.3d at 253 ("[A] preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements."). Accordingly,

**IT IS ORDERED** that Plaintiffs' Application for Preliminary Injunction (Clerk's Doc. No. 20) is **DENIED**.

SIGNED this *22nd* day of August, 2016.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE