UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **DR. JENNIFER LYNN GLASS, et al.,**<br>*Plaintiffs*,<br><br>v.<br><br>**KEN PAXTON, et al.**<br>*Defendants*. | Case No. 1:16-cv-845-LY |

# DEFENDANT KEN PAXTON'S REPLY IN SUPPORT OF THE MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

PRERAK SHAH
Senior Counsel to the Attorney General
Texas Bar No. 24075053

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 001)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697
prerak.shah@texasattorneygeneral.gov

COUNSEL FOR DEFENDANT KEN PAXTON

# Table of Contents

Page

Table of Authorities ................................................................................................................. iii

Argument ....................................................................................................................................1

    I.    Count One: First Amendment Academic Freedom Claim. .............................................1

        A.    There is No Individual Right to Academic Freedom. ..............................................1

        B.    Plaintiffs Can Identify No State Action That Is Violating Their Rights. .................3

        C.    The Alleged Violation Is Neither Direct Nor Content-Based. ................................4

        D.    The Plaintiffs' First Amendment Rights Are Not Infringed by Allowing Licensed Adults to Conceal Carry Handguns in a Classroom. ...............................5

        E.    Important Governmental Interests Justify Any Potential Effect on Plaintiffs' Speech. ...................................................................................................6

    II.    Count Two: Second Amendment Claim. .........................................................................6

    III.    Count Three: Fourteenth Amendment Equal Protection Claim. .....................................7

    IV.    Count Four: Alternative First and Second Amendment Claims. ....................................8

Conclusion ..................................................................................................................................9

Certificate of Service ................................................................................................................10

## Table of Authorities

Page(s)

**Cases**

*Bishop v. Aronov*,
   926 F.2d 1066 (11th Cir. 1991) ................................................................................. 2

*Borden v. Sch. Dist. of Twp. of E. Brunswick*,
   523 F.3d 153 (3d Cir. 2008) ....................................................................................... 1

*Bradley v. Pittsburgh Bd. of Educ.*,
   910 F.2d 1172 (3d Cir. 1990) ..................................................................................... 1

*Cooksey v. Futrell*,
   721 F.3d 226 (4th Cir. 2013) ...................................................................................... 5

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) .................................................................................................. 6

*Hillis v. Stephen F. Austin State Univ.*,
   665 F.2d 547 (5th Cir. 1982) ................................................................................. 2, 3

*Johnson-Kurek v. Abu-Absi*,
   423 F.3d 590 (6th Cir. 2005) ..................................................................................... 1

*Keyishian v. Board of Regents*,
   385 U.S. 589 (1967) .................................................................................................. 2

*Kingsville ISD v. Cooper*,
   611 F.2d 1109 (5th Cir. 1980) ................................................................................... 2

*Laird v. Tatum*,
   408 U.S. 1 (1972) ...................................................................................................... 5

*Reid v. Rolling Fork Pub. Util. Dist.*,
   979 F.2d 1084 (5th Cir. 1992) ................................................................................... 8

*St. Joseph Abbey v. Castille*,
   712 F.3d 215 (5th Cir. 2013) ..................................................................................... 7

*Sweezy v. State of N.H.*,
   354 U.S. 234 (1957) .................................................................................................. 2

*Univ. of Pa. v. E.E.O.C.*,
   493 U.S. 182 (1990) .................................................................................................. 2

**Statutes**

U.S. Const. amend. II .......................................................................................................... 7

# ARGUMENT

## I.  Count One: First Amendment Academic Freedom Claim.

There are several flaws with Plaintiffs' academic freedom claim, each of which is independently fatal and warrants dismissal. Nothing in their response solves any of those flaws.

### A.  There is No Individual Right to Academic Freedom.

Neither the U.S. Supreme Court nor the U.S. Court of Appeals for the Fifth Circuit has ever recognized an individual right to academic freedom. Moreover, every circuit to squarely address this question has rightfully concluded that there is no individual right to academic freedom. *See* Paxton Mot. to Dismiss at 3-7 (explaining that the Third, Fourth, Sixth, and Eleventh Circuits have explicitly held that there is no individual right to academic freedom).[1]

---

[1] Plaintiffs actually attempt to cast doubt on the holdings of these cases, despite their plain language. Resp. at 18. Perhaps the most incredible example of Plaintiffs floundering on this point is their claim that the en banc Fourth Circuit's decision in *Urofsky v. Gilmore* does not support the Attorney General's argument. The court in *Urofsky* could not have been more clear: "Our review of the law, however, leads us to conclude that to the extent the Constitution recognizes any right of 'academic freedom' above and beyond the First Amendment rights to which every citizen is entitled, the right inheres in the University, not in individual professors." 216 F.3d 401, 410 (4th Cir. 2000) (en banc). The same is true of Plaintiffs' other attempts at distinguishing the mountain of case law against them. They claim *Bradley v. Pittsburgh Bd. of Educ.,* 910 F.2d 1172 (3d Cir. 1990) is distinguishable because it concerns high schools and does not speak to the scope of the right to academic freedom—but no case has suggested that a university instructor has more of a right to academic freedom than an high school instructor; and the scope of the right to academic freedom is not at issue here, but rather who can assert the right at all. Plaintiffs next claim that *Johnson-Kurek v. Abu-Absi* recognizes an individual right to academic freedom when it literally says the opposite: "'[T]o the extent the Constitution recognizes any right of 'academic freedom' above and beyond the First Amendment rights to which every citizen is entitled, the right inheres in the University, not in individual professors.'" 423 F.3d 590, 593 (6th Cir. 2005) (citation omitted). Plaintiffs also claim that *Borden v. Sch. Dist. of Twp. of E. Brunswick*, 523 F.3d 153, 172 (3d Cir. 2008), does not harm their cause because it concerns high school and recognizes that in-class conduct can be protected—again, there is no case law difference between university instructors and high school instructors and the issue is not what is protected by the right, but who may assert it. Finally, Plaintiffs do not even attempt to distinguish the

Plaintiffs rely almost exclusively on *Keyishian v. Bd. Of Regents of Univ. of N.Y.*, 385 U.S. 589 (1967), and *Sweezy v. State of N.H.*, 354 U.S. 234 (1957), but neither of those cases recognized an individual right. As the Supreme Court later explained in *University of Pennsylvania. v. E.E.O.C.*: "In *Keyishian,* for example, government was attempting to *substitute* its teaching employment criteria for those already in place at the academic *institutions*, directly and completely usurping the discretion of each *institution*." 493 U.S. 182, 198 (1990) (emphasis added and in original). The same is true with *Sweezy*: "When weighed against the grave harm resulting from governmental intrusion into the intellectual life *of a university,* [the] justification for compelling a witness to discuss the contents of his lecture appears grossly inadequate." 354 U.S. at 261 (Frankfurter, J., concurring in the result) (emphasis added). As the Fourth Circuit explained: "The right recognized by Justice Frankfurter, however, was not the individual right claimed by Appellees, but rather an institutional right belonging to the University of New Hampshire." *Urofsky v. Gilmore*, 216 F.3d 401, 412 (4th Cir. 2000).

Plaintiffs also point to two Fifth Circuit decisions that they claim support their view that there is an individual right to academic freedom: *Kingsville ISD v. Cooper,* 611 F.2d 1109 (5th Cir. 1980), and *Hillis v. Stephen F. Austin State Univ.*, 665 F.2d 547 (5th Cir. 1982). Neither case does anything of the sort. *Kingsville ISD* did not concern a violation of the right to academic freedom, but rather a general claim that an individual's First Amendment had been violated by governmental action. By contrast, Plaintiffs here have specifically raised a claim of a violation to the

---

Eleventh Circuit's decision on this point. *See Bishop v. Aronov*, 926 F.2d 1066, 1075 (11th Cir. 1991) ("Though we are mindful of the invaluable role academic freedom plays in our public schools, particularly at the post-secondary level, we do not find support to conclude that academic freedom is an independent First Amendment right.").

2

right of academic freedom, not a general First Amendment claim (likely because they require the academic freedom element, because otherwise their status as state university employees acting in their official capacity in classrooms would permit restrictions on speech such as this one). And *Hillis* only states that there is potentially a right to academic freedom for which "roots have been found in the first amendment insofar as it protects against infringements on a teacher's freedom concerning classroom content and method." *Hillis*, 664 F.2d at 553. Plaintiffs appear to fundamentally misunderstand the argument they are attempting to rebut. The issue is not whether there is a right to academic freedom at all, one that protects a teacher's curriculum and classroom discussion, but rather who may assert that right. On that, the case law is clear: only the institution, not an individual instructor, can assert it.[2]

### B. Plaintiffs Can Identify No State Action That Is Violating Their Rights.

Plaintiffs misunderstand the state action doctrine's application to this case. Recall the injury Plaintiffs are complaining of: their right to academic freedom is violated when an individual carries a handgun in class, because the presence of a handgun will cause them to censor their speech. That action causes the alleged injury and it is not fairly traceable to the state.

Plaintiff's own language reveals this confusion: "First comes the university compulsion to allow gun-toting students into the classroom, then the students' personal decisions about wheth-

---

[2] Plaintiffs also focus part of their response on trying to prove that the "right to academic freedom extends to discussion and debate in college classrooms." Resp. at 8. Perhaps it does. But that's not at issue here. The problem Plaintiffs face is not the scope of the right, but who may assert it. Even if the right to academic freedom protects discussion and debate in classrooms from improper governmental action, it is the institution that has a right to assert against the government, not an individual professor with a right to assert against the institution.

3

er to attend and bring a gun." But as explained in the motion to dismiss, there is no affirmative "compulsion to allow" guns in the classrooms:

> If the government did absolutely nothing, there would be no laws prohibiting the carrying of handguns anywhere, including in classrooms. But Texas has chosen to pass laws that regulate the carrying of handguns in certain situations, including completely prohibiting the carrying of handguns in certain places. Texas has now decided not to apply that complete ban to classrooms. That is not government action; that is government inaction. Essentially, Plaintiffs here are not complaining about state action—they are *seeking* state action. They are asking the State of Texas to pass a law that prohibits the carrying of handguns on government property, because otherwise no such prohibition would exist.

Paxton Mot. at 8 n.4. Plaintiffs should remember that these are not "their" classrooms; this is government property and the State has chosen not to pass a law banning handguns on this part of their property. But the decision to actually bring a handgun, the decision that supposedly violates Plaintiffs' rights, is one made by a private citizen, not the State.

### C.  The Alleged Violation Is Neither Direct Nor Content-Based.

Plaintiffs argue that a First Amendment violations can occur even when the government action is neither direct nor content-based. Resp. at 10-16. That is obviously correct. But Plaintiffs seem to forget that they are not raising a garden-variety First Amendment claim; they are raising a claim that their First Amendment right to academic freedom in classroom discussions has been violated. And on that, this Court had it exactly right when it denied Plaintiffs' motion for preliminary injunction:

> The court has searched the jurisprudence of this country from the ratification of the Constitution forward and has found no precedent for Plaintiffs' proposition that there is a right of academic freedom so broad that it allows them such autonomous control of their classrooms both physically and academically that their concerns override decisions of the legislature and the governing body of the institution that employs them. Their First Amendment claim is and must be bottomed on their right to speak and teach freely. Neither the Campus Carry Law nor the Campus Carry Policy forbids them from doing so.

4

Order on PI at 7. *See also* Paxton Mot. at 8-9.

### D. The Plaintiffs' First Amendment Rights Are Not Infringed by Allowing Licensed Adults to Conceal Carry Handguns in a Classroom.

Plaintiffs' allegations, even if they are true as to their own personal beliefs, are insufficient as a matter of law to establish a violation of the First Amendment. As noted in the motion to dismiss, subjective or speculative accounts of a chilling effect are not sufficient. *See Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."). Rather, government action will only be deemed "chilling when it is likely to deter a person of *ordinary firmness* from the exercise of First Amendment rights." *Cooksey v. Futrell*, 721 F.3d 226, 236 (4th Cir. 2013) (emphasis added and citation omitted).

Here, it is not objectively reasonable for Plaintiffs to self-censor themselves based on their belief that their words will result in violent reprisals from individuals who are lawfully present in their classrooms and have been licensed to carry concealed handguns. After all, concealed carry is permitted statewide and Texans continue to enjoy the right to speak publically on any number of controversial topics. And states such as Colorado and Utah have long allowed the carrying of concealed weapons in university classrooms, with no evidence of violence or chilled speech resulting from that decision. It is simply not objectively reasonable for Plaintiffs to alter their classroom conduct based on their belief that a licensed concealed carry holder will attack them as a result of their speech.

### E. Important Governmental Interests Justify Any Potential Effect on Plaintiffs' Speech.

Plaintiffs' only response to the argument that any potential effect on their First Amendment rights is justified due to an important governmental interest is that it cannot be used to prevail on a motion to dismiss, because the government must produce affirmative evidence of their governmental interest. But they cite no case establishing such an evidentiary requirement; the caselaw they cite only states that it is the government's burden to *prove* that interest.

Here, that proof is met without the need for any affirmative evidence, allowing for dismissal at this stage in the proceedings. As the motions to dismiss explains, allowing concealed carry in classrooms furthers a well-recognized, important governmental interest: public safety, an individual's right to self-defense, and an individual's Second Amendment rights. The government's decision to allow concealed carry in classrooms is unrelated to the suppression of free expression—even Plaintiffs only allege an indirect effect on their free expression. And the impact on free expression is no greater than is necessary to further the important government interest—not allowing students to conceal carry in classrooms would largely prevent students from ever carrying handguns on campus, which would obliterate the important government interest at stake.

Accordingly, allowing licensed adults to conceal carry in classrooms does not violate the First Amendment.

## II. Count Two: Second Amendment Claim.

There is nothing in Plaintiffs' response to the motion to dismiss that warrants a reply on their Second Amendment claim, because they simply fail to grapple with the basic flaw in their argument. As *Heller* explained, "a prefatory clause does not limit or expand the scope of the operative clause." *District of Columbia v. Heller*, 554 U.S. 570, 578 (2008). Only an operative clause

actually *does* anything; the prefatory clause merely "announces a purpose" and accordingly can be used to understand how the operative clause should be interpreted. *Id.* Here, the plain text of the Second Amendment leaves no room for doubt: the operative clause only *prevents* the government from infringing the right to bear arms—it does not *require* the government to infringe the right to bear arms, as Plaintiffs here are seeking. *See* U.S. Const. amend. II ("A well regulated Militia, being necessary to the security of a free State, *the right of the people to keep and bear Arms, shall not be infringed.*" (emphasis added)).

### III. Count Three: Fourteenth Amendment Equal Protection Claim.

Plaintiffs admit that their quest to defeat rational basis is challenging. They argue, however, that they nonetheless can defeat a motion to dismiss because they are entitled to produce evidence to poke holes in the government's rational basis. But Plaintiffs badly misunderstand the applicable precedent. It is not sufficient to produce evidence generally disagreeing with the government's decision. Rather, as the Fifth Circuit recently explained in *St. Joseph Abbey v. Castille*, a plaintiff must put forward evidence to demonstrate that the law does not fit the rational basis offered in support of it. 712 F.3d 215, 223 (5th Cir. 2013).

Here, the evidence that Plaintiffs wish to offer does not negate the stated governmental rational or suggest that the governmental action does not further that rationale. Rather, they are disagreeing with how the government is doing what it does, and arguing that the government has other options available to do it. *See, e.g.*, Resp. at 19-20. But none of that defeats the government's rational basis, as a matter of law.

Specifically, Plaintiffs dispute this Court's recognition that there is a rational basis to distinguish between classrooms and laboratories with dangerous chemicals, Order on PI at 10, because

"there is no real indication that UT's statement about this is accurate" since "a fired weapon's damage could be at least as catastrophic" in a classroom as in a laboratory with dangerous chemicals, Resp. at 24. But that factual dispute cannot serve as grounds to defeat rational basis: "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993); *see also id.* at 313 (rational basis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices").

Moreover, Plaintiffs do not even attempt to plead facts that would dispute one of the rational bases for allowing concealed carry in classrooms but not other areas of campus—namely, the legislature's goal of allowing students the right to defend themselves on campus by not "generally prohibit[ing]" campus carry is satisfied by allowing concealed carry in classrooms without also requiring concealed carry in other areas of campus.

In other words: Plaintiffs' claim must be dismissed because, even assuming every single well-pled factual allegation in their Amended Complaint was true, they still cannot defeat the rational basis for allowing . *See, e.g.*, *Reid v. Rolling Fork Pub. Util. Dist.*, 979 F.2d 1084, 1087 (5th Cir. 1992) ("[T]he decision of a governmental body does not violate the equal protection guarantees if there is any basis for the action that bears a debatably rational relationship to a conceivable legitimate governmental end.").

## IV. Count Four: Alternative First and Second Amendment Claims.

It is difficult to formulate a reply on this count, because it is unclear precisely what relief Plaintiffs are seeking in their "alternative claim for disclosure of those with handguns in the classroom." Resp. at 25. Surely they are not asking for this Court to issue an order requiring stu-

8

dents (i.e., private citizens not before this Court) to respond truthfully to questions asked by their university professors. And if Plaintiffs are not requesting such an order, what precisely are they requesting as relief for this "claim"? General Paxton has already agreed that no law currently prevents Plaintiffs from asking their students whether they are carrying a concealed handgun or not. But at the same time, there is no conceivable First or Second Amendment authority that would require the students to respond to Plaintiffs at all, let alone respond truthfully.

## Conclusion

The Court should dismiss the Amended Complaint.

>Respectfully submitted.
>
>KEN PAXTON
>Attorney General of Texas
>
>JEFFREY C. MATEER
>First Assistant Attorney General
>
>BRANTLEY STARR
>Deputy First Assistant Attorney General
>
>/s/ Prerak Shah
>PRERAK SHAH
>Senior Counsel to the Attorney General
>Texas Bar No. 24075053
>
>OFFICE OF THE ATTORNEY GENERAL
>P.O. Box 12548 (MC 001)
>Austin, Texas 78711-2548
>Tel.: (512) 936-1700
>Fax: (512) 474-2697
>prerak.shah@texasattorneygeneral.gov
>
>COUNSEL FOR DEFENDANT KEN PAXTON

## CERTIFICATE OF SERVICE

On October 20, 2016, this Reply in Support of the Motion to Dismiss the First Amended Complaint was served on the following counsel of record for all parties via the Court's CM/ECF filing system:

| | |
|---|---|
| James George, Jr.<br>GEORGE, BROTHERS, KINCAID & HORTON LLP<br>114 West 7th Street, Suite 1100<br>Austin, Texas 78701 | Amanda J. Cochran-Mccall<br>Anne Marie Mackin<br>OFFICE OF THE ATTORNEY GENERAL<br>GENERAL LITIGATION DIVISION<br>P.O. Box 12548, Capitol Station<br>Austin, TX 78711-2548 |
| Malcolm Greenstein<br>GREENSTEIN & KOLKER<br>1006 E. Cesar Chavez Street<br>Austin, Texas 78702 | COUNSEL FOR UT DEFENDANTS |
| Renea Hicks<br>LAW OFFICE OF MAX RENEA HICKS<br>101 West 6th Street, #504<br>Austin, Texas 78701 | |
| COUNSEL FOR PLAINTIFFS | |

/s/ Prerak Shah
PRERAK SHAH