FILED
2017 JUL -6 PM 3:43
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DR. JENNIFER LYNN GLASS, DR. LISA MOORE, AND DR. MIA CARTER,<br>　　　　PLAINTIFFS,<br><br>V.<br><br>KEN PAXTON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF TEXAS, GREGORY L. FENVES, IN HIS OFFICIAL CAPACITY AS PRESIDENT, UNIVERSITY OF TEXAS AT AUSTIN, AND PAUL L. FOSTER, R. STEVEN HICKS, JEFFERY D. HILDEBRAND, ERNEST ALISEDA, DAVID J. BECK, ALEX M. CRANBERG, WALLACE L. HALL, JR., BRENDA PEJOVICH, SARA MARTINEZ TUCKER, AND VARUN P. JOSEPH, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE UNIVERSITY OF TEXAS BOARD OF REGENTS,<br>　　　　DEFENDANTS. | §§§§§§§§§§§§§§§§§§§§§§§§§<br><br>CAUSE NO. 1:16-CV-845-LY |

## ORDER GRANTING MOTIONS TO DISMISS

Before the court are UT Defendants' Motion to Dismiss Plaintiffs' Amended Complaint filed September 12, 2016 (Clerk's Doc. No. 64), Defendant Ken Paxton's Motion to Dismiss The First Amended Complaint filed September 12, 2016 (Clerk's Doc. No. 65), Plaintiffs' Response to Motions to Dismiss First Amended Complaint filed October 6, 2016 (Clerk's Doc. No. 70), UT Defendants' Reply In Support Of Motion To Dismiss Plaintiffs' Amended Complaint filed October 20, 2016 (Clerk's Doc. No. 74), and Defendant Ken Paxton's Reply in Support of the Motion To Dismiss The First Amended Complaint filed October 20, 2016 (Clerk's Doc. No. 75).

Having reviewed the motions, response, replies, applicable law, and case file, the court will grant the motions for the reasons to follow.

## I. BACKGROUND

In 2015, the 84th Regular Session of the Texas Legislature enacted Senate Bill 11, establishing new rules for carrying handguns on the campuses of institutions of higher education in Texas. The Governor of Texas signed the measure on June 13, 2015, and it became effective on August 16, 2016. Senate Bill 11 provides, *inter alia*,

> A license holder[1] may carry a concealed handgun on or about the license holder's person while the license holder is on the campus of an institution of higher education ... in this state. ... After consulting with students, staff, and faculty of the institution regarding the nature of the student population, specific safety considerations, and the uniqueness of the campus environment, the president or other chief executive officer of an institution of higher education in this state shall establish reasonable rules, regulations, or other provisions regarding the carrying of concealed handguns by license holders on the campus of the institution or on premises located on the campus of the institution. The president or officer may not establish provisions that generally prohibit or have the effect of generally prohibiting license holders from carrying concealed handguns on the campus of the institution.

S.B. 11, 84th S. Reg. Sess. (Tex. 2015); *see also* Tex. Gov't Code § 411.2031(d-1) (West 2017) ("Campus Carry Law").

Under the Campus Carry Law, Defendant Gregory L. Fenves, President of The University of Texas at Austin (the "University"), established a working group made up of faculty, staff, students, an alumnus, a parent, and University administrators to recommend rules and regulations regarding the carrying of concealed handguns by license holders on campus. The working group submitted a final report to President Fenves in December 2015, containing 25 policy recommendations specifying how handguns should be carried and stored, identifying

---

[1] To become a "license holder," an individual must meet the requirements set out in the Texas Government Code and submit an application to the Texas Department of Public Safety. Tex. Gov't Code §§ Section 411.172, .174 (West 2017).

2

gun-exclusion zones, and describing the working group's consultation process and the rationale behind the recommendations ("Campus Carry Policy Working Group Report"). President Fenves accepted the report and provided the policy recommendations to the Board of Regents of University of Texas System ("Board of Regents") on February 17, 2016. The Board of Regents amended the recommendations at a July 13, 2016 meeting. The recommendations, as amended by the Board of Regents, are memorialized in the University's Handbook of Operating Procedures 8-1060 and took effect on August 1, 2016 ("Campus Carry Policy").

Plaintiffs filed this cause of action on July 6, 2016, seeking declaratory and injunctive relief declaring the Campus Carry Law and Campus Carry Policy unconstitutional and preventing enforcement of the law and policy. Plaintiffs filed a motion for preliminary injunction on July 22, 2016. The court conducted a hearing on the motion on August 4, 2016, and rendered an order denying the motion on August 22, 2016.

Defendants now move to dismiss this cause, asserting Plaintiffs do not have standing to bring this action because they fail to allege facts showing any cognizable injury. *See* Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1)"). Alternatively, Defendants argue Plaintiffs have failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

## II. ANALYSIS

Rule 12(b)(1) requires a court dismiss a claim if the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *see also Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). Standing is a requirement of subject-matter jurisdiction. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To establish standing, the party asserting jurisdiction must demonstrate three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 559, 560 (1992). First, a plaintiff must have suffered an "injury in fact," or an invasion of a legally protected interest

which is (a) concrete and particularized and (b) "actual or imminent, not conjectural or hypothetical." *Id.* (internal citations omitted). Second, there must be a causal connection between the injury and the conduct complained of; the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Id.* Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 561.

"[G]overnmental action may be subject to constitutional challenge even though it has only an indirect effect on the exercise of First Amendment rights." *Laird v. Tatum*, 408 U.S. 1, 12–13 (1972). However, "to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action[,] he must show that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action ...." *Ex parte Levitt*, 302 U.S. 633, 634 (1937). Further, the "threatened injury must be certainly impending to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 133 S. Ct. 1138, 1147 (2013). "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird*, 408 U.S. 1, 13–14; *see also City of L.A. v. Lyons*, 461 U.S. 95, 107 n.8 (1983). The injury alleged must be real and immediate, not conjectural or hypothetical. *Lyons*, 461 U.S. at 102.

Plaintiffs cannot establish standing by "simply claiming that they experienced a 'chilling effect' that resulted from a governmental policy that does not regulate, constrain, or compel any action on their part." *Clapper*, 133 S.Ct. at 1153. In *Laird*, respondents claimed a chilling of speech due to surveillance and data-gathering by the Department of the Army, including attendance of Army officers at meetings that were open to the public. 408 U.S. at 10. The Court stated the "alleged 'chilling' effect may perhaps be seen as ... arising from respondents' beliefs

that it is inherently dangerous for the military to be concerned with activities in the civilian sector, or as arising from respondents' less generalized yet speculative apprehensiveness that the Army may at some future date misuse the information in some way that would cause direct harm to respondents." *Id.* at 13. The Court concluded that respondents did not present a justiciable controversy, reasoning that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Id.* at 13-14.

Like the respondents in *Laird*, Plaintiffs in this case do not challenge a direct regulation or restriction on speech. Plaintiffs allege that "classroom discussion will be narrowed, truncated, cut back, cut off" by the allowance of guns in the classroom. One professor avers in an affidavit that the "possibility of the presence of concealed weapons in a classroom impedes my and other professors' ability to create a daring, intellectually active, mutually supportive, and engaged community of thinkers." Plaintiffs do not specify a subject matter or point of view they feel they must eschew as a result of the Campus Carry Law and Campus Carry Policy, or point to a specific harm they have suffered or will suffer as a result of the law and policy. Rather, the chilling effect appears to arise from Plaintiffs' subjective belief that a person may be more likely to cause harm to a professor or student as a result of the law and policy.

The Supreme Court has expressed "reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." *Clapper*, 133 S.Ct. at 1150. In *Clapper*, residents of the United States challenged a statute authorizing surveillance of foreign individuals. *Id.* at 1140. The Court concluded that the residents' "subjective fear" of being subject to surveillance as a result of their communications with foreign individuals did not give rise to standing. *Id.* at 1152-53. The Court stated that residents "present no concrete evidence to substantiate their fears, but instead rest on mere conjecture about possible governmental actions,"

5

*id.* at 1154, and reasoned that the residents' "speculative chain of possibilities does not establish that injury based on potential future surveillance is certainly impending or is fairly traceable to [the challenged statute]," *id.* at 1150. Further, in evaluating injury, the Court has stated that it assumes that persons "will conduct their activities within the law and so avoid prosecution and conviction." *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974).

Here, Plaintiffs ask the court to find standing based on their self-imposed censoring of classroom discussions caused by their fear of the possibility of illegal activity by persons not joined in this lawsuit. Plaintiffs present no concrete evidence to substantiate their fears, but instead rest on "mere conjecture about possible ... actions." *See Clapper*, 133 S. Ct. at 1154. Further, Plaintiffs have not demonstrated that the harm alleged is fairly traceable to the Campus Carry Law and Campus Carry Policy. *See id.*

The court concludes that Plaintiffs have not established an injury-in-fact, nor that the alleged injury is traceable to any conduct of Defendants. *Friends of the Earth*, 528 U.S. at 180–81. Accordingly, the court will dismiss this cause for lack of subject-matter jurisdiction. *Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015). ("Because [appellants] have not alleged a sufficient injury in fact to satisfy the requirements of constitutional standing, we dismiss their claims for lack of subject matter jurisdiction.")

### III. CONCLUSION

**IT IS ORDERED** that UT Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Clerk's Doc. No. 64) and Defendant Ken Paxton's Motion to Dismiss the First Amended Complaint (Clerk's Doc. No. 65) are **GRANTED**.

**IT IS ORDERED** that Plaintiffs claims are **DISMISSED** without prejudice.

SIGNED this \_\_6th\_\_ day of July, 2017.

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　LEE YEAKEL
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE